**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| NICK SALINSKE, for himself and all others similarly situated, | ) ) ) | Case No. 1:08-cv-03017 |
| | ) | |
| *Plaintiffs,* | ) | Judge Anderson |
| v. | ) | Magistrate Judge Denlow |
| | ) | |
| CALUMET CITY, ILLINOIS, | ) | |
| | ) | |
| *Defendant.* | ) | |

## EXHIBITS A - E
### TO
### VERIFIED CLASS ACTION COMPLAINT FOR
### TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
### PERMANENT INJUNCTION, DECLARATORY AND OTHER RELIEF

Exhibits A and B
to
Complaint For Temporary Restraining Order,
Preliminary Injunction, Permanent Injunction,
Declaratory And Other Relief

Case No. 08-cv-3017

# EXHIBIT A

THE CITY OF CALUMET CITY
COOK COUNTY, ILLINOIS

ORDINANCE
NUMBER 08-06

AN ORDINANCE AMENDING CHAPTERS 14 AND 82
OF THE MUNICIPAL CODE OF CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND
REAL ESTATE TRANSFER TAX

MICHELLE MARKIEWICZ QUALKINBUSH, Mayor
Gloria L. Dooley, City Clerk

EDWARD GONZALEZ
THADDEUS JONES
BRIAN WILSON
GERALD A. TARKA
NIKOLAOS MANOUSOPOULOS
CYNTHIA M. PALLICK
LENI WOSCZYNSKI
Aldermen

Published in pamphlet form by authority of the Mayor and City Council of the City of Calumet City on 1-31-08
ODELSON & STERK, LTD. - City Attorneys - 3318 West 95th Street - Evergreen Park, Illinois 60805

ORDINANCE NO. 08 - 06

AN ORDINANCE AMENDING CHAPTERS 14 and 82 OF THE MUNICIPAL CODE OF
CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND REAL ESTATE TRANSFER TAX

WHEREAS, the City of Calumet City has reviewed the provisions of its Municipal Code governing Point of Sale Inspections; and

WHEREAS, it is the intention of the City of Calumet City to continue to provide for periodic inspections of dwellings upon the transfer of interest or ownership thereof; and

WHEREAS, the City of Calumet City believes it is in the best interests of the health, safety and welfare to make the following amendments to its Ordinance regarding Point of Sale Inspections:

NOW, THEREFORE, be it ordained by the Mayor and City Council of the City of Calumet City, Cook County, Illinois, in the exercise of Calumet City's home rule powers as follows:

Section 1.     Chapter 14, Article I, Section 14-1 of the Municipal Code of the City of Calumet City is hereby amended by deleting the text thereof and substituting the following text in its place:

Sec.  14-1.  *Point of Sale Inspection Requirement; Certificate of Compliance Procedures*

**(a)** *Department Created; Definition; General Requirement*

1.  A Department of Inspectional Services is hereby created pursuant to this section. The Department of Inspectional Services ("Department") shall be headed by a Director of Inspectional Services ("Director," which shall also include the Director's designees) who shall be appointed by the Mayor with the advice and consent of the City Council. All inspectional services concerning point of sale matters within the City, including building and housing, shall be under the jurisdiction of the Department. The building commissioner, electrical inspector, plumbing inspector, housing director and all Department inspectors and staff shall be responsible for reporting to the Director relative to all matters relating to this section and the Director shall have full authority to direct, train and provide appropriate personnel subject to City Council approval as to expenditures and/or requirements as provided herein.

ROSENTHALMURPHYCOBLENT Fax: 13125419191          Feb 15 2008 11:52am P005/011

2.    For the purpose of this section, the term "Point of Sale Inspection" means an inspection of real property by the Department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this Section.

3.    A Point of Sale Inspection shall be required relative to any transfer of any interest in property which is subject to this Section, except as exempted herein.

(b)    *Notice of Transfer of Real Property Required.*    Whenever an owner of real property in the City proposes to engage in a transfer of real property in the City which is subject to taxation under Chapter 82, Article X of the Calumet City Municipal Code (Real Estate Transfer Tax), such owner shall provide the Department a Notice of Transfer for said property, on a form therefore provided by the Department.

(c)    **Compliance Inspection; Pertinent Code Requirements.** The Notice of Transfer form shall also constitute the Director's request to inspect such property ("Compliance Inspection") to determine whether such property is in compliance with the following specific requirements, which the corporate authorities of the City find are related to the public health, safety and welfare:

(1)    *Compliance with Property Maintenance Code.* All structures shall be in compliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, Property Maintenance Code.

(2)    *Inspection to Determine Possible Illegal Conversions.* All structures shall be inspected to determine whether they have been illegally converted. For purposes of this subsection, "illegally converted" means that the property was converted to another or additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance.

(d)    *Proposed Compliance Inspection.* When the owner files the Notice of Transfer, the Department will schedule a proposed Compliance Inspection to be conducted within 28 calendar days of the Notice. The Notice of Transfer Form shall includes the following:

(1)    Date and time of the proposed Compliance Inspection;

(2)    A statement that the owner or occupant has the right to withhold consent to the Compliance Inspection and require the City to obtain a warrant to conduct the inspection;

(3)    For occupied rental dwellings, the City must also request and obtain the consent of the tenant prior to conducting any inspection; and

(4)    A space for the owner and/or to indicate that the owner and/or tenant either consent to the Compliance Inspection, or refuse consent.

Ord. #08-6

(e)    *Refusal to Consent; Warrant Procedures.* If the owner or occupant does not consent to the proposed inspection, the Director may appear before any judge in the Circuit Court of Cook County and seek an administrative search warrant to allow an inspection. Any such application shall be made within 10 calendar days after the owner's nonconsent. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this Section, and whether there have been any illegal conversions. The Court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)    eyewitness account of violation;
(2)    citizen complaints;
(3)    tenant complaints;
(4)    plain view violations;
(5)    violations apparent from City records;
(6)    property deterioration;
(7)    age of property;
(8)    nature of alleged violation;
(9)    condition of similar properties in the area;
(10)   documented violations on similar properties in the area;
(11)   passage of time since last inspection;
(12)   previous violations on the property.

(f)    *Uninspected Property; Transfer Stamps.* In the event the owner or occupant refuses to consent to an inspection, and the Director does not seek a warrant (or if Court refuses an application for the warrant), the Department shall notify the City Clerk that "Uninspected Property" transfer stamps may issue. In connection with the issuance of transfer stamps, the City Clerk shall advise the purchaser of such property that it is "Uninspected Property."

(g)    *Inspection Procedures; Appeal.*

(1)    In the event consent is given or a warrant issues, the Department shall conduct the Compliance Inspection as provided in subsection (c) and (d). Within 5 business days after the Compliance Inspection the Department shall issue a written notice of violations and repairs, if any, necessary to bring the property into compliance with this Section. In the event the inspection reveals a structure which has been illegally converted, the Department shall issue a Notice of Deconversion, specifying the measures which must be taken in order to bring the illegally converted structure into compliance with applicable zoning regulations.

4                                                          Ord. 108-6

(2)   In the event the owner disputes the determination of violations and repairs, the owner may file a request for administrative review on a form provided by the City. An independent administrative hearing officer appointed by the City shall convene an administrative hearing within five (5) business days from the date of appeal. Upon completion of the administrative hearing, the hearing officer will issue a final determination of violation and repairs.

(3)   In the event an owner disagrees with an administrative issuance of a notice of deconversion, said owner may appeal to the Zoning Board of Appeals in accordance with Section 12-5 of the City's Zoning Ordinance.

(h)   *Follow-Up Repairs; Reinspection.*   A party issued a notice of repairs as provided for in subsection (g) shall proceed to make such repairs. Upon completion of said repairs and notice thereof to the Department, the Department will conduct a reinspection within 3 business days thereafter. Upon completion of the follow-up repairs, and the completion of any deconversion measures required by the Department, the Department shall issue a Certificate of Compliance.

(i)   *Payment of Current Water Bills; Predeprivation Hearing.* The seller must pay the current water bill (as defined in Section 82-32.7(b) of the Municipal Code) and other fees owed by the seller to Calumet City prior to the issuance of transfer stamps. In the event the owner disputes any such obligation (or any portion thereof), the Office of City Clerk shall promptly provide the owner with a predeprivation due process hearing consistent with the principles enunciated in *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1 (1978). The City Clerk's office shall provide the hearing with 3 business days of a request. If the owner disputes the City's determination as to liability, the owner may pay said bill under protest, and may pursue any remedies available to said seller to recover the claimed overcharge.

(j)   *Conditional Certificate of Compliance; Procedures.*   An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

(1)   The owner or agent has deposited with the City an amount of money determined by the Director or his designee to be sufficient to bring the structure into compliance with all City building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

(2)   The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter, "buyer") has entered into an agreement with the City whereby the buyer agrees to bring the structure into compliance within the time period determined by the Director or his designee, to bring the structure into compliance with all applicable Code requirements within a period not to exceed

5

Ord. #08-6

ROSENTHALMURPHYCOBLENT Fax: 13125419191          Feb 15 2008 11:53am P008/011

one hundred eighty (180) calendar days after the closing of the transaction ("closing").

(3)     If the buyer enters into such an agreement, a Conditional Certificate of Compliance will issue in order to allow the closing to be completed. The Conditional Certificate of Compliance shall be issued by the Department and shall terminate on the one hundred eighty-first day after closing and no extensions shall be granted. A buyer who elects to accept the premises subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the Director, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty (180) days of the closing. The City shall issue a Certificate of Compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance.

(4)     In the event the buyer fails to complete the required repairs, and have the repairs verified on reinspection, the Director is hereby authorized to pursue enforcement proceedings through the Calumet City administrative adjudication process, or, at his discretion, through the Circuit Court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Calumet City Administrative Adjudication Process and the Circuit Court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the City to expeditiously obtain an order of compliance with this section.

(5)     If reasonable proof that the repairs have been completed is not received by the Director, or his designee within the required period for the repairs to be completed, the City may also issue a citation for violation of this Chapter and/or the escrow repair agreement, and may also pursue any applicable administrative or judicial remedies to bring the structure and property into compliance with applicable codes and regulations.

(6)     The fine for violations of this Chapter shall be not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000.00) per day for each day the violations remain uncorrected.

(k)     *Licensed and Bonded Contractors.* All contractors performing repairs identified in the point of sale inspection, or issuing certifications shall be licensed by the City and bonded and

6

Ord. 108-6

ROSENTHAL MURPHY COBLENT Fax: 13125419191      Feb 15 2008 11:54am P009/011

shall make available, upon request, copies of their license(s), verification of their liability insurance, errors and omissions insurance policies, and surety bond.

(l)    *Validity of Certificate of Compliance*.    A Certificate of Compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

(m)    *No Warranty.* In issuing a certificate of compliance or a conditional certificate of compliance, the City and its agents do not make any warranty, representation or statement nor does it intend to insure or guarantee to either buyer or seller of the property subject to the point of sale inspection or any of their designees, agents, representatives, heirs or assigns or any other interested party, including mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point of sale inspection, nor does the City affirm that there are no additional unnoted violations relative to any other provisions of any of the Municipal Code of the City of Calumet City, or relevant statutes, ordinances, rules and regulations of the County of Cook, the State of Illinois or the United States of America.

(o)    *Inspection Fee Schedule.*

(1)    The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) for all single-family residential inspections. The failure of an owner/seller or his designee to appear at the time of inspection shall result in a fifty dollar ($50.00) penalty.

(2)    The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) plus twenty-five additional dollars ($25.00) for each residential unit in excess of one unit.

(3)    A fee of twenty cents ($0.20) per square foot shall be charged for each commercial/industrial unit inspected with a minimum fee of two hundred dollars ($200.00) per commercial/industrial unit.

(4)    Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) per unit shall be assessed.

(5)    If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) per unit shall be assessed.

**Section 2:**    Section 82-327(b) of the Calumet City Municipal Code is hereby amended to provide as follows:

7

Ord. #08-6

ROSENTHAL MURPHY COBLENT  Fax: 13125419191          Feb 15 2008 11:55am  P010/011

(b) The City Clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller (i) presents a "Certificate of Compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or, (ii) presents an "Uninspected Property" notice to the City Clerk pursuant to Section 14-1(f) of the City Code. The City Clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in Section 14-1(f) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the Section 14-1(f) procedural rights.

__Section 3:__  If any section, paragraph, clause or provision of this ordinance shall be held invalid, the invalidity thereof shall not effect any of the other provisions of this ordinance.

__Section 4:__  All ordinances in conflict herewith are hereby repealed to the extent of such conflict.

__Section 5:__  This ordinance shall be in full force and effect from and after its passage, approval and publication as provided by law.

8

Ord. #08-6

ROSENTHAL MURPHY COBLENT  Fax:13125419191          Feb 15 2008 11:55am  P011/011

ADOPTED this 31st day of February, 2008, pursuant to a roll call vote as follows:

|  | YES | NO | ABSENT | PRESENT |
|---|---|---|---|---|
| González |  | X |  |  |
| Jones | X |  |  |  |
| Pallick | X |  |  |  |
| Manousopoulos | X |  |  |  |
| Tarka | X |  |  |  |
| Wilson | X |  |  |  |
| Wosczynski | X |  |  |  |
| Qualkinbush (Mayor) |  |  |  |  |
| TOTAL | 7 |  |  |  |

APPROVED by the Mayor on January 31, 2008

Michelle Markiewicz Qualkinbush,
MAYOR

ATTEST

Gloria Dooley
CITY CLERK

C:\Documents and Settings\deputy clerk\Local Settings\Temporary Internet Files\Content.IE5\LKVZ194E\amending chap 14 6 82
11[1]31.02.wpd

2

Ord F08-6

# EXHIBIT B



A Member of the International Code Family®

# INTERNATIONAL PROPERTY MAINTENANCE CODE®

ICC

INTERNATIONAL CODE COUNCIL®

2006

2006 International Property Maintenance Code®

First Printing: January 2006
Second Printing: November 2006

ISBN-13: 978-1-58001-263-8 (soft)
ISBN-10: 1-58001-263-9 (soft)
ISBN-13: 978-158001-311-6 (e-document)
ISBN-10: 1-58001-311-2 (e-document)

COPYRIGHT © 2006
by
INTERNATIONAL CODE COUNCIL, INC.

ALL RIGHTS RESERVED. This 2006 *International Property Maintenance Code*® is a copyrighted work owned by the International Code Council, Inc. Without advance written permission from the copyright owner, no part of this book may be reproduced, distributed or transmitted in any form or by any means, including, without limitation, electronic, optical or mechanical means (by way of example and not limitation, photocopying, or recording by or in an information storage retrieval system). For information on permission to copy material exceeding fair use, please contact: Publications, 4051 West Flossmoor Road, Country Club Hills, IL 60478-5795. Phone 1-888-ICC-SAFE (422-7233).

Trademarks: "International Code Council," the "International Code Council" logo and the "International Property Maintenance Code" are trademarks of the International Code Council, Inc.

PRINTED IN THE U.S.A.

# PREFACE

## Introduction

Internationally, code officials recognize the need for a modern, up-to-date property maintenance code governing the maintenance of existing buildings. The *International Property Maintenance Code*, in this 2006 edition, is designed to meet this need through model code regulations that contain clear and specific property maintenance requirements with required property improvement provisions.

This 2006 edition is fully compatible with all *International Codes* (I-Codes®) published by the International Code Council (ICC)®, including the *International Building Code*®, ICC *Electrical Code*®—*Administrative Provisions, International Energy Conservation Code*®, *International Existing Building Code*®, *International Fire Code*®, *International Fuel Gas Code*®, *International Mechanical Code*®, ICC *Performance Code*®, *International Plumbing Code*®, *International Private Sewage Disposal Code*®, *International Residential Code*®, *International Wildland-Urban Interface Code*™ and *International Zoning Code*®.

The *International Property Maintenance Code* provisions provide many benefits, among which is the model code development process that offers an international forum for code officials and other interested parties to discuss performance and prescriptive code requirements. This forum provides an excellent arena to debate proposed revisions. This model code also encourages international consistency in the application of provisions.

## Development

The first edition of the *International Property Maintenance Code* (1998) was the culmination of an effort initiated in 1996 by a code development committee appointed by ICC and consisting of representatives of the three statutory members of the International Code Council at that time, including: Building Officials and Code Administrators International, Inc. (BOCA), International Conference of Building Officials (ICBO) and Southern Building Code Congress International (SBCCI). The committee drafted a comprehensive set of regulations for existing buildings that was consistent with the existing model property maintenance codes at the time. This 2006 edition presents the code as originally issued, with changes reflected through the previous 2003 editions and further changes developed through the ICC Code Development Process through 2005. A new edition of the code is promulgated every three years.

This code is founded on principles intended to establish provisions consistent with the scope of a property maintenance code that adequately protects public health, safety and welfare; provisions that do not unnecessarily increase construction costs; provisions that do not restrict the use of new materials, products or methods of construction; and provisions that do not give preferential treatment to particular types or classes of materials, products or methods of construction.

## Adoption

The *International Property Maintenance Code* is available for adoption and use by jurisdictions internationally. Its use within a governmental jurisdiction is intended to be accomplished through adoption by reference in accordance with proceedings establishing the jurisdiction's laws. At the time of adoption, jurisdictions should insert the appropriate information in provisions requiring specific local information, such as the name of the adopting jurisdiction. These locations are shown in bracketed words in small capital letters in the code and in the sample ordinance. The sample adoption ordinance on page v addresses several key elements of a code adoption ordinance, including the information required for insertion into the code text.

## Maintenance

The *International Property Maintenance Code* is kept up to date through the review of proposed changes submitted by code enforcing officials, industry representatives, design professionals and other interested parties. Proposed changes are carefully considered through an open code development process in which all interested and affected parties may participate.

The contents of this work are subject to change both through the Code Development Cycles and the governmental body that enacts the code into law. For more information regarding the code development process, contact the Codes and Standards Development Department of the International Code Council.

While the development procedure of the *International Property Maintenance Code* ensures the highest degree of care, ICC, its membership and those participating in the development of this code do not accept any liability resulting from compliance or noncompliance with the provisions because ICC does not have the power or authority to police or enforce compliance with the contents of this code. Only the governmental body that enacts the code into law has such authority.

## Letter Designations in Front of Section Numbers

In each code development cycle, proposed changes to this code are considered at the Code Development Hearings by the ICC Property Maintenance/Zoning Code Development Committee, whose action constitutes a recommendation to the voting membership for final action on the proposed changes. Proposed changes to a code section having a number beginning with a letter in brackets are considered by a different code development committee. For example, proposed changes to code sections that have the letter [F] in front of them (e.g., [F] 704.1) are considered by the International Fire Code Development Committee at the Code Development Hearings.

The content of sections in this code that begin with a letter designation are maintained by another code development committee in accordance with the following:

[F] = International Fire Code Development Committee;

[P] = International Plumbing Code Development Committee;

[F] = International Fire Code Development Committee; and

[B] = International Building Code Development Committee.

## Marginal Markings

Solid vertical lines in the margins within the body of the code indicating a technical change from the requirements of the previous edition. Deletion indicators in the form of an arrow ( ➡ ) are provided in the margin where an entire section, paragraph, exception or table has been deleted or an item in a list of items or a table has been deleted.

# ORDINANCE

The *International Codes* are designed and promulgated to be adopted by reference by ordinance. Jurisdictions wishing to adopt the 2006 *International Property Maintenance Code* as an enforceable regulation governing existing structures and premises should ensure that certain factual information is included in the adopting ordinance at the time adoption is being considered by the appropriate governmental body. The following sample adoption ordinance addresses several key elements of a code adoption ordinance, including the information required for insertion into the code text.

## SAMPLE ORDINANCE FOR ADOPTION OF
## THE *INTERNATIONAL PROPERTY MAINTENANCE CODE*
## ORDINANCE NO._____

An ordinance of the [JURISDICTION] adopting the 2006 edition of the *International Property Maintenance Code*, regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures in the [JURISDICTION]; providing for the issuance of permits and collection of fees therefor; repealing Ordinance No. _____ of the [JURISDICTION] and all other ordinances and parts of the ordinances in conflict therewith.

The [GOVERNING BODY] of the [JURISDICTION] does ordain as follows:

**Section 1.** That a certain document, three (3) copies of which are on file in the office of the [TITLE OF JURISDICTION'S KEEPER OF RECORDS] of [NAME OF JURISDICTION], being marked and designated as the *International Property Maintenance Code*, 2006 edition, as published by the International Code Council, be and is hereby adopted as the Property Maintenance Code of the [JURISDICTION], in the State of [STATE NAME] for regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures as herein provided; providing for the issuance of permits and collection of fees therefor; and each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code on file in the office of the [JURISDICTION] are hereby referred to, adopted, and made a part hereof, as if fully set out in this ordinance, with the additions, insertions, deletions and changes, if any, prescribed in Section 2 of this ordinance.

**Section 2.** The following sections are hereby revised:

> Section 101.1. Insert: [NAME OF JURISDICTION]

> Section 103.5. Insert: [APPROPRIATE SCHEDULE]

> Section 302.4. Insert: [HEIGHT IN INCHES]

> Section 304.14. Insert: [DATES IN TWO LOCATIONS]

> Section 602.3. Insert: [DATES IN TWO LOCATIONS]

> Section 602.4. Insert: [DATES IN TWO LOCATIONS]

**Section 3.** That Ordinance No. _____ of [JURISDICTION] entitled [FILL IN HERE THE COMPLETE TITLE OF THE ORDINANCE OR ORDINANCES IN EFFECT AT THE PRESENT TIME SO THAT THEY WILL BE REPEALED BY DEFINITE MENTION] and all other ordinances or parts of ordinances in conflict herewith are hereby repealed.

**Section 4.** That if any section, subsection, sentence, clause or phrase of this ordinance is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this ordinance. The [GOVERNING BODY] hereby declares that it would have passed this ordinance, and each section, subsection, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses and phrases be declared unconstitutional.

**Section 5.** That nothing in this ordinance or in the Property Maintenance Code hereby adopted shall be construed to affect any suit or proceeding impending in any court, or any rights acquired, or liability incurred, or any cause or causes of action acquired or exist-

ing, under any act or ordinance hereby repealed as cited in Section 3 of this ordinance; nor shall any just or legal right or remedy of any character be lost, impaired or affected by this ordinance.

**Section 6.** That the [JURISDICTION'S KEEPER OF RECORDS] is hereby ordered and directed to cause this ordinance to be published. (An additional provision may be required to direct the number of times the ordinance is to be published and to specify that it is to be in a newspaper in general circulation. Posting may also be required.)

**Section 7.** That this ordinance and the rules, regulations, provisions, requirements, orders and matters established and adopted hereby shall take effect and be in full force and effect [TIME PERIOD] from and after the date of its final passage and adoption.

# TABLE OF CONTENTS

**CHAPTER 1   ADMINISTRATION** . . . . . . . . . . . . . . 1

Section

101   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
102   Applicability . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
103   Department of Property Maintenance
      Inspection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
104   Duties and Powers of the Code Official . . . . . . . . 2
105   Approval . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
106   Violations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
107   Notices and Orders . . . . . . . . . . . . . . . . . . . . . . . . 3
108   Unsafe Structures and Equipment . . . . . . . . . . . . 3
109   Emergency Measures . . . . . . . . . . . . . . . . . . . . . . 4
110   Demolition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
111   Means of Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**CHAPTER 2   DEFINITIONS** . . . . . . . . . . . . . . . . . . . 7

Section

201   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
202   General Definitions . . . . . . . . . . . . . . . . . . . . . . . . 7

**CHAPTER 3   GENERAL REQUIREMENTS** . . . . . . 9

Section

301   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
302   Exterior Property Areas . . . . . . . . . . . . . . . . . . . . 9
303   Swimming Pools, Spas and Hot Tubs . . . . . . . . . . 9
304   Exterior Structure . . . . . . . . . . . . . . . . . . . . . . . . 10
305   Interior Structure . . . . . . . . . . . . . . . . . . . . . . . . 11
306   Handrails and Guardrails . . . . . . . . . . . . . . . . . . 11
307   Rubbish and Garbage . . . . . . . . . . . . . . . . . . . . . 11
308   Extermination . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CHAPTER 4   LIGHT, VENTILATION AND
            OCCUPANCY LIMITATIONS** . . . . . . 13

Section

401   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
402   Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
403   Ventilation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
404   Occupancy Limitations . . . . . . . . . . . . . . . . . . . . 13

**CHAPTER 5   PLUMBING FACILITIES AND
            FIXTURE REQUIREMENTS** . . . . . . 15

Section

501   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
502   Required Facilities . . . . . . . . . . . . . . . . . . . . . . . . 15

503   Toilet Rooms . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
504   Plumbing Systems and Fixtures . . . . . . . . . . . . . . 15
505   Water System . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
506   Sanitary Drainage System . . . . . . . . . . . . . . . . . . 16
507   Storm Drainage . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**CHAPTER 6   MECHANICAL AND ELECTRICAL
            REQUIREMENTS** . . . . . . . . . . . . . . . 17

Section

601   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
602   Heating Facilities . . . . . . . . . . . . . . . . . . . . . . . . 17
603   Mechanical Equipment . . . . . . . . . . . . . . . . . . . . 17
604   Electrical Facilities . . . . . . . . . . . . . . . . . . . . . . . 17
605   Electrical Equipment . . . . . . . . . . . . . . . . . . . . . . 18
606   Elevators, Escalators and Dumbwaiters . . . . . . . . 18
607   Duct Systems . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**CHAPTER 7   FIRE SAFETY
            REQUIREMENTS** . . . . . . . . . . . . . . . 19

Section

701   General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
702   Means of Egress . . . . . . . . . . . . . . . . . . . . . . . . . 19
703   Fire-Resistance Ratings . . . . . . . . . . . . . . . . . . . . 19
704   Fire Protection Systems . . . . . . . . . . . . . . . . . . . . 19

**CHAPTER 8   REFERENCED STANDARDS** . . . . . . 21

**INDEX** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# CHAPTER 1

# ADMINISTRATION

## SECTION 101
## GENERAL

**101.1 Title.** These regulations shall be known as the *Property Maintenance Code of* [NAME OF JURISDICTION], hereinafter referred to as "this code."

**101.2 Scope.** The provisions of this code shall apply to all existing residential and nonresidential structures and all existing premises and constitute minimum requirements and standards for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, life safety, safety from fire and other hazards, and for safe and sanitary maintenance; the responsibility of owners, operators and occupants; the occupancy of existing structures and premises, and for administration, enforcement and penalties.

**101.3 Intent.** This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.

**101.4 Severability.** If a section, subsection, sentence, clause or phrase of this code is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this code.

## SECTION 102
## APPLICABILITY

**102.1 General.** The provisions of this code shall apply to all matters affecting or relating to structures and premises, as set forth in Section 101. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern.

**102.2 Maintenance.** Equipment, systems, devices and safeguards required by this code or a previous regulation or code under which the structure or premises was constructed, altered or repaired shall be maintained in good working order. No owner, operator or occupant shall cause any service, facility, equipment or utility which is required under this section to be removed from or shut off from or discontinued for any occupied dwelling, except for such temporary interruption as necessary while repairs or alterations are in progress. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures. Except as otherwise specified herein, the owner or the owner's designated agent shall be responsible for the maintenance of buildings, structures and premises.

**102.3 Application of other codes.** Repairs, additions or alterations to a structure, or changes of occupancy, shall be done in accordance with the procedures and provisions of the *International Building Code, International Fuel Gas Code, International Mechanical Code* and the ICC *Electrical Code.* Nothing in this code shall be construed to cancel, modify or set aside any provision of the *International Zoning Code.*

**102.4 Existing remedies.** The provisions in this code shall not be construed to abolish or impair existing remedies of the jurisdiction or its officers or agencies relating to the removal or demolition of any structure which is dangerous, unsafe and insanitary.

**102.5 Workmanship.** Repairs, maintenance work, alterations or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner and installed in accordance with the manufacturer's installation instructions.

**102.6 Historic buildings.** The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings when such buildings or structures are judged by the code official to be safe and in the public interest of health, safety and welfare.

**102.7 Referenced codes and standards.** The codes and standards referenced in this code shall be those that are listed in Chapter 8 and considered part of the requirements of this code to the prescribed extent of each such reference. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply.

**102.8 Requirements not covered by code.** Requirements necessary for the strength, stability or proper operation of an existing fixture, structure or equipment, or for the public safety, health and general welfare, not specifically covered by this code, shall be determined by the code official.

## SECTION 103
## DEPARTMENT OF PROPERTY
## MAINTENANCE INSPECTION

**103.1 General.** The department of property maintenance inspection is hereby created and the executive official in charge thereof shall be known as the code official.

**103.2 Appointment.** The code official shall be appointed by the chief appointing authority of the jurisdiction; and the code official shall not be removed from office except for cause and after full opportunity to be heard on specific and relevant charges by and before the appointing authority.

**103.3 Deputies.** In accordance with the prescribed procedures of this jurisdiction and with the concurrence of the appointing authority, the code official shall have the authority to appoint a deputy code official, other related technical officers, inspectors and other employees.

ADMINISTRATION

**103.4 Liability.** The code official, officer or employee charged with the enforcement of this code, while acting for the jurisdiction. shall not thereby be rendered liable personally, and is hereby relieved from all personal liability for any damage accruing to persons or property as a result of an act required or permitted in the discharge of official duties.

Any suit instituted against any officer or employee because of an act performed by that officer or employee in the lawful discharge of duties and under the provisions of this code shall be defended by the legal representative of the jurisdiction until the final termination of the proceedings. The code official or any subordinate shall not be liable for costs in an action, suit or proceeding that is instituted in pursuance of the provisions of this code; and any officer of the department of property maintenance inspection, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of official duties in connection therewith.

**103.5 Fees.** The fees for activities and services performed by the department in carrying out its responsibilities under this code shall be as indicated in the following schedule.

[JURISDICTION TO INSERT APPROPRIATE SCHEDULE.]

### SECTION 104
### DUTIES AND POWERS OF THE CODE OFFICIAL

**104.1 General.** The code official shall enforce the provisions of this code.

**104.2 Rule-making authority.** The code official shall have authority as necessary in the interest of public health, safety and general welfare, to adopt and promulgate rules and procedures; to interpret and implement the provisions of this code; to secure the intent thereof; and to designate requirements applicable because of local climatic or other conditions. Such rules shall not have the effect of waiving structural or fire performance requirements specifically provided for in this code, or of violating accepted engineering methods involving public safety.

**104.3 Inspections.** The code official shall make all of the required inspections, or shall accept reports of inspection by approved agencies or individuals. All reports of such inspections shall be in writing and be certified by a responsible officer of such approved agency or by the responsible individual. The code official is authorized to engage such expert opinion as deemed necessary to report upon unusual technical issues that arise, subject to the approval of the appointing authority.

**104.4 Right of entry.** The code official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures. If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law.

**104.5 Identification.** The code official shall carry proper identification when inspecting structures or premises in the performance of duties under this code.

**104.6 Notices and orders.** The code official shall issue all necessary notices or orders to ensure compliance with this code.

**104.7 Department records.** The code official shall keep official records of all business and activities of the department specified in the provisions of this code. Such records shall be retained in the official records as long as the building or structure to which such records relate remains in existence, unless otherwise provided for by other regulations.

### SECTION 105
### APPROVAL

**105.1 Modifications.** Whenever there are practical difficulties involved in carrying out the provisions of this code, the code official shall have the authority to grant modifications for individual cases, provided the code official shall first find that special individual reason makes the strict letter of this code impractical and the modification is in compliance with the intent and purpose of this code and that such modification does not lessen health, life and fire safety requirements. The details of action granting modifications shall be recorded and entered in the department files.

**105.2 Alternative materials, methods and equipment.** The provisions of this code are not intended to prevent the installation of any material or to prohibit any method of construction not specifically prescribed by this code, provided that any such alternative has been approved. An alternative material or method of construction shall be approved where the code official finds that the proposed design is satisfactory and complies with the intent of the provisions of this code, and that the material, method or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability and safety.

**105.3 Required testing.** Whenever there is insufficient evidence of compliance with the provisions of this code, or evidence that a material or method does not conform to the requirements of this code, or in order to substantiate claims for alternative materials or methods, the code official shall have the authority to require tests to be made as evidence of compliance at no expense to the jurisdiction.

**105.3.1 Test methods.** Test methods shall be as specified in this code or by other recognized test standards. In the absence of recognized and accepted test methods, the code official shall be permitted to approve appropriate testing procedures performed by an approved agency.

**105.3.2 Test reports.** Reports of tests shall be retained by the code official for the period required for retention of public records.

**105.4 Material and equipment reuse.** Materials, equipment and devices shall not be reused unless such elements are in good repair or have been reconditioned and tested when necessary, placed in good and proper working condition and approved.

### SECTION 106
### VIOLATIONS

**106.1 Unlawful acts.** It shall be unlawful for a person, firm or corporation to be in conflict with or in violation of any of the provisions of this code.

2

**106.2 Notice of violation.** The code official shall serve a notice of violation or order in accordance with Section 107.

**106.3 Prosecution of violation.** Any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a strict liability offense. If the notice of violation is not complied with, the code official shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the structure in violation of the provisions of this code or of the order or direction made pursuant thereto. Any action taken by the authority having jurisdiction on such premises shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

**106.4 Violation penalties.** Any person who shall violate a provision of this code, or fail to comply therewith, or with any of the requirements thereof, shall be prosecuted within the limits provided by state or local laws. Each day that a violation continues after due notice has been served shall be deemed a separate offense.

**106.5 Abatement of violation.** The imposition of the penalties herein prescribed shall not preclude the legal officer of the jurisdiction from instituting appropriate action to restrain, correct or abate a violation, or to prevent illegal occupancy of a building, structure or premises, or to stop an illegal act, conduct, business or utilization of the building, structure or premises.

## SECTION 107
## NOTICES AND ORDERS

**107.1 Notice to person responsible.** Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given in the manner prescribed in Sections 107.2 and 107.3 to the person responsible for the violation as specified in this code. Notices for condemnation procedures shall also comply with Section 108.3.

**107.2 Form.** Such notice prescribed in Section 107.1 shall be in accordance with all of the following:

1. Be in writing.

2. Include a description of the real estate sufficient for identification.

3. Include a statement of the violation or violations and why the notice is being issued.

4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.

5. Inform the property owner of the right to appeal.

6. Include a statement of the right to file a lien in accordance with Section 106.3.

**107.3 Method of service.** Such notice shall be deemed to be properly served if a copy thereof is:

1. Delivered personally;

2. Sent by certified or first-class mail addressed to the last known address; or

3. If the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice.

**107.4 Penalties.** Penalties for noncompliance with orders and notices shall be as set forth in Section 106.4.

**107.5 Transfer of ownership.** It shall be unlawful for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served to sell, transfer, mortgage, lease or otherwise dispose of such dwelling unit or structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner shall first furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the code official and shall furnish to the code official a signed and notarized statement from the grantee, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.

## SECTION 108
## UNSAFE STRUCTURES AND EQUIPMENT

**108.1 General.** When a structure or equipment is found by the code official to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful, such structure shall be condemned pursuant to the provisions of this code.

**108.1.1 Unsafe structures.** An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

**108.1.2 Unsafe equipment.** Unsafe equipment includes any boiler, heating equipment, elevator, moving stairway, electrical wiring or device, flammable liquid containers or other equipment on the premises or within the structure which is in such disrepair or condition that such equipment is a hazard to life, health, property or safety of the public or occupants of the premises or structure.

**108.1.3 Structure unfit for human occupancy.** A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination,

ADMINISTRATION

sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

**108.1.4 Unlawful structure.** An unlawful structure is one found in whole or in part to be occupied by more persons than permitted under this code, or was erected, altered or occupied contrary to law.

**108.2 Closing of vacant structures.** If the structure is vacant and unfit for human habitation and occupancy, and is not in danger of structural collapse, the code official is authorized to post a placard of condemnation on the premises and order the structure closed up so as not to be an attractive nuisance. Upon failure of the owner to close up the premises within the time specified in the order, the code official shall cause the premises to be closed and secured through any available public agency or by contract or arrangement by private persons and the cost thereof shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate and may be collected by any other legal resource.

**108.3 Notice.** Whenever the code official has condemned a structure or equipment under the provisions of this section, notice shall be posted in a conspicuous place in or about the structure affected by such notice and served on the owner or the person or persons responsible for the structure or equipment in accordance with Section 107.3. If the notice pertains to equipment, it shall also be placed on the condemned equipment. The notice shall be in the form prescribed in Section 107.2.

**108.4 Placarding.** Upon failure of the owner or person responsible to comply with the notice provisions within the time given, the code official shall post on the premises or on defective equipment a placard bearing the word "Condemned" and a statement of the penalties provided for occupying the premises, operating the equipment or removing the placard.

**108.4.1 Placard removal.** The code official shall remove the condemnation placard whenever the defect or defects upon which the condemnation and placarding action were based have been eliminated. Any person who defaces or removes a condemnation placard without the approval of the code official shall be subject to the penalties provided by this code.

**108.5 Prohibited occupancy.** Any occupied structure condemned and placarded by the code official shall be vacated as ordered by the code official. Any person who shall occupy a placarded premises or shall operate placarded equipment, and any owner or any person responsible for the premises who shall let anyone occupy a placarded premises or operate placarded equipment shall be liable for the penalties provided by this code.

### SECTION 109
### EMERGENCY MEASURES

**109.1 Imminent danger.** When, in the opinion of the code official, there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential dan-

ger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment, the code official is hereby authorized and empowered to order and require the occupants to vacate the premises forthwith. The code official shall cause to be posted at each entrance to such structure a notice reading as follows: "This Structure Is Unsafe and Its Occupancy Has Been Prohibited by the Code Official." It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition or of demolishing the same.

**109.2 Temporary safeguards.** Notwithstanding other provisions of this code, whenever, in the opinion of the code official, there is imminent danger due to an unsafe condition, the code official shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted; and shall cause such other action to be taken as the code official deems necessary to meet such emergency.

**109.3 Closing streets.** When necessary for public safety, the code official shall temporarily close structures and close, or order the authority having jurisdiction to close, sidewalks, streets, public ways and places adjacent to unsafe structures, and prohibit the same from being utilized.

**109.4 Emergency repairs.** For the purposes of this section, the code official shall employ the necessary labor and materials to perform the required work as expeditiously as possible.

**109.5 Costs of emergency repairs.** Costs incurred in the performance of emergency work shall be paid by the jurisdiction. The legal counsel of the jurisdiction shall institute appropriate action against the owner of the premises where the unsafe structure is or was located for the recovery of such costs.

**109.6 Hearing.** Any person ordered to take emergency measures shall comply with such order forthwith. Any affected person shall thereafter, upon petition directed to the appeals board, be afforded a hearing as described in this code.

### SECTION 110
### DEMOLITION

**110.1 General.** The code official shall order the owner of any premises upon which is located any structure, which in the code official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure; or if such structure is capable of being made safe by repairs, to repair and make safe and sanitary or to demolish and remove at the owner's option; or where there has been a cessation of normal construction of any structure for a period of more than two years, to demolish and remove such structure.

**110.2 Notices and orders.** All notices and orders shall comply with Section 107.

**110.3 Failure to comply.** If the owner of a premises fails to comply with a demolition order within the time prescribed, the

code official shall cause the structure to be demolished and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

**110.4 Salvage materials.** When any structure has been ordered demolished and removed, the governing body or other designated officer under said contract or arrangement aforesaid shall have the right to sell the salvage and valuable materials at the highest price obtainable. The net proceeds of such sale, after deducting the expenses of such demolition and removal, shall be promptly remitted with a report of such sale or transaction, including the items of expense and the amounts deducted, for the person who is entitled thereto, subject to any order of a court. If such a surplus does not remain to be turned over, the report shall so state.

## SECTION 111
## MEANS OF APPEAL

**111.1 Application for appeal.** Any person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

**111.2 Membership of board.** The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The code official shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms.

**111.2.1 Alternate members.** The chief appointing authority shall appoint two or more alternate members who shall be called by the board chairman to hear appeals during the absence or disqualification of a member. Alternate members shall possess the qualifications required for board membership.

**111.2.2 Chairman.** The board shall annually select one of its members to serve as chairman.

**111.2.3 Disqualification of member.** A member shall not hear an appeal in which that member has a personal, professional or financial interest.

**111.2.4 Secretary.** The chief administrative officer shall designate a qualified person to serve as secretary to the board. The secretary shall file a detailed record of all proceedings in the office of the chief administrative officer.

**111.2.5 Compensation of members.** Compensation of members shall be determined by law.

**111.3 Notice of meeting.** The board shall meet upon notice from the chairman, within 20 days of the filing of an appeal, or at stated periodic meetings.

**111.4 Open hearing.** All hearings before the board shall be open to the public. The appellant, the appellant's representative, the code official and any person whose interests are affected shall be given an opportunity to be heard. A quorum shall consist of not less than two-thirds of the board membership.

**111.4.1 Procedure.** The board shall adopt and make available to the public through the secretary procedures under which a hearing will be conducted. The procedures shall not require compliance with strict rules of evidence, but shall mandate that only relevant information be received.

**111.5 Postponed hearing.** When the full board is not present to hear an appeal, either the appellant or the appellant's representative shall have the right to request a postponement of the hearing.

**111.6 Board decision.** The board shall modify or reverse the decision of the code official only by a concurring vote of a majority of the total number of appointed board members.

**111.6.1 Records and copies.** The decision of the board shall be recorded. Copies shall be furnished to the appellant and to the code official.

**111.6.2 Administration.** The code official shall take immediate action in accordance with the decision of the board.

**111.7 Court review.** Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law. Application for review shall be made in the manner and time required by law following the filing of the decision in the office of the chief administrative officer.

**111.8 Stays of enforcement.** Appeals of notice and orders (other than Imminent Danger notices) shall stay the enforcement of the notice and order until the appeal is heard by the appeals board.

# CHAPTER 2

# DEFINITIONS

## SECTION 201
## GENERAL

**201.1 Scope.** Unless otherwise expressly stated, the following terms shall, for the purposes of this code, have the meanings shown in this chapter.

**201.2 Interchangeability.** Words stated in the present tense include the future; words stated in the masculine gender include the feminine and neuter; the singular number includes the plural and the plural, the singular.

**201.3 Terms defined in other codes.** Where terms are not defined in this code and are defined in the *International Building Code*, *International Fire Code*, *International Zoning Code*, *International Plumbing Code*, *International Mechanical Code* or the ICC *Electrical Code*, such terms shall have the meanings ascribed to them as stated in those codes.

**201.4 Terms not defined.** Where terms are not defined through the methods authorized by this section, such terms shall have ordinarily accepted meanings such as the context implies.

**201.5 Parts.** Whenever the words "dwelling unit," "dwelling," "premises," "building," "rooming house," "rooming unit" "housekeeping unit" or "story" are stated in this code, they shall be construed as though they were followed by the words "or any part thereof."

## SECTION 202
## GENERAL DEFINITIONS

**APPROVED.** Approved by the code official.

**BASEMENT.** That portion of a building which is partly or completely below grade.

**BATHROOM.** A room containing plumbing fixtures including a bathtub or shower.

**BEDROOM.** Any room or space used or intended to be used for sleeping purposes in either a dwelling or sleeping unit.

**CODE OFFICIAL.** The official who is charged with the administration and enforcement of this code, or any duly authorized representative.

**CONDEMN.** To adjudge unfit for occupancy.

**[B] DWELLING UNIT.** A single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation.

**EASEMENT.** That portion of land or property reserved for present or future use by a person or agency other than the legal fee owner(s) of the property. The easement shall be permitted to be for use under, on or above a said lot or lots.

**EXTERIOR PROPERTY.** The open space on the premises and on adjoining property under the control of owners or operators of such premises.

**EXTERMINATION.** The control and elimination of insects, rats or other pests by eliminating their harborage places; by removing or making inaccessible materials that serve as their food; by poison spraying, fumigating, trapping or by any other approved pest elimination methods.

**GARBAGE.** The animal or vegetable waste resulting from the handling, preparation, cooking and consumption of food.

**GUARD.** A building component or a system of building components located at or near the open sides of elevated walking surfaces that minimizes the possibility of a fall from the walking surface to a lower level.

**HABITABLE SPACE.** Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet rooms, closets, halls, storage or utility spaces, and similar areas are not considered habitable spaces.

**HOUSEKEEPING UNIT.** A room or group of rooms forming a single habitable space equipped and intended to be used for living, sleeping, cooking and eating which does not contain, within such a unit, a toilet, lavatory and bathtub or shower.

**IMMINENT DANGER.** A condition which could cause serious or life-threatening injury or death at any time.

**INFESTATION.** The presence, within or contiguous to, a structure or premises of insects, rats, vermin or other pests.

**INOPERABLE MOTOR VEHICLE.** A vehicle which cannot be driven upon the public streets for reason including but not limited to being unlicensed, wrecked, abandoned, in a state of disrepair, or incapable of being moved under its own power.

**LABELED.** Devices, equipment, appliances, or materials to which has been affixed a label, seal, symbol or other identifying mark of a nationally recognized testing laboratory, inspection agency or other organization concerned with product evaluation that maintains periodic inspection of the production of the above-labeled items and by whose label the manufacturer attests to compliance with applicable nationally recognized standards.

**LET FOR OCCUPANCY OR LET.** To permit, provide or offer possession or occupancy of a dwelling, dwelling unit, rooming unit, building, premise or structure by a person who is or is not the legal owner of record thereof, pursuant to a written or unwritten lease, agreement or license, or pursuant to a recorded or unrecorded agreement of contract for the sale of land.

**OCCUPANCY.** The purpose for which a building or portion thereof is utilized or occupied.

**OCCUPANT.** Any individual living or sleeping in a building, or having possession of a space within a building.

**OPENABLE AREA.** That part of a window, skylight or door which is available for unobstructed ventilation and which opens directly to the outdoors.

DEFINITIONS

**OPERATOR.** Any person who has charge, care or control of a structure or premises which is let or offered for occupancy.

**OWNER.** Any person, agent, operator, firm or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property, including the guardian of the estate of any such person, and the executor or administrator of the estate of such person if ordered to take possession of real property by a court.

**PERSON.** An individual, corporation, partnership or any other group acting as a unit.

**PREMISES.** A lot, plot or parcel of land, easement or public way, including any structures thereon.

**PUBLIC WAY.** Any street, alley or similar parcel of land essentially unobstructed from the ground to the sky, which is deeded, dedicated or otherwise permanently appropriated to the public for public use.

**ROOMING HOUSE.** A building arranged or occupied for lodging, with or without meals, for compensation and not occupied as a one- or two-family dwelling.

**ROOMING UNIT.** Any room or group of rooms forming a single habitable unit occupied or intended to be occupied for sleeping or living, but not for cooking purposes.

**RUBBISH.** Combustible and noncombustible waste materials, except garbage; the term shall include the residue from the burning of wood, coal, coke and other combustible materials, paper, rags, cartons, boxes, wood, excelsior, rubber, leather, tree branches, yard trimmings, tin cans, metals; mineral matter, glass, crockery and dust and other similar materials.

**[B] SLEEPING UNIT.** A room or space in which people sleep, which can also include permanent provisions for living, eating and either sanitation or kitchen facilities, but not both. Such rooms and spaces that are also part of a dwelling unit are not sleeping units.

**STRICT LIABILITY OFFENSE.** An offense in which the prosecution in a legal proceeding is not required to prove criminal intent as a part of its case. It is enough to prove that the defendant either did an act which was prohibited, or failed to do an act which the defendant was legally required to do.

**STRUCTURE.** That which is built or constructed or a portion thereof.

**TENANT.** A person, corporation, partnership or group, whether or not the legal owner of record, occupying a building or portion thereof as a unit.

**TOILET ROOM.** A room containing a water closet or urinal but not a bathtub or shower.

**VENTILATION.** The natural or mechanical process of supplying conditioned or unconditioned air to, or removing such air from, any space.

**WORKMANLIKE.** Executed in a skilled manner; e.g., generally plumb, level, square, in line, undamaged and without marring adjacent work.

**YARD.** An open space on the same lot with a structure.

# CHAPTER 3

# GENERAL REQUIREMENTS

## SECTION 301
## GENERAL

**301.1 Scope.** The provisions of this chapter shall govern the minimum conditions and the responsibilities of persons for maintenance of structures, equipment and exterior property.

**301.2 Responsibility.** The owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code. A person shall not occupy as owner-occupant or permit another person to occupy premises which are not in a sanitary and safe condition and which do not comply with the requirements of this chapter. Occupants of a dwelling unit, rooming unit or housekeeping unit are responsible for keeping in a clean, sanitary and safe condition that part of the dwelling unit, rooming unit, housekeeping unit or premises which they occupy and control.

**301.3 Vacant structures and land.** All vacant structures and premises thereof or vacant land shall be maintained in a clean, safe, secure and sanitary condition as provided herein so as not to cause a blighting problem or adversely affect the public health or safety.

## SECTION 302
## EXTERIOR PROPERTY AREAS

**302.1 Sanitation.** All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**302.2 Grading and drainage.** All premises shall be graded and maintained to prevent the erosion of soil and to prevent the accumulation of stagnant water thereon, or within any structure located thereon.

> **Exception:** Approved retention areas and reservoirs.

**302.3 Sidewalks and driveways.** All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.

**302.4 Weeds.** All premises and exterior property shall be maintained free from weeds or plant growth in excess of (jurisdiction to insert height in inches). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

Upon failure of the owner or agent having charge of a property to cut and destroy weeds after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3 and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.

**302.5 Rodent harborage.** All structures and exterior property shall be kept free from rodent harborage and infestation. Where rodents are found, they shall be promptly exterminated by approved processes which will not be injurious to human health. After extermination, proper precautions shall be taken to eliminate rodent harborage and prevent reinfestation.

**302.6 Exhaust vents.** Pipes, ducts, conductors, fans or blowers shall not discharge gases, steam, vapor, hot air, grease, smoke, odors or other gaseous or particulate wastes directly upon abutting or adjacent public or private property or that of another tenant.

**302.7 Accessory structures.** All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**302.8 Motor vehicles.** Except as provided for in other regulations, no inoperative or unlicensed motor vehicle shall be parked, kept or stored on any premises, and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled. Painting of vehicles is prohibited unless conducted inside an approved spray booth.

> **Exception:** A vehicle of any type is permitted to undergo major overhaul, including body work, provided that such work is performed inside a structure or similarly enclosed area designed and approved for such purposes.

**302.9 Defacement of property.** No person shall willfully or wantonly damage, mutilate or deface any exterior surface of any structure or building on any private or public property by placing thereon any marking, carving or graffiti.

It shall be the responsibility of the owner to restore said surface to an approved state of maintenance and repair.

## SECTION 303
## SWIMMING POOLS, SPAS AND HOT TUBS

**303.1 Swimming pools.** Swimming pools shall be maintained in a clean and sanitary condition, and in good repair.

**303.2 Enclosures.** Private swimming pools, hot tubs and spas, containing water more than 24 inches (610 mm) in depth shall be completely surrounded by a fence or barrier at least 48 inches (1219 mm) in height above the finished ground level measured on the side of the barrier away from the pool. Gates and doors in such barriers shall be self-closing and self-latching. Where the self-latching device is less than 54 inches (1372 mm) above the bottom of the gate, the release mechanism shall be located on the pool side of the gate. Self-closing and self-latching gates shall be maintained such that the gate will positively close and latch when released from an open position of 6 inches (152 mm) from the gatepost. No existing pool enclosure

GENERAL REQUIREMENTS

shall be removed, replaced or changed in a manner that reduces its effectiveness as a safety barrier.

> Exception: Spas or hot tubs with a safety cover that complies with ASTM F 1346 shall be exempt from the provisions of this section.

## SECTION 304
## EXTERIOR STRUCTURE

**304.1 General.** The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare.

**304.2 Protective treatment.** All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition. Exterior wood surfaces, other than decay-resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints as well as those between the building envelope and the perimeter of windows, doors, and skylights shall be maintained weather resistant and water tight. All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion and all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Oxidation stains shall be removed from exterior surfaces. Surfaces designed for stabilization by oxidation are exempt from this requirement.

**[F] 304.3 Premises identification.** Buildings shall have approved address numbers placed in a position to be plainly legible and visible from the street or road fronting the property. These numbers shall contrast with their background. Address numbers shall be Arabic numerals or alphabet letters. Numbers shall be a minimum of 4 inches (102 mm) high with a minimum stroke width of 0.5 inch (12.7 mm).

**304.4 Structural members.** All structural members shall be maintained free from deterioration, and shall be capable of safely supporting the imposed dead and live loads.

**304.5 Foundation walls.** All foundation walls shall be maintained plumb and free from open cracks and breaks and shall be kept in such condition so as to prevent the entry of rodents and other pests.

**304.6 Exterior walls.** All exterior walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**304.7 Roofs and drainage.** The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

**304.8 Decorative features.** All cornices, belt courses, corbels, terra cotta trim, wall facings and similar decorative features shall be maintained in good repair with proper anchorage and in a safe condition.

**304.9 Overhang extensions.** All overhang extensions including, but not limited to canopies, marquees, signs, metal awnings, fire escapes, standpipes and exhaust ducts shall be maintained in good repair and be properly anchored so as to be kept in a sound condition. When required, all exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment.

**304.10 Stairways, decks, porches and balconies.** Every exterior stairway, deck, porch and balcony, and all appurtenances attached thereto, shall be maintained structurally sound, in good repair, with proper anchorage and capable of supporting the imposed loads.

**304.11 Chimneys and towers.** All chimneys, cooling towers, smoke stacks, and similar appurtenances shall be maintained structurally safe and sound, and in good repair. All exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment.

**304.12 Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

**304.13 Window, skylight and door frames.** Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight.

> **304.13.1 Glazing.** All glazing materials shall be maintained free from cracks and holes.

> **304.13.2 Openable windows.** Every window, other than a fixed window, shall be easily openable and capable of being held in position by window hardware.

**304.14 Insect screens.** During the period from [DATE] to [DATE], every door, window and other outside opening required for ventilation of habitable rooms, food preparation areas, food service areas or any areas where products to be included or utilized in food for human consumption are processed, manufactured, packaged or stored shall be supplied with approved tightly fitting screens of not less than 16 mesh per inch (16 mesh per 25 mm), and every screen door used for insect control shall have a self-closing device in good working condition.

> **Exception:** Screens shall not be required where other approved means, such as air curtains or insect repellent fans, are employed.

**304.15 Doors.** All exterior doors, door assemblies and hardware shall be maintained in good condition. Locks at all entrances to dwelling units and sleeping units shall tightly secure the door. Locks on means of egress doors shall be in accordance with Section 702.3.

**304.16 Basement hatchways.** Every basement hatchway shall be maintained to prevent the entrance of rodents, rain and surface drainage water.

**304.17 Guards for basement windows.** Every basement window that is openable shall be supplied with rodent shields, storm windows or other approved protection against the entry of rodents.

10

**304.18 Building security.** Doors, windows or hatchways for dwelling units, room units or housekeeping units shall be provided with devices designed to provide security for the occupants and property within.

**304.18.1 Doors.** Doors providing access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with a deadbolt lock designed to be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort and shall have a lock throw of not less than 1 inch (25 mm). Such deadbolt locks shall be installed according to the manufacturer's specifications and maintained in good working order. For the purpose of this section, a sliding bolt shall not be considered an acceptable deadbolt lock.

**304.18.2 Windows.** Operable windows located in whole or in part within 6 feet (1828 mm) above ground level or a walking surface below that provide access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with a window sash locking device.

**304.18.3 Basement hatchways.** Basement hatchways that provide access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with devices that secure the units from unauthorized entry.

## SECTION 305
## INTERIOR STRUCTURE

**305.1 General.** The interior of a structure and equipment therein shall be maintained in good repair, structurally sound and in a sanitary condition. Occupants shall keep that part of the structure which they occupy or control in a clean and sanitary condition. Every owner of a structure containing a rooming house, housekeeping units, a hotel, a dormitory, two or more dwelling units or two or more nonresidential occupancies, shall maintain, in a clean and sanitary condition, the shared or public areas of the structure and exterior property.

**305.2 Structural members.** All structural members shall be maintained structurally sound, and be capable of supporting the imposed loads.

**305.3 Interior surfaces.** All interior surfaces, including windows and doors, shall be maintained in good, clean and sanitary condition. Peeling, chipping, flaking or abraded paint shall be repaired, removed or covered. Cracked or loose plaster, decayed wood and other defective surface conditions shall be corrected.

**305.4 Stairs and walking surfaces.** Every stair, ramp, landing, balcony, porch, deck or other walking surface shall be maintained in sound condition and good repair.

**305.5 Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

**305.6 Interior doors.** Every interior door shall fit reasonably well within its frame and shall be capable of being opened and closed by being properly and securely attached to jambs, headers or tracks as intended by the manufacturer of the attachment hardware.

## SECTION 306
## HANDRAILS AND GUARDRAILS

**306.1 General.** Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface which is more than 30 inches (762 mm) above the floor or grade below shall have guards. Handrails shall not be less than 30 inches (762 mm) high or more than 42 inches (1067 mm) high measured vertically above the nosing of the tread or above the finished floor of the landing or walking surfaces. Guards shall not be less than 30 inches (762 mm) high above the floor of the landing, balcony, porch, deck, or ramp or other walking surface.

> **Exception:** Guards shall not be required where exempted by the adopted building code.

## SECTION 307
## RUBBISH AND GARBAGE

**307.1 Accumulation of rubbish or garbage.** All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

**307.2 Disposal of rubbish.** Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner by placing such rubbish in approved containers.

**307.2.1 Rubbish storage facilities.** The owner of every occupied premises shall supply approved covered containers for rubbish, and the owner of the premises shall be responsible for the removal of rubbish.

**307.2.2 Refrigerators.** Refrigerators and similar equipment not in operation shall not be discarded, abandoned or stored on premises without first removing the doors.

**307.3 Disposal of garbage.** Every occupant of a structure shall dispose of garbage in a clean and sanitary manner by placing such garbage in an approved garbage disposal facility or approved garbage containers.

**307.3.1 Garbage facilities.** The owner of every dwelling shall supply one of the following: an approved mechanical food waste grinder in each dwelling unit; an approved incinerator unit in the structure available to the occupants in each dwelling unit; or an approved leakproof, covered, outside garbage container.

**307.3.2 Containers.** The operator of every establishment producing garbage shall provide, and at all times cause to be utilized, approved leakproof containers provided with close-fitting covers for the storage of such materials until removed from the premises for disposal.

## SECTION 308
## EXTERMINATION

**308.1 Infestation.** All structures shall be kept free from insect and rodent infestation. All structures in which insects or rodents are found shall be promptly exterminated by approved processes that will not be injurious to human health. After extermination, proper precautions shall be taken to prevent reinfestation.

GENERAL REQUIREMENTS

**308.2 Owner.** The owner of any structure shall be responsible for extermination within the structure prior to renting or leasing the structure.

**308.3 Single occupant.** The occupant of a one-family dwelling or of a single-tenant nonresidential structure shall be responsible for extermination on the premises.

**308.4 Multiple occupancy.** The owner of a structure containing two or more dwelling units, a multiple occupancy, a rooming house or a nonresidential structure shall be responsible for extermination in the public or shared areas of the structure and exterior property. If infestation is caused by failure of an occupant to prevent such infestation in the area occupied, the occupant shall be responsible for extermination.

**308.5 Occupant.** The occupant of any structure shall be responsible for the continued rodent and pest-free condition of the structure.

> **Exception:** Where the infestations are caused by defects in the structure, the owner shall be responsible for extermination.

CHAPTER 4

# LIGHT, VENTILATION AND
# OCCUPANCY LIMITATIONS

## SECTION 401
## GENERAL

**401.1 Scope.** The provisions of this chapter shall govern the minimum conditions and standards for light, ventilation and space for occupying a structure.

**401.2 Responsibility.** The owner of the structure shall provide and maintain light, ventilation and space conditions in compliance with these requirements. A person shall not occupy as owner-occupant, or permit another person to occupy, any premises that do not comply with the requirements of this chapter.

**401.3 Alternative devices.** In lieu of the means for natural light and ventilation herein prescribed, artificial light or mechanical ventilation complying with the *International Building Code* shall be permitted.

## SECTION 402
## LIGHT

**402.1 Habitable spaces.** Every habitable space shall have at least one window of approved size facing directly to the outdoors or to a court. The minimum total glazed area for every habitable space shall be 8 percent of the floor area of such room. Wherever walls or other portions of a structure face a window of any room and such obstructions are located less than 3 feet (914 mm) from the window and extend to a level above that of the ceiling of the room, such window shall not be deemed to face directly to the outdoors nor to a court and shall not be included as contributing to the required minimum total window area for the room.

> **Exception:** Where natural light for rooms or spaces without exterior glazing areas is provided through an adjoining room, the unobstructed opening to the adjoining room shall be at least 8 percent of the floor area of the interior room or space, but not less than 25 square feet (2.33 m²). The exterior glazing area shall be based on the total floor area being served.

**402.2 Common halls and stairways.** Every common hall and stairway in residential occupancies, other than in one- and two-family dwellings, shall be lighted at all times with at least a 60-watt standard incandescent light bulb for each 200 square feet (19 m²) of floor area or equivalent illumination, provided that the spacing between lights shall not be greater than 30 feet (9144 mm). In other than residential occupancies, means of egress, including exterior means of egress, stairways shall be illuminated at all times the building space served by the means of egress is occupied with a minimum of 1 footcandle (11 lux) at floors, landings and treads.

**402.3 Other spaces.** All other spaces shall be provided with natural or artificial light sufficient to permit the maintenance of sanitary conditions, and the safe occupancy of the space and utilization of the appliances, equipment and fixtures.

## SECTION 403
## VENTILATION

**403.1 Habitable spaces.** Every habitable space shall have at least one openable window. The total openable area of the window in every room shall be equal to at least 45 percent of the minimum glazed area required in Section 402.1.

> **Exception:** Where rooms and spaces without openings to the outdoors are ventilated through an adjoining room, the unobstructed opening to the adjoining room shall be at least 8 percent of the floor area of the interior room or space, but not less than 25 square feet (2.33 m²). The ventilation openings to the outdoors shall be based on a total floor area being ventilated.

**403.2 Bathrooms and toilet rooms.** Every bathroom and toilet room shall comply with the ventilation requirements for habitable spaces as required by Section 403.1, except that a window shall not be required in such spaces equipped with a mechanical ventilation system. Air exhausted by a mechanical ventilation system from a bathroom or toilet room shall discharge to the outdoors and shall not be recirculated.

**403.3 Cooking facilities.** Unless approved through the certificate of occupancy, cooking shall not be permitted in any rooming unit or dormitory unit, and a cooking facility or appliance shall not be permitted to be present in the rooming unit or dormitory unit.

> **Exceptions:**
>
> 1. Where specifically approved in writing by the code official.
>
> 2. Devices such as coffee pots and microwave ovens shall not be considered cooking appliances.

**403.4 Process ventilation.** Where injurious, toxic, irritating or noxious fumes, gases, dusts or mists are generated, a local exhaust ventilation system shall be provided to remove the contaminating agent at the source. Air shall be exhausted to the exterior and not be recirculated to any space.

**403.5 Clothes dryer exhaust.** Clothes dryer exhaust systems shall be independent of all other systems and shall be exhausted in accordance with the manufacturer's instructions.

## SECTION 404
## OCCUPANCY LIMITATIONS

**404.1 Privacy.** Dwelling units, hotel units, housekeeping units, rooming units and dormitory units shall be arranged to provide privacy and be separate from other adjoining spaces.

**404.2 Minimum room widths.** A habitable room, other than a kitchen, shall not be less than 7 feet (2134 mm) in any plan dimension. Kitchens shall have a clear passageway of not less

than 3 feet (914 mm) between counterfronts and appliances or counterfronts and walls.

**404.3 Minimum ceiling heights.** Habitable spaces, hallways, corridors, laundry areas, bathrooms, toilet rooms and habitable basement areas shall have a clear ceiling height of not less than 7 feet (2134 mm).

Exceptions:

1. In one- and two-family dwellings, beams or girders spaced not less than 4 feet (1219 mm) on center and projecting not more than 6 inches (152 mm) below the required ceiling height.

2. Basement rooms in one- and two-family dwellings occupied exclusively for laundry, study or recreation purposes, having a ceiling height of not less than 6 feet 8 inches (2033 mm) with not less than 6 feet 4 inches (1932 mm) of clear height under beams, girders, ducts and similar obstructions.

3. Rooms occupied exclusively for sleeping, study or similar purposes and having a sloped ceiling over all or part of the room, with a clear ceiling height of at least 7 feet (2134 mm) over not less than one-third of the required minimum floor area. In calculating the floor area of such rooms, only those portions of the floor area with a clear ceiling height of 5 feet (1524 mm) or more shall be included.

**404.4 Bedroom and living room requirements.** Every bedroom and living room shall comply with the requirements of Sections 404.4.1 through 404.4.5.

**404.4.1 Room area.** Every living room shall contain at least 120 square feet (11.2 m²) and every bedroom shall contain at least 70 square feet (6.5 m²).

**404.4.2 Access from bedrooms.** Bedrooms shall not constitute the only means of access to other bedrooms or habitable spaces and shall not serve as the only means of egress from other habitable spaces.

Exception: Units that contain fewer than two bedrooms.

**404.4.3 Water closet accessibility.** Every bedroom shall have access to at least one water closet and one lavatory without passing through another bedroom. Every bedroom in a dwelling unit shall have access to at least one water closet and lavatory located in the same story as the bedroom or an adjacent story.

**404.4.4 Prohibited occupancy.** Kitchens and nonhabitable spaces shall not be used for sleeping purposes.

**404.4.5 Other requirements.** Bedrooms shall comply with the applicable provisions of this code including, but not limited to, the light, ventilation, room area, ceiling height and room width requirements of this chapter; the plumbing facilities and water-heating facilities requirements of Chapter 5; the heating facilities and electrical receptacle requirements of Chapter 6; and the smoke detector and emergency escape requirements of Chapter 7.

**404.5 Overcrowding.** The number of persons occupying a dwelling unit shall not create conditions that, in the opinion of

the code official, endanger the life, health, safety or welfare of the occupants.

**404.6 Efficiency unit.** Nothing in this section shall prohibit an efficiency living unit from meeting the following requirements:

1. A unit occupied by not more than two occupants shall have a clear floor area of not less than 220 square feet (20.4 m²). A unit occupied by three occupants shall have a clear floor area of not less than 320 square feet (29.7 m²). These required areas shall be exclusive of the areas required by Items 2 and 3.

2. The unit shall be provided with a kitchen sink, cooking appliance and refrigeration facilities, each having a clear working space of not less than 30 inches (762 mm) in front. Light and ventilation conforming to this code shall be provided.

3. The unit shall be provided with a separate bathroom containing a water closet, lavatory and bathtub or shower.

4. The maximum number of occupants shall be three.

**404.7 Food preparation.** All spaces to be occupied for food preparation purposes shall contain suitable space and equipment to store, prepare and serve foods in a sanitary manner. There shall be adequate facilities and services for the sanitary disposal of food wastes and refuse, including facilities for temporary storage.

## CHAPTER 5

# PLUMBING FACILITIES AND FIXTURE REQUIREMENTS

### SECTION 501
### GENERAL

**501.1 Scope.** The provisions of this chapter shall govern the minimum plumbing systems, facilities and plumbing fixtures to be provided.

**501.2 Responsibility.** The owner of the structure shall provide and maintain such plumbing facilities and plumbing fixtures in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any structure or premises which does not comply with the requirements of this chapter.

### [P] SECTION 502
### REQUIRED FACILITIES

**502.1 Dwelling units.** Every dwelling unit shall contain its own bathtub or shower, lavatory, water closet and kitchen sink which shall be maintained in a sanitary, safe working condition. The lavatory shall be placed in the same room as the water closet or located in close proximity to the door leading directly into the room in which such water closet is located. A kitchen sink shall not be used as a substitute for the required lavatory.

**502.2 Rooming houses.** At least one water closet, lavatory and bathtub or shower shall be supplied for each four rooming units.

**502.3 Hotels.** Where private water closets, lavatories and baths are not provided, one water closet, one lavatory and one bathtub or shower having access from a public hallway shall be provided for each ten occupants.

**502.4 Employees' facilities.** A minimum of one water closet, one lavatory and one drinking facility shall be available to employees.

**502.4.1 Drinking facilities.** Drinking facilities shall be a drinking fountain, water cooler, bottled water cooler or disposable cups next to a sink or water dispenser. Drinking facilities shall not be located in toilet rooms or bathrooms.

### [P] SECTION 503
### TOILET ROOMS

**503.1 Privacy.** Toilet rooms and bathrooms shall provide privacy and shall not constitute the only passageway to a hall or other space, or to the exterior. A door and interior locking device shall be provided for all common or shared bathrooms and toilet rooms in a multiple dwelling.

**503.2 Location.** Toilet rooms and bathrooms serving hotel units, rooming units or dormitory units or housekeeping units, shall have access by traversing not more than one flight of stairs and shall have access from a common hall or passageway.

**503.3 Location of employee toilet facilities.** Toilet facilities shall have access from within the employees' working area. The required toilet facilities shall be located not more than one story above or below the employees' working area and the path of travel to such facilities shall not exceed a distance of 500 feet (152 m). Employee facilities shall either be separate facilities or combined employee and public facilities.

> **Exception:** Facilities that are required for employees in storage structures or kiosks, which are located in adjacent structures under the same ownership, lease or control, shall not exceed a travel distance of 500 feet (152 m) from the employees' regular working area to the facilities.

**503.4 Floor surface.** In other than dwelling units, every toilet room floor shall be maintained to be a smooth, hard, nonabsorbent surface to permit such floor to be easily kept in a clean and sanitary condition.

### [P] SECTION 504
### PLUMBING SYSTEMS AND FIXTURES

**504.1 General.** All plumbing fixtures shall be properly installed and maintained in working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures are designed. All plumbing fixtures shall be maintained in a safe, sanitary and functional condition.

**504.2 Fixture clearances.** Plumbing fixtures shall have adequate clearances for usage and cleaning.

**504.3 Plumbing system hazards.** Where it is found that a plumbing system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, inadequate venting, cross connection, backsiphonage, improper installation, deterioration or damage or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard.

### SECTION 505
### WATER SYSTEM

**505.1 General.** Every sink, lavatory, bathtub or shower, drinking fountain, water closet or other plumbing fixture shall be properly connected to either a public water system or to an approved private water system. All kitchen sinks, lavatories, laundry facilities, bathtubs and showers shall be supplied with hot or tempered and cold running water in accordance with the *International Plumbing Code.*

**[P] 505.2 Contamination.** The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood-level rim of the fixture. Shampoo basin faucets, janitor sink faucets and other hose bibs or faucets to which hoses are attached and left in

PLUMBING FACILITIES AND FIXTURE REQUIREMENTS

place, shall be protected by an approved atmospheric-type vacuum breaker or an approved permanently attached hose connection vacuum breaker.

**505.3 Supply.** The water supply system shall be installed and maintained to provide a supply of water to plumbing fixtures, devices and appurtenances in sufficient volume and at pressures adequate to enable the fixtures to function properly, safely, and free from defects and leaks.

**505.4 Water heating facilities.** Water heating facilities shall be properly installed, maintained and capable of providing an adequate amount of water to be drawn at every required sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110°F (43°C). A gas-burning water heater shall not be located in any bathroom, toilet room, bedroom or other occupied room normally kept closed, unless adequate combustion air is provided. An approved combination temperature and pressure-relief valve and relief valve discharge pipe shall be properly installed and maintained on water heaters.

## [P] SECTION 506
## SANITARY DRAINAGE SYSTEM

**506.1 General.** All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

**506.2 Maintenance.** Every plumbing stack, vent, waste and sewer line shall function properly and be kept free from obstructions, leaks and defects.

## [P] SECTION 507
## STORM DRAINAGE

**507.1 General.** Drainage of roofs and paved areas, yards and courts, and other open areas on the premises shall not be discharged in a manner that creates a public nuisance.

# CHAPTER 6

# MECHANICAL AND ELECTRICAL REQUIREMENTS

## SECTION 601
## GENERAL

**601.1 Scope.** The provisions of this chapter shall govern the minimum mechanical and electrical facilities and equipment to be provided.

**601.2 Responsibility.** The owner of the structure shall provide and maintain mechanical and electrical facilities and equipment in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any premises which does not comply with the requirements of this chapter.

## SECTION 602
## HEATING FACILITIES

**602.1 Facilities required.** Heating facilities shall be provided in structures as required by this section.

**602.2 Residential occupancies.** Dwellings shall be provided with heating facilities capable of maintaining a room temperature of 68°F (20°C) in all habitable rooms, bathrooms and toilet rooms based on the winter outdoor design temperature for the locality indicated in Appendix D of the *International Plumbing Code*. Cooking appliances shall not be used to provide space heating to meet the requirements of this section.

> **Exception:** In areas where the average monthly temperature is above 30°F (-1°C), a minimum temperature of 65°F (18°C) shall be maintained.

**602.3 Heat supply.** Every owner and operator of any building who rents, leases or lets one or more dwelling units or sleeping units on terms, either expressed or implied, to furnish heat to the occupants thereof shall supply heat during the period from [DATE] to [DATE] to maintain a temperature of not less than 68°F (20°C) in all habitable rooms, bathrooms, and toilet rooms.

> **Exceptions:**
> 1. When the outdoor temperature is below the winter outdoor design temperature for the locality, maintenance of the minimum room temperature shall not be required provided that the heating system is operating at its full design capacity. The winter outdoor design temperature for the locality shall be as indicated in Appendix D of the *International Plumbing Code*.
> 2. In areas where the average monthly temperature is above 30°F (-1°C) a minimum temperature of 65°F (18°C) shall be maintained.

**602.4 Occupiable work spaces.** Indoor occupiable work spaces shall be supplied with heat during the period from [DATE] to [DATE] to maintain a temperature of not less than 65°F (18°C) during the period the spaces are occupied.

> **Exceptions:**
> 1. Processing, storage and operation areas that require cooling or special temperature conditions.
> 2. Areas in which persons are primarily engaged in vigorous physical activities.

**602.5 Room temperature measurement.** The required room temperatures shall be measured 3 feet (914 mm) above the floor near the center of the room and 2 feet (610 mm) inward from the center of each exterior wall.

## SECTION 603
## MECHANICAL EQUIPMENT

**603.1 Mechanical appliances.** All mechanical appliances, fireplaces, solid fuel-burning appliances, cooking appliances and water heating appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function.

**603.2 Removal of combustion products.** All fuel-burning equipment and appliances shall be connected to an approved chimney or vent.

> **Exception:** Fuel-burning equipment and appliances which are labeled for unvented operation.

**603.3 Clearances.** All required clearances to combustible materials shall be maintained.

**603.4 Safety controls.** All safety controls for fuel-burning equipment shall be maintained in effective operation.

**603.5 Combustion air.** A supply of air for complete combustion of the fuel and for ventilation of the space containing the fuel-burning equipment shall be provided for the fuel-burning equipment.

**603.6 Energy conservation devices.** Devices intended to reduce fuel consumption by attachment to a fuel-burning appliance, to the fuel supply line thereto, or to the vent outlet or vent piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved.

## SECTION 604
## ELECTRICAL FACILITIES

**604.1 Facilities required.** Every occupied building shall be provided with an electrical system in compliance with the requirements of this section and Section 605.

**604.2 Service.** The size and usage of appliances and equipment shall serve as a basis for determining the need for additional facilities in accordance with the ICC *Electrical Code*. Dwelling units shall be served by a three-wire, 120/240 volt, single-

phase electrical service having a rating of not less than 60 amperes.

**604.3 Electrical system hazards.** Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient receptacle and lighting outlets, improper wiring or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard.

## SECTION 605
## ELECTRICAL EQUIPMENT

**605.1 Installation.** All electrical equipment, wiring and appliances shall be properly installed and maintained in a safe and approved manner.

**605.2 Receptacles.** Every habitable space in a dwelling shall contain at least two separate and remote receptacle outlets. Every laundry area shall contain at least one grounded-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain at least one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection.

**605.3 Luminaires.** Every public hall, interior stairway, toilet room, kitchen, bathroom, laundry room, boiler room and furnace room shall contain at least one electric luminaire.

## SECTION 606
## ELEVATORS, ESCALATORS AND DUMBWAITERS

**606.1 General.** Elevators, dumbwaiters and escalators shall be maintained in compliance with ASME A17.1. The most current certification of inspection shall be on display at all times within the elevator or attached to the escalator or dumbwaiter, or the certificate shall be available for public inspection in the office of the building operator. The inspection and tests shall be performed at not less than the periodical intervals listed in ASME A17.1, Appendix N, except where otherwise specified by the authority having jurisdiction.

**606.2 Elevators.** In buildings equipped with passenger elevators, at least one elevator shall be maintained in operation at all times when the building is occupied.

> **Exception:** Buildings equipped with only one elevator shall be permitted to have the elevator temporarily out of service for testing or servicing.

## SECTION 607
## DUCT SYSTEMS

**607.1 General.** Duct systems shall be maintained free of obstructions and shall be capable of performing the required function.

# CHAPTER 7

# FIRE SAFETY REQUIREMENTS

## SECTION 701
## GENERAL

**701.1 Scope.** The provisions of this chapter shall govern the minimum conditions and standards for fire safety relating to structures and exterior premises, including fire safety facilities and equipment to be provided.

**701.2 Responsibility.** The owner of the premises shall provide and maintain such fire safety facilities and equipment in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any premises that do not comply with the requirements of this chapter.

## [F] SECTION 702
## MEANS OF EGRESS

**702.1 General.** A safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the public way. Means of egress shall comply with the *International Fire Code*.

**702.2 Aisles.** The required width of aisles in accordance with the *International Fire Code* shall be unobstructed.

**702.3 Locked doors.** All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort, except where the door hardware conforms to that permitted by the *International Building Code*.

**702.4 Emergency escape openings.** Required emergency escape openings shall be maintained in accordance with the code in effect at the time of construction, and the following. Required emergency escape and rescue openings shall be operational from the inside of the room without the use of keys or tools. Bars, grilles, grates or similar devices are permitted to be placed over emergency escape and rescue openings provided the minimum net clear opening size complies with the code that was in effect at the time of construction and such devices shall be releasable or removable from the inside without the use of a key, tool or force greater than that which is required for normal operation of the escape and rescue opening.

## [F] SECTION 703
## FIRE-RESISTANCE RATINGS

**703.1 Fire-resistance-rated assemblies.** The required fire-resistance rating of fire-resistance-rated walls, fire stops, shaft enclosures, partitions and floors shall be maintained.

**703.2 Opening protectives.** Required opening protectives shall be maintained in an operative condition. All fire and smokestop doors shall be maintained in operable condition.

Fire doors and smoke barrier doors shall not be blocked or obstructed or otherwise made inoperable.

## [F] SECTION 704
## FIRE PROTECTION SYSTEMS

**704.1 General.** All systems, devices and equipment to detect a fire, actuate an alarm, or suppress or control a fire or any combination thereof shall be maintained in an operable condition at all times in accordance with the *International Fire Code*.

**704.2 Smoke alarms.** Single or multiple-station smoke alarms shall be installed and maintained in Groups R-2, R-3, R-4 and in dwellings not regulated in Group R occupancies, regardless of occupant load at all of the following locations:

1. On the ceiling or wall outside of each separate sleeping area in the immediate vicinity of bedrooms.

2. In each room used for sleeping purposes.

3. In each story within a dwelling unit, including basements and cellars but not including crawl spaces and uninhabitable attics. In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level.

Single or multiple-station smoke alarms shall be installed in other groups in accordance with the *International Fire Code*.

**704.3 Power source.** In Group R occupancies and in dwellings not regulated as Group R occupancies, single-station smoke alarms shall receive their primary power from the building wiring provided that such wiring is served from a commercial source and shall be equipped with a battery backup. Smoke alarms shall emit a signal when the batteries are low. Wiring shall be permanent and without a disconnecting switch other than as required for overcurrent protection.

> **Exception:** Smoke alarms are permitted to be solely battery operated in buildings where no construction is taking place, buildings that are not served from a commercial power source and in existing areas of buildings undergoing alterations or repairs that do not result in the removal of interior wall or ceiling finishes exposing the structure, unless there is an attic, crawl space or basement available which could provide access for building wiring without the removal of interior finishes.

**704.4 Interconnection.** Where more than one smoke alarm is required to be installed within an individual dwelling unit in Group R-2, R-3, R-4 and in dwellings not regulated as Group R occupancies, the smoke alarms shall be interconnected in such

a manner that the activation of one alarm will activate all of the alarms in the individual unit. The alarm shall be clearly audible in all bedrooms over background noise levels with all intervening doors closed.

Exceptions:

1. Interconnection is not required in buildings which are not undergoing alterations, repairs, or construction of any kind.

2. Smoke alarms in existing areas are not required to be interconnected where alterations or repairs do not result in the removal of interior wall or ceiling finishes exposing the structure, unless there is an attic, crawl space or basement available which could provide access for interconnection without the removal of interior finishes.

# CHAPTER 8

# REFERENCED STANDARDS

This chapter lists the standards that are referenced in various sections of this document. The standards are listed herein by the promulgating agency of the standard, the standard identification, the effective date and title and the section or sections of this document that reference the standard. The application of the referenced standards shall be as specified in Section 102.7.

## ASME

American Society of Mechanical Engineers
Three Park Avenue
New York, NY 10016-5990

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| A17.1—2000 | Safety Code for Elevators and Escalators with A17.1a 2002 Addenda . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 606.1 |

## ASTM

ASTM International
100 Barr Harbor Drive
West Conshohocken, PA 19428-2959

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| F1346—91 (2003) | Performance Specifications for Safety Covers and Labeling Requirements for All Covers for Swimming Pools, Spas and Hot Tubs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 303.2 |

## ICC

International Code Council
5203 Leesburg Pike, Suite 600
Falls Church, VA 22041

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| ICC EC—06 | ICC Electrical Code® — Administrative Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 201.3, 604.2 |
| IBC—06 | International Building Code® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102.3, 201.3, 401.3, 702.3 |
| IFC—06 | International Fire Code® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 201.3, 702.1, 702.2, 704.1, 704.2 |
| IFGC—06 | International Fuel Gas Code® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102.3 |
| IMC—06 | International Mechanical Code® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102.3, 201.3 |
| IPC—06 | International Plumbing Code® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 201.3, 505.1, 602.2, 602.3 |
| IZC—06 | International Zoning Code® . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 102.3, 201.3 |

# INDEX

## A

ACCEPTED ENGINEERING METHODS . . . . . . . 104.2
ACCESS
    Egress . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702
    From bedrooms . . . . . . . . . . . . . . . . . . . . .404.4.2
    Plumbing fixtures, access for cleaning . . . . . 504.2
    To public way . . . . . . . . . . . . . . . . . . . . . . .702.1
    Toilet room as passageway . . . . . . . . . . . . .503.1
    Water closet . . . . . . . . . . . . . . . . . . . . . . . .404.4.3
ADJACENT
    Privacy (hotel units, rooming units) . . . . . . . 404.1
ADMINISTRATION
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
AGENT (See also OPERATOR) . . . . . . . . . . . . . .202
    (See OWNER)
AIR
    Combustion air . . . . . . . . . . . . . . . . . . . . .603.5
AISLES
    Minimum width . . . . . . . . . . . . . . . . . . . . .702.2
ALTERATION
    Applicability of other codes . . . . . . . . . . . . .102.3
    Condemnation . . . . . . . . . . . . . . . . . .108.1, 108.2
    Inspection . . . . . . . . . . . . . . . . . . . . . . . . . .104.3
    Prosecution . . . . . . . . . . . . . . . . . . . . . . . .106.3
    Unlawful acts . . . . . . . . . . . . . . . . . . . . . . .106.1
ANCHOR
    Architectural trim . . . . . . . . . . . . . . . . . . . .304.8
    Signs, marquees and awnings . . . . . . . . . . .304.9
APPEAL
    Application . . . . . . . . . . . . . . . . . . . . . . . . .111.1
    Board decision . . . . . . . . . . . . . . . . . . . . . .111.6
    Board of appeals . . . . . . . . . . . . . . . . . . . . .111.2
    Court review . . . . . . . . . . . . . . . . . . . . . . . .111.7
    Disqualification . . . . . . . . . . . . . . . . . . . . .111.2.3
    Financial interest . . . . . . . . . . . . . . . . . . .111.2.3
    Hearing, emergency orders . . . . . . . . . . . .109.6
    Membership . . . . . . . . . . . . . . . . . . . . . . . .111.2
    Notice of appeal . . . . . . . . . . . . . . . . . . . . .111.1
    Postponed hearing . . . . . . . . . . . . . . . . . . .111.5
    Records . . . . . . . . . . . . . . . . . . . . . . . . . . .104.7
    Right to appeal . . . . . . . . . . . . . . . . . . . . . .111.1
    Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .111.6
APPLIANCE
    Cooking . . . . . . . . . . . . . . . . . . . . . .403.3, 602.2
    Heating . . . . . . . . . . . . . . . . . . . . . .602.2, 603.1
    Mechanical . . . . . . . . . . . . . . . . . . . . . . . .603.1
APPLICATION
    Other codes . . . . . . . . . . . . . . . . . . . . . . . .102.3
APPROVAL
    Alternatives . . . . . . . . . . . . . . . . . . . . . . . .105.2
    Authority . . . . . . . . . . . . . . . . . . . . .104.1, 105.2
    Modifications . . . . . . . . . . . . . . . . . . . . . . .105.1
APPROVED

Alternative materials, methods and
    equipment . . . . . . . . . . . . . . . . . . . . . . . . .105.2
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Energy conservation devices . . . . . . . . . . . .603.6
    Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . . .603.1
    Garbage storage facilities . . . . . . . . . . . . .307.3.1
    Modifications . . . . . . . . . . . . . . . . . . . . . . . .105.1
    Used materials and equipment . . . . . . . . . . .105.4
ARCHITECTURAL
    Structural members . . . . . . . . . . . . . . . . . .304.4
    Trim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.8
ARTIFICIAL
    Lighting of habitable rooms . . . . . . . . . . . . .401.3
    Lighting of other spaces . . . . . . . . . . . . . . .402.3
AUTOMOBILE
    Motor vehicles . . . . . . . . . . . . . . . . . . . . . .302.8
AWNING
    Signs, marquees and awnings . . . . . . . . . .304.9

## B

BALCONY
    Handrails and guardrails . . . . . . . . . . . . . . 306.1
BASEMENT
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Hatchways . . . . . . . . . . . . . . . . . . . . . . . .304.16
    Windows . . . . . . . . . . . . . . . . . . . . . . . . . .304.17
BATHROOM
    Common bathrooms . . . . . . . . . . . . .502.3, 503.1
    Hotels . . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
    Lighting . . . . . . . . . . . . . . . . . . . . . . . . . . .605.3
    Locks . . . . . . . . . . . . . . . . . . . . . . . . . . . . .503.1
    Outlets required . . . . . . . . . . . . . . . . . . . . .605.2
    Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . .503.1
    Ventilation . . . . . . . . . . . . . . . . . . . . . . . . .403.2
BATHTUB
    Required facilities . . . . . . . . . . . . . . . . . . . .502.1
    Rooming houses . . . . . . . . . . . . . . . . . . . . .502.2
    Sewage system . . . . . . . . . . . . . . . . . . . . .506.1
    Water heating facilities . . . . . . . . . . . . . . . .505.4
    Water system . . . . . . . . . . . . . . . . . . . . . . .505.1
BEDROOM
    Room area . . . . . . . . . . . . . . . . . . . . . . . .404.4.1
BOILER
    Unsafe equipment . . . . . . . . . . . . . . . . . .108.1.2

## C

CAPACITY
    Heating facilities . . . . . . . . . . 602.2, 602.3, 602.4
CAR (See AUTOMOBILE)
CEILING
    Basement rooms . . . . . . . . . . . . . . . . . . . .404.3

INDEX

Fire-resistance ratings . . . . . . . . . . . . . . . 703.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . 305.3
Minimum height . . . . . . . . . . . . . . . . . . . . 404.4
**CHANGE, MODIFY**
Application of other codes . . . . . . . . . . . . . 102.3
**CHIMNEY**
Exterior structure . . . . . . . . . . . . . . . . . . 304.11
Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . . 603.1
Flue . . . . . . . . . . . . . . . . . . . . . . 603.2, 603.3
**CLEANING**
Access for cleaning . . . . . . . . . . . . . . . . . . 504.2
Bathroom and kitchen floors . . . . . . . 305.3, 503.4
Disposal of garbage . . . . . . . . . . . . . . . . . 307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . . 307.2
Interior sanitation . . . . . . . . . . . . . . . . . . . 307.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . 305.3
Plumbing facilities, maintained . . . . . . . . . . 504.1
Required plumbing facilities . . . . . . . . . . . . . 502
Responsibility of persons . . . . . . . . . . . . . . 305.1
Trash containers . . . . . . . . . . . . . . . . . . . 307.3.2
Vacant structures and land . . . . . . . . . . . . . 301.3
**CLEARANCE**
Heating facilities . . . . . . . . . . . . . . . . . . . . 603.3
Plumbing fixtures . . . . . . . . . . . . . . . . . . . . 504.2
**CLOSING**
Streets . . . . . . . . . . . . . . . . . . . . . . . . . . . 109.3
Vacant structures . . . . . . . . . . . . . . . . . . . 108.2
**CLOTHES DRYER**
Exhaust . . . . . . . . . . . . . . . . . . . . . . . . . . 403.5
**CODE OFFICIAL**
Condemnation . . . . . . . . . . . . . . . . . . . . . . 108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . 110
Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
Emergency order . . . . . . . . . . . . . . . . . . . . 109
Enforcement authority . . . . . . . . . . . . . . . . 104.1
Failure to comply with demolition order . . . . 110.3
Identification . . . . . . . . . . . . . . . . . . . . . . . 104.5
Inspections . . . . . . . . . . . . . . . . . . . . . . . . 104.3
Liability, relief of personal . . . . . . . . . . . . . . 103.4
Membership of board of appeals . . . . . . . . . 111.2
Notice of violation . . . . . . . . . . . . . . 104.6, 107
Notices and orders . . . . . . . . . . . . . . . . . . . . 107
Official records . . . . . . . . . . . . . . . . . . . . . . 104.7
Personal liability . . . . . . . . . . . . . . . . . . . . . 103.4
Placarding . . . . . . . . . . . . . . . . . . . . . . . . . 108.4
Prosecution . . . . . . . . . . . . . . . . . . . . . . . . 106.3
Removal of placard . . . . . . . . . . . . . . . . . 108.4.1
Right of entry . . . . . . . . . . . . . . . . . . . . . . . 104.4
Rule-making authority . . . . . . . . . . . . . . . . . 104.2
Transfer of ownership . . . . . . . . . . . . . . . . . 107.5
Vacant structures . . . . . . . . . . . . . . . . . . . . 108.2
Voting of appeals board . . . . . . . . . 111.2, 111.6
**COLD WATER**
Drinking . . . . . . . . . . . . . . . . . . . . . . . . . . . 502.4
Required facilities . . . . . . . . . . . . . . . . . . . . . 502
Rooming houses . . . . . . . . . . . . . . . . . . . . . 502.2
Water system . . . . . . . . . . . . . . . . . . . . . . . . 505
**COMBUSTION**
Combustion air . . . . . . . . . . . . . . . . . . . . . . 603.5

**CONDEMNATION**
Closing of vacant structures . . . . . . . . . . . . 108.2
Failure to comply . . . . . . . . . . . . . . . . . . . . 110.3
General . . . . . . . . . . . . . . . . . . . . . . . . . . . 108.1
Notices and orders . . . . . . . . . . . . 108.2, 108.3
Placarding . . . . . . . . . . . . . . . . . . . . . . . . . 108.4
Removal of placard . . . . . . . . . . . . . . . . . 108.4.1
**CONFLICT**
Conflict of interest . . . . . . . . . . . . . . . . . . 111.2.3
Violations . . . . . . . . . . . . . . . . . . . . . . . . . 106.1
**CONNECTION**
Plumbing fixtures . . . . . . . . . . . . . . . . . . . . 504.1
Sewage system . . . . . . . . . . . . . . . . . . . . . 506.1
Water heating . . . . . . . . . . . . . . . . . . . . . . 505.4
Water system . . . . . . . . . . . . . . . . . . . . . . 505.1
**CONSTRUCTION**
Existing structures . . . . . . . . . . . . . . . . . . . 101.2
**CONTAINER**
Garbage . . . . . . . . . . . . . . . . . . . . . . . . . 307.3.2
Rubbish storage . . . . . . . . . . . . . . . . . . . 307.2.1
**CONTINUOUS**
Egress . . . . . . . . . . . . . . . . . . . . . . . . . . . 702.1
**CONTRACTOR**
Conflict of interest . . . . . . . . . . . . . . . . . . 111.2.3
**CONTROL**
Insect and rodent control . . . . . . . . 302.5, 304.5
Safety controls . . . . . . . . . . . . . . . . . . . . . 603.4
**COOLING**
Cooling towers . . . . . . . . . . . . . . . . . . . . 304.11
**CORRIDOR**
Accumulation of rubbish . . . . . . . . . . . . . . . 307.1
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 402.2
Lighting fixtures . . . . . . . . . . . . . . . . . . . . . 605.3
Ratings maintained . . . . . . . . . . . . . . . . . . . 703
Toilet rooms, access . . . . . . . . . . . . . . . . . 503.1

**D**

**DAMP, DAMPNESS**
Roofs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 304.7
Window, door frames . . . . . . . . . . . . . . . . 304.13
**DANGEROUS, HAZARDOUS**
Condemnation . . . . . . . . . . . . . . . . . . . . . . 108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . 110
Electrical hazards . . . . . . . . . . . . . . . . . . . 604.3
Elevators . . . . . . . . . . . . . . . . . . . . . . . . . 606.1
Existing remedies . . . . . . . . . . . . . . . . . . . 102.4
Fire safety . . . . . . . . . . . . . . . . . . . . . . . . . 701.1
Heating facilities . . . . . . . . . . . . . . 602, 603.1
Imminent danger . . . . . . . . . . . . . . . . . . . . . 202
Unsafe structures and equipment . . . . . . . . . 108
**DECKS**
Handrails and guardrails . . . . . . . . . . . . . . 304.12
Maintenance . . . . . . . . . . . . . . . . 304.2, 304.10
**DECORATION**
Exterior structure . . . . . . . . . . . . . . . . . . . . 304.8
**DEMOLITION**
Existing remedies . . . . . . . . . . . . . . . . . . . 102.4

Failure to comply. . . . . . . . . . . . . . . . . . . . .110.3
General . . . . . . . . . . . . . . . . . . . . . . . . . . . . .110
Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .110.2
Salvage materials . . . . . . . . . . . . . . . . . . . . .110.4
Violations . . . . . . . . . . . . . . . . . . . . . . . . . . .110.3

**DETECTORS**
Smoke . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .704

**DETERIORATION**
Exterior walls . . . . . . . . . . . . . . . . . . . . . . . .304.6

**DIRECT**
Egress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.1

**DISPOSAL**
Disposal of garbage . . . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish. . . . . . . . . . . . . . . . . . . .307.2

**DOOR**
Exit doors . . . . . . . . . . . . . . . . . . . . . . . . . . .702.3
Fire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .703.2
Hardware . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.15
Insect screens. . . . . . . . . . . . . . . . . . . . . . . .304.14
Interior surfaces . . . . . . . . . . . . . . . . . . . . . .305.3
Locks . . . . . . . . . . . . . . . . . . . . . .304.15, 702.3
Maintenance . . . . . . . . . . . . . . .304.13, 304.15
Weather tight. . . . . . . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . . . . . .304.13

**DORMITORY (ROOMING HOUSE, HOTEL, MOTEL)**
Locked doors . . . . . . . . . . . . . . . . . . . . . . . .702.3
Privacy. . . . . . . . . . . . . . . . . . . .503.1, 503.2

**DRAIN, DRAINAGE**
Basement hatchways . . . . . . . . . . . . . . . . . .304.16
Plumbing connections . . . . . . . . . . . . . . . . .506
Storm drainage . . . . . . . . . . . . . . . . . . . . . . .507

**DUCT**
Exhaust duct. . . . . . . . . . . . . . . . . . . . . . . . .304.9

**DUST**
Process ventilation . . . . . . . . . . . . . . . . . . .403.4

**DWELLING**
Cleanliness . . . . . . . . . . . . . . . . .305.1, 307.1
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
Electrical . . . . . . . . . . . . . . . . . . . . . . . . . . . .604.1
Heating facilities. . . . . . . . . . . . . . . . . . . . . .602
Required facilities . . . . . . . . . . . . . . . . . . . .502

# E

**EASEMENT**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202

**EGRESS**
Aisles . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.2
Emergency escape. . . . . . . . . . . . . . . . . . . .702.4
General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
Lighting . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402.2
Locked doors . . . . . . . . . . . . . . . . . . . . . . . .702.3
Obstructions prohibited. . . . . . . . . . . . . . . .702.1
Stairs, porches and
railings . . . . . . . . . . .304.10, 305.4, 305.5, 306.1

**ELECTRIC, ELECTRICAL**
Condemnation . . . . . . . . . . . . . . . . . . . . . . .108.1

Facilities required . . . . . . . . . . . . . . . . . . . . .604.1
General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .601.1
Hazards . . . . . . . . . . . . . . . . . . . . . . . . . . . . .604.3
Installation. . . . . . . . . . . . . . . . . . . . . . . . . . .605.1
Luminaires . . . . . . . . . . . . . . . . . . . . . . . . . .605.3
Receptacles. . . . . . . . . . . . . . . . . .604.3, 605.2
Responsibility . . . . . . . . . . . . . . . . . . . . . . . .601.2
Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .604.2

**ELEVATOR**
Condemnation . . . . . . . . . . . . . . . . . . . . . . .108.1
General. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .606.1
Maintenance . . . . . . . . . . . . . . . .606.1, 606.2

**EMERGENCY**
Emergency measures . . . . . . . . . . . . . . . . . .109
Emergency orders . . . . . . . . . . . . . . . . . . . .109.1
Escape . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.4

**ENFORCEMENT**
Duties and powers. . . . . . . . . . . . . . . . . . . .104
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2

**EQUIPMENT**
Alternative. . . . . . . . . . . . . . . . . . . . . . . . . . .105.2
Combustion air . . . . . . . . . . . . . . . . . . . . . . .603.5
Condemnation . . . . . . . . . . . . .108.1.2, 108.3
Electrical installation . . . . . . . . . . . . . . . . . .605.1
Emergency order . . . . . . . . . . . . . . . . . . . . .109.1
Energy conservation devices . . . . . . . . . . .603.6
Fire safety requirements, responsibility . . . .701.2
Flue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .603.2
Installation. . . . . . . . . . . . . . . . . . . . . . . . . . .603.1
Interior structure . . . . . . . . . . . . . . . . . . . . . .305.1
Placarding . . . . . . . . . . . . . . . . . .108.3, 108.4
Prohibited occupancy . . . . . . . . . . . . . . . . .108.5
Responsibility . . . . . . . . . . . . . . . . . . . . . . . .601.2
Safety controls . . . . . . . . . . . . . . . . . . . . . . .603.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Scope, mechanical and electrical. . . . . . . .601.1
Unsafe . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .108
Used . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .105.4

**EXHAUST**
Clothes dryer . . . . . . . . . . . . . . . . . . . . . . . .403.5
Exhaust ducts. . . . . . . . . . . . . . . . . . . . . . . .304.9
Process ventilation . . . . . . . . . . . . . . . . . . .403.4

**EXISTING**
Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . .102.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Structural members . . . . . . . . . . . . . . . . . . .304.4
Structures . . . . . . . . . . . . . . . . . . . . . . . . . . .101.3

**EXTERIOR**
Decorative features. . . . . . . . . . . . . . . . . . .304.8
Egress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
Exterior structure . . . . . . . . . . . . . . . . . . . . .304
Exterior walls . . . . . . . . . . . . . . . . . . . . . . . .304.6
Painting . . . . . . . . . . . . . . . . . . . .304.2, 304.6
Rodent harborage . . . . . . . . . . . . .302.5, 304.5
Sanitation . . . . . . . . . . . . . . . . . . . . . . . . . . .304.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
Stair. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.10
Street numbers. . . . . . . . . . . . . . . . . . . . . . .304.3

INDEX

Weather tight. . . . . . . . . . . . . . . . . . . . . 304.13

**EXTERMINATE**
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
Insect and rodent control. . . . . 302.5, 304.5, 304.14
Responsibility of owner . . . . . . . . . . . 301.2, 306.2
Responsibility of tenant-occupant . . . 306.3, 306.5

**F**

**FAN**
Exhaust vents . . . . . . . . . . . . . . . . . . . .302.6

**FEES, EXPENSES, COST**
Closing vacant structures . . . . . . . . . . . . . 108.2
Demolition. . . . . . . . . . . . . . . . 110.1, 110.3, 110.4
Extermination . . . . . . . 308.2, 308.3, 308.4, 308.5
General . . . . . . . . . . . . . . . . . . . . . . . . . . . 103.5
Relief from personal liability . . . . . . . . . . . .103.4
Responsibility, fire safety . . . . . . . . . . . . . 701.2

**FENCE**
Accessory. . . . . . . . . . . . . . . . . . . . . . . . .302.7
Maintenance . . . . . . . . . . . . . . . . . . . . . . . 304.2

**FIRE**
Fire-resistance ratings . . . . . . . . . . . . . . . 703.1
General, fire-protection systems . . . . . . . . . . 704
Responsibility, fire safety . . . . . . . . . . . . . 701.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
Scope, fire safety . . . . . . . . . . . . . . . . . . . 701.1
Smoke alarms. . . . . . . . . . . . . . . . . . . . . . 704.2

**FLAMMABLE LIQUID**
Containers . . . . . . . . . . . . . . . . . . . . . . .108.1.2

**FLOOR, FLOORING**
Area for bedrooms and living rooms . . . . . 404.4.1
Fire-resistance ratings . . . . . . . . . . . . . . . 703.1
Interior surfaces. . . . . . . . . . . . . . . . 305.1, 305.3
Space requirements . . . . . . . . . . . 404.4.1, 404.6

**FOOD PREPARATION**
Cooking equipment . . . . . . . . . . . . . 403.3, 602.2
Sanitary condition . . . . . . . . . . . . . . 305.1, 404.7
Ventilation . . . . . . . . . . . . . . . . . . . . . . . . 403.4

**FOUNDATION**
Condemnation . . . . . . . . . . . . . . . . . . . . 108.1.1
Foundation walls. . . . . . . . . . . . . . . . . . . . 304.5

**FRAME**
Window and door frames . . . . . . . . . . . . . 304.13

**G**

**GAS**
Energy conservation devices . . . . . . . . . . . 603.6
Exhaust vents . . . . . . . . . . . . . . . . . . . . . 302.6
Process ventilation . . . . . . . . . . . . . . . . . . 403.4

**GLAZING**
Materials . . . . . . . . . . . . . . . . . . . . . . . 304.13.1

**GRADE**
Drainage . . . . . . . . . . . . . . . . . . . 302.2, 507

**GUARD**
Basement windows. . . . . . . . . . . . . . . . . . 304.17
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202

Anchorage and maintenance . . . . . . . . . . 304.12

**H**

**HABITABLE**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402
Minimum ceiling height. . . . . . . . . . . . . . . . 404.3
Minimum room width. . . . . . . . . . . . . . . . . . 404.2
Required plumbing facilities. . . . . . . . . . . . . .502
Residential heating facilities . . . . . . . 602.2, 602.3
Space requirements . . . . . . . . . . . . . . . . 404.4.1
Ventilation . . . . . . . . . . . . . . . . . . . . . . . . . .403

**HANDRAIL**
Handrails . . . . . . . . . . . . . . 304.12, 305.5, 306.1

**HARDWARE**
Door hardware. . . . . . . . . . . . . . . . 304.15, 702.3
Openable windows . . . . . . . . . . . . . . . . 304.13.2

**HAZARDOUS (See DANGEROUS, HAZARDOUS)**

**HEAT, HEATING**
Cooking equipment . . . . . . . . . . . . . 403.3, 602.2
Energy conservation devices . . . . . . . . . . . 603.6
Fireplaces. . . . . . . . . . . . . . . . . . . . . . . . . 603.1
Heating . . . . . . . . . . . . . . . . . . . . . . . . . . 603.1
Mechanical equipment . . . . . . . . . . . . . . . . 603.1
Required capabilities . . . . . . . . . . . . . . . . . . .602
Residential heating . . . . . . . . . . . . . 602.2, 602.3
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
Supply. . . . . . . . . . . . . . . . . . . . . . . . . . . 602.3
Water heating facilities . . . . . . . . . . . . . . . 505.4
Water system. . . . . . . . . . . . . . . . . . . . . . . .505

**HOUSEKEEPING UNIT**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202

**HEIGHT**
Minimum ceiling height . . . . . . . . . . . . . . . 404.3

**HOT (See HEAT, HEATING)**

**HOTELS, ROOMING HOUSES AND DORMITORY UNITS, MOTELS**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202
Locked doors . . . . . . . . . . . . . . . . . . . . . . 702.3
Required facilities . . . . . . . . . . . . . . . . . . . . .502
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . . .503

**I**

**IDENTIFICATION**
Code official . . . . . . . . . . . . . . . . . . . . . . . 104.5

**INFESTATION**
Condemnation . . . . . . . . . . . . . . . . . . . . 108.1.3
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202
Insect and rodent . . . . . . . 302.5, 304.14, 308.1

**INSECTS**
Extermination. . . . . . . . . . . . . . . . . . . . . . . .308
Infestation . . . . . . . . . . . . . . . . . . . . . . . . 308.1
Insect screens. . . . . . . . . . . . . . . . . . . . . 304.14

**INSPECTIONS**
General . . . . . . . . . . . . . . . . . . . . . . . . . . 104.3
Right of entry . . . . . . . . . . . . . . . . . . . . . . 104.4

26

**INSPECTOR**
Identification . . . . . . . . . . . . . . . . . . . 104.5
Inspections . . . . . . . . . . . . . . . . . . . . 104.3
Records . . . . . . . . . . . . . . . . . . . . . . 104.7
**INTENT**
Code . . . . . . . . . . . . . . . . . . . . . . . . 101.1
Rule-making authority . . . . . . . . . . . . . . 104.2
**INTERIOR**
Interior structure . . . . . . . . . . . . . . . . . 305
Interior surfaces . . . . . . . . . . . . . . . . . 305.3
Means of egress . . . . . . . . . . . . . . . . . 702
Sanitation . . . . . . . . . . . . . . . . . . . . . 305.1

**J**

**JURISDICTION**
Title . . . . . . . . . . . . . . . . . . . . . . . . . 101.1

**K**

**KITCHEN**
Electrical outlets required . . . . . . . . . . . . 605.2
Minimum width . . . . . . . . . . . . . . . . . . 404.2
Prohibited use . . . . . . . . . . . . . . . . . . 404.4.4
Room lighting . . . . . . . . . . . . . . . . . . . 605.3
Water heating facilities . . . . . . . . . . . . . . 505.4

**L**

**LANDING**
Handrails and guards . . . . . 304.12, 305.4, 305.5,
306.1
Maintenance . . . . . . . . . . . . . . . 304.10, 305.4
**LAUNDRY**
Room lighting . . . . . . . . . . . . . . . . . . . 605.3
Water heating facilities . . . . . . . . . . . . . . 505.4
**LAVATORY**
Hotels . . . . . . . . . . . . . . . . . . . . . . . . 502.3
Required facilities . . . . . . . . . . . . . . . . . 502
Rooming houses . . . . . . . . . . . . . . . . . 502.2
Sanitary drainage system . . . . . . . . . . . . 506
Water heating facilities . . . . . . . . . . . . . . 505.4
Water system . . . . . . . . . . . . . . . . . . . 505
**LEASE (SELL, RENT)**
Heat supplied . . . . . . . . . . . . . . . . . . . 602.3
Salvage materials . . . . . . . . . . . . . . . . . 110.4
Transfer of ownership . . . . . . . . . . . . . . 107.5
**LIEN**
Closing of vacant structures . . . . . . . . . . 108.2
Demolition . . . . . . . . . . . . . . . . . . . . . 110.3
Failure to comply . . . . . . . . . . . . . . . . . 110.3
**LIGHT, LIGHTING**
Common halls and stairways . . . . . . 402.2, 605.3
Luminaires . . . . . . . . . . . . . . . . . . . . . 605.3
General . . . . . . . . . . . . . . . . . . . . . . . 402
Habitable rooms . . . . . . . . . . . . . . . . . 402.1
Other spaces . . . . . . . . . . . . . . . . . . . 402.3

Responsibility . . . . . . . . . . . . . . . . . . . 401.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . 101.2
Toilet rooms . . . . . . . . . . . . . . . . . . . . 605.3
**LIVING ROOM**
Room area . . . . . . . . . . . . . . . . . . . . . 404.4.1
**LOAD, LOADING**
Elevators, escalators and dumbwaiters . . . . 606.1
Handrails and guards . . . . . . . . . . 304.12, 305.5
Live load . . . . . . . . . . . . . . . . . . 304.4, 305.2
Stairs and porches . . . . . . . . . . . . 304.10, 305.2
Structural members . . . . . . . . . . . . 304.4, 305.2

**M**

**MAINTENANCE**
Required . . . . . . . . . . . . . . . . . . . . . . 102.2
**MATERIAL**
Alternative . . . . . . . . . . . . . . . . . . . . . 105.2
Salvage . . . . . . . . . . . . . . . . . . . . . . . 110.4
Used . . . . . . . . . . . . . . . . . . . . . . . . . 105.4
**MEANS OF EGRESS (See EGRESS)**
**MECHANICAL**
Installation . . . . . . . . . . . . . . . . . . . . . 603.1
Responsibility . . . . . . . . . . . . . . . . . . . 601.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . 601.1
Ventilation, general . . . . . . . . . . . . . . . . 403
Ventilation, toilet rooms . . . . . . . . . . . . . 403.2
**MINIMUM**
Ceiling height . . . . . . . . . . . . . . . . . . . 404.3
Room width . . . . . . . . . . . . . . . . . . . . 404.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . 301.1
**MODIFICATION**
Approval . . . . . . . . . . . . . . . . . . . . . . 105.1
**MOTEL (See HOTELS)**
**MOTOR VEHICLES**
Inoperative . . . . . . . . . . . . . . . . . . . . . 302.8
Painting . . . . . . . . . . . . . . . . . . . . . . . 302.8

**N**

**NATURAL**
Lighting . . . . . . . . . . . . . . . . . . . 401.3, 402
Ventilation . . . . . . . . . . . . . . . . . 401.3, 403
**NOTICE**
Appeal . . . . . . . . . . . . . . . . . . . . . . . 111.1
Form . . . . . . . . . . . . . . . . . . . . . . . . . 107.2
Method of service . . . . . . . . . . . . . . . . . 107.3
Orders . . . . . . . . . . . . . . . . . . . . . . . 107
Owner, responsible person . . . . . . . . . . . 107.1
Penalties . . . . . . . . . . . . . . . . . . . . . . 107.4
Placarding of structure . . . . . . . . . . . . . 108.4
Transfer of ownership . . . . . . . . . . . . . . 107.5
Vacating structure . . . . . . . . . . . . . . . . 108.2
**NOXIOUS**
Process ventilation . . . . . . . . . . . . . . . . 403.4
Weeds . . . . . . . . . . . . . . . . . . . . . . . . 302.4

**NUISANCE**
Closing of vacant structures . . . . . . . . . . . . 108.2

## O

**OBSTRUCTION**
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . 402.1
Right of entry . . . . . . . . . . . . . . . . . . . . . 104.4
**OCCUPANCY (See USE)**
**OPENABLE**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . 202
Habitable rooms . . . . . . . . . . . . . . . . . . . . 403.1
Locked doors . . . . . . . . . . . . . . . . . . . . . . 702.3
Windows . . . . . . . . . . . . . . . . . . . . . 304.13.2
**OPERATOR**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . 202
**ORDER (See NOTICE)**
**ORDINANCE, RULE**
Applicability . . . . . . . . . . . . . . . . . . . . . . . 102
Application for appeal . . . . . . . . . . . . . . . . 111.1
**OUTLET**
Electrical . . . . . . . . . . . . . . . . . . . . . . . . 605.2
**OWNER**
Closing of vacant structures . . . . . . . . . . . . 108.2
Definition . . . . . . . . . . . . . . . . . . . . . . . . . 202
Demolition . . . . . . . . . . . . . . . . . . . . . . . . 110
Extermination . . . . . . . . . . . . . . . . . . . . . 308.2
Failure to comply. . . . . . . . . . . . . . . . . . . 110.3
Insect and rodent control . . . . 302.5, 308.2, 308.4
Notice. . . . . . . . . . . . . . . . . . 107.1, 108.3
Placarding of structure . . . . . . . . . . . . . . . 108.4
Responsibility . . . . . . . . . . . . . . . . . . . . . 301.2
Responsibility, fire safety . . . . . . . . . . . . . . 701.2
Responsibility, light, ventilation . . . . . . . . . . 401.2
Responsibility, mechanical and electrical . . . 601.2
Responsibility, plumbing facilities . . . . . . . . . 501.2
Right of entry . . . . . . . . . . . . . . . . . . . . . 104.4
Rubbish storage. . . . . . . . . . . . . . . . . . . 307.2.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
Transfer of ownership . . . . . . . . . . . . . . . . 107.5

## P

**PASSAGEWAY**
Common hall and stairway . . . . . . . . . . . . . 402.2
Interior surfaces . . . . . . . . . . . . . . . . . . . 305.3
Toilet rooms, direct access . . . . . . . . . . . . . 503.1
**PENALTY**
Notices and orders . . . . . . . . . . . . . . . . . . 107.4
Placarding of structure . . . . . . . . . . . . . . . 108.4
Prohibited occupancy . . . . . . . . . . . . . . . . 108.5
Removal of placard . . . . . . . . . . . . . . . . . 108.4.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
Violations . . . . . . . . . . . . . . . . . . . . . . . . 106.4
**PEST (VERMIN)**
Condemnation . . . . . . . . . . . . . . . . . . . . . 108.1
Extermination . . . . . . . . . . . . . . . . . . . . . 308.1
Insect and rat control . . . . . . 302.5, 304.14, 308.1

**PLACARD, POST**
Closing . . . . . . . . . . . . . . . . . . . . . . . . . 108.2
Condemnation . . . . . . . . . . . . . . . . . . . . . 108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . 110
Emergency, notice . . . . . . . . . . . . . . . . . . 109.1
Notice to owner . . . . . . . . . . . . . . 107.1, 108.3
Placarding of structure . . . . . . . . . . . . . . . 108.4
Prohibited use. . . . . . . . . . . . . . . . . . . . . 108.5
Removal. . . . . . . . . . . . . . . . . . . . . . . . 108.4.1
**PLUMBING**
Access . . . . . . . . . . . . . . . . . . . . . . . . . 504.2
Clean and sanitary . . . . . . . . . . . . . . . . . . 504.1
Connections . . . . . . . . . . . . . . . . . . . . . . 505.1
Contamination. . . . . . . . . . . . . . . . . . . . . 505.2
Employee's facilities . . . . . . . . . . . . . . . . . 503.3
Fixtures . . . . . . . . . . . . . . . . . . . . . . . . . 504.1
Required facilities . . . . . . . . . . . . . . . . . . . 502
Responsibility . . . . . . . . . . . . . . . . . . . . . 501.2
Sanitary drainage system . . . . . . . . . . . . . . 506
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . 501.1
Storm drainage . . . . . . . . . . . . . . . . . . . . 507
Supply. . . . . . . . . . . . . . . . . . . . . . . . . . 505.3
Water heating facilities . . . . . . . . . . . . . . . 505.4
**PORCH**
Handrails. . . . . . . . . . . . . . . . . . . . . . . . 306.1
Structurally sound. . . . . . . . . . . . . . . . . . 304.10
**PORTABLE (TEMPORARY)**
Cooking equipment. . . . . . . . . . . . . . . . . . 603.1
**PRESSURE**
Water supply. . . . . . . . . . . . . . . . . . . . . . 505.3
**PRIVATE, PRIVACY**
Bathtub or shower. . . . . . . . . . . . . . . . . . 503.1
Occupancy limitations. . . . . . . . . . . . . . . . 404.1
Required plumbing facilities. . . . . . . . . . . . . 502
Sewage system . . . . . . . . . . . . . . . . . . . 506.1
Water closet and lavatory . . . . . . . . . . . . . . 503.1
Water system . . . . . . . . . . . . . . . . . . . . . 505.1
**PROPERTY, PREMISES**
Cleanliness . . . . . . . . . . . . . . . . 304.1, 307.1
Condemnation . . . . . . . . . . . . . . . . . . . . . 108
Definition . . . . . . . . . . . . . . . . . . . . . . . . . 202
Demolition . . . . . . . . . . . . . . . . . . . . . . . . 110
Emergency measures . . . . . . . . . . . . . . . . 109
Exterior areas . . . . . . . . . . . . . . . . . . . . . 302
Extermination, multiple occupancy . . 302.5, 308.4
Extermination, single occupancy . . . 302.5, 308.3
Failure to comply. . . . . . . . . . . . . . . . . . . 110.3
Grading and drainage. . . . . . . . . . . . . . . . 302.2
Responsibility . . . . . . . . . . . . . . . . . . . . . 301.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . 301.1
Storm drainage . . . . . . . . . . . . . . . . . . . . 507
Vacant structures and land. . . . . . . . . . . . . 301.3
**PROTECTION**
Basement windows. . . . . . . . . . . . . . . . . 304.17
Fire-protection systems . . . . . . . . . . . . . . . 704
Signs, marquees and awnings . . . . . . . . . . 304.9
**PUBLIC**
Cleanliness . . . . . . . . . . . . . . . . 304.1, 305.1
Egress. . . . . . . . . . . . . . . . . . . . . . . . . . 702.1

Hallway . . . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
Sewage system . . . . . . . . . . . . . . . . . . . . . .506.1
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . . . .503
Vacant structures and land . . . . . . . . . . . .301.3
Water system . . . . . . . . . . . . . . . . . . . . . . . . .505

**PUBLIC WAY**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . .202

**R**

**RAIN**
Basement hatchways . . . . . . . . . . . . . . . . .304.16
Exterior walls . . . . . . . . . . . . . . . . . . . . . . .304.6
Grading and drainage . . . . . . . . . . . . . . . . .303.2
Roofs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.7
Window and door frames . . . . . . . . . . . . . .304.13

**RECORD**
Official records . . . . . . . . . . . . . . . . . . . . . .104.7

**REHABILITATION**
Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.3

**REPAIR**
Application of other codes . . . . . . . . . . . . .102.3
Chimneys . . . . . . . . . . . . . . . . . . . . . . . . . .304.11
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . .110.1
Exterior surfaces . . . . . . . . . . . . . . . . . . . . .304.1
Maintenance . . . . . . . . . . . . . . . . . . . . . . . .102.2
Public areas . . . . . . . . . . . . . . . . . . . . . . . .302.3
Signs, marquees and awnings . . . . . . . . . .304.9
Stairs and porches . . . . . . . . . . . . . . . . . .304.10
Weather tight . . . . . . . . . . . . . . . . . . . . . . .304.13
Workmanship . . . . . . . . . . . . . . . . . . . . . . .102.5

**REPORTS**
Test reports . . . . . . . . . . . . . . . . . . . . . . .105.3.2

**RESIDENTIAL**
Extermination . . . . . . . . . . . . . . . . . . . . . . . .308
Residential heating . . . . . . . . . . . . . . . . . . .602.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2

**RESPONSIBILITY**
Extermination . . . . . . . . . . . . . . . . . . . . . . . .308
Fire safety . . . . . . . . . . . . . . . . . . . . . . . . . .701.2
Garbage disposal . . . . . . . . . . . . . . . . . . . .307.3
General . . . . . . . . . . . . . . . . . . . . . . . . . . . .301.2
Mechanical and electrical . . . . . . . . . . . . . .601.2
Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
Placarding of structure . . . . . . . . . . . . . . .108.4
Plumbing facilities . . . . . . . . . . . . . . . . . . .501.2
Rubbish storage . . . . . . . . . . . . . . . . . . . .307.2.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . .101.2, 301.1

**REVOKE, REMOVE**
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . . .110
Existing remedies . . . . . . . . . . . . . . . . . . . .102.4
Process ventilation . . . . . . . . . . . . . . . . . . .403.4
Removal of placard . . . . . . . . . . . . . . . . . .108.4.1
Rubbish removal . . . . . . . . . . . . . . . . . . . .307.2.1

**RIGHT OF ENTRY**
Duties and powers of code official . . . . . . .104.4
Inspections . . . . . . . . . . . . . . . . . . . . . . . . .104.3

**RODENTS**
Basement hatchways . . . . . . . . . . . . . . . . .304.16
Condemnation . . . . . . . . . . . . . . . . . . . . . . . .108
Exterior surfaces . . . . . . . . . . . . . . . . . . . . .304.6
Extermination . . . . . . . . . . . . . . . . . . . .302.5, 308
Guards for basement windows . . . . . . . . .304.17
Harborage . . . . . . . . . . . . . . . . . . . . . . . . . .302.5
Insect and rodent control . . . . . . . . . . . . . .308.1

**ROOF**
Exterior structure . . . . . . . . . . . . . . . . . . . .304.1
Roofs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.7
Storm drainage . . . . . . . . . . . . . . . . . . . . . . .507

**ROOM**
Bedroom and living room . . . . . . . . . . . . . .404.4
Cooking facilities . . . . . . . . . . . . . . . . . . . .403.3
Direct access . . . . . . . . . . . . . . . . . . . . . . .503.2
Habitable . . . . . . . . . . . . . . . . . . . . . . . . . . .402.1
Heating facilities . . . . . . . . . . . . . . . . . . . . . .602
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402
Minimum ceiling heights . . . . . . . . . . . . . . .404.3
Minimum width . . . . . . . . . . . . . . . . . . . . . .404.2
Overcrowding . . . . . . . . . . . . . . . . . . . . . . .404.5
Prohibited use . . . . . . . . . . . . . . . . . . . . .404.4.4
Temperature . . . . . . . . . . . . . . . . . . . . . . .602.5
Toilet . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .503
Ventilation . . . . . . . . . . . . . . . . . . . . . . . . . . .403

**ROOMING HOUSES (See DORMITORY)**

**RUBBISH**
Accumulation . . . . . . . . . . . . . . . . . . . . . . .307.1
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . .202
Disposal . . . . . . . . . . . . . . . . . . . . . . . . . . .307.2
Garbage facilities . . . . . . . . . . . . . . . . . . .307.3.1
Rubbish storage . . . . . . . . . . . . . . . . . . . .307.2.1
Storage . . . . . . . . . . . . . . . . . . . . . . . . . . .307.2.1

**S**

**SAFETY, SAFE**
Chimney . . . . . . . . . . . . . . . . . . . . . . . . . . .304.11
Condemnation . . . . . . . . . . . . . . . . . . . . . .108.1
Electrical installation . . . . . . . . . . . . . . . . .605.1
Emergency measures . . . . . . . . . . . . . . . . . .109
Fire safety requirements . . . . . . . . . . . . . . .701
Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . . .603.1
Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.3
Safety controls . . . . . . . . . . . . . . . . . . . . . .603.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Unsafe structures and equipment . . . . . . . . .108

**SANITARY**
Bathroom and kitchen floors . . . . . . . . . . . .305.3
Cleanliness . . . . . . . . . . . . . . . . . . . .304.1, 305.1
Disposal of garbage . . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . . .307.2
Exterior property areas . . . . . . . . . . . . . . . .302.1
Exterior structure . . . . . . . . . . . . . . . . . . . .304.1
Food preparation . . . . . . . . . . . . . . . . . . . .404.7
Furnished by occupant . . . . . . . . . . . . . . . .302.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . .305.3

INDEX

Plumbing fixtures . . . . . . . . . . . . . . . . . . . . .504.1
Required plumbing facilities. . . . . . . . . . . . . . 502
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2

**SASH**
Window. . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.13

**SCREENS**
Insect screens. . . . . . . . . . . . . . . . . . . . . . . .304.14

**SECURITY**
Basement hatchways. . . . . . . . . . . . . . . .304.18.3
Building. . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.18
Doors . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.18.1
Vacant structures and land. . . . . . . . . . . . . .301.3
Windows . . . . . . . . . . . . . . . . . . . . . . . . . .304.18.2

**SELF-CLOSING SCREEN DOORS**
Insect screens. . . . . . . . . . . . . . . . . . . . . . . .304.14

**SEPARATION**
Fire-resistance ratings. . . . . . . . . . . . . . . . . . 703
Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . .404.1
Separation of units . . . . . . . . . . . . . . . . . . . .404.1
Water closet and lavatory . . . . . . . . . . . . . . .502.1

**SERVICE**
Electrical. . . . . . . . . . . . . . . . . . . . . . . . . . . .604.2
Method . . . . . . . . . . . . . . . . . . . . . . . . . . . .107.3
Notices and orders . . . . . . . . . . . . .107.1, 108.3
Service on occupant. . . . . . . . . . . . . . . . . . .108.3

**SEWER**
General. . . . . . . . . . . . . . . . . . . . . . . . . . . . .506.1
Maintenance. . . . . . . . . . . . . . . . . . . . . . . . .506.2

**SHOWER**
Bathtub or shower. . . . . . . . . . . . . . . . . . . . .502.1
Rooming houses. . . . . . . . . . . . . . . . . . . . . .502.2
Water heating facilities . . . . . . . . . . . . . . . . .505.4
Water system. . . . . . . . . . . . . . . . . . . . . . . . . 505

**SIGN**
Signs, marquees and awnings . . . . . . . . . . .304.9

**SINGLE-FAMILY DWELLING**
Extermination. . . . . . . . . . . . . . . . . . . . . . . . . 308

**SINK**
Kitchen sink . . . . . . . . . . . . . . . . . . . . . . . . .502.1
Sewage system . . . . . . . . . . . . . . . . . . . . . . . 506
Water supply. . . . . . . . . . . . . . . . . . . . . . . . .505.3

**SIZE**
Habitable room, light . . . . . . . . . . . . . . . . . . . 402
Habitable room, ventilation . . . . . . . . . . . . . . 403
Room area. . . . . . . . . . . . . . . . . . . . . . . . . .404.4.1

**SMOKE**
Alarms. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .704.2
Interconnection . . . . . . . . . . . . . . . . . . . . . . .704.4
Power source . . . . . . . . . . . . . . . . . . . . . . . .704.3

**SPACE**
General, light . . . . . . . . . . . . . . . . . . . . . . . . . 402
General, ventilation . . . . . . . . . . . . . . . . . . . . 403
Occupancy limitations . . . . . . . . . . . . . . . . . . 404
Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . .404.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . .401.1

**STACK**
Chimneys . . . . . . . . . . . . . . . . . . . . . . . . . .304.11

**STAIRS**
Common halls and stairways, light . . . . . . . .402.2
Exit facilities . . . . . . . . . . . . . . . . . . . . . . . . .305.4
Handrails . . . . . . . . . . . . . . . . . . . . .304.12, 305.5
Luminaires . . . . . . . . . . . . . . . . . . . . . . . . . .605.3
Public areas . . . . . . . . . . . . . . . . . . . . . . . . .302.3
Stairs and porches . . . . . . . . . . . . . . . . . . .304.10

**STANDARD**
Referenced . . . . . . . . . . . . . . . . . . . . . . . . . .102.7

**STORAGE**
Food preparation . . . . . . . . . . . . . . . . . . . . .404.7
Garbage storage facilities . . . . . . . . . . . . . . .307.3
Rubbish storage facilities. . . . . . . . . . . . . . .307.2.1
Sanitation . . . . . . . . . . . . . . . . . . . . . . . . . . .307.1

**STRUCTURE**
Accessory structures . . . . . . . . . . . . . . . . . .302.7
Closing of vacant structures . . . . . . . . . . . . .108.2
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . . 202
Emergency measures . . . . . . . . . . . . . . . . . . . 109
General, exterior. . . . . . . . . . . . . . . . . . . . . .304.1
General, condemnation . . . . . . . . . . . . . . . . . 110
General, interior structure. . . . . . . . . . . . . . .305.1
Placarding of structure . . . . . . . . . . . . . . . . .108.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
Structural members . . . . . . . . . . . . . .304.4, 305.2
Vacant structures and land. . . . . . . . . . . . . .301.3

**SUPPLY**
Combustion air . . . . . . . . . . . . . . . . . . . . . . .603.5
Connections . . . . . . . . . . . . . . . . . . . . . . . . .505.1
Water heating facilities . . . . . . . . . . . . . . . . .505.4
Water supply. . . . . . . . . . . . . . . . . . . . . . . . .505.3
Water system. . . . . . . . . . . . . . . . . . . . . . . . . 505

**SURFACE**
Exterior surfaces . . . . . . . . . . . . . . .304.2, 304.6
Interior surfaces . . . . . . . . . . . . . . . . . . . . . .305.3

**SWIMMING**
Swimming pools . . . . . . . . . . . . . . . .303.1, 303.2
Safety covers . . . . . . . . . . . . . . . . . . . . . . . .303.2


# T

**TEMPERATURE**
Nonresidential structures . . . . . . . . . . . . . . .602.4
Residential buildings. . . . . . . . . . . . . . . . . . .602.2
Water heating facilities . . . . . . . . . . . . . . . . .505.4

**TENANT**
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2

**TEST, TESTING**
Agency. . . . . . . . . . . . . . . . . . . . . . . . . . . .105.3.2
Methods. . . . . . . . . . . . . . . . . . . . . . . . . . .105.3.1
Reports . . . . . . . . . . . . . . . . . . . . . . . . . . .105.3.3
Required. . . . . . . . . . . . . . . . . . . . . . . . . . . .105.3

**TOXIC**
Process ventilation . . . . . . . . . . . . . . . . . . . .403.4

**TRASH**
Rubbish and garbage . . . . . . . . . . . . . . . . . . 307

## U

**UNOBSTRUCTED**
Access to public way . . . . . . . . . . . . . . . . . . . .702.1
General, egress . . . . . . . . . . . . . . . . . . . . . . . .702.1
**UNSAFE**
Equipment . . . . . . . . . . . . . . . . . . . . . . . .108.1.2
Existing remedies . . . . . . . . . . . . . . . . . . . . .102.4
General, condemnation . . . . . . . . . . . .108, 110
General, demolition . . . . . . . . . . . . . . . . . . . .110
Notices and orders . . . . . . . . . . . . . . .107, 108.3
Structure . . . . . . . . . . . . . . . . . . . . . . . . .108.1.1
**USE**
Application of other codes . . . . . . . . . . . . .102.3
General, demolition . . . . . . . . . . . . . . . . . . . .110

## V

**VACANT**
Closing of vacant structures . . . . . . . . . . . . .108.2
Emergency measure . . . . . . . . . . . . . . . . . . . .109
Method of service . . . . . . . . . . . . .107.3, 108.3
Notice to owner or to person
responsible . . . . . . . . . . . . . . . . . .107, 108.3
Placarding of structure . . . . . . . . . . . . . . . .108.4
Vacant structures and land . . . . . . . . . . . . .301.3
**VAPOR**
Exhaust vents . . . . . . . . . . . . . . . . . . . . . . .302.6
Process ventilation . . . . . . . . . . . . . . . . . . .403.4
**VEHICLES**
Inoperative . . . . . . . . . . . . . . . . . . . . . . . . .302.8
Painting . . . . . . . . . . . . . . . . . . . . . . . . . . .302.8
**VENT**
Connections . . . . . . . . . . . . . . . . . . . . . . . .504.3
Exhaust vents . . . . . . . . . . . . . . . . . . . . . . .302.6
Flue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .603.2
**VENTILATION**
Clothes dryer exhaust . . . . . . . . . . . . . . . . .403.5
Combustion air . . . . . . . . . . . . . . . . . . . . . .603.5
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
General, ventilation . . . . . . . . . . . . . . . . . . . .403
Habitable rooms . . . . . . . . . . . . . . . . . . . . .403.1
Process ventilation . . . . . . . . . . . . . . . . . . .403.4
Recirculation . . . . . . . . . . . . . . . . .403.2, 403.4
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . .403.2
**VERMIN**
Condemnation . . . . . . . . . . . . . . . . . . . . . . . .108
Insect and rat control . . . . . . . . . . . . .302.5, 308
**VIOLATION**
Condemnation . . . . . . . . . . . . . . . . . . . . . . . .108
General . . . . . . . . . . . . . . . . . . . . . . . . . . . . .106
Notice . . . . . . . . . . . . . . . . . . . . . . .107, 108.3
Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . . .106.4
Placarding of structure . . . . . . . . . . . . . . . .108.4
Prosecution . . . . . . . . . . . . . . . . . . . . . . . .106.3
Strict liability offense . . . . . . . . . . . .106.3, 202
Transfer of ownership . . . . . . . . . . . . . . . . .107.5

## W

**WALK**
Sidewalks . . . . . . . . . . . . . . . . . . . . . . . . . .302.3
**WALL**
Accessory structures . . . . . . . . . . . . . . . . . .302.7
Exterior surfaces . . . . . . . . . . . . . .304.2, 304.6
Exterior walls . . . . . . . . . . . . . . . . . . . . . . .304.6
Foundation walls . . . . . . . . . . . . . . . . . . . . .304.5
General, fire-resistance rating . . . . . . . . . . .703.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . .305.3
Outlets required . . . . . . . . . . . . . . . . . . . . .605.2
Temperature measurement . . . . . . . . . . . . .602.5
**WASTE**
Disposal of garbage . . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . . .307.2
Dwelling units . . . . . . . . . . . . . . . . . . . . . . .502.1
Garbage storage facilities . . . . . . . . . . . . .307.3.1
**WATER**
Basement hatchways . . . . . . . . . . . . . . . . .304.16
Connections . . . . . . . . . . . . . . . . . . . . . . . .506.1
Contamination . . . . . . . . . . . . . . . . . . . . . .505.2
General, sewage . . . . . . . . . . . . . . . . . . . . . .506
General, storm drainage . . . . . . . . . . . . . . . .507
General, water system . . . . . . . . . . . . . . . . . .505
Heating . . . . . . . . . . . . . . . . . . . . . . . . . . .505.4
Hotels . . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
Kitchen sink . . . . . . . . . . . . . . . . . . . . . . . .502.1
Required facilities . . . . . . . . . . . . . . . . . . . . .502
Rooming houses . . . . . . . . . . . . . . . . . . . . .502.2
Supply . . . . . . . . . . . . . . . . . . . . . . . . . . . .505.3
System . . . . . . . . . . . . . . . . . . . . . . . . . . . . .505
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . . .503
Water heating facilities . . . . . . . . . . . . . . . .505.4
**WEATHER, CLIMATE**
Heating facilities . . . . . . . . . . . . . . . . . . . . . .602
Rule-making authority . . . . . . . . . . . . . . . . .104.2
**WEATHERSTRIP**
Window and door frames . . . . . . . . . . . . . .304.13
**WEEDS**
Noxious weeds . . . . . . . . . . . . . . . . . . . . . .302.4
**WIDTH**
Minimum room width . . . . . . . . . . . . . . . . . .404.2
**WIND**
Weather tight . . . . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . . . . .304.13
**WINDOW**
Emergency escape . . . . . . . . . . . . . . . . . . .702.4
Glazing . . . . . . . . . . . . . . . . . . . . . . . . . .304.13.1
Guards for basement windows . . . . . . . . . .304.17
Habitable rooms . . . . . . . . . . . . . . . . . . . . .402.1
Insect screens . . . . . . . . . . . . . . . . . . . . . .304.14
Interior surface . . . . . . . . . . . . . . . . . . . . . .305.3
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402
Openable windows . . . . . . . . . . . . . . . .304.13.2
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . .403.2
Ventilation . . . . . . . . . . . . . . . . . . . . . . . . . .403
Weather tight . . . . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . . . . .304.13

INDEX

**WORKER**
    Employee facilities . . . . . . . . . . . . . . 503.3, 602.4
**WORKMANSHIP**
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102.5

Exhibit C (Part 1)
to
Complaint For Temporary Restraining Order,
Preliminary Injunction, Permanent Injunction,
Declaratory And Other Relief

Case No. 08-cv-3017

# EXHIBIT C, PART 1

## APPENDIX B ZONING*

*Editor's note:* Appendix B sets out the zoning ordinance, enacted on Jan. 13, 1983, by Ord. No. 83-1, as the same was originally enacted by the city. Amendments will be cited in a history note following the affected section. The editor has incorporated a uniform printing style for purposes of maintaining Code format; however, no substantive changes have been made.

**Cross references:** Buildings and building regulations, ch. 14; community development, ch. 18; environment, ch. 26; floods, ch. 34; transitional living residences, § 42-1; sexually oriented entertainment businesses, § 54-1941 et seq.; mobile home parks, ch. 58; planning, ch. 66; signs, ch. 70; streets, sidewalks and other public places, ch. 78; telecommunications, ch. 86; ordinances related to zoning, app. C.

Sec. I. Title.
Sec. II. Intent and purpose.
Sec. III. Rules and definitions.
Sec. IV. General provisions.
Sec. V. Nonconforming buildings and uses.
Sec. VI. Zoning districts and zoning district map.
Sec. VII. Residence districts.
Sec. VIII. Commercial business district.
Sec. IX. Industrial districts.
Sec. X. Off-street parking and loading.
Sec. XI. Reserved.
Sec. XII. Administration.
Sec. XIII. Amendments.
Sec. XIV. Violations; penalty.
Sec. XV. Enactment.

*An Ordinance to Classify, Regulate and Restrict the Location of Trades and Industries and the Location of Buildings Designed for the Specified Industrial, Commercial, Residential and Other Uses and to Regulate and Limit the Height and Bulk of Buildings Hereafter Erected; to Regulate and Determine the Area of Yards, Courts and Other Open Spaces Within and Surrounding Such Buildings and to Establish the Boundaries of Districts for the Said Purposes and Prescribing Penalties for the Violation of its Provisions, and for Creating a Board of Appeals.*

*Now, Therefore, Be and It Is Hereby Ordained by the City Council of Calumet City, Illinois:*

## Sec. I. Title.

This ordinance shall be known, referred to and recited as "The Zoning Ordinance of the City of Calumet City."

(Code 1980, App. B, § I)

## Sec. II. Intent and purpose.

The prime tool of planning is land use control, most commonly referred to as zoning. The purposes of zoning are many, but foremost among these purposes are:

To promote and protect the public health, safety, morals, comfort and general welfare of the people;

To divide the City of Calumet City into zones or districts restricting and regulating therein the location, erection, construction, reconstruction, alteration and use of buildings, structures, and land for residence, business manufacturing and other specified uses;

To provide adequate light, air, privacy and conveniences of access to property;

To protect the character and the stability of the residential, business, and manufacturing areas within the City of Calumet City and to promote the orderly and beneficial development of such areas;

To regulate the intensity of use of lot areas, and to determine the area of open spaces surrounding buildings, necessary to provide adequate light and air, and to protect the public health;

To establish building lines and the location of buildings designed for residential, business and manufacturing, or other uses within such areas;

To fix reasonable standards to which buildings or structures shall conform therein;

To prohibit uses, buildings or structures incompatible with the character of development or intended uses within specified zoning districts;

To prevent additions to or alteration or remodeling of existing buildings or structures in such a way as to avoid the restrictions and limitations imposed hereunder;

To limit congestion in the public streets and protect the public health, safety, convenience and general welfare by providing for the off-street parking of motor vehicles and the loading and unloading of commercial vehicles;

To protect against fire, explosion, noxious fumes and other hazards in the interest of the public health, safety, comfort and general welfare;

To prevent the overcrowding of land and undue concentration of structures, so far as is possible and appropriate in each district, by regulating the use and bulk of buildings in relation to the land surrounding them;

To conserve the taxable value of land and buildings throughout the City of Calumet City;

To provide for the elimination of nonconforming uses of land, buildings and structures which are adversely affecting the character and value of desirable development in each district.

And to define and limit the powers and duties of the administrative officers and bodies as provided herein.

(Code 1980, App. B, § II)


## Sec. III. Rules and definitions.

In the construction of this ordinance, the rules and definitions contained in this section shall be observed and applies, except when the context herein clearly indicated otherwise.

*Rules.*

The present tense includes the future the present.

The singular number includes the plural and the plural the singular.

The word building includes the word structure.

The word shall is mandatory, and the word may is permissive.

*3.2 Definitions.*

*Abutting:* To have a common property line or district line.

*Accessory:* A use, building, structure, or part of a building or structure which:

(1) Is subordinate to and serves the principal building or structure or principal use;

(2) Is subordinate in area, extent, or purpose to the principal building or structure or principal use served;

(3) Contributes to the comfort, convenience, or necessity of occupants of the principal building or principal use; and

(4) Is located on the same lot as the principal building or structure or principal use served, with the exception of such accessory off-street parking facilities as are permitted to locate elsewhere than on

the same lot as the building or use served.

*Adjacent:* To lie near or close to; in the neighborhood or vicinity of.

*Adjoining:* Touching or contiguous, as distinguished from lying near or adjacent.

*Agriculture:* The use for the pursuit of agriculture of a parcel of land twenty (20) acres or more in area under unified ownership or control and when within the perimeter of such a parcel there is no intervening street or land in other ownership or control. The pursuit of agriculture includes farming, dairying, pasturage, agriculture, horticulture, floriculture, viticulture, and animal and poultry husbandry and accessory uses customarily incidental to normal agricultural activities, but not including the commercial specialization of any of the above uses.

*Airport:* Any area of land which is used, or intended, for the landing and takeoff of aircraft, and any appurtenant areas which are used or intended for use as airport buildings or other airport structures or rights-of-way, together with all airport buildings and structures located thereon.

*Alley:* Any right-of-way, with a width of not less than twelve (12) feet or more than twenty-four (24) feet, which affords secondary means of vehicular access to abutting properties. A street shall not be considered an alley.

*Alteration:* Any change in size, shape, occupancy, or use of a building or structure.

*Animal hospital:* A building or portion thereof designed or used for the care, observation, or treatment of domestic animals.

*Automobile laundry:* A building or portion thereof containing facilities for washing more than two (2) motor vehicles, using production-line methods.

*Automobile service station:* A place where gasoline, stored only in underground tanks, kerosene, lubricating oil or grease, for operation of automobiles, are offered for sale directly to the public, on the premises, and including minor accessories and the servicing of automobiles; but not including major automobile repairs; and including washing of automobiles where no chain conveyor, blower or steam cleaning device is employed. When the dispensing, sale or offering for sale of motor fuels or oil is incidental to the conduct of a public garage, the premises shall be classified as a public garage. Automobile service stations shall not include sale or storage of automobiles or trailers (new or used).

*Automobile wrecking yard:* See "junk yard."

*Awning:* A roof-like mechanism, retractable in operation, which project from the wall of a building.

*Basement:* A story having part, but not more than one-half ( 1/2) of its floor to clear ceiling height below grade. When a basement is used for storage, or garages for use of occupants of the building, or other facilities common for the operation and maintenance of the entire building, it shall not be counted as a story.

*Block:* A tract of land bounded by streets, or by a combination of streets and public parks, other permanent ⌐ n areas, or other lines of demarcation. A block may be located in part beyond the boundary lines of the corporate limits of the City of Calumet City.

*Building:* Any structure designed or built for the support, enclosure, shelter, or protection of persons, animals, chattels, or property of any kind, and which is permanently affixed to the land. When any portion thereof is completely separated from every other portion by a party wall, then such portion shall be deemed to be a separate building.

[*Building commissioner:* The zoning administrator.]

*Building, completely enclosed:* A building separated on all sides from the adjoining open spaces by a permanent roof and by exterior walls, pierced only by windows and normal entrance and exit doors, or when adjoining another building or buildings on one (1) or two (2) sides, a roof and such exterior wall adjoining open space and party wall adjoining the other building.

*Building, detached:* A building surrounded by open space.

*Building, height of:* The vertical distance from curb level to the highest point of the coping of a flat roof or to the deck line of a mansard roof, or the mean height level between eaves and ridge for gable, hip or gambrel roofs. Chimneys, towers, spires, elevator penthouses, cooling towers, and similar customary accessory structures and equipment, other than signs, shall not be included in calculating building height.

*Building, principal:* A nonaccessory building in which is conducted the principal use of the lot.

*Building, temporary:* Any building not designed to be permanently located at the place where it is or where it is intended to be, temporarily placed or affixed.

*Bulk:* The term used to indicate the size and setback of buildings or structures, and the location of same with respect to one another, and includes the following: (a) size and height of buildings; (b) location of exterior walls at all levels in relation to lot lines, streets, or to other buildings; (c) floor area ratio; (d) all open space allocated to buildings; and (e) amount of lot area and lot width provided per dwelling unit.

*Business:* An occupation, employment, or enterprise, which occupies time, attention, labor, and materials, or wherein merchandise is exhibited or sold, or where services are offered.

*Capacity in persons:* The maximum number of persons that can avail themselves of the services or goods of an establishment or use at any one (1) time, with reasonable comfort and safety.

*Carport:* A roofed automobile shelter, with one (1) or more open sides.

*Cellar:* A story having more than one-half ( 1/2) of its floor to clear ceiling height below grade. A cellar is not included in computing the number of stories for the purpose of height measurement.

*Clinic, medical or dental:* A medical center or medical clinic is an establishment where three or more licensed physicians, surgeons or dentists engage in the practice of medicine or dentistry, operating on a group or individual basis with pooled facilities, such as coordinated laboratory, X-ray and allied departments, and the diagnosis and treatment of humans, which need not, but may include a drug prescription counter (not a drug store) for the dispensing of drugs and pharmaceutical products to the patients of said physicians, surgeons and dentists.

*Closed cup flash point:* The lowest temperature at which a combustible liquid under the most favorable ·dition will give off a flammable vapor which will burn momentarily.

*Club or lodge, private:* A nonprofit association of persons who are bona fide members and where facilities are restricted to members and their guests. Food and alcoholic beverages may be served on its premises provided they are secondary and incidental to the principal use.

*Community residence:* A single dwelling unit occupied on a relatively permanent basis in a family-life environment by a group of unrelated persons with disabilities, plus paid professional support staff provided by a sponsoring agency, either living with the residents on a twenty-four (24) hour basis, or present whenever residents with disabilities are present at the dwelling, and [which] complies with the zoning regulations for the district in which the site is located.

*Conforming building or structure:* Any building or structure which: (a) complies with all the regulations of this ordinance or of any amendment thereto governing bulk of the district in which said building or structure is located; or (b) is designed or intended for a permitted use or conditional permitted use, as herein allowed in the district in which it is located.

*Contiguous:* In actual contact.

*Court:* An open unoccupied space other than a yard on the same lot with a building or group of buildings and which is bounded on two (2) or more sides by such building or buildings.

*Curb level:* The established level of the curb pavement edging, along the front lot line, at a point directly in front of the center line of the building wall facing the front lot line, or if a curb pavement edging does not exist, the established level, at such point, along the center line of the roadway pavement, except in cases of exceptional differences in grade elevations between lot corners or within the area of a lot, as determined by the zoning administrator, the established curb level may be the average elevation of the finished ground grades at the building foundation walls even though such average elevation is higher than such established level of the curb pavement edging, or center line or roadway pavement.

*Disability:* A physical or mental impairment which substantially limits one (1) or more of the person's major life activities, impairs his ability to live independently, or a record of having such an impairment or being regarded as having such an impairment, but such term does not include current use of, nor addiction to, a controlled substance.

*Drive-in establishment:* An establishment or part thereof in which are provided facilities where serving or consuming commodities or both are intended to occur in patron's automobiles parked on the premises, or where commodities are purchased by customers waiting in automobiles for consumption off the premises.

*Dwellings:* A building or portion thereof designed or used exclusively for residential purposes, including single-family, two-family and multiple-family dwellings, but not including mobile homes or other trailers and lodging rooms in hotels, motels or lodging houses.

*Dwelling, attached:* A dwelling joined to two (2) other dwellings by party walls, or vertical cavity walls, and above ground physically unifying horizontal structural elements.

*Dwelling, detached:* A dwelling which is surrounded on all sides by open space on the same lot.

*Dwellings, multiple-family:* A dwelling containing four (4) or more dwelling units.

*Dwellings, single-family:* A dwelling containing one (1) dwelling unit only.

*Dwelling, semidetached:* A dwelling joined to one (1) other dwelling by a party wall, or vertical cavity wall, and above ground physically unifying horizontal structural elements.

*Dwelling, two-family:* A dwelling containing two (2) dwelling units only.

*Dwelling, three-family:* A dwelling containing three (3) dwelling units only, one (1) above the other.

*Dwelling unit:* One (1) or more rooms which are arranged, designed, or used as living quarters for a family, or for a community residence as a single house-keeping unit. A dwelling unit includes bathroom and kitchen facilities in addition to sleeping and living areas.

*Efficiency unit:* A dwelling unit consisting of one (1) principal room, exclusive of bathroom, kitchen, hallway, closets, or dining alcove directly off the principal room.

*Electric distribution center:* A terminal at which electric energy is received from the transmission system and is delivered to the distribution system only.

*Electric substation:* A terminal at which electric energy is received from the transmission system and is delivered to other elements of the transmission system and, generally, to the local distribution system.

*Engineer, city:* The official of the City of Calumet City, Illinois duly appointed and designated as the city engineer.

*Establishment, business:* A building, structure, or land used in whole or in part as a place of business, the ownership or management of which is separate and distinct from the ownership or management of any other place of business located on the same or other lot.

*Fallout shelter:* An accessory building and use which incorporates the fundamentals for fallout protection (shielding mass, ventilation, and space to live) and which is constructed of such materials, in such a manner, as to afford to the occupants substantial protection from radioactive fallout.

*Family:* One (1) person or two (2) or more persons each related to the other by blood, marriage, or legal adoption, or a group of not more than five (5) persons not all so related, together with his or their domestic servants, maintaining a common household in a dwelling unit, but not including sororities, fraternities or similar organizations.

*Fence:* A structure, or tree or shrub hedge which is a barrier and used as a boundary or means of protection or confinement.

*Fence, open:* A fence including gates which has, for each one (1) foot wide segment extending over the entire length and height of the fence, fifty (50) percent of the surface area in open spaces which afford direct views through the fence.

*Fence, solid:* A fence, including gates, which conceals from view from adjoining properties, streets, or alleys activities conducted behind it.

*Flood-crest elevation:* The elevation equal to the flood-crest level of record designated by the city engineer or other governmental officials or body having jurisdiction as applicable to the property for which a zoning certificate is being requested.

*Floodplain area:* That continuous area adjacent to a stream or stream bed, or any storm water retention area and its tributaries, whose elevation is equal to or lower than the flood-crest elevation including also land less than ten (10) acres in area having an elevation higher than flood-crest elevation and which is surrounded by land in a floodplain area, or land, less than five (5) acres in area, having an elevation equal to or higher than flood-crest elevation and bordered on three (3) sides by lane in a floodplain area.

*Floor area, for determining floor area ratio:* The sum of the gross horizontal areas of the several floors including also the basement floor of a building, measured from the exterior faces of the exterior walls, or from the center line of walls separating two buildings. The floor area shall also include the horizontal areas on each floor

devoted to: (a) elevator shafts and stairwells; (b) mechanical equipment, except if located on the roof, when either open or enclosed, i.e. bulkhead, water tanks, and cooling towers; (c) habitable attic space as permitted by the building code of the City of Calumet City, Illinois; (d) interior balconies and mezzanines; (e) enclosed porches; and (f) accessory uses. The floor area of structures used for bulk storage of materials, i.e. grain elevators, petroleum tanks shall also be included in the floor area and such floor area shall be determined on the basis of the height of such structures with one (1) floor for each ten (10) feet of structure height and if such structure measures less than ten (10) feet but not less than five (5) feet over such floor height intervals, it shall be construed to have an additional floor.

The horizontal area in each floor of a building devoted to off-street parking and off-street loading facilities and the horizontal area of a cellar floor shall not be included in the floor area.

*Floor area, for determining off-street parking and off-street loading requirements:* Floor area when prescribed as the basis of measurement for off-street parking spaces and off-street loading spaces for a use shall be the sum of the gross horizontal area of the several floors of the building, excluding the horizontal areas of basement and cellar floors that are devoted exclusively to uses accessory to the operation of the entire building. All horizontal dimensions shall be taken from the exterior of the walls.

Notwithstanding the foregoing, when determining the floor area for off-street parking spaces and off-street loading spaces for enclosed retail shopping malls, there shall also be excluded from the determination of floor area the horizontal areas of (a) all enclosed common areas devoted to the general public, such as (without limitation) pedestrian malls (including service and exit corridors, balconies, mezzanines, and enclosed porches); mall restrooms; and mall elevator shafts, stairwells and escalator areas, and (b) all other enclosed horizontal areas not devoted to ail sales (or uses accessory thereto), such as (without limitation) equipment and mechanical areas; heating, ventilating and air conditioning shafts and ducts; enclosed loading docks; and store elevator shafts, stairwells, and escalator areas.

*Floor area ratio:* The numerical value obtained by dividing the floor area within a building or buildings on a lot by the area of such lot. The floor ratio requirements as designated for each district when multiplied by the lot area in square feet shall determine the maximum permissible floor area for the building or buildings on the lot.

*Free burning:* The rate of combustion described by a material which burns actively and easily supports combustion.

*Frequency:* Signifies the number of oscillations per second in a sound wave and is an index of the pitch of the resulting sound.

*Garage, private:* An accessory building designed and used for the storage of motor vehicles owned and used by the occupants of the principal building to which it is accessory and in which no occupation or business for profit is carried on. Only one (1) of the motor vehicles may be a commercial vehicle which does not exceed two (2) tons capacity. A travel trailer or a boat that, in each case, is owned and used by the occupant of such principal building may be stored in a private garage.

*Garage, public:* A building or portion thereof other than a private or storage garage, designed or used for equipping, servicing, or repairing motor vehicles. Hiring, selling, or storing of motor vehicles may be included.

*Garage, storage:* A building or portion thereof, designed or used exclusively for storage of motor vehicles, and in which motor fuels and oils are not sold, except as herein regulated, and motor vehicles are not equipped, repaired, hired or sold.

*Gross density:* Ratio between total number of dwelling units on a lot and total area in acres.

*Guest, permanent:* A person who occupies or has the right to occupy a lodging house, hotel, apartment hotel, or motel accommodation as his domicile and place of permanent residence.

*Home occupation:* A gainful occupation or profession conducted entirely within a dwelling unit by a member of the family residing in the dwelling unit. No article shall be sold or offered for sale on the premises except such as is produced by the occupation on the premises and no mechanical or electrical equipment shall be installed or maintained other than such as is incidental to domestic use.

*Hotel or motel:* A building in which lodging rooms are provided and offered to the public for compensation and which is open to transient guests, in contradistinction to a lodging house, or a rooming house, and where customary hotel services such as maid, telephone, and secretarial, bellboy, and desk services and the use and upkeep of furniture, and furnishings and laundry of linens are provided. Facilities may include restaurants, cocktail lounges, and meeting rooms. Not more than fifty (50) percent of the accommodations in a hotel may be in dwelling units occupied or intended for occupancy by permanent guests.

*Hotel, apartment:* A hotel in which more than fifty (50) percent but not more than eighty (80) percent of the accommodations are in dwelling units occupied or intended for occupancy by permanent guests.

*Intense burning:* The rate of combustion described by a material that burns with a high degree of activity and is consumed rapidly.

*Institution:* A building occupied by a nonprofit corporation wholly for public or semipublic use.

*Junkyard:* An open area of land and any accessory buildings or structures thereon which are used primarily for buying, selling, exchanging, storing, baling, packing, disassembling, or handling waste or scrap materials, including vehicles, machinery, and equipment not in operable condition or parts thereof, and other metals, paper, rugs, rubber tires and bottles.

*Kennel:* Any premises or portion thereof on which more than three (3) dogs, cats, or other household domestic animals over one (1) year of age are kept, or on which more than two (2) such animals are maintained, boarded, bred, or cared for, in return for remuneration, or are kept for the purpose of sale, except any premise five (5) acres or more in area used for a single-family detached dwelling, agricultural, institutional, or recreational use where more than three (3) such domestic animals owned by the occupant of the principal use are kept, bred, and offered for sale shall not be considered a kennel.

*Laboratory:* See "research laboratory."

*Launderette:* A business that provides coin-operated self-service type washing, drying, dry-cleaning, and ing facilities, providing that: (a) not more than four (4) persons, including owners, are employed on the premises; and (b) no pick-up or delivery service is maintained.

*Livestock:* Riding horses, ponies, donkeys, sheep, goats, and cattle.

*Loading berth:* A space within the principal building or on the same lot as the principal building providing for the standing or unloading of trucks and with access to a street or alley.

*Lot:* A parcel of land legally described as a distinct portion or piece of land of record.

*Lot area:* The area of a horizontal plane bounded by the front, side and rear lot lines of the lot.

*Lot, corner:* A lot of which at least two (2) adjacent sides abut for their full lengths upon streets, provided that the interior angle at the intersection of such two sides is less than one hundred thirty-five (135) degrees. A lot abutting upon a curved street or streets shall be considered a corner lot if the tangents to the curve at its points of beginning within the lot or at the points of intersection of the side lot lines with the street line intersect at an interior angle of less than one hundred thirty-five (135) degrees. The point of intersection of the street lot lines is the corner. In the case of a corner lot with a curved street line, the corner is that point on the street lot line nearest to the point of intersection of the tangents above described.

*Lot, interior:* A lot that is not a corner lot.

*Lot line adjoining a street:* A side lot line of a corner lot which abuts a street, a rear lot line of a through lot, or a front lot line of any lot.

*Lot line, front:* The boundary of a lot which abuts a street. On a corner lot, the lot line having the shortest length abutting a street shall be the front lot line.

*Lot line, interior:* A lot line which does not abut a street right-of-way line.

*Lot line, rear:* That boundary of a lot which is most distant from and is, or is most nearly, parallel to the front lot line and in the case of an irregular, triangular, or gore shaped lot, a line ten (10) feet in length, within the lot, which is parallel to and at the maximum distance from the front lot line.

*Lot line, side:* Any boundary of a lot which is not a front lot line or a rear lot line.

*Lot lines:* The property lines bounding the lot.

*Lot, reversed corner:* A corner lot, the side lot line adjoining a street of which is substantially a continuation of the front lot line of the first lot to its rear.

*Lot, through:* A lot having a pair of opposite lot lines along two (2) more or less parallel streets, and which is not a corner lot. Both street lines shall be deemed front lot lines for the purpose of conforming with yard, other open area, and accessory building, structure, and use regulations of this ordinance.

*Lot width:* The minimum horizontal distance between the side lot lines of a lot measured at the narrowest width within the buildable area.

*Lots of record:* A single lot which is part of a subdivision, the plat of which has been recorded in the office of the recorder of deeds of Cook County, Illinois; or a single parcel of land, the deed of which has been recorded in the office of the recorder of deeds of Cook County, Illinois.

*Manufacturing establishment:* An establishment, the principal use of which is manufacturing, fabricating, processing, assembly, repairing, storing, cleaning, servicing, or testing of materials, goods, or products.

*Marquee or canopy:* A roof-like structure of a permanent nature which projects from the wall of a building.

*Micron:* A unit of length, equal to one-thousandth part of one millimeter (.001 millimeter).

*Mobile home:* A trailer designed and constructed for dwelling purposes.

*Moderate burning:* Implies a rate of combustion described by material which supports combustion and is consumed slowly as it burns.

*Motor freight terminal:* A building or area in which freight brought by motor truck or railroad is assembled or stored for routing in intra-state or interstate shipment by motor truck.

*Nameplate:* A sign indicating the name and address of a building, or the name of an occupant thereof, and the practice of a permitted occupation therein.

*No-access strip:* A strip of land along the rear lot line, adjoining a thoroughfare right-of-way, of a through lot, and which is designated on a recorded subdivision plat or property deed as land over which motor vehicular travel shall not be permitted.

*Nonconforming building or structure:* Any building or structure lawfully established which: (a) does not comply with all the regulations of this ordinance or of any amendment hereto governing bulk of the district in which such building or structure is located; or (b) is designed or intended for a nonconforming use.

*Nonconforming use:* Any building or structure and the use thereof or the use of land that does not conform with the regulations of this ordinance or any amendment hereto governing use in the district in which it is located but conformed with all of the codes, ordinances, and other legal requirements applicable at the time such building, or structure was erected, enlarged, or altered, and the use thereof or the use of land was established.

*Noxious matter or material:* A material which is capable of causing injury to living organisms by chemical reaction or is capable of causing detrimental effect on the physical or economic well-being of individuals.

*Nursery, child-care, or nursery school:* A building containing facilities for the part-time care of five (5) or more children of pre-elementary school are and may include in addition the dwelling unit of the family residing therein.

*Nursing home:* A building containing facilities for the care and home of aged, chronically ill, infirm, or incurable persons, or a place of rest for those persons suffering bodily disorders, in which three (3) or more persons not members of the family residing on the premises are received, and provided with food, shelter, and care, but not including hospitals, clinics, or similar institutions devoted primarily to the diagnosis and treatment of disease or injury, maternity cases, or mental illness.

*Octave band:* A method of dividing the range of sound frequencies into octaves in order to classify sound according to pitch.

*Odor:* The minimum concentration of odorous matter in the air that can be detected as an odor.

*Off-street parking area or lot:* Land which is improved and used or structure which is designed and used exclusively for the storage of passenger motor vehicles, either for accessory off-street parking spaces or commercial off-street parking spaces when permitted herein by district regulations.

*Open sales lot:* Land used or occupied for the purpose of buying, selling, or renting merchandise stored or displayed out-of-doors prior to sale. Such merchandise includes automobiles, trucks, motor scooters, motorcycles, boats, or similar commodities.

*Parking space:* An area, enclosed in a building or unenclosed, reserved for the parking of one (1) motor vehicle and which is accessible to and from a street or alley.

*Particular matter:* Finely divided solid or liquid matter, other than water, which is released into the

atmosphere.

*Party wall:* An interior wall of adjoining buildings-extending from its footing below grade to the underside of the roof, which divides and is in common use by such adjoining buildings.

*Performance standard:* A criteria established to control smoke and particulate matter, noise, odor, toxic, or noxious matter, vibration, fire and explosion hazards, glare of heat, or radiation hazards generated by or inherent in uses of land or buildings.

*Plan commission:* The plan commission of the City of Calumet City, Illinois.

*Planned unit development:* A parcel or tract of land having an area as herein required in district regulations, initially under unified ownership or control, and which is or is intended to be the site for two (2) or more principal buildings for one (1) or more principal uses, or one (1) principal building for two (2) or more principal uses and within which allowable exceptions in the district regulations are specified.

*Pyrophoric dust:* A dust in a finely divided state that is spontaneously combustible in air.

*Radiation hazards:* The deleterious and harmful effects of all ionizing radiation, which shall include all radiation capable of producing ions in their passage through matter. Such radiations shall include, but are not limited to, electromagnetic radiations such as X-rays, and gamma rays and particulate radiations such as electrons or beta particles, protons, neutrons, and alpha particles.

*Research laboratory:* A building or group of buildings, in which are located facilities for scientific research, ɪstigation, testing, or experimentation, but not facilities for the manufacture or sale of products, except as incidental to the main purpose of the laboratory.

*Reservoir parking spaces:* Those off-street parking spaces allocated for temporary standing of automobiles awaiting entrances to a particular establishment.

*Ringelmann chart:* The chart described in the U.S. Bureau of Mines information Circular 6888, on which are illustrated graduated shades of gray for use in estimating the light-obscuring capacity of smoke-smoke density.

*Ringelmann Number:* The number of the area on the Ringelmann Chart that coincides most nearly with the visual density of emission or the light-obscuring capacity of smoke.

*Roadway:* That portion of a street which is used or intended to be used for the travel of motor vehicles.

*Setback:* The minimum horizontal distance between a street line and the nearest wall of a building, or side of a structure facing such street line, or edge of the area of operation of a principal use when no building or structure is involved.

*Setback, established:* When forty (40) percent or more of the lots fronting on one (1) side of a street within a ɪ ᵏk are improved, the existing setbacks of such improved lots shall be the established setbacks and the setbacks for the remainder of the lots along such street frontage shall be related, as herein regulated, to the established setbacks, except on any lot fronting a thoroughfare as designated on the official map, the established setbacks shall be the yard line of a yard adjoining a street which is set back not lessthan the required depth as herein regulated, from the established center line of such thoroughfare.

*Sign:* A name, identification, description, illustration, display or device which is affixed to, painted or represented upon a building, structure, or land and which directs attention to a product, place, activity, person, institution, or business. For purpose of definition, a sign structure may be single face or double face. However, a sign shall not include any display of any court, public or official notice, nor shall it include the flag, emblem, insignia of a nation, political unit, school, religious or charitable institution or organization. A sign shall also include a permanent sign located within an enclosed building in such a manner as to be viewed or intended or view primarily from the exterior of the building.

*Sign, advertising:* A structure including a billboard on which is portrayed information which directs attention to a business, commodity, service, or entertainment, or other activity not necessarily related to uses permitted on the premises upon which the sign structure is located.

*Sign, business:* A sign which directs attention to a business, commodity, service, entertainment, or other activity conducted upon the premises upon which such sign is located.

*Sign, flashing:* An illuminated sign on which the artificial light is not maintained constant or stationary in intensity or color at all times when such sign is in use. For the purpose of this ordinance, a revolving sign, or any

advertising device which attracts attention by moving parts, operated by mechanical equipment or movement is caused by natural sources, whether or not illuminated with artificial lighting, shall be considered a flashing sign.

*Sign, ground:* A sign which is supported by one (1) or more uprights or braces in or upon the ground.

*Sign, projecting:* A sign which is affixed to any building wall or structure and extends beyond the building wall or parts thereof or structure.

*Sign, roof:* A sign erected, constructed, and maintained above the roof of any building.

*Sign, wall:* A sign which is affixed to an exterior wall of any building, when such sign shall project not more than twelve (12) inches from the building wall or parts thereof.

*Single-ownership:* A lot in single-ownership is one where the owner does not own adjoining vacant property.

*Smoke:* The visible discharge from a chimney, stack, vent, exhaust, or combustion process which is made up of particulate matter.

*Smoke unit:* The number obtained when the smoke density in the Ringelmann Number is multiplied by the time of emission in minutes. For the purpose of this calculation: (a) a Ringelmann density reading shall be made at least one (1) a minute during the period of observation; (b) each reading is then multiplied by the time in minutes during which it is observed; and (c) the various products are then added together to give the total number of smoke units observed during the entire observation period.

*Sound level:* The intensity of sound of an operation or use as measured in decibels.

*Sound level meter:* An instrument standardized by the American Standards Association for measurement of the intensity of sound.

*Story:* That portion of a building, other than a cellar, included between the surface of any floor and the surface of the floor next above it, or if there be no floor above it, the space between the floor and the ceiling next above it. The floor of a story may have split levels provided that there are not more than four (4) feet differences in elevation between the different levels of the floor. A basement shall be counted as a story and a mezzanine floor shall be counted as a story when it covers over one-third (1/3) the area of the floor next below it, or if the vertical distance from the floor next below it to the floor next above it is twenty-four (24) feet or more.

*Street:* A public or private right-of-way or easement which is designated as a permanent right-of-way or easement for common use as the primary means of vehicular access to properties abutting on it.

*Street frontage:* All of the property fronting on one (1) side of a street between two (2) intersecting streets, or in the case of a dead-end street, all of the property along one (1) side of the street between an intersecting street and the end of such dead-end street.

*Street line:* The street right-of-way line abutting a property line of a lot.

*Structure:* Anything constructed or erected, the use of which requires more or less permanent location on the ground or attached to something having a permanent location on the ground, including, but without limiting, the generality of the foregoing, signs, back stops for tennis courts, and pergolas.

*Structural alteration:* Any change in the supporting members of a building, such as bearing walls, columns, beams or girders, or any substantial change in the roof or in the exterior walls, excepting such repair or replacement as may be required for the safety of the building.

*Three-components measuring system:* Instruments which measure simultaneously earthborne vibrations in horizontal and vertical planes.

*Toxic matter or material:* Those materials which are capable of causing injury to living organisms by chemical means.

*Trailer:* Any vehicle or portable structure constructed so as to permit occupancy thereof for lodging or dwelling purposes or for the use as an accessory building or structure in the conduct of business, trade, or occupation, and which may be used as a conveyance on streets, and highways, by its own or other motive power.

*Use:* The purpose or activity for which the land, and buildings and structures thereon, is designed, arranged, or intended, or for which it is occupied or maintained, and shall include any manner of performance of such activity with respect to the performance of such activity with respect to the performance standards of this ordinance.

*Use, accessory:* See "accessory."

*Use, lawful:* The use of any building, structure, or land that conforms with all of the regulations of this ordinance or any amendment hereto and which conforms with all of the codes, ordinances, and other legal requirements, as existing at the time of the enactment of this ordinance or any amendment thereto, for the structure or land that is being examined.

*Use, permitted:* Any use which is or may be lawfully established in a particular district or districts, provided it conforms with all requirements, regulations, and when applicable, performance standards of this ordinance for the district in which such use is located.

*Use, principal:* The dominant use of land or buildings as distinguished from a subordinate or accessory use.

*Use, special permitted:* A use that has operational, physical, and other characteristics that may be different from those of the predominant permitted uses in a district, but which is a use that compliments or is otherwise compatible with intended overall development with a district. Compliance with special standards not necessarily applicable to other permitted or special permitted uses in the district shall be required for a special permitted use, as herein regulated in this ordinance.

*Vehicle, motor:* Any passenger vehicle, truck, truck-trailer, or semitrailer propelled or drawn by mechanical power.

*Vending machine:* A machine for dispensing merchandise or services designed to be operated by the customer.

*Vibration:* The periodic displacement, measured in inches, of earth designated frequency, cycles per second.

*Yard:* An open area on a lot which is unobstructed from its lowest level to the sky, except as otherwise provided in this ordinance.

*Yard adjoining a street, side:* A yard which is bounded by the front yard line, side yard adjoining a street line, rear yard line and side lot line adjoining a street.

*Yard, front:* A yard which is bounded by the side lot lines, front lot lines, and the front yard line or the established setback line.

*Yard, interior side:* A side yard which adjoins another lot or an alley separating such side yard from another lot.

*Yard line:* A line in a lot that is parallel to the lot line along which the applicable yard extends and which is not nearer to such lot line at any point than the required depth or width of the applicable yard. A building, structure, or other obstruction shall not encroach into the area between the yard line and such adjacent lot line, except for such permitted obstructions in yards as are set forth in this ordinance.

*Yard, rear:* A yard which is bounded by side lot lines, rear lot lines, and the rear yard line.

*Yard, side:* A yard which is bounded by the rear yard line, front yard line, side yard line and side lot line.

*Yard, transitional* means a yard designed with certain screening improvements to serve as a buffer between potentially incompatible land-uses.

*Zoning administrator:* The building commissioner shall be the zoning administrator.

*Zoning board of appeals:* The zoning board of appeals of the City of Calumet City.

*Zoning districts:* The districts into which the City of Calumet City, Illinois, has been divided as set forth on the zoning district map, for the purposes of zoning regulations and requirements.

*Zoning lot:* A single tract of land located within a single block which (at the time of filing for a building permit) is designated by its owner or developer as a tract to be used, developed or built upon as a unit, under single ownership or control. Therefore, a "zoning lot" may or may not coincide with a lot of record.

(Code 1980, App. B, § III; Ord. No. 91-7, §§ 1, 2, 3-14-1991; Ord. No. 93-4, § 1b., 2-25-1993; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

**Sec. IV. General provisions.**

*4.1 Interpretation.*

*Minimum requirements.* The provisions herein shall be held to be the minimum requirements for the promotion of the public health, safety, morals, and welfare.

*Relationship with other laws.* Where the conditions imposed by any provision herein upon the use of land or buildings or upon the bulk of buildings are either more restrictive or less restrictive than comparable conditions imposed by any other provision herein or any other law, ordinance, resolution, rule or regulation of any kind, the regulations which are more restrictive or which impose higher standards or requirements shall govern.

*Effect on existing agreements.* The ordinance is not intended to abrogate any easement, covenant, or any other private agreement provided that where the regulations of the ordinance are more restrictive or impose higher standards or requirements than such easement, covenants, or other private agreements, the requirements herein shall govern.

*4.2 Scope of regulations.*

*Changes in structures or use.* Except as may otherwise be provided in Section V, all buildings erected hereafter, all uses of land or buildings established hereafter, all structural alterations or relocation of existing buildings occurring hereafter, and all enlargements of or additions to existing uses occurring hereafter shall be subject to all regulations herein which are applicable to the zoning districts in which such buildings, uses or land shall be located.

*Nonconforming buildings, structures and uses.* Any lawful building, structure or use existing at the time of the enactment of the zoning ordinance may be continued, even though such building, structure or use does not conform to the provisions herein for the district in which it is located, and whenever a district shall be changed hereafter, the then existing lawful use may be continued, subject to the provisions of Section XIV, nonconforming buildings, structures and uses.

*Building permits.* Where a building permit for a building or structure has been issued in accordance with law prior to the effective date of the ordinance, and provided that construction is begun within ninety (90) days of such effective date and diligently prosecuted to completion, said building or structure may be completed in accordance with the approved plans on the basis of which the building permit was issued, and further may upon completion be occupied under a certificate of occupancy by the use for which originally designated, subject thereafter to the provisions of Section XIV, nonconforming buildings, structures and uses.

*Signs.* It shall be unlawful to place any outdoor advertising sign or display within a residential district classified as R-1 one-family residence district, R-2 two-family and three-family residence district and R-3 multiple family residence district as defined in Section VII of this ordinance except as permitted by sections 23-36 through 23-39 of this Code and section 15-584 of this Code.

*4.3 Use and bulk regulations.*

*Use.* No building, structure or land shall hereafter be used or occupied, and no building or part thereof, or other structure, shall be erected, raised, moved, reconstructed, extended, enlarged or altered except in conformity with the regulations herein specified for the district in which it is located.

*Bulk.* All new buildings and structures shall conform to the building regulations established herein for the district in which each building shall be located, except that parapet walls, chimneys, cooling towers, elevator bulkheads, fire towers, stacks and necessary mechanical appurtenances shall be permitted to exceed the maximum height provisions when erected in accordance with all other ordinances of the City of Calumet City.

*4.4 Lot coverage.*

*Maintenance of yards, courts and other open spaces.* The maintenance of yards, courts and other open spaces and minimum lot area legally required for a building shall be a continuing obligation of the owner of such building is in existence. Furthermore, no legally required yards, courts or other open space or minimum lot area allocated to any building shall, by virtue of change of ownership or for any other reason, be used to satisfy yard, court, other open space or minimum lot area requirements for any other building.

*Division of zoning lots.* No improved zoning lot shall hereafter be divided into two (2) or more zoning lots unless all improved zoning lots resulting from each such division shall conform with all the applicable bulk regulations

of the zoning district in which the property is located.

*Location of required open space.* All yards, courts and other open spaces allocated to a building or dwelling group shall be located on the same zoning lot as such building or dwelling group.

*Required yards for existing buildings.* No yards now or hereafter provided for a building existing on the effective date of the zoning ordinance shall subsequently be reduced below, or further reduced below if already less than, the minimum yard requirements of the ordinance for equivalent new construction.

*Permitted accessory buildings, structures and uses.* The following accessory buildings, structures, and uses are permitted and may be obstructions in yards and courts as follows:

Note:

      F  Denotes permitted obstruction in front yards and side yards adjoining streets

      S  Denotes permitted obstruction in interior side yards

      R  Denotes permitted obstruction in rear yards

      C  Denotes permitted obstruction in open courts

TABLE INSET:

|     |                                                                                                                                                                                                 |   |   |   |   |
| --- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- | - | - | - | - |
| (a) | Awnings or canopies, which may project not more than three (3) feet into a required yard or court.                                                                                               | F | S | R | C |
| (b) | Arbors or trellises, and where trellises are attached to the principal building they may also project into front yards, side yards, and courts.                                                  |   |   | R | C |
| (c) | Air conditioning equipment shelters.                                                                                                                                                            |   |   | R | C |
| (d) | Architectural entrance structures on a lot not less than two (2) acres in area or at entrance roadways into subdivisions containing one hundred (100) or more lots.                              | F | S | R |   |
| (e) | Balconies.                                                                                                                                                                                      |   |   | R | C |
| (f) | Bay windows, projecting not more than three (3) feet into a yard.                                                                                                                               | F |   | R |   |
| (g) | Chimneys, attached, projecting not more than twenty-four (24) inches into a yard or court.                                                                                                       | F | S | R | C |
| (h) | Eaves and gutters on principal buildings or attached accessory buildings, projecting not more than four (4) feet into a front and rear yard not more than twenty-four (24) inches into a side yard or court. | F | S | R | C |
| (i) | Fallout shelters, attached or detached, when conforming also with other codes and ordinances of the city.                                                                                        |   |   | R |   |
| (j) | Fences, open, not more than six (6) feet in height, except in business and manufacturing districts, and those enclosing the property of schools, and other public and quasi-public uses.         | F | S | R |   |
| (k) | Fences, solid, not more than seven (7) feet in height in business districts, not more than eight (8) feet in manufacturing districts, and residence districts, solid fences not more than six (6) feet in height. |   | S | R |   |
| (l) | Fire escapes, open or enclosed, or fire towers may project into a required front yard or side yard adjoining a street not more than five (5) feet and into a required interior side yard or court not more than three and one half (3 1/2) feet. | F | S | R | C |

| | | F | S | R | C |
|---|---|---|---|---|---|
| (m) | Flagpoles. | F | S | R | C |
| (n) | Garages or carports, attached or detached. | | | R | |
| (o) | Growing of farm and garden crops in the open. | | | R | |
| (p) | Lawn furniture, such as benches, sun dials, bird baths, and similar architectural features. | F | S | R | C |
| (q) | Open off-street loading spaces. | | S | R | C |
| (r) | Open off-street parking spaces which shall be located not less than three (3) feet from a lot line, or not less than ten (10) feet from a building wall in courts, or greater distance if required herein for a specific use, and in the manufacturing districts and all business districts, except a B-1 district, open off-street parking spaces may be in a required front yard or side yard adjoining a street as hereinafter regulated. | | | | |
| (s) | Ornamental light standards. | F | S | R | C |
| (t) | Playground and laundry-drying equipment. | | | R | C |
| (u) | Playhouses and open-sided summer houses. | | | R | |
| (v) | Sheds and storage buildings for garden equipment and household items as accessory to dwellings and buildings and structures customarily incidental to the pursuit of agriculture. | | | R | |
| (w) | Signs and nameplates as herein regulated. | F | S | R | C |
| (x) | Sills, belt courses, cornices, and ornamental features of the principal building, projecting not more than eighteen (18) inches into a yard or court. | F | S | R | C |
| (y) | Steps, open, necessary for access to and from the dwelling or an accessory building, steps as access to the lot from the street, and in gardens or terraces, provided there are no more than eight (8) steps for access to and from a principal or accessory building. | F | S | R | C |
| (z) | Swimming pools, private, when conforming also with other codes or ordinances of the city. | | | R | |
| (aa) | Terraces, patios, and outdoor fireplaces. | | | R | |
| (bb) | Tennis courts, private. | | | R | |
| (cc) | Trees, shrubs, and flowers. | F | S | R | C |
| (dd) | Other accessory buildings, structures, and uses as herein permitted in district regulations as accessory to a specific permitted use. | | | | |
| (ee) | On corner lots within that part of a yard, court, or other open area located within a radius of twenty-five (25) feet from the point of intersection of the two (2) street right-of-way lines forming the lot corner, no buildings, structures, or shrubs as herein permitted as obstructions in front or side yards adjoining a street shall be erected, altered, or planted which have a height more than thirty (30) inches above the ground grade in this area, and trees planted | | | | |

| in such areas shall be maintained in a manner that trees shall not have branches lower than eight (8) feet above the ground grade elevation in this area. | | | | |

*Vision clearance, corner lots.* No building or structure hereafter erected and no planting or other obstruction to the vision of drivers of motor vehicles shall be located:

(1)  In any residential districts, exceeding a height of three (3) feet above the street grade within twelve (12) feet of the intersecting right-of-way lines bordering corner lots; and

(2)  In any business or manufacturing district, within eight (8) feet of the intersecting right-of-way lines bordering a corner lot, provided that this regulation shall not apply to that part of a building above the first floor.

### 4.5 Lot area and dimension.

*Contiguous parcels.* When two (2) or more parcels of land, each of which lacks adequate area and dimension to qualify for a permitted use under the requirements of the use district in which they are located, are contiguous and are held in one (1) ownership, they shall be used as one (1) zoning lot for such use.

*Lots of parcels of land of record.* Any single lot or parcel of land, held in one (1) ownership, which was of record at the time of adoption of the ordinance, that does not meet the requirements for minimum lot width and area, may be utilized for a permitted use, provided that yards, courts or useable open space are not less than seventy-five (75) percent of the minimum required dimensions and areas.

### 4.6 Access to public street.

Except as otherwise provided for herein for planned developments, every principal building or structure shall be constructed or erected upon a lot or parcel of land which abuts upon a public street unless a permanent easement of access to a public street was of record prior to the adoption of the ordinance.

### 4.7 Number of buildings on a zoning lot.

Except in the case of a planned development, not more than one (1) principal detached residential building shall be located on a residential zoning lot, nor shall a principal detached residential building be located on the same zoning lot with any other principal building.

### Rezoning of public and semipublic areas.

An area indicated on the zoning map as a public park, recreation area, public school site, cemetery, or other similar open space, shall not be used for any other purpose than that designated; and when the use of the area is discontinued, it shall automatically be zoned to the most restricted adjoining district until appropriate zoning is authorized by the city council within three (3) months after the date of application filed for rezoning.

### 4.9 Accessory buildings.

*Location.* When a side yard is required, no part of an accessory building shall be located closer than three (3) feet to the side lot line along such side yard. When a rear yard is required, no part of an accessory building shall be located closer than three (3) feet to the rear lot line or to those portions of the side lot lines abutting such required rear yard, except where there is an accessory building with doors opening on to an alley such building shall not be located closer than five (5) feet to the rear lot line. In a residential district, no detached accessory building shall be closer than ten (10) feet to the principal building.

*Time of construction.* No accessory building or structure shall be constructed on any lot prior to the start of construction of the principal building to which it is accessory.

*Height of accessory buildings in required rear yards.* No accessory building or portion thereof located in a required rear yard shall exceed thirteen (13) feet in height.

*On reversed corner lots.* On a reversed corner lot in a residential district and with fifteen (15) feet of an

adjacent property to the rear in a residential district, no accessory building or portion thereof located in a required rear yard shall be closer to the side lot line abutting the street than a distance equal to sixty (60) percent of the least depth which would be required hereunder for the front yard on such adjacent property to the rear. Further, in the above instance, no such accessory building shall be located within five (5) feet of any part of a rear lot line which coincides with a side lot line or portion thereof of property in a residential district.

*4.10 Performance standards.*

The performance standards for the M-1 manufacturing district shall also apply to all residential, business and office research districts.

*4.11 Existing special uses.*

Where a use is classified as a special use and exists as a permitted use at the date of the adoption of the ordinance, it shall be considered a legal use, without further action of the city council, the zoning administrator or the board of appeals.

*4.12 Uses not specifically permitted in districts.*

When a use is not specifically listed in the sections devoted to permitted uses, it shall be assumed that such uses are hereby expressly prohibited unless by application and authorization as provided for under Special Uses, it is determined that said use is similar to and not more objectionable than uses listed. Such uses may then be permitted.

*4.13 Satellite receiving antenna.*

An accessory structure whose purpose is to receive communication or other signals from orbiting satellites or other extraterrestrial sources, and which consist of three (3) main components: the antenna itself (often called a dish); a lot-noise amplifier (LNA) and a receiver. The antenna and the LNA are located outdoors and are connected by coaxial cable to the receiver, which is placed indoors. The height of the antenna shall be measured vertically from the highest point of the signal-receiving apparatus, when positioned for operation, to the bottom of the base which supports the antenna.

*4.14 Satellite receiving antenna construction.*

(a)  Before proceeding with the construction, alteration or repair of a satellite receiving antenna in the city, a permit for the same shall be first obtained by the owner or his agent from the City of Calumet City.

(b)  All satellite receiving antennas shall comply with BOCA and FCC requirements.

(c)  The construction and installation of all satellite receiving antennas shall conform to applicable city building code and electrical code regulations and requirements.

(d)  Electro-magnetic interference. Each satellite receiving antenna shall be filtered and/or shielded so as to prevent the emission of radio-frequency energy that would cause any harmful interference with the radio and/or television broadcasting or reception on adjacent properties. In the event that harmful interference is caused subsequent to the granting of a building permit, the owner of the dish antenna shall promptly take steps to eliminate the harmful interference in accordance with all applicable regulations.

(e)  Each satellite receiving antenna shall serve only the building located upon the zoning lot on which said satellite receiving antenna is constructed pursuant to this section.

(f)  Satellite receiving antennas shall be constructed of noncombustible and corrosive-resistant material.

(g)  Satellite receiving antennas shall be constructed and erected in a secure and a wind-resistant manner. The antenna shall be wind-resistant enough to withstand eighty-five (85) mile per hour winds normally and seventy (70) mile per hour winds when combined with ice, without sustaining damage.

(h)  The satellite receiving antenna must be adequately grounded for protection against a direct strike of lightning.

(i)   Roof-mounted satellites shall have a certification from a structural engineer regarding the location stating that the structure is capable of handling the antenna and that said antenna does not provide any additional stress which the structure cannot bear.

### 4.15 Residential Districts.

A satellite receiving antenna may be located in any residential district provided that the same:

(a)   Shall be neutral in color and bear no advertising emblem or information other than the name of the manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance and character of the neighborhood;

(c)   Shall be limited to one (1) per lot;

(d)   Shall not exceed eight (8) feet in diameter;

(e)   Shall not be roof-mounted;

(f)   Shall be located only in a rear yard a minimum of ten (10) feet from any lot line;

(g)   Maximum height of device not to exceed ten (10) feet;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

### 4.16 Business districts.

A satellite receiving antenna may be located in any business district provided that the same:

(a)   Shall be neutral in color and bear no advertising emblem or information other than the name of the manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance of the neighborhood;

(c)   Shall be limited to one (1) per lot or per building, whichever is less;

(d)   Shall not exceed twelve (12) feet in diameter;

(e)   If roof-mounted, shall be to a maximum height of thirty (30) feet. Additional requirements shall apply to roof-mounted satellite receiving antennas;

(f)   If not located directly on the ground, shall not be constructed any closer to the ground than ten (10) feet and shall not be visible between ground level and ten (10) feet above ground level from any street adjoining the lot;

(g)   Ground-mounted; not to be located between a building and front lot line. The full impact of satellite receiving antennas shall be reduced by screening. If the subject parcel adjoins a residential district, all antennas shall be placed a minimum of ten (10) feet away from any lot line and effectively screened by a fence, wall or dense screening hedge to a maximum height of six (6) feet. Said fence, wall or hedge shall be located on or near the lot line bounding the residential district and shall otherwise comply with the applicable zoning requirements governing its location, shall be located only in a rear yard a minimum of ten (10) feet from any lot line;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

### 4.17 Industrial and office research districts.

A satellite receiving antenna may be located in any industrial district provided that the same:

(a)   Shall be neutral in color and bear no advertising emblem or information other than the name of the

manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance of the neighborhood;

(c)   Shall be limited to one (1) per lot or per building, whichever is less;

(d)   Shall not exceed twelve (12) feet in diameter;

(e)   If roof-mounted, shall be to a maximum height of thirty (30) feet. Additional requirements shall apply to roof-mounted satellite receiving antennas;

(f)   Shall not be visible between ground level and ten (10) feet above ground level from any street adjoining the lot;

(g)   Ground-mounted; not to be located between a building and a front lot line. The full impact of satellite receiving antennas shall be reduced by screening. If the subject parcel adjoins a residential district, all antennas shall be placed a minimum of ten (10) feet from any lot line and effectively screened by a fence, wall, or dense screening hedge to a maximum height of six (6) feet. Said fence, wall or hedge shall be located on or near the lot line bounding the residential district and shall otherwise comply with the applicable zoning requirements governing its location, shall be located in a rear yard a minimum of ten (10) feet from any lot line;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

*4.18 Application.*

Any person desiring to erect a satellite receiving antenna shall apply in writing to the city clerk's office upon a form furnished by said office. A permit fee of twenty-five dollars ($25.00) shall be paid.

(Code 1980, App. B, § IV; Ord. No. 84-15, § 1, 4-26-1984; Ord. No. 85-32, § 1, 9-26-1985; Ord. No. 89-5, § 1, 1-26-1989; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 99-33, § 1, 6-10-1999)

**Sec. V. Nonconforming buildings and uses.**

*5.1 Continuance of use.*

Any lawfully established use of a building or land, on the effective date of the ordinance or of amendments thereto, that does not conform to the use of regulations for the district in which it is located, shall be deemed to be a legal nonconforming use and may be continued, except as otherwise provided herein.

Any legal, nonconforming building or structure may be continued in use provided there is no physical change other than necessary maintenance and repair, as otherwise permitted herein.

Any building for which a permit has been lawfully granted prior to the effective date of the ordinance, or of amendments thereto, may be completed in accordance with the approved plans; provided construction is started within ninety (90) days and diligently prosecuted to completion. Such building shall thereafter be deemed a lawfully established building.

*5.2 Discontinuance of use.*

Whenever any part of a building, structure or land occupied by a nonconforming use is changed to or replaced by a use conforming to the provisions of the ordinance, such premises shall not thereafter be used or occupied by a nonconforming use, even though the building may have been originally designed and constructed for the prior nonconforming use.

Whenever a nonconforming use of a building or structure or part thereof has been discontinued for a period of twelve (12) consecutive months, or whenever there is evident a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being discontinued or abandoned, be reestablished, and the use of the premises thereafter shall be in conformity with the regulations of the district.

Where no enclosed building is involved, discontinuance of a nonconforming use for a period of twelve (12) months shall constitute abandonment and shall not thereafter be used in a nonconforming manner.

A nonconforming use not authorized by the provisions of the zoning ordinance in effect at the time the amendatory ordinance becomes effective, shall be discontinued and not reestablished except when the provisions of the amendatory ordinance find the use to be conforming to the district in which it is then located.

### 5.3 Change of nonconforming use.

The nonconforming use of any building, structure or portion thereof, which is designed or intended for a use not permitted in the district in which it is located, may be changed to another nonconforming use thereof but only if such other use is permitted by a special use permit as authorized in the administration section.

A nonconforming structure that was erected, converted or structurally altered in violation of the provisions of the ordinance which this ordinance amends shall not be validated by the adoption of this ordinance, and such violations or any violations of this ordinance may be ordered removed or corrected by the proper officials at any time.

### 5.4 Repairs and alterations.

Normal maintenance of a building or other structure containing a nonconforming use is permitted, including necessary nonstructural repairs and incidental alterations which do not extend or intensify the nonconforming use.

No structural alteration shall be made in a building or other structure containing a nonconforming use, except in the following situations:

(a)  When the alteration is required by law.

(b)  When the alteration will actually result in eliminating the nonconforming use.

(c)  When a building in a residential district containing residential nonconforming uses may be altered in any way to improve livability, provided no structural alteration shall be made which would increase the number of dwelling units or the bulk of the building.

### 5.5 Damage and destruction.

If a building or other structure containing a nonconforming use is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing c. ts, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

In either event, restoration or repair of the building or other structure must be started within a period of six (6) months from the date of damage or destruction, and diligently prosecuted to completion.

### 5.6 Additions and enlargements.

A nonconforming building may be enlarged or extended only if the entire building is hereafter devoted to a conforming use, and is made to conform to all the regulations of the district in which it is located.

No building partially occupied by a nonconforming use shall be altered in such a way as to permit the enlargement or expansion of the space occupied by such nonconforming use.

No nonconforming use may be enlarged or extended in such a way as to occupy any required useable open space, or any land beyond the boundaries of the zoning lot as it existing on the effective date of the ordinance, or to displace any conforming use in the same building or on the same parcel.

A building or structure which in nonconforming with respect to yards, floor area ratio, or any other element of bulk regulated herein shall not be altered or expanded in any manner which would increase the degree or extent of its nonconformity with respect to the bulk regulations for the district in which it is located.

### 5.7 Exempted buildings, structures and uses.

Wherever a lawfully existing building or other structure otherwise conforms to the use regulations herein but is nonconforming only in the particular manner hereinafter specified, the building and use thereof shall be exempt from the requirements of sections 5.4 and 5.5.

In any residential district where a dwelling is nonconforming only as to the number of dwelling units it contains, provided no such building shall be altered in any way so as to increase the number of dwelling units therein.

In any residential district, where a use permitted in the B-1 district occupies ground floor space within a multiple-family dwelling located on a corner lot.

In any business or manufacturing district, where the use is less distant from a residential district than that specified in the regulations for the district in which it is located.

In any district, where an established building, structure or use is nonconforming with respect to the standards prescribed herein for any of the following:

    (a)  Floor area ratio;

    (b)  Yards, front, side, rear, or transitional;

    (c)  Off-street parking or loading;

    (d)  Building height;

    (e)  Gross floor area.

*5.8 Conversion to special use.*

Any nonconforming use may be made a special use by the granting of a special permit, as authorized in the administrative section.

(Code 1980, App. B, § V; Ord. No. 94-23, § 1, 5-26-1994)

## Sec. VI. Zoning districts and zoning district map.

*6.1 Classes of districts.*

In order to classify, regulate and restrict the location of trades, industries and the location of buildings designed for specified uses, to regulate and limit the height and bulk of buildings hereafter erected or structurally altered, to r‐ ‐ulate and limit the intensity of the use of the lot areas, and to regulate and determine the areas of yards, courts and ᴄ ‐r open spaces within and surrounding such buildings, the City of Calumet City, Illinois, is hereby divided into ten (10) classes of districts:

    R-1 One-family residence district

    R-2 Two-family and three-family residence district

    R-3 Multiple-family residence district

    B Commercial business district

    B-2 Service business commercial district

    B-3 Community commercial business district

    M-1 Light industrial district

    M-2 Heavy industrial district

    OR Office research district

        Public land use

and the location and boundaries of which are shown on the map and notations thereon titled "The Zoning Map of Calumet City," which said map is on file in the office of the building commission of Calumet City, and together with all notations, references, and other information shown thereon, are a part of this ordinance and have the same force and

effect as if said map and all the notations, references and other information thereon were all fully set forth and described herein.

Except as hereinafter provided:

(1)   No building shall hereafter be erected or altered, nor shall any building or premises be used for any purpose other than is permitted in the district in which such building or premises is located.

(2)   No building shall be erected or altered to exceed in height the limit herein established for the district in which such building is located.

(3)   No building shall be erected or altered except in conformity with the area regulations of the district in which the building is located.

(4)   The minimum yards and other open space, including lot area required by the ordinance for each and every building existing at the time of passage of this ordinance, or for any building hereafter erected shall not be encroached upon or considered as yard or open space requirements for any other building.

### 6.2 District boundaries.

When uncertainty exists with respect to the boundaries of the various districts as shown on the zoning map, the following rules shall apply:

District boundary lines are either the center lines of railroads, highways, streets, alleys or easements, or the boundary lines of sections, quartersections, divisions of sections, tracts or lots, or such lines extended otherwise indicated.

In areas not subdivided into lots and blocks, wherever a district is indicated as a strip adjacent to and paralleling a street or highway, the depth of such strips shall be in accordance with the dimensions shown on the map from section, quarter-section, or division lines, or center lines of streets, highways or railroad rights-of-way unless otherwise indicated.

Where a lot held in one (1) ownership and of record on the effective date of the ordinance is divided by a district boundary line, the entire lot shall be construed to be within the less restricted district, provided that this construction shall not apply if it increases the less restricted frontage of the lot by more than twenty-five (25) feet.

### 6.3 Zoning of streets, alleys, public ways, waterways and railroad right-of-way.

All streets, alleys, public ways, waterways and railroad rights-of-way, not otherwise specifically designated, shall be deemed to be in the same zone as the property immediately abutting on such alleys, streets, public ways and railroad rights-of-way or waterways. Where the center line of a street, alley, public way, waterway or a railroad right-of-way serves as a district boundary, the zoning of such areas, unless otherwise specifically designated, shall be deemed to be the same as that of the abutting property up to such center line.

### 6.4 Zoning of annexed land.

All property annexed to the City of Calumet City shall be considered automatically zoned as R-1, unless concurrently with the annexation thereof there shall be adopted after statutory hearing, a zoning ordinance zoning the property for such purposes as is prescribed by the amendatory ordinance. Such amendatory ordinance may be adopted as prescribed by statute after annexing as well as concurrently with annexation.

(Code 1980, App. B, § VI; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. VII. Residence districts.

### 7.1 R-1 one-family residence district.

*Permitted uses.*  The following uses are permitted:

One-family detached dwellings and permitted accessory uses.

Parks, forest preserves and recreational areas, when publicly owned and operated.

Home occupations.

Temporary buildings for construction purposes for a period not to exceed the completion date of such construction.

Signs, subject to the provisions of Section XI.

Schools, public, denominational-elementary and high, including playgrounds and athletic fields auxiliary thereto.

Accessory uses, including off-street parking facilities in accordance with the provisions of Section XII.

Colleges and universities, including dormitories, fraternities, sororities, and other accessory buildings necessary for operation, but not including business colleges or trade schools when operated for profit.

Rest homes, nursing homes, hospitals and sanitariums, for human beings only.

Institutions for the aged and for children.

Public service uses:

> Municipal administration buildings;
>
> Filtration plant, pumping station, water reservoir;
>
> Sewage treatment plant;
>
> Police and fire stations;
>
> Public libraries;
>
> Telephone exchange;
>
> Electric substations;
>
> Other similar public service uses.

Radio and television towers, commercial.

Schools, day or nursery, public or private.

Planned developments, under single ownership or control, in which incidental business or recreational facilities for the convenience of the occupants may be furnished, provided the property proposed for development shall have a gross area of at least twenty (20) acres. For such developments, the city council may vary the regulations herein, provided such variations are consistent with the general purpose and intent of the ordinance and will result in better site planning and thus be of greater benefit bothto the occupants of the development and to the community.

Cemeteries, including crematories and mausoleums in conjunction therewith.

Off-street open parking area, provided there is a need for this facility in the interest of public necessity and convenience and that no appropriate site is available in nearby business or manufacturing districts.

Community residences. The sponsoring agency must obtain an administrative occupancy permit prior to establishing a community residence. No dwelling unit shall be occupied as a community residence until a certificate of occupancy has been issued by the building commissioner. No certificate of occupancy shall be issued for a community residence unless:

> (1)  The community residence is located at least one thousand (1,000) feet from any existing community residence, as measured from lot line to lot line; and

> (2)  The applicant demonstrates that it has either obtained or is eligible for state or local licensing or certification to operate the proposed community residence, or that the proposed community residence is licensed or certified or eligible for licensing or certification.

The building commissioner may revoke a certificate of occupancy for a community residence if its license or certification, or the operator's license or certification to operate community residences, is revoked. A certificate of occupancy is not transferable to another operator or to another location.

*Off-street automobile parking facilities.*  Automobile parking facilities shall be provided as required or permitted in section 10.4.

*Height of buildings:*

One-family detached dwellings: Thirty (30) feet,

Church: Seventy-five (75) feet for towers or steeples, but not more than forty-five (45) feet for the main structure.

*Lot size.*

(1)  Every one-family detached dwelling hereafter erected shall be located on a lot having an area of not less than five thousand seven hundred fifty (5,750) square feet, and a width at the established building line of not less than fifty (50) feet.

(2)  All nonresidential principal uses of buildings as permitted herein shall be located on a tract of land having an area of not less than seven thousand five hundred (7,500) square feet with a minimum width of seventy-five (75) feet at the building line.

(3)  Minimum lot sizes for special uses shall be prescribed and conditions stipulated at the time a special use .permit is authorized, but in no case shall any such lot have an area less than seven thousand five hundred (7,500) square feet and a width of seventy-five (75) feet at the established building line.

*Yard areas.*  No building shall be erected or enlarged unless the following yards are provided and maintained in connection with such building, structure or enlargement:

(1)  Front yard. A front yard of not less than twenty-five (25) feet.

(2)  Side yards. A side yard on each side of the principal building of not less than ten (10) percent of the lot width with a minimum of three (3) feet, except where a side yard adjoins a street, the minimum width on the street side shall be increased to ten (10) feet. A principal use which does not provide a vehicular front access drive shall have a side yard on one (1) side of not less than ten (10) feet in width.

(3)  Rear yard. A rear yard not less than forty (40) feet.

*Maximum floor area ratio.*  The maximum floor area ratios in this district shall be as follows:

One-family residences: 0.5.

Permitted nonresidential uses: 1.0.

Special uses: To be specified as part of the special use permit but shall not exceed 2.0.

*Dwelling standards:*

(1)  Every single family detached dwelling of one (1) story hereafter erected in any R-1 district shall contain an area of not less than one thousand three hundred fifty (1,350) square feet of habitable space measured from exterior wall to exterior wall as described in the adopted BOCA codes of Calumet City.

(2)  Every single family detached dwelling of more than one (1) story hereafter erected in any R-1 district shall contain an area of not less than one thousand six hundred fifty (1,650) square feet of habitable space measured from exterior wall to exterior wall as described in the adopted BOCA codes of Calumet City.

(3)  Architectural appearance: In order to enhance the values of property throughout the city and to protect and to stabilize the general appearance of residential structures, landscapes and open areas, the following appearance codes shall be included in the requirements for all new residential construction:

a.  The project shall enhance both the site on which it is located and the sites surrounding the project.

b.  No project shall adversely affect the current market values of any existing property in the neighborhood.

c.  No project shall adversely affect the environment.

    d. Architectural design is not restricted. Evaluation by the appearance of a project shall be based on quality of its design and relationship to the surroundings.

    e. Buildings shall have good scale and be in harmony with existing permanent neighboring development.

    f. Materials shall have good architectural character and should be selected for harmony of the building with adjoining buildings.

    g. No more than three (3) different types of exterior wall materials shall be used. Materials shall be suitable to the type of building and design for which they are used.

    h. All sides of the structure shall receive design consideration. A facade unrelated to the rest of the building is not in keeping with acceptable design.

    i. Monotony of design in any construction shall be avoided. Variation of detail, form and siding shall be used to provide visual interest.

(4) Relationship of building to site:

    a. The site shall be planned to accomplish a desirable aesthetic transition with the streetscape and to provide for adequate off street parking.

    b. The site in R-1 districts shall include the off street parking in the form of a paved drive meeting the standard requirements.

    c. The off street parking shall not remove the acceptable open land space requirement established.

(5) Landscape and site treatment:

    a. Where natural or existing topographic patterns contribute to the beauty and utility of the site, they shall be preserved as well as developed.

    b. Each site shall be addressed by a landscape plan which shall include the use of sod (front), sod/seeding (rear and side) or a decorative means to cover exposed soil of all open spaces in order to promote drainage, prevent soil erosion and for dust abatement.

    c. Each site will include the planting of at least one (1) tree in order to promote energy conservation, to enhance the environment, for sound absorption and to contribute to good appearance.

*Lot coverage.* No building with its accessory building shall occupy in excess of fifty (50) percent of an interior lot nor in excess of sixty (60) percent of a corner lot.

*Special uses.* The following uses may be allowed if their site locations and proposed development plans are first approved as provided in the Administrative Section:

    Churches, rectories, seminaries, convents, monasteries and similar religious institutions, including dormitories and other accessory uses required for operation.

    Community residences that fail to meet all requirements for an administrative occupancy permit, excluding community residences denied a required local or state license.

## 7.2 R-2 two-family and three-family residence.

*Permitted uses.* The following uses are permitted:

    Any use permitted in the R-1 one-family residence district.

    Two-family dwellings.

    Three-family dwellings.

*Special uses.* Any use which may be allowed as a special use in the R-1 one-family residence district, in accordance with the provisions of the administrative section.

*Automobile parking facilities.* Automobile parking facilities shall be provided as required or permitted in section

10.4.

*Height of buildings.* Same as R-1.

*Lot size.*

(1)  For dwellings hereafter erected, the same regulations shall apply as are required for one-family dwellings in the R-1 one-family residence district.

(2)  Every two-family dwelling hereafter erected shall be on a zoning lot having a minimum area of not less than six thousand (6,000) square feet and a minimum width of not less than fifty (50) feet at the building line, provided that where a lot has less width than herein required and was recorded under separate ownership from adjoining lots prior to the date of adoption of this ordinance, such lot may be occupied by a two-family dwelling, but in no case shall the lot area per dwelling unit be less than three thousand (3,000) square feet.

(3)  Every three-family dwelling hereafter erected shall be on a zoning lot having a minimum area of not less than seven thousand five hundred (7,500) square feet and a minimum width of not less than seventy-five (75) feet at the building line, provided that where a lot has less width than herein required and was recorded under separate ownership adjoining lots prior to the date of adoption of this ordinance, such lot may be occupied by a three-family dwelling, but in no case shall the lot area per dwelling unit be less than two thousand five hundred (2,500) square feet.

(4)  All nonresidential principal uses of buildings as permitted herein shall be located on a tract of land having an area of not less than seven thousand five hundred (7,500) square feet with a minimum width of seventy-five (75) feet at the established building line.

(5)  Minimum lot sizes for special uses shall be prescribed and conditions stipulated at the time a special use permit is authorized, but in no case shall any such lot have an area less than seven thousand five hundred (7,500) square feet and a width of seventy-five (75) feet at the established building line.

*Yard areas.* No building shall be erected or enlarged unless the following yards are provided and maintained:

(1)  Front yard. A front yard of not less than twenty-five (25) feet shall be provided and maintained.

(2)  Side yards. A side yard on each side of the principal building of not less than ten (10) percent of the lot width, except where a side yard adjoins a street, the minimum width on the street side shall be not less than ten (10) feet. In no case shall a side yard be less than five (5) feet.

(3)  Rear yard. A rear yard of not less than forty (40) feet.

*Dwelling standards.* One-family and two-family dwellings hereafter erected in the R-2 residence district shall .form to the floor areas as required for one-family dwellings in the R-1 residence district for each dwelling unit.

*Lot coverage.* Same as R-1. Three-family dwellings hereafter erected shall have a total ground floor area of not less than one thousand four hundred (1,400) square feet, measured as provided in R-1.

*Dwelling standards.*

(1)  For one-family dwellings hereafter erected in this R-4 general residence district, the same floor area shall be required as in the R-2 one-family residence district.

(2)  For two-family dwelling structures hereafter erected, the same floor areas shall be required as in the R-3 two-family residence district.

*7.3 R-3 multiple-family residence district.*

*Permitted uses.* No building or land shall be used and no building shall hereafter be erected, structurally altered, or enlarged unless otherwise provided herein except for the following uses:

Multiple-family dwellings and apartments.

One-family row dwellings (party) walls.

Apartment hotels.

Hotels in which incidental business may be conducted only as a service for the persons living therein,

provided there is no entrance to such places of business except from the inside of the building and provided that no sign advertising such business shall be visible from outside the business.

*Special uses.* The following uses may be allowed if their site locations and proposed development plans are first approved as provided in the administrative section:

Boarding-houses and lodging houses.

Fraternity or sorority houses.

Hospitals (but not including animal hospitals), convalescent homes, rest homes and nursing homes.

Medical and dental offices and group medical centers.

Philanthropic or eleemosynary uses or institutions.

Private clubs or lodges, except those the chief activity of which is a service normally carried on as a business.

*Automobile parking and loading facilities.* Automobile parking and loading facilities shall be provided as required or permitted in section 10.4.

*Lot area per dwelling.*

(1) For every building hereafter erected or structurally altered containing four (4) or more units, the following minimum lot areas per dwelling unit shall be provided:

Apartment with three (3) or more bedrooms: Two thousand (2,000) square feet.

Apartment with one (1) or two (2) bedrooms: One thousand five hundred (1,500) square feet.

Efficiency apartments: Eight hundred (800) square feet.

When open space is provided and maintained on the zoning lot in excess of that required by the regulations in this R-5 district, the number of dwelling units may be increased in accordance with the following schedule: For each one thousand (1,000) square feet of lot area devoted to open space one (1) additional one (1) bedroom or efficiency dwelling unit shall be permitted; for each one thousand five hundred (1,500) square feet of open space one (1), two (2) bedroom dwelling unit; for each two thousand (2,000) square feet of open space one (1) dwelling unit of three (3) or more bedrooms. When such open space is provided the maximum floor area ratio may be increased by an amount necessary to accommodate the added dwelling units and necessary off-street parking when such parking is provided within the principal building.

No existing use shall be converted in such a way as to conflict with or further conflict with, the foregoing requirements.

(2) Further, no residential building shall be established hereafter on a lot which is less than six thousand (6,000) square feet in area and fifty (50) feet in width at the established building line.

(3) For nonresidential principal uses permitted in this district, the lot area shall be not less than ten thousand (10,000) square feet with a width at the established building line of not less than seventy-five (75) feet.

(4) Minimum lot sizes for special uses shall be prescribed by the zoning board of appeals, with the approval of the city council, at the time a special use permit is authorized, but in no case shall any such lot size be less than ten thousand (10,000) square feet in area nor less than seventy-five (75) feet in width.

*Yard areas.* No building shall be erected or enlarged unless the following yards are provided and maintained:

(1) Front yard. For each building on a zoning lot, a front yard shall be provided of not less than twenty-five (25) feet. For buildings exceeding twenty-five (25) feet in height, the minimum front yard shall be increased by one (1) foot for each two (2) feet or fraction thereof by which the building height exceeds twenty-five (25) feet, but in no case shall a front yard or more than forty (40) feet be required. Required front yards shall be unobstructed from ground level to sky, except as otherwise provided in Section IV.

(2) Side yards. For each building on a zoning lot, side yards shall be provided as follows:

a. For multiple-family dwellings, the side yard on each side of each residential building shall be

a minimum of five (5) feet in width plus an additional two (2) feet in width for each additional story above two (2) stories in height. On corner lots there shall be maintained a side yard of not less than ten (10) feet on the side adjacent to the street which intersects the street upon which the building maintains frontage, and in the case of a reversed corner lot there shall be maintained a setback from the side street of not less than fifty (50) percent of the front yard required on the lots in the rear of such corner lots, but such setback need not exceed fifteen (15) feet. No accessory building on said reversed corner lot shall project beyond the front yard required on the adjacent lot to the rear, nor be located nearer than five (5) feet to the side lot line of said adjacent lots.

b.  For lots improved with a nonresidential building, there shall be a side yard of not less than twelve (12) feet on each side of the main structure and a combined total of side yards of not less than thirty (30) feet.

c.  For special uses side yards shall be established in the ordinance permitting the special use but in no case shall the side yards be less than that required for nonresidential use in "b" above.

(3)  Rear yard. There shall be a rear yard of not less than thirty (30) feet.

*Lot coverage.*  No building with its accessory building shall occupy in excess of fifty (50) percent of the area of an interior lot not in excess of sixty (60) percent of the area of a corner lot.

(Code 1980, App. B, § VII; Ord. No. 85-37, §§ 1, 2, 10-24-1985; Ord. No. 90-36, § 1, 7-26-1990; Ord. No. 91-7, §§ 3, ·-14-1991; Ord. No. 93-11, § 1, 4-8-1993)

## Sec. VIII. Commercial business district.

*8.1. B Commercial business district.*

*Permitted uses.*  The following is a list of uses permitted in the commercial business district, provided they are operated entirely within a building, except for off-street parking or loading facilities:

> Air conditioning and heating sales and service.
>
> Antique shops.
>
> Art, dancing, vocational, professional and business schools.
>
> Art galleries and studios.
>
> Art needle work and hand weaving.
>
> Auto and truck accessories store.
>
> Automobile laundries.
>
> Automobile sales, including accessories.
>
> Banks and financial institutions.
>
> Bakery shops, including the baking and processing of food products when prepared for retail use on the premises only.
>
> Barber shops and beauty parlors.
>
> Book and stationery stores.
>
> Candy and ice cream shops.
>
> Camera, photographic supply, developing and processing shops for retail sales.
>
> Cameras and other photographic equipment and supplies.
>
> Carpet, rug and linoleum stores.
>
> China and glassware stores.
>
> Christmas tree sales.

Clothing stores.

Coin and philatelic stores.

Collection agency.

Currency exchanges.

Custom dressmaking, millinery or tailoring when conducted for retail sale on the premises only.

Dentures.

Department stores.

Drug stores.

Electrical and plumbing parts and supplies distributor (wholesale).

Electrical appliance stores and repairs, but not including appliance assembly or manufacturing.

Electrical television and radio sales (wholesale).

Employment agency.

Festivals (with council approval), per day.

Florist shops and conservatories for retail trade on the premises only.

Funeral parlor or mortuary.

Furniture stores.

Furrier, when conducted for retail trade on the premises only.

Gift shops.

Grocery stores.

Hardware stores.

Haberdasheries.

Health clubs.

Hobby and craft stores.

Interior decorating shops, including upholstering and making of draperies, slip covers and other similar articles, when conducted as a part of the retail operations and secondary to the main use.

Jewelry and watch repair shops.

Key and/or bicycle repair shop.

Laundries, automatic, self-service types, or hand.

Leather goods and luggage stores.

Locksmith.

Millinery shops.

Musical instrument sales and repair, retail trade only.

Nursery for children.

Office supply, equipment and furniture store.

Offices, business and professional, including medical clinics.

Off-street parking and loading facilities, as permitted or required in accordance with the provisions of section.

Oil lubricating facilities for motor vehicles.

Optical sales, glasses, frames and lenses.

Orthopedic and medical appliance store, but not including the assembly or manufacture of such articles.

Photography studios, including the development of film and pictures when done as a part of the retail business on the premises.

Picture framing, when conducted for retail trade on the premises only.

Plumbing and heating showrooms and shops.

Printing and newspaper publishing, including engraving and photo-engraving.

Private clubs and lodges of fraternal and religious organizations when not operated for profit.

Private police protection and/or detective agencies.

Public utility collection offices.

Restaurants.

Retail tire and accessories.

Savings and loan associations.

Sewing machine sales and service.

Shoe and hat stores, and repairing when done as a part of the retail business.

Signs, as permitted and regulated in section.

Sporting goods stores.

Telegraph offices.

Telephone and business answering service.

Television parts and supplies distributors.

Theater (indoor) within zoning lots of fifty (50) acres or more.

Tobacco stores.

Toy stores.

Trailer sales.

Travel bureau and transportation ticket offices.

*Special uses.* Retail businesses not specifically listed above when found to have economic compatibility with established uses on adjoining property shall meet the requirements of section 12.7.

*Conditions of use.* All uses permitted in this district shall be retail establishments dealing directly with consumers and shall be subject to the following conditions:

The sale of food stuffs or articles intended for human consumption shall be conducted wholly within an enclosed building equipped with adequate sanitary facilities.

There shall be no manufacture, processing or treatment of products other than those which are clearly incidental and essential to the retail business conducted on the same premises.

Such uses, operations or products shall not be objectionable due to odor, dust, smoke, noise, vibration or other similar causes.

That any exterior sign displayed shall pertain only to a use conducted within the building.

*Transitional yards.* Where a B-1 district adjoins a residential district, transitional yards shall be provided in accordance with the following regulations:

When lots in a local business district front on the street and at least eighty (80) percent of the frontage directly across the street between two (2) consecutive intersecting streets is in a residential district, the front yard regulations for the residential district shall apply to the said lots in the business district.

In a district where a side lot line coincides with a side or rear lot line of property in an adjacent residential district, a yard shall be provided along with side lot line. Such yard shall be equal in dimension to the minimum side yard which would be required under this ordinance for a residential use on the adjacent property in the residence district.

In a local business district where a rear lot line coincides with a rear lot line of property in an adjacent residential district, a yard shall be provided along such rear lot line. Such yard shall be twenty (20) feet in depth.

In a business district, where the extension of a front or side lot line coincides with the front lot line of an adjacent lot located in a residential district, a yard equal in depth to the minimum front yard required by this ordinance on such adjacent lot in the residential district shall be provided along such front or side lot line for a distance of at least twenty-five (25) feet, including the width of any intervening alley, from such lot in the residential district.

Transitional yards shall be unobstructed from lowest level to sky except as allowed in section.

*Maximum floor area and coverage.* The floor area shall not exceed more than sixty (60) percent of a zoning lot shall be covered by a building or buildings.

*Off-street parking and loading.* Off-street parking and loading shall be as permitted or required in section.

*Rear yard.* There shall be a rear yard having a depth of not less than ten (10) feet.

*8.2 B-2 service commercial business district.*

(1) *Description and intent of district.* The B-2 district is intended to provide a mix of retail and general business uses within the city. The type of general business uses permitted includes those uses deemed compatible with retail uses. The district is intended for application on smaller development sites.

(2) *Permitted uses.* The following uses are permitted uses in the B-2 district:

Air conditioning, plumbing and heating sales and service.

Auto and truck parts and accessory stores (new parts sales).

Appliance store.

Banks and financial institutions.

Banquet hall.

Bakery (on-site sales only).

Barbershop and hair salon.

Books and periodicals.

Bicycle sales and repair.

Camera and photo equipment store.

Catering service.

Car care center (brakes, muffler, lube, tire, detailing and accessories in a completely enclosed building).

Christmas tree sales.

Clinic.

Currency exchanges.

Dry cleaners.

Electrical and plumbing parts and supplies distribution.

Employment agency.

Exterminator and pest control.

Florists shops.

Garden supply.

Gift shop.

Hardware store.

Health and fitness club.

Heating and plumbing sales and service.

Higher education facilities and classrooms for business and professional schools.

Household electrical appliance sales and repair (excluding sales and manufacturing).

Home improvement center.

Laundromat, automatic coin operated.

Locksmith.

Mortuaries and funeral parlors.

Music or dance studio.

Office, service and business.

Office supply store.

Orthopedic and medical supply store.

Photocopy and retail printing services.

Photography studio.

Plumbing showroom and shop.

Physical therapy facilities, medical.

Post office and express mail agencies.

Printing and publishing services.

Radio and television stations and studios.

Restaurant.

Savings and loan.

Sewing machine sales and repair.

Shoe repair.

Small animal grooming establishment.

Taxi service company.

Taxi stand.

Taxidermists.

Telegraph office.

Television sales and service.

Truck and trailer rental agency.

Accessory uses.

(3)  *Special uses.*  The following special uses may be authorized in conformance with subsection 12.7 of this ordinance:

Automobile laundry.

Bus station.

Child care center and preschool.

Churches.

Cultural institutions including art galleries and museums.

Drive-in and drive-through facilities.

Gasoline fuel station and food mart.

Institutional uses.

Kennel (wholly enclosed).

Parks and recreation facilities.

Planned development.

Public utilities, facilities and services.

Self-service storage facilities.

Veterinary hospital.

Accessory uses.

(4) *Lot size requirements.*

    (a)  The lot area of each zoning lot shall not be less than twelve thousand (12,000) square feet.

    (b)  The minimum lot width of each zoning lot shall not be less than seventy-five (75) feet.

(5) *Yard requirements.*  The following yards shall be maintained in the B-2 district:

TABLE INSET:

|  | Building  (1) | Parking |
|---|---|---|
| Front | 10 ft. | 6 ft. |
| Side | 5 ft. | 5 ft. |
| Rear | 5 ft.  (2) | 5 ft. |
| Transitional | 6 ft.  (2) | 6 ft. |

    In a B-2 district where the extension of a front or side lot line coincides with the front or side lot line of an adjacent lot located in a residentially zoned district, a yard equal to the depth of the minimum front yard required by this ordinance, on such adjacent lot in the residential district, shall be provided along such front or side lot line in the B-2 district.

  2  Where a zoning lot adjoins an improved alley which also lies across and adjoins residentially zoned land, the yard may be reduced to zero for the placement of the principal structure only.

    (6) *Maximum lot coverage.*  The total lot area occupied by any principal buildings and accessory buildings, together with all impervious surfaces, shall not exceed ninety (90) percent.

    (7) *Maximum floor area.*  The maximum allowable floor area ratio in the B-2 district is .8.

    (8) *Maximum building height.*  No building or structure shall be erected or altered to exceed a height of thirty-five (35) feet.

    (9) *District standards.*

        (a)  All on-site utility lines, but excluding high tension power lines, shall be located underground.

        (b)  At the discretion of the approving authority as part of any site plan approval, blanket cross-easements for vehicle access may be obtained generally parallel to the interior of front property lines. These easements are intended to provide for effective motor vehicle access, minimizing access to public streets. Easements will not be required where a frontage road system is in place or a

coordinated access system is provided through a planned development.

(c)  All business, service, storage, and display of goods and services shall be conducted within a completely enclosed structure, except:

    1.  Off-street parking and loading;

    2.  Recreational uses;

    3.  Accessory uses;

    4.  Uses allowed as part of a special use permit.

(d)  All development shall meet the performance standards requirements of subsection 9.1 M-1 light industrial district.

(10)  *Related regulations and requirements.*  Other pertinent regulations contained within this ordinance that shall be observed, include, but are not limited to:

(a)  Section IV [XII], subsection 12.9, State Street–State Line Road Redevelopment Area site development plan review.

(b)  Section IV [XII], subsection 12.10, Landscape plan approval.

(c)  Section X, Off-street parking and loading.

(d)  Section XI, Signs.

**8.3 B-3 community commercial business district.**

(1)  *Description and intent of district.*  The B-3 district is intended to serve immediate neighborhoods and the community with a range of retail goods and services. The district is intended to be smaller in overall scale, and situated at select arterial and collector street locations.

(2)  *Permitted uses.*  The following uses are permitted uses in the B-3 district:

    Apparel.

    Appliance stores.

    Arts and crafts stores.

    Art and office supply.

    Automobile accessory store.

    Bakery (on-site retail sales only).

    Banks and other financial institutions.

    Barbershop and hair salon.

    Books and periodical store.

    Brokerage office.

    Carpet, rug and linoleum store.

    Consumer electronics store.

    Delicatessen.

    Drugs and cosmetic store.

    Employment agency.

    Florist shop.

    Food store and food mart.

    Gift shop.

    Grocery store.

Hardware store.

Health and fitness club.

Hobby shop.

Housewares and kitchen supply.

Interior decorating.

Jewelry store.

Laundromat, automatic, coin operated.

Locksmith shop.

Music store.

Office, service and business.

Office supply store.

Optical sales and service.

Paint and wall paper store.

Pet store.

Photocopying and retail printing services.

Picture framing shop.

Planned development.

Post office.

Restaurant.

Secretarial services.

Shopping center.

Sporting goods and bicycle shop.

Telegraph and telephone answering service.

Television sales and service.

Taxi stand.

Toy store.

Variety store.

Video and music sales and rental store.

Accessory uses.

(3)  *Special uses.*  The following special uses may be authorized in conformance with subsection 12.7 of this ordinance:

Automobile laundry.

Child day care center and preschool.

Churches.

Clinics.

Cultural institutions including art galleries and museums.

Drive-in and drive-through facilities.

Gasoline fuel station and food mart.

Institutional uses.

Library.

Parks and recreation.

Planned development.

Public utilities, facilities and services.

Accessory uses.

(4) *Lot size requirements.*

(a) The lot area of each zoning lot shall not be less than twenty thousand (20,000) square feet.

(b) The minimum lot width of each zoning lot shall not be less than one hundred fifty (150) feet.

(5) *Yard requirements.* The following yards shall be maintained in the B-3 district:

TABLE INSET:

|  | Building (1) | Parking |
|---|---|---|
| Front | 10 ft. | 6 ft. |
| Side | 5 ft. | 5 ft. |
| Rear | 5 ft. | 5 ft. |
| Transitional | 10 ft. | 6 ft. |

(1) In a B-3 district where the extension of a front or side lot line coincides with the front or side lot line of an adjacent lot located in a residentially zoned district, a yard equal to the depth of the minimum front yard required by this ordinance, on such adjacent lot in the residential district, shall be provided along such front or side lot line in the B-3 district.

(6) *Maximum lot coverage.* The total lot area occupied by any principal buildings and accessory buildings, together with all impervious surfaces, shall not exceed ninety (90) percent.

(7) *Maximum floor area.* The maximum allowable floor area ration in the B-3 district is .5.

(8) *Maximum building height.* No building or structure shall be erected or altered to exceed a height of thirty-five (35) feet.

(9) *District standards.*

(a) All on-site utility lines, but excluding high tension power lines, shall be located under ground.

(b) At the discretion of the approval authority as part of any site plan approval, blanket cross-easements for vehicle access may be obtained generally parallel to the interior of front property lines. These easements are intended to provide for effective motor vehicle access, minimum access to public streets. Easements will not be required where a frontage road system is in place or a coordinated access system is provided through a planned development.

(c) All business, service, storage, and display of goods and services shall be conducted within a completely enclosed structure, except:

1. Off-street parking and loading;

2. Recreational uses;

3. Accessory uses;

4. Uses allowed as part of a special use permit.

(d) All development shall meet the performance standards requirements of subsection 9.1 M-1 light industrial district.

(10) *Related regulations and requirements.* Other pertinent regulations contained within this ordinance that shall be observed, include, but are not limited to:

(a)  Section IV [XII], subsection 12.9 State Street–State Line Road Redevelopment Area site development plan review.

(b)  Section IV [XII], subsection 12.10, Landscape plan approval.

(c)  Section X, Off-street parking and loading.

(d)  Section XI, Signs.

(Code 1980, App. B, § VIII; Ord. No. 83-10, § 2, 3-24-1983; Ord. No. 83-18, § 1, 8-11-1983; Ord. No. 86-8, § 1, 3-27-1986; Ord. No. 87-23, § 1, 11-12-1987; Ord. No. 88-17, §§ 1, 3, 7-14-1988; Ord. No. 90-36, § 2, 7-26-1990; Ord. No. 93-4, § 1a., 2-25-1993; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. IX. Industrial districts.

*9.1 M-1 light industry district.*

*Conditions of use.* All permitted uses are subject to the following conditions:

Any production, processing, cleaning, servicing, testing, repair or storage of goods, materials, or products shall conform with the performance standards set forth below.

All business, production, servicing and processing shall take place within completely enclosed buildings unless otherwise, specified. Within one hundred and fifty (150) feet of a residence district, all storage shall be in completely enclosed buildings or structures, and storage located elsewhere in this district may be open to the sky but shall be enclosed by solid walls or fences (including solid doors or gates thereto) at least eight (8) feet high, but in no case lower in height than the enclosed storage and suitably landscaped.

However, open off-street loading facilities and open off-street parking of motor vehicles under one and one-half (1 1/2) tons capacity may be enclosed throughout the district, except for such screening of parking and loading facilities as may be required under the provisions of Section X.

Uses established on the effective date of this ordinance and, by its provisions, are rendered nonconforming, shall be permitted to continue, subject to the provisions of section.

Uses established after the effective date of this ordinance shall conform fully to the performance standards hereinafter set forth for the district.

*Permitted uses.* The following uses are permitted:

Retail and services uses, as follows:

Animal pounds and shelters.

Automobile service stations where the retail sale of gasoline and oil for motor vehicles, including minor services customarily incidental thereto, may be conducted out-of-doors. Lubricating and washing facilities, including auto laundries, are permitted only if in a completely enclosed building.

Battery and tire service stations.

Beverages, nonalcoholic, bottling and distributing.

Contractor or construction shops, such as building, cement, electrical, refrigeration, air conditioning, masonry, painting, plumbing, roofing, heating and ventilating.

Fuel sales, with storage of fuel oils, gasoline and other flammable products limited to one hundred twenty thousand (120,000) gallons per tank, with the total storage on a zoning lot not to exceed five hundred thousand (500,000) gallons.

Garages and parking lots, other than accessory, and subject of the provisions of Section X.

Greenhouses.

Ice sales, linen, towel, diaper and other similar supply services.

Riding academies and stables, horse.

Production, processing, cleaning, testing or repair, limited to the following uses and products:

Advertising displays.

Apparel and other products manufactured from textiles.

Automobile painting, upholstering, repairing, reconditioning, and body and fender repairing, when done within the confines of a structure.

Awnings, venetian blinds.

Bakeries.

Beverages, nonalcoholic.

Blacksmith shops.

Books, hand binding and tooling.

Bottling works.

Brushes and brooms.

Building equipment, building materials, lumber, coal, sand and gravel yards, and yards for contracting equipment of public agencies, or public utilities, or materials or equipment of similar nature.

Canning and preserving.

Canvas and canvas products.

Carpet and rug cleaning.

Carting, express hauling or storage yard.

Cement block manufacture.

Ceramic products, such as pottery and small glazed tile.

Cleaning and dyeing establishments.

Clothing.

Cosmetics and toiletries.

Creameries and dairies.

Drugs.

Electric appliances such as lighting fixtures, irons, fans, toasters and electric toys.

Electrical equipment assembly, such as home radio and television receivers and home movie equipment, but not including electrical machinery.

Electrical supplies, manufacturing and assembly of, such as wire and cable assembly, switches, lamps, insulation and dry cell batteries.

Food products, processing and combining of (except meat and fish), baking, boiling, canning, cooking, dehydrating, freezing, frying, grinding, mixing and pressing.

Fur goods, not including tanning and dyeing.

Glass products, from previously manufactured glass.

Hair, felt, and feather products (except washing, curing and dyeing).

Hat bodies of fur and wool felt.

Hosiery.

House trailers.

Ice, dry and natural.

Ink mixing and packaging and inked ribbons.

Insecticides.

Jewelry.

Laboratories, medical, dental, research, experimental and testing, provided there is no danger from fire or explosion nor offensive noise, vibration, smoke, dust, odors, heat, glare or other objectionable influences.

Laundries.

Leather products, including shoes and machine belting.

Luggage.

Machine shops for tool, die and pattern making.

Meat products.

Metal finishing, plating, grinding, sharpening, polishing, cleaning, rustproofing, and heat treatment.

Metal stamping and extrusion of small products, such as costume jewelry, pins and needles, razor blades, bottle caps, buttons and kitchen utensils.

Musical instruments.

Orthopedic and medical appliances, such as artificial limbs, braces, supports, and stretchers.

Paper products, small, such as envelopes and stationery, bags, boxes, tubes and wallpaper printing.

Perfumes and cosmetics.

Pharmaceutical products, compounding only.

Plastic products, but not including the processing of the raw materials.

Poultry and rabbits, slaughtering.

Precision instruments, such as optical, medical and drafting.

Products from finished materials, plastic, bone, cork, feather, felt, fibre, fur, glass, hair, horn, leather, paper, precious and semiprecious stones, rubber, shell or yarn.

Public utility electric substations and distribution centers, gas regulation centers and underground gas holder stations.

Repair of household or office machinery or equipment.

Rubber products, small, and synthetic treated fabrics (excluding all rubber and synthetic processing), such as washers, gloves, footwear, bathing caps and atomizers.

Silverware, plate and sterling.

Soap, and detergents, packaging only.

Soldering and welding.

Sporting and athletic equipment, such as balls, baskets, cues, gloves, bats, racquets and rods.

Statuary, mannequins, figurines, and religious and church art goods, excluding foundry operations.

Storage and sale of trailers, farm implements and other similar equipment on an open lot.

Storage of flammable liquids, fats or oil in tanks each of fifty thousand (50,000) gallons or less capacity, but only after the locations and protective measures have been approved by local governing officials.

Textiles, spinning, weaving, manufacturing, dyeing, printing, knit goods, yarn thread and cordage, but not including textile bleaching.

Tobacco curing and manufacturing, and tobacco products.

Tool and die shops.

Tools and hardware, such as bolts, nuts and screws, door-knobs, drills, hand tools and cutlery, hinges, house hardware, locks, non-ferrous metal castings and plumbing appliances.

Toys.

Truck, tractor, trailer or bus storage yard, but not including a truck or motor freight terminal which shall be treated under the subsection, Special Uses.

Umbrellas.

Upholstering (bulk), including mattress manufacturing, rebuilding and renovating.

Vehicles, children's, such as bicycles, scooters, wagons and baby carriages.

Watches.

Wood products, such as furniture, boxes, crates, baskets and pencils and cooperage works.

Any other manufacturing establishments that can be operated in compliance with the performance standards of subsection "performance standards," without creating objectionable noise, odor, dust, smoke, gas, fumes or vapor; and that is a use compatible with the use and occupancy of adjoining properties.

Wholesale and warehousing, local cartage and express facilities (but not including motor freight terminals).

Public and community service uses, as follows:

Bus terminals, bus garages, bus lots, street railway terminal, or street car houses.

Electric substations.

Fire stations.

Municipal or privately owned recreation buildings or community centers.

Parks and recreation areas.

Police stations.

Sanitary land fill.

Sewage treatment plants.

Telephone exchanges.

Water filtration plants.

Water pumping stations.

Water reservoirs.

Residential uses, as follows:

Dwelling units for watchmen and their families when located on the premises where they are employed in such capacity.

Miscellaneous uses, as follows:

Accessory uses.

Radio and television towers.

Temporary buildings for construction purposes, for a period not to exceed the duration of such construction.

# Exhibit C (Part 2)
## to
## Complaint For Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory And Other Relief

## Case No. 08-cv-3017

# EXHIBIT C, PART 2

*Off-street parking and loading,* as permitted or required in Section X.

*Special uses.* The following uses may be allowed by special use permit in accordance with the provisions of the administrative section:

Any use which may be allowed as a special use in the B-1 through B-4 business districts.

Planned developments, industrial.

Motor freight terminals.

Stadiums, auditoriums and arenas.

Any use permitted in the M-2 general manufacturing district, provided the performance standards of subsection, "Performance standards," can be met in their entirety.

*Yard areas.* No building or structure shall hereafter be erected or structurally altered unless the following yards are provided and maintained in connection with such building:

(1)  Front yard. On every zoning lot a front yard of not less than twenty-five (25) feet in depth shall be provided. However, where lots within the same block and comprising forty (40) percent of the frontage on the same street are already developed on the effective date of this ordinance with front yards with an average depth of less than twenty-five (25) feet, then such average depth shall be the required front yard depth for such frontage in said block.

(2)  Side yards. On every zoning lot a side yard shall be provided along each side lot line. Each side yard shall be not less in width than ten (10) percent of the lot width, but need not exceed twenty (20) feet in width.

(3)  Rear yard. On every zoning lot a rear yard shall be provided and maintained of not less than twenty (20) feet in depth, except that the inner ten (10) feet may be used for off-street parking.

*Performance standards.* Any use established hereafter in any M-1 manufacturing district shall be so operated as to comply with the performance standards set forth as follows:

*Noise.* Sound levels shall be measured with a sound level meter and associated octave band filter manufactured according to standards prescribed by the American Standards Association. Measurements shall be made using the flat network of the sound level meter. Impulsive type noises shall be subject to the performance standard hereinafter prescribed provided that such noises shall be capable of being accurately measured with such equipment. Noises capable of being so measured, for the purpose of this ordinance, shall be those noises which cause rapid fluctuations of the needle of the sound level meter with a variation of no more than plus or minus two (2) decibels. Noises incapable of being so measured, such as those of an irregular and intermittent nature, shall be controlled so as not to become a nuisance to adjacent uses.

At no point either on the boundary of a residence district or a business district or at one hundred twenty-five (125) feet from the nearest property line of a plant or operation, whichever distance is greater, shall the sound pressure level of an individual operation or plant (other than the operation of motor vehicles and other transportation facilities) exceed the decibel levels at the designated octave bands shown hereafter for the districts indicated:

TABLE INSET:

| | Maximum Permitted Sound Level in Decibels Along Boundaries or 125 Feet From Plant Or Operation Property Line | |
|---|---|---|
| Octave Band Cycles Per Second | Residence Districts | Business Districts |
| 0 to 75 | 67 | 73 |
| 75 to 150 | 62 | 68 |
| 150 to 300 | 58 | 64 |
| 300 to 600 | 54 | 60 |
| | | |

| 600 to 1,200 | 49 | 55 |
|---|---|---|
| 1,200 to 2,400 | 45 | 51 |
| 2,400 to 4,800 | 41 | 47 |
| Over 4,800 | 37 | 43 |

*Smoke and particulate matter.* No stack shall emit more than ten (10) smoke units during any one (1) hour, nor shall smoke of a density in excess of Ringelmann No. 2 be emitted, provided that during a single one (1) hour period in each twenty-four (24) hour day, each stack may emit up to twenty (20) smoke units when blowing soot or cleaning fires, and during such cleaning of fires, smoke of a density of Ringelmann No. 3 may be emitted, but not for longer than four (4) minutes each period.

No emission of smoke or particulate matter shall exceed a density of Ringelmann No. 3, except for a plume consisting entirely of condensed steam. For the purposes of grading the density of emission, the Ringelmann Chart published and used by the United States Bureau of Mines shall be employed.

The rate of emission of particulate matter from all sources within the boundaries of any lot shall not exceed a net figure of one (1) pound per acre of lot area during any one (1) hour.

Dust and other forms of air pollution borne by air and wind from such sources as storage area, yards, roads, etc., within lot boundaries shall be kept to a minimum by appropriate landscaping, paving, oiling, or other acceptable means. The emission of particulate matter from such sources shall conform with the requirements of the preceding paragraph.

In addition to the performance standards specified herein, the emission of smoke and particulate matter in such manner or quantity as to be detrimental to or endanger the public health, safety, comfort or welfare is hereby declared to be a public nuisance.

*Odorous matter.* The emission of odorous matter from any property in such concentrations as to be readily detectable at any point along the boundaries of said property or in such concentrations as to create a public nuisance or hazard beyond such boundaries is prohibited.

*Vibration.* Any process or equipment which produces intense earth-shaking vibration, such as are created by heavy drop forges or heavy hydraulic surges, shall be set back at least five hundred (500) feet from the property boundaries on all sides, except for a property line adjoining an M-2 district, where such setback shall not be mandatory. However, in no case shall any such vibrations be allowed to create a public nuisance or hazard beyond the property boundaries.

*Toxic or noxious matter.* No use on any property shall discharge across the boundaries of said property toxic or noxious matter in such concentrations as to be detrimental to or endanger the public health, safety, comfort or welfare, or cause injury or damage to other property or business.

*Glare or heat.* Any operation producing intense glare or heat shall be performed within a completely enclosed building and effectively screened in such a manner as not to create a public nuisance or hazard along property boundaries.

*Fire and explosive hazards.* Fire and explosive hazards shall be controlled as follows:

Activities involving the storage or manufacture of materials or products which decompose by detonation are not permitted in the M-1 districts.

The storage, utilization or manufacture of materials or products ranging from free or active burning to intensive burning, as determined by the zoning administrator, is permitted under the following conditions:

(1) All storage, utilization or manufacture of such materials or products shall be within completely enclosed buildings or structures having incombustible exterior walls; and

(2) All such buildings or structures shall be set back at least forty (40) feet from property boundaries, or in lieu thereof, shall be protected throughout by an automatic sprinkler system complying with standards for installation prescribed by the National Fire Protection Association.

Materials or products which produce flammable or explosive vapors or gases under ordinary weather temperatures shall not be permitted in this district, with the exception of the following, which shall be permitted:

(1)  Materials required for emergency or standby equipment;

(2)  Materials used in secondary processes which are auxiliary to a principal operation, such as paint-spraying of finished products; and

(3)  Flammable liquids and oils stored, sold and used in conjunction with the operation of an automobile service station and customarily required or used in such operations.

*9.2 M-2 heavy industry district.*

*Condition of use.*  All permitted uses are subject to the following conditions:

All production, processing, cleaning, servicing, testing, repair or storage of goods, materials or products shall conform with the performance standards set forth in subsection, Performance standards.

Within one hundred fifty (150) feet of a residence district, all business production, servicing, processing and storage shall take place or be within completely enclosed buildings, except that storage of materials may be open to the sky provided the storage area is enclosed with a solid wall or fence at least eight (8) feet high.

However, within such one hundred fifty (150) feet of a residence district, off-street loading facilities and off-street parking of motor vehicles under one and one-half (1 1/2) tons capacity may be enclosed, except for such screening of parking and loading facilities as may be required under the provisions of Section X.

*Permitted uses.*  The following uses are permitted:

Any use permitted in the M-1 districts.

Any production, processing, cleaning, servicing, testing or repair or storage of materials, goods or products which conform to the performance standards established for this district.

Any sexually oriented entertainment business.

Any wholesale or retail business involving the viewing, sale or rental of sexually oriented materials, including but not limited to videotapes, videodiscs, motion pictures, books, magazines, posters, photographs, and sexual devices or paraphernalia.

*Special uses.*  Any use which may be allowed as a special use in the M-1 district may be allowed as a special use in this M-2 district.

*Amortization of pre-existing regulated use.*  Any nonconforming building, structure, lot or regulated use which existing lawfully at the time of the adoption of Article IX and Article X of Chapter 15 of the Municipal Code of the City of Calumet City, Cook County, Illinois, which shall become nonconforming upon the adoption of those articles may be amortized as hereinafter provided.

a.  Upon written notice from the department of inspectional services to the owners or interests therein, that any building, structure, lot or regulated use is nonconforming under the subdivision and zoning ordinance of the City of Calumet City, the owners or interests therein shall, within three (3) months from the date of such notice, apply to the department of inspectional services for a certificate of nonconformance and amortization schedule.

b.  Failure to apply for a certificate of nonconformance and amortization schedule within three (3) months of the notice provided for above will require the amortization of the nonconformance within six (6) months of the notice provided for above.

c.  Nonconformances that have obtained a certificate of nonconformance and amortization schedule from the department of inspectional services shall be discontinued within one (1) year of the notice provided for above.

*Yard areas.*  All yard areas shall be the same as required or permitted in the M-1 limited manufacturing district.

*Maximum floor area ratio.* The maximum floor area ratio shall not exceed 3.0.

*Performance standards.* Any use established hereafter in an M-2 general manufacturing district shall be so operated as to comply with the performance standards set forth as follows:

*Noise.* The performance standards governing noise in the M-1 district shall apply.

*Smoke and particulate matter.* No stack shall emit more than twenty (20) smoke units during any one (1) hour, nor shall smoke of a density in excess of Ringelmann No. 2 be emitted provided that during fire cleaning periods each stack may emit four (4) minutes of smoke up to thirty (30) smoke units, twice for blowing soot and twice for cleaning fires, and during such cleaning for fires, smoke of a density of Ringelmann No. 3 may be emitted.

No emission of smoke or particulate matter shall exceed a density of Ringelmann No. 3, except for a plume consisting entirely of condensed steam. For the purpose of grading the density of emissions, the Ringelmann Chart published and used by the United States Bureau of Mines shall be employed.

The rate of emission of particulate matter from all sources within the boundaries of any lot shall not exceed a net figure of three (3) pounds per acre of lot area during any one (1) hour.

Dust and other forms of air pollution borne by the wind from such sources as storage areas, yards, roads, etc., within lot boundaries shall be kept to a minimum by appropriate landscaping, paving, oiling, or other acceptable means. The emission of particulate matter from such sources shall conform with the requirements of the preceding paragraph.

In addition to the performance standards specified herein, the emission of smoke or particulate matter in such manner or quantity as to be detrimental to or endanger the public health, safety, comfort or welfare is hereby declared to be a public nuisance.

*Odorous matter.* The emission of odorous matter from any property in such concentrations as to be readily detectable at any point along the boundaries of said property when diluted in the ratio of one (1) volume of odorous air to four (4) or more volumes of clean air, or in such concentrations as to produce a public nuisance or hazard beyond the property boundaries is prohibited.

*Vibration.* Any process or equipment which produces intense earth-shaking vibrations, such as are created by heavy drop forges or heavy hydraulic surges, shall be set back at least five hundred (500) feet from the property boundaries on all sides. However, in no case shall such vibrations be allowed to create a public nuisance or hazard beyond the property boundaries.

*Toxic or noxious matter.* No use on any property shall discharge across the boundaries of said property toxic or noxious matter in such concentrations as to be detrimental to or endanger the public health, safety, comfort, or welfare, or cause injury or damage to other property or business.

*Glare or heat.* Any operation producing intense glare or heat shall be performed within an enclosure and effectively screened in such a manner as not to create a public nuisance or hazard along property boundaries.

*Fire and explosive hazards.* Fire and explosive hazards shall be controlled as follows:

Activities involving the storage or manufacture of materials or products which decompose by detonation are not permitted in the M-2 districts unless licensed by the city. However, in no case shall such materials or products be stored or manufactured within two hundred (200) feet of the boundary of any other district.

The storage, utilization and/or manufacture of materials or products ranging from incombustible to moderate burning, as determined by the zoning administrator, is permitted.

The storage, utilization or manufacture of materials or products ranging from free to active burning, to intense burning, as determined by the zoning administrator, is permitted, provided that within forty (40) feet of the boundary of a residence or business district the following restrictions shall apply:

(1) All storage, utilization or manufacture of such materials, or products, shall be within completely enclosed buildings or structures having incombustible walls; and

(2) All such buildings or structures shall be protected throughout by an automatic

sprinkler system complying with standards for installation by the National Fire Protection Association.

Materials or products which produce flammable or explosive vapors or gasses under ordinary weather temperature shall not be permitted in this district, with the exception of the following, which are permitted:

(1)  Materials required for emergency or standby equipment;

(2)  Materials used in secondary processes which are auxiliary to a principal operation, such as paint spraying of finished products;

(3)  Flammable liquids and oils stored, sold and used in conjunction with the operation of an automobile service station and customarily required or used in such operation.

## 9.3 OR office research district.

(1)  *Description and intent of district.*  The OR district is intended to allow for a mix of office uses, research and testing facilities and restricted manufacturing, warehousing and distribution in high-quality, well designed, low-to medium-density settings.

(2)  *Permitted uses.*  The following uses are permitted in the OR district.

Banks and other financial institutions.

Business schools.

Display or catalog showroom.

Dry cleaning and/or laundry facilities.

Glass products production.

Laboratories, research and testing.

Linen supply.

Lithography.

Offices, business, professional, medical arts.

Paper products assembly.

Plastic products assembly.

Wholesale establishments.

Mail order houses.

Self-service storage facility.

Warehousing and distribution, excluding motor freight terminals.

Health and athletic clubs.

Precision instruments manufacturing.

Electronic component manufacturing and assembly.

Printing and publishing services.

Radio and television studios.

Research and development testing facilities.

Show rooms and sales area accessory to principal uses and within the principal structure not occupying more than ten (10) percent of the gross floor area.

Woodworking and wood products.

Commercial uses within the principal structure occupying not more than ten (10) percent of the gross floor area and limited to the following uses: Beauty/barber shop, food store florist, gift shop, photocopy

shop, and letter and parcel services.

Accessory uses.

(3) *Special uses.* The following special uses may be authorized in conformance with subsection 12.7 of this ordinance.

Animal hospital and clinic.

Child day care center and preschool.

Planned development.

Public utilities, facilities and services.

Restaurant, sit down only.

Park and recreation uses.

Parking lot or structure.

Institutional uses.

Accessory uses.

(4) *Lot size requirements.*

(a) The lot area of each zoning lot shall not be less than twenty-five thousand (25,000) square feet.

(b) The minimum lot width of each zoning lot shall not be less than one hundred (100) feet.

(5) *Yard requirements.* The following yards shall be maintained in the OR district:

TABLE INSET:

|              | Building | Parking |
|--------------|----------|---------|
| Front        | 30 ft.   | 15 ft.  |
| Side         | 20 ft.   | 10 ft.  |
| Rear         | 30 ft.   | 15 ft.  |
| Transitional | 30 ft.   | 30 ft.  |

(6) *Maximum lot coverage.* The total lot area occupied by any principal buildings and accessory buildings, together with all impervious surfaces, shall not exceed seventy-five (75) percent.

(7) *Maximum floor area.* The maximum allowable floor area ratio in the OR district is .7.

(8) *Maximum building height.* No building or structure shall be erected or altered to exceed a height of forty-five (45) feet.

(9) *District standards.*

(a) The minimum gross land area of any office research zoning district shall be ten (10) acres.

(b) All on-site utility lines, but excluding high tension power lines, shall be located underground.

(c) All business storage, and display of goods and services shall be conducted within a completely enclosed structure, except:

1. Off-street parking and loading;

2. Recreational uses;

3. Accessory uses;

4. Uses allowed as part of a special use permit.

(d) All development shall meet the performance standards requirements of subsection 9.1, M-1 light industrial district.

(10) *Related regulations and requirements.* Other pertinent regulations contained within this ordinance that

shall be observed, include, but are not limited to:

(a)  Section IV [XII], subsection 12.9, State Street--State Line Road Redevelopment Area site development plan review;

(b)  Section IV [XII], subsection 12.10, Landscape plan approval;

(c)  Section X, Off-street parking and loading;

(d)  Section XI, Signs.

(Code 1980, App. B, § IX; Ord. No. 88-17, § 2, 7-14-1988; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 96-73, §§ 1, 2, 11-14-1996)

## Sec. X. Off-street parking and loading.

*10.1 General provisions, parking and loading.*

*Scope of regulations.*  The off-street parking and loading provisions herein shall apply as follows:

For all buildings and structures erected and all uses of land established after the effective date of this ordinance, accessory parking and loading facilities shall be provided as required by the regulations of the district in which such building or uses are located.

When the intensity of use of any building, structure, or premises shall be increased through addition of dwelling units, gross floor area, seating capacity, or other units of measurement specified herein for required parking or loading facilities, parking and loading facilities as required herein shall be provided for such increase in intensity of use.

However, no building or structure lawfully erected or use lawfully established prior to the effective date of this ordinance shall be required to provide such additional parking or loading facilities unless and until the aggregate increase in units of measurement shall equal not less than fifteen (15) percent of the units of measurement existing upon the effective date of this ordinance, in which event parking or loading facilities as required herein shall be provided for the total increase.

Whenever the existing use of a building or structure shall hereafter be changed to a new use, parking or loading facilities shall be provided as required for such new use. However, if the said building or structure was erected prior to the effective date of this ordinance, additional parking or loading facilities are mandatory only in the amount by which the requirements for the new use would exceed those for the existing use if the latter were subject to the parking and loading provisions herein.

*Existing parking and loading facilities.*  Accessory off-street parking or loading facilities which are located on the same lot as the building or use served and which were in existence on the effective date of this ordinance or were provided voluntarily after such effective date shall not thereafter be reduced below, or if already less than, shall not further be reduced below, the requirements of this ordinance for a similar new building or use.

*Permissive parking and loading facilities.*  Nothing in this ordinance shall be deemed to prevent the voluntary establishment of off-street parking or loading facilities to serve any existing use of land or buildings provided that all regulations herein governing the location, design, improvement and operation of such facilities are adhered to.

*Damage and destruction.*  For any conforming or legally nonconforming building or use which is in existence on the effective date of this ordinance, which subsequent thereto is damaged or destroyed by fire, collapse, explosion or other cause, and which is reconstructed, reestablished or repealed, off-street parking or loading facilities need not be provided, except that parking or loading facilities equivalent to any maintained at the time of such damage or destruction shall be restored or continued in operation. However, in no case shall it be necessary to restore or maintain parking or loading facilities in excess of those required by this ordinance for equivalent new uses or construction.

*Control of off-site parking facilities.*  When required parking facilities are provided on land other than the zoning lot on which the building or use served by such facilities is located, they shall be and remain in the same possession or ownership as the zoning lot occupied by the building or use to which the parking facilities are accessory. No such off-site parking facilities shall be authorized and no occupancy permit shall be issued where the plans call for parking other than on the same zoning lot until and unless the zoning board of appeals has reviewed the plans and heard the

applicant and made findings that the common ownership or possession of the zoning lot and the site of the parking facilities are reasonably certain to continue and that the off-site parking facilities will be maintained at all times during the life of the proposed use or building.

*Submission of plot plan.* Any application for a building permit, or for a certificate of occupancy where no building permit is required, shall include therewith a plot plan, drawn to scale and fully dimensioned, showing any parking or loading facilities to be provided in compliance with this ordinance. Provided however, any permit application or zoning petition requiring site plan approval under Subsection 12.9 and landscape plan approval under subsection 12.10, shall govern the preparation of off-street parking and loading area plans.

*10.2 Additional regulations, parking.*

*Use of parking facilities.* Off-street parking facilities accessory to residential use and developed in any residential district in accordance with the requirements of this section shall be used solely for the parking of passenger automobiles or not more than one (1) truck of not more than one and one-half (1 1/2) tons capacity used by occupants of the dwelling structures to which such facilities accessory to residential structures be used for the storage of commercial vehicles or for the parking of automobiles belonging to the employees, owners, tenants, visitors, or customers of business or manufacturing establishments.

*Joint parking facilities.* Off-street parking facilities for different buildings, structures or uses, or for mixed uses, may be provided collectively in any zoning district in which separate parking facilities for each constituent use would ⊦⁻ permitted, provided that the total number of spaces so located together shall not be less than the sum of the ᶜ ⎯ارate requirements for each use.

*Computation.* When determination of the number of off-street parking spaces required herein results in a requirement of a fractional space, any fraction of one-half ( 1/2) or less may be disregarded while a fraction in excess of one-half ( 1/2) shall be counted as one (1) parking space.

*Size.* A required off-street parking space shall be at least nine (9) feet in width and at least twenty (20) feet in length exclusive of access drives or aisles, ramps, columns or work areas. Such space shall have a vertical clearance of at least seven (7) feet.

*Access.* Each required off-street parking space shall open directly upon an aisle or driveway of such width and design as to provide safe and efficient means of vehicular access to such parking space. All off-street parking facilities shall be designed with appropriate means of vehicular access to a street or alley in a manner which will least interfere with traffic movements.

*In yards.* Off-street parking spaces in required yards shall conform to the following:

*Front yards.*

(1)   No parking is permitted in a required front yard except the interior one-half ( 1/2) of the front yard in an M-1, M-2, or M-3 district.

(2)   Parking is allowed in a front yard on a private driveway serving single-family and two-family dwellings but such parking shall not be considered as satisfying the off-street parking requirements for such uses as set forth in the ordinance.

*Side yards.*

(1)   Parking is not permitted in any required side yard, further no open off-street parking serving a residential use in a nonrequired side yard shall be located nearer than ten (10) feet to a principal building.

*Rear yard.* In any rear yard with the following exceptions and requirements.

(1)   In the M-1, M-2, and M-3 districts when a rear yard is adjacent to an R district there shall be no parking in the twenty (20) feet adjacent thereto.

(2)   In any R district no open off-street parking space shall be located nearer than ten (10) feet to a principal building.

*Design and maintenance.*

*Open and enclosed parking spaces.* Accessory parking spaces located by the use served may be open to the sky or enclosed in a building. Accessory parking spaces located in a residence district

elsewhere than on the same lot occupied by the use served shall be open to the sky except when otherwise allowed as a special use.

*Surfacing.* All open off-street parking areas shall be improved with a compacted macadam base, not less than four (4) inches thick, surfaced with asphaltic concrete or constructed to some comparable specification.

*Screening and landscaping.* All open automobile parking areas containing more than four (4) parking spaces shall be effectively screened on each side adjoining or fronting on any property situated in residence district or any institutional premises by a wall, fence or densely planted compact hedge not less than five (5) feet nor more than seven (7) feet in height. Such required screening shall conform with the front and side yard setback requirements of the district in which the parking is located. Provided however, any permit application or zoning petition requiring site plan approval under subsection 12.9 and landscape plan approval under subsection 12.10, shall govern the type and location of parking lot screening.

*Lighting.* Any lighting used to illuminate off-street parking areas shall be directed away from residential properties in such a way as not to create a nuisance.

*Repair and service.* No motor vehicles repair work or sale of gasoline and motor oil of any kind shall be permitted in conjunction with accessory off-street parking facilities provided in a residence district, except as may be permitted under planned development.

*10.3 Location of accessory off-street parking facilities.*

The location of off-street parking spaces in relation to the use served shall be as prescribed hereinafter. All distances specified shall be walking distance between such parking spaces and a main entrance to the use served.

*For uses in a residence district.* Parking spaces accessory to dwellings shall be located on the same zoning lot as the use served.

*For uses in business and manufacturing district.* All required parking spaces shall be within one thousand (1,000) feet of the use served, except for spaces accessory to dwelling units (except these located in a transient hotel) which shall be within three hundred (300) feet of the use served. However, no parking spaces accessory to a use in a business or manufacturing district shall be located in a residence district, except that private, free, off-street parking accessory to such uses and municipal parking lots may be allowed by special use permit in accordance with the administrative section in any R-4, R-5, or R-6 district within two hundred (200) feet of and adjacent to any business or industrial district.

*. ..4 Schedule of parking requirements.*

For the following uses, accessory off-street parking spaces shall be provided as required hereinafter. Parking spaces required on an employee basis shall be based on the maximum number of employees on duty or residing, or both, on the premises at any one (1) time. Stacked parking is prohibited.

*Residential uses,* as follows:

Two-family, three-family and multiple-family dwellings: Two parking spaces for each family dwelling unit.

Hotels or motels: One (1) parking space for each dwelling unit and one (1) parking space for each lodging room shall be provided, plus accessory uses such as restaurants, meeting room, retail shops shall provide off-street parking as specified herein for each use.

Lodging houses: One (1) parking space shall be provided for each lodging room, plus one (1) space for the owner or manager.

Private clubs and lodges: One (1) parking space shall be provided for each lodging room, plus parking spaces equal in number to twenty-five (25) percent of the capacity in persons (exclusive of lodging room capacity) of such club or lodge.

*Retail and service uses,* as follows:

Retail stores and banks: One (1) parking space shall be provided for each two hundred (200)

square feet of floor area. Drive-in banks or other similar drive-in establishments shall provide ten (10) stacking spaces per teller or customer service window.

Automobile service stations: Three (3) parking spaces shall be provided for employees.

Automobile laundry: Thirty (30) stacking spaces shall be provided for each wash rack, plus one (1) parking space for each employee.

Bowling alleys: Four (4) parking spaces shall be provided for each alley, plus such additional spaces as may be required herein for affiliated uses, bars, restaurants and the like.

Establishments dispensing food or beverages for consumption on the premises: One (1) parking space shall be provided for each two hundred (200) square feet of floor area.

Motor vehicle sales and machinery sales: One (1) parking space shall be provided for each six hundred (600) square feet of floor area.

Furniture and appliance stores, household equipment or furniture repair shops: One (1) parking space shall be provided for each six hundred (600) square feet of floor area.

Theaters (indoor): One (1) parking space shall be provided for each three (3) seats except for theaters (indoor) located within a zoning lot of fifty (50) acres or more in which a retail shopping mall is located, the parking requirement shall be the same as the requirement for retail stores, that is one (1) parking space shall be provided for each two hundred (200) square feet of flood area.

Undertaking establishments, funeral parlors: Ten (10) parking spaces shall be provided for each chapel or parlor, plus one (1) parking space for each funeral vehicle kept on the premises.

Offices, business, professional and governmental: One (1) parking space shall be provided for each three hundred (300) square feet of floor area.

Wholesale establishments (but not including warehouses and storage building other than accessory): One (1) parking space shall be provided for each six hundred (600) square feet of floor area in excess of four thousand (4,000) square feet.

Establishments engaged in manufacture, assembly production, processing, cleaning, servicing, testing or repair of materials, goods, or products: One (1) parking space shall be provided for each two (2) employees, plus one (1) parking space for each vehicle used in the conduct of the enterprise and guest parking equal to one (1) space for each one thousand (1,000) square feet of floor area.

Warehouses and storage buildings: One (1) parking space shall be provided for each employee, plus one (1) parking space for each vehicle used in the conduct of the enterprise, and guest parking equal to one (1) space for each four thousand (4,000) square feet of floor space.

*Community service uses,* as follows:

Church, school, college and other institutional auditoriums: One (1) parking space shall be provided for each three (3) auditorium seats. Adequate space shall also be provided for buses used in connection with the activity of the institution, and all loading and unloading of passengers shall take place upon the premises.

Colleges, universities and business, professional and trade schools: One (1) parking space shall be provided for each employee, and one (1) parking space shall be provided for each four (4) students based on the maximum number of students attending classes on the premises at any one (1) time during any twenty-four-hour period.

Clinics, health centers and similar uses: One (1) parking space shall be provided for each employee and doctor, plus one (1) space for each two hundred (200) square feet of floor space.

Hospitals: One (1) parking space shall be provided for each two (2) hospital beds, plus one (1) parking space for each employee, plus one (1) parking space for each doctor assigned to the staff.

Libraries, art galleries and museums, public: One (1) parking space shall be provided for each one thousand (1,000) square feet of gross floor space.

Municipally or privately owned recreation buildings or community centers: One (1) parking space shall be provided for each two (2) employees, plus spaces adequate in number to serve the public.

Public utility and public service uses: One (1) parking space shall be provided for each employee, plus spaces adequate in number, as determined by the department of planning, to serve the public.

*Schools, private or public;* as follows:

(1) Nursing school: One (1) parking space for each employee, plus three (3) spaces for visitors and one (1) space for each bus or other vehicle used in the conduct of the school.

(2) Elementary or junior high school: One (1) parking space for each employee, plus one (1) space for each ten (10) students based upon thirty (30) students per classroom and one (1) space for each vehicle used in the conduct of the school.

(3) High schools: One (1) parking space for each employee, plus one (1) space for each five (5) students and one (1) space for each vehicle used in the conduct of the school.

*Place of assembly,* as follows:

Stadiums, arenas, auditoriums (other than church, college or institutional school), convention halls, dance halls, exhibition halls, skating rinks and other similar places of assembly. Parking spaces equal in number to thirty-three (33) percent of the capacity in persons shall be provided.

*Miscellaneous uses,* as follows:

Fraternities, sororities and dormitories: One (1) parking space shall be provided for each three (3) active members, plus one (1) parking space for each employee.

Institutions for the care of the insane or feeble-minded: One (1) parking space shall be provided for each employee and doctor, plus one (1) parking space for each three (3) beds.

Private clubs and lodges (without sleeping facilities for guests): Parking spaces equal in number to twenty-five (25) percent of the capacity in persons shall be provided.

Rest homes or nursing homes: One (1) parking space shall be provided for each four (4) beds, plus one (1) parking space for each employee, plus one (1) parking space for each doctor assigned to the staff.

Sanitariums, convalescent homes or institutions for the aged or for children: One (1) parking space shall be provided for each four (4) beds, plus one (1) parking space for each employee, plus one (1) parking space for each doctor assigned to the staff.

Theaters, automobile drive-in: Reservoir parking space equal to ten (10) percent of the vehicle capacity of such theaters shall be provided.

For the following uses, parking spaces shall be provided in adequate number, as determined by the plan commission, to serve persons employed or residing on the premises as well as the visiting public:

(1) Airports or aircraft landing fields; heliports;

(2) Convents and monasteries;

(3) Crematories and mausoleums;

(4) Fraternal or religious institutions;

(5) Outdoor amusement establishments, fairgrounds, permanent carnivals, kiddie parks and other similar amusement centers;

(6) Penal and correctional institutions;

(7) Rectories and parish houses;

(8) Swimming pools.

Mixed uses: When two (2) or more uses are located on the same zoning lot or within the same building, parking spaces equal in number to the sums of the separate requirements for each such use shall be provided. No parking space or portion thereof shall serve as a required space for more than one (1) use unless otherwise authorized by variation.

Other uses: For uses not listed heretofore in this schedule of parking requirements, parking spaces shall be provided on the same basis as required for the most similar listed use or as determined by the plan commission.

*10.5 Additional regulations, off-street loading.*

*Location.* All required loading berths shall be located on the same zoning lot as the use served. No loading berth for vehicles over two (2) tons' capacity shall be closer than fifty (50) feet to any property in a residence district unless completely enclosed by building walls or a uniformly painted solid fence or wall, or any combination thereof, not less than six (6) feet in height. No permitted or required loading berth shall be located within twenty-five (25) feet of the nearest point of intersection of any two (2) streets.

*Size.* Unless otherwise specified, a required loading berth shall be at least ten (10) feet in width by at least twenty-five (25) feet in length, exclusive of aisles and maneuvering space, and shall have a vertical clearance of at least fourteen (14) feet.

*Access.* Each required off-street loading berth shall be designed with appropriate means of vehicular access ɔ a street or alley in a manner which will least interfere with traffic movements.

*Surfacing.* All open off-street loading berths shall be improved with a compacted macadam base, not less than seven (7) inches thick, surfaced with not less than two (2) inches of asphaltic concrete or some comparable all weather dustless material.

*Repair and service.*

No motor vehicles repair work or service of any kind shall be permitted in conjunction with loading facilities provided in any residence or business districts.

Space allocated to any off-street loading shall not while so allocated be used to satisfy the space requirements for any off-street parking facilities or portions thereof.

*Schedule of loading requirements.* For the uses listed in the following table, off-street loading berths shall be provided on the basis of the gross floor of the building or portions thereof devoted to such uses in the amounts shown herein.

SCHEDULE OF LOADING REQUIREMENTS

TABLE INSET:

| | Use | Gross Floor Area In Square Feet | Required Number and Minimum Horizontal Dimensions of Berths |
|---|---|---|---|
| a. | Hospital, sanitariums, and other institutional uses. | 10,000 to 200,000 | 1—(10 ft. × 25 ft.) |
| b. | Hotels, clubs and lodges, except as set forth in Item e. | For each additional 200,000 or fraction thereof | 1 additional—(10 ft. × 25 ft.) |
| c. | Hotels, clubs and lodges, when containing any of the following: Retail shops, convention halls, or business or | 10,000 to 20,000 20,000 to 150,000 For each additional 150,000 | 1—(10 ft. × 25 ft.) 1—(10 ft. × 50 ft.) 1 additional—(10 ft. × |

APPENDIX B ZONING*

| | | | |
|---|---|---|---|
| | professional offices (other than accessory) | or fraction thereof | 50 ft.) |
| d. | Retail stores. | 5,000 to 10,000 | 1–(10 ft. × 25 ft.) |
| e. | Establishments dispensing food or beverages for consumption on the premises. | 10,000 to 25,000<br>25,000 to 40,000 | 2–(10 ft. × 25 ft. ea.)<br>2–(10 ft. × 50 ft. ea.) |
| f. | Motor vehicle and machinery sales. | 40,000 to 100,000 | 3–(10 ft. × 50 ft. ea.) |
| g. | Wholesale establishments (but not including warehouse and storage buildings other than accessory). | For each additional 200,000 or fraction thereof | 1 additional--(10 ft. × 50 ft.) |
| h. | Auditoriums, convention halls exhibition halls, sports arenas, stadiums. | 10,000 to 20,000<br>20,000 to 100,000 | 1–(10 ft. × 25 ft.)<br>1–(10 ft. × 50 ft.) |
| i. | Bowling alleys. | For each additional 100,000 or fraction thereof | 1 additional–(10 ft. × 50 ft.) |
| j. | Banks and offices, business, professional and governmental. | 10,000 to 100,000<br>For each additional 100,000 or fraction thereof to 500,000<br>For each additional 500,000 or fraction thereof | 1–(10 ft. × 25 ft.)<br>1 additional–(10 ft. × 25 ft.)<br><br>1 additional–(10 ft. × 25 ft.) |
| k. | Establishments engaged in production, processing, cleaning, servicing, testing, or repair of materials, goods or products. | 5,000 to 10,000<br>10,000 to 40,000<br>40,000 to 100,000 | 1–(10 ft. × 25 ft.)<br>1–(10 ft. × 50 ft.)<br>2–(10 ft. × 50 ft. ea.) |
| | Warehouses and storage buildings. | For each additional 100,000 or fraction thereof | 1 additional–(10 ft. × 50 ft.) |
| m. | Theaters | 8,000 to 25,000<br>For each additional 50,000 or fraction thereof | 1–(10 ft. × 25 ft.)<br>1 additional–(10 ft. × 25 ft.) |
| n. | Undertaking establishments and funeral parlors | 8,000 to 100,000<br>For each additional 100,000 or fraction thereof | 1–(10 ft.× 25 ft.)<br>1 additional–(10 ft. × 25 ft.) |

(Code 1980, App. B, § X; Ord. No. 93-4, § 1c., 2-25-1993; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. XI. Reserved.

**Editor's note:** Section 2 of Ord. No. 07-21, adopted Apr. 17, 2007, deleted § XI in its entirety. Former § XI pertained

to signs and derived from the 1980 Code; Ord. No. 96-30, adopted May 23, 1996; and Ord. No. 00-44, adopted Aug. 24, 2000.

## Sec. XII. Administration.

### 12.1 Enforcing officer.

The building commissioner of the City of Calumet City shall be the zoning administrator of the City of Calumet City. Said administrator shall see that the provisions of this ordinance are properly enforced.

Restrictions on employees. No official or employee responsible for the enforcing of this ordinance shall engage directly or indirectly in the construction industry or the building professions, or in any type of gainful employment or business that conflicts with official duties or the interests of the business incorporated in this ordinance.

### 12.2 Zoning permit.

No building or structure shall be erected, reconstructed, enlarged, or moved until a permit shall have been applied for in writing and issued by the building commissioner. Said permit shall be posted in a prominent place on the premises prior to and during the period of erection, reconstruction, enlargement or moving.

Before a permit is issued for the erection, moving, alteration, enlargement or occupancy of any building, or structure or use of premises, the plans and intended use shall indicate conformity in all respects to the provisions of this ordinance.

Site plan. Every application for permit submitted to the building commissioner shall be accompanied by a site plan, drawn to scale, showing the zoning lot, required yards, the location of buildings on the lot, accurate dimensions of the lot, and any existing and proposed uses together with such other information as may be necessary for the enforcement of this ordinance.

Certain permit applications and zoning petitions may require site development plan approval under subsection 12.9 and landscape plan approval under subsection 12.10 of this ordinance.

### 12.3 Interpretation of ordinance.

In interpreting and applying the provisions of this ordinance, they shall be held to be the minimum requirements for the promotion of health, safety, morals, convenience of the general welfare.

### 1 Certificate of occupancy.

A certificate of occupancy to be issued by the building commissioner shall be required for any of the following, except buildings incidental to agricultural operations other than residences:

    (a)  Occupancy and use of a building thereafter erected or enlarged;

    (b)  Change in use of an existing building;

    (c)  Occupancy and use of land to a use of a different classification, except for the raising of crops;

    (d)  Change in the use of land to a use of a different classification, except for the raising of crops;

    (e)  Any change in the use of a nonconforming use.

No such occupancy, use or change of use, shall take place until a certificate of occupancy therefore shall be issued.

Written application for a certificate of occupancy for a new building or for an existing building which has been enlarged shall be made at the same time as the application for the building permit for such building. Said certificate shall be acted upon within seven (7) days after a written request for the same has been made to the building commissioner after the erection or enlargement of such building or part thereof has been completed in conformance with the provisions of this ordinance.

Pending the issuance of such a certificate, a temporary certificate of occupancy may be issued by the building commissioner for a period of not more than six (6) months during the completion of the construction of the building or

of alterations which are required under the terms of any law or ordinance. Such temporary certificate may be renewed, but it shall not be construed in any way to alter the respective rights, during or obligations of the owner or of the city relating to the use or occupancy of the land or building, or any other matter covered by this ordinance, and such temporary certificate shall not be issued except under such restrictions and provisions as will adequately ensure the safety of the occupants.

Written application for a certificate of occupancy for the use of vacant land, or for a change in the use of land or of a building, or for a change in a nonconforming use, as herein provided, shall be made to the building commissioner.

If the proposed use is in conformity with the provisions of this ordinance, the certificate of occupancy therefore shall be issued within seven (7) days after the application for the same has been made.

Each certificate of occupancy shall state that the building or proposed use of a building or land complies with all provisions of this ordinance.

A record of all certificates of occupancy shall be kept on file in the office of the building commissioner and a copy shall be forwarded on request, to any person having proprietary or tenancy interest in the building or land affected.

## 12.5 Zoning board of appeals.

### Zoning board of appeals established.

There is hereby established a zoning board of appeals. Said zoning board of appeals shall consist of seven (7) members appointed by the mayor by and with the advice and consent of the city council of the City of Calumet City.

Each member so appointed shall serve for a term of five (5) years. Vacancies shall be filled in the same manner for the unexpired term. Members may be removed by the city council for cause after written charges have been filed and after a public hearing has been held if demanded by the member so charged.

One (1) of the members of said zoning board of appeals at the time of his appointment shall be designated by the mayor with the consent of the city council, as chairman of said zoning board of appeals and shall hold said office as chairman until a successor is appointed. Such chairman, or in his absence, the acting chairman, may administer oaths and compel the attendance of witnesses.

The zoning board of appeals shall have a secretary and may employ a court reporter who shall make and keep a record of all of its meetings and official acts.

The zoning board of appeals in existence at the time of the passage of this ordinance shall be recognized as the zoning board of appeals established under the provisions of this ordinance, and the members previously appointed under the old ordinance shall be recognized as members thereof, and shall serve for such period of time as designated at time of appointment, the time to run from the date of the original appointment under the old ordinance.

### Jurisdiction.

The zoning board of appeals is hereby vested with the following jurisdiction and authority:

(a)  To hear and decide appeals from any order, requirement, decision or determination made by the zoning administrator under this ordinance;

(b)  To hear applications for variations from the terms provided in this zoning ordinance in the manner prescribed by, and subject to, the standards established herein, and make recommendations to the city council regarding such applications.

(c)  To review and make recommendations to the city council on certain proposed site plans and landscape plans in accord with subsection 12.9 and 12.10 of this ordinance.

### Meetings.

All meetings of the zoning board of appeals shall be held at the call of the chairman and at such other times as the zoning board of appeals may determine.

All meetings of the zoning board of appeals shall be open to the public.

The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon every question, or absent or failing to vote, indicating such fact, and shall also keep records of its examinations and other official actions. Findings of fact shall be included in the minutes of each case and the reasons for granting or denying such application shall be specified. Every rule, regulations and every order, requirement, decision, or determination of the zoning board of appeals shall immediately be filed in the office of the executive secretary and shall be of public record.

The zoning board of appeals shall adopt its own rules of procedure and may require submission to each record, plats and other information necessary to make its determination. A copy of said rules and procedure, and all recommendations thereto, and shall be filed in the office of the building commissioner.

The minutes of the zoning board of appeals shall be open to public examination at reasonable hours.

Expenses incurred by the zoning board of appeals are to be itemized and shall be borne by Calumet City.

The building commissioner is authorized to require applicants for building permits as a condition for issuance of said permit to provide reasonable aesthetic and sound barriers between contiguous barriers which have different zoning classifications.

*Finality of decisions of the zoning board of appeals.* Decisions and findings of the zoning board of appeals on ~ ~eal from any order, requirement, decision or determination made by the zoning administration shall be final ___ninistrative determinations and shall be subject to review by court as by law may be provided.

*12.6 Variations.*

---

**\*Editor's note:** Section 3 of Ord. No. 00-44 adopted Aug. 24, 2000, states "that all billboards in existence on the effective date of this ordinance are hereby exempt from the requirements of Section 2."

---

*Purpose.* The zoning board of appeals, after a public hearing, may recommend that the city council vary the regulations of this ordinance in harmony with their general purpose and intent, only in the specific instances hereinafter set forth and only where the board of appeals made findings of fact in accordance with the standards hereinafter prescribed, and further finds that there are practical difficulties or particular hardships in the way of carrying out the strict letter of the regulations of this ordinance.

*Application for variation and notice of hearing.*

An application for a variation shall be filed in writing with the city clerk. The application shall contain such information as the zoning board of appeals may from time to time, by rule, require. The city council shall by motion or resolution refer the same to the zoning board of appeals.

The zoning board of appeals shall publish notice of a public hearing on the application for variation, stating the time and place and the purpose of the hearing. Notice shall be published at least fifteen (15) days but not more than thirty (30) days in a paper of general circulation in Calumet City. Notice of the public hearing may be mailed to the petitioner and the owners of all property deemed by the zoning board of appeals to be affected thereby.

The zoning board of appeals shall, within thirty (30) days after the public hearing or hearings, render its recommendation in writing to the owner or applicant and the city council of its action.

*Standards for variations.*

The zoning board of appeals shall not recommend a variance in the regulations of this ordinance, unless it shall make findings based upon the evidence presented to it in each specific case that each and all the standards for hardships set forth in the Illinois Municipal Code are complied with and specifically that:

(a) Because of the particular physical surroundings, shape or topographical conditions of the specific property involved, a particular hardship to the owner would result, as distinguished from

a mere inconvenience, if a strict letter of regulations were carried out.

(b)   The conditions upon which the petition for a variation is based are unique to the property for which the variance is sought and are not applicable, generally, to other property within the same zoning classification.

(c)   The alleged difficulty or hardship is caused by the ordinance and has not been created by any person presently having an interest in the property.

(d)   The granting of the variation will not be detrimental to the public welfare or injurious to other property or improvements in the neighborhood in which the property is located.

(e)   The proposed variation will not impair an adequate supply of light and air to adjacent property, or substantially increase the congestion in the public streets, or increase the danger of fire, or endanger the public safety, or substantially diminish or impair property values within the neighborhood.

The zoning board of appeals may impose such conditions and restrictions upon the premises benefitted by a variation as may be necessary to comply with the standards established in this subsection, to reduce or minimize the effect of such variation upon other property in the neighborhood and to better carry out the general intent of this ordinance.

*Authorized variation.*

Variations from the regulations of this ordinance shall be recommended by the zoning board of appeals only in accordance with the standards established in the above subsection, and may be granted only in the following instances and in not others:

(a)   To permit any yard or setback less than the yard to setback required by the applicable regulations, but by not more than twenty-five (25) percent.

(b)   To permit the use of a lot or lots for a use otherwise prohibited solely because of insufficient area or width of the lot or lots but in no event shall the respective area and width of the lot or lots be less than eighty (80) percent of the required area and width. The percentage set forth in this subparagraph is not to be reduced by any other percentage for minimum lot width and area set forth in this ordinance.

(c)   To permit the same off-street parking facility to qualify as required facilities for two (2) or more uses, provided the substantial use of such facility by each use does not take place at approximately the same hours of the same days of the week.

(d)   To reduce the applicable off-street parking or loading facilities required by not more than one (1) parking space or loading space, or twenty (20) percent of the applicable regulations, whichever number is greater.

(e)   To increase by not more than twenty-five (25) percent the maximum distance that required parking spaces are permitted to be located from the use served.

(f)   To increase by not more than twenty (20) percent the gross area of any sign.

(g)   To increase by not more than ten (10) percent the maximum gross floor area of any use so limited by the applicable regulations.

(h)   To exceed any of the authorized variations allowed under this section, when a lot of record or a zoning lot, vacant or legally used on the effective date of this ordinance, is by reason of the exercise of the right of eminent domain by any authorized governmental body or by reason of the conveyance under threat of an eminent domain proceeding reduced in size so that the remainder of said lot of record or zoning lot or structure on said lot does not conform with one (1) or more of the regulations of the district in which said lot of record or zoning lot or structure is located.

The concurring vote of four (4) members of the zoning board of appeals shall be necessary to recommend a variation.

*12.7 Special uses.*

*Purpose.*   The development and execution of a zoning ordinance is based upon the division of the city into

districts, within which districts the use of land and buildings and the bulk and location of building and structures in relation to the land are substantially uniform. It is recognized, however, that there are uses which because of their unique characteristics, cannot be properly classified in any particular district or districts without consideration, in each case of the impact of those uses upon neighboring land and of the public need for the particular user at the particular location. Such special uses fall into two (2) categories.

    (a)  Uses publicly operated or traditionally affected with a public interest;

    (b)  Uses entirely private in character but of such an unusual nature that their operation may give rise to unique problems with respect to their impact upon neighboring property or public facilities.

*Initiation of special uses.* Any person owning or having an interest in the subject property may file an application to use such land for one (1) or more of the special uses provided for in this ordinance in the zoning district in which the land is situated.

*Application for special use.* An application for a special use or expansion of a special use shall be filed with the city clerk and shall be accompanied by a site development plan and landscape plan in accord with subsections 12.9 and 12.10 of this ordinance.

*Hearing on application.* Upon receipt of the application referred to above, the zoning board of appeals shall hold at least one (1) public hearing. At least fifteen (15) days in advance of such hearings, but not more than thirty (30) days, notice of time, place and purpose of such hearing shall be published in a newspaper of general circulation in Calumet City.

*Authorization.* For each application for a special use, the zoning board of appeals shall report to the city council its findings and recommendations, including the stipulations of additional conditions and guarantees that such conditions will be complied with when they are deemed necessary for the protection of the public interest. The city council may grant or deny any application for a special use, provided, however, that in the event of written protest against any proposed special use, signed and acknowledged by the owners of twenty (20) percent of the frontage adjacent thereto, or across an alley, or directly opposite therefrom, such special use shall not be granted except by the favorable vote of two-thirds ( 2/3)of all the members of the city council.

*Standards.* No special use shall be recommended by the zoning board of appeals unless said zoning board of appeals shall find:

    (a)  That the establishment, maintenance or operation of the special use will not be unreasonably detrimental to or endanger the public health, safety, morals, comfort or general welfare;

    (b)  That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood;

    (c)  That the establishment of the special use will not impede the normal and orderly development and improvement of surrounding property for uses permitted in the district;

    (d)  That adequate utilities, access roads, drainage and/or other necessary facilities have been or are being provided;

    (e)  That adequate measures have been or will be taken to provide ingress or egress so designed as to minimize traffic congestion in the public streets;

    (f)  That the special use shall in all other respects conform to the applicable regulations of the district in which it is located, except as such regulations may in each instance be modified by the city council pursuant to the recommendations of the zoning board of appeals.

*Conditions and guarantees.* Prior to granting any special use, the mayor and city council shall stipulate such conditions and restrictions upon the establishment, location, construction, maintenance and operation of a special use as deemed necessary for the protection of the public interest and to secure compliance with the standards and requirements specified herein, or as may be from time to time required. In all cases in which special uses are granted, the mayor and city council shall require such evidence and guarantees as it maydeem necessary as proof that the conditions stipulated in connection therewith are being, and will be, complied with.

*Effect of denial of a special use.* After a public hearing, no application for a special use which has been denied wholly or in part by the mayor and city council shall be resubmitted for a period of one (1) year from the date of said order of denial, except on the grounds of substantial new evidence or proof of changed conditions found to be valid by the zoning board of appeals, the mayor and city council.

*Termination of special use permit.* If work on the proposed development has not begun within six (6) months from the date of the authorization order of the mayor and city council, the authorization shall become null and void and all rights thereunder shall lapse. Upon written application, filed prior to the termination of the six (6) months time limit, the mayor and the city council may authorize a single extension of the time limit for a further period of not more than one (1) year.

*12.8 Planned development.*

*Purpose.* To encourage the most orderly development of properties through advance planning and thus assure adequate standards for the development of residential neighborhoods; provide regulations to encourage a variety of dwelling types; assure adequate open space; protect residential areas from undue traffic congestion; protect residential areas from the intrusion of business, industrial and other land uses that may create an adverse effect upon the living environment; and thus promote the general welfare of the community.

*Provisions.* The basic provisions and requirements concerning planned developments are as follows: The subdivision, development and use of land as an integral unit, combining more than one (1) primary land use and which may provide for single-family residential, multiple-family residential, education, business, commercial, industrial, recreational, park and common open areas, may be described as planned development.

(a)  In its establishment and authorization as a special use, in addition to the foregoing provisions, the following procedures, requirements, restrictions, standards, and conditions shall be observed.

(b)  The planned development may be excepted from the provision of the subdivision regulations and of the zoning ordinance of Calumet City to the extent specified in this ordinance and in the final authorization of the planned development.

*Procedure.*

(a)  A pre-application conference shall be held with the building department. At such conference the applicant shall provide information as to the location of the proposed planned development, the uses, and approximate area of use category; a list of any and all exceptions to the subdivision and zoning ordinances of Calumet City; and any other information necessary to clearly explain the planned development to the building department.

(1)  The building department shall review and consider the proposed as to its compatibility with the comprehensive plan and the goals and policies for planning of Calumet City and advise the applicant on the information, documents, exhibits, drawings, and any limitations on the proposal that should be included in the application to the city for a special use permit for planned development.

(b)  The applicant shall request the special use permit, by letter addressed to the Calumet City Zoning Board, to be placed on the agenda of the zoning board for a preliminary discussion of the proposed planned development, and the zoning board shall consider the proposed planned development at such meeting, which may be continued from time to time. The applicant shall present such exhibits and written information as may be necessary to fully acquaint the plan commission with the proposed development which shall include, but not necessarily be limited to the following:

(1)  A tentative sketch plan, which may be in freehand sketch form, showing the location and extent of the types of land uses proposed.

(2)  The existing topography at five (5) foot contour intervals which may be taken from U.S.G.S. information.

(3)  Existing streets surrounding the subject property.

(4)  Existing utilities including storm drainage facilities.

(5)  The following shall be provided by either graphic exhibits or written statement:

The density of residential uses and the number of dwelling units by type;

The ancillary and nonresidential uses to be provided in a residential planned development;

The off-street parking and other service facilities proposed;

The exceptions or variations to the Calumet City zoning or subdivision requirements being requested as part of the planned development application.

(c)  Within thirty (30) days after final adjournment of the meeting, the plan commission shall submit to the mayor and city council a report in writing containing its recommendations.

(d)  The formal petition for a planned development shall be addressed to the mayor and city council and shall be filed with the city clerk; twenty (20) copies of the petition shall be filed with the secretary of the plan commission; attached to each copy shall be copies of the supporting documents and exhibits hereinafter provided for.

(e)  A filing fee in an amount of two dollars ($2.00) per dwelling unit or ten dollars ($10.00) per gross acres, whichever is greater, shall be paid to the city clerk at the time of such filing.

(f)  The city clerk shall set a hearing date which shall be not less than thirty (30) or more than sixty (60) days after the filing of the petition, and shall cause notice of the hearing to be published at least once, not more than thirty (30) days nor less than fifteen (15) days before said hearing date in one (1) or more newspapers of general circulation in Calumet City.

(g)  The city clerk shall forward a copy of the petition to the mayor and to each member of the zoning board of appeals.

(h)  The petition shall be heard by the zoning board of appeals and reviewed by the planning commission and the report of both committees shall be submitted to the mayor and the city council. The report of the findings and recommendations shall be accompanied by such plats, exhibits and agreements as shall have been presented by the petitioner, each identified for reference by letter or number together with any suggested changes therein.

(i)  The mayor and city council may grant a special use for a planned development which shall be by specific ordinance and which shall contain or to which shall be appended all terms and conditions of the special use permit, including covenants and agreements, guarantees, performance bonds, plats and the like.

*Content of petition.*  The formal petition shall contain, in addition to all other requirements, the following:

(a)  A site plan of the planned development. This plan will be at a scale of not less than one inch equals one hundred feet (1" = 100') which shall show all proposed streets (public and private), street classifications, rights-of-way, pavement width of street and driveways, all principal and accessory buildings and their use, lot sizes, building lines, easements for utility services, off-street parking, service areas, open space, recreation facilities and any other information necessary to clearly show the proposed elements of the planned development.

(b)  Preliminary architectural plans for all residential buildings shall be submitted in sufficient detail to show the basic planning, the number of units per building and the number of bedrooms per dwelling unit.

Preliminary architectural plans are not required for business of other nonresidential buildings at the time of this application but must be submitted to the plan commission for its approval prior to filing an application for a building permit.

(c)  A topographic survey with two (2) foot contour intervals and boundary survey of the subject area, prepared and certified by a registered Illinois surveyor.

(d)  A rendered plan of the planned development area showing in contrasting colors or by other means the respective location of all categories of land use.

(e)  A map of Calumet City, Illinois showing the location of the planned development site and its relation to the existing roads and streets and use districts within the immediately adjacent and surrounding area.

(f)  Preliminary plans and outline specifications of the following improvements:

(1)  Roads, streets and alleys, including classifications, width of right-of-way, widths of paved surfaces and construction details.

(2)  Sidewalks, including widths of paved surfaces and construction details.

(3)  Sanitary and storm sewer system.

(4)  Water supply system.

(5)  Street lighting and public area lighting system.

(6)  Recommended installations for electric, gas and telephone facilities and distribution.

(7)  Sequence of phases or stages of development of the planned development.

(8)  A general landscape planting plan shall be prepared by a landscape architect and shall meet the approval of the plan commission.

(g)  Estimates of cost of installation of all proposed improvements, confirmed by a registered Illinois engineer.

(h)  Petitioner's proposed covenants, restrictions and conditions to be established as a part of the planned development.

*Construction of improvements.* The petitioner shall construct and install the required improvements and must post in accordance with the Calumet City Subdivision Control Ordinance.

*Street classifications.* Street classifications, definitions, and specifications, shall be in accord with the regulations pertaining to same as established in the subdivision regulations and the comprehensive plan of Calumet ', Illinois, as may be amended from time to time, as may be modified by the special use permit.

*Standards.* No planned development shall be authorized by the city council unless the plan commission shall find and recommend, in addition to those standards established herein for special uses, that the following standards will be met:

(a)  General.

(1)  The uses permitted by such exceptions as may be requested or recommended are necessary or desirable and appropriate to the purpose of the development.

(2)  The uses permitted in such development are not of such nature or so located as to exercise an undue detrimental influence or effect upon the surrounding neighborhood.

(3)  That any industrial park areas established in the planned development conform to all requirements therefore as set forth elsewhere in this ordinance.

(4)  That all minimum requirements pertaining to commercial, residential, institutional, or other uses established in the planned development shall be subject to the requirements for each individual classification as established elsewhere in this ordinance, except as may be specifically varied in the ordinance granting and establishing a planned development use.

(5)  When private streets and common driveways are made a part of the planned development or private common open space or recreation facilities are provided, the applicant shall submit as part of the application, the method and arrangement whereby these private facilities shall be operated and maintained. Such arrangements for operating and maintaining private facilities shall be subject to the approval of the mayor and city council.

(b)  Residential.

(1)  Residential density for a planned development shall not be greater than that specified in each use district for planned developments, nor shall any lot to be used for residential purposes be less in area or dimension than that required by the district regulations applicable to the district in which the planned development is located as specified in said district for planned developments. The plan commission may recommend and the mayor and city council may grant a reduction in such lot area and dimension, but not more than twenty (20) percent when the planned development provides common open space equal to not less than ten (10) percent of the gross area of the planned development.

(2)  Business uses may be included as part of a planned residential development when the plan commission finds that such business uses are beneficial to the overall planned development and will not be injurious to adjacent or neighboring properties. Such business uses shall not be greater in area than ten (10) percent of the planned development.

(3)  The open areas provided in the part of the planned development containing only residential structures shall be preserved over the life of the planned development for use only by the residents of the planned development or dedicated to Calumet City, Illinois for school, park playground or other public uses by an instrument or guarantee acceptable to the mayor and city council.

(4)  For that part of a planned development devoted to residential uses, the plan commission may recommend and the mayor and city council may approve, access to a dwelling by a driveway or pedestrian walk easement, and spacing between buildings of lesser widths or depths than required by district regulations for the district in which the planned development is located, provided:

That adequate provisions are made which perpetuate during the period of the special use, access easements and off-street parking spaces for use by the residents of the dwellings served;

The spacing between buildings shall be approved by the plan commission and shall be consistent with the application of recognized site planning principles for securing a unified development, and due consideration is given to the openness normally afforded by intervening streets and alleys. Minimum side yards between principal buildings within a part of a planned development where subsequent transfer of ownership is contemplated, shall be equivalent to side yards as would be required between buildings by district regulations for the district in which it is located; and

The yards for principal buildings along the periphery of the development shall be not less in width or depth than required for permitted uses in the district regulations applicable to the districts in which the planned development is located, and the plan is developed to afford adequate protection to neighboring properties as recommended by the zoning board and approved by the mayor and city council.

(c)  Variations of minimum requirements.

(1)  Residential. Wherever the applicant proposes to provide and set out, by platting, deed, dedication, restriction, or covenant, any land or space separate from single-family or multiple-family residential districts, to be used for parks, playgrounds, commons, greenways, or open areas, the zoning board, may consider and recommend to the mayor and the city council, and the mayor and city council may vary the applicable minimum requirements of the subdivision regulations and the zoning ordinance which may include but necessarily be limited to the following:

Rear yard.

Side yard.

Lot area.

Bulk.

Intensity of use.

Street width.

Sidewalks.

Public utilities.

Off-street parking.

(2)  Business.

Business uses shall be as prescribed by the zoning board.

All business and storage of materials shall be conducted or stored within a completely enclosed building.

Not more than thirty (30) percent of the lot area shall be covered by buildings or structures.

At least ten (10) percent of the lot shall be provided for landscape and open space purposes.

Off-street parking shall be provided and maintained on the same lot based upon three (3) square feet of parking space for each square foot of gross floor area unless the building commissioner recommends and the mayor and city council approves additional off-street parking space.

Service and loading and unloading facilities shall be provided as recommended and approved by the building commissioner.

No building shall be located nearer than fifty (50) feet to any street line.

Business developments shall be adequately screened by fencing or landscaping or both along the boundaries of adjacent residential, public open space, schools, churches, or other similar uses. The screen planting shall be prepared by a landscape architect and shall meet the approval of the building commissioner.

Outside lighting shall be so designed and placed so as to not be disturbing to adjacent residential areas.

Signs shall comply with the regulations of the business uses permitted in this ordinance.

2.9 *State Street—State Line Road Redevelopment Area site development plan review.*

(1) Authority. The city council and the city council committee on development, subject to the procedures provided herein, have the authority to approve or disapprove site development plans required to be submitted for approval under this section.

(2) Purpose. Site plan review and approval is required to ensure that the use and development of land within the State Street—State Line Road Redevelopment Project Area is undertaken in an orderly and proper manner which furthers the public health, safety and welfare and makes adequate provision to ensure the available of appropriate public and private services and amenities and for minimizing the adverse effects of such development.

The design, orientation and location of open spaces, buildings, structures and signs visible from public streets, places and ways has a material and substantial relationship to property values and the taxable values of property in the city and the cost of the municipal services provided thereto. Further, many neighborhoods in other urban and suburban communities have deteriorated in the past by reason of the lack of planning, neglect of proper maintenance standards and the erection of buildings and structures unsuitable to and incompatible with the character of the neighborhood or area, resulting in a reduction in property values.

Therefore, it is the policy of the city that these regulations be adopted to arrest and prevent deterioration of the function, character and appearance of the State Street and State Line Road Redevelopment Area; provide a favorable environment for residents and businesses; and preserve and enhance the general public welfare.

(3) Approved plan, when required.

Site plan approval shall be required for any nonresidential development within the State Street—State Line Road Redevelopment Area, as illustrated in Figure 1, and under the following intended situations:

(a) Any new principal structure intended and designed for nonresidential occupancy (or complete redevelopment of any site for nonresidential use) or the use of land for nonresidential purposes.

GRAPHIC LINK:Figure 1, State Street - State Line Road Redevelopment Area

(b) Where an existing principal structure erected prior to the date of adoption of these site plan requirements is proposed to be expended, for which the sum total of gross floor area expansion(s) since the date of these requirements are equal to or greater than thirty-five (35) percent of the total gross floor area of said structure.

(c) Any new or modified building and/or site improvements for a zoning lot which has previously received site plan approval under this ordinance. Reapproval of the plan is required for components of the plan which depart from the approved site plan. The extent of changes to be incorporated in the

submittal for reapproval shall be determined by the building commissioner.

(d)  A site plan shall not be required as a result of a change of use, except where such change of use results in increased off-street parking requirements which are not currently met on the site.

(e)  A site plan shall be required along with any application for a special use permit or a special use permit amendment for any nonresidential development.

(f)  These requirements exclude the legal reconstruction of legally nonconforming buildings, when such buildings and related improvements are substantially restored consistent with their prior condition.

Site plan review is not required as part of planned development approval (subsection 12.8), but may apply to development of individual sites following approval of a special use planned unit development, as controlled by the ordinance granting planned development approval.

(4)  Initiation. Plan approval shall be initiated by the owner of the property, or the owner's agent, for which plan approval is sought.

(5)  Procedure for initiation.

(a)  The owner of the property for which a zoning map amendment or a special use permit is sought (requiring site plan approval under subsection (3) above) shall file an application for site plan approval along with such application for an amendment or special use permit.

(b)  The owner of the property for which a building permit is sought (requiring site plan approval under section (3), above) and which development has not been approved under the requirements of this section, shall file an application for site plan approval along with an application for such building or zoning permit.

(c)  The owner of the property, or a duly authorized representative of the owner, shall file an application for site plan approval with the building commissioner, or his/her designee. It shall be accompanied by a nonrefundable fee established from time to time by the city council and shall contain the following information:

1.  Name, address and telephone number of the applicant including the name and address of each person or entity owning an interest in the applicant or owner and the extent of such ownership interest unless any of such entities is a corporation or a partnership, in which case only those persons owning an interest in excess of ten (10) percent in such corporation or partnership need be identified by name, address and extent of interest. For purposes of this section, the term ownership interest shall include any legal or equitable interest held at the time of the application in the real property which is the subject of the application. The application shall include the signature of the owner(s).

2.  A site plan containing the information required by subsection (6), below.

(6)  Contents of a site plan application. The application shall include the following information and material for sites and development projects which have not received site plan approval under this ordinance or prior to the adoption of this ordinance. For those sites and development projects which have received site plan approval subsequent to the adoption of this ordinance (excluding P.U.D.s) which require reapproval as a result of a change in planned conditions, the building commissioner is authorized to waive requirements in this section which are not affected by or do not apply to the proposed change:

(a)  Site plan application.

1.  A completed application form provided by the building department.

2.  Each application associated with a map zoning amendment or special use permit shall provide nineteen (19) copies of all full-size documents and drawings. For applications associated with an application for a building permit or zoning permit approval, twelve (12) copies of all full-sized documents and drawings shall be submitted. For all graphic and plan drawings, a scale of not less than one (1) inch equals one hundred (100) feet shall be used. In no event shall individual sheets or drawings exceed thirty (30) inches by forty-two (42) inches. In addition, one (1) set of reduced copies sized at eleven (11) inches by seventeen (17) inches shall be submitted.

3.  The names and addresses of the persons responsible for preparing the plan.

4.   The present zoning of the site and adjoining property.

5.   Any other information that may reasonably be required by the city council, city council committee on development, or the zoning board of appeals, as the case may be, which may include, but is not limited to, the following:

   a.   A traffic study.

   b.   In the case of a map amendment or special use, an analysis of the need and demand for the proposed use and the impact of the proposed use on the value of adjoining and nearby properties.

   c.   A fiscal impact analysis.

(b)   An existing conditions map shall show the location, dimensions, size and height of the following, as applicable:

   1.   Sidewalks, streets, alleys, easements and utilities, including street lighting and underground conduits for street lighting.

   2.   Buildings and structures.

   3.   Septic fields, wells and public sewer and water systems.

   4.   Driveways, entrances, exits and parking areas.

   5.   Water mains and fire hydrants.

   6.   Natural and artificial watercourses and bodies of water and wetlands.

   7.   Limits of floodplains, if any.

   8.   Areas that can reasonably be expected to or which do contain soils or materials contaminated with any toxic or hazardous materials.

   9.   Underground storage tanks, if any.

   10.   The topography of existing ground and paved areas. Topography is to be shown by dashed lines illustrating one (1) foot standard contour intervals and by spot elevations where necessary to indicate flat areas.

   11.   General alignment and lengths of all streets and all property lines.

   12.   All building restriction lines, highway setback lines, easements, covenants, reservations and rights-of-way.

   13.   Date, scale and north point.

(c)   A site plan shall be prepared to show the general location, dimensions, size and height of the following regarding the proposed development:

   1.   For a site plan which includes any existing structures or other improvements, an indication of those improvements that are to remain and those which will be removed.

   2.   Sidewalks, streets, alleys, easements and utilities, including any street lighting.

   3.   Buildings and structures with entrances and exits identified.

   4.   A general utility plan for water and for sewage disposal.

   5.   Slopes, terraces and retaining walls.

   6.   Driveways, entrances, exits, parking areas and sidewalks.

   7.   Water mains and fire hydrants.

   8.   Natural and artificial watercourses and bodies of water and wetlands.

   9.   Distances between buildings.

   10.   Calculations of the following, as applicable:

    a.   Square footage of nonresidential structures/uses;

    b.   Number of parking spaces;

    c.   Number of loading spaces;

    d.   Total land area;

    e.   Total landscaped area;

    f.   Total open space;

    g.   Total impervious surface.

11.   Tentative plans for collecting and depositing storm water and the method of treatment of natural and artificial watercourses, including a delineation of proposed limits of floodplains, if any.

12.   A general indication of proposed grading, surface drainage, terraces, retaining wall heights, grades on paved areas and ground floor elevations of proposed buildings and structures.

13.   A landscape plan showing the location, names and area coverage of trees, shrubs and ground cover to be planted in accordance with subsection 12.10.

14.   Plans to remediate, remove, or control on site any contaminated soils, materials, underground storage tanks, etc.

15.   Plans for minimizing or mitigating the impact on existing wetlands, if any.

16.   Proposed locations and methods of enclosing refuse disposal systems.

17.   A light plan indicating all exterior building-mounted and freestanding lights and structures including overall height, type of lamp, luminaries.

18.   General exterior building elevation of all proposed structures and exterior elevations of existing buildings when existing buildings are proposed to be structurally altered.

(7)   Agreement of owner. All documents and information submitted as part of an application for site plan approval constitute a statement by the applicant that he or she intends and agrees to be bound to develop in accord with such information upon approval.

(8)   Notice requirements. Site plans do not require any form of public notice; however, a site plan application concurrently filed with an application for a zoning map amendment or an application for a special use permit shall state that site plan approval is sought as part of the public notice in addition to the requested map and/or special use permit amendment.

(9)   Procedure for decisions. Plans which are filed with an application for a zoning map amendment or with an application for a special use permit shall be processed as a part of the amendment or special use petition. All other site plans shall be approved under the following procedure.

    (a)   Action by city council committee on development. Within sixty (60) days of the date that the site plan application was filed, the item shall appear on the agenda of the city council committee on development. The city council committee on development shall approve or deny the site plan. Approval shall be made upon action by a majority vote of those committee members present.

(10)   Standards for plans. In reaching a decision to approve or disapprove a site plan, the following factors listed below, as applicable to a given plan, should be considered.

    (a)   The application shall comply with the provisions of this ordinance and other ordinances of the city and of any other applicable laws.

    (b)   Reasonable provision shall be made to ensure that development will be served by essential public facilities and services such as highways, streets, parking spaces, police and fire protection, drainage structures, refuse disposal, water and sewers.

    (c)   Any building or structure shall be reasonably accessible to fire, police, emergency and service vehicles. When deemed necessary for access, emergency vehicle easements shall be provided. The access for fire, police and emergency vehicles shall be unobstructed at all times.

(d) Streets and sidewalks shall, insofar as reasonably practicable, provide access and good traffic circulation to and from adjacent lands, existing streets and sidewalks.

(e) Provision shall be made to ensure that adequate access roads or entrance or exit drives will be provided and will be designed and improved so as to prevent traffic hazards or problems and to minimize traffic congestion in public streets.

(f) Plans have demonstrated the ability to provide for the adequate collection and disposition of all on- and off-site storm water and natural water, including but not limited to on-site drainage retention facilities.

(g) Adequate provision shall be made to clean, control and otherwise alleviate contamination or environmental hazards on land when the site is in an area found by the city to be contaminated by a toxic substance or otherwise to contain environmental hazards which are detrimental to the public health, safety and welfare.

(h) Adequate provision shall be made to avoid glare of vehicular and stationary lights that would affect the established character of the neighborhood, and to the extend such lights will be visible across from any property line, the performance standards for illumination shall be met.

(i) Adequate provision shall be made to ensure that the location, lighting and type of signs and the relationship of signs to traffic control is appropriate for the site and will not have an adverse affect on any adjacent properties.

(11) Conditions on plans. The city council, or city council committee on development, as appropriate, in consideration of any site plan, may impose certain conditions in granting plan approval to minimize any negative impacts or minimize any adverse impacts due to the development.

(12) Modifications of plans. Changes to site plans require reconsideration and reapproval by the city council or the city council committee on development, as provided in this subsection.

(13) Lapse of approval. Unless the city council, or the city council committee on development, as appropriate, provides otherwise, or unless the city council has extended the term of site plan approval, plan approval shall automatically lapse one (1) year after the date of approval of the plan, unless a building permit has been issued and construction commenced.

### 12.10 Landscape plan approval.

(1) Purpose. The landscaping, screening and site design requirements specified herein are intended to foster aesthetically pleasing and functional development. The regulations are intended to increase the compatibility between adjacent land uses and accessory structures and uses within and between developments within the State Street–State Line Road subarea. The requirements serve to minimize impacts from noise, dust, debris and motor vehicle headlight glare to surrounding land use areas.

(2) Landscape plans, when required. Landscaped plans shall be required for all developments requiring site plan approval (under subsection (9) above) for land located within the State Street–State Line Road Redevelopment Area, as illustrated in Figure 1.

The procedure for landscape plan approval shall follow the procedure for site plan approval. When required, landscape plans shall be prepared in accordance with the requirements of this subsection.

(3) Submission requirements. Each application association with a map zoning amendment or special use permit shall provide nineteen (19) copies of all full-sized documents and drawings. For applications associated with an application for a building permit or zoning permit approval, twelve (12) copies of all full-sized documents and document and drawings shall be submitted. For all graphic and plat drawings, a scale of not less than one (1) inch equals one hundred (100) feet shall be used. Preferably, the scale of landscape plans shall be the same as the accompanying site plan. In no event, however, shall individual sheets or drawings exceed thirty (30) inches by forty-two (42) inches. In addition, one (1) reduced set of plans to eleven (11) inches by seventeen (17) inches shall be submitted.

(4) Requirements for a landscaping plan. A landscape plan shall include the following elements:

(a) A completed application form and appropriate fee.

(b) Consistent with the site development plan, the locations and dimensions of all existing and/or

proposed parking lots, drives, roadways, and rights-of-way, sidewalks, bicycle paths, free-standing signs, refuse disposal areas, bicycle parking areas, free-standing electrical equipment, free-standing signs, building-mounted, heating, ventilating and air circulation equipment, and all fences.

(c)  Species, planting size and location of proposed plant material required under this subsection.

(d)  Illustrations indicating the proposed locations and methods for screening for refuse disposal areas.

(e)  The location of all off-street loading areas, including an indication whether loading docks will be enclosed and methods of proposed screening.

(f)  The location and placement of sprinkler heads of any proposed irrigation system.

(g)  The following calculation, in square feet, displayed on the landscape plan:

    1.  Total site area;

    2.  Total area devoted to off-street parking (including access drives);

    3.  Total area devoted to impervious surfaces;

    4.  Total landscaped area;

    5.  Total parking lot landscaped area;

    6.  Total internal landscaping.

(h)  Any other plan documentation requirements, including elevations, cross-sections and other plan details as deemed necessary by the building commissioner.

(4.1)  Requirements for interior parking lot landscaping.

(a)  Applicability. Parking lot landscaping shall apply to all nonresidential development within all residential zoning districts and shall meet the requirements of this section. Interior parking lot landscaping shall apply to developments requiring eight (8) or more off-street parking spaces.

(b)  Interior parking lot landscaping.

    1.  Coverage. Not less than five (5) percent of the interior of a parking lot shall be devoted to landscaping. The "interior" of a parking lot shall mean the area encompassed between the backs-of-curbs or edge of pavement encompassing the drives and parking area serving the site. Perimeter landscaping islands penetrating the parking area may count toward the five (5) percent minimum landscaping requirement, provided all other requirements are met. Transitional yards shall not count toward parking lot landscaping.

    2.  Landscape areas. Interior parking lot landscaping is intended to be distributed throughout the parking lot. The design should facilitate pedestrian access through the site and seek to separate vehicle traffic from pedestrian traffic.

    3.  Landscaping material.

        a.  Type. The primary landscaping materials used in parking lots shall be shade trees which provide for shade. Ornamental trees, shrubbery and other live planting material may be used to supplement shade trees.

        b.  Quantity. One (1) large to medium shade tree shall be provided for each one hundred eighty (180) square feet of landscaped area.

        c.  Ground cover. A minimum of seventy-five (75) percent of each interior parking lot landscaping area shall be composed of live landscape material.

(5)  Requirements for perimeter parking lot landscaping.

(a)  Applicability. Perimeter parking lot landscaping shall be required except where parking lots are adjacent to a required transitional yard. Perimeter parking lot landscaping shall apply to all off-street parking areas regardless of size.

(b)  Landscaping.

    1.  Planting material.

Across from or adjoining a nonresidential property. Where a parking lot is located across a dedicated public right-of-way from or adjoins property zoned for a nonresidential use, or is designated for nonresidential development in the State Street--State Line Road Implementation Plan, landscaping shall be provided across fifty (50) percent of the street frontage to a minimum of three (3) feet in height. Such landscaping shall consist of shrubbery.

Across from a residential property. Where a parking lot is located across a dedicated public right-of-way from property zoned for a residential district, or is designated for a residential use in the State Street--State Line Road Implementation Plan, landscaping shall be provided across one hundred (100) percent of the parking lot perimeter facing the public street (except for intersecting drives, signs and other obstructions to landscaping) to a minimum of three (3) feet in height. Such landscaping shall consist of shrubbery.

2.  Ground cover. Except where occupied by planting beds, all perimeter parking lot landscaped areas located in a front yard shall be seeded or sodded.

(6)  Requirements for transitional yards.

(a)  *Applicability.* Transitional yards are intended to provide a physical separation between potentially incompatible land uses. In all cases where a transitional yard is required, the requirements of this section shall substitute for any parking lot screening requirement along the portion of any affected yard.

Screening is required within the transitional yard(s) of a nonresidential development where the nonresidential development directly adjoins a residential district or land designated for residential use in the State Street--State Line Road Implementation Plan. This requirement does not apply to a nonresidential development which lies across public street right-of-way of land zoned or designated in the State Street--State Line Road Implementation Plan for residential use. This requirement does apply to a nonresidential development which lies across public alley right-of-way of land zoned or designated in the State Street--State Line Road Implementation Plan for residential use.

(b)  Screening requirements in the B, B-2, and B-3 zoning districts. A screen shall consist of a solid fence, wall, or landscaping, or a combination thereof to provide a year-round solid visual screen at a minimum height of six (6) feet. Building walls of principal structures may substitute for fencing and/or landscaping, provided such walls are greater than six (6) feet in height, are located within five (5) of the property line along the transition yard, and when combined with any other screening materials, establish a continuous screen along the entire width of the yard.

Where landscaping is utilized as screening in a transitional yard, the minimum dimension of any planting area shall be five (5) feet for shrubs and seven (7) feet for trees.

(c)  Screening requirements in the OR, M-1 and M-2 districts

(1)  Screening and berming.

a.  Screening. Screening shall consist of solid fences, decorative walls, or landscaping or any combination thereof, and shall be used to provide a year-round solid visual screen to a minimum height of six (6) feet.

b.  Berming. Transition yards may include earth berms. The design of berms is encouraged to provide a change in topographical orientation ad undulation. Side slopes are preferred at a ratio of four to one (4:1), although a maximum side slope of three to one (3:1) is permitted. Plantings placed on top of berms are restricted to species compatible with the terrain.

(7)  Tree preservation. For landscape plans which propose to preserve existing trees, the methods which are to be used to preserve those trees shall be clearly specified in the landscape plan. If, in the opinion of the building commissioner, the necessary precautions, as specified in the tree preservation plan for the development, were not undertaken before or during construction to ensure the preservation of those trees, the land development permit for the parcel shall not be issued or, if previously issued, may be revoked until such time as these precautions have been complied with. The following precautions shall be taken in connection with new development proximate to existing trees:

(a)  Grading and construction equipment. All grading and construction equipment shall not encroach

upon the trees' drip lines.

(b)  Materials detrimental to trees. Crushed limestone and other materials detrimental to trees shall not be dumped within the drip line of any trees nor at any higher location where drainage toward the tree could conceivably affect the health of the tree.

(c)  Installation of snow fencing. Snow fencing shall be installed at the periphery of the trees' drip lines.

(8)  Screening and landscaping requirements for building appurtenances and related elements.

(a)  Exterior electrical and utility equipment. All ground-mounted electrical and utility-related connection and service boxes shall be effectively screened with shrubbery or other forms of living plant material to a minimum of fifty (50) percent opacity at the time of planting. Alternative methods of screening may be approved by the building commissioner where it is found that the size or positioning of the equipment to be screened presents unique conditions or difficulty in accomplishing the intent of this paragraph. This provision is not intended to apply to individual service pedestals less than twelve (12) inches by twelve (12) inches.

(b)  Free-standing signs. All free-standing sign locations shall provide for landscaping around the base of the sign a minimum of two (2) feet from any portion of the base of the sign. Landscaping shall include shrubbery or annual flowering plant material or other plant material.

(9)  Minimum planting requirements.

(a)  Minimum planting sizes shall be as follows:

1.  Large deciduous shade trees—Three (3) inches caliper as measured six (6) inches above ground.

2.  Medium deciduous shade trees—Two and one-half (2.5) inches caliper as measured six (6) inches above ground.

3.  Small deciduous and ornamental trees—Eight (8) feet in height, with the exception of true dwarf species.

4.  Evergreens--Six (6) feet in height.

5.  Shrubs--Twenty-four (24) inches.

6.  Ground cover plants, whether in the form of crowns, plugs or containers, shall be planted in numbers appropriate by species to provide fifty (50) percent surface coverage after one (1) growing season.

(b)  Methods of determining planting sizes shall be as follows: This section outlines acceptable specifications for shade trees and flowering trees.

1.  Shade and flowering trees. In size grading baled and burlapped trees, caliper size shall take precedence over tree height. For purposes of simplicity, only one (1) size per "grade" will be listed. That size will be the minimum size allowable for that grade and shall include plants from that size up to but not including the next larger grade size. (Example: Acer rubrum, two (2) inch caliper. This could include Acer rubrum calipering two (2) inches up to but not including two and one-half (2 1/2) inches in caliper, measured six (6) inches above the ground line.)

The caliper of the trunk shall be taken six (6) inches above the ground up to and including four (4) inch caliper size, and twelve (12) inches above the ground for larger sizes. Seldom are tree trunks perfectly round. Therefore, caliper measurement may be taken with "slot" type caliper, "pincer" type caliper, or diameter tape.

2.  Conifers and evergreens. For purposes of simplicity, only one (1) size per "grade" will be used. That size will be the minimum size allowable for the grade, and the grade shall include plants from that size up to but not including the next larger grade size. (Example: Taxus media "Brownii" fifteen (15) inches. This could include Taxus media "Brownii" fifteen (15) inches in height up to but not including eighteen (18) inches and having a minimum spread of twelve (12) inches.)

The following height measurement units shall apply: Three-inch intervals up to eighteen (18) inches in height. Six-inch intervals from eighteen (18) inches to four (4) feet one (1) foot

intervals greater than four (4) feet.

3.   Deciduous shrubs. This section outlines acceptable specifications for deciduous shrubs, dwarf and semi-dwarf shrubs and strong growing shrubs.

For purposes of simplicity, only one (1) size per "grade" will be used. That size will be the minimum size allowable for that grade, and the grade shall include plants from that size up to but not including the next larger grade size. (Example: Forsythia, two (2) feet. This could include Forsythia plants with not less than three (3) two 920 foot canes up to but not including four (4) three-foot canes.)

Dwarf and semi-dwarf shrubs. Determine height in inches up to twenty-four (24) inches; above twenty-four (24) inches determine height in feet. Grade in three-inch series to eighteen (18) inches, six-inch series eighteen (18) to twenty-four (24) inches. (example 12 in.; 15 in.; 18 in.; 2 ft.; 2 1/2 ft.)

Strong growing shrubs. Determine height in six-inch series up to twenty-four (24) inches tall (example: 12 in., 18 in.); over twenty-four (24) inches, measure in single feet up to six (6) feet tall; over six (6) feet; measure in two (2) foot increments. (Example: 5 ft., 6 ft., 8 ft., 10 ft.)

(c)   Ground cover specifications. All open areas of the development which are not paved, sodded or otherwise landscaped shall have a new lawn established through seeding.

(10)   Plant material, prohibited plant varieties.

(a)   The following plants are restricted from use in any areas covered by this ordinance.

TABLE INSET:

| Common Name | Scientific Name |
|---|---|
| **Large Trees** | |
| **Weeping Willow** | **Salix alba** |
| **Poplars (except Cottonless Cottonwood)** | **Populus alba and others** |
| **Box Elder** | **Acer negundo** |
| **Tree of Heaven** | **Ailanthus altissima** |
| **Chinese Elm** | **Ulmus siberica** |
| **Female Ginkgo** | **Ginkgo bibola female** |
| **Mulberry** | **Morus alba and others** |
| ack Locust | **Robinia pseudoacacia** |
| **Sycamore** | **Platanus occidentalis** |
| **Seedling Form Soft (Silver) Maple** | **Acer Saccharinum** |
| **(improved forms are allowed)** | |
| | |
| **Medium Trees** | |
| **All fruit trees** | |
| **Russian Olive** | **Elaeagnus angustifolia** |
| **Shrubs** | |
| **Common Buchthorn** | **Rhamnus cathartica** |
| **Fall Honeysuckle** | **Lonicera maacki** |
| | **podocarpa** |
| **Tatatian Honeysuckle** | **Lonicera tatarica** |

(11)   Landscaping maintenance. Trees, shrubs, and other landscaping materials depicted on landscaping plans approved by the city shall be considered to be elements of the project in the same manner as parking, building materials and other details. The developer, its successor and/or subsequent owners and their agents shall be responsible for maintenance of landscaping on the property on a continuing basis for the life of the

development. Plant materials which exhibit evidence of insect pests, disease and/or damage shall be appropriately treated, and dead plants promptly removed and replaced within the next planting season after installation. All landscaping will be subject to periodic inspection by the building commissioner, or his or her designee. Should landscaping not be installed, maintained and replaced as needed to comply with the approved plan, the owner and its agent or agents shall be considered in violation of the terms of the certificate of occupancy. The building commissioner is empowered to enforce provisions of this article.

(a)  As a condition to issuance of a certificate of occupancy, a cash escrow or irrevocable letter of credit in the amount of twenty-five (25) percent of the initial landscaping costs shall be posted to ensure the needed replacement of materials and the continued maintenance of the same for a period of two (2) years after initial installation. Said cash escrow or irrevocable letter of credit may be forfeited if the necessary maintenance and replacement has not been performed in a satisfactory manner within the two (2) year period. Further, should it be determined that the landscaping as approved on the landscaping plan is not being maintained as specified beyond the initial two (2) year maintenance period, resubmission of the approved plan and the posting of an additional maintenance escrow may be required by the city.

(12)  Administrative relief. A written application for administrative relief of [from] the requirements of subsections (4), (5) and (6) may be filed with the building commissioner as part of an application for landscape plan approval. Nineteen (19) copies of the application and all supporting documentation shall be submitted. Such application shall be submitted with the landscape plan and demonstrate the following:

(a)  The strict application of the regulation in question is unreasonable given the development proposal or the measures proposed by the applicant, or, that the property has extraordinary or exceptional physical conflicts that do not generally exist in nearby properties in the same zoning district and such conditions will not allow a reasonable use of the property in absence of relief.

(b)  Dependent upon the approval process under which the application for relief is sought, the approving authority shall make the final decision upon whether any relief from these requirements may be approved.

(c)  In granting any administrative relief, the city council, or city council committee on development, may require alternative improvements, or stipulate such conditions as appropriate.

(13)  Effect of approval; plan revisions. An application may be made following the initial submission of a landscape plan to propose alternatives or changes to the approved plan or any plans pending approval, or as may be requested by the city. Any alterations or changes to a plan document upon resubmission to the building commissioner shall include plan copies required under subsection (3), above together with a written statement indicating all changes made and a revision block on the face of the plan(s) indicating each date of revision.

All plan changes shall be represented on the face of the plan(s) by notation encompassing the area of change and with reference to the written statement of changes. Except where changes are noted, the content of the plan is presumed to be that of the last plan accepted by the building commissioner. The building commissioner may reject any plan changes where insufficient documentation of the location and nature of the change(s) lends the proposed revisions uninterpretable.

Any proposed changes to a landscape plan following final action on the plan shall constitute a new application subject to the procedures and requirements of this subsection.

(Code 1980, App. B, § XII; Ord. No 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 00-44, § 2, 8-24-2000)

Cross references:  Administration, ch. 2.

## Sec. XIII. Amendments.

The zoning board of appeals of Calumet City, which has been duly created by the mayor and city council, shall have the authority, responsibility and duties as set forth herein.

*13.1 Jurisdiction.*

To hear and report findings and recommendations to the mayor and city council on all applications for

amendments and special use permits in the manner prescribed by standards and other regulations set forth herein;

To initiate, direct and review, from time to time, studies of the provisions of the ordinance, and to make reports of its recommendations to the mayor and the city council not less frequently than once each year; and

To hear and decide all matters upon which it is required to pass under this ordinance.

### 13.2 Meetings and rules.

All meetings of the zoning board of appeals shall be held at the call of the chairman and at such time as the zoning board of appeals may determine. In all official proceedings, the chairman, or in his absence, the acting chairman of the zoning board of appeals, shall have the power to administer oaths and compel by subpoena the attendance and testimony of witnesses and the production of books and papers. The zoning board of appeals shall keep minutes of its proceedings, showing the vote of each member upon each question, or if absent or failing to vote, indicating such fact, and shall also keep records of its hearings and other official actions. A copy of every rule or regulation, every appearance, variation and every recommendation, order, requirement, decision or determination of the zoning board of appeals shall be filed immediately in the office of the city and shall be a public record. The zoning board of appeals shall adopt its own rules and procedures, not in conflict with this ordinance or with applicable Illinois Statutes. All hearings shall be open to the public.

### 13.3 Initiation of amendment.

Amendments may be proposed by the mayor or the city council, the zoning board of appeals, or any property owner.

### 13.4 Processing application for amendment.

*[Filing application.]* An application for an amendment shall be filed with the city clerk. The application shall be accompanied by such plans and data and other such information, as specified by the zoning board of appeals, and shall include a statement in writing by the applicant and adequate evidence showing that the proposed amendments will conform to the standards set forth herein. The application shall be accompanied by a site development plan and landscape plan in accord with subsections 12.9 and 12.10 of this ordinance. Copies of such application shall be forwarded by the city council to the zoning board of appeals with the request to hold a public hearing.

*Notices.* In addition to the notice requirements otherwise provided for in this ordinance, an applicant for amendment shall serve written notice not less than fifteen (15) days before the date set for hearing either in person or by registered or certified mail, return receipt requested, on the owners, as recorded in the office of the recorder of deeds or the registrar of titles of the county in which the property is located and as appears from the authentic tax records of such county, of all property within three hundred (300) feet in each direction of the location for which the amendment is requested; provided the number of feet occupied by all public roads, streets, alleys and other public ways shall be excluded in computing the three hundred (300) feet requirement. The notice herein required shall contain the address of the location for which the amendment is requested, a brief statement of the nature of the requested amendment, the name and address of the legal and beneficial owner of the property for which the amendment is requested, a statement that the applicant has filed an application for amendment and the date, time and place set for hearing on said application. If, after a bona fide effort to determine such address by the applicant for amendment, the owner of the property on which the notice is served cannot be found at his last known address, or the mailed notice is returned because the owner cannot be found at the last known address, the notice requirements of this ordinance shall be deemed satisfied. In addition to serving the notice herein required, at the time of hearing on the application, the applicant shall furnish to the board of appeals a complete list containing the names and last known addresses of the owners of the property required to be served, the method of service and the names and last known addresses of the persons so served. The applicant shall also furnish a written statement certifying that he has complied with the requirements of this ordinance. The board of appeals shall hear no application for amendment unless the applicant for said amendment furnishes the list and certificate herein required.

*Publication.* The zoning board of appeals shall cause a notice of time, place and purpose of such hearing to be published in a newspaper of general circulation within the City of Calumet City not more than thirty (30) days nor less than fifteen (15) days in advance of such hearing.

*Hearing on application.* Upon receipt in proper form of the application and statement referred to above, the zoning board of appeals shall hold at least one (1) public hearing on the proposed amendment. However, the zoning

board of appeals may continue from time to time the hearing without further notice being published.

*Findings of fact and recommendation of the zoning board of appeals.* Within forty-five (45) days after the close of the hearing on a proposed amendment, the zoning board of appeals shall make written findings of fact and shall submit same, together with its recommendations to the mayor and city council. Where the purpose and effect of the proposed amendment is to change the zoning classification of particular property, the zoning board of appeals shall make findings based upon the evidence presented to it in each specific case with respect to the following matters:

(1)  Existing uses of property within the general area of the property in question;

(2)  The zoning classification of property within the general area of the property in question;

(3)  The suitability of the property in question to the uses permitted under the existing zoning classification; and

(4)  The trend of development, if any, in the general area of the property in question, including changes, if any, which have taken place since the day the property in question was placed in its present zoning classification.

### 13.5 Decisions.

Action by the zoning board of appeals:

(1)  The zoning board of appeals may hear a request for any change in zoning and may recommend a zoning classification more restrictive than that requested.

(2)  A concurring vote of a majority of those members present at the meeting with a minimum of three (3) concurring votes shall be required to recommend granting or denying an application for an amendment.

(3)  The report to the city council shall contain number present and number of votes for or against the motion.

Action by the mayor and city council:

(1)  The mayor and city council, upon receiving the recommendations of the zoning board of appeals, may grant or deny any proposed amendment in accordance with applicable Illinois Statutes, or may refer it back to the zoning board of appeals for further consideration.

(2)  In the event of written protest against any proposed special use, signed and acknowledged by the owners of twenty (20) percent of the frontage adjacent thereto, or across an alley, or directly opposite therefrom, such special use shall not be granted except by the favorable vote of two-thirds ( 2/3) of all the members of the city council.

(3)  If an application for a proposed amendment is not acted upon finally by the city council within six (6) months of the date upon which such application is received by the mayor and city council, it shall be deemed to have been denied.

(Code 1980, App. B, § XIII; Ord. No. 96-30, § 1(Exh. A), 5-23-1996)

## Sec. XIV. Violations: penalty.

Any person, firm or corporation who violates, disobeys, omits, neglects or refuses to comply with or who resists the enforcement of any of the provisions of this ordinance shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) for each offense. Each day that a violation is permitted to exist shall constitute a separate offense.

### 14.1 Validity.

If any section, paragraph, subdivision, clause, sentence or provision of this ordinance shall be adjudged by any court of competent jurisdiction to be invalid, such judgement shall not affect, impair, invalidate or nullify the remainder of this ordinance, but the effect thereof shall be confined to the section, paragraph, subdivision, clause, sentence or provision immediately involved in the controversy in which judgment or decree shall be rendered.

APPENDIX B ZONING*

*14.2 Repeal of conflicting ordinances.*

All ordinances or parts of ordinances in conflict herewith are hereby repealed.

(Code 1980, App. B, § XIV)

### Sec. XV. Enactment.

This ordinance shall be in full force and effect from and after its passage, approval and publication in pamphlet form, as provided by law.

(Code 1980, App. B, § XV)

PASSED this 13th day of January, A.D. 1983.

_____
City Clerk


_____
Mayor

ATTEST:

APPROVED by me this 14th day of January, A.D. 1983.

_____
City Clerk

**//Calumet City, Illinois/MUNICIPAL CODE CALUMET CITY, ILLINOIS Codified through Ord. No. 07-72, enacted June 14, 2007. (Supplement No. 7)/APPENDIX B ZONING***

# Exhibits D & E
## to
## Complaint For Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory And Other Relief

## Case No. 08-cv-3017

# EXHIBIT D

## ARTICLE IX. CODE ENFORCEMENT*

---

*Cross references:* Fire code prevention, § 30-161 et seq.

**State law references:** Administrative adjudication of ordinances, 65 ILCS 5/1-2.1-1 et seq.

---

### Sec. 2-941. Purpose.

The stated purpose of this article is to provide for the fair and efficient enforcement of the Municipal Code of Calumet City, Illinois, other than those ordinances pertaining to vehicular standing, parking or vehicle compliance regulation (hereafter the "City Code"), as may be allowed by law and directed by ordinance, through an administrative adjudication of violations; and, establishing a schedule of fines and penalties, and authority and procedures for collection of unpaid fines and penalties.

(Code 1980, § 2-501; Ord. No. 99-63, § VI, 11-10-1999)

### Sec. 2-942. Creation.

There is hereby established a department of the city government to be known as the ordinance enforcement department and to have the power to enforce any municipal ordinance as from time to time authorized by the city council, except for (i) any offense enforced pursuant to Article VII.5 of Chapter 17 of this Code; (ii) any offense under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.); or a similar offense that is a traffic regulation governing the movement of vehicles; and, (iii) except for any reportable offense under 625 ILCS 5/6-204. The establishment of the ordinance enforcement department does not preclude the mayor and city council from using any other method or court with jurisdiction to enforce ordinances of the city.

(Code 1980, § 2-503; Ord. No. 99-63, 11-10-1999)

### Sec. 2-943. Administrative composition.

(a) The ordinance enforcement department shall be composed of a hearing officer, an ordinance enforcement administrator, system coordinator/computer operator and hearing room security personnel, with the power and authority as hereinafter set forth.

(1) The hearing officer is authorized and directed to:

a. The hearing officer, prior to appointment, must be an attorney licensed to practice law for at least three (3) years in the State of Illinois. The hearing officer shall preside over all adjudicatory hearings and shall have the following powers and duties:

1. To administer oaths;

2. To hear testimony and accept evidence that is relevant to the existence of the City Code violation;

3. To issue subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives;

4. To preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing;

5. To issue and sign a written finding, decision and order stating whether a City Code violation exists;

6.  To impose penalties, sanctions or such other relief consistent with applicable City Code provisions and assessing costs upon finding a party liable for the charged violation, except however, that in no event shall the hearing officer have authority to impose a penalty of incarceration; and,

7.  To review final determination of liability for an ordinance violation in accordance with the administrative review procedures hereinafter set forth.

b.  Prior to conducting administrative adjudication proceedings under this article, the hearing officer shall have successfully completed a formal training program which includes the following:

1.  Instruction on the rules of procedure of the administrative hearings over which the hearing officer shall preside;

2.  Orientation to each subject area of the code violations that he/she will adjudicate;

3.  Observation of administrative hearings; and

4.  Participation in hypothetical cases, including ruling on evidence and issuing final orders.

(2)  The ordinance enforcement administrator is authorized and directed to:

a.  Operate and manage the ordinance enforcement department.

b.  Adopt, distribute and process all notices as may be required under this article or as may be reasonably required to carry out the purpose of this article.

c.  Collect moneys paid as fines and/or penalties assessed after a final determination of liability.

d.  Certify copies of final determinations of an ordinance violation adjudicated pursuant to this article, and any factual reports verifying the final determination of any violation liability which was issued in accordance with this article.

e.  Promulgate rules and regulations reasonably required to operate and maintain the administrative adjudication system hereby created.

f.  Collect unpaid fines and penalties through private collection agencies and direct the pursuit of all post-judgment remedies available by law.

(3)  The system coordinator/computer operator is hereby authorized and directed to operate and maintain the computer programs for the administrative adjudication system of the ordinance enforcement department hereby created, on a day-to-day basis, including but not limited to:

a.  Input of violation notice information.

b.  Establishing hearing dates and notice dates.

c.  Record fine and penalty assessment and payments.

d.  Issue payment receipts.

e.  Issue succeeding notice of hearing dates and/or final determination of liability.

f.  Keep accurate records of appearances and nonappearances at administrative hearings, pleas entered, judgments entered, sanctions imposed, if any, fines and penalties assessed and paid.

(4)  All hearing room security personnel shall be qualified off-duty, full-time, part-time or auxiliary police officers who are hereby authorized and directed to:

a.  Maintain hearing room decorum.

b.  Have and execute authority as is granted to courtroom deputies of the circuit court.

c.  Perform such other duties or acts as may reasonably be required and as directed by the hearing officer or ordinance enforcement administrator.

(b)  The mayor is hereby authorized to appoint persons to hold the positions above set forth. Other than the hearing officer, one person may hold and fulfill the requirements of one (1) or more of the above stated

positions and compensation for each of the above stated positions shall be as approved by the city council.

(Code 1980, § 2-504; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-944. Procedures.

The system of administrative adjudication of any ordinance violation authorized to be adjudicated hereunder, shall afford a party due process of law and the hearings shall be conducted in accordance with the following procedures:

(1) Violation notices of any City Code shall be issued by the persons authorized under this Code and shall contain information and shall be certified and constitute *prima facie* evidence of the violation cited as hereinafter set forth.

(2) All full-time, part-time and auxiliary police officers as well as other specifically authorized individuals of any department of the city shall have the authority to issue violation notices.

(3) Any individual authorized hereby to issue violation notices and who detects any ordinance violation authorized to be adjudicated under this article, is authorized to issue notice of violation thereof and shall make service thereof as is hereinafter set forth.

(4) The violation notice of the City Code shall contain, but shall not be limited to, the following information:

    a. The name of the party violating the ordinance, if known.

    b. The date, time and place of the violation (date of issuance).

    c. The particular ordinance violated.

    d. The fine and any penalty which may be assessed for the ordinance violation.

    e. The signature and identification number of the person issuing the notice.

    f. The date and location of the adjudicating hearing of ordinance violations, and the penalties for failure to appear at the hearing.

    g. That payment of the indicated fine and any late payment shall operate as a final disposition of the violation.

(Code 1980, § 2-505; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-945. Service.

(a) Service of any violation notice shall be made by the person issuing such notice by:

(1) Handing the notice to the person responsible for the ordinance violation;

(2) Handing the notice to the responsible person or leaving the notice with any person twelve (12) years of age or older at the residence of the responsible person;

(3) Mailing the notice by first class mail, postage prepaid, to the person responsible for the ordinance violation; or,

(4) Posting the notice upon the property where the violation is found when the person is the owner or manager of the property.

(b) The correctness of facts contained in any violation notice shall be verified by the person issuing said notice by:

(1) Signing his name to the notice at the time of issuance; or

(2) In the case of a notice produced by a computer device, by signing a single certificate, to be kept by the ordinance enforcement administrator, attesting to the correctness of all notices produced by the device while under his control.

(c) The original or a facsimile of the violation notice shall be retained by the ordinance enforcement administrator and kept as a record in the ordinary course of business.

(d) Any violation notice issued, signed and served in accordance herewith, or a copy of the notice, shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the facts shown on the notice.

(Code 1980, § 2-506; Ord. No. 99-63, 11-10-1999)

### Sec. 2-946. Administrative hearings.

An administrative hearing to adjudicate any alleged City Code ordinance violation on its merits shall be granted to the person named in the ordinance violation notice. All administrative hearings shall be recorded and shall culminate in a determination of liability or nonliability, made by the hearing officer, who shall consider facts and/or testimony without the application of the formal or technical rules of evidence. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonable prudent persons in the conduct of their affairs. The hearing officer shall, upon a determination of liability, assess fines, penalties and costs in accordance with section 2-952 hereof. Persons appearing to contest the alleged violation on its merits may be represented by counsel at their own expense. The burden of proof shall be on the alleged offender to refute the *prima facie* case set forth in the verified notice of violation.

(Code 1980, § 2-507; Ord. No. 99-63, 11-10-1999)

### Sec. 2-947. Notices.

(a) Upon failure of the person receiving a notice of a violation of the City Code to appear at the time and date designated for a hearing, the ordinance enforcement administrator shall send, or cause to be sent, notices as provided in subsection (b) of this section, by first class mail, postage prepaid, to the person who received the notice of an ordinance violation. Service of notices sent in accordance herewith shall be complete as of the date of deposit in the United States mail.

(b) The notices sent pursuant to subsection (a) of this section shall be in the following sequence and contain, but not be limited to, the following information:

(1) Date and location of violation cited in the violation notice.

(2) Particular ordinance violated.

(3) Fine and any penalty that may be assessed for late payment.

(4) A section titled "Notice of Hearing" which shall clearly set forth that the person receiving a notice of the City Code ordinance violation may appear at an administrative hearing to contest the validity of the violation notice on the date and at the time and place as specified in the notice of hearing.

(5) Date, time and place of the administrative hearing at which the alleged violation may be contested on its merits.

(6) Statement that failure to either pay fine and any applicable penalty or failure to appear at the hearing on its merits on the date and at the time and place specified will result in a final determination of liability for the "cited" violation in the amount of the fine and penalty indicated.

(7) Statement that upon the occurrence of a final determination of liability for the failure, and the exhaustion of, or the failure to exhaust, available administrative or judicial procedures for review, any unpaid fine or penalty will constitute a debt due and owing the city.

(c) A notice of final determination of liability shall be sent following the conclusion of administrative hearing, as is hereinafter set forth, and shall contain, but not be limited to, the following information and warnings:

(1) A statement that the unpaid fine and any penalty assessed is a debt due and owing the city;

(2) A statement of any sanction ordered or costs imposed which costs are debts due and owing the city; and

(3) A warning that failure to pay the fine and any penalty due and owing the city within the time

specified may result in proceeding with collection procedures in the same manner as a judgment entered by any court of competent jurisdiction.

(Code 1980, § 2-508; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-948. Final determination of liability.

A final determination of liability shall occur following the failure to pay the fine or penalty after the hearing officer's determination of liability and the exhaustion of, or the failure to exhaust, any administrative review procedures hereinafter set forth. Where a person fails to appear at the administrative hearing to contest the alleged violation on the date and at the time and place specified in a prior served or mailed notice pursuant to section 2-947(b) hereof, the hearing officer's determination of liability shall become final either upon a denial of a timely petition to set aside that determination or upon the expiration of the period for filing a petition without a filing having been made.

(Code 1980, § 2-509; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-949. Petition to set aside determination.

A petition to set aside a final determination of liability may be filed with the ordinance enforcement administrator within twenty-one (21) days of the date of the final determination of liability and payment of twenty-five dollars ($25.00).

(Code 1980, § 2-510; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-950. Judicial review.

Any final decision by a hearing officer that a City Code violation does or does not exist shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.).

(Code 1980, § 2-511; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-951. Enforcement of judgment.

(a)  Any fine, other sanction, or costs imposed, or part of any fine, other sanction, or costs imposed, remaining unpaid after the exhaustion of or the failure to exhaust judicial review procedures under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) are a debt due and owing the municipality and may be collected in accordance with applicable law.

(b)  After expiration of the period in which judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) may be sought for a final determination of a code violation, unless stayed by a court of competent jurisdiction, the findings, decision, and order of the hearing officer may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

(c)  In any case in which a hearing officer finds that a defendant has failed to comply with a judgment ordering a defendant to correct a code violation or imposing any fine or other sanction as a result of a code violation, any expenses incurred by the city to enforce the judgment including, but not limited to, attorney's fees, court costs, and costs related to property demolition or foreclosure after they are fixed by the hearing officer, shall be a debt due and owing the municipality and may be collected in accordance with applicable law.

(d)  A lien shall be imposed on the real estate or personal estate, or both, of the defendant in the amount of any debt due and owing the city under this section. The lien may be recorded and enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction. No lien may be enforced under this section until it has been recorded in the manner provided by Article XII of the Code of Civil Procedure (735 ILCS 5/1-101 et seq.) or by the Uniform Commercial Code (810 ILCS 5/1-101et seq.).

(e)  A hearing officer may set aside any judgment entered by default and set a new hearing date upon a petition filed within twenty-one (21) days after the issuance of the order of default if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the

petitioner establishes that the municipality did not provide proper service of process.

(Code 1980, § 2-512; Ord. No. 99-63, 11-10-1999)


**Sec. 2-952. Schedule of fines/penalties.**

For an ordinance violation of the City Code, fines and penalties shall be as established from time to time by the mayor and city council.

(Code 1980, § 2-513; Ord. No. 99-63, 11-10-1999)


**//Calumet City, Illinois/MUNICIPAL CODE CALUMET CITY, ILLINOIS Codified through Ord. No. 07-72, enacted June 14, 2007. (Supplement No. 7)/Chapter 2 ADMINISTRATION*/ARTICLE IX. CODE ENFORCEMENT***

# EXHIBIT E

## DIVISION 2. RENTAL DWELLING INSPECTIONS*

*Editor's note: Ord. No. 06-49, adopted June 22, 2006, amended division 2 in its entirety to read as herein set out. Former division 2, which consisted of §§ 14-711—14-718, pertained to similar subject matter and derived from the 1980 Code; Ord. No. 87-5, adopted Mar. 26, 1987; Ord. No. 87-16, adopted July 23, 1987; Ord. No. 88-2, adopted Feb. 25, 1988; Ord. No. 89-8, adopted Feb. 9, 1989; Ord. No. 89-40, adopted Nov. 9, 1989; Ord. No. 90-1, adopted Jan. 11, 1990; Ord. No. 94-16, adopted May 12, 1994; and Ord. No. 04-42,adopted June 29, 2004.

### Sec. 14-711. Certificate of occupancy requirement.

(a)  No owner, agent or person (hereinafter referred to as "responsible party") in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as "rental dwelling"), as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the department of inspectional services ("department"). Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b)  No certificate of occupancy shall be issued unless the applicant[,] owner or operator agrees in his application to an inspection pursuant to this section. Notwithstanding any other provisions of this Code, when the city conducts inspections of a tenant's rental dwelling, the city must obtain the consent of such tenant to conduct the inspection. If a tenant refuses consent, the city may attempt to obtain a warrant pursuant to subsection (d) below.

(c)  Prior to the time that the department is scheduled to conduct the inspection, the department shall deliver to the owner and occupants of the structure written notice that includes the following:

(1)  Date and time of the inspection;

(2)  A statement that the owner or tenant has the right to withhold his consent to the inspection and require the city to attempt to obtain a warrant to conduct the inspection;

(d)  If the owner or occupant does not consent to the attempted inspection, the director of inspectional services ("director") or his designee shall seek in the circuit court of Cook County a warrant in accordance with the appropriate laws of the State of Illinois to allow an inspection. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the city building and zoning ordinances or any applicable housing, fire or property maintenance codes or regulations. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)  Eyewitness account of violation;

(2)  Citizen complaints;

(3)  Tenant complaints;

(4)  Plain view violations;

(5)  Violations apparent from city records;

(6)  Property deterioration;

(7)  Age of property;

(8)  Nature of alleged violation;

(9)  Similar properties in the area;

DIVISION 2. RENTAL DWELLING INSPECTIONS*                                      Page 2 of 3

    (10)  Documented violations on similar properties in the area;

    (11)  Passage of time since last inspection;

    (12)  Previous violations on the property.

(e)  If the annual inspection establishes that the rental dwelling complies with all the provisions of the property maintenance code as well as all other health, zoning, and building ordinances of the city, then the department of inspectional services shall issue a certificate of occupancy for said dwelling or structure. The certificate shall indicate the date of the inspection; that such dwelling or structure complies with the requirements of the property maintenance code as well as other health and building ordinances that apply to the dwelling. One (1) copy of the certificate shall be delivered to or mailed to the owner of the dwelling unit. A record of all certificates shall be kept on file by the department, and copies shall be furnished upon request to any person having a proprietary interest or tenancy interest in the dwelling affected. The director shall submit once a month to the mayor and the city council a list of addresses of those dwellings which have been inspected the previous month with an indication whether or not said dwellings have been issued certificate of occupancy permits. Every certificate of occupancy shall be issued for a period of one (1) year after its date of issuance, unless sooner revoked.

(f)  Inspection fee schedule.

    (1)  Fifty dollars ($50.00) yearly.

    (2)  Ten dollars ($10.00) per additional unit.

    (3)  All inspection fees as herein provided shall be paid prior to the issuance of a certificate of occupancy.

    (4)  Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

    (5)  If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(Ord. No. 06-49, § 1, 6-22-2006)


**Sec. 14-712. Notice of violation.**

(a)  Whenever the building official determines that any rental dwelling or the premises surrounding fails to meet the requirements set forth in this chapter or in applicable rules and regulations issued pursuant thereto, the building official in accordance with the property maintenance code and the other city health, and building codes shall issue a notice setting forth the alleged failures and advising the responsible party that such failures must be corrected. This notice shall:

    (1)  Be in writing.

    (2)  Set forth the alleged violations of this chapter or of applicable rules and regulations issued pursuant thereto.

    (3)  Describe the rental dwelling where the violations are alleged to exist or to have been committed. Such written notice shall specify an appropriate or acceptable method of correction.

    (4)  Specify a specific date for the correction of any violation alleged.

    (5)  Be served upon the responsible party of the rental dwelling by the building official, or mailed to the responsible party. If one (1) or more persons to whom such notice is addressed cannot be found after diligent effort to do so, service may be made upon such persons by posting the notice in or about the rental dwelling described in the notice.

(b)  At the end of the period of time allowed for the correction of any violation alleged, which was stated in the inspection notice, the building official shall reinspect the rental property described in the notice.

(c)  If, upon reinspection, the violations are determined by the building official not to have been corrected, the

building official, in turn, shall issue an O.V. (ordinance violation) ticket to initiate legal proceedings to be handled in Calumet City's housing court for the immediate correction of the alleged violations or shall order the rental property vacated within thirty (30) days, or both.

(Ord. No. 06-49, § 1, 6-22-2006)

### Sec. 14-713. Responsibility of tenants.

No tenant shall damage or cause to be damaged any unit or building leased nor shall any damage be caused to the general premises of any building used by the tenants. Each tenant and the families of each tenant shall maintain his rental unit free of any litter, and tenants shall not litter any of the premises or the buildings provided for use by the tenants. The tenants must maintain their responsibilities as outlined in the property maintenance code, subject to O.V. citations.

(Ord. No. 06-49, § 1, 6-22-2006)

### Sec. 14-714. Penalties.

Any responsible party of a rental dwelling who has received an order or notice of an alleged violation of this article shall be subject to a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each day the alleged violation continues after expiration of the specified reasonable consideration period; provided that no such penalty shall be applicable while reconsideration, hearing or appeal to a court of competent jurisdiction is pending in the matter.

(Ord. No. 06-49, § 1, 6-22-2006)

### Sec. 14-715. Validity and severability.

If any section, subsection, paragraph, sentence, clause, or phrase of this Code shall be declared invalid for any reason whatsoever, this decision shall not affect the remaining portions of this Code, which shall continue in full force and effect, and to this end, the provisions of this Code are hereby declared to be severable.

(Ord. No. 06-49, § 1, 6-22-2006)

### Sec. 14-716. Savings clause.

This Code shall not affect violations of any other ordinance, code or regulation of the jurisdiction existing prior to the effective date hereof, and any such violation shall be governed and shall continue to be punishable to the full extent of the law under the provisions of those ordinances, codes or regulations in effect at the time the violation was committed.

(Ord. No. 06-49, § 1, 6-22-2006)

Secs. 14-717—14-750. Reserved.