## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

NICK SALINSKE, for himself and all others
similarly situated,

                  *Plaintiffs,*

     v.

CALUMET CITY, ILLINOIS,

                  *Defendant.*

Case No. 08-cv-03017

Judge Wayne R. Anderson
Magistrate Judge Morton Denlow

## PLAINTIFFS' MOTION FOR TEMPORARY
## RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Nick Salinske ("Salinske"), on behalf of himself and all others similarly situated,

pursuant to Rule 65 of the Federal Rules of Civil Procedure, moves this Court for entry of a

temporary restraining order and/or preliminary injunction enjoining enforcement of Defendant

Calumet City, Illinois's ("City") Point of Sale Inspection Ordinance ("Ordinance") (Ex. A to

Plaintiffs' Supporting Memorandum). In support of this Motion, Plaintiffs state as follows:

     1.     Plaintiffs bring this action for injunctive, declaratory and other relief, pursuant to

42 U.S.C. § 1983, and 28 U.S.C. §§2201 and 2202 to redress the deprivation, under color of law,

of rights guaranteed to Plaintiffs, by the United States Constitution and under Illinois law. The

facts supporting Plaintiffs' claims are set forth in detail in their Verified Class Action Complaint

(the "Complaint") and in the accompanying Supporting Memorandum, both of which are

incorporated herein by reference.

     2.     Salinske, a property owner in City, filed this class action seeking, among other

things, a declaration that City's Ordinance is unconstitutional. The Ordinance provides that City

property owners are prohibited from selling their property unless it "passes" an inspection during

which City can order property owners to make cosmetic repairs to their property. Salinske contends that the Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to freely sell their property without due process of law. Salinske also contends that the Ordinance is unconstitutional because it contains no due process protection against City requiring that legal nonconforming property – as compared to illegally converted property – be "deconverted" (i.e., reduced to fewer units) before it can be sold.

　　　　3.　　This case presents the same issues raised in litigation brought by the Mainstreet Organization of Realtors® ("Association"), entitled Realtor Association of West/South Suburban Chicagoland v. Calumet City, No. 06 C 2271 (N.D. Ill.) (Shadur, J.) (the "Prior Litigation"). In the Prior Litigation, Association challenged the constitutionality of City's then-enacted point of sale inspection ordinance. Importantly, in the Prior Litigation, Judge Shadur twice ruled that immediate injunctive relief enjoining enforcement of various versions of City's POS Inspection Ordinance was necessary and appropriate. (*See* Exs. B and C to Plaintiffs' Supporting Memorandum). City appealed the second injunction entered by Judge Shadur (which had been entered on December 8, 2006). On October 17, 2007, the Seventh Circuit vacated the December 8 injunction on the ground that Association lacked "prudential" standing to challenge the POS Inspection Ordinance. Mainstreet Org. of Realtors v. Calumet City, 505 F.3d 742 (7th Cir. 2007), cert. denied, 2008 U.S. LEXIS 4558, 76 U.S.L.W. 3635 (U.S. June 2, 2008). In its opinion, the Seventh Circuit stated that a challenge to the POS Inspection Ordinance should be brought in a lawsuit by "all [] homeowners in Calumet City [] joined in a class action." Mainstreet Org. of Realtors, 505 F.3d at 747.

　　　　4.　　This lawsuit seeks to have the injunctive relief entered by Judge Shadur reinstated. Since the Seventh Circuit vacated the December 8, 2006 injunction entered by Judge

2

Shadur on "prudential" standing grounds, City has amended its ordinance yet again. *Importantly, however, the versions of the ordinance enjoined by Judge Shadur are, in all material respects, the same as the Ordinance Salinske seeks now to enjoin.* For example, each version of the ordinance provides that a homeowner cannot sell property unless the property "passes" an inspection. Moreover, no version of the ordinance contains limitations on the scope of searches or the types of repairs City can order as a precondition of the right to sell property. Thus, each version of the ordinance allows City to stop sales for purely cosmetic and trivial reasons, such as having a loose soap dish. Further, no version of the ordinance contains due process protection against City ordering the deconversion of legal nonconforming property. The reasoning that led Judge Shadur to issue two injunctions applies with equal force here.

5.     As explained briefly below and in more detail in the Supporting Memorandum, the Ordinance is unconstitutional because, among other reasons, it (a) unreasonably and unconstitutionally restrains property owners' right to sell their property without due process of the law; (b) fails to provide pre-deprivation due process; and (c) is impermissibly vague.

6.     Plaintiffs have a high likelihood of success on the merits of their claims. The Ordinance unreasonably and unconstitutionally restrains the alienability of property in several ways. First, the Ordinance provides that property cannot be sold unless City issues a transfer stamp. (Ex. A to Supporting Memorandum at § 14-1(h); Ex. E to Supporting Memorandum at §§ 82-325, 82-327(b), 82-328). With one limited exception, the only way for a property owner to obtain a transfer stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides his property "passed" a point of sale inspection. (Ex. A to Supporting Memorandum). A property owner can "pass" a point of sale inspection only if he completes all repairs required by the inspector -- even if those repairs are cosmetic in nature -- by

3

using a licensed contractor.  (*Id.* at § 14-1(k)).  Thus, even if Salinske's property complies with all City codes, he may not sell his property if City refuses to issue a "Certificate of Compliance."

7.      Second, the Ordinance contains no limitations on the type of repair City can order as a precondition of the right to sell property.  City has historically stopped sales of property until home owners make cosmetic repairs such as replacing soap dishes and painting.  Nothing in the Ordinance restrains City's discretion.

8.      Third, the Ordinance contains unreasonably long deadlines which, even if everything works perfectly, allows City to delay or prevent sales for more than 50 days.  During such delay, sales will be lost and property values diminished.

9.      The right to sell property is, itself, a property right protected by the Constitution. The Ordinance is unconstitutional because it fails to provide pre-deprivation due process.  Due process dictates that, *before* a property right – such as the right to sell property – can be taken by the State, the State must provide due process, including the right to be heard.  The Ordinance fails to comply with the constitutional minimum that a hearing must be provided *before* a property right can be taken.  As respects point of sale inspections, the Ordinance results in the immediate deprivation of a home owner's right to sell his property until City decides to permit it. Upon issuance of an inspector's repair order, the home owner is prohibited from selling his property until repairs are made.  The Ordinance provides the homeowner no due process *prior to* this deprivation of the right to sell his property.  In effect, City has enjoined the transfer of residential property -- without a complaint, evidence, a hearing or any procedural or substantive rules -- until it decides to consent.  In addition, the Ordinance requires citizens to pay the water bill before City will issue transfer stamps.  (*Id.* at § 14-1(i)).  Although an owner can dispute the water bill in a "predeprivation hearing," the Ordinance does not provide any detail regarding the

4

due process protection of such hearing and requires the owner to pay the bill "under protest" while he challenges the bill if he wants to obtain a transfer stamp.

10.    As respects deconversions, the Ordinance is unconstitutional because it does not provide pre-deprivation due process to ensure that City does not wrongfully deprive property owners of the valuable property right to sell legal nonconforming property.  For example, the Ordinance does not explain how City will determine whether property is "illegal."  (Ex. A to Supporting Memorandum).  Additionally, there is no pre-deprivation hearing where they can be represented by counsel, rebut City's positions or submit evidence that the property is not an illegal conversion.  *Id.*  Thus, City may prevent the sales of any property without deconversion simply by declaring it illegally converted.  *Id.*

11.    The Ordinance is unconstitutionally vague because it requires that property be in "good repair" before it can pass a point of sale inspection but fails to notify a property owner of what constitutes "good repair."  City has historically relied on the "good repair" provisions to require property owners to make minor, cosmetic repairs (such as repairing soap dishes) before allowing property to be sold.  The phrase "good repair" is not defined.  Given the Ordinance's failure to define "good repair," inspectors have unfettered discretion to order repairs unrelated to conditions that affect health or safety or the public good.  As such, City has no means for preventing arbitrary enforcement.

12.    Plaintiffs have suffered and will continue to suffer irreparable harm by virtue of City's unconstitutional Ordinance.  Indeed, the deprivation of a constitutional right is an "irreparable injury" for which there is no adequate remedy at law.

13.    The balance of harm favors Plaintiffs.  Absent an injunction, Plaintiffs will be deprived of their Constitutional rights.  An injunction against enforcement of the Ordinance,

5

however, will not harm City because, even with an injunction, City may enforce its safety codes through its Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance (Exs. H and I to Supporting Memorandum) that allow City to eliminate code violations, including those created by illegal conversions that relate to public health and safety, without encroaching on the right to sell property.  (*See* Ex. H to Supporting Memorandum at § 2-952).

14.    The public interest is served by the issuance of an injunction which enjoins the Ordinance.  It is in the public interest not to allow City to interfere with the right to sell property unless owners comply with its demands, no matter how unreasonable, and without any due process protection.  Moreover, the public would not be harmed because, even if the Ordinance is enjoined, as City recently conceded in similar litigation (Ex. J to Plaintiffs' Supporting Memorandum), City may use the Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance to address legitimate health and safety issues.

WHEREFORE, for the reasons set forth above and in the Supporting Memorandum, Plaintiffs request that the Court immediately enter a temporary restraining order and/or a preliminary injunction that:

1.    enjoins enforcement of the Ordinance;

2.    prohibits City from performing point-of-sale inspections pursuant to the Ordinance and enjoins City from prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance;"

3.    grants such other relief as the Court deems just and proper; and

6

4.    finds that because no costs or damages will be incurred or suffered by City if the

requested injunction is issued, the Court deems it proper that, pursuant to Rule 65(c) of the

Federal Rules of Civil Procedure, no security need be given by Plaintiffs.

Dated: July 11, 2008                    Respectfully submitted,

                                        **NICK SALINSKE FOR HIMSELF AND ALL
                                        OTHERS SIMILARLY SITUATED**


                                        By:___ /s/ Patrick T. Nash_____
                                                One of Their Attorneys

Philip C. Stahl
Patrick T. Nash
Mark A. Semisch
Donald P. Bunnin
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

150862.1