IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICK SALINSKE, for himself and all others )
similarly situated,                        )
                                           )      Case No. 08-cv-03017
                       *Plaintiffs,*       )
                                           )      Judge Wayne R. Anderson
            v.                             )      Magistrate Judge Morton Denlow
                                           )
                                           )
CALUMET CITY, ILLINOIS,                    )
                                           )
                                           )
                       *Defendant.*        )

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND/OR PRELIMINARY INJUNCTION

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

## INTRODUCTION

Plaintiff Nick Salinske, on his own behalf and on behalf of the Class (the "Plaintiffs"), move the Court for entry of a temporary restraining order and/or preliminary injunction enjoining enforcement of Defendant Calumet City, Illinois's ("City") Point of Sale Inspection Ordinance ("Ordinance"). (Ex. A). The Plaintiffs' motion is directed at Counts I and II of their Verified Class Action Complaint. This memorandum sets forth (I) a brief fact statement, including (A) Judge Shadur's entry of two preliminary injunctions against earlier iterations of the Ordinance, (B) the impact of the Ordinance on City property owners, and a detailed explanation of (C) the Ordinance and (D) other ordinances at City's disposal to address health and safety issues, and (II) why the Plaintiffs are entitled to immediate injunctive relief.

## I.   STATEMENT OF FACTS

### A.   Judge Shadur's Injunctions

Salinske, a property owner in City, filed this class action seeking, among other things, a declaration that City's Ordinance is unconstitutional. The Ordinance provides that City property owners are prohibited from selling their property unless it "passes" an inspection during which City can order property owners to make cosmetic repairs to their property. Salinske contends that the Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to freely sell their property without due process of law. Salinske also contends that the Ordinance is unconstitutional because it contains no due process protection against City requiring that legal nonconforming property – as compared to illegally converted property – be "deconverted" (*i.e.*, reduced to fewer units) before it can be sold.

This case presents the same issues raised in litigation brought by the Mainstreet Organization of Realtors® ("Association"), entitled *Realtor Association of West/South Suburban Chicagoland v. Calumet City*, No. 06 C 2271 (N.D. Ill.)(Shadur, J.) (the "Prior Litigation"). In

the Prior Litigation, Association challenged the constitutionality of City's then-enacted point of sale inspection ordinance. Importantly, in the Prior Litigation, Judge Shadur twice ruled that immediate injunctive relief enjoining enforcement of various versions of City's POS Inspection Ordinance was necessary and appropriate. (*See* Exs. B and C). City appealed the second injunction entered by Judge Shadur (which had been entered on December 8, 2006). On October 17, 2007, the Seventh Circuit vacated the December 8 injunction on the ground that Association lacked "prudential" standing to challenge the POS Inspection Ordinance. *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 4558, 76 U.S.L.W. 3635 (U.S. June 2, 2008). In its opinion, the Seventh Circuit stated that a challenge to the POS Inspection Ordinance should be brought in a lawsuit by "all [] homeowners in Calumet City [] joined in a class action." *Mainstreet Org. of Realtors*, 505 F.3d at 747.

This lawsuit seeks to have the injunctive relief entered by Judge Shadur reinstated. Since the Seventh Circuit vacated the December 8, 2006 injunction entered by Judge Shadur on "prudential" standing grounds, City has amended its ordinance yet again. *Importantly, however, the versions of the ordinance enjoined by Judge Shadur are, in all material respects, the same as the Ordinance Salinske seeks now to enjoin.* For example, each version of the ordinance provides that a homeowner cannot sell property unless the property "passes" an inspection. Moreover, no version of the ordinance contains limitations on the scope of searches or the types of repairs City can order as a precondition of the right to sell property. Thus, each version of the ordinance allows City to stop sales for purely cosmetic and trivial reasons, such as having a loose soap dish. Further, no version of the ordinance contains due process protection against City ordering the deconversion of legal nonconforming property. The reasoning that led Judge Shadur to issue two injunctions applies with equal force here.

2

B.    **Impact of the Ordinance on All City Homeowners**

Salinske owns legal nonconforming property in City located at 527 155th Street. Complaint at ¶ 7. Salinske's property is for sale and subject to the Ordinance. *Id.* The Ordinance, of course, affects all property owners in City, not just Salinske's. Since August 8, 2006 (when Judge Shadur first enjoined the ordinance) there have been at least 611 sales of property that have closed in City. (Ex. D, Joseph Declaration at ¶ 3). As of July 9, 2008, there were approximately 560 active listings of property in City. *Id.* Each such property is subject to the Ordinance if not enjoined.

C.    **Key Aspects of the Ordinance**

1.    **Transfer Stamps and Point of Sale Inspection Requirement**

The Ordinance provides that property can only be sold if City issues transfer stamps. (Ex. E, Calumet City Municipal Code ("Code") §§ 82-325, 82-328). In all but one instance,[1] the only way to obtain transfer stamps is to first obtain a final or conditional "Certificate of Compliance" from City and to pay any outstanding water bill (even if disputed). (Ex. A at §§ 14-1(h); 14-1(i), Ex. E at § 82-327(b)). City will issue a Certificate of Compliance only if it decides the property "passed" an inspection. To "pass" an inspection and obtain a Certificate of Compliance, a property owner must make all repairs (either by himself or using a licensed contractor) ordered by City after the inspection. (*Id.*; *see also* Ex. A at § 14-1(k)).

2.    **No Pre-Deprivation Due Process**

The Ordinance immediately deprives a homeowner of her right to sell her property until City decides to permit it. Upon issuance of an inspector's repair order, the

---

[1]    The only situation in which a Certificate Of Compliance is not required to obtain transfer stamps is when an owner refuses his consent to an inspection and City fails to obtain a warrant to conduct the search. (Ex. A at §14-1(f)).

3

homeowner is prohibited from selling his property until repairs are made. The Ordinance

provides the homeowner no due process *prior to* this deprivation.

In addition, the Ordinance requires citizens to pay the water bill before City will

issue transfer stamps. (Ex. A at § 14-1(i)). Although the Ordinance states that an owner can

dispute the water bill in a "predeprivation hearing," the Ordinance does not explain the due

process protections, if any, of such a hearing and still requires the owner to pay the bill "under

protest" while she challenges it. *Id.* Thus, if a property owner wants to sell her property, she

must pay what City claims it is owed. *Id.* Otherwise, she cannot obtain a transfer stamp. *Id.*

### 3.    Lack Of Restriction On The Scope Of Inspections

The Ordinance does not restrict, in any way, the scope of searches or limit

searches to health or safety issues. (Ex. A). Moreover, the Ordinance does not contain any

limitations on the duration or location of inspections (*e.g.*, there is no limitation on inspectors

searching bedrooms, closets, desks or other areas where private or personal property may be

stored). Rather than placing limitations on the scope of searches (*e.g.*, limiting searches to

matters that concern health and safety), the Ordinance states that "[a]ll structures shall be in

compliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, 'Property

Maintenance Code.'" (*Id.* at §14-1(c)(1)). Sections 14-691 and 14-692 adopt the "2006

International Property Maintenance Code" (the "International Code") with minor modifications.

(Ex. F). The International Code is not limited to issues that affect health and safety. Nor does

the International Code restrict the type of things City can order to be "repaired" before it will

issue transfer stamps. Rather, the International Code states that property must be in "good

repair." (*See id.* at §§ 304, 305). Under the International Code, City inspectors have unfettered

discretion to search for as long as, and for whatever, and wherever they want.

4

Under prior versions of the Ordinance (which Judge Shadur twice enjoined) City repeatedly stopped sales of property (by refusing to issue Certificates of Compliance) until property owners made "cosmetic repairs" unrelated to health, safety, and public welfare such as:

a.　Painting windows, tightening a loose soap dish, replacing a "decorative cover" on a vanity;

b.　Replacing floor tiles, tightening a loose soap dish, painting a bedroom wall, putting a "globe" on a light, painting a bathroom ceiling;

c.　Repairing closet doors, painting door trims, repairing kitchen cabinets; and

d.　"Patch – Paint – Clean – Decorate." (*See* Ex. G).

City's incorporation of the International Code into the Ordinance will not curb City's past abuses because City can improperly rely on the "good repair" provisions of the International Code to improperly order cosmetic repairs as a condition to the right to sell the property. A homeowner, of course, cannot stop an overly intrusive search or refuse to make cosmetic repairs. Homeowners must capitulate to an inspector's demands, even if the repair work is unnecessary from a public health or safety standpoint, if they want to sell their property.

### 4.　**Deconversion Provisions and Lack of Pre-Deprivation Due Process**

The Ordinance permits City to order the "deconversion" of "illegally converted" property. (Ex. A at §§ 14-1(c)(2), 14-1(g)). The Ordinance contains no due process protection against City improperly ordering the deconversion of legal nonconforming property as a precondition of the right to sell the property. *Id.* There is no pre-deprivation hearing at which property owners are permitted to be represented by counsel and to submit evidence that the property is legal. *Id.* Thus, City may prevent the sales of legal nonconforming property simply by declaring it illegal. *Id.*

### 5.　**Unreasonable Delays**

5

The Ordinance also unreasonably restrains the free alienability of property by allowing City unreasonably long time periods to conduct its searches, order repairs, and make re-inspections. (*See* Ex. A at § 14-1(d) (allowing City 28 days to conduct inspection after receipt of notice of transfer), § 14-1(g)(1) (granting City three additional days after inspection to issue inspection report), § 14-1(h) (granting City three additional days to complete re-inspections after repairs are made)). The Ordinance imposes no limit on the number of reinspections City may require because "new repairs" may be ordered during reinspection. The Ordinance also imposes no time limit on when City must issue a Certificate of Compliance after reinspection. (*Id.* at § 14-1(h)). Thus, City can, at a minimum, prevent sales of private property for at least fifty days (assuming conservatively, that (i) it takes ten days for a homeowner to find a licensed contractor who can make all repairs, and for such contractor to make repairs, and (ii) City issues a Certificate of Compliance within ten days after reinspection). During such time, sales can and will be lost. Delays are considerably longer if a homeowner appeals City's decision to not issue a Certificate of Occupancy to the Circuit Court.

### D. City's Other Ordinances

City has two other ordinances that allow inspections to address health and safety issues. First, City enacted Code, Article IX, §§ 2-941 *et seq.* ("Code Enforcement Ordinance"), which allows City to enforce building codes and to prevent violations that create legitimate public health and safety problems (including illegal conversions). (Ex. H). Second, City enacted Code, Article X, Division 2, § 14-711 *et seq.* ("Rental Dwelling Inspection Ordinance") which allows City to annually inspect multi-family dwellings, such as the Plaintiffs' property, to ensure compliance with building and maintenance codes. (Ex. I). Neither of these ordinances can be used to prevent the sale of property. Rather, they can be used to address legitimate safety issues by, among other things, issuing fines if safety issues are not addressed. (Ex. H at § 2-952).

6

Under the Code Enforcement Ordinance, before City can issue a fine, property owners are afforded due process. Such pre-deprivation due process is lacking in the Ordinance.

Recently, in an effort to moot similar litigation, City conceded that compliance with the Ordinance is unnecessary and redundant if a property owner passes an inspection pursuant to the Rental Dwelling Inspection Ordinance. (Ex. J).

## II.     THE PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF

To obtain a preliminary injunction, the Plaintiffs must demonstrate:  (A) some likelihood of success on the merits; (B) without injunctive relief, they will suffer irreparable harm for which there is no adequate remedy at law; (C) the irreparable harm the Plaintiffs will suffer absent the requested relief will outweigh the irreparable harm City will suffer if the relief is granted (measured over the length of time that the relief will be in force), and (D) the public interest will be served if injunctive relief is granted (in terms of the consequences to non-parties). *Jak Prod., Inc. v. Wiza*, 986 F.2d 1080, 1084 (7th Cir. 1993).  Before Judge Shadur and the Seventh Circuit, City never contested issues B-D.  The more likely it is that the Plaintiffs will succeed on the merits, the less the balance of irreparable harms need weigh toward its side. *Abbott Lab. v. Mead Johnson & Co*., 971 F.2d 6, 11-12 (7th Cir. 1992).

### A.     Likelihood of Success on the Merits

#### 1.     Unreasonable Restraint on Plaintiffs' Right to Sell Their Property

The Ordinance unreasonably and unconstitutionally restrains the alienability of the Plaintiffs' property in several ways.

First, the Ordinance provides that property cannot be sold unless City issues a transfer stamp. (Ex. A at § 14-1(h); Ex. E at §§ 82-325, 82-327(b), 82-328).  With one limited exception (*see* n.1, above), the only way for property owners to obtain a transfer stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides

7

his property "passed" a point of sale inspection. (Ex. A). A property owner can "pass" a point of sale inspection only if it completes all repairs required by the inspector -- even if those repairs are cosmetic in nature. *Id.* Thus, even if property complies with all City codes, a property owner may not sell his property if City refuses to issue a "Certificate of Compliance."

Second, the Ordinance contains no limitations on the type of repair City can order as a precondition of the right to sell property. *Black v. Village of Park Forest,* 20 F. Supp. 2d 1218, 1228-30 (N.D. Ill. 1998) (inspection ordinance held unconstitutional because it did not contain limitations regarding scope of permissible searches). City has historically stopped sales of property until homeowners make cosmetic repairs such as replacing soap dishes and painting. Nothing in the Ordinance restrains City's powers in any way.

Third, the Ordinance contains unreasonably long deadlines which, even if everything works perfectly, allow City to delay or prevent sales for more than 50 days. During such delay, sales will be lost and property values diminished.

These aspects of the Ordinance, collectively and individually, show that the Plaintiffs have some likelihood of success on their claim that the Ordinance unreasonably and unconstitutionally interferes with the right to freely transfer property. In vacating the December 8 Injunction in the Prior Litigation on "prudential" standing grounds, the Seventh Circuit correctly noted:

> The challenged ordinance is quite likely to delay the sale of homes in the area serviced by the real estate brokers whose association has brought this suit, to reduce sales prices, and thus to reduce the brokers' commissions . . .
>
> The initial victims of an ordinance impeding the sale of homes are homeowners who would like to sell – or perhaps all homeowners subject to the ordinance; for as we said, any impairment of the salability ('alienability' in an older legal vocabulary) is one of the rights that, along with such other rights as the right to the exclusive enjoyment of the property, make a fee-simple interest more valuable than other interest in property, such as that of a licensee.

8

*Mainstreet Org. of Realtors*, 505 F.3d at 745.

In addition to the Seventh Circuit's statements that the Ordinance impairs sales, the Illinois Attorney General has ruled that, although cities are permitted to adopt ordinances to protect public health and safety, they may not use such ordinances to restrict the free transfer of property.  Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq*.) (West 1992) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property.  *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code*.") (emphasis added) (Ex. K).  But the Ordinance does exactly what the Illinois Attorney General has said municipalities may not do.  *Huggins v. Isenbarger*, 798 F.2d 203, 208-10 (7th Cir. 1986) ("a federal court is not authorized on that account to give the Attorney General's views lesser weight than they would receive if they appeared in a bound volume of legal opinions").

The Illinois Supreme Court has also made clear that municipalities may not use ordinances to interfere with the free alienability of property.  *Petropoulos v. Chicago*, 5 Ill. 2d 270, 274-75, 125 N.E.2d 522, 525 (Ill. 1955) ("To place a legal restriction on the use of such property to the extent the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property").  The Court should follow this authority and find that the Ordinance unconstitutionally interferes with the free alienability of property.

### 2.    Lack of Procedural Due Process

The right to sell property is, by itself, a property right protected by the Constitution.  *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 142 (1978); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53-54 (1993) ("right of sale" is one of

9

many protected property rights associated with the ownership of real property). Basic due process jurisprudence dictates that, *before* a property right – such as the right to sell property – can be taken, the State must provide due process, including the right to be heard. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11 (1978) ("[S]ome kind of hearing is required at some time *before* a person is finally deprived of his property rights") (internal cite omitted) (emphasis added); *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("Due process requires 'the opportunity to be heard at a meaningful time and in a meaningful manner'").

The Supreme Court has repeatedly applied this fundamental due process rule – that a hearing is required *before* a property right can be taken away – when the "taking" adversely affects the fundamental right to freely sell residential property. For example, *Connecticut v. Doehr*, 501 U.S. 1 (1991) held unconstitutional a statute that permitted prejudgment attachment of real estate without a hearing. The Supreme Court emphasized the significance of an owner's right to freely sell his home without governmental interference:

> [T]he property interests that attachment affects are significant. For a property owner . . . attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property . . . . *Id.* at 11.

The Supreme Court also held that the taking of the right to sell property – even if only temporary – requires pre-deprivation due process protection:

> But the Court has never held that only such extreme deprivations trigger due process concern. To the contrary, our cases show that even the temporary or partial impairment to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection. *Id.* at 12 (citation omitted).

Similarly, the Court stated:

> The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause. *Id.* at 15 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972)).

10

The Supreme Court held that a *post-deprivation* hearing is not sufficient to comply with due process because a post-deprivation hearing "would not cure the temporary deprivation that an earlier hearing might have prevented." *Id.* at 15.

Similarly, in *James Daniel Good*, the Supreme Court held that, as respects the deprivation of real property such as a home, the requirement for a predeprivation hearing is critically important because, without a hearing, property owners are deprived of "valuable rights of ownership, including the right of sale." 510 U.S. at 53-54. In *James Daniel Good*, the Court held that a hearing was required before a home could be seized pursuant to 21 U.S.C. §881(a)(7) on the ground that the home was used to facilitate a federal drug offense. Relevant to this case, the Supreme Court observed at pp. 53-54:

> [A property owner's] right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance. … The seizure deprived [the property owner] of valuable rights of ownership, including the right of sale ... All that the seizure left him was the right to bring a claim for the return of title at some unscheduled future hearing. ... The seizure of a home produces a far greater deprivation than the loss of furniture, or even attachment. It gives the Government not only the right to prohibit sale, but also the right to ... modify the property, to condition occupancy ... and to supersede the owner in all rights pertaining to the use, possession, and enjoyment of the property.

*See also Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85, 96 (1977) (emphasizing the value of the right to sell real property when the Court prohibited a township from banning "for sale" signs, based, in part, on the effect of the ban on "one of the most important decisions [residents] have a right to make: where to live and raise their families").

The Ordinance fails to comply with the Supreme Court's edict that, at a minimum, a hearing must be provided *before* a property right can be taken. As respects point of sale inspections, the Ordinance results in the immediate deprivation of a homeowner's right to sell her property until City decides to permit it. Upon issuance of an inspector's repair order, the

11

homeowner is prohibited from selling his property until repairs are made. The Ordinance

provides the homeowner no due process *prior to* this deprivation of the right to sell his property.

In effect, City has enjoined the transfer of residential property -- without a complaint, evidence, a

hearing or any procedural or substantive rules -- until it decides to consent.

Ironically, City provides a "predeprivation hearing" when an owner disputes the

amount owed on a water bill (probably less than $100), but provides no such hearing when City

orders the deconversion of, or refuses to issue a Certificate of Compliance to allow the sale of,

property worth hundreds of thousands of dollars. (Ex. A at §14-1-(i) ("predeprivation hearing"

consistent with *Memphis Light, Gas & Water* is required regarding any dispute over water bill)).

Even as respects the water bill, however, the Ordinance fails. Although an owner can dispute the

water bill in a "pre-deprivation hearing," the Ordinance does not provide any detail regarding the

due process protections of such hearing and requires the owner to pay the disputed bill "under

protest" while she challenges the bill if she wants to obtain a transfer stamp. *Id.*

As respects deconversions, the Ordinance does not provide pre-deprivation due

process protection to ensure that City does not wrongfully deprive property owners of the

"valuable property right" to sell legal nonconforming property. *Village of Oak Park v. Gordon*,

32 Ill. 2d 295, 298, 205 N.E.2d 464, 466 (Ill. 1965). For example, the Ordinance does not

explain how City will determine whether property is "illegal." (Ex. A). Further, property

owners are not granted a pre-deprivation hearing where they can be represented by counsel, rebut

City's positions or submit evidence to show that the property is not an illegal conversion. Once

City declares property to be illegally converted, it cannot be sold without deconversion.

12

As the Supreme Court has held, it does not matter that the Ordinance provides some *post-deprivation* due process, such as the right to appeal a repair order, because the Constitution requires *pre-deprivation* due process. *Connecticut v. Doehr*, 501 U.S. at 15.

Because the Ordinance fails to provide pre-deprivation due process, the Plaintiffs have at least some chance of success on the merits of their claim of unconstitutionality.

### 3.  Void for Vagueness

An ordinance is unconstitutional if its prohibitions are not clearly defined. *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). An ordinance lacking defined standards violates the due process clause. *Brockert v. Skornicka*, 711 F.2d 1376, 1381-82 (7th Cir. 1983). To survive a due process challenge, an ordinance must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited" and contain "explicit standards" that preclude "arbitrary and discriminatory enforcement." *Grayned*, 408 U.S. at 108-9.

The Ordinance fails this test because it requires that property be in "good repair" but fails to explain what conditions fail to constitute "good repair." Pursuant to the Ordinance, an inspector has unfettered discretion to order repairs unrelated to health or safety issues because the Ordinance contains no standards to prevent arbitrary enforcement. City has historically relied on the "good repair" provisions to require property owners to make minor, cosmetic repairs (such as repairing soap dishes) before allowing property to be sold. Because the Ordinance lacks restrictions and definitions, it is unconstitutionally vague. *See Penny Saver Publications, Inc. v. Village of Hazel Crest*, 905 F.2d 150 (7th Cir. 1990) (finding ordinance impermissibly vague based on failure to clearly define regulated conduct).

13

**B.    Without Injunctive Relief, the Plaintiffs Will Be Denied Their Constitutional Rights -- An Irreparable Harm for Which There is No Adequate Remedy**

As a matter of law, the deprivation of a constitutional right is an "irreparable injury" for which there is no adequate remedy at law. *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976); *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, No. 98 C 1932, 1998 U.S. Dist. LEXIS 7287 at *19 (May 8, 1998) ("irreparable harm is presumed to flow from a constitutional violation which is not fully compensable by monetary damages").  (Ex. L).

**C.    The Irreparable Harm That Will Be Suffered Absent the Requested Relief Outweighs the Irreparable Harm that City May Suffer if Relief is Granted**

The wrongful denial of an injunction will result in irreparable harm:  the deprivation of the Plaintiffs' Constitutional right to freely sell their property without unreasonable restraint by City without due process.  In contrast, City will not be harmed by the injunction.  Even with an injunction, City may enforce its Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance.  Those ordinances allow City to eliminate code violations that relate to public health and safety, without encroaching on the right to sell property.  (*See* Ex. H at § 2-952 (property owner fined for code violation, not deprived of his Constitutional right to sell his property)).  As City recently conceded, City does not need to enforce the Ordinance to address health and safety issues.  (Ex. J).

Beginning upon entry of Judge Shadur's Injunction on August 8, 2006, and lasting until the recent dismissal of the related litigation, City has not enforced the Ordinance (either because enforcement has been enjoined or by voluntary agreement).  Since August 8, 2006 there have been at least 611 sales of property that have closed in City.  (Ex. D, Joseph Declaration at ¶ 3).  City has presented no evidence showing that lack of enforcement of the Ordinance has adversely affected the health, safety or welfare of City citizens and property owners since August 8, 2006.

14

151741.1

**D.     The Public Interest Will Be Served If The Injunction is Granted**

The public interest is best served by protecting the Plaintiffs and other City citizens from City's constitutional violations.  It is in the public interest not to allow City to interfere with the right to sell property unless owners comply with its demands, no matter how unreasonable, and without any due process protection.  The public is better served by letting the market dictate how, what and when repairs should be made and by whom.  Buyers and sellers should be free to negotiate such issues without City precluding sales unless its demands are met.  As of July 9, 2008, there were approximately 560 active listings of property in City.  (Ex. D, Joseph Declaration at ¶ 3).  Each owner of such property will have his or her Constitutional rights violated if the Ordinance is not enjoined.  All owners of nonconforming property are at risk that City will declare their property illegal, without due process.  Plainly, the public interest is in ensuring that citizens are afforded due process before their right to sell property is taken.

Finally, the public would not be harmed because, even if the Ordinance is enjoined, as City recently conceded, City may use the Code Enforcement Ordinance and the Rental Dwelling Inspection Ordinance to address legitimate health and safety issues.

## CONCLUSION

The Court should enjoin City's enforcement of the Ordinance.

July 11, 2008

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois  60606
(312) 704-7700

Respectfully submitted,

**NICK SALINSKE (for himself and all others similarly situated)**

By:      _____/s/ Patrick T. Nash_____
             One of their Attorneys

15

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 11th day of July, 2008, I electronically filed

**PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR**

**PRELIMINARY INJUNCTION, MEMORANDUM IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY**

**INJUNCTION,** and **NOTICE OF MOTION** with the Clerk of the Court using the CM/ECF

system which will send notification of said filing to:

Mark H. Sterk
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, Illinois  60805

John B. Murphey
Rosenthal, Murphey & Coblentz
30 North LaSalle Street
Suite 1624
Chicago, IL  60602

/s/  Patrick T. Nash

# EXHIBIT A

2008-Feb-15 12:11 PM    13125416191    1/11
ROSENTHAL MURPHYCOBLENT Fax:13125419191         Feb 15 2008 11:51am  P003/011

THE CITY OF CALUMET CITY
COOK COUNTY, ILLINOIS

ORDINANCE
NUMBER 08-06

AN ORDINANCE AMENDING CHAPTERS 14 AND 82
OF THE MUNICIPAL CODE OF CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND
REAL ESTATE TRANSFER TAX

MICHELLE MARKIEWICZ-QUALKINBUSH, Mayor
Gloria L. Dooley, City Clerk

EDWARD GONZALEZ
THADDEUS JONES
BRIAN WILSON
GERALD A. TARKA
NIKOLAOS MANOUSOPOULOS
CYNTHIA M. PALLICK
LENI WOSCZYNSKI
Aldermen

Published in pamphlet form by authority of the Mayor and City Council of the City of Calumet City on 1-31-08
ODELSON & STERK, LTD., City Attorney, 3318 West 95th Street · Evergreen Park, Illinois 60805

ORDINANCE NO. 08 - 06

AN ORDINANCE AMENDING CHAPTERS 14 and 82 OF THE MUNICIPAL CODE OF
CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND REAL ESTATE TRANSFER TAX

WHEREAS, the City of Calumet City has reviewed the provisions of its Municipal Code governing Point of Sale Inspections; and

WHEREAS, it is the intention of the City of Calumet City to continue to provide for periodic inspections of dwellings upon the transfer of interest or ownership thereof; and

WHEREAS, the City of Calumet City believes it is in the best interests of the health, safety and welfare to make the following amendments to its Ordinance regarding Point of Sale Inspections.

NOW, THEREFORE, be it ordained by the Mayor and City Council of the City of Calumet City, Cook County, Illinois, in the exercise of Calumet City's home rule powers as follows:

Section 1:     Chapter 14, Article I, Section 14-1 of the Municipal Code of the City of Calumet City is hereby amended by deleting the text thereof and substituting the following text in its place:

Sec. 14-1. *Point of Sale Inspection Requirement; Certificate of Compliance Procedures*

(a) *Department Created; Definition; General Requirement.*

1. A Department of Inspectional Services is hereby created pursuant to this section. The Department of Inspectional Services ("Department") shall be headed by a Director of Inspectional Services ("Director," which shall also include the Director's designees) who shall be appointed by the Mayor with the advice and consent of the City Council. All inspectional services concerning point of sale matters within the City, including building and housing, shall be under the jurisdiction of the Department. The building commissioner, electrical inspector, plumbing inspector, housing director and all Department inspectors and staff shall be responsible for reporting to the Director relative to all matters relating to this section and the Director shall have full authority to direct, train and provide appropriate personnel subject to City Council approval as to expenditures and/or requirements as provided herein.

2.    For the purpose of this section the term "Point of Sale Inspection" means an inspection of real property by the Department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this Section.

3.    A Point of Sale Inspection shall be required relative to any transfer of any interest in property which is subject to this Section, except as exempted herein.

(b)    *Notice of Transfer of Real Property Required.*    Whenever an owner of real property in the City proposes to engage in a transfer of real property in the City, which is subject to taxation under Chapter 82, Article X of the Calumet City Municipal Code (Real Estate Transfer Tax) such owner shall provide the Department a Notice of Transfer for said property, on a form therefore provided by the Department.

(c)    Compliance *Inspection; Pertinent Code Requirements.* The Notice of Transfer form shall also constitute the Director's request to inspect such property ("Compliance Inspection") to determine whether such property is in compliance with the following specific requirements, which the corporate authorities of the City find are related to the public health, safety and welfare:

(1)    *Compliance with Property Maintenance Code.* All structures shall be in compliance with Article X, Sections 14-691 and 14-692 of this, Chapter 14, "Property Maintenance Code."

(2)    *Inspection to Determine Possible Illegal Conversions.* All structures shall be inspected to determine whether they have been illegally converted. For purposes of this subsection, "illegally converted" means that the property was converted to another or additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance.

(d)    *Proposed Compliance Inspection.* When the owner files the Notice of Transfer, the Department will schedule a proposed Compliance Inspection to be conducted within 28 calendar days of the Notice. The Notice of Transfer Form shall includes the following:

(1)    Date and time of the proposed Compliance Inspection;

(2)    A statement that the owner or occupant has the right to withhold consent to the Compliance Inspection and require the City to obtain a warrant to conduct the inspection;

(3)    For occupied rental dwellings, the City must also request and obtain the consent of the tenant prior to conducting any inspection; and

(4)    A space for the owner and/or to indicate that the owner and/or tenant either consent to the Compliance Inspection, or refuse consent.

ord #08-6

(e)    *Refusal to Consent; Warrant Procedures*. If the owner or occupant does not consent to the proposed inspection, the Director may appear before any judge in the Circuit Court of Cook County and seek an administrative search warrant to allow an inspection. Any such application shall be made within 10 calendar days after the owner's nonconsent. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this Section, and whether there have been any illegal conversions. The Court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)    eyewitness account of violation;
(2)    citizen complaints;
(3)    tenant complaints;
(4)    plain view violations;
(5)    violations apparent from City records;
(6)    property deterioration;
(7)    age of property;
(8)    nature of alleged violation;
(9)    condition of similar properties in the area;
(10)   documented violations on similar properties in the area;
(11)   passage of time since last inspection;
(12)   previous violations on the property.

(f)    *Uninspected Property; Transfer Stamps*.    In the event the owner or occupant refuses to consent to an inspection, and the Director does not seek a warrant (or if Court refuses an application for the warrant), the Department shall notify the City Clerk that "Uninspected Property" transfer stamps may issue. In connection with the issuance of transfer stamps, the City Clerk shall advise the purchaser of such property that it is "Uninspected Property".

(g)    *Inspection Procedures; Appeal*.

(1)    In the event consent is given or a warrant issues, the Department shall conduct the Compliance Inspection as provided in subsection (c) and (d). Within 3 business days after the Compliance Inspection the Department shall issue a written notice of violations and repairs, if any, necessary to bring the property into compliance with this Section. In the event the inspection reveals a structure which has been illegally converted, the Department shall issue a "Notice of Deconversion" specifying the measures which must be taken in order to bring the illegally converted structure into compliance with applicable zoning regulations.

4                                              Ord. #08-6

2008-Feb-15 12:11 PM    1312541919?    7/11
ROSENTHALMURPHYCOBLENT Fax:13125419191         Feb 15 2008 11:53am  P007/011

(2)    In the event the owner disputes the determination of violations and repairs, the owner may file a request for administrative review on a form provided by the City. An independent administrative hearing officer appointed by the City shall convene an administrative hearing within five (5) business days from the date of appeal. Upon completion of the administrative hearing, the hearing officer will issue a final determination of violation and repairs.

(3)    In the event an owner disagrees with an administrative issuance of a notice of deconversion, said owner may appeal to the Zoning Board of Appeals in accordance with Section 12-5 of the City's Zoning Ordinance.

(h)    *Follow-Up Repairs; Reinspection.*    A party issued a notice of repairs as provided for in subsection (g) shall proceed to make such repairs. Upon completion of said repairs and notice thereof to the Department, the Department will conduct a reinspection within 3 business days thereafter. Upon completion of the follow-up repairs, and the completion of any deconversion measures required by the Department, the Department shall issue a Certificate of Compliance.

(i)    *Payment of Current Water Bills; Predeprivation Hearing.* The seller must pay the current water bill (as defined in Section 82-327(b) of the Municipal Code) and other fees owed by the seller to Calumet City prior to the issuance of transfer stamps. In the event the owner disputes any such obligation (or any portion thereof), the Office of City Clerk shall promptly provide the owner with a predeprivation due process hearing consistent with the principles enunciated in *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978). The City Clerk's office shall provide the hearing with 3 business days of a request. If the owner disputes the City's determination as to liability, the owner may pay said bill under protest, and may pursue any remedies available to said seller to recover the claimed overcharge.

(j)    *Conditional Certificate of Compliance Procedures.*    An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

(1)    The owner or agent has deposited with the City an amount of money determined by the Director or his designee to be sufficient to bring the structure into compliance with all City building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

(2)    The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter "buyer") has entered into an agreement with the City whereby the buyer agrees to bring the structure into compliance within the time period determined by the Director or his designee, to bring the structure into compliance with all applicable Code requirements within a period not to exceed

5

Ord. 108-6

one hundred eighty (180) calendar days after the closing of the transaction ("closing").

(3) If the buyer enters into such an agreement, a Conditional Certificate of Compliance will issue in order to allow the closing to be completed. The Conditional Certificate of Compliance shall be issued by the Department and shall terminate on the one hundred eighty first day after closing and no extensions shall be granted. A buyer who elects to accept the premises subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the Director, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty (180) days of the closing. The City shall issue a Certificate of Compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance.

(4) In the event the buyer fails to complete the required repairs, and have the repairs verified on reinspection, the Director is hereby authorized to pursue enforcement proceedings through the Calumet City administrative adjudication process, or, at his discretion, through the Circuit Court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Calumet City Administrative Adjudication Process and the Circuit Court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the City to expeditiously obtain an order of compliance with this section.

(5) If reasonable proof that the repairs have been completed is not received by the Director or his designee within the required period for the repairs to be completed, the City may also issue a citation for violation of this Chapter and/or the escrow repair agreement and may also pursue any applicable administrative or judicial remedies to bring the structure and property into compliance with applicable codes and regulations.

(6) The fine for violations of this Chapter shall be not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000.00) per day for each day the violations remain uncorrected.

(k) *Licensed and Bonded Contractors.* All contractors performing repairs identified in the point of sale inspection, or issuing certifications shall be licensed by the City and bonded and

6

Ord. #08-6

shall make available, upon request, copies of their license(s), verification of their liability insurance, errors and omissions insurance policies, and surety bond.

(l)   *Validity of Certificate of Compliance*    A Certificate of Compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

(m)   *No Warranty*  In issuing a certificate of compliance or a conditional certificate of compliance, the City and its agents do not make any warranty, representation or statement nor does it intend to insure or guarantee to either buyer or seller of the property subject to the point of sale inspection or any of their designees, agents, representatives, heirs or assigns or any other interested party, including mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point of sale inspection, nor does the City affirm that there are no additional unnoted violations relative to any other provisions of any of the Municipal Code of the City of Calumet City, or relevant statutes, ordinances, rules and regulations of the County of Cook, the State of Illinois or the United States of America.

(o)   *Inspection Fee Schedule*

   (1)   The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) for all single family residential inspections. The failure of an owner/seller or his designee to appear at the time of inspection shall result in a fifty dollars ($50.00) penalty.
   (2)   The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) plus twenty-five additional dollars ($25.00) for each residential unit in excess of one unit.
   (3)   A fee of twenty cents ($0.20) per square foot shall be charged for each commercial/industrial unit inspected with a minimum fee of two hundred dollars ($200.00) per commercial/industrial unit.
   (4)   Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) per unit shall be assessed.
   (5)   If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) per unit shall be assessed.

**Section 2:**   Section 82-327(b) of the Calumet City Municipal Code is hereby amended to provide as follows:

7

Ord. #08-6

2008-Feb-15 12:11 PM    13125419191    10/11
ROSENTHALMURPHYCOBLENT Fax: 13125419191         Feb 15 2008 11:55am P010/011

(b) The City Clerk shall issue no stamps for the transfer of any dwelling structure, commercial or industrial building unless the grantor/seller (i) presents a "Certificate of Compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or (ii) presents an "Uninspected Property" notice to the City Clerk pursuant to Section 14-1(t) of the City Code. The City Clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in Section 14-1(t) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the Section 14-1(t) procedural rights.

**Section 3:** If any section, paragraph, clause or provision of this ordinance shall be held invalid, the invalidity thereof shall not effect any of the other provisions of this ordinance.

**Section 4:** All ordinances in conflict herewith are hereby repealed to the extent of such conflict.

**Section 5:** This ordinance shall be in full force and effect from and after its passage, approval and publication as provided by law.

8

Ord. #08-6

2008-Feb-15 12:11 PM     13125419191     11/11
ROSENTHAL MURPHYCOBLENT Fax:13125419191     Feb 15 2008 11:55am P011/011

ADOPTED this 31st day of February, 2008, pursuant to a roll call vote as follows:

| | YES | NO | ABSENT | PRESENT |
|---|---|---|---|---|
| González | | x | | |
| Jones | x | | | |
| Pallick | x | | | |
| Manousopoulos | x | | | |
| Tarka | x | | | |
| Wilson | | | | |
| Wosczynski | x | | | |
| Qualkinbush (Mayor) | | | | |
| TOTAL | 7 | | | |

APPROVED by the Mayor on January 31, 2008

Michelle Markiewicz Qualkinbush
MAYOR

ATTEST

Gloria Dooley
CITY CLERK.

C:\Documents _ and _ Settings\deputy _clerk\Local _Settings\Temporary_Internet_Files\Content.IE5\LKVZ194B\amending _chap 14 _&_82 1[1]31.08.wpd

2

Ord. #08-6

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, | ) ) ) | |
| *Plaintiff,* | ) | Case No. 06 C 2271 |
| v. | ) ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) | |
| *Defendant.* | ) ) ) | |

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter coming to be heard on Plaintiff's motion for a preliminary injunction, due

notice having been given, and the Court being fully advised in the premises, for the reasons set

forth on the record at the hearing of this matter on August 2, 2006, and at prior hearings, and

based on the written submissions of the parties, the Court finds that, as to Plaintiff's claims that

the Deconversion Provisions and the Point of Sale Inspection Ordinance (as defined below) are

facially unconstitutional: (i) Plaintiff has associational standing, (ii) Plaintiff has established a

high likelihood of success on the merits, (iii) there is no adequate remedy at law and Plaintiff and

its Members will suffer irreparable harm if injunctive relief is not granted, (iv) the irreparable

harm the Plaintiff and its Members will suffer if injunctive relief is wrongfully denied will

outweigh any irreparable harm the Defendant will suffer if injunctive relief is wrongfully

granted, and (v) granting injunctive relief will not disserve the public interest in terms of the

consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Calumet City, Illinois, including its agents, employees, officers, successors and

members (collectively, the "City"), is prohibited and enjoined from enforcing (i) Section 14-1 of

Chapter 14, Article I of the Calumet City Code (the "Point of Sale Inspection Ordinance"),

including but not limited to those provisions of the Point of Sale Inspection Ordinance that

require sellers of legal nonconforming property to "deconvert" them into structures with fewer

income-producing rental units (the "Deconversion Provisions"), and (ii) Section 327(b) of

Chapter 82, Article X of the Calumet City Code. This Order shall not prohibit the City from

attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b) of

Chapter 82, Article X of the Calumet City Code.

2.    The City is prohibited and enjoined from (i) conducting inspections pursuant to

the Point of Sale Inspection Ordinance; (ii) prohibiting the sale of property and refusing to issue

transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of

compliance" or "conditional certificate of compliance;" and (iii) ordering the deconversion of

legal nonconforming property. The City shall allow the sale or transfer of property without

requiring point of sale inspections or deconversions of legal nonconforming property.

3.    This order shall remain in effect until the trial on the merits, unless modified by

this Court.

4.    Because no costs or damages will be incurred or suffered by the City if the

requested injunction is issued, the Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c),

no security need be given by the Plaintiff.

Dated:    August 8, 2006          ENTERED:

                                          Judge Milton I. Shadur

-2-

86409v4

# EXHIBIT C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND,<br>*Plaintiff,*<br><br>v.<br><br>CALUMET CITY, ILLINOIS,<br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06 C 2271<br><br>Judge Milton I. Shadur |

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter has come on to be heard on the motion of plaintiff ("Association") for a preliminary injunction, with due notice having been given and this Court being fully advised in the premises. For the reasons set forth on the record at the hearing of this matter on August 2, 2006 and at other hearings, and based on the written submissions of the parties, this Court finds that as to Association's claims that the Deconversion Provisions and the Amended Point of Sale Inspection Ordinance (as defined below) are facially unconstitutional:

1. Association has established associational standing.

2. Association has established a high likelihood of success on the merits.

3. There is no adequate remedy at law, and Association and its Members will suffer irreparable harm if injunctive relief is not granted.

4. Such irreparable harm that Association and its Members will suffer if injunctive relief is wrongfully denied substantially outweighs any irreparable harm that defendant Calumet City ("City") will suffer if injunctive relief is wrongfully granted.

5. Granting injunctive relief will not disserve the public interest – indeed, will serve the public interest – in terms of the consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     City and its agents, employees, officers, successors and members (collectively included within "City," though treated for convenience as a singular noun in this Order), is prohibited and enjoined from enforcing (a) Section 14-1 of Chapter 14, Article I of the Calumet City Code, as amended by Ordinance No. 06-68 (the "Amended Point of Sale Inspection Ordinance"), including but not limited to any provisions of the Amended Point of Sale Inspection Ordinance that require sellers of legal nonconforming property to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions"), and (b) Section 327(b) of Chapter 82, Article X of the Calumet City Code ("Section 327(b)"). This Order shall not prohibit City from attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b).

2.     City is prohibited and enjoined from (a) conducting inspections pursuant to the Amended Point of Sale Inspection Ordinance; (b) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" and (c) ordering the deconversion of legal nonconforming property. City shall allow the sale or transfer of property without requiring point of sale inspections or deconversions of legal nonconforming property.

3.     This order shall remain in effect until the trial on the merits, unless modified by this Court.

4.     Because no costs or damages will be incurred or suffered by City if the requested injunction is issued, this Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by Association.

2

5.     This Court's August 8, 2006 Order Granting Preliminary Injunction as to an earlier version of the now-Amended Point of Sale Ordinance is now moot, and the injunction granted thereby is dissolved.

Dated:     December 8, 2006          ENTERED:

_Milton I. Shadur_

Judge Milton I. Shadur

3

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|   |   |   |
|---|---|---|
| NICK SALINSKE, for himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 08-cv-03017 |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Judge Wayne R. Anderson |
| | ) | Magistrate Judge Morton Denlow |
| CALUMET CITY, ILLINOIS, | ) ) | |
| | ) ) | |
| *Defendant.* | ) | |

## DECLARATION OF THOMAS JOSEPH
## IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

I, THOMAS JOSEPH, declare as follows:

1.     The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.     I act as Government Affairs Director for the Mainstreet Organization of Realtors® ("Association") for the South and Southwest Suburban Cook and Will counties.

3.     Since August 8, 2006 there have been at least 611 sales of property that have closed in Calumet City, Illinois ("City"). As of July 9, 2008, there were 564 active listings of property in City. Data supporting these facts is available through the Multiple Listing Service.

490921.2

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 10th, 2008

_____
Thomas Joseph

# EXHIBIT E

# ARTICLE X. REAL ESTATE TRANSFER TAX*

---

**State law references:** Authority, 65 ILCS 5/8-11-6a(4).

---

## Sec. 82-321. Definitions.

For the purpose of this article, whenever any of the following words, terms or definitions are used herein, they shall have the meanings ascribed to them in this section:

*Beneficial interest in real property* includes, but is not limited to (1) the beneficial interest in an Illinois land trust; (2) the lessee interest in a ground lease (including any interest of the lessee in the related improvements) that provides for a term of thirty (30) or more years when all options to renew or extend are included, whether or not any portion of the term has expired; or (3) the indirect interest in real property as reflected by a controlling interest in a real estate entity.

*Controlling interest* means:

(1) Fifty (50) percent or more of the combined voting power or fair market value of all ownership interests or beneficial interests in a real estate entity, whether the interests are owned by one (1) or by several persons; or

(2) The right of one (1) or of several persons to receive at the time of any distribution fifty (50) percent or more of the income or profits of a real estate entity.

*Person* means any individual, receiver, administrator, executor, conservator, assignee, trust, estate, partnership, joint venture, club, joint stock company, business trust, political subdivision of the state, corporation, association, limited liability company, syndicate, society, or any group of persons acting as a unit, whether mutual, cooperative, fraternal, nonprofit or otherwise.

*Real estate entity* means any person (other than a state land trust) including, but not limited to, any partnership, corporation, trust, or single or multi-tiered entity, that exists or acts substantially for the purpose of holding directly or indirectly title to or beneficial interest in real property located in the city, whether for personal use, the production of rental income, or investment. It shall be presumed, unless proved otherwise, that an entity is a real estate entity if it owns directly or indirectly real property located in the city having a fair market value greater than seventy-five (75) percent of the total fair market value of all of the entity's assets, determined without deduction for any mortgage, lien or encumbrance.

*Recordation* means the recording of deeds with the office of the recorder of deeds or the registration of deeds with the Registrar of Titles of Cook County, Illinois.

*Transfer price* means the consideration furnished for the transfer of title to, or beneficial interest in, real property, valued in money, whether paid in money or otherwise, including cash, credits and property, determined without any deduction for mortgages, liens or encumbrances, and specifically including the amount of any indebtedness or obligation cancelled or discharged in connection with the transfer. In the case where the controlling interest in a real estate entity is transferred, and the real estate entity holds assets in addition to title to or beneficial interest in real property located in the city, "transfer price" means only that portion of the consideration attributable to the transfer of such real property or such beneficial interest.

(Code 1980, § 26-70; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 98-21, § 1, 4-30-1998)

## Sec. 82-322. Imposed.

(a) Except as otherwise provided in this article, a tax is imposed upon the privilege of transferring title to, or beneficial interest in, real property located within the corporate limits of the city. The tax shall be imposed at the

ARTICLE X. REAL ESTATE TRANSFER TAX*                                                    Page 2 of 5

following rates:

    (1) Eight dollars ($8.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property up to, and including, two million dollars ($2,000,000.00)

    (2) Ten dollars ($10.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property between two million dollars and one cent ($2,000,000.01) and five million dollars ($5,000,000.00).

    (3) Twelve dollars ($12.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property between five million dollars and one cent ($5,000,000.01) and ten million dollars ($10,000,000.00).

    (4) Fourteen dollars ($14.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property between ten million dollars and one cent ($10,000,000.01) and twenty million dollars ($20,000,000.00).

    (5) Sixteen dollars ($16.00) per one thousand dollars ($1,000.00) of the transfer price, or fraction thereof, of the real property or the beneficial interest in real property over twenty million dollars ($20,000,000.00).

    (b) (1) The tax imposed by this chapter is due upon the earlier of the delivery or recording of the deed, assignment or other instrument of transfer.

        (2) In the case of an assignment of a beneficial interest in a trust, delivery shall be deemed to occur when the trustee receives possession of a valid assignment of the beneficial interest. In the case of other transfers, delivery shall be deemed to occur when the transferee, or the transferee's representative or agent, receives or becomes entitled to receive possession of the instrument of transfer.

(c) The tax imposed by this article shall be due whether the transfer of a controlling interest in a real estate entity is effected by one (1) transaction or by a series of related transactions. For purposes of this subsection, it shall be presumed, unless provided otherwise, that transactions are related if they occur within the same twenty-four (24) month period.

(d) Nothing in this article shall be construed to impose a tax upon any transaction or privilege which, under the circumstances of the United States or the State of Illinois, may not be made the subject of taxation by the city.

(Code 1980, § 26-71; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 93-35, § 1, 10-28-1993; Ord. No. 95-32, § 1, 7-27-1995; Ord. No. 98-21, § 2, 4-30-1998)


**Sec. 82-323. Exceptions.**

(a) The tax imposed by this article shall not apply to the following transactions:

    (1) Transactions involving property acquired by or from any governmental body or by any corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or educational purposes; provided that only the governmental body or corporation, society, association, foundation or institution organized and operated exclusively for charitable, religious or education purposes shall be exempt from the tax imposed by this article;

    (2) Transactions which secure debt or other obligations;

    (3) Transactions in which deeds, without additional consideration, confirm, correct, modify or supplement deeds previously recorded;

    (4) Transactions in which the actual consideration is less than one hundred dollars ($100.00);

    (5) Transactions in which the deeds are tax deeds;

    (6) Transactions which are releases of property which is security for a debt or other obligation;

    (7) Transactions of partitions;

ARTICLE X. REAL ESTATE TRANSFER TAX*                                        Page 3 of 5

(8)  Transactions made pursuant to mergers, consolidations or transfers or sales of substantially all of the assets of a corporation pursuant to plans of reorganization;

(9)  Transactions between subsidiary corporations and their parents for no consideration other than the cancellation or surrender of the subsidiary corporation's stock;

(10)  Transactions wherein there is an actual exchange of real property except that the money difference or money's worth paid from one to the other shall not be exempt from the tax;

(11)  Transactions representing transfers subject to the imposition of a documentary stamp imposed by the government of the United States.

(12)  Transactions by full-time employees of the City of Calumet City who sell their residence within the city limits and purchase residential property within the city limits for the purpose of relocating their legal residence. .

(13)  Transactions in which the deed or other instrument of transfer is issued to the mortgagee or secured creditor pursuant to a mortgage or security interest foreclosure proceeding or sale or pursuant to a transfer in lieu of foreclosure.

(b)  Every deed or other instrument which is tax exempt pursuant to this section shall be presented to the city clerk so as to be appropriately marked by said city clerk as an exempt deed or instrument eligible for recordation without the payment of tax. At such time as a deed or instrument is presented to the city clerk a certificate setting forth the facts which justify exemption shall be presented.

(c)  No other fees shall apply to any transactions in this section, except that a service fee of fifty dollars ($50.00) shall be assessed on all transactions in which deeds, without additional consideration, confirm, correct, modify, or supplement deeds previously recorded.

(Code 1980, § 26-75; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 82-3, § 1, 2-11-1982; Ord. No. 95-21, § 1, 5-25-1995; Ord. No. 95-32, § 3, 7-27-1995; Ord. No. 98-21, § 3, 4-30-1998; Ord. No. 05-09, § 1, 2-10-2005; Ord. No. 05-51, § 1, 7-28-2005)


**Sec. 82-324. Liability for tax.**

The ultimate incidence of and liability for payment of the tax imposed by this section shall be borne as follows:

(1)  One-half ( 1/2) the tax shall be borne by the grantor of any deed subject to this article or by the grantor, assignor or transferor of any instrument conveying the beneficial interest in real estate within the corporate limits of the city.

(2)  One-half ( 1/2) the tax shall be borne by the grantee of any deed subject to this article or by the grantee, assignee or transferee of any instrument conveying the beneficial interest in real estate within the corporate limits of the city.

(Code 1980, § 26-72; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 95-32, § 1, 7-27-1995)


**Sec. 82-325. Purchase of stamps.**

The tax levied by this article shall be paid by the purchase of tax stamps from the city clerk or a designated agent. The payment of such tax shall be denoted by the adhesive stamp or stamps affixed to the fact of the deed or instrument transferring the beneficial interest.

(Code 1980, § 26-73; Ord. No. 80-17, § 1, 7-24-1980)


**Sec. 82-326. Filing of declaration.**

At such time as the tax levied by this article is paid there shall be filed with the city clerk a fully executed and completed copy of the "real estate transfer declaration" required by Section 3 of the real estate transfer tax of the state, or a declaration of the full consideration paid for the transfer of beneficial interest which declaration shall be on a

ARTICLE X. REAL ESTATE TRANSFER TAX*                                                          Page 4 of 5

form provided by the city clerk. Such declaration shall be deemed as a confidential record.

(Code 1980, § 26-74; Ord. No. 80-17, § 1, 7-24-1980)

**Sec. 82-327. Real estate transfer tax stamps required.**

(a)  The tax herein levied and imposed shall be collected by the city clerk through the sale of real estate transfer tax stamps, which shall be caused to be prepared by said clerk in such quantities as said clerk may from time to time prescribe. Such stamps shall be available for sale at, and during the regular business hours of the city offices and the offices of such agent as the city may designate. For the purpose of reviewing a request for the stamps, the city shall process a request within forty-eight (48)hours of working time. Upon payment of the tax herein levied and imposed, the stamps so purchased shall be affixed to the deed or other instrument of conveyance. Any person so using or affixing a stamp shall cancel it and so deface it as to render it unfit for reuse by marking it with his initials and the day, month and year when the affixing occurs. Such markings shall be made by writing or stamping in indelible ink or by perforating with a machine or punch; however, the stamp shall not be so defaced as toprevent ready determination of its genuineness.

(b)  The city clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller (i) presents a "certificate of compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or (ii) presents an "uninspected property" notice to the city clerk pursuant to subsection 14-1(f) of the City Code. The city clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in subsection 14-1(i) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the subsection 14-1(i) procedural rights.

(c)  The city clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the city is presented with an original survey for the property being transferred. When the property being transferred is improved with any building, the survey shall not be dated more than one year prior to the date of the transfer.

(Code 1980, § 26-76; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 96-29, § 1, 5-9-1996; Ord. No. 05-09, § 2, 2-10-2005; Ord. No. 06-68, § 2, 8-24-2006)

**Sec. 82-328. Recordation of deeds.**

No deed conveying real property within the corporate limits of the city shall be entitled to recordation by the recorder of deeds or the registrar of titles of the county, unless such deed shall bear either a city real estate transfer tax stamp or an exemption mark from the city clerk.

(Code 1980, § 26-77; Ord. No. 80-17, § 1, 7-24-1980; Ord. No. 82-3, § 2, 2-11-1982; Ord. No. 95-21, § 2, 5-25-1995)

**Sec. 82-329. Duty of trustee.**

No trustee of real estate shall accept an assignment of beneficial interest in real estate located in the city unless such instrument shall bear either a city real estate transfer tax stamp or an exemption mark from the city clerk.

(Code 1980, § 26-78; Ord. No. 80-17, § 1, 7-24-1980)

**Sec. 82-330. Proceeds of tax.**

ARTICLE X. REAL ESTATE TRANSFER TAX*                                                    Page 5 of 5

All proceeds resulting from the collection of the tax imposed by this article, including interest and penalties, shall be paid into the treasury of the city and shall be credited to and deposited in the general fund of the city.

`ode 1980, § 26-79; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-331. Interest and penalties.

In the event of failure by any person to pay to the city clerk the tax required hereunder when the same shall be due, interest shall accumulate and be due upon said tax at the rate of one (1) percent per month commencing as of the first day following the day when the deed was recorded or the assignment of beneficial interest was accepted by the trustee. In addition, a penalty of fifty (50) percent of the tax and interest shall be assessed and collected against any person who shall fail to pay the tax imposed by this article.

(Code 1980, § 26-80; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-332. Civil liability for tax.

In the event of failure by any person to pay to the city clerk tax required hereunder when the same shall be due, said person shall be liable to the city for such tax, together with interest and penalties. The city may bring an action to collect such tax, interest and penalties in any court of competent jurisdiction.

(Code 1980, § 26-81; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-333. Fine for violation.

In addition to the remaining provisions of this article, any person found guilty in a court of competent jurisdiction ` violating, disobeying, omitting, neglecting or refusing to comply with any provision of this article, upon conviction :eof, shall be punished by a fine of not more than five hundred dollars ($500.00) for each offense.

(Code 1980, § 26-82; Ord. No. 80-17, § 1, 7-24-1980)

### Sec. 82-334. Severability.

If any clause, sentence, section, provision or part of this article or the application thereof to any person or circumstance shall be adjudged to be unconstitutional, the remainder of this article or its application to persons or circumstances other than those to which it is held invalid shall not be affected thereby.

(Code 1980, § 26-83; Ord. No. 95-32, § 4, 7-27-1995)

Secs. 82-335—82-370. Reserved.

# EXHIBIT F



2006 International Property Maintenance Code®

First Printing: January 2006
Second Printing: November 2006

ISBN-13: 978-1-58001-263-8 (soft)
ISBN-10: 1-58001-263-9 (soft)
ISBN-13: 978-158001-311-6 (e-document)
ISBN-10: 1-58001-311-2 (e-document)

COPYRIGHT © 2006
by
INTERNATIONAL CODE COUNCIL, INC.

ALL RIGHTS RESERVED. This 2006 *International Property Maintenance Code®* is a copyrighted work owned by the International Code Council, Inc. Without advance written permission from the copyright owner, no part of this book may be reproduced, distributed or transmitted in any form or by any means, including, without limitation, electronic, optical or mechanical means (by way of example and not limitation, photocopying, or recording by or in an information storage retrieval system). For information on permission to copy material exceeding fair use, please contact: Publications, 4051 West Flossmoor Road, Country Club Hills, IL 60478-5795. Phone 1-888-ICC-SAFE (422-7233).

Trademarks: "International Code Council," the "International Code Council" logo and the "International Property Maintenance Code" are trademarks of the International Code Council, Inc.

PRINTED IN THE U.S.A.

# PREFACE

## Introduction

Internationally, code officials recognize the need for a modern, up-to-date property maintenance code governing the maintenance of existing buildings. The *International Property Maintenance Code*, in this 2006 edition, is designed to meet this need through model code regulations that contain clear and specific property maintenance requirements with required property improvement provisions.

This 2006 edition is fully compatible with all *International Codes* (I-Codes) published by the International Code Council (ICC), including the *International Building Code*, ICC *Electrical Code—Administrative Provisions*, *International Energy Conservation Code*, *International Existing Building Code*, *International Fire Code*, *International Fuel Gas Code*, *International Mechanical Code*, ICC *Performance Code*, *International Plumbing Code*, *International Private Sewage Disposal Code*, *International Residential Code*, *International Wildland-Urban Interface Code* and *International Zoning Code*.

The *International Property Maintenance Code* provisions provide many benefits, among which is the model code development process that offers an international forum for code officials and other interested parties to discuss performance and prescriptive code requirements. This forum provides an excellent arena to debate proposed revisions. This model code also encourages international consistency in the application of provisions.

## Development

The first edition of the *International Property Maintenance Code* (1998) was the culmination of an effort initiated in 1996 by a code development committee appointed by ICC and consisting of representatives of the three statutory members of the International Code Council at that time, including Building Officials and Code Administrators International, Inc. (BOCA), International Conference of Building Officials (ICBO) and Southern Building Code Congress International (SBCCI). The committee drafted a comprehensive set of regulations for existing buildings that was consistent with the existing model property maintenance codes at the time. This 2006 edition presents the code as originally issued, with changes reflected through the previous 2003 editions and further changes developed through the ICC Code Development Process through 2005. A new edition of the code is promulgated every three years.

This code is founded on principles intended to establish provisions consistent with the scope of a property maintenance code that adequately protects public health, safety and welfare; provisions that do not unnecessarily increase construction costs; provisions that do not restrict the use of new materials, products or methods of construction; and provisions that do not give preferential treatment to particular types or classes of materials, products or methods of construction.

## Adoption

The *International Property Maintenance Code* is available for adoption and use by jurisdictions internationally. Its use within a governmental jurisdiction is intended to be accomplished through adoption by reference in accordance with proceedings establishing the jurisdiction's laws. At the time of adoption, jurisdictions should insert the appropriate information in provisions requiring specific local information, such as the name of the adopting jurisdiction. These locations are shown in bracketed words in small capital letters in the code and in the sample ordinance. The sample adoption ordinance on page v addresses several key elements of a code adoption ordinance, including the information required for insertion into the code text.

## Maintenance

The *International Property Maintenance Code* is kept up to date through the review of proposed changes submitted by code enforcing officials, industry representatives, design professionals and other interested parties. Proposed changes are carefully considered through an open code development process in which all interested and affected parties may participate.

The contents of this work are subject to change both through the Code Development Cycles and the governmental body that enacts the code into law. For more information regarding the code development process, contact the Codes and Standards Development Department of the International Code Council.

While the development procedure of the *International Property Maintenance Code* ensures the highest degree of care, ICC, its membership and those participating in the development of this code do not accept any liability resulting from compliance or noncompliance with the provisions because ICC does not have the power or authority to police or enforce compliance with the contents of this code. Only the governmental body that enacts the code into law has such authority.

### Letter Designations in Front of Section Numbers

In each code development cycle, proposed changes to this code are considered at the Code Development Hearings by the ICC Property Maintenance/Zoning Code Development Committee, whose action constitutes a recommendation to the voting membership for final action on the proposed changes. Proposed changes to a code section having a number beginning with a letter in brackets are considered by a different code development committee. For example, proposed changes to code sections that have the letter [F] in front of them (e.g., [F] 704.1) are considered by the International Fire Code Development Committee at the Code Development Hearings.

The content of sections in this code that begin with a letter designation are maintained by another code development committee in accordance with the following:

[F] = International Fire Code Development Committee;

[P] = International Plumbing Code Development Committee;

[F] = International Fire Code Development Committee; and

[B] = International Building Code Development Committee.

### Marginal Markings

Solid vertical lines in the margins within the body of the code indicating a technical change from the requirements of the previous edition. Deletion indicators in the form of an arrow ( ➡ ) are provided in the margin where an entire section, paragraph, exception or table has been deleted or an item in a list of items or a table has been deleted.

# ORDINANCE

The *International Codes* are designed and promulgated to be adopted by reference by ordinance. Jurisdictions wishing to adopt the 2006 *International Property Maintenance Code* as an enforceable regulation governing existing structures and premises should ensure that certain factual information is included in the adopting ordinance at the time adoption is being considered by the appropriate governmental body. The following sample adoption ordinance addresses several key elements of a code adoption ordinance, including the information required for insertion into the code text.

## SAMPLE ORDINANCE FOR ADOPTION OF
## THE *INTERNATIONAL PROPERTY MAINTENANCE CODE*
### ORDINANCE NO._____

An ordinance of the [JURISDICTION] adopting the 2006 edition of the *International Property Maintenance Code*, regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures in the [JURISDICTION]; providing for the issuance of permits and collection of fees therefor; repealing Ordinance No._____ of the [JURISDICTION] and all other ordinances and parts of the ordinances in conflict therewith.

The [GOVERNING BODY] of the [JURISDICTION] does ordain as follows:

**Section 1.** That a certain document, three (3) copies of which are on file in the office of the [TITLE OF JURISDICTION'S KEEPER OF RECORDS] of [NAME OF JURISDICTION], being marked and designated as the *International Property Maintenance Code*, 2006 edition, as published by the International Code Council, be and is hereby adopted as the Property Maintenance Code of the [JURISDICTION], in the State of [STATE NAME] for regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures as herein provided; providing for the issuance of permits and collection of fees therefor; and each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code on file in the office of the [JURISDICTION] are hereby referred to, adopted, and made a part hereof, as if fully set out in this ordinance, with the additions, insertions, deletions and changes, if any, prescribed in Section 2 of this ordinance.

**Section 2.** The following sections are hereby revised:

Section 101.1. Insert: [NAME OF JURISDICTION]

Section 103.5. Insert: [APPROPRIATE SCHEDULE]

Section 302.4. Insert: [HEIGHT IN INCHES]

Section 304.14. Insert: [DATES IN TWO LOCATIONS]

Section 602.3. Insert: [DATES IN TWO LOCATIONS]

Section 602.4. Insert: [DATES IN TWO LOCATIONS]

**Section 3.** That Ordinance No._____ of [JURISDICTION] entitled [FILL IN HERE THE COMPLETE TITLE OF THE ORDINANCE OR ORDINANCES IN EFFECT AT THE PRESENT TIME SO THAT THEY WILL BE REPEALED BY DEFINITE MENTION] and all other ordinances or parts of ordinances in conflict herewith are hereby repealed.

**Section 4.** That if any section, subsection, sentence, clause or phrase of this ordinance is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this ordinance. The [GOVERNING BODY] hereby declares that it would have passed this ordinance, and each section, subsection, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses and phrases be declared unconstitutional.

**Section 5.** That nothing in this ordinance or in the Property Maintenance Code hereby adopted shall be construed to affect any suit or proceeding impending in any court, or any rights acquired, or liability incurred, or any cause or causes of action acquired or exist-

ing, under any act or ordinance hereby repealed as cited in Section 3 of this ordinance; nor shall any just or legal right or remedy of any character be lost, impaired or affected by this ordinance.

**Section 6.** That the [JURISDICTION'S KEEPER OF RECORDS] is hereby ordered and directed to cause this ordinance to be published. (An additional provision may be required to direct the number of times the ordinance is to be published and to specify that it is to be in a newspaper in general circulation. Posting may also be required.)

**Section 7.** That this ordinance and the rules, regulations, provisions, requirements, orders and matters established and adopted hereby shall take effect and be in full force and effect [TIME PERIOD] from and after the date of its final passage and adoption.

# TABLE OF CONTENTS

**CHAPTER 1   ADMINISTRATION** ............... 1
Section
101    General .................................. 1
102    Applicability ........................... 1
103    Department of Property Maintenance
          Inspection .......................... 1
104    Duties and Powers of the Code Official ......... 2
105    Approval ................................ 2
106    Violations .............................. 2
107    Notices and Orders ...................... 3
108    Unsafe Structures and Equipment .......... 3
109    Emergency Measures ...................... 4
110    Demolition .............................. 4
111    Means of Appeal ......................... 5

**CHAPTER 2   DEFINITIONS** .................... 7
Section
201    General ................................. 7
202    General Definitions ..................... 7

**CHAPTER 3   GENERAL REQUIREMENTS** ....... 9
Section
301    General ................................. 9
302    Exterior Property Areas ................. 9
303    Swimming Pools, Spas and Hot Tubs ....... 9
304    Exterior Structure ..................... 10
305    Interior Structure ..................... 11
306    Handrails and Guardrails ............... 11
307    Rubbish and Garbage .................... 11
308    Extermination .......................... 11

**CHAPTER 4   LIGHT, VENTILATION AND
          OCCUPANCY LIMITATIONS** ....... 13
Section
401    General ................................ 13
402    Light .................................. 13
403    Ventilation ............................ 13
404    Occupancy Limitations .................. 13

**CHAPTER 5   PLUMBING FACILITIES AND
          FIXTURE REQUIREMENTS** ....... 15
Section
501    General ................................ 15
502    Required Facilities .................... 15

503    Toilet Rooms ........................... 15
504    Plumbing Systems and Fixtures .......... 15
505    Water System ........................... 15
506    Sanitary Drainage System ............... 16
507    Storm Drainage ......................... 16

**CHAPTER 6   MECHANICAL AND ELECTRICAL
          REQUIREMENTS** ............... 17
Section
601    General ................................ 17
602    Heating Facilities ..................... 17
603    Mechanical Equipment ................... 17
604    Electrical Facilities .................. 17
605    Electrical Equipment ................... 18
606    Elevators, Escalators and Dumbwaiters ........ 18
607    Duct Systems ........................... 18

**CHAPTER 7   FIRE SAFETY
          REQUIREMENTS** ............... 19
Section
701    General ................................ 19
702    Means of Egress ........................ 19
703    Fire-Resistance Ratings ................ 19
704    Fire Protection Systems ................ 19

**CHAPTER 8   REFERENCED STANDARDS** ....... 21

**INDEX** ....................................... 23

Case 1:08-cv-00555    Document 40-3    Filed 05/21/2008    Page 9 of 38

# CHAPTER 1

# ADMINISTRATION

## SECTION 101
## GENERAL

**101.1 Title.** These regulations shall be known as the *Property Maintenance Code* of [NAME OF JURISDICTION], hereinafter referred to as "this code."

**101.2 Scope.** The provisions of this code shall apply to all existing residential and nonresidential structures and all existing premises and constitute minimum requirements and standards for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, life safety, safety from fire and other hazards, and for safe and sanitary maintenance; the responsibility of owners, operators and occupants; the occupancy of existing structures and premises, and for administration, enforcement and penalties.

**101.3 Intent.** This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.

**101.4 Severability.** If a section, subsection, sentence, clause or phrase of this code is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this code.

## SECTION 102
## APPLICABILITY

**102.1 General.** The provisions of this code shall apply to all matters affecting or relating to structures and premises, as set forth in Section 101. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern.

**102.2 Maintenance.** Equipment, systems, devices and safeguards required by this code or a previous regulation or code under which the structure or premises was constructed, altered or repaired shall be maintained in good working order. No owner, operator or occupant shall cause any service, facility, equipment or utility which is required under this section to be removed from or shut off from or discontinued for any occupied dwelling, except for such temporary interruption as necessary while repairs or alterations are in progress. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures. Except as otherwise specified herein, the owner or the owner's designated agent shall be responsible for the maintenance of buildings, structures and premises.

**102.3 Application of other codes.** Repairs, additions or alterations to a structure, or changes of occupancy, shall be done in accordance with the procedures and provisions of the *International Building Code, International Fuel Gas Code, International Mechanical Code* and the *ICC Electrical Code.* Nothing in this code shall be construed to cancel, modify or set aside any provision of the *International Zoning Code.*

**102.4 Existing remedies.** The provisions in this code shall not be construed to abolish or impair existing remedies of the jurisdiction or its officers or agencies relating to the removal or demolition of any structure which is dangerous, unsafe and insanitary.

**102.5 Workmanship.** Repairs, maintenance work, alterations or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner and installed in accordance with the manufacturer's installation instructions.

**102.6 Historic buildings.** The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings when such buildings or structures are judged by the code official to be safe and in the public interest of health, safety and welfare.

**102.7 Referenced codes and standards.** The codes and standards referenced in this code shall be those that are listed in Chapter 8 and considered part of the requirements of this code to the prescribed extent of each such reference. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply.

**102.8 Requirements not covered by code.** Requirements necessary for the strength, stability or proper operation of an existing fixture, structure or equipment, or for the public safety, health and general welfare, not specifically covered by this code, shall be determined by the code official.

## SECTION 103
## DEPARTMENT OF PROPERTY
## MAINTENANCE INSPECTION

**103.1 General.** The department of property maintenance inspection is hereby created and the executive official in charge thereof shall be known as the code official.

**103.2 Appointment.** The code official shall be appointed by the chief appointing authority of the jurisdiction; and the code official shall not be removed from office except for cause and after full opportunity to be heard on specific and relevant charges by and before the appointing authority.

**103.3 Deputies.** In accordance with the prescribed procedures of this jurisdiction and with the concurrence of the appointing authority, the code official shall have the authority to appoint a deputy code official, other related technical officers, inspectors and other employees.

1

ADMINISTRATION

**103.4 Liability.** The code official, officer or employee charged with the enforcement of this code, while acting for the jurisdiction. shall not thereby be rendered liable personally, and is hereby relieved from all personal liability for any damage accruing to persons or property as a result of an act required or permitted in the discharge of official duties.

Any suit instituted against any officer or employee because of an act performed by that officer or employee in the lawful discharge of duties and under the provisions of this code shall be defended by the legal representative of the jurisdiction until the final termination of the proceedings. The code official or any subordinate shall not be liable for costs in an action, suit or proceeding that is instituted in pursuance of the provisions of this code; and any officer of the department of property maintenance inspection, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of official duties in connection therewith.

**103.5 Fees.** The fees for activities and services performed by the department in carrying out its responsibilities under this code shall be as indicated in the following schedule.

[JURISDICTION TO INSERT APPROPRIATE SCHEDULE.]

## SECTION 104
## DUTIES AND POWERS OF THE CODE OFFICIAL

**104.1 General.** The code official shall enforce the provisions of this code.

**104.2 Rule-making authority.** The code official shall have authority as necessary in the interest of public health, safety and general welfare, to adopt and promulgate rules and procedures; to interpret and implement the provisions of this code; to secure the intent thereof; and to designate requirements applicable because of local climatic or other conditions. Such rules shall not have the effect of waiving structural or fire performance requirements specifically provided for in this code, or of violating accepted engineering methods involving public safety.

**104.3 Inspections.** The code official shall make all of the required inspections, or shall accept reports of inspection by approved agencies or individuals. All reports of such inspections shall be in writing and be certified by a responsible officer of such approved agency or by the responsible individual. The code official is authorized to engage such expert opinion as deemed necessary to report upon unusual technical issues that arise, subject to the approval of the appointing authority.

**104.4 Right of entry.** The code official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures. If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law.

**104.5 Identification.** The code official shall carry proper identification when inspecting structures or premises in the performance of duties under this code.

**104.6 Notices and orders.** The code official shall issue all necessary notices or orders to ensure compliance with this code.

**104.7 Department records.** The code official shall keep official records of all business and activities of the department specified in the provisions of this code. Such records shall be retained in the official records as long as the building or structure to which such records relate remains in existence, unless otherwise provided for by other regulations.

## SECTION 105
## APPROVAL

**105.1 Modifications.** Whenever there are practical difficulties involved in carrying out the provisions of this code, the code official shall have the authority to grant modifications for individual cases, provided the code official shall first find that special individual reason makes the strict letter of this code impractical and the modification is in compliance with the intent and purpose of this code and that such modification does not lessen health, life and fire safety requirements. The details of action granting modifications shall be recorded and entered in the department files.

**105.2 Alternative materials, methods and equipment.** The provisions of this code are not intended to prevent the installation of any material or to prohibit any method of construction not specifically prescribed by this code, provided that any such alternative has been approved. An alternative material or method of construction shall be approved where the code official finds that the proposed design is satisfactory and complies with the intent of the provisions of this code, and that the material, method or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability and safety.

**105.3 Required testing.** Whenever there is insufficient evidence of compliance with the provisions of this code, or evidence that a material or method does not conform to the requirements of this code, in order to substantiate claims for alternative materials or methods, the code official shall have the authority to require tests to be made as evidence of compliance at no expense to the jurisdiction.

**105.3.1 Test methods.** Test methods shall be as specified in this code or by other recognized test methods. In the absence of recognized and accepted test methods, the code official shall be permitted to approve appropriate testing procedures performed by an approved agency.

**105.3.2 Test reports.** Reports of tests shall be retained by the code official for the period required for retention of public records.

**105.4 Material and equipment reuse.** Materials, equipment and devices shall not be reused unless such elements are in good repair or have been reconditioned and tested when necessary, placed in good and proper working condition and approved.

## SECTION 106
## VIOLATIONS

**106.1 Unlawful acts.** It shall be unlawful for a person, firm or corporation to be in conflict with or in violation of any of the provisions of this code.

2

ADMINISTRATION

**106.2 Notice of violation.** The code official shall serve a notice of violation or order in accordance with Section 107.

**106.3 Prosecution of violation.** Any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a strict liability offense. If the notice of violation is not complied with, the code official shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the structure in violation of the provisions of this code or of the order or direction made pursuant thereto. Any action taken by the authority having jurisdiction on such premises shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

**106.4 Violation penalties.** Any person who shall violate a provision of this code, or fail to comply therewith, or with any of the requirements thereof, shall be prosecuted within the limits provided by state or local laws. Each day that a violation continues after due notice has been served shall be deemed a separate offense.

**106.5 Abatement of violation.** The imposition of the penalties herein prescribed shall not preclude the legal officer of the jurisdiction from instituting appropriate action to restrain, correct or abate a violation, or to prevent illegal occupancy of a building, structure or premises, or to stop an illegal act, conduct, business or utilization of the building, structure or premises.

### SECTION 107
### NOTICES AND ORDERS

**107.1 Notice to person responsible.** Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given in the manner prescribed in Sections 107.2 and 107.3 to the person responsible for the violation as specified in this code. Notices for condemnation procedures shall also comply with Section 108.3.

**107.2 Form.** Such notice prescribed in Section 107.1 shall be in accordance with all of the following:

1. Be in writing.

2. Include a description of the real estate sufficient for identification.

3. Include a statement of the violation or violations and why the notice is being issued.

4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.

5. Inform the property owner of the right to appeal.

6. Include a statement of the right to file a lien in accordance with Section 106.3.

**107.3 Method of service.** Such notice shall be deemed to be properly served if a copy thereof is:

1. Delivered personally;

2. Sent by certified or first-class mail addressed to the last known address; or

3. If the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice.

**107.4 Penalties.** Penalties for noncompliance with orders and notices shall be as set forth in Section 106.4.

**107.5 Transfer of ownership.** It shall be unlawful for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served to sell, transfer, mortgage, lease or otherwise dispose of such dwelling unit or structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner shall first furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the code official and shall furnish to the code official a signed and notarized statement from the grantee, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.

### SECTION 108
### UNSAFE STRUCTURES AND EQUIPMENT

**108.1 General.** When a structure or equipment is found by the code official to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful, such structure shall be condemned pursuant to the provisions of this code.

**108.1.1 Unsafe structures.** An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

**108.1.2 Unsafe equipment.** Unsafe equipment includes any boiler, heating equipment, elevator, moving stairway, electrical wiring or device, flammable liquid containers or other equipment on the premises or within the structure which is in such disrepair or condition that such equipment is a hazard to life, health, property or safety of the public or occupants of the premises or structure.

**108.1.3 Structure unfit for human occupancy.** A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination,

ADMINISTRATION

sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

**108.1.4 Unlawful structure.** An unlawful structure is one found in whole or in part to be occupied by more persons than permitted under this code, or was erected, altered or occupied contrary to law.

**108.2 Closing of vacant structures.** If the structure is vacant and unfit for human habitation and occupancy, and is not in danger of structural collapse, the code official is authorized to post a placard of condemnation on the premises and order the structure closed up so as not to be an attractive nuisance. Upon failure of the owner to close up the premises within the time specified in the order, the code official shall cause the premises to be closed and secured through any available public agency or by contract or arrangement by private persons and the cost thereof shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate and may be collected by any other legal resource.

**108.3 Notice.** Whenever the code official has condemned a structure or equipment under the provisions of this section, notice shall be posted in a conspicuous place in or about the structure affected by such notice and served on the owner or the person or persons responsible for the structure or equipment in accordance with Section 107.3. If the notice pertains to equipment, it shall also be placed on the condemned equipment. The notice shall be in the form prescribed in Section 107.2.

**108.4 Placarding.** Upon failure of the owner or person responsible to comply with the notice provisions within the time given, the code official shall post on the premises or on defective equipment a placard bearing the word "Condemned" and a statement of the penalties provided for occupying the premises, operating the equipment or removing the placard.

**108.4.1 Placard removal.** The code official shall remove the condemnation placard whenever the defect or defects upon which the condemnation and placarding action were based have been eliminated. Any person who defaces or removes a condemnation placard without the approval of the code official shall be subject to the penalties provided by this code.

**108.5 Prohibited occupancy.** Any occupied structure condemned and placarded by the code official shall be vacated as ordered by the code official. Any person who shall occupy a placarded premises or shall operate placarded equipment, and any owner or any person responsible for the premises who shall let anyone occupy a placarded premises or operate placarded equipment shall be liable for the penalties provided by this code.

**SECTION 109**
**EMERGENCY MEASURES**

**109.1 Imminent danger.** When, in the opinion of the code official, there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential dan-

ger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment, the code official is hereby authorized and empowered to order and require the occupants to vacate the premises forthwith. The code official shall cause to be posted at each entrance to such structure a notice reading as follows: "This Structure Is Unsafe and Its Occupancy Has Been Prohibited by the Code Official." It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition or of demolishing the same.

**109.2 Temporary safeguards.** Notwithstanding other provisions of this code, whenever, in the opinion of the code official, there is imminent danger due to an unsafe condition, the code official shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted; and shall cause such other action to be taken as the code official deems necessary to meet such emergency.

**109.3 Closing streets.** When necessary for public safety, the code official shall temporarily close structures and close, or order the authority having jurisdiction to close, sidewalks, streets, public ways and places adjacent to unsafe structures, and prohibit the same from being utilized.

**109.4 Emergency repairs.** For the purposes of this section, the code official shall employ the necessary labor and materials to perform the required work as expeditiously as possible.

**109.5 Costs of emergency repairs.** Costs incurred in the performance of emergency work shall be paid by the jurisdiction. The legal counsel of the jurisdiction shall institute appropriate action against the owner of the premises where the unsafe structure is or was located for the recovery of such costs.

**109.6 Hearing.** Any person ordered to take emergency measures shall comply with such order forthwith. Any affected person shall thereafter, upon petition directed to the appeals board, be afforded a hearing as described in this code.

**SECTION 110**
**DEMOLITION**

**110.1 General.** The code official shall order the owner of any premises upon which is located any structure, which in the code official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure; or if such structure is capable of being made safe by repairs, to repair and make safe and sanitary or to demolish and remove at the owner's option; or where there has been a cessation of normal construction of any structure for a period of more than two years, to demolish and remove such structure.

**110.2 Notices and orders.** All notices and orders shall comply with Section 107.

**110.3 Failure to comply.** If the owner of a premises fails to comply with a demolition order within the time prescribed, the

. 4

code official shall cause the structure to be demolished and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

**110.4 Salvage materials.** When any structure has been ordered demolished and removed, the governing body or other designated officer under said contract or arrangement aforesaid shall have the right to sell the salvage and valuable materials at the highest price obtainable. The net proceeds of such sale, after deducting the expenses of such demolition and removal, shall be promptly remitted with a report of such sale or transaction, including the items of expense and the amounts deducted, for the person who is entitled thereto, subject to any order of a court. If such a surplus does not remain to be turned over, the report shall so state.

## SECTION 111
## MEANS OF APPEAL

**111.1 Application for appeal.** Any person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

**111.2 Membership of board.** The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The code official shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms.

**111.2.1 Alternate members.** The chief appointing authority shall appoint two or more alternate members who shall be called by the board chairman to hear appeals during the absence or disqualification of a member. Alternate members shall possess the qualifications required for board membership.

**111.2.2 Chairman.** The board shall annually select one of its members to serve as chairman.

**111.2.3 Disqualification of member.** A member shall not hear an appeal in which that member has a personal, professional or financial interest.

**111.2.4 Secretary.** The chief administrative officer shall designate a qualified person to serve as secretary to the board. The secretary shall file a detailed record of all proceedings in the office of the chief administrative officer.

**111.2.5 Compensation of members.** Compensation of members shall be determined by law.

**111.3 Notice of meeting.** The board shall meet upon notice from the chairman, within 20 days of the filing of an appeal, or at stated periodic meetings.

**111.4 Open hearing.** All hearings before the board shall be open to the public. The appellant, the appellant's representative, the code official and any person whose interests are affected shall be given an opportunity to be heard. A quorum shall consist of not less than two-thirds of the board membership.

**111.4.1 Procedure.** The board shall adopt and make available to the public through the secretary procedures under which a hearing will be conducted. The procedures shall not require compliance with strict rules of evidence, but shall mandate that only relevant information be received.

**111.5 Postponed hearing.** When the full board is not present to hear an appeal, either the appellant or the appellant's representative shall have the right to request a postponement of the hearing.

**111.6 Board decision.** The board shall modify or reverse the decision of the code official only by a concurring vote of a majority of the total number of appointed board members.

**111.6.1 Records and copies.** The decision of the board shall be recorded. Copies shall be furnished to the appellant and to the code official.

**111.6.2 Administration.** The code official shall take immediate action in accordance with the decision of the board.

**111.7 Court review.** Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law. Application for review shall be made in the manner and time required by law following the filing of the decision in the office of the chief administrative officer.

**111.8 Stays of enforcement.** Appeals of notice and orders (other than Imminent Danger notices) shall stay the enforcement of the notice and order until the appeal is heard by the appeals board.

# CHAPTER 2

# DEFINITIONS

## SECTION 201
## GENERAL

**201.1 Scope.** Unless otherwise expressly stated, the following terms shall, for the purposes of this code, have the meanings shown in this chapter.

**201.2 Interchangeability.** Words stated in the present tense include the future; words stated in the masculine gender include the feminine and neuter; the singular number includes the plural and the plural, the singular.

**201.3 Terms defined in other codes.** Where terms are not defined in this code and are defined in the *International Building Code, International Fire Code, International Zoning Code, International Plumbing Code, International Mechanical Code* or the *ICC Electrical Code*, such terms shall have the meanings ascribed to them as stated in those codes.

**201.4 Terms not defined.** Where terms are not defined through the methods authorized by this section, such terms shall have ordinarily accepted meanings such as the context implies.

**201.5 Parts.** Whenever the words "dwelling unit," "dwelling," "premises," "building," "rooming house," "rooming unit," "housekeeping unit" or "story" are stated in this code, they shall be construed as though they were followed by the words "or any part thereof."

## SECTION 202
## GENERAL DEFINITIONS

**APPROVED.** Approved by the code official.

**BASEMENT.** That portion of a building which is partly or completely below grade.

**BATHROOM.** A room containing plumbing fixtures including a bathtub or shower.

**BEDROOM.** Any room or space used or intended to be used for sleeping purposes in either a dwelling or sleeping unit.

**CODE OFFICIAL.** The official who is charged with the administration and enforcement of this code, or any duly authorized representative.

**CONDEMN.** To adjudge unfit for occupancy.

**[B] DWELLING UNIT.** A single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation.

**EASEMENT.** That portion of land or property reserved for present or future use by a person or agency other than the legal fee owner(s) of the property. The easement shall be permitted to be for use under, on or above a said lot or lots.

**EXTERIOR PROPERTY.** The open space on the premises and on adjoining property under the control of owners or operators of such premises.

**EXTERMINATION.** The control and elimination of insects, rats or other pests by eliminating their harborage places; by removing or making inaccessible materials that serve as their food; by poison spraying, fumigating, trapping or by any other approved pest elimination methods.

**GARBAGE.** The animal or vegetable waste resulting from the handling, preparation, cooking and consumption of food.

**GUARD.** A building component or a system of building components located at or near the open sides of elevated walking surfaces that minimizes the possibility of a fall from the walking surface to a lower level.

**HABITABLE SPACE.** Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet rooms, closets, halls, storage or utility spaces, and similar areas are not considered habitable spaces.

**HOUSEKEEPING UNIT.** A room or group of rooms forming a single habitable space equipped and intended to be used for living, sleeping, cooking and eating which does not contain, within such a unit, a toilet, lavatory and bathtub or shower.

**IMMINENT DANGER.** A condition which could cause serious or life-threatening injury or death at any time.

**INFESTATION.** The presence, within or contiguous to, a structure or premises of insects, rats, vermin or other pests.

**INOPERABLE MOTOR VEHICLE.** A vehicle which cannot be driven upon the public streets for reason including but not limited to being unlicensed, wrecked, abandoned, in a state of disrepair, or incapable of being moved under its own power.

**LABELED.** Devices, equipment, appliances, or materials to which has been affixed a label, seal, symbol or other identifying mark of a nationally recognized testing laboratory, inspection agency or other organization concerned with product evaluation that maintains periodic inspection of the production of the above-labeled items and by whose label the manufacturer attests to compliance with applicable nationally recognized standards.

**LET FOR OCCUPANCY OR LET.** To permit, provide or offer possession or occupancy of a dwelling, dwelling unit, rooming unit, building, premise or structure by a person who is or is not the legal owner of record thereof, pursuant to a written or unwritten lease, agreement or license, or pursuant to a recorded or unrecorded agreement of contract for the sale of land.

**OCCUPANCY.** The purpose for which a building or portion thereof is utilized or occupied.

**OCCUPANT.** Any individual living or sleeping in a building, or having possession of a space within a building.

**OPENABLE AREA.** That part of a window, skylight or door which is available for unobstructed ventilation and which opens directly to the outdoors.

## DEFINITIONS

**OPERATOR.** Any person who has charge, care or control of a structure or premises which is let or offered for occupancy.

**OWNER.** Any person, agent, operator, firm or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property, including the guardian of the estate of any such person, and the executor or administrator of the estate of such person if ordered to take possession of real property by a court.

**PERSON.** An individual, corporation, partnership or any other group acting as a unit.

**PREMISES.** A lot, plot or parcel of land, easement or public way, including any structures thereon.

**PUBLIC WAY.** Any street, alley or similar parcel of land essentially unobstructed from the ground to the sky, which is deeded, dedicated or otherwise permanently appropriated to the public for public use.

**ROOMING HOUSE.** A building arranged or occupied for lodging, with or without meals, for compensation and not occupied as a one- or two-family dwelling.

**ROOMING UNIT.** Any room or group of rooms forming a single habitable unit occupied or intended to be occupied for sleeping or living, but not for cooking purposes.

**RUBBISH.** Combustible and noncombustible waste materials, except garbage; the term shall include the residue from the burning of wood, coal, coke and other combustible materials, paper, rags, cartons, boxes, wood, excelsior, rubber, leather, tree branches, yard trimmings, tin cans, metals; mineral matter, glass, crockery and dust and other similar materials.

**[B] SLEEPING UNIT.** A room or space in which people sleep, which can also include permanent provisions for living, eating and either sanitation or kitchen facilities, but not both. Such rooms and spaces that are also part of a dwelling unit are not sleeping units.

**STRICT LIABILITY OFFENSE.** An offense in which the prosecution in a legal proceeding is not required to prove criminal intent as a part of its case. It is enough to prove that the defendant either did an act which was prohibited, or failed to do an act which the defendant was legally required to do.

**STRUCTURE.** That which is built or constructed or a portion thereof.

**TENANT.** A person, corporation, partnership or group, whether or not the legal owner of record, occupying a building or portion thereof as a unit.

**TOILET ROOM.** A room containing a water closet or urinal but not a bathtub or shower.

**VENTILATION.** The natural or mechanical process of supplying conditioned or unconditioned air to, or removing such air from, any space.

**WORKMANLIKE.** Executed in a skilled manner; e.g., generally plumb, level, square, in line, undamaged and without marring adjacent work.

**YARD.** An open space on the same lot with a structure.

8

# CHAPTER 3

# GENERAL REQUIREMENTS

## SECTION 301
## GENERAL

**301.1 Scope.** The provisions of this chapter shall govern the minimum conditions and the responsibilities of persons for maintenance of structures, equipment and exterior property.

**301.2 Responsibility.** The owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code. A person shall not occupy as owner-occupant or permit another person to occupy premises which are not in a sanitary and safe condition and which do not comply with the requirements of this chapter. Occupants of a dwelling unit, rooming unit or housekeeping unit are responsible for keeping in a clean, sanitary and safe condition that part of the dwelling unit, rooming unit, housekeeping unit or premises which they occupy and control.

**301.3 Vacant structures and land.** All vacant structures and premises thereof or vacant land shall be maintained in a clean, safe, secure and sanitary condition as provided herein so as not to cause a blighting problem or adversely affect the public health or safety.

## SECTION 302
## EXTERIOR PROPERTY AREAS

**302.1 Sanitation.** All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**302.2 Grading and drainage.** All premises shall be graded and maintained to prevent the erosion of soil and to prevent the accumulation of stagnant water thereon, or within any structure located thereon.

**Exception:** Approved retention areas and reservoirs.

**302.3 Sidewalks and driveways.** All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.

**302.4 Weeds.** All premises and exterior property shall be maintained free from weeds or plant growth in excess of (jurisdiction to insert height in inches). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

Upon failure of the owner or agent having charge of a property to cut and destroy weeds after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3 and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.

**302.5 Rodent harborage.** All structures and exterior property shall be kept free from rodent harborage and infestation. Where rodents are found, they shall be promptly exterminated by approved processes which will not be injurious to human health. After extermination, proper precautions shall be taken to eliminate rodent harborage and prevent reinfestation.

**302.6 Exhaust vents.** Pipes, ducts, conductors, fans or blowers shall not discharge gases, steam, vapor, hot air, grease, smoke, odors or other gaseous or particulate wastes directly upon abutting or adjacent public or private property or that of another tenant.

**302.7 Accessory structures.** All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**302.8 Motor vehicles.** Except as provided for in other regulations, no inoperative or unlicensed motor vehicle shall be parked, kept or stored on any premises, and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled. Painting of vehicles is prohibited unless conducted inside an approved spray booth.

**Exception:** A vehicle of any type is permitted to undergo major overhaul, including body work, provided that such work is performed inside a structure or similarly enclosed area designed and approved for such purposes.

**302.9 Defacement of property.** No person shall willfully or wantonly damage, mutilate or deface any exterior surface of any structure or building on any private or public property by placing thereon any marking, carving or graffiti.

It shall be the responsibility of the owner to restore said surface to an approved state of maintenance and repair.

## SECTION 303
## SWIMMING POOLS, SPAS AND HOT TUBS

**303.1 Swimming pools.** Swimming pools shall be maintained in a clean and sanitary condition, and in good repair.

**303.2 Enclosures.** Private swimming pools, hot tubs and spas, containing water more than 24 inches (610 mm) in depth shall be completely surrounded by a fence or barrier at least 48 inches (1219 mm) in height above the finished ground level measured on the side of the barrier away from the pool. Gates and doors in such barriers shall be self-closing and self-latching. Where the self-latching device is less than 54 inches (1372 mm) above the bottom of the gate, the release mechanism shall be located on the pool side of the gate. Self-closing and self-latching gates shall be maintained such that the gate will positively close and latch when released from an open position of 6 inches (152 mm) from the gatepost. No existing pool enclosure

GENERAL REQUIREMENTS

shall be removed, replaced or changed in a manner that reduces its effectiveness as a safety barrier.

Exception: Spas or hot tubs with a safety cover that complies with ASTM F 1346 shall be exempt from the provisions of this section.

## SECTION 304
## EXTERIOR STRUCTURE

**304.1 General.** The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare.

**304.2 Protective treatment.** All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition. Exterior wood surfaces, other than decay-resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints as well as those between the building envelope and the perimeter of windows, doors, and skylights shall be maintained weather resistant and water tight. All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion and all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Oxidation stains shall be removed from exterior surfaces. Surfaces designed for stabilization by oxidation are exempt from this requirement.

**[F] 304.3 Premises identification.** Buildings shall have approved address numbers placed in a position to be plainly legible and visible from the street or road fronting the property. These numbers shall contrast with their background. Address numbers shall be Arabic numerals or alphabet letters. Numbers shall be a minimum of 4 inches (102 mm) high with a minimum stroke width of 0.5 inch (12.7 mm).

**304.4 Structural members.** All structural members shall be maintained free from deterioration, and shall be capable of safely supporting the imposed dead and live loads.

**304.5 Foundation walls.** All foundation walls shall be maintained plumb and free from open cracks and breaks and shall be kept in such condition so as to prevent the entry of rodents and other pests.

**304.6 Exterior walls.** All exterior walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**304.7 Roofs and drainage.** The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

**304.8 Decorative features.** All cornices, belt courses, corbels, terra cotta trim, wall facings and similar decorative features shall be maintained in good repair with proper anchorage and in a safe condition.

**304.9 Overhang extensions.** All overhang extensions including, but not limited to canopies, marquees, signs, metal awnings, fire escapes, standpipes and exhaust ducts shall be maintained in good repair and be properly anchored so as to be kept in a sound condition. When required, all exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment.

**304.10 Stairways, decks, porches and balconies.** Every exterior stairway, deck, porch and balcony, and all appurtenances attached thereto, shall be maintained structurally sound, in good repair, with proper anchorage and capable of supporting the imposed loads.

**304.11 Chimneys and towers.** All chimneys, cooling towers, smoke stacks, and similar appurtenances shall be maintained structurally safe and sound, and in good repair. All exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment.

**304.12 Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

**304.13 Window, skylight and door frames.** Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight.

**304.13.1 Glazing.** All glazing materials shall be maintained free from cracks and holes.

**304.13.2 Openable windows.** Every window, other than a fixed window, shall be easily openable and capable of being held in position by window hardware.

**304.14 Insect screens.** During the period from [DATE] to [DATE], every door, window and other outside opening required for ventilation of habitable rooms, food preparation areas, food service areas or any areas where products to be included or utilized in food for human consumption are processed, manufactured, packaged or stored shall be supplied with approved tightly fitting screens of not less than 16 mesh per inch (16 mesh per 25 mm), and every screen door used for insect control shall have a self-closing device in good working condition.

Exception: Screens shall not be required where other approved means, such as air curtains or insect repellent fans, are employed.

**304.15 Doors.** All exterior doors, door assemblies and hardware shall be maintained in good condition. Locks at all entrances to dwelling units and sleeping units shall tightly secure the door. Locks on means of egress doors shall be in accordance with Section 702.3.

**304.16 Basement hatchways.** Every basement hatchway shall be maintained to prevent the entrance of rodents, rain and surface drainage water.

**304.17 Guards for basement windows.** Every basement window that is openable shall be supplied with rodent shields, storm windows or other approved protection against the entry of rodents.

**304.18 Building security.** Doors, windows or hatchways for dwelling units, room units or housekeeping units shall be provided with devices designed to provide security for the occupants and property within.

**304.18.1 Doors.** Doors providing access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with a deadbolt lock designed to be readily operable from the side from which egress is to be made without the need for keys, special knowledge or effort and shall have a lock throw of not less than 1 inch (25 mm). Such deadbolt locks shall be installed according to the manufacturer's specifications and maintained in good working order. For the purpose of this section, a sliding bolt shall not be considered an acceptable deadbolt lock.

**304.18.2 Windows.** Operable windows located in whole or in part within 6 feet (1828 mm) above ground level or a walking surface below that provide access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with a window sash locking device.

**304.18.3 Basement hatchways.** Basement hatchways that provide access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with devices that secure the units from unauthorized entry.

## SECTION 305
## INTERIOR STRUCTURE

**305.1 General.** The interior of a structure and equipment therein shall be maintained in good repair, structurally sound and in a sanitary condition. Occupants shall keep that part of the structure which they occupy or control in a clean and sanitary condition. Every owner of a structure containing a rooming house, housekeeping units, a hotel, a dormitory, two or more dwelling units or two or more nonresidential occupancies, shall maintain, in a clean and sanitary condition, the shared or public areas of the structure and exterior property.

**305.2 Structural members.** All structural members shall be maintained structurally sound, and be capable of supporting the imposed loads.

**305.3 Interior surfaces.** All interior surfaces, including windows and doors, shall be maintained in good, clean and sanitary condition. Peeling, chipping, flaking or abraded paint shall be repaired, removed or covered. Cracked or loose plaster, decayed wood and other defective surface conditions shall be corrected.

**305.4 Stairs and walking surfaces.** Every stair, ramp, landing, balcony, porch, deck or other walking surface shall be maintained in sound condition and good repair.

**305.5 Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

**305.6 Interior doors.** Every interior door shall fit reasonably well within its frame and shall be capable of being opened and closed by being properly and securely attached to jambs, headers or tracks as intended by the manufacturer of the attachment hardware.

## SECTION 306
## HANDRAILS AND GUARDRAILS

**306.1 General.** Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface which is more than 30 inches (762 mm) above the floor or grade below shall have guards. Handrails shall be not less than 30 inches (762 mm) high or more than 42 inches (1067 mm) high measured vertically above the nosing of the tread or above the finished floor of the landing or walking surfaces. Guards shall not be less than 30 inches (762 mm) high above the floor of the landing, balcony, porch, deck, or ramp or other walking surface.

**Exception:** Guards shall not be required where exempted by the adopted building code.

## SECTION 307
## RUBBISH AND GARBAGE

**307.1 Accumulation of rubbish or garbage.** All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

**307.2 Disposal of rubbish.** Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner by placing such rubbish in approved containers.

**307.2.1 Rubbish storage facilities.** The owner of every occupied premises shall supply approved covered containers for rubbish, and the owner of the premises shall be responsible for the removal of rubbish.

**307.2.2 Refrigerators.** Refrigerators and similar equipment not in operation shall not be discarded, abandoned or stored on premises without first removing the doors.

**307.3 Disposal of garbage.** Every occupant of a structure shall dispose of garbage in a clean and sanitary manner by placing such garbage in an approved garbage disposal facility or approved garbage containers.

**307.3.1 Garbage facilities.** The owner of every dwelling shall supply one of the following: an approved mechanical food waste grinder in each dwelling unit; an approved incinerator unit in the structure available to the occupants in each dwelling unit; or an approved leakproof, covered, outside garbage container.

**307.3.2 Containers.** The operator of every establishment producing garbage shall provide, and at all times cause to be utilized, approved leakproof containers provided with close-fitting covers for the storage of such materials until removed from the premises for disposal.

## SECTION 308
## EXTERMINATION

**308.1 Infestation.** All structures shall be kept free from insect and rodent infestation. All structures in which insects or rodents are found shall be promptly exterminated by approved processes that will not be injurious to human health. After extermination, proper precautions shall be taken to prevent reinfestation.

**GENERAL REQUIREMENTS**

**308.2 Owner.** The owner of any structure shall be responsible for extermination within the structure prior to renting or leasing the structure.

**308.3 Single occupant.** The occupant of a one-family dwelling or of a single-tenant nonresidential structure shall be responsible for extermination on the premises.

**308.4 Multiple occupancy.** The owner of a structure containing two or more dwelling units, a multiple occupancy, a rooming house or a nonresidential structure shall be responsible for extermination in the public or shared areas of the structure and exterior property. If infestation is caused by failure of an occupant to prevent such infestation in the area occupied, the occupant shall be responsible for extermination.

**308.5 Occupant.** The occupant of any structure shall be responsible for the continued rodent and pest-free condition of the structure.

**Exception:** Where the infestations are caused by defects in the structure, the owner shall be responsible for extermination.

## CHAPTER 4

# LIGHT, VENTILATION AND OCCUPANCY LIMITATIONS

## SECTION 401
### GENERAL

**401.1 Scope.** The provisions of this chapter shall govern the minimum conditions and standards for light, ventilation and space for occupying a structure.

**401.2 Responsibility.** The owner of the structure shall provide and maintain light, ventilation and space conditions in compliance with these requirements. A person shall not occupy as owner-occupant, or permit another person to occupy, any premises that do not comply with the requirements of this chapter.

**401.3 Alternative devices.** In lieu of the means for natural light and ventilation herein prescribed, artificial light or mechanical ventilation complying with the *International Building Code* shall be permitted.

## SECTION 402
### LIGHT

**402.1 Habitable spaces.** Every habitable space shall have at least one window of approved size facing directly to the outdoors or to a court. The minimum total glazed area for every habitable space shall be 8 percent of the floor area of such room. Wherever walls or other portions of a structure face a window of any room and such obstructions are located less than 3 feet (914 mm) from the window and extend to a level above that of the ceiling of the room, such window shall not be deemed to face directly to the outdoors nor to a court and shall not be included as contributing to the required minimum total window area for the room.

> **Exception:** Where natural light for rooms or spaces without exterior glazing areas is provided through an adjoining room, the unobstructed opening to the adjoining room shall be at least 8 percent of the floor area of the interior room or space, but not less than 25 square feet (2.33 m²). The exterior glazing area shall be based on the total floor area being served.

**402.2 Common halls and stairways.** Every common hall and stairway in residential occupancies, other than in one- and two-family dwellings, shall be lighted at all times with at least a 60-watt standard incandescent light bulb for each 200 square feet (19 m²) of floor area or equivalent illumination, provided that the spacing between lights shall not be greater than 30 feet (9144 mm). In other than residential occupancies, means of egress, including exterior means of egress, stairways shall be illuminated at all times the building space served by the means of egress is occupied with a minimum of 1 footcandle (11 lux) at floors, landings and treads.

**402.3 Other spaces.** All other spaces shall be provided with natural or artificial light sufficient to permit the maintenance of sanitary conditions, and the safe occupancy of the space and utilization of the appliances, equipment and fixtures.

## SECTION 403
### VENTILATION

**403.1 Habitable spaces.** Every habitable space shall have at least one operable window. The total openable area of the window in every room shall be equal to at least 45 percent of the minimum glazed area required in Section 402.1.

> **Exception:** Where rooms and spaces without openings to the outdoors are ventilated through an adjoining room, the unobstructed opening to the adjoining room shall be at least 8 percent of the floor area of the interior room or space, but not less than 25 square feet (2.33 m²). The ventilation openings to the outdoors shall be based on a total floor area being ventilated.

**403.2 Bathrooms and toilet rooms.** Every bathroom and toilet room shall comply with the ventilation requirements for habitable spaces as required by Section 403.1, except that a window shall not be required in such spaces equipped with a mechanical ventilation system. Air exhausted by a mechanical ventilation system from a bathroom or toilet room shall discharge to the outdoors and shall not be recirculated.

**403.3 Cooking facilities.** Unless approved through the certificate of occupancy, cooking shall not be permitted in any rooming unit or dormitory unit, and a cooking facility or appliance shall not be permitted to be present in the rooming unit or dormitory unit.

> **Exceptions:**
> 1. Where specifically approved in writing by the code official.
> 2. Devices such as coffee pots and microwave ovens shall not be considered cooking appliances.

**403.4 Process ventilation.** Where injurious, toxic, irritating or noxious fumes, gases, dusts or mists are generated, a local exhaust ventilation system shall be provided to remove the contaminating agent at the source. Air shall be exhausted to the exterior and not be recirculated to any space.

**403.5 Clothes dryer exhaust.** Clothes dryer exhaust systems shall be independent of all other systems and shall be exhausted in accordance with the manufacturer's instructions.

## SECTION 404
### OCCUPANCY LIMITATIONS

**404.1 Privacy.** Dwelling units, hotel units, housekeeping units, rooming units and dormitory units shall be arranged to provide privacy and be separate from other adjoining spaces.

**404.2 Minimum room widths.** A habitable room, other than a kitchen, shall not be less than 7 feet (2134 mm) in any plan dimension. Kitchens shall have a clear passageway of not less

LIGHT, VENTILATION AND OCCUPANCY LIMITATIONS

than 3 feet (914 mm) between counterfronts and appliances or counterfronts and walls.

**404.3 Minimum ceiling heights.** Habitable spaces, hallways, corridors, laundry areas, bathrooms, toilet rooms and habitable basement rooms shall have a clear ceiling height of not less than 7 feet (2134 mm).

**Exceptions:**

1. In one- and two-family dwellings, beams or girders spaced not less than 4 feet (1219 mm) on center and projecting not more than 6 inches (152 mm) below the required ceiling height.

2. Basement rooms in one- and two-family dwellings occupied exclusively for laundry, study or recreation purposes, having a ceiling height of not less than 6 feet 8 inches (2033 mm) with not less than 6 feet 4 inches (1932 mm) of clear height under beams, girders, ducts and similar obstructions.

3. Rooms occupied exclusively for sleeping, study or similar purposes and having a sloped ceiling over all or part of the room, with a clear ceiling height of at least 7 feet (2134 mm) over not less than one-third of the required minimum floor area. In calculating the floor area of such rooms, only those portions of the floor area with a clear ceiling height of 5 feet (1524 mm) or more shall be included.

**404.4 Bedroom and living room requirements.** Every bedroom and living room shall comply with the requirements of Sections 404.4.1 through 404.4.5.

**404.4.1 Room area.** Every living room shall contain at least 120 square feet (11.2 m²) and every bedroom shall contain at least 70 square feet (6.5 m²).

**404.4.2 Access from bedrooms.** Bedrooms shall not constitute the only means of access to other bedrooms or habitable spaces and shall not serve as the only means of egress from other habitable spaces.

**Exception:** Units that contain fewer than two bedrooms.

**404.4.3 Water closet accessibility.** Every bedroom shall have access to at least one water closet and one lavatory without passing through another bedroom. Every bedroom in a dwelling unit shall have access to at least one water closet and lavatory located in the same story as the bedroom or an adjacent story.

**404.4.4 Prohibited occupancy.** Kitchens and nonhabitable spaces shall not be used for sleeping purposes.

**404.4.5 Other requirements.** Bedrooms shall comply with the applicable provisions of this code including, but not limited to, the light, ventilation, room area, ceiling height and room width requirements of this chapter; the plumbing facilities and water-heating facilities requirements of Chapter 5; the heating facilities and electrical receptacle requirements of Chapter 6; and the smoke detector and emergency escape requirements of Chapter 7.

**404.5 Overcrowding.** The number of persons occupying a dwelling unit shall not create conditions that, in the opinion of the code official, endanger the life, health, safety or welfare of the occupants.

**404.6 Efficiency unit.** Nothing in this section shall prohibit an efficiency living unit from meeting the following requirements:

1. A unit occupied by not more than two occupants shall have a clear floor area of not less than 220 square feet (20.4 m²). A unit occupied by three occupants shall have a clear floor area of not less than 320 square feet (29.7 m²). These required areas shall be exclusive of the areas required by Items 2 and 3.

2. The unit shall be provided with a kitchen sink, cooking appliance and refrigeration facilities, each having a clear working space of not less than 30 inches (762 mm) in front. Light and ventilation conforming to this code shall be provided.

3. The unit shall be provided with a separate bathroom containing a water closet, lavatory and bathtub or shower.

4. The maximum number of occupants shall be three.

**404.7 Food preparation.** All spaces to be occupied for food preparation purposes shall contain suitable space and equipment to store, prepare and serve foods in a sanitary manner. There shall be adequate facilities and services for the sanitary disposal of food wastes and refuse, including facilities for temporary storage.

14

# CHAPTER 5

## PLUMBING FACILITIES AND FIXTURE REQUIREMENTS

### SECTION 501
### GENERAL

**501.1 Scope.** The provisions of this chapter shall govern the minimum plumbing systems, facilities and plumbing fixtures to be provided.

**501.2 Responsibility.** The owner of the structure shall provide and maintain such plumbing facilities and plumbing fixtures in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any structure or premises which does not comply with the requirements of this chapter.

### [P] SECTION 502
### REQUIRED FACILITIES

**502.1 Dwelling units.** Every dwelling unit shall contain its own bathtub or shower, lavatory, water closet and kitchen sink which shall be maintained in a sanitary, safe working condition. The lavatory shall be placed in the same room as the water closet or located in close proximity to the door leading directly into the room in which such water closet is located. A kitchen sink shall not be used as a substitute for the required lavatory.

**502.2 Rooming houses.** At least one water closet, lavatory and bathtub or shower shall be supplied for each four rooming units.

**502.3 Hotels.** Where private water closets, lavatories and baths are not provided, one water closet, one lavatory and one bathtub or shower having access from a public hallway shall be provided for each ten occupants.

**502.4 Employees' facilities.** A minimum of one water closet, one lavatory and one drinking facility shall be available to employees.

　**502.4.1 Drinking facilities.** Drinking facilities shall be a drinking fountain, water cooler, bottled water cooler or disposable cups next to a sink or water dispenser. Drinking facilities shall not be located in toilet rooms or bathrooms.

### [P] SECTION 503
### TOILET ROOMS

**503.1 Privacy.** Toilet rooms and bathrooms shall provide privacy and shall not constitute the only passageway to a hall or other space, or to the exterior. A door and interior locking device shall be provided for all common or shared bathrooms and toilet rooms in a multiple dwelling.

**503.2 Location.** Toilet rooms and bathrooms serving hotel units, rooming units or dormitory units or housekeeping units, shall have access by traversing not more than one flight of stairs and shall have access from a common hall or passageway.

**503.3 Location of employee toilet facilities.** Toilet facilities shall have access from within the employees' working area. The required toilet facilities shall be located not more than one story above or below the employees' working area and the path of travel to such facilities shall not exceed a distance of 500 feet (152 m). Employee facilities shall either be separate facilities or combined employee and public facilities.

　**Exception:** Facilities that are required for employees in storage structures or kiosks, which are located in adjacent structures under the same ownership, lease or control, shall not exceed a travel distance of 500 feet (152 m) from the employees' regular working area to the facilities.

**503.4 Floor surface.** In other than dwelling units, every toilet room floor shall be maintained to be a smooth, hard, nonabsorbent surface to permit such floor to be easily kept in a clean and sanitary condition.

### [P] SECTION 504
### PLUMBING SYSTEMS AND FIXTURES

**504.1 General.** All plumbing fixtures shall be properly installed and maintained in working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures are designed. All plumbing fixtures shall be maintained in a safe, sanitary and functional condition.

**504.2 Fixture clearances.** Plumbing fixtures shall have adequate clearances for usage and cleaning.

**504.3 Plumbing system hazards.** Where it is found that a plumbing system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, inadequate venting, cross connection, backsiphonage, improper installation, deterioration or damage or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard.

### SECTION 505
### WATER SYSTEM

**505.1 General.** Every sink, lavatory, bathtub or shower, drinking fountain, water closet or other plumbing fixture shall be properly connected to either a public water system or to an approved private water system. All kitchen sinks, lavatories, laundry facilities, bathtubs and showers shall be supplied with hot or tempered and cold running water in accordance with the *International Plumbing Code*.

**[P] 505.2 Contamination.** The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood-level rim of the fixture. Shampoo basin faucets, janitor sink faucets and other hose bibs or faucets to which hoses are attached and left in

PLUMBING FACILITIES AND FIXTURE REQUIREMENTS

place, shall be protected by an approved atmospheric-type vacuum breaker or an approved permanently attached hose connection vacuum breaker.

**505.3 Supply.** The water supply system shall be installed and maintained to provide a supply of water to plumbing fixtures, devices and appurtenances in sufficient volume and at pressures adequate to enable the fixtures to function properly, safely, and free from defects and leaks.

**505.4 Water heating facilities.** Water heating facilities shall be properly installed, maintained and capable of providing an adequate amount of water to be drawn at every required sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110°F (43°C). A gas-burning water heater shall not be located in any bathroom, toilet room, bedroom or other occupied room normally kept closed, unless adequate combustion air is provided. An approved combination temperature and pressure-relief valve and relief valve discharge pipe shall be properly installed and maintained on water heaters.

**[P] SECTION 506**
**SANITARY DRAINAGE SYSTEM**

**506.1 General.** All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

**506.2 Maintenance.** Every plumbing stack, vent, waste and sewer line shall function properly and be kept free from obstructions, leaks and defects.

**[P] SECTION 507**
**STORM DRAINAGE**

**507.1 General.** Drainage of roofs and paved areas, yards and courts, and other open areas on the premises shall not be discharged in a manner that creates a public nuisance.

## CHAPTER 6

# MECHANICAL AND ELECTRICAL REQUIREMENTS

### SECTION 601
### GENERAL

**601.1 Scope.** The provisions of this chapter shall govern the minimum mechanical and electrical facilities and equipment to be provided.

**601.2 Responsibility.** The owner of the structure shall provide and maintain mechanical and electrical facilities and equipment in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any premises which does not comply with the requirements of this chapter.

### SECTION 602
### HEATING FACILITIES

**602.1 Facilities required.** Heating facilities shall be provided in structures as required by this section.

**602.2 Residential occupancies.** Dwellings shall be provided with heating facilities capable of maintaining a room temperature of 68°F (20°C) in all habitable rooms, bathrooms and toilet rooms based on the winter outdoor design temperature for the locality indicated in Appendix D of the *International Plumbing Code*. Cooking appliances shall not be used to provide space heating to meet the requirements of this section.

**Exception:** In areas where the average monthly temperature is above 30°F (-1°C), a minimum temperature of 65°F (18°C) shall be maintained.

**602.3 Heat supply.** Every owner and operator of any building who rents, leases or lets one or more dwelling units or sleeping units on terms, either expressed or implied, to furnish heat to the occupants thereof shall supply heat during the period from [DATE] to [DATE] to maintain a temperature of not less than 68°F (20°C) in all habitable rooms, bathrooms, and toilet rooms.

**Exceptions:**

1. When the outdoor temperature is below the winter outdoor design temperature for the locality, maintenance of the minimum room temperature shall not be required provided that the heating system is operating at its full design capacity. The winter outdoor design temperature for the locality shall be as indicated in Appendix D of the *International Plumbing Code*.

2. In areas where the average monthly temperature is above 30°F (-1°C) a minimum temperature of 65°F (18°C) shall be maintained.

**602.4 Occupiable work spaces.** Indoor occupiable work spaces shall be supplied with heat during the period from [DATE] to [DATE] to maintain a temperature of not less than 65°F (18°C) during the period the spaces are occupied.

**Exceptions:**

1. Processing, storage and operation areas that require cooling or special temperature conditions.

2. Areas in which persons are primarily engaged in vigorous physical activities.

**602.5 Room temperature measurement.** The required room temperatures shall be measured 3 feet (914 mm) above the floor near the center of the room and 2 feet (610 mm) inward from the center of each exterior wall.

### SECTION 603
### MECHANICAL EQUIPMENT

**603.1 Mechanical appliances.** All mechanical appliances, fireplaces, solid fuel-burning appliances, cooking appliances and water heating appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function.

**603.2 Removal of combustion products.** All fuel-burning equipment and appliances shall be connected to an approved chimney or vent.

**Exception:** Fuel-burning equipment and appliances which are labeled for unvented operation.

**603.3 Clearances.** All required clearances to combustible materials shall be maintained.

**603.4 Safety controls.** All safety controls for fuel-burning equipment shall be maintained in effective operation.

**603.5 Combustion air.** A supply of air for complete combustion of the fuel and for ventilation of the space containing the fuel-burning equipment shall be provided for the fuel-burning equipment.

**603.6 Energy conservation devices.** Devices intended to reduce fuel consumption by attachment to a fuel-burning appliance, to the fuel supply line thereto, or to the vent outlet or vent piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved.

### SECTION 604
### ELECTRICAL FACILITIES

**604.1 Facilities required.** Every occupied building shall be provided with an electrical system in compliance with the requirements of this section and Section 605.

**604.2 Service.** The size and usage of appliances and equipment shall serve as a basis for determining the need for additional facilities in accordance with the ICC *Electrical Code*. Dwelling units shall be served by a three-wire, 120/240 volt, single-

Case 1:07-cv-06348

MECHANICAL AND ELECTRICAL REQUIREMENTS

phase electrical service having a rating of not less than 60 amperes.

**604.3 Electrical system hazards.** Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient receptacle and lighting outlets, improper wiring or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard.

## SECTION 605
## ELECTRICAL EQUIPMENT

**605.1 Installation.** All electrical equipment, wiring and appliances shall be properly installed and maintained in a safe and approved manner.

**605.2 Receptacles.** Every habitable space in a dwelling shall contain at least two separate and remote receptacle outlets. Every laundry area shall contain at least one grounded-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain at least one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection.

**605.3 Luminaires.** Every public hall, interior stairway, toilet room, kitchen, bathroom, laundry room, boiler room and furnace room shall contain at least one electric luminaire.

## SECTION 606
## ELEVATORS, ESCALATORS AND DUMBWAITERS

**606.1 General.** Elevators, dumbwaiters and escalators shall be maintained in compliance with ASME A17.1. The most current certification of inspection shall be on display at all times within the elevator or attached to the escalator or dumbwaiter, or the certificate shall be available for public inspection in the office of the building operator. The inspection and tests shall be performed at not less than the periodical intervals listed in ASME A17.1, Appendix N, except where otherwise specified by the authority having jurisdiction.

**606.2 Elevators.** In buildings equipped with passenger elevators, at least one elevator shall be maintained in operation at all times when the building is occupied.

**Exception:** Buildings equipped with only one elevator shall be permitted to have the elevator temporarily out of service for testing or servicing.

## SECTION 607
## DUCT SYSTEMS

**607.1 General.** Duct systems shall be maintained free of obstructions and shall be capable of performing the required function.

Case 1:08-cv-00555    Document 40-3    Filed 05/21/2008    Page 26 of 38

CHAPTER 7

# FIRE SAFETY REQUIREMENTS

### SECTION 701
### GENERAL

**701.1 Scope.** The provisions of this chapter shall govern the minimum conditions and standards for fire safety relating to structures and exterior premises, including fire safety facilities and equipment to be provided.

**701.2 Responsibility.** The owner of the premises shall provide and maintain such fire safety facilities and equipment in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any premises that do not comply with the requirements of this chapter.

### [F] SECTION 702
### MEANS OF EGRESS

**702.1 General.** A safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the public way. Means of egress shall comply with the *International Fire Code*.

**702.2 Aisles.** The required width of aisles in accordance with the *International Fire Code* shall be unobstructed.

**702.3 Locked doors.** All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort, except where the door hardware conforms to that permitted by the *International Building Code*.

**702.4 Emergency escape openings.** Required emergency escape openings shall be maintained in accordance with the code in effect at the time of construction, and the following. Required emergency escape and rescue openings shall be operational from the inside of the room without the use of keys or tools. Bars, grilles, grates or similar devices are permitted to be placed over emergency escape and rescue openings provided the minimum net clear opening size complies with the code that was in effect at the time of construction and such devices shall be releasable or removable from the inside without the use of a key, tool or force greater than that which is required for normal operation of the escape and rescue opening.

### [F] SECTION 703
### FIRE-RESISTANCE RATINGS

**703.1 Fire-resistance-rated assemblies.** The required fire-resistance rating of fire-resistance-rated walls, fire stops, shaft enclosures, partitions and floors shall be maintained.

**703.2 Opening protectives.** Required opening protectives shall be maintained in an operative condition. All fire and smokestop doors shall be maintained in operable condition.

Fire doors and smoke barrier doors shall not be blocked or obstructed or otherwise made inoperable.

### [F] SECTION 704
### FIRE PROTECTION SYSTEMS

**704.1 General.** All systems, devices and equipment to detect a fire, actuate an alarm, or suppress or control a fire or any combination thereof shall be maintained in an operable condition at all times in accordance with the *International Fire Code*.

**704.2 Smoke alarms.** Single or multiple-station smoke alarms shall be installed and maintained in Groups R-2, R-3, R-4 and in dwellings not regulated in Group R occupancies, regardless of occupant load at all of the following locations:

1. On the ceiling or wall outside of each separate sleeping area in the immediate vicinity of bedrooms.

2. In each room used for sleeping purposes.

3. In each story within a dwelling unit, including basements and cellars but not including crawl spaces and uninhabitable attics. In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level.

Single or multiple-station smoke alarms shall be installed in other groups in accordance with the *International Fire Code*.

**704.3 Power source.** In Group R occupancies and in dwellings not regulated as Group R occupancies, single-station smoke alarms shall receive their primary power from the building wiring provided that such wiring is served from a commercial source and shall be equipped with a battery backup. Smoke alarms shall emit a signal when the batteries are low. Wiring shall be permanent and without a disconnecting switch other than as required for overcurrent protection.

**Exception:** Smoke alarms are permitted to be solely battery operated in buildings where no construction is taking place, buildings that are not served from a commercial power source and in existing areas of buildings undergoing alterations or repairs that do not result in the removal of interior wall or ceiling finishes exposing the structure, unless there is an attic, crawl space or basement available which could provide access for building wiring without the removal of interior finishes.

**704.4 Interconnection.** Where more than one smoke alarm is required to be installed within an individual dwelling unit in Group R-2, R-3, R-4 and in dwellings not regulated as Group R occupancies, the smoke alarms shall be interconnected in such

FIRE SAFETY REQUIREMENTS

a manner that the activation of one alarm will activate all of the alarms in the individual unit. The alarm shall be clearly audible in all bedrooms over background noise levels with all intervening doors closed.

Exceptions:

1. Interconnection is not required in buildings which are not undergoing alterations, repairs, or construction of any kind.

2. Smoke alarms in existing areas are not required to be interconnected where alterations or repairs do not result in the removal of interior wall or ceiling finishes exposing the structure, unless there is an attic, crawl space or basement available which could provide access for interconnection without the removal of interior finishes.

# CHAPTER 8

# REFERENCED STANDARDS

This chapter lists the standards that are referenced in various sections of this document. The standards are listed herein by the promulgating agency of the standard, the standard identification, the effective date and title and the section or sections of this document that reference the standard. The application of the referenced standards shall be as specified in Section 102.7.

## ASME
American Society of Mechanical Engineers
Three Park Avenue
New York, NY 10016-5990

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| A17.1—2000 | Safety Code for Elevators and Escalators with A17.1a 2002 Addenda | 606.1 |

## ASTM
ASTM International
100 Barr Harbor Drive
West Conshohocken, PA 19428-2959

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| F1346—91 (2003) | Performance Specifications for Safety Covers and Labelling Requirements for All Covers for Swimming Pools, Spas and Hot Tubs | 303.2 |

## ICC
International Code Council
5203 Leesburg Pike, Suite 600
Falls Church, VA 22041

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| ICCEC—06 | ICC Electrical Code® — Administrative Provisions | 201.3, 604.2 |
| IBC—05 | International Building Code® | 102.3, 201.3, 401.3, 702.3 |
| IFC—05 | International Fire Code® | 201.3, 702.1, 702.2, 704.1, 704.2 |
| IFGC—06 | International Fuel Gas Code® | 102.3 |
| IMC—06 | International Mechanical Code® | 102.3, 201.3 |
| IPC—06 | International Plumbing Code® | 201.3, 505.1, 602.2, 602.3 |
| IZC—06 | International Zoning Code® | 102.3, 201.3 |

# INDEX

**A**

ACCEPTED ENGINEERING METHODS . . . . . . 104.2
ACCESS
  Egress . . . . . . . . . . . . . . . . . . . . . . . . . . . . 702
  From bedrooms . . . . . . . . . . . . . . . . . . . 404.4.2
  Plumbing fixtures, access for cleaning . . . . . 504.2
  To public way . . . . . . . . . . . . . . . . . . . . . . 702.1
  Toilet room as passageway . . . . . . . . . . . . 503.1
  Water closet. . . . . . . . . . . . . . . . . . . . . . 404.4.3
ADJACENT
  Privacy (hotel units, rooming units) . . . . . . . 404.1
ADMINISTRATION
  Scope . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
AGENT (See also OPERATOR) . . . . . . . . . . . . 202
  (See OWNER)
AIR
  Combustion air . . . . . . . . . . . . . . . . . . . . 603.5
AISLES
  Minimum width . . . . . . . . . . . . . . . . . . . . 702.2
ALTERATION
  Applicability of other codes. . . . . . . . . . . . 102.3
  Condemnation. . . . . . . . . . . . . . 108.1, 108.2
  Inspection. . . . . . . . . . . . . . . . . . . . . . . 104.3
  Prosecution. . . . . . . . . . . . . . . . . . . . . . 106.3
  Unlawful acts . . . . . . . . . . . . . . . . . . . . 106.1
ANCHOR
  Architectural trim. . . . . . . . . . . . . . . . . . . 304.8
  Signs, marquees and awnings. . . . . . . . . . 304.9
APPEAL
  Application . . . . . . . . . . . . . . . . . . . . . . 111.1
  Board decision . . . . . . . . . . . . . . . . . . . 111.6
  Board of appeals. . . . . . . . . . . . . . . . . . 111.2
  Court review . . . . . . . . . . . . . . . . . . . . . 111.7
  Disqualification. . . . . . . . . . . . . . . . . . . 111.2.3
  Financial interest . . . . . . . . . . . . . . . . . 111.2.3
  Hearing, emergency orders . . . . . . . . . . . 109.6
  Membership. . . . . . . . . . . . . . . . . . . . . 111.2
  Notice of appeal . . . . . . . . . . . . . . . . . . 111.1
  Postponed hearing . . . . . . . . . . . . . . . . 111.5
  Records. . . . . . . . . . . . . . . . . . . . . . . . 104.7
  Right to appeal . . . . . . . . . . . . . . . . . . . 111.1
  Vote. . . . . . . . . . . . . . . . . . . . . . . . . . . 111.6
APPLIANCE
  Cooking . . . . . . . . . . . . . . . . . 403.3, 602.2
  Heating . . . . . . . . . . . . . . . . . 602.2, 603.1
  Mechanical . . . . . . . . . . . . . . . . . . . . . . 603.1
APPLICATION
  Other codes . . . . . . . . . . . . . . . . . . . . . 102.3
APPROVAL
  Alternatives. . . . . . . . . . . . . . . . . . . . . . 105.2
  Authority. . . . . . . . . . . . . . . . . 104.1, 105.2
  Modifications. . . . . . . . . . . . . . . . . . . . . 105.1
APPROVED

Alternative materials, methods and
  equipment . . . . . . . . . . . . . . . . . . . . . 105.2
  Definition . . . . . . . . . . . . . . . . . . . . . . . . 202
  Energy conservation devices . . . . . . . . . . 603.6
  Fireplaces . . . . . . . . . . . . . . . . . . . . . . . 603.1
  Garbage storage facilities . . . . . . . . . . . . 307.3.1
  Modifications. . . . . . . . . . . . . . . . . . . . . 105.1
  Used materials and equipment. . . . . . . . . 105.4
ARCHITECTURAL
  Structural members . . . . . . . . . . . . . . . . 304.4
  Trim. . . . . . . . . . . . . . . . . . . . . . . . . . . 304.8
ARTIFICIAL
  Lighting of habitable rooms . . . . . . . . . . . 401.3
  Lighting of other spaces . . . . . . . . . . . . . 402.3
AUTOMOBILE
  Motor vehicles. . . . . . . . . . . . . . . . . . . . 302.8
AWNING
  Signs, marquees and awnings . . . . . . . . . 304.9

**B**

BALCONY
  Handrails and guardrails . . . . . . . . . . . . . 306.1
BASEMENT
  Definition . . . . . . . . . . . . . . . . . . . . . . . . 202
  Hatchways . . . . . . . . . . . . . . . . . . . . . . 304.16
  Windows . . . . . . . . . . . . . . . . . . . . . . . 304.17
BATHROOM
  Common bathrooms . . . . . . . . . . . . 502.3, 503.1
  Hotels . . . . . . . . . . . . . . . . . . . . . . . . . 502.3
  Lighting. . . . . . . . . . . . . . . . . . . . . . . . . 605.3
  Locks. . . . . . . . . . . . . . . . . . . . . . . . . . 503.1
  Outlets required . . . . . . . . . . . . . . . . . . 605.2
  Privacy . . . . . . . . . . . . . . . . . . . . . . . . 503.1
  Ventilation . . . . . . . . . . . . . . . . . . . . . . 403.2
BATHTUB
  Required facilities . . . . . . . . . . . . . . . . . 502.1
  Rooming houses. . . . . . . . . . . . . . . . . . 502.2
  Sewage system . . . . . . . . . . . . . . . . . . 506.1
  Water heating facilities . . . . . . . . . . . . . . 505.4
  Water system . . . . . . . . . . . . . . . . . . . . 505.1
BEDROOM
  Room area. . . . . . . . . . . . . . . . . . . . . . 404.4.1
BOILER
  Unsafe equipment . . . . . . . . . . . . . . . . . 108.1.2

**C**

CAPACITY
  Heating facilities . . . . . . . . . . 602.2, 602.3, 602.4
CAR (See AUTOMOBILE)
CEILING
  Basement rooms. . . . . . . . . . . . . . . . . . 404.3

INDEX

Fire-resistance ratings . . . . . . . . . . . . . . . 703.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . 305.3
Minimum height . . . . . . . . . . . . . . . . . . . . 404.3
CHANGE, MODIFY
Application of other codes . . . . . . . . . . . . 102.3
CHIMNEY
Exterior structure . . . . . . . . . . . . . . . . . . 304.11
Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . . 603.1
Flue . . . . . . . . . . . . . . . . . . . . . . . . . 603.2, 603.3
CLEANING
Access for cleaning . . . . . . . . . . . . . . . . . 504.2
Bathroom and kitchen floors . . . . . . 305.3, 503.4
Disposal of garbage . . . . . . . . . . . . . . . . . 307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . 307.2
Interior sanitation . . . . . . . . . . . . . . . . . . 307.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . 305.3
Plumbing facilities, maintained . . . . . . . 504.1
Required plumbing facilities . . . . . . . . . . . 502
Responsibility of persons . . . . . . . . . . . . 305.1
Trash containers . . . . . . . . . . . . . . . . . . 307.3.2
Vacant structures and land . . . . . . . . . . . . 301.3
CLEARANCE
Heating facilities . . . . . . . . . . . . . . . . . . 603.3
Plumbing fixtures . . . . . . . . . . . . . . . . . . 504.2
CLOSING
Streets . . . . . . . . . . . . . . . . . . . . . . . . . . 109.3
Vacant structures . . . . . . . . . . . . . . . . . . 108.2
CLOTHES DRYER
Exhaust . . . . . . . . . . . . . . . . . . . . . . . . . . 403.5
CODE OFFICIAL
Condemnation . . . . . . . . . . . . . . . . . . . . 108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . 110
Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104
Emergency order . . . . . . . . . . . . . . . . . . . . 109
Enforcement authority . . . . . . . . . . . . . . 104.1
Failure to comply with demolition order . . . . 110.3
Identification . . . . . . . . . . . . . . . . . . . . . 104.5
Inspections . . . . . . . . . . . . . . . . . . . . . . 104.3
Liability, relief of personal . . . . . . . . . . . 103.4
Membership of board of appeals . . . . . . . . 111.2
Notice of violation . . . . . . . . . . . . . 104.6, 107
Notices and orders . . . . . . . . . . . . . . . . . . 107
Official records . . . . . . . . . . . . . . . . . . . . 104.7
Personal liability . . . . . . . . . . . . . . . . . . 103.4
Placarding . . . . . . . . . . . . . . . . . . . . . . . 108.4
Prosecution . . . . . . . . . . . . . . . . . . . . . . 108.3
Removal of placard . . . . . . . . . . . . . . . . 108.4.1
Right of entry . . . . . . . . . . . . . . . . . . . . . 104.4
Rule-making authority . . . . . . . . . . . . . . 104.2
Transfer of ownership . . . . . . . . . . . . . . . 107.5
Vacant structures . . . . . . . . . . . . . . . . . . 108.2
Voting of appeals board . . . . . . . . . 111.2, 111.6
COLD WATER
Drinking . . . . . . . . . . . . . . . . . . . . . . . . . 502.4
Required facilities . . . . . . . . . . . . . . . . . . . 502
Rooming houses . . . . . . . . . . . . . . . . . . . 502.2
Water system . . . . . . . . . . . . . . . . . . . . . . 505
COMBUSTION
Combustion air . . . . . . . . . . . . . . . . . . . . 603.5

CONDEMNATION
Closing of vacant structures . . . . . . . . . . . 108.2
Failure to comply . . . . . . . . . . . . . . . . . . 110.3
General . . . . . . . . . . . . . . . . . . . . . . . . . . 108.1
Notices and orders . . . . . . . . . . . . . 108.2, 108.3
Placarding . . . . . . . . . . . . . . . . . . . . . . . 108.4
Removal of placard . . . . . . . . . . . . . . . . 108.4.1
CONFLICT
Conflict of interest . . . . . . . . . . . . . . . . . 111.2.3
Violations . . . . . . . . . . . . . . . . . . . . . . . 106.1
CONNECTION
Plumbing fixtures . . . . . . . . . . . . . . . . . . 504.1
Sewage system . . . . . . . . . . . . . . . . . . . . 506.1
Water heating . . . . . . . . . . . . . . . . . . . . . 505.4
Water system . . . . . . . . . . . . . . . . . . . . . 505.1
CONSTRUCTION
Existing structures . . . . . . . . . . . . . . . . . 101.2
CONTAINER
Garbage . . . . . . . . . . . . . . . . . . . . . . . . 307.3.2
Rubbish storage . . . . . . . . . . . . . . . . . . . 307.2.1
CONTINUOUS
Egress . . . . . . . . . . . . . . . . . . . . . . . . . . . 702.1
CONTRACTOR
Conflict of interest . . . . . . . . . . . . . . . . . 111.2.3
CONTROL
Insect and rodent control . . . . . . . . . 302.5, 304.5
Safety controls . . . . . . . . . . . . . . . . . . . . 603.4
COOLING
Cooling towers . . . . . . . . . . . . . . . . . . . 304.11
CORRIDOR
Accumulation of rubbish . . . . . . . . . . . . . 307.1
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . 402.2
Lighting fixtures . . . . . . . . . . . . . . . . . . . 605.3
Ratings maintained . . . . . . . . . . . . . . . . . . 703
Toilet rooms, access . . . . . . . . . . . . . . . . 503.1

D

DAMP, DAMPNESS
Roofs . . . . . . . . . . . . . . . . . . . . . . . . . . . 304.7
Window, door frames . . . . . . . . . . . . . . . 304.13
DANGEROUS, HAZARDOUS
Condemnation . . . . . . . . . . . . . . . . . . . . 108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . 110
Electrical hazards . . . . . . . . . . . . . . . . . . 604.3
Elevators . . . . . . . . . . . . . . . . . . . . . . . . 606.1
Existing remedies . . . . . . . . . . . . . . . . . . 102.4
Fire safety . . . . . . . . . . . . . . . . . . . . . . . 701.1
Heating facilities . . . . . . . . . . . . . . 602, 603.1
Imminent danger . . . . . . . . . . . . . . . . . . . . 202
Unsafe structures and equipment . . . . . . . . 108
DECKS
Handrails and guardrails . . . . . . . . . . . . 304.12
Maintenance . . . . . . . . . . . . . . . 304.2, 304.10
DECORATION
Exterior structure . . . . . . . . . . . . . . . . . . 304.8
DEMOLITION
Existing remedies . . . . . . . . . . . . . . . . . . 102.4

INDEX

Failure to comply. . . . . . . . . . . . . . . . . . . . .110.3
General. . . . . . . . . . . . . . . . . . . . . . . . . . . . .110
Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .110.2
Salvage materials. . . . . . . . . . . . . . . . . . . . .110.4
Violations . . . . . . . . . . . . . . . . . . . . . . . . . .110.3
**DETECTORS**
Smoke . . . . . . . . . . . . . . . . . . . . . . . . . . . . .704
**DETERIORATION**
Exterior walls . . . . . . . . . . . . . . . . . . . . . . . .304.6
**DIRECT**
Egress. . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
**DISPOSAL**
Disposal of garbage . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish. . . . . . . . . . . . . . . . . .307.2
**DOOR**
Exit doors . . . . . . . . . . . . . . . . . . . . . . . . . .702.3
Fire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .703.2
Hardware . . . . . . . . . . . . . . . . . . . . . . . . .304.15
Insect screens. . . . . . . . . . . . . . . . . . . . .304.14
Interior surfaces . . . . . . . . . . . . . . . . . . . .305.3
Locks . . . . . . . . . . . . . . . . . . . . .304.15, 702.3
Maintenance . . . . . . . . . . . . . .304.13, 304.15
Weather tight. . . . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . .304.13
**DORMITORY (ROOMING HOUSE, HOTEL, MOTEL)**
Locked doors . . . . . . . . . . . . . . . . . . . . . .702.3
Privacy. . . . . . . . . . . . . . . . . . .503.1, 503.2
**DRAIN, DRAINAGE**
Basement hatchways . . . . . . . . . . . . . . .304.16
Plumbing connections . . . . . . . . . . . . . . . .506
Storm drainage . . . . . . . . . . . . . . . . . . . . .507
**DUCT**
Exhaust duct. . . . . . . . . . . . . . . . . . . . . .304.9
**DUST**
Process ventilation . . . . . . . . . . . . . . . . .403.4
**DWELLING**
Cleanliness . . . . . . . . . . . . . . . .305.1, 307.1
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202
Electrical . . . . . . . . . . . . . . . . . . . . . . . . .604.1
Heating facilities. . . . . . . . . . . . . . . . . . . . .602
Required facilities . . . . . . . . . . . . . . . . . . . .502

**E**

**EASEMENT**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202
**EGRESS**
Aisles . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.2
Emergency escape. . . . . . . . . . . . . . . . . .702.4
General . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
Lighting . . . . . . . . . . . . . . . . . . . . . . . . . .402.2
Locked doors. . . . . . . . . . . . . . . . . . . . . .702.3
Obstructions prohibited. . . . . . . . . . . . . .702.1
Stairs, porches and
railings . . . . . . . . . .304.10, 305.4, 305.5, 306.1
**ELECTRIC, ELECTRICAL**
Condemnation . . . . . . . . . . . . . . . . . . . . .108.1

Facilities required . . . . . . . . . . . . . . . . . . .604.1
General . . . . . . . . . . . . . . . . . . . . . . . . . .601.1
Hazards . . . . . . . . . . . . . . . . . . . . . . . . . .604.3
Installation. . . . . . . . . . . . . . . . . . . . . . . .605.1
Luminaires . . . . . . . . . . . . . . . . . . . . . . .605.3
Receptacles. . . . . . . . . . . . . . . .604.3, 605.2
Responsibility . . . . . . . . . . . . . . . . . . . . .601.2
Service . . . . . . . . . . . . . . . . . . . . . . . . . .604.2
**ELEVATOR**
Condemnation . . . . . . . . . . . . . . . . . . . . .108.1
General . . . . . . . . . . . . . . . . . . . . . . . . . .606.1
Maintenance . . . . . . . . . . . . . . .606.1, 606.2
**EMERGENCY**
Emergency measures . . . . . . . . . . . . . . . .109
Emergency orders . . . . . . . . . . . . . . . . . .109.1
Escape . . . . . . . . . . . . . . . . . . . . . . . . . .702.4
**ENFORCEMENT**
Duties and powers. . . . . . . . . . . . . . . . . . .104
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
**EQUIPMENT**
Alternative . . . . . . . . . . . . . . . . . . . . . . . .105.2
Combustion air . . . . . . . . . . . . . . . . . . . .603.5
Condemnation . . . . . . . . . . . . . .108.1.2, 108.3
Electrical installation . . . . . . . . . . . . . . . .605.1
Emergency order . . . . . . . . . . . . . . . . . . .109.1
Energy conservation devices . . . . . . . . . .603.6
Fire safety requirements, responsibility . . . .701.2
Flue. . . . . . . . . . . . . . . . . . . . . . . . . . . . .603.2
Installation. . . . . . . . . . . . . . . . . . . . . . . .603.1
Interior structure . . . . . . . . . . . . . . . . . . .305.1
Placarding . . . . . . . . . . . . . . . . .108.3, 108.4
Prohibited occupancy . . . . . . . . . . . . . . .108.5
Responsibility . . . . . . . . . . . . . . . . . . . . .601.2
Safety controls . . . . . . . . . . . . . . . . . . . .603.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Scope, mechanical and electrical. . . . . . . .601.1
Unsafe . . . . . . . . . . . . . . . . . . . . . . . . . . .108
Used . . . . . . . . . . . . . . . . . . . . . . . . . . . .105.4
**EXHAUST**
Clothes dryer . . . . . . . . . . . . . . . . . . . . .403.5
Exhaust ducts . . . . . . . . . . . . . . . . . . . . .304.9
Process ventilation . . . . . . . . . . . . . . . . .403.4
**EXISTING**
Remedies . . . . . . . . . . . . . . . . . . . . . . . .102.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Structural members . . . . . . . . . . . . . . . . .304.4
Structures . . . . . . . . . . . . . . . . . . . . . . . .101.3
**EXTERIOR**
Decorative features. . . . . . . . . . . . . . . . .304.8
Egress. . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
Exterior structure . . . . . . . . . . . . . . . . . . .304
Exterior walls . . . . . . . . . . . . . . . . . . . . .304.6
Painting . . . . . . . . . . . . . . . . . . .304.2, 304.6
Rodent harborage . . . . . . . . . . . .302.5, 304.5
Sanitation . . . . . . . . . . . . . . . . . . . . . . . .304.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
Stair. . . . . . . . . . . . . . . . . . . . . . . . . . . .304.10
Street numbers. . . . . . . . . . . . . . . . . . . .304.3

INDEX

Weather tight . . . . . . . . . . . . . . . . . . . .304.13
**EXTERMINATE**
Definition . . . . . . . . . . . . . . . . . . . . . . .202
Insect and rodent control . . . . 302.5, 304.5, 304.14
Responsibility of owner . . . . . . . . . . 301.2, 306.2
Responsibility of tenant-occupant . . . 305.3, 306.5

**F**

**FAN**
Exhaust vents . . . . . . . . . . . . . . . . . . . .302.6
**FEES, EXPENSES, COST**
Closing vacant structures . . . . . . . . . . . . .108.2
Demolition . . . . . . . . . . . . . . .110.1, 110.3, 110.4
Extermination . . . . . . . 308.2, 308.3, 308.4, 308.5
General . . . . . . . . . . . . . . . . . . . . . . . .103.5
Relief from personal liability . . . . . . . . . . .103.4
Responsibility, fire safety . . . . . . . . . . . . .701.2
**FENCE**
Accessory . . . . . . . . . . . . . . . . . . . . . . .302.7
Maintenance . . . . . . . . . . . . . . . . . . . . .304.2
**FIRE**
Fire-resistance ratings . . . . . . . . . . . . . . .703.1
General, fire-protection systems . . . . . . . . .704
Responsibility, fire safety . . . . . . . . . . . . .701.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Scope, fire safety . . . . . . . . . . . . . . . . . .701.1
Smoke alarms . . . . . . . . . . . . . . . . . . . .704.2
**FLAMMABLE LIQUID**
Containers . . . . . . . . . . . . . . . . . . . . .108.1.2
**FLOOR, FLOORING**
Area for bedrooms and living rooms . . . . .404.4.1
Fire-resistance ratings . . . . . . . . . . . . . . .703.1
Interior surfaces . . . . . . . . . . . . . .305.1, 305.3
Space requirements . . . . . . . . . .404.4.1, 404.6
**FOOD PREPARATION**
Cooking equipment . . . . . . . . . . . .403.3, 602.2
Sanitary condition . . . . . . . . . . . .305.1, 404.7
Ventilation . . . . . . . . . . . . . . . . . . . . . .403.4
**FOUNDATION**
Condemnation . . . . . . . . . . . . . . . . . .108.1.1
Foundation walls . . . . . . . . . . . . . . . . . .304.5
**FRAME**
Window and door frames . . . . . . . . . . . .304.13

**G**

**GAS**
Energy conservation devices . . . . . . . . . . .603.6
Exhaust vents . . . . . . . . . . . . . . . . . . . .302.6
Process ventilation . . . . . . . . . . . . . . . . .403.4
**GLAZING**
Materials . . . . . . . . . . . . . . . . . . . . .304.13.1
**GRADE**
Drainage . . . . . . . . . . . . . . . . . . . .302.2, 507
**GUARD**
Basement windows . . . . . . . . . . . . . . . .304.17
Definition . . . . . . . . . . . . . . . . . . . . . . .202

Anchorage and maintenance . . . . . . . . . .304.12

**H**

**HABITABLE**
Definition . . . . . . . . . . . . . . . . . . . . . . .202
Light . . . . . . . . . . . . . . . . . . . . . . . . . .402
Minimum ceiling height . . . . . . . . . . . . . .404.3
Minimum room width . . . . . . . . . . . . . . .404.2
Required plumbing facilities . . . . . . . . . . . .502
Residential heating facilities . . . . . .602.2, 602.3
Space requirements . . . . . . . . . . . . . .404.4.1
Ventilation . . . . . . . . . . . . . . . . . . . . . . .403
**HANDRAIL**
Handrails . . . . . . . . . .304.12, 305.5, 306.1
**HARDWARE**
Door hardware . . . . . . . . . . . . . .304.15, 702.3
Openable windows . . . . . . . . . . . . . .304.13.2
**HAZARDOUS (See DANGEROUS, HAZARDOUS)**
**HEAT, HEATING**
Cooking equipment . . . . . . . . . . . .403.3, 602.2
Energy conservation devices . . . . . . . . . . .603.6
Fireplaces . . . . . . . . . . . . . . . . . . . . . .603.1
Heating . . . . . . . . . . . . . . . . . . . . . . . .603.1
Mechanical equipment . . . . . . . . . . . . . .603.1
Required capabilities . . . . . . . . . . . . . . . .602
Residential heating . . . . . . . . . . . .602.2, 602.3
Scope . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Supply . . . . . . . . . . . . . . . . . . . . . . . .602.3
Water heating facilities . . . . . . . . . . . . . .505.4
Water system . . . . . . . . . . . . . . . . . . . . .505
**HOUSEKEEPING UNIT**
Definition . . . . . . . . . . . . . . . . . . . . . . .202
**HEIGHT**
Minimum ceiling height . . . . . . . . . . . . . .404.3
**HOT (See HEAT, HEATING)**
**HOTELS, ROOMING HOUSES AND DORMITORY**
**UNITS, MOTELS**
Definition . . . . . . . . . . . . . . . . . . . . . . .202
Locked doors . . . . . . . . . . . . . . . . . . . .702.3
Required facilities . . . . . . . . . . . . . . . . . .502
Toilet rooms . . . . . . . . . . . . . . . . . . . . . .503

**I**

**IDENTIFICATION**
Code official . . . . . . . . . . . . . . . . . . . . .104.5
**INFESTATION**
Condemnation . . . . . . . . . . . . . . . . . .108.1.3
Definition . . . . . . . . . . . . . . . . . . . . . . .202
Insect and rodent . . . . . . . .302.5, 304.14, 308.1
**INSECTS**
Extermination . . . . . . . . . . . . . . . . . . . .308
Infestation . . . . . . . . . . . . . . . . . . . . .308.1
Insect screens . . . . . . . . . . . . . . . . . . .304.14
**INSPECTIONS**
General . . . . . . . . . . . . . . . . . . . . . . . .104.3
Right of entry . . . . . . . . . . . . . . . . . . . .104.4

**INSPECTOR**
Identification ........................104.5
Inspections ........................104.3
Records ........................104.7
**INTENT**
Code ........................101.3
Rule-making authority ..................104.2
**INTERIOR**
Interior structure ........................305
Interior surfaces ........................305.3
Means of egress ........................702
Sanitation ........................305.1

**J**

**JURISDICTION**
Title ........................101.1

**K**

**KITCHEN**
Electrical outlets required .............605.2
Minimum width ........................404.2
Prohibited use ........................404.4.4
Room lighting ........................605.3
Water heating facilities ..................505.4

**L**

**LANDING**
Handrails and guards .....304.12, 305.4, 305.5,
                              306.1
Maintenance ..................304.10, 305.4
**LAUNDRY**
Room lighting ........................605.3
Water heating facilities ..................505.4
**LAVATORY**
Hotels ........................502.3
Required facilities ........................502
Rooming houses ........................502.2
Sanitary drainage system ..................506
Water heating facilities ..................505.4
Water system ........................505
**LEASE (SELL, RENT)**
Heat supplied ........................602.3
Salvage materials ........................110.4
Transfer of ownership ..................107.5
**LIEN**
Closing of vacant structures .............108.2
Demolition ........................110.3
Failure to comply ........................110.3
**LIGHT, LIGHTING**
Common halls and stairways........402.2, 605.3
Luminaires ........................605.3
General ........................402
Habitable rooms ........................402.1
Other spaces ........................402.3

Responsibility ........................401.2
Scope ........................101.2
Toilet rooms ........................605.3
**LIVING ROOM**
Room area........................404.4.1
**LOAD, LOADING**
Elevators, escalators and dumbwaiters ....606.1
Handrails and guards ............304.12, 305.5
Live load ........................304.4, 305.2
Stairs and porches............304.10, 305.2
Structural members..............304.4, 305.2

**M**

**MAINTENANCE**
Required ........................102.2
**MATERIAL**
Alternative ........................105.2
Salvage ........................110.4
Used ........................105.4
**MEANS OF EGRESS (See EGRESS)**
**MECHANICAL**
Installation........................603.1
Responsibility ........................601.2
Scope ........................601.1
Ventilation, general ..................403
Ventilation, toilet rooms..................403.2
**MINIMUM**
Ceiling height ........................404.3
Room width........................404.2
Scope ........................301.1
**MODIFICATION**
Approval ........................105.1
**MOTEL (See HOTELS)**
**MOTOR VEHICLES**
Inoperative ........................302.8
Painting........................302.8

**N**

**NATURAL**
Lighting ........................401.3, 402
Ventilation........................401.3, 403
**NOTICE**
Appeal........................111.1
Form........................107.2
Method of service ........................107.3
Orders ........................107
Owner, responsible person.............107.1
Penalties........................107.4
Placarding of structure ..................108.4
Transfer of ownership ..................107.5
Vacating structure ........................108.2
**NOXIOUS**
Process ventilation ........................403.4
Weeds........................302.4

INDEX

NUISANCE
    Closing of vacant structures . . . . . . . . . . . .108.2

**O**

OBSTRUCTION
    Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402.1
    Right of entry . . . . . . . . . . . . . . . . . . . . . . .104.4
OCCUPANCY (See USE)
OPENABLE
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Habitable rooms . . . . . . . . . . . . . . . . . . . . .403.1
    Locked doors . . . . . . . . . . . . . . . . . . . . . . .702.3
    Windows . . . . . . . . . . . . . . . . . . . . . . . .304.13.2
OPERATOR
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
ORDER (See NOTICE)
ORDINANCE, RULE
    Applicability . . . . . . . . . . . . . . . . . . . . . . . . .102
    Application for appeal . . . . . . . . . . . . . . . .111.1
OUTLET
    Electrical . . . . . . . . . . . . . . . . . . . . . . . . . .605.2
OWNER
    Closing of vacant structures . . . . . . . . . . . .108.2
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Demolition . . . . . . . . . . . . . . . . . . . . . . . . . .110
    Extermination . . . . . . . . . . . . . . . . . . . . . .308.2
    Failure to comply. . . . . . . . . . . . . . . . . . . .110.3
    Insect and rodent control . . .302.5, 308.2, 308.4
    Notice. . . . . . . . . . . . . . . . . . . . .107.1, 108.3
    Placarding of structure . . . . . . . . . . . . . . .108.4
    Responsibility . . . . . . . . . . . . . . . . . . . . . .301.2
    Responsibility, fire safety . . . . . . . . . . . . . .701.2
    Responsibility, light, ventilation . . . . . . . . .401.2
    Responsibility, mechanical and electrical . . . .601.2
    Responsibility, plumbing facilities . . . . . . . .501.2
    Right of entry . . . . . . . . . . . . . . . . . . . . . .104.4
    Rubbish storage. . . . . . . . . . . . . . . . . . . .307.2.1
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
    Transfer of ownership . . . . . . . . . . . . . . . .107.5

**P**

PASSAGEWAY
    Common hall and stairway . . . . . . . . . . . .402.2
    Interior surfaces . . . . . . . . . . . . . . . . . . . .305.3
    Toilet rooms, direct access . . . . . . . . . . . .503.1
PENALTY
    Notices and orders . . . . . . . . . . . . . . . . . .107.4
    Placarding of structure . . . . . . . . . . . . . . .108.4
    Prohibited occupancy . . . . . . . . . . . . . . . .108.5
    Removal of placard . . . . . . . . . . . . . . . . .108.4.1
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
    Violations . . . . . . . . . . . . . . . . . . . . . . . . .106.4
PEST (VERMIN)
    Condemnation . . . . . . . . . . . . . . . . . . . . .108.1
    Extermination . . . . . . . . . . . . . . . . . . . . . .308.1
    Insect and rat control . . . .302.5, 304.14, 308.1

PLACARD, POST
    Closing . . . . . . . . . . . . . . . . . . . . . . . . . . .108.2
    Condemnation . . . . . . . . . . . . . . . . . . . . .108.1
    Demolition . . . . . . . . . . . . . . . . . . . . . . . . .110
    Emergency, notice . . . . . . . . . . . . . . . . . . .109.1
    Notice to owner . . . . . . . . . . . . . . .107.1, 108.3
    Placarding of structure . . . . . . . . . . . . . . .108.4
    Prohibited use. . . . . . . . . . . . . . . . . . . . . .108.5
    Removal. . . . . . . . . . . . . . . . . . . . . . . . .108.4.1
PLUMBING
    Access . . . . . . . . . . . . . . . . . . . . . . . . . . .504.2
    Clean and sanitary . . . . . . . . . . . . . . . . . .504.1
    Connections . . . . . . . . . . . . . . . . . . . . . . .505.1
    Contamination. . . . . . . . . . . . . . . . . . . . . .505.2
    Employee's facilities . . . . . . . . . . . . . . . . .503.3
    Fixtures . . . . . . . . . . . . . . . . . . . . . . . . . .504.1
    Required facilities . . . . . . . . . . . . . . . . . . . .502
    Responsibility . . . . . . . . . . . . . . . . . . . . . .501.2
    Sanitary drainage system . . . . . . . . . . . . . .506
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .501.1
    Storm drainage . . . . . . . . . . . . . . . . . . . . .507
    Supply. . . . . . . . . . . . . . . . . . . . . . . . . . .505.3
    Water heating facilities . . . . . . . . . . . . . . .505.4
PORCH
    Handrails. . . . . . . . . . . . . . . . . . . . . . . . .306.1
    Structurally sound . . . . . . . . . . . . . . . . . .304.10
PORTABLE (TEMPORARY)
    Cooking equipment . . . . . . . . . . . . . . . . . .603.1
PRESSURE
    Water supply. . . . . . . . . . . . . . . . . . . . . . .505.3
PRIVATE, PRIVACY
    Bathtub or shower. . . . . . . . . . . . . . . . . . .503.1
    Occupancy limitations. . . . . . . . . . . . . . . .404.1
    Required plumbing facilities. . . . . . . . . . . . .502
    Sewage system . . . . . . . . . . . . . . . . . . . .506.1
    Water closet and lavatory . . . . . . . . . . . . .503.1
    Water system . . . . . . . . . . . . . . . . . . . . . .505.1
PROPERTY, PREMISES
    Cleanliness . . . . . . . . . . . . . . . . . .304.1, 307.1
    Condemnation . . . . . . . . . . . . . . . . . . . . . .108
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Demolition . . . . . . . . . . . . . . . . . . . . . . . . .110
    Emergency measures . . . . . . . . . . . . . . . . .109
    Exterior areas . . . . . . . . . . . . . . . . . . . . . .302
    Extermination, multiple occupancy . .302.5, 308.4
    Extermination, single occupancy. . .302.5, 308.3
    Failure to comply. . . . . . . . . . . . . . . . . . .110.3
    Grading and drainage. . . . . . . . . . . . . . . .302.2
    Responsibility . . . . . . . . . . . . . . . . . . . . . .301.2
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
    Storm drainage . . . . . . . . . . . . . . . . . . . . .507
    Vacant structures and land. . . . . . . . . . . .301.3
PROTECTION
    Basement windows. . . . . . . . . . . . . . . . .304.17
    Fire-protection systems . . . . . . . . . . . . . . . .704
    Signs, marquees and awnings . . . . . . . . . .304.9
PUBLIC
    Cleanliness . . . . . . . . . . . . . . . . . .304.1, 305.1
    Egress. . . . . . . . . . . . . . . . . . . . . . . . . . .702.1

2006 INTERNATIONAL PROPERTY MAINTENANCE CODE®

INDEX

Hallway . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
Sewage system . . . . . . . . . . . . . . . . . . . . .506.1
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . .503
Vacant structures and land . . . . . . . . . . . .301.3
Water system . . . . . . . . . . . . . . . . . . . . . . .505

**PUBLIC WAY**
Definition . . . . . . . . . . . . . . . . . . . . . . . . . .202

**R**

**RAIN**
Basement hatchways . . . . . . . . . . . . . . . .304.16
Exterior walls . . . . . . . . . . . . . . . . . . . . . .304.6
Grading and drainage. . . . . . . . . . . . . . . .303.2
Roofs. . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.7
Window and door frames . . . . . . . . . . . . .304.13

**RECORD**
Official records . . . . . . . . . . . . . . . . . . . . .104.7

**REHABILITATION**
Intent . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.3

**REPAIR**
Application of other codes . . . . . . . . . . . .102.3
Chimneys . . . . . . . . . . . . . . . . . . . . . . . . .304.11
Demolition. . . . . . . . . . . . . . . . . . . . . . . . .110.1
Exterior surfaces. . . . . . . . . . . . . . . . . . . .304.1
Maintenance . . . . . . . . . . . . . . . . . . . . . . .102.2
Public areas . . . . . . . . . . . . . . . . . . . . . . .302.3
Signs, marquees and awnings . . . . . . . . .304.9
Stairs and porches . . . . . . . . . . . . . . . . . .304.10
Weather tight. . . . . . . . . . . . . . . . . . . . . . .304.13
Workmanship . . . . . . . . . . . . . . . . . . . . . .102.5

**REPORTS**
Test reports . . . . . . . . . . . . . . . . . . . . . . .105.3.2

**RESIDENTIAL**
Extermination. . . . . . . . . . . . . . . . . . . . . . .308
Residential heating. . . . . . . . . . . . . . . . . .602.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2

**RESPONSIBILITY**
Extermination. . . . . . . . . . . . . . . . . . . . . . .308
Fire safety . . . . . . . . . . . . . . . . . . . . . . . . .701.2
Garbage disposal . . . . . . . . . . . . . . . . . . .307.3
General. . . . . . . . . . . . . . . . . . . . . . . . . . . .301.2
Mechanical and electrical . . . . . . . . . . . . .601.2
Persons. . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
Placarding of structure . . . . . . . . . . . . . . .108.4
Plumbing facilities. . . . . . . . . . . . . . . . . . .501.2
Rubbish storage. . . . . . . . . . . . . . . . . . . . .307.2.1
Scope. . . . . . . . . . . . . . . . . . . . . .101.2, 301.1

**REVOKE, REMOVE**
Demolition . . . . . . . . . . . . . . . . . . . . . . . . .110
Existing remedies. . . . . . . . . . . . . . . . . . .102.4
Process ventilation . . . . . . . . . . . . . . . . . .403.4
Removal of placard . . . . . . . . . . . . . . . . .108.4.1
Rubbish removal . . . . . . . . . . . . . . . . . . . .307.2.1

**RIGHT OF ENTRY**
Duties and powers of code official . . . . . . .104.4
Inspections . . . . . . . . . . . . . . . . . . . . . . . .104.3

**RODENTS**
Basement hatchways . . . . . . . . . . . . . . . .304.16
Condemnation . . . . . . . . . . . . . . . . . . . . .108
Exterior surfaces. . . . . . . . . . . . . . . . . . . .304.6
Extermination. . . . . . . . . . . . . . . . . . . .302.5, 308
Guards for basement windows. . . . . . . . .304.17
Harborage. . . . . . . . . . . . . . . . . . . . . . . . .302.5
Insect and rodent control . . . . . . . . . . . . .308.1

**ROOF**
Exterior structure . . . . . . . . . . . . . . . . . . .304.1
Roofs. . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.7
Storm drainage . . . . . . . . . . . . . . . . . . . . .507

**ROOM**
Bedroom and living room . . . . . . . . . . . . .404.4
Cooking facilities. . . . . . . . . . . . . . . . . . . .403.3
Direct access . . . . . . . . . . . . . . . . . . . . . .503.2
Habitable. . . . . . . . . . . . . . . . . . . . . . . . . .402.1
Heating facilities. . . . . . . . . . . . . . . . . . . .602
Light. . . . . . . . . . . . . . . . . . . . . . . . . . . . .402
Minimum ceiling heights . . . . . . . . . . . . . .404.3
Minimum width . . . . . . . . . . . . . . . . . . . . .404.2
Overcrowding . . . . . . . . . . . . . . . . . . . . . .404.5
Prohibited use . . . . . . . . . . . . . . . . . . .404.4.4
Temperature . . . . . . . . . . . . . . . . . . . . . . .602.5
Toilet. . . . . . . . . . . . . . . . . . . . . . . . . . . . .503
Ventilation . . . . . . . . . . . . . . . . . . . . . . . .403

**ROOMING HOUSES (See DORMITORY)**

**RUBBISH**
Accumulation . . . . . . . . . . . . . . . . . . . . . .307.1
Definition . . . . . . . . . . . . . . . . . . . . . . . . .202
Disposal . . . . . . . . . . . . . . . . . . . . . . . . . .307.2
Garbage facilities . . . . . . . . . . . . . . . . . . .307.3.1
Rubbish storage. . . . . . . . . . . . . . . . . . . . .307.2.1
Storage . . . . . . . . . . . . . . . . . . . . . . . . . . .307.2.1

**S**

**SAFETY, SAFE**
Chimney . . . . . . . . . . . . . . . . . . . . . . . . . .304.11
Condemnation . . . . . . . . . . . . . . . . . . . . .108.1
Electrical installation. . . . . . . . . . . . . . . . .605.1
Emergency measures . . . . . . . . . . . . . . . .109
Fire safety requirements . . . . . . . . . . . . . .701
Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . .603.1
Intent. . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.3
Safety controls . . . . . . . . . . . . . . . . . . . . .603.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Unsafe structures and equipment . . . . . . . .108

**SANITARY**
Bathroom and kitchen floors. . . . . . . . . . .305.3
Cleanliness . . . . . . . . . . . . . . . . .304.1, 305.1
Disposal of garbage . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . .307.2
Exterior property areas. . . . . . . . . . . . . . .302.1
Exterior structure . . . . . . . . . . . . . . . . . . .304.1
Food preparation . . . . . . . . . . . . . . . . . . .404.7
Furnished by occupant. . . . . . . . . . . . . . .302.1
Interior surfaces . . . . . . . . . . . . . . . . . . . .305.3

INDEX

Plumbing fixtures . . . . . . . . . . . . . . . . .504.1
Required plumbing facilities. . . . . . . . . . . . .502
Scope . . . . . . . . . . . . . . . . . . . . . . .101.2
**SASH**
Window. . . . . . . . . . . . . . . . . . . . .304.13
**SCREENS**
Insect screens. . . . . . . . . . . . . . . . . .304.14
**SECURITY**
Basement hatchways. . . . . . . . . . . . .304.18.3
Building. . . . . . . . . . . . . . . . . . . . .304.18
Doors. . . . . . . . . . . . . . . . . . . . .304.18.1
Vacant structures and land. . . . . . . . . . .301.3
Windows . . . . . . . . . . . . . . . . . . .304.18.2
**SELF-CLOSING SCREEN DOORS**
Insect screens. . . . . . . . . . . . . . . . . .304.14
**SEPARATION**
Fire-resistance ratings. . . . . . . . . . . . . . .703
Privacy . . . . . . . . . . . . . . . . . . . . .404.1
Separation of units . . . . . . . . . . . . . . .404.1
Water closet and lavatory. . . . . . . . . . . .502.1
**SERVICE**
Electrical . . . . . . . . . . . . . . . . . . . .604.2
Method . . . . . . . . . . . . . . . . . . . . .107.3
Notices and orders . . . . . . . . .107.1, 108.3
Service on occupant. . . . . . . . . . . . . . .108.3
**SEWER**
General . . . . . . . . . . . . . . . . . . . . .506.1
Maintenance. . . . . . . . . . . . . . . . . . .506.2
**SHOWER**
Bathtub or shower. . . . . . . . . . . . . . . .502.1
Rooming houses. . . . . . . . . . . . . . . . .502.2
Water heating facilities . . . . . . . . . . . .505.4
Water system. . . . . . . . . . . . . . . . . . .505
**SIGN**
Signs, marquees and awnings . . . . . . . . .304.9
**SINGLE-FAMILY DWELLING**
Extermination. . . . . . . . . . . . . . . . . . .308
**SINK**
Kitchen sink . . . . . . . . . . . . . . . . . .502.1
Sewage system . . . . . . . . . . . . . . . . . .506
Water supply . . . . . . . . . . . . . . . . . .505.3
**SIZE**
Habitable room, light . . . . . . . . . . . . . .402
Habitable room, ventilation . . . . . . . . . . .403
Room area. . . . . . . . . . . . . . . . . . .404.4.1
**SMOKE**
Alarms. . . . . . . . . . . . . . . . . . . . . .704.2
Interconnection. . . . . . . . . . . . . . . . .704.4
Power source . . . . . . . . . . . . . . . . . .704.3
**SPACE**
General, light . . . . . . . . . . . . . . . . . .402
General, ventilation . . . . . . . . . . . . . . .403
Occupancy limitations . . . . . . . . . . . . . .404
Privacy . . . . . . . . . . . . . . . . . . . . .404.1
Scope . . . . . . . . . . . . . . . . . . . . . .401.1
**STACK**
Chimneys . . . . . . . . . . . . . . . . . . .304.11

**STAIRS**
Common halls and stairways, light. . . . . . .402.2
Exit facilities . . . . . . . . . . . . . . . . . .305.4
Handrails . . . . . . . . . . . . . . . .304.12, 305.5
Luminaires . . . . . . . . . . . . . . . . . . .605.3
Public areas . . . . . . . . . . . . . . . . . . .302.3
Stairs and porches . . . . . . . . . . . . . . .304.10
**STANDARD**
Referenced . . . . . . . . . . . . . . . . . . .102.7
**STORAGE**
Food preparation . . . . . . . . . . . . . . . .404.7
Garbage storage facilities. . . . . . . . . . . .307.3
Rubbish storage facilities. . . . . . . . . . . .307.2.1
Sanitation . . . . . . . . . . . . . . . . . . . .307.1
**STRUCTURE**
Accessory structures . . . . . . . . . . . . . .302.7
Closing of vacant structures . . . . . . . . . .108.2
Definition . . . . . . . . . . . . . . . . . . . .202
Emergency measures . . . . . . . . . . . . . . .109
General, exterior . . . . . . . . . . . . . . . .304.1
General, condemnation . . . . . . . . . . . . . .110
General, interior structure. . . . . . . . . . . .305.1
Placarding of structure . . . . . . . . . . . . .108.4
Scope . . . . . . . . . . . . . . . . . . . . . .301.1
Structural members . . . . . . . . . . .304.4, 305.2
Vacant structures and land . . . . . . . . . . .301.3
**SUPPLY**
Combustion air . . . . . . . . . . . . . . . . .603.5
Connections . . . . . . . . . . . . . . . . . . .505.1
Water heating facilities . . . . . . . . . . . .505.4
Water supply . . . . . . . . . . . . . . . . . .505.3
Water system . . . . . . . . . . . . . . . . . . .505
**SURFACE**
Exterior surfaces . . . . . . . . . . . .304.2, 304.6
Interior surfaces . . . . . . . . . . . . . . . .305.3
**SWIMMING**
Swimming pools . . . . . . . . . . . .303.1, 303.2
Safety covers . . . . . . . . . . . . . . . . . .303.2

T

**TEMPERATURE**
Nonresidential structures . . . . . . . . . . . .602.4
Residential buildings. . . . . . . . . . . . . . .602.2
Water heating facilities . . . . . . . . . . . .505.4
**TENANT**
Scope . . . . . . . . . . . . . . . . . . . . . .101.2
**TEST, TESTING**
Agency. . . . . . . . . . . . . . . . . . . . .105.3.2
Methods. . . . . . . . . . . . . . . . . . . . .105.3.1
Reports . . . . . . . . . . . . . . . . . . . .105.3.3
Required . . . . . . . . . . . . . . . . . . . .105.3
**TOXIC**
Process ventilation . . . . . . . . . . . . . . .403.4
**TRASH**
Rubbish and garbage . . . . . . . . . . . . . . .307

INDEX

## U

**UNOBSTRUCTED**
Access to public way . . . . . . . . . . . . . . . . .702.1
General, egress . . . . . . . . . . . . . . . . . . . . .702.1

**UNSAFE**
Equipment . . . . . . . . . . . . . . . . . . . . . . . .108.1.2
Existing remedies . . . . . . . . . . . . . . . . . . . .102.4
General, condemnation . . . . . . . . . . . . .108, 110
General, demolition . . . . . . . . . . . . . . . . . . . .110
Notices and orders . . . . . . . . . . . . . . .107, 108.3
Structure . . . . . . . . . . . . . . . . . . . . . . . .108.1.1

**USE**
Application of other codes . . . . . . . . . . . . . .102.3
General, demolition . . . . . . . . . . . . . . . . . . . .110

## V

**VACANT**
Closing of vacant structures . . . . . . . . . . . .108.2
Emergency measure . . . . . . . . . . . . . . . . . . .109
Method of service . . . . . . . . . . . . . . .107.3, 108.3
Notice to owner or to person
responsible . . . . . . . . . . . . . . . . .107, 108.3
Placarding of structure . . . . . . . . . . . . . . . .108.4
Vacant structures and land . . . . . . . . . . . . .301.3

**VAPOR**
Exhaust vents . . . . . . . . . . . . . . . . . . . . . . .302.6
Process ventilation . . . . . . . . . . . . . . . . . . .403.4

**VEHICLES**
Inoperative . . . . . . . . . . . . . . . . . . . . . . . . .302.8
Painting . . . . . . . . . . . . . . . . . . . . . . . . . . .302.8

**VENT**
Connections . . . . . . . . . . . . . . . . . . . . . . . .504.3
Exhaust vents . . . . . . . . . . . . . . . . . . . . . . .302.6
Flue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .603.2

**VENTILATION**
Clothes dryer exhaust . . . . . . . . . . . . . . . . .403.5
Combustion air . . . . . . . . . . . . . . . . . . . . . .603.5
Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
General, ventilation . . . . . . . . . . . . . . . . . . . .403
Habitable rooms . . . . . . . . . . . . . . . . . . . . .403.1
Process ventilation . . . . . . . . . . . . . . . . . . .403.4
Recirculation . . . . . . . . . . . . . . . . . .403.2, 403.4
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . .403.2

**VERMIN**
Condemnation . . . . . . . . . . . . . . . . . . . . . . .108
Insect and rat control . . . . . . . . . . . . .302.5, 308

**VIOLATION**
Condemnation . . . . . . . . . . . . . . . . . . . . . . .108
General . . . . . . . . . . . . . . . . . . . . . . . . . . . .106
Notice . . . . . . . . . . . . . . . . . . . . . . .107, 108.3
Penalty . . . . . . . . . . . . . . . . . . . . . . . . . . .106.4
Placarding of structure . . . . . . . . . . . . . . . .106.4
Prosecution . . . . . . . . . . . . . . . . . . . . . . . .106.3
Strict liability offense . . . . . . . . . . . . .106.3, 202
Transfer of ownership . . . . . . . . . . . . . . . . .107.5

## W

**WALK**
Sidewalks . . . . . . . . . . . . . . . . . . . . . . . . . .302.3

**WALL**
Accessory structures . . . . . . . . . . . . . . . . .302.7
Exterior surfaces . . . . . . . . . . . . . .304.2, 304.6
Exterior walls . . . . . . . . . . . . . . . . . . . . . . .304.6
Foundation walls . . . . . . . . . . . . . . . . . . . . .304.5
General, fire-resistance rating . . . . . . . . . . .703.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . .305.3
Outlets required . . . . . . . . . . . . . . . . . . . . .605.2
Temperature measurement . . . . . . . . . . . . .602.5

**WASTE**
Disposal of garbage . . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . . .307.2
Dwelling units . . . . . . . . . . . . . . . . . . . . . . .502.1
Garbage storage facilities . . . . . . . . . . . . .307.3.1

**WATER**
Basement hatchways . . . . . . . . . . . . . . . . .304.16
Connections . . . . . . . . . . . . . . . . . . . . . . . .506.1
Contamination . . . . . . . . . . . . . . . . . . . . . .505.2
General, sewage . . . . . . . . . . . . . . . . . . . . . .506
General, storm drainage . . . . . . . . . . . . . . . .507
General, water system . . . . . . . . . . . . . . . . .605
Heating . . . . . . . . . . . . . . . . . . . . . . . . . . .505.4
Hotels . . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
Kitchen sink . . . . . . . . . . . . . . . . . . . . . . . .502.1
Required facilities . . . . . . . . . . . . . . . . . . . . .502
Rooming houses . . . . . . . . . . . . . . . . . . . . .502.2
Supply . . . . . . . . . . . . . . . . . . . . . . . . . . . .505.3
System . . . . . . . . . . . . . . . . . . . . . . . . . . . . .505
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . . .503
Water heating facilities . . . . . . . . . . . . . . . .505.4

**WEATHER, CLIMATE**
Heating facilities . . . . . . . . . . . . . . . . . . . . . .602
Rule-making authority . . . . . . . . . . . . . . . . .104.2

**WEATHERSTRIP**
Window and door frames . . . . . . . . . . . . . .304.13

**WEEDS**
Noxious weeds . . . . . . . . . . . . . . . . . . . . . .302.4

**WIDTH**
Minimum room width . . . . . . . . . . . . . . . . . .404.2

**WIND**
Weather tight . . . . . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . . . . .304.13

**WINDOW**
Emergency escape . . . . . . . . . . . . . . . . . . .702.4
Glazing . . . . . . . . . . . . . . . . . . . . . . . . . .304.13.1
Guards for basement windows . . . . . . . . . .304.17
Habitable rooms . . . . . . . . . . . . . . . . . . . . .402.1
Insect screens . . . . . . . . . . . . . . . . . . . . . .304.14
Interior surface . . . . . . . . . . . . . . . . . . . . . .305.3
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402
Openable windows . . . . . . . . . . . . . . . . . .304.13.2
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . . .403.2
Ventilation . . . . . . . . . . . . . . . . . . . . . . . . . .403
Weather tight . . . . . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . . . . .304.13

**INDEX**

**WORKER**
    Employee facilities . . . . . . . . . . . . . . . 503.3, 602.4
**WORKMANSHIP**
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102.5

2006 INTERNATIONAL PROPERTY MAINTENANCE CODE®

# EXHIBIT G

1604 MEMORIAL DR

Final up Report 8/16/96
Worsyn alley/cleanup 4/2/04 canl# 3177
now completed 8/7/06

CHECK 6FT GARAGE # 005708.
22, SOUTH ONLY 2x

AB
8-13-08
1PM

5-13-08
FINAL

P.O.S.
8-16-96
11:00

Re. Insp
6-20-9
10AM

REINSP
6-24-9T

1:30

FINAL
6-24-9

ReS
Re-Insp
2:32

RE
1-15-05
1:00
RCT 2-32-08
1:9:08

②

# CALUMET CITY FIRE DEPARTMENT

## DEPARTMENT OF INSPECTIONAL SERVICES
### POINT OF SALE TRACKING SHEET

Location of inspection _1604 MEMORIAL DR_

Present Zoning _R-3_ Aldermanic Ward _4_ Sidwell Grid _36-14-126_

Court Cases Pending _none_

Last Rental Inspection _5/23/03_ Units Approved _3 (4 units 1-0/s)_

Last Fire Inspection _6/24/97_ Last Building Inspection _6/24/97_

Any Previous Modifications/ Additions _none_

Current Violations on File? Rental _No_ Fire _No_ Health _N/A_
                                        _BLDG/_

Reviewed by: Housing _6X_ Date _____ Fire _6X_ Date _____

Building _6X_ Date _____ Health _N/A_ Date _____

Inspector Assigned _O RODECK_

Conditional Certificate Approved by Dept. Director _____ Date _____

Final Inspection Date _5-13-05_ Inspector _Dawl Bartoek #106_

Certificate Approval by Dept. Director _____ Date _5/13/05_

②

# CALUMET CITY FIRE DEPARTMENT
## DEPARTMENT OF INSPECTIONAL SERVICES
### (708) 891-8120
### RESIDENTIAL/MULTIFAMILY P.O.S. INSPECTION

The following is the result of the inspection on the occupancy at _1604 MEMORIAL_. This inspection is not in any way intended to be a complete list of Code or Municipal Ordinance requirements. Our inspection can be substantially limited by access available and stored items or furniture. It is not meant to take the place of private home inspections nor will it cover the same items. Some occupancies may require certifications to be completed on individual systems such as the heating appliances, roofing, or fire protection systems. Specific requirements of the point of sale inspections and limitations is available by referring to Municipal Code Section 6-308 as amended on May 9,1996. The first inspection and subsequent re-inspection is included in the cost. Any additional inspections or failure of owner/agent/designee to appear for a scheduled inspection will require additional fees.

The inspector will note the deficiencies by writing "NO" in the blank in front of the statement and may additionally circle a specific area or make comments. On the back of the inspection sheets is some of the code language that relates to the deficiencies noted by the inspector. The "PM" sections refer to the present adopted Property Maintenance Code and the "MC" refers to Municipal Code references. There may be additional Code requirements that explain a deficiency. Non-conforming structures may be subject

Some of the repairs may require registered contractors and permits. If you have any questions about this inspection please call us at (708) 891-8120.

INSPECTOR _Rodeck_          1ST INSPECTION DATE _12-30-03_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION.
OWNER/AUTHORIZED AGENT IN ATTENDANCE _Sharon Tiller_

PRINTED NAME _Sharon Tiller_

INSPECTOR _Rodeck_          REINSPECTION DATE _1-15-04_   TIME _1:00_
I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION.

OWNER/AUTHORIZED AGENT IN ATTENDANCE _Sharon Tiller_

APPROVED FOR CERT. OF COMPLIANCE _____   DATE _5/13/05_

## GENERAL EXTERIOR

PM-303.1   All exterior property and premises shall be maintained in a clean, safe, and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

PM-303.2   All premises shall be graded and maintained to prevent the accumulation of stagnant water thereon, or within any structure thereon.

PM-303.3   All sidewalks, driveways, parking spaces, and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions. Stairs shall comply with the requirements of Sections PM-304.1 and PM-702.9.

MC 28-2   All premises and exterior property shall be maintained free from weeds or plant growth in excess of 6 inches. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants, and vegetation, other than trees or shrubs provided; however this term shall not include cultivated flowers and gardens. (Property Maintenance Code covers this item at PM 303.4)

PM-303.7   All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

PM-304.1   The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety, or welfare.

PM-304.2   Each structure to which a street number is assigned shall have such number displayed in a position easily observed and readable form the public right-of-way. All numbers shall be in Arabic numerals at least 3 inches high and ½ inch stroke. NOTE: This includes garages in alleys.

PM-304.5   All exterior walls shall be free from holes, breaks, loose, or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

PM-304.6   The roof and flashing shall be sound, tight, and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof water shall not be discharged in a manner that creates a public nuisance. NOTE: These areas are examined from areas not requiring a ladder. The inspectors' approval of this item should not be considered a certification of the roof. The inspectors may require certification or repair of the roof based on their limited observations.

PM-304.8   All overhang extensions shall be maintained in good repair and be properly anchored so as to be kept in a safe and sound condition. Summarized – All exposed elements shall be protected from the elements and against decay or rust.

PM-304.9   All chimneys shall be maintained structurally safe and sound, and in good repair.

PM-304.11   Every window, door and frame shall be kept in sound condition, good repair and weather tight.

PM-304.11.1   All glazing materials shall be maintained free from cracks and holes.

PM-304.13   All exterior doors and hardware shall be maintained in good condition. Locks at all entrances to dwelling units, rooming units, and guest rooms shall tightly secure the door.

PM-702.11   All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort.

PM-304.14   Every basement hatchway shall be maintained to prevent the entrance of rates, rain, and surface drainage water.

PM-306.1   All exterior property and premises, and the interior of every structure shall be free from any accumulation of rubbish or garbage.

②

**EXTERIOR OF HOUSE AND GARAGE**

1) YES     Are property areas being maintained in a clean, safe, and sanitary condition ?

2) YES     Are private sidewalks, driveways, and similar areas being kept free from trip hazards, large cracks, etc. ?

3) YES     Are the weeds, plant growth, and grasses less than 6 inches ?

4) YES     Are fences, retaining walls, porches, and decks in good repair ?

5) YES     Is the street address posted on the property and visible from the public right of ways such as the street and alley ?

6) YES     Missing or deficient at     REAR OF GARAGE     HOUSE
Are the gutters, siding, fascia, and soffit areas free of peeling paint and deterioration ?

7) YES     Are all the exterior walls and chimneys in good repair ?

8) YES     Is the roof preventing the elements from damaging the structure ?
CERTIFICATION NEEDED YES ____ NO ✗

9) NO     Are all windows, doors, screens, and frames in good repair on the exterior ?

10) YES     Do the exit doors have single keyed locks/dead bolts or is key permanently in place ?

11) YES     Are all light fixtures and electrical outlets in good repair and are outside outlets protected by a ground fault interrupter circuit ?

12) YES     Are all sheds or auxiliary structures in good repair ?

**EXTERIOR COMMENTS**_____

✱ #9 OLDER WINDOWS NEED PAINT

Case 1:08-cv-00555　　Document 40-4　　Filed 05/21/2008　　Page 7 of 45

## MAJOR SYSTEMS

**HB0003 & PM 705.5**　　Summarized state law. Smoke detectors shall be provided on each level of the occupancy and within 15 feet of bedrooms. In dwelling units with split levels, a smoke detector installed on the upper level shall suffice for the adjacent lower level if the lower level is less than one full story below the upper level.

**PM–404.5**　　Clothes dryer venting systems shall be independent of all other systems and shall be vented in accordance with the manufacturers instructions

### PLUMBING

**PM 505.1**　　All plumbing fixtures shall be properly installed and maintained in good working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures area designed. All plumbing fixtures shall be maintained in a safe, sanitary, and functional condition.

**PM-506.2**　　The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood level rim of the fixture.

**PM-506.4**　　Water heating facilities shall be properly installed, maintained, and capable of providing an adequate amount of water to be drawn at every sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110 degrees. An approved combination temperature and pressure relief valve discharge pipe shall be properly installed and maintained on water heaters. NOTE: The relief valve discharge pipe must be the proper size, type, and 6-12" from the floor. The venting must be properly installed and without rust and/or negative slope.

**PM-507.1**　　All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

### HEATING

**PM-603.1**　　All mechanical equipment, fireplaces, and solid burning appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function. NOTE: These systems shall not have evidence of back venting, rusted flues, or excessive rust in the appliance. Additional certifications may be required.

**PM-603.2**　　All cooking and heating equipment, components, and accessories in every heating, cooking and water heating devices shall be maintained free from leaks and obstructions.

**PM-603.3**　　All fuel burning equipment and appliances shall be connected to an approved chimney or vent.

**PM-603.4**　　All required clearances to combustible materials shall be maintained.

**PM-603.7**　　Devices purporting to reduce fuel consumption by attachment to a fuel burning appliance, to the fuel line thereto, or from the vent outlet or piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved. NOTE: Devices such as those manufactured by Ameritherm shall be removed unless proof can be given that they were approved by manufacturer.

**603 PM.6**　　A supply of air for complete combustion of the fuel and for ventilation of the space shall be provided for the fuel burning equipment.

②

ADDENDUM TO INSPECTION FOR _1604 MEMORIAL_   DATE _12-30-01_

INSPECTOR   _Rodeck_

ADDITIONAL COMMENTS

✱ APT ONE - SOAP DISH LOOSE AT TUB WALL →

SMOKE DETECTOR SELF CLOSURE AT REAR ENTRY DOOR

APT TWO - BOTH TUBS HAVE LOW WATER PRESSURE

ONE HOT ONE COLD - G.F.I. AT MASTER BATH WONT

TEST - PLASTIC HOSE CONNECTORS AT BOTH TOILETS

APT THREE EAST - PLASTIC HOSE CONNECTORS AT

KIT -

APT THREE WEST - LOW HOT WATER PRESSURE AT

KIT, KIT RECPTS. HEAVILY PAINTED - TUB FAUCET

NEEDS NEW CARTRIDGE - DECORATIVE COVER MISSING

AT VANITY

②

## MAJOR SYSTEMS PLUMBING

25) YES   Is the water heater properly installed ?

26) YES   Are the drains and supply pipes free from leaks and is all drains attached to the drain/waste/vent system ?

27) YES   Are gas valves present at gas supply piping to appliances and flexible lines free from corrosion ?
MISSING AT _____   REPLACE AT _____

28) N/A   Is sump pump piping acceptable at this time ?

_____

_____

## HEATING UNITS

29) NO   Is the furnace/wall/boiler units working properly and free from excessive rust or debris ?

FLUE PIPE HAS IMPROPER SLOPE

_____

30) N/A   Is fireplace free from cracks, creosote, or deterioration, and is damper working ?

31) YES   Are smoke detectors present on each level at each hall and within 15 feet of mechanical areas ?
MISSING/INOPERABLE AT _____

32) YES   Is the foundation free from large cracks ?

33) YES   Is the structure of the building free from unusual sagging, deterioration, and obvious structural problems ?

## ELECTRICAL

34) NO   Are electrical panels properly installed and proper size ?

GARAGE PANEL DOUBLE LUGGED + HOLE AT TOP OF PANEL. REPLACE Od ALUMINUM MAIN WIRES FROM

35) Are all exit and emergency lights operating properly ? LOAD SIDE OF METER TO
OK P.K 5-11   PANELS

P.K.

## FIRE PROTECTION SYSTEMS

____   CERTIFICATION NEEDED ON      STANDPIPE      SPRINKLER SYSTEM
                                    SMOKE DETECTORS    FIRE ALARM
____   NO PARKING SIGNS NEEDED AT FIRE DEPARTMENT CONNECTION
____   EXPIRED EXTINGUISHER SERVICING AT _____
____   MISSING EXTINGUISHER AT _____
____   IS SELF CLOSURE INSTALLED ON LAUNDRY ROOM ?

## ELEVATORS

Elevators must be certified as complying with ASME A17.1-90, Safety Code for Elevators and Escalators.

_____   Certification or inspection within last year presented ?

Case 1:08-cv-00555    Document 40-4    Filed 05/21/2008    Page 10 of 45

## ELECTRICAL

**MC6-308b1**

Electrical Service: Single family residences shall have a minimum of 100 amp service and multiple unit residences shall comply with the latest code.

**PM-604.3**

Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient outlets, improper wiring, or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard. NOTE: Similar reasons include but are not limited to, ground fault interrupter circuits shall protect all outlets within 6 feet of plumbing fixtures, those in garages, outside, and basement outlets other than the sump pump.

**PM 605.2**

Every habitable space in a dwelling shall contain at least two separate and remote receptacles outlets. Every laundry area shall contain at least one grounded type receptacle. Every bathroom shall contain at least one receptacle.

**PM-605.3**

Every public hall, interior stairway, water closet compartment, bathroom, laundry room, and furnace room, shall contain at least one electric lighting fixture. NOTE: Other areas of the code allow the inspector to judge sufficiency of the lighting. It is expected that there will be sufficient lighting for safe servicing of the equipment within a room.

## DEFINITIONS

**Bathroom:** A room containing plumbing fixtures including a bathtub or shower.

**Habitable space:** Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet compartments, closets, halls, storage, or utility spaces, and similar space are not considered habitable spaces.

**Openable Area:** The part of a window or door which is available for unobstructed ventilation and which opens directly to the outdoors.

**Toilet Room:** A room containing a water closet or urinal but not a bathtub or shower.

## GENERAL STATEMENTS

**PM-101.6**

All repairs, maintenance work, alterations, or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner.

**PM-103.1**

All equipment, systems, devices, and safeguards required by this code or a previous statute or code shall be maintained in good working order. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures.

**PM-104.1**

All materials, equipment, and devices approved by the code official shall be constructed and installed in accordance with such approval.

**PM 105.1**

The code official shall enforce all of the provisions of this code.

**PM 405.3**

Every room occupied for sleeping purposes by one occupant shall contain at least 70 square feet of floor area, and every room occupied for sleeping purposes by more than one person shall contain at least 50 square feet of floor area for each occupant thereof.

Case 1:08-cv-00555    Document 40-4    Filed 05/21/2008    Page 11 of 45





# DEPARTMENT OF INSPECTIONAL SERVICES
## POINT OF SALE TRACKING SHEET

LOCATION OF INSPECTION ___90 YATES___

PRESENT ZONING _R-1_ WARD _3_ SIDWELL GRID _____

COURT CASES/ COLLECTIONS OR LIENS PENDING _None_

LAST RENTAL INSPECTION _9/14/04_ UNITS APPROVED _6_

LAST BUILDING OR FIRE INSPECTION _None_

ANY PREVIOUS MODIFICATIONS/ ADDITIONS _Permits in file_

CURRENT VIOLATIONS ON FILE? RENTAL _None_ BLDG _None_

(CONTACT HEALTH DEPARTMENT IF APPLICABLE)

REVIEWED BY : _____

INSPECTOR ASSIGNED ___Rodeck___

CONDITIONAL CERTIFICATE # _____ DATE _____

FINAL INSPECTION DATE _8-10-05_ INSPECTOR _Vargo #103_

CERTIFICATE APPROVAL BY DEPT. DIRECTOR _____ DATE _8/10/05_

#2, 11, ADDENDUM SHEET, 29, 34 & SELF-CLOSURE
OK' OK'                            OK'

# CALUMET CITY FIRE DEPARTMENT
## DEPARTMENT OF INSPECTIONAL SERVICES
### (708) 891-8120
### RESIDENTIAL/MULTIFAMILY P.O.S. INSPECTION

The following is the result of the inspection on the occupancy at _90 YATES_ .This inspection is not in any way intended to be a complete list of Code or Municipal Ordinance requirements. Our inspection can be substantially limited by access available and stored items or furniture. It is not meant to take the place of private home inspections nor will it cover the same items. Some occupancies may require certifications to be completed on individual systems such as the heating appliances, roofing, or fire protection systems. Specific requirements of the point of sale inspections and limitations is available by referring to Municipal Code Section 6-308 as amended on May 9,1996.The first inspection and subsequent re-inspection is included in the cost. Any additional inspections or failure of owner/agent/designee to appear for a scheduled inspection will require additional fees.

The inspector will note the deficiencies by writing "NO" in the blank in front of the statement and may additionally circle a specific area or make comments. On the back of the inspection sheets is some of the code language that relates to the deficiencies noted by the inspector. The "PM" sections refer to the present adopted Property Maintenance Code and the "MC" refers to Municipal Code references. There may be additional Code requirements that explain a deficiency. Non-conforming structures may be subject

Some of the repairs may require registered contractors and permits. If you have any questions about this inspection please call us at (708) 891-8120.

INSPECTOR _Rodeck_                          1ST INSPECTION DATE _11-5-04_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION. OWNER/AUTHORIZED AGENT IN ATTENDANCE _____

PRINTED NAME _SHERRY WINFIELD_

INSPECTOR _Garcia_              REINSPECTION DATE _12/8/04_   TIME _900_
I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION.

OWNER/AUTHORIZED AGENT IN ATTENDANCE _Sherry Winfield_

APPROVED FOR CERT. OF COMPLIANCE _____  DATE _8/10/05_

## GENERAL EXTERIOR

**PM-303.1**    All exterior property and premises shall be maintained in a clean, safe, and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**PM-303.2**    All premises shall be graded and maintained to prevent the accumulation of stagnant water thereon, or within any structure thereon.

**PM-303.3**    All sidewalks, driveways, parking spaces, and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions. Stairs shall comply with the requirements of Sections PM-304.1 and PM-702.9.

**MC 28-2**    All premises and exterior property shall be maintained free from weeds or plant growth in excess of 6 inches. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants, and vegetation, other than trees or shrubs provided; however this term shall not include cultivated flowers and gardens. (Property Maintenance Code covers this item at PM 303.4)

**PM-303.7**    All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**PM-304.1**    The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety, or welfare.

**PM-304.2**    Each structure to which a street number is assigned shall have such number displayed in a position easily observed and readable from the public right-of-way. All numbers shall be in Arabic numerals at least 3 inches high and ½ inch stroke. NOTE: This includes garages in alleys.

**PM-304.5**    All exterior walls shall be free from holes, breaks, loose, or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**PM-304.6**    The roof and flashing shall be sound, tight, and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof water shall not be discharged in a manner that creates a public nuisance. NOTE: These areas are examined from areas not requiring a ladder. The inspector's approval of this item should not be considered a certification of the roof. The inspectors may require certification or repair of the roof based on their limited observations.

**PM-304.8**    All overhang extensions shall be maintained in good repair and be properly anchored so as to be kept in a safe and sound condition. Summarized - All exposed elements shall be protected from the elements and against decay or rust.

**PM-304.9**    All chimneys shall be maintained structurally safe and sound, and in good repair.

**PM-304.11**    Every window, door and frame shall be kept in sound condition, good repair and weather tight.

**PM-304.11.1**    All glazing materials shall be maintained free from cracks and holes.

**PM-304.13**    All exterior doors and hardware shall be maintained in good condition. Locks at all entrances to dwelling units, rooming units, and guest rooms shall tightly secure the door.

**PM-702.11**    All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort.

**PM-304.14**    Every basement hatchway shall be maintained to prevent the entrance of rates, rain, and surface drainage water.

**PM-306.1**    All exterior property and premises, and the interior of every structure shall be free from any accumulation of rubbish or garbage.

## EXTERIOR OF HOUSE AND GARAGE

1) YES    Are property areas being maintained in a clean, safe, and sanitary condition ?

2) YES    Are private sidewalks, driveways, and similar areas being kept free from trip hazards, large cracks, etc. ?

3) YES    Are the weeds, plant growth, and grasses less than 6 inches ?

4) YES    Are fences, retaining walls, porches, and decks in good repair ?

5) YES    Is the street address posted on the property and visible from the public right of ways such as the street and alley ?

6) YES    →Missing or deficient at    REAR OF GARAGE    HOUSE
Are the gutters, siding, fascia, and soffit areas free of peeling paint and deterioration ?

OK 7) NO    Are all the exterior walls and chimneys in good repair ?

8) YES    Is the roof preventing the elements from damaging the structure ?
CERTIFICATION NEEDED YES ____    NO X

OK 9) NO    Are all windows, doors, screens, and frames in good repair on the exterior ?

10) YES    Do the exit doors have single keyed locks/dead bolts or is key permanently in place ?

11) V    Are all light fixtures and electrical outlets in good repair and are outside outlets protected by a ground fault interrupter circuit ?

12) NA    Are all sheds or auxiliary structures in good repair ?

EXTERIOR COMMENTS #2 SEAL PARKING LOT
#7 CHIMNEY UPPER SECTION NEEDS SMALL
AMOUNT OF TUCKPOINTING
#9 REGLAZE BROKEN WINDOWS REPAIR RIPPED SCREENS
#11 LIGHT AT WEST HAS IMPROPER WIRING TO
USE SEAL TIGHT

## MAJOR SYSTEMS

**HB0003 & PM 705.5**

Summarized state law. Smoke detectors shall be provided on each level of the occupancy and within 15 feet of bedrooms. In dwelling units with split levels, a smoke detector installed on the upper level shall suffice for the adjacent lower level if the lower level is less than one full story below the upper level.

**PM-404.5**

Clothes dryer venting systems shall be independent of all other systems and shall be vented in accordance with the manufacturers instructions

## PLUMBING

**PM 505.1**

All plumbing fixtures shall be properly installed and maintained in good working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures area designed. All plumbing fixtures shall be maintained in a safe, sanitary, and functional condition.

**PM-506.2**

The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood level rim of the fixture.

**PM-506.4**

Water heating facilities shall be properly installed, maintained, and capable of providing an adequate amount of water to be drawn at every sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110 degrees. An approved combination temperature and pressure relief valve discharge pipe shall be properly installed and maintained on water heaters. NOTE: The relief valve discharge pipe must be the proper size, type, and 6-12" from the floor. The venting must be properly installed and without rust and/or negative slope.

**PM-507.1**

All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

## HEATING

**PM-603.1**

All mechanical equipment, fireplaces, and solid burning appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function. NOTE: These systems shall not have evidence of back venting, rusted flues, or excessive rust in the appliance. Additional certifications may be required.

**PM-603.2**

All cooking and heating equipment, components, and accessories in every heating, cooking and water heating devices shall be maintained free from leaks and obstructions.

**PM-603.3**

All fuel burning equipment and appliances shall be connected to an approved chimney or vent.

**PM-603.4**

All required clearances to combustible materials shall be maintained.

**PM-603.7**

Devices purporting to reduce fuel consumption by attachment to a fuel burning appliance, to the fuel line thereto, or from the vent outlet or piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved. NOTE: Devices such as those manufactured by Ameritherm shall be removed unless proof can be given that they were approved by manufacturer.

**603 PM.6**

A supply of air for complete combustion of the fuel and for ventilation of the space shall be provided for the fuel burning equipment.

Case 1:08-cv-00555    Document 40-4    Filed 05/21/2008    Page 18 of 45

ADDENDUM TO INSPECTION FOR _90 YATES_    DATE _11-5-04_

INSPECTOR _RODECK_

ADDITIONAL COMMENTS

APT 3W — BATHROOM FLOOR TILES MISSING — WALL

TILES + SOAP DISH LOOSE + NEED GROUT — PATCH OK

& PAINT B.R WALL — SMOKE DEP. OK BUSHING OK

APT 3E. BATHROOM LIGHT NEEDS GLOBE   USING

DOUBLE POLE BREAKER W/ONLY ONE WIRE TO IT

APT 2E — B.R WEST RECT REVI POL — LOW

OK — WATER PRESSURE AT LAV FAUCET — BATH FLOOR

OK — TILES LOOSE OR MISSING — KIT FAUCET HOT —

COLD REV — PANEL OK

APT — BATHROOM FLOOR TILES MISSING — GROUT

WALL TILES — B.R CLOSET LIGHT OK

OK B.R DOOR HAS HOLE — PATCH + PAINT BATHROOM CEILING

PANEL ~ OK

KIT. FAUCET HOT COLD REV,   OK

OK SOAP DISH LOOSE AT TUB WALL — SERVICE

OK — PANEL DOUBLE LUGGED + TRUST HOLE COVER

OK APT 1WEST — SERVICE PANEL DOUBLE LUGGED + HAS

DOUBLE POLE BREAKER W/ONLY ONE WIRE TO IT

*OK Filed 050:*

**MAJOR SYSTEMS PLUMBING**

*PROVIDE RECPT- FOR (SINGLE ONLY)*

OK  25) *NO*   Is the water heater properly installed ?

26) *YES*   Are the drains and supply pipes free from leaks and is all drains attached to the drain/waste/vent system ?

27) *YES*   Are gas valves present at gas supply piping to appliances and flexible lines free from corrosion ?
MISSING AT _____    REPLACE AT _____

28) *N/A*   Is sump pump piping acceptable at this time ?

_____
_____

**HEATING UNITS**   *PP 2651*

29) *YES*   Is the furnace/wall/boiler units working properly and free from excessive rust or debris ?   *PERMIT*

*~~GLASS AT GORGE BROKE~~   PROVIDE BACKFLOW*
*PREVENTER (PERMIT REQ)   RUNNING TOO HOT*

30) *N/A*   Is fireplace free from cracks, creosote, or deterioration, and is damper working ?

OK 31) *NO*   Are smoke detectors present on each level at each hall and within 15 feet of mechanical areas ?
12/8   MISSING/INOPERABLE AT *HARDWIRED INTERCONNECTED W/*

A 32) *YES*   Is the foundation free from large cracks ?   *BATTERY BACK UP*

33) *YES*   Is the structure of the building free from unusual sagging, deterioration, and obvious structural problems ?   *ELEC PERMIT REQ*

**ELECTRICAL**

34) *NO*   Are electrical panels properly installed and proper size ?   *OK 12/8*

*SEE IND APTS & LABEL COMMON PANEL*

_____

35) Are all exit and emergency lights operating properly ?   *6 R OK DEDICATE LAUNDRY RECPTS.*

*OK*
**FIRE PROTECTION SYSTEMS**

_____ CERTIFICATION NEEDED ON 12/8   STANDPIPE    SPRINKLER SYSTEM
SMOKE DETECTORS    FIRE ALARM

_____ NO PARKING SIGNS NEEDED AT FIRE DEPARTMENT CONNECTION

_____ EXPIRED EXTINGUISHER SERVICING AT _____

_____ MISSING EXTINGUISHER AT _____

_____ IS SELF CLOSURE INSTALLED ON LAUNDRY ROOM ?

**ELEVATORS**

_____ Elevators must be certified as complying with ASME A17.1-90, Safety Code for Elevators and Escalators.

_____ Certification or inspection within last year presented ?

## ELECTRICAL

**MCS-308b1**

Electrical Service: Single family residences shall have a minimum of 100 amp service and multiple unit residences shall comply with the latest code.

**PM-604.3**

Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient outlets, improper wiring, or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard. NOTE: Similar reasons include but are not limited to, ground fault interrupter circuits shall protect all outlets within 6 feet of plumbing fixtures, those in garages, outside, and basement outlets other than the sump pump.

**PM 605.2**

Every habitable space in a dwelling shall contain at least two separate and remote receptacles outlets. Every laundry area shall contain at least one grounded type receptacle. Every bathroom shall contain at least one receptacle.

**PM-605.3**

Every public hall, interior stairway, water closet compartment, bathroom, laundry room, and furnace room, shall contain at least one electric lighting fixture. NOTE: Other areas of the code allow the inspector to judge sufficiency of the lighting. It is expected that there will be sufficient lighting for safe servicing of the equipment within a room.

## DEFINITIONS

**Bathroom:** A room containing plumbing fixtures including a bathtub or shower.

**Habitable space:** Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet compartments, closets, halls, storage, or utility spaces, and similar space are not considered habitable spaces.

**Openable Area:** The part of a window or door which is available for unobstructed ventilation and which opens directly to the outdoors.

**Toilet Room:** A room containing a water closet or urinal but not a bathtub or shower.

## GENERAL STATEMENTS

**PM-101.6** All repairs, maintenance work, alterations, or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner.

**PM-103.1** All equipment, systems, devices, and safeguards required by this code or a previous statute or code shall be maintained in good working order. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures.

**PM-104.1** All materials, equipment, and devices approved by the code official shall be constructed and installed in accordance with such approval.

**PM 105.1** The code official shall enforce all of the provisions of this code.

**PM-405.3** Every room occupied for sleeping purposes by one occupant shall contain at least 70 square feet of floor area, and every room occupied for sleeping purposes by more than one person shall contain at least 50 square feet of floor area for each occupant thereof.



## DEPARTMENT OF INSPECTIONAL SERVICES
## POINT OF SALE TRACKING SHEET

LOCATION OF INSPECTION  *1683 State St*

PRESENT ZONING *R-3* WARD *3*  SIDWELL GRID _____

COURT CASES/ COLLECTIONS OR LIENS PENDING *none*

LAST RENTAL INSPECTION _____ UNITS APPROVED _____

LAST BUILDING OR FIRE INSPECTION  *2/14/02*

ANY PREVIOUS MODIFICATIONS/ ADDITIONS *permits in file*

CURRENT VIOLATIONS ON FILE? RENTAL *yes* BLDG *yes*

(CONTACT HEALTH DEPARTMENT IF APPLICABLE)

REVIEWED BY : _____

INSPECTOR ASSIGNED *Radeck*

CONDITIONAL CERTIFICATE # _____ DATE _____

FINAL INSPECTION DATE_____ INSPECTOR _____

CERTIFICATE APPROVAL BY DEPT. DIRECTOR_____ DATE_____



# CALUMET CITY FIRE DEPARTMENT
## DEPARTMENT OF INSPECTIONAL SERVICES
### (708) 891-8120
### RESIDENTIAL/MULTIFAMILY P.O.S. INSPECTION

The following is the result of the inspection on the occupancy at _1683 STATE ST._ This inspection is not in any way intended to be a complete list of Code or Municipal Ordinance requirements. Our inspection can be substantially limited by access available and stored items or furniture. It is not meant to take the place of private home inspections nor will it cover the same items. Some occupancies may require certifications to be completed on individual systems such as the heating appliances, roofing, or fire protection systems. Specific requirements of the point of sale inspections and limitations is available by referring to Municipal Code Section 6-308 as amended on May 9, 1996. The first inspection and subsequent re-inspection is included in the cost. Any additional inspections or failure of owner/agent/designee to appear for a scheduled inspection will require additional fees.

The inspector will note the deficiencies by writing "NO" in the blank in front of the statement and may additionally circle a specific area or make comments. On the back of the inspection sheets is some of the code language that relates to the deficiencies noted by the inspector. The "PM" sections refer to the present adopted Property Maintenance Code and the "MC" refers to Municipal Code references. There may be additional Code requirements that explain a deficiency. Non-conforming structures may be subject

Some of the repairs may require registered contractors and permits. If you have any questions about this inspection please call us at (708) 891-8120.

INSPECTOR _Rodeck_                1ST INSPECTION DATE _2-26-04_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION. OWNER/AUTHORIZED AGENT IN ATTENDANCE _Robert J. Lesch_

PRINTED NAME _Robert J. Lesch_

INSPECTOR _Rodeck_        REINSPECTION DATE _4-14-04_    TIME _9:00_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION.

OWNER/AUTHORIZED AGENT IN ATTENDANCE _____

APPROVED FOR CERT. OF COMPLIANCE _____ DATE _____

## GENERAL EXTERIOR

**PM-303.1**    All exterior property and premises shall be maintained in a clean, safe, and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**PM-303.2**    All premises shall be graded and maintained to prevent the accumulation of stagnant water thereon, or within any structure thereon.

**PM-303.3**    All sidewalks, driveways, parking spaces, and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions. Stairs shall comply with the requirements of Sections PM-304.1 and PM-702.9.

**MC 28-2**    All premises and exterior property shall be maintained free from weeds or plant growth in excess of 6 inches. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants, and vegetation, other than trees or shrubs provided; however this term shall not include cultivated flowers and gardens. (Property Maintenance Code covers this item at PM 303.4)

**PM-303.7**    All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**PM-304.1**    The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety, or welfare.

**PM-304.2**    Each structure to which a street number is assigned shall have such number displayed in a position easily observed and readable form the public right-of-way. All numbers shall be in Arabic numerals at least 3 inches high and ½ inch stroke. NOTE: This includes garages in alleys.

**PM-304.5**    All exterior walls shall be free from holes, breaks, loose, or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**PM-304.6**    The roof and flashing shall be sound, tight, and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof water shall not be discharged in a manner that creates a public nuisance. NOTE: These areas are examined from areas not requiring a ladder. The inspectors' approval of this item should not be considered a certification of the roof. The inspectors may require certification or repair of the roof based on their limited observations.

**PM-304.8**    All overhang extensions shall be maintained in good repair and be properly anchored so as to be kept in a safe and sound condition. Summarized - All exposed elements shall be protected from the elements and against decay or rust.

**PM-304.9**    All chimneys shall be maintained structurally safe and sound, and in good repair.

**PM-304.11**    Every window, door and frame shall be kept in sound condition, good repair and weather tight.

**PM-304.11.1**    All glazing materials shall be maintained free from cracks and holes.

**PM-304.13**    All exterior doors and hardware shall be maintained in good condition. Locks at all entrances to dwelling units, rooming units, and guest rooms shall tightly secure the door.

**PM-702.11**    All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort.

**PM-304.14**    Every basement hatchway shall be maintained to prevent the entrance of rodents, rain, and surface drainage water.

**PM-306.1**    All exterior property and premises, and the interior of every structure shall be free from any accumulation of rubbish or garbage.

**EXTERIOR OF HOUSE AND GARAGE**          1683          ③

1) _YES_          Are property areas being maintained in a clean, safe, and sanitary condition ?

2) _YES_          Are private sidewalks, driveways, and similar areas being kept free from trip hazards, large cracks, etc. ?

3) _YES_          Are the weeds, plant growth, and grasses less than 6 inches ?

4) _NO_          Are fences, retaining walls, porches, and decks in good repair ?

5) _YES_          Is the street address posted on the property and visible from the public right of ways such as the street and alley ?
                 Missing or deficient at          REAR OF GARAGE          HOUSE

6) _YES_          Are the gutters, siding, fascia, and soffit areas free of peeling paint and deterioration ?

7) _YES_          Are all the exterior walls and chimneys in good repair ?

8) _YES_          Is the roof preventing the elements from damaging the structure ?
                 CERTIFICATION NEEDED YES ____ NO ____

9) _NO_          Are all windows, doors, screens, and frames in good repair on the exterior ?

10) _YES_          Do the exit doors have single keyed locks/dead bolts or is key permanently in place ?

11) _YES_          Are all light fixtures and electrical outlets in good repair and are outside outlets protected by a ground fault interrupter circuit ?

12) _NA_          Are all sheds or auxillary structures in good repair ?

EXTERIOR COMMENTS _PROVIDE JOIST HANGERS AT ALL DECKS_
_BROKEN WINDOW. 1ST FL SOUTH_

## MAJOR SYSTEMS

**HB0003 & PM 705.5**    Summarized state law.  Smoke detectors shall be provided on each level of the occupancy and within 15 feet of bedrooms. In dwelling units with split levels, a smoke detector installed on the upper level shall suffice for the adjacent lower level if the lower level is less than one full story below the upper level.

**PM-404.5**    Clothes dryer venting systems shall be independent of all other systems and shall be vented in accordance with the manufacturers instructions

### PLUMBING

**PM 505.1**    All plumbing fixtures shall be properly installed and maintained in good working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures area designed. All plumbing fixtures shall be maintained in a safe, sanitary, and functional condition.

**PM-506.2**    The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood level rim of the fixture.

**PM-506.4**    Water heating facilities shall be properly installed, maintained, and capable of providing an adequate amount of water to be drawn at every sink, lavatory , bathtub, shower and laundry facility at a temperature of not less than 110 degrees. An approved combination temperature and pressure relief valve discharge pipe shall be properly installed and maintained on water heaters. NOTE: The relief valve discharge pipe must be the proper size, type, and 6-12" from the floor. The venting must be properly installed and without rust and/or negative slope.

**PM-507.1**    All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

### HEATING

**PM-603.1**    All mechanical equipment, fireplaces, and solid burning appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function. NOTE: These systems shall not have evidence of back venting, rusted flues, or excessive rust in the appliance. Additional certifications may be required.

**PM-603.2**    All cooking and heating equipment, components, and accessories in every heating ,cooking and water heating devices shall be maintained free from leaks and obstructions.

**PM-603.3**    All fuel burning equipment and appliances shall be connected to an approved chimney or vent.

**PM-603.4**    All required clearances to combustible materials shall be maintained.

**PM-603.7**    Devices purporting to reduce fuel consumption by attachment to a fuel burning appliance, to the fuel line thereto, or from the vent outlet or piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved. NOTE: Devices such as those manufactured by Ameritherm shall be removed unless proof can be given that they were approved by manufacturer..

**603 PM.6**    A supply of air for complete combustion of the fuel and for ventilation of the space shall be provided for the fuel burning equipment.

④ ③

ADDENDUM TO INSPECTION FOR ~~Doc 40-3~~ STATE ___ DATE 2-26-04

INSPECTOR RODECK _____

ADDITIONAL COMMENTS _____

4/14 2D— DISHWASHER DISCHARGE ON WRONG SIDE OF P-TRAP
REMOVE POWER TO MED. CAB. RECPT.

2A— PLUG HOLES INSIDE SERVICE PANEL

3D— DISHWASHER DISCHARGE ON WRONG SIDE OF P-TRAP
REPAIR BR. CLOSET DOORS — CLOSET LIGHTS NEED
GLOBES — SECURE KIT CABS ABOVE OVEN — TOILET
LOOSE AT FLOOR (FLOOR & WALL TILES MISSING)
BATHROOM (REMOVE POWER TO MED. CAB. RECPT)
SECURE SMOKE DET. TOP FLOOR STAIRWAY

3C — DISHWASHER DISCHARGE ON WRONG SIDE OF
P-TRAP — EAST RECPT. (LR) NO POWER — TENANT
TO DEGREASE OVEN & AREAS — A.C. UNIT RECPT.
OPEN GROUND & (USING DOUBLE POLE BREAKER AT 110)
WEST BR. EAST RECPT. LOOSE AT WALL — RIGHT
FAUCET AT LAV. NEEDS WASHERS & REPAIR VANITY RECPT.
CLOSET LIGHTS NEED GLOBES — REMOVE POWER TO MED CAB

3A— KIT. EXHAUST NEEDS REPAIR — PLASTIC HOSE CONNECTION
AT KIT FAUCET — DISHWASHER DISCHARGE PIPE ON
WRONG SIDE OF P-TRAP — CLOSET LIGHTS NEED GLOBES
~~3B~~ (BATHROOM FLOOR TILES MISSING) LOOSE

K 3B— KIT FAUCET NEEDS NEW CARTRIDGE — KIT. CAB
14 FRONTS MISSING ALSO FLOOR TILES — DISHWASHER
DISHCHARGE PIPE ON WRONG SIDE OF P-TRAP
LR SOUTH RECPT. REV. POL. — PATIO SCREEN RIPPED —
RIGHT LAV DRAIN IS SLOW

③

ADDENDUM TO INSPECTION FOR ~~ment 40~~ ~~1203~~ ~~FT~~ STATE            DATE 2-26-04

INSPECTOR RODECK

ADDITIONAL COMMENTS

# 14  1B- PLACE CAP AT KIT DRAW (NO DUCTTAPE) - SERVICE
PANEL DOUBLE LUGGED - CLOSET LIGHTS NEED GLOBES -
BATH GFI. HEAVILY PAINTED - ENTRY DOOR TRIMS NEED PAINT
1A - DOUBLE POLE BREAKER FOR A.C. UNIT - ENTRY DOOR TRIMS
NEED PAINT (CLOSET LIGHT NEEDS GLOBE)

# 14  1D - DISHWASHER DISCHARGE AFTER P-TRAP - PROVIDE
DOUBLE POLE BREAKER FOR A.C. & PLUG HOLE INSIDE
1C - DISHWASHER DISCHARGE WRONG SIDE OF P-TRAP
TUB DRAW IS SLOW - MOLD AT LINEN CLOSET WALLS
CLOSET LIGHTS NEED GLOBES (COULD NOT LOCATE PANEL)
2B - KIT CABS NEED REPAIR - DISHWASHER DISCHARGE ON
WRONG SIDE OF P-TRAP - TENANT TO DEGREASE OVEN & AREAS
BATH G.FI. NOT TESTING - BATH FLOOR TILES MISSING
REPLACE HEAVILY PAINTED REGTR, CLOSET LIGHTS NEED GLOBES
(PLUG HOLE INSIDE SERVICE PANEL)

# 14  2C - SMOKE DET - DISHWASHER DISCHARGE ON
WRONG SIDE OF P-TRAP - REPAIR KIT DRAWER

*[handwritten] 1683*     (3)

## MAJOR SYSTEMS PLUMBING

25) *YES*    Is the water heater properly installed ?

26) *YES*    Are the drains and supply pipes free from leaks and is all drains attached to the drain/waste/vent system ?

27) *YES*    Are gas valves present at gas supply piping to appliances and flexible lines free from corrosion ?
MISSING AT _____ REPLACE AT _____

28) *N/A*    Is sump pump piping acceptable at this time ?

*OK [handwritten] PROVIDE 1" CLEARANCE FROM BOILER & WATER HEATER*
*[handwritten] FLUE AT WALL*

## HEATING UNITS   *[handwritten] EXHAUST ALL RANGE HOODS TO EXTERIOR*

29) *NO*    Is the furnace/wall/boiler units working properly and free from excessive rust or debris ?

*[handwritten] CERT REQ LIC IN CAL. CTY CONTRACTOR*
*[handwritten] ALSO BACK FLOW PREVENTER OK*

30) *N/A*    Is fireplace free from cracks, creosote, or deterioration, and is damper working ?

31) *NO*    Are smoke detectors present on each level at each hall and within 15 feet of mechanical areas ?
MISSING/INOPERABLE AT *SEE IND APTS*

32) *YES*    Is the foundation free from large cracks ?

33) *YES*    Is the structure of the building free from unusual sagging, deterioration, and obvious structural problems ?

## ELECTRICAL

34) *NO*    Are electrical panels properly installed and proper size ?

*[handwritten] SEE IND APTS COMMON - OK*

35) Are all exit and emergency lights operating properly ? _____

## FIRE PROTECTION SYSTEMS

____ CERTIFICATION NEEDED ON      STANDPIPE      SPRINKLER SYSTEM
                                  SMOKE DETECTORS      FIRE ALARM
____ NO PARKING SIGNS NEEDED AT FIRE DEPARTMENT CONNECTION
____ EXPIRED EXTINGUISHER SERVICING AT _____
____ MISSING EXTINGUISHER AT _____
____ IS SELF CLOSURE INSTALLED ON LAUNDRY ROOM ?

## ELEVATORS

Elevators must be certified as complying with ASME A17.1-90, Safety Code for Elevators and Escalators.

____ Certification or inspection within last year presented ?

## ELECTRICAL

**MC6-308b1**

Electrical Service: Single family residences shall have a minimum of 100 amp service and multiple unit residences shall comply with the latest code

**PM-604.3**

Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient outlets, improper wiring, or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard. NOTE: Similar reasons include but are not limited to, ground fault interrupter circuits shall protect all outlets within 6 feet of plumbing fixtures, those in garages, outside , and basement outlets other than the sump pump.

**PM 605.2**

Every habitable space in a dwelling shall contain at least two separate and remote receptacles outlets. Every laundry area shall contain at least one grounded type receptacle. Every bathroom shall contain at least one receptacle.

**PM-605.3**

Every public hall, interior stairway, water closet compartment, bathroom, laundry room, and furnace room, shall contain at least one electric lighting fixture. NOTE: Other areas of the code allow the inspector to judge sufficiency of the lighting. It is expected that there will be sufficient lighting for safe servicing of the equipment within a room.


## DEFINITIONS

**Bathroom:**          A room containing plumbing fixtures including a bathtub or shower.

**Habitable space:**   Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet compartments, closets, halls, storage, or utility spaces, and similar space are not considered habitable spaces.

**Openable Area:**     The part of a window or door which is available for unobstructed ventilation and which opens directly to the outdoors.

**Toilet Room:**       A room containing a water closet or urinal but not a bathtub or shower.

## GENERAL STATEMENTS

**PM-101.6**

All repairs, maintenance work, alterations, or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner.

**PM-103.1**

All equipment, systems, devices, and safeguards required by this code or a previous statute or code shall be maintained in good working order. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures.

**PM-104.1**

All materials, equipment, and devices approved by the code official shall be constructed and installed in accordance with such approval.

**PM 105.1**

The code official shall enforce all of the provisions of this code.

**PM-405.3**

Every room occupied for sleeping purposes by one occupant shall contain at least 70 square feet of floor area, and every room occupied for sleeping purposes by more than one person shall contain at least 50 square feet of floor area for each occupant thereof.

# CITY OF CALUMET CITY
## DEPARTMENT OF INSPECTIONAL SERVICES
708-891-8120

*pos
2-26-04
gdw*

### NOTICE OF INTENT TO SELL AND APPLICATION FOR OCCUPANCY INSPECTION

**Notice is hereby given that the property hereinafter described is being offered for sale and the undersigned, as the owner or authorized agent, hereby requests the City of Calumet City to inspect the premises hereinafter described, both interior and exterior, and does hereby consent to said inspection. Applicant signing this authorization acknowledges that the back of this form has been read and agreed to, and acknowledges that a copy of the Point of Sale Requirement Ordinance is available upon request.**

Property Address: 1683 State        Phone _____ Occupied by SELLER/(TENANT) VACANT

Legal Description of Property and ALL associated R.E. Index #'s: 29-12-202-089-1013 through 1024

_____

_____

If address or index number is improper this form shall be invalid.

Current Owner Name: STATE STREET LLC Bus. Phone 773/581-3300 Home Phone _____
If land trust, state beneficiaries with names and addresses. Attach on another sheet if necessary.

Address: 6036 S. Central, Chicago, IL    60638
                 Street                    City      State        Zip

Property Type? Commercial ___ Residential ___ Multifamily X # of Units 12

Listing broker: Brian Kuzdas        Company: Brookshire Investment by Inc. Phone: 773/581-3300

Selling Broker (or under contract) Brian Kozdas   Company Brookshire Investment Inc. Contract Price $590,000.

Prospective buyer (Include all buyers to prospective deed): Keith Avery
If trust state beneficiaries.

Buyers Current Address:  9605 S. Claremont    Chicago    IL    60643
                                        Street                City       State    Zip

Will the buyer occupy the property? Yes ___ No X   Buyers Phone: 773/881-4027 Date of Closing 3/5/04

Buyers Lending Institution: BankFinancial        Phone: 800/894-6100

Check Appropriate Type of Loan: Conventional X FHA/HUD ___ VA ___ CASH/OTHER ___

**THIS FORM MUST BE FILLED OUT IN ITS ENTIRETY OR IT WILL NOT BE ACCEPTED**

Owner/Authorized Agent Signature: Anthony Caciopo Print Name Anthony Caciopo Date Feb. 19, 2004

### DO NOT WRITE BELOW THIS LINE - FOR OFFICIAL USE ONLY

FEE PAID BY CASH/CHECK # 140 AMOUNT ____ DATE 2/25/04 CLERK SIGNATURE MC

ORIGINAL - CITY        YELLOW - CITY INSPECTOR    PINK - APPLICANT

417

## FEES FOR POINT OF SALE

| | |
|---|---|
| $100.00 | All multifamily and residential buildings for the initial inspection and ONE reinspection. |
| $.10 per S.F. | All commercial and industrial buildings with the minimum fee of $100.00 and a maximum fee of $750.00. |
| $50.00 | Additional follow up inspections on all buildings after initial and first reinspection. |
| $50.00 | Penalty for an failure of an Owner/Seller or his/her designee/agent to appear at any inspection. |

---

### Portion of Ordinance Relating to Point of Sale Inspection

In issuing a Certificate of Compliance, whether temporary or permanent, the City of Calumet City does not make any warranty, representation or statement nor does it intend to insure or guarantee to either the Buyer or Seller of the property subject to the point-of-sale inspection or any of their designees, agents, representatives, heirs, or assigns, or any other interested party, including but not limited to mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point-of-sale inspection, nor does the City affirm that there are no additional unnoted violations relative to any other provisions of any of the codified ordinances of the City of Calumet City, the B.O.C.A. Code or relevant statutes, ordinances, rules, and regulations of the County of Cook, the State of Illinois or the United States of America.

COPIES OF THE COMPLETE ORDINANCE ARE AVAILABLE FROM THE CITY OF CALUMET CITY CLERKS OFFICE

---

This form must be completed & with the Department at least 2 weeks prior to requesting an inspection. The "Certificate of Compliance" or "Conditional Certificate with sworn affidavit" must be dated not more than 180 days before the closing date. The required fees must be paid prior to the inspection to the City of Calumet City. The final water bill must also be paid prior to issuance of the real estate transfer stamps.

Case 1:08-cv-00555     Document 40-4     Filed 05/21/2008     Page 34 of 45





# CALUMET CITY FIRE DEPARTMENT

## DEPARTMENT OF INSPECTIONAL SERVICES
### POINT OF SALE TRACKING SHEET

Location of inspection ___QQ Luella_____

Present Zoning _R3___ Aldermanic Ward _3___ Sidwell Grid_____

Court Cases Pending _____NONE_____

Last Rental Inspection ___1/31/02___ Units Approved ___5___

Last Fire Inspection_____ Last Building Inspection_____

Any Previous Modifications/ Additions ___NONE_____
                                        Bldg

Current Violations on File? Rental _YES_ Fire _NONE_ Health _PM_

Reviewed by: Housing __M__ Date_____ Fire __M__ Date_____

Building __DS__ Date_____ Health __NA__ Date_____

Inspector Assigned _S. Rodeck_____

Conditional Certificate Approved by Dept. Director_____ Date_____

Final Inspection Date _7-19-04_ Inspector _Rodeck____

Certificate Approval by Dept. Director _____ Date _7-19-04_

# CALUMET CITY FIRE DEPARTMENT
## DEPARTMENT OF INSPECTIONAL SERVICES
### (708) 891-8120
### RESIDENTIAL/MULTIFAMILY P.O.S. INSPECTION

The following is the result of the inspection on the occupancy at _98 LUELLA_. This inspection is not in any way intended to be a complete list of Code or Municipal Ordinance requirements. Our inspection can be substantially limited by access available and stored items or furniture. It is not meant to take the place of private home inspections nor will it cover the same items. Some occupancies may require certifications to be completed on individual systems such as the heating appliances, roofing, or fire protection systems. Specific requirements of the point of sale inspections and limitations is available by referring to Municipal Code Section 6-308 as amended on May 9, 1996. The first inspection and subsequent re-inspection is included in the cost. Any additional inspections or failure of owner/agent/designee to appear for a scheduled inspection will require additional fees.

The inspector will note the deficiencies by writing "NO" in the blank in front of the statement and may additionally circle a specific area or make comments. On the back of the inspection sheets is some of the code language that relates to the deficiencies noted by the inspector. The "PM" sections refer to the present adopted Property Maintenance Code and the "MC" refers to Municipal Code references. There may be additional Code requirements that explain a deficiency. Non-conforming structures may be subject

*Some of the repairs may require registered contractors and permits. If you have any questions about this inspection please call us at (708) 891-8120.*

INSPECTOR _RoDeeK_       1ST INSPECTION DATE _7-29-03_

I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION. OWNER/AUTHORIZED AGENT IN ATTENDANCE _____

PRINTED NAME _Arnold Tate J_____

INSPECTOR _RoLeK/Kowalczyk_ REINSPECTION DATE _4-12-04_ TIME _8:00_
I AM THE OWNER/AUTHORIZED AGENT OF THE ABOVE PROPERTY AND CAN LEGALLY AUTHORIZED THIS INSPECTION. I HAVE RECEIVED PERMISSION FROM ANY TENANTS/LEASEES TO ENTER THEIR PROPERTY FOR THIS INSPECTION.

OWNER/AUTHORIZED AGENT IN ATTENDANCE _Ray A Willia_____

APPROVED FOR CERT. OF COMPLIANCE _____ DATE _7/19/04_

Case 1:08-cv-00555    Document 40-4    Filed 05/21/2008    Page 38 of 45

## GENERAL EXTERIOR

**PM-303.1**    All exterior property and premises shall be maintained in a clean, safe, and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**PM-303.2**    All premises shall be graded and maintained to prevent the accumulation of stagnant water thereon, or within any structure thereon.

**PM-303.3**    All sidewalks, driveways, parking spaces, and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions. Stairs shall comply with the requirements of Sections PM-304.1 and PM-702.9.

**MC 28-2**    All premises and exterior property shall be maintained free from weeds or plant growth in excess of 6 inches. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants, and vegetation, other than trees or shrubs provided; however this term shall not include cultivated flowers and gardens. (Property Maintenance Code covers this item at PM 303.4)

**PM-303.7**    All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**PM-304.1**    The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety, or welfare.

**PM-304.2**    Each structure to which a street number is assigned shall have such number displayed in a position easily observed and readable form the public right-of-way. All numbers shall be in Arabic numerals at least 3 inches high and ½ inch stroke. NOTE: This includes garages in alleys.

**PM-304.5**    All exterior walls shall be free from holes, breaks, loose, or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**PM-304.6**    The roof and flashing shall be sound, tight, and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof water shall not be discharged in a manner that creates a public nuisance. NOTE: These areas are examined from areas not requiring a ladder. The inspectors' approval of this item should not be considered a certification of the roof. The inspectors may require certification or repair of the roof based on their limited observations.

**PM-304.8**    All overhang extensions shall be maintained in good repair and be properly anchored so as to be kept in a safe and sound condition. Summarized - All exposed elements shall be protected from the elements and against decay or rust.

**PM-304.9**    All chimneys shall be maintained structurally safe and sound, and in good repair.

**PM-304.11**    Every window, door and frame shall be kept in sound condition, good repair and weather tight.

**PM-304.11.1**    All glazing materials shall be maintained free from cracks and holes.

**PM-304.13**    All exterior doors and hardware shall be maintained in good condition. Locks at all entrances to dwelling units, rooming units, and guest rooms shall tightly secure the door.

**PM-702.11**    All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort.

**PM-304.14**    Every basement hatchway shall be maintained to prevent the entrance of rates, rain, and surface drainage water.

**PM-306.1**    All exterior property and premises, and the interior of every structure shall be free from any accumulation of rubbish or garbage.

08/02/ 98   LUELLA

**EXTERIOR OF HOUSE AND GARAGE**

1) YES    Are property areas being maintained in a clean, safe, and sanitary condition ?

ok 2) NO    Are private sidewalks, driveways, and similar areas being kept free from trip hazards, large cracks, etc. ?

ok 3) NO    Are the weeds, plant growth, and grasses less than 6 inches ?

4) YES    Are fences, retaining walls, porches, and decks in good repair ?

ok 5) NO    Is the street address posted on the property and visible from the public right of ways such as the street and alley ?

7-14 6) NO    Missing or deficient at (REAR OF GARAGE & HOUSE)
Are the gutters, siding, fascia, and soffit areas free of peeling paint and deterioration ?

ok 7) NO    Are all the exterior walls and chimneys in good repair ?

8) YES    Is the roof preventing the elements from damaging the structure ?
CERTIFICATION NEEDED YES ____ NO ____

9) NO    Are all windows, doors, screens, and frames in good repair on the exterior ?

10) YES    Do the exit doors have single keyed locks/dead bolts or is key permanently in place ?

11) NO    Are all light fixtures and electrical outlets in good repair and are outside outlets protected by a ground fault interrupter circuit ?

12) N/A    Are all sheds or auxillary structures in good repair ?

ok
**EXTERIOR COMMENTS** #2 SEAL PARKING AREA
#3 CUT BACK BUSHES & TREE RUBBING AT ROOF
#6 DOWNSPOUTS NEED ELBOWS
#7 TUCKPOINT GAPS AT LIMESTONE SILLS
#9 REGLAZE BROKEN WINDOWS - REPLACE RIPPED
OR MISSING STORMS, SCREENS, & WINDOWS. —
WINDOWS NEED GLAZING COMPOUND & PAINT
#11 PROVIDE OUTSIDE TYPE BULBS AT WEST
UNABLE TO TEST EAST GFI ELEC. WAS OFF
SOFFIT PANELS MISSING NORTHWEST CORNER, GUTTERS
DAMAGED AT N.W. CORNER AND NORTH CORNER. ALSO DOWNSPOUT
ELBOW MISSING AT FRONT DOOR N.E. CORNER. CAP OLD
DRYER VENT GROUND FLOOR SOUTH WEST CORNER

Case 1:08-cv-00555    Document 40-4    Filed 05/21/2008    Page 40 of 45

## MAJOR SYSTEMS

**HB0003 & PM 705.5**    Summarized state law. Smoke detectors shall be provided on each level of the occupancy and within 15 feet of bedrooms. In dwelling units with split levels, a smoke detector installed on the upper level shall suffice for the adjacent lower level if the lower level is less than one full story below the upper level.

**PM-104.5**    Clothes dryer venting systems shall be independent of all other systems and shall be vented in accordance with the manufacturers instructions

### PLUMBING

**PM 505.1** ____ All plumbing fixtures shall be properly installed and maintained in good working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures area designed. All plumbing fixtures shall be maintained in a safe, sanitary, and functional condition.

**PM-506.2**    The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood level rim of the fixture.

**PM-506.4**    Water heating facilities shall be properly installed, maintained, and capable of providing an adequate amount of water to be drawn at every sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110 degrees. An approved combination temperature and pressure relief valve discharge pipe shall be properly installed and maintained on water heaters. NOTE: The relief valve discharge pipe must be the proper size, type, and 6-12" from the floor. The venting must be properly installed and without rust and/or negative slope.

**PM-507.1**    All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

### HEATING

**PM-603.1**    All mechanical equipment, fireplaces, and solid burning appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function. NOTE: These systems shall not have evidence of back venting, rusted flues, or excessive rust in the appliance. Additional certifications may be required.

**PM-603.2**    All cooking and heating equipment, components, and accessories in every heating , cooking and water heating devices shall be maintained free from leaks and obstructions.

**PM-603.3**    All fuel burning equipment and appliances shall be connected to an approved chimney or vent.

**PM-603.4**    All required clearances to combustible materials shall be maintained.

**PM-603.7**    Devices purporting to reduce fuel consumption by attachment to a fuel burning appliance, to the fuel line thereto, or from the vent outlet or piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved. NOTE: Devices such as those manufactured by Ameritherm shall be removed unless proof can be given that they were approved by manufacturer..

**603 PM.6**    A supply of air for complete combustion of the fuel and for ventilation of the space shall be provided for the fuel burning equipment.

ADDENDUM TO INSPECTION FOR 98 LUELLA        DATE 7-29-03

INSPECTOR RODECK                                * Hang Closet Door

ADDITIONAL COMMENTS Carpeting Missing – Front Entry Jamb broke

OK APT ONE – PATCH – PAINT – CLEAN – DECORATE ETC.

OK HANG DOORS – REPAIR KIT, & VANITY BOTTOMS

OK DOOR TO LAUNDRY ROOM TO HAVE SELF CLOSURE –

OK INSTALL MISSING WINDOWS – SMOKE DET – PLASTIC

OK HOSE CONNECTIONS AT PLUMBING FIXTURES – LIGHTS

OK NEED GLOBES – NO ELEC OR WATER Shut off Valve* Leaks at Toilet

OK APT TWO SOUTH – PATCH – PAINT – CLEAN – DECORATE –

OK REPAIR BATHROOM CEILING – L.R. HAS HEAVILY PAINTED

OK RECPT. – ENTRY DOOR TO BE VARNISHED – SMOKE

OK DET. – PLASTIC HOSE CONNECTIONS AT PLUMBING

OK FIXTURES – TUB HANDLE MISSING – LIGHTS NEED

OK GLOBES – TOILET LOOSE AT FLOOR (NO WATER)

OK APT 2 NORTH – PATCH & PAINT – BATH WALL TILES

OK MISSING – SMOKE DET. – CLEAN – DECORATE –

OK WATER IS OFF – ENTRY DOOR JAMB BROKEN –

OK KIT CAB FRONTS MISSING – KIT G.F.I. REV&POL.

OK TOILET LOOSE AT FLOOR – L.R. COVER PLATE

OK MISSING AT LIGHT SWITCH

ADDENDUM TO INSPECTION FOR  98 LUELLA  DATE 7-29-03

INSPECTOR  RADECK

. ADDITIONAL COMMENTS

OK APT THREE NORTH — ENTRY DOOR JAMB
OK BROKEN — NEW DOORS TO BE VARNISHED
OK REAR ENTRY DOOR IS BROKEN — BATH VANITY MISSING
OK TOILET LOOSE AT FLOOR — FRIDGE RECPT. HEAVILY
OK PAINTED — COVER PLATES MISSING — SMOKE DET.
OK LIGHTS NEED GLOBES — PATCH, PAINT, CLEAN,
OK DECORATE
OK APT THREE SOUTH — DEGREASE OVEN & ITS AREA
OK PLASTIC HOSE CONNECTIONS AT PLUMBING FIXTURES
OK ENTRY DOORS MISSING HARDWARE — PATCH, PAINT
OK CLEAN DECORATE — HANG DOORS — LIGHTS NEED
OK GLOBES — ENTRY DOOR JAMB BROKEN — B.R. DOORS
OK MISSING HARDWARE — SMOKE DET.

FAX #

ADDENDUM TO INSPECTION FOR _98 Luella_____   DATE _4-12-04_

INSPECTOR _Radeck - Kowalczyk_____

ADDITIONAL COMMENTS _____

Apt 1 - Carpeting missing - Front Door Jamb broken

Shutoff value at toilet leaks - Laundry Room Door to be

Self Closing - Hang Closet Doors - Windows Boarded over

2N - Kit. GFI Rev. Pol - Kit Cabinets Fronts missing - FINISH - Toilet

loose - Tiles missing at Bath window Area - Bath GFI

Has open Ground - Kit. Exhaust Fan inoperable - L.R. Recpt.

open Ground - Carpeting missing - Bath light Globe missing

2S - Some Baseboard missing - Kit. Faucet missing Sprayer

Bath lav. Needs New washers - Toilet loose - Globe missing

at front Door - Toilet runs Non stop and missing Seat

3N - Improper fit at front Door Knob - Kit. Exhaust Fan inoperable

Baseboards missing - Fire retardant Gas line at New Furnace

Furnace - Junction - Split

3S - B.R. Door missing Hardware - B.R. window cracked - Hang

Doors - Replace missing light Globes - Bath Floor tile missing

Smoke Detector missing - Kit Cabinet Fronts missing - L.R. Recpt.

loose

Hallways - Light Globes missing - Hardwired Smoke Detectors

missing or Hanging by wires - Fire missing at stairs

Laundry Room - Bare wire running thru panel to other panel

Breaker missing at Panel #4 - Label All Panels & circuits

Junction Box missing Knock out at Panel & behind Furnace - Repair & Secure BX / conduit

at N.E. Wall

*WATER IS OFF*    *9/18 E UELLA*

### MAJOR SYSTEMS PLUMBING

25) **NO** Is the water heater properly installed ? *MISSING*

26) Are the drains and supply pipes free from leaks and is all drains attached to the drain/waste/vent system ?

27) **YES** Are gas valves present at gas supply piping to appliances and flexible lines free from corrosion ?
MISSING AT _____ REPLACE AT _____

28) **N/A** Is sump pump piping acceptable at this time ?

_____
_____
_____

### HEATING UNITS

29) **NO** Is the furnace/wall/boiler units working properly and free from excessive rust or debris ?

*BOILER MISSING — PLUMBING PERMIT REQ*
_____

30) **N/A** Is fireplace free from cracks, creosote, or deterioration, and is damper working ?
31) **NO** Are smoke detectors present on each level at each hall and within 15 feet of mechanical areas ? *NOT WORKING APTS. 4*
MISSING/INOPERABLE AT *HANGING BY WIRES STAIRWAY*
32) **YES** Is the foundation free from large cracks ?
33) **YES** Is the structure of the building free from unusual sagging, deterioration, and obvious structural problems ?

### ELECTRICAL

*NO ACCESS TO ANY PANELS (NO LIGHTS)*
34) **NO** Are electrical panels properly installed and proper size ?

*METER BOND REQ — SOME APTS HAVE 220*
*RECPTS W/NO DOUBLE POLE BREAKER*
*LABEL ALL CIRCUITS*

35) Are all exit and emergency lights operating properly ?

### FIRE PROTECTION SYSTEMS

____ CERTIFICATION NEEDED ON     STANDPIPE     SPRINKLER SYSTEM
                                 SMOKE DETECTORS     FIRE ALARM
____ NO PARKING SIGNS NEEDED AT FIRE DEPARTMENT CONNECTION
____ EXPIRED EXTINGUISHER SERVICING AT_____
MISSING EXTINGUISHER AT_____
**NO** IS SELF CLOSURE INSTALLED ON LAUNDRY ROOM ?

### ELEVATORS

Elevators must be certified as complying with ASME A17.1-90, Safety Code for Elevators and Escalators.

_____ Certification or inspection within last year presented ?

## ELECTRICAL

**MC6-308b1**

Electrical Service: Single family residences shall have a minimum of 100 amp service and multiple unit residences shall comply with the latest code.

**PM-604.3**

Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient outlets, improper wiring, or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard. NOTE: Similar reasons include but are not limited to, ground fault interrupter circuits shall protect all outlets within 6 feet of plumbing fixtures, those in garages, outside , and basement outlets other than the sump pump.

**PM 605.2**

Every habitable space in a dwelling shall contain at least two separate and remote receptacles outlets. Every laundry area shall contain at least one grounded type receptacle. Every bathroom shall contain at least one receptacle.

**PM-605.3**

Every public hall, interior stairway, water closet compartment, bathroom, laundry room, and furnace room, shall contain at least one electric lighting fixture. NOTE: Other areas of the code allow the inspector to judge sufficiency of the lighting. It is expected that there will be sufficient lighting for safe servicing of the equipment within a room.

## DEFINITIONS

**Bathroom:**　　A room containing plumbing fixtures including a bathtub or shower.

**Habitable space:**　　Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet compartments, closets, halls, storage, or utility spaces, and similar space are not considered habitable spaces.

**Openable Area:**　　The part of a window or door which is available for unobstructed ventilation and which opens directly to the outdoors.

**Toilet Room:**　　A room containing a water closet or urinal but not a bathtub or shower.

## GENERAL STATEMENTS

**PM-101.6**

All repairs, maintenance work, alterations, or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner.

**PM-103.1**

All equipment, systems, devices, and safeguards required by this code or a previous statute or code shall be maintained in good working order. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures.

**PM-104.1**

All materials, equipment, and devices approved by the code official shall be constructed and installed in accordance with such approval.

**PM 105.1**

The code official shall enforce all of the provisions of this code

**PM 405.3**

Every room occupied for sleeping purposes by one occupant shall contain at least 70 square feet of floor area, and every room occupied for sleeping purposes by more than one person shall contain at least 50 square feet of floor area for each occupant thereof .

# EXHIBIT H

ARTICLE IX. CODE ENFORCEMENT*                                          Page 1 of 6

## ARTICLE IX. CODE ENFORCEMENT*

*Cross references:* Fire code prevention, § 30-161 et seq.

*State law references:* Administrative adjudication of ordinances, 65 ILCS 5/1-2.1-1 et seq.

### Sec. 2-941. Purpose.

The stated purpose of this article is to provide for the fair and efficient enforcement of the Municipal Code of Calumet City, Illinois, other than those ordinances pertaining to vehicular standing, parking or vehicle compliance regulation (hereafter the "City Code"), as may be allowed by law and directed by ordinance, through an administrative adjudication of violations; and, establishing a schedule of fines and penalties, and authority and procedures for collection of unpaid fines and penalties.

(Code 1980, § 2-501; Ord. No. 99-63, § VI, 11-10-1999)

### Sec. 2-942. Creation.

There is hereby established a department of the city government to be known as the ordinance enforcement department and to have the power to enforce any municipal ordinance as from time to time authorized by the city council, except for (i) any offense enforced pursuant to Article VII.5 of Chapter 17 of this Code; (ii) any offense under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.); or a similar offense that is a traffic regulation governing the movement of vehicles; and, (iii) except for any reportable offense under 625 ILCS 5/6-204. The establishment of the ordinance enforcement department does not preclude the mayor and city council from using any other method or court with jurisdiction to enforce ordinances of the city.

(Code 1980, § 2-503; Ord. No. 99-63, 11-10-1999)

### Sec. 2-943. Administrative composition.

(a) The ordinance enforcement department shall be composed of a hearing officer, an ordinance enforcement administrator, system coordinator/computer operator and hearing room security personnel, with the power and authority as hereinafter set forth.

(1) The hearing officer is authorized and directed to:

a. The hearing officer, prior to appointment, must be an attorney licensed to practice law for at least three (3) years in the State of Illinois. The hearing officer shall preside over all adjudicatory hearings and shall have the following powers and duties:

1. To administer oaths;

2. To hear testimony and accept evidence that is relevant to the existence of the City Code violation;

3. To issue subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives;

4. To preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing;

5. To issue and sign a written finding, decision and order stating whether a City Code violation exists;

6.  To impose penalties, sanctions or such other relief consistent with applicable City Code provisions and assessing costs upon finding a party liable for the charged violation, except however, that in no event shall the hearing officer have authority to impose a penalty of incarceration; and,

7.  To review final determination of liability for an ordinance violation in accordance with the administrative review procedures hereinafter set forth.

b.  Prior to conducting administrative adjudication proceedings under this article, the hearing officer shall have successfully completed a formal training program which includes the following:

1.  Instruction on the rules of procedure of the administrative hearings over which the hearing officer shall preside;

2.  Orientation to each subject area of the code violations that he/she will adjudicate;

3.  Observation of administrative hearings; and

4.  Participation in hypothetical cases, including ruling on evidence and issuing final orders.

(2)  The ordinance enforcement administrator is authorized and directed to:

a.  Operate and manage the ordinance enforcement department.

b.  Adopt, distribute and process all notices as may be required under this article or as may be reasonably required to carry out the purpose of this article.

c.  Collect moneys paid as fines and/or penalties assessed after a final determination of liability.

d.  Certify copies of final determinations of an ordinance violation adjudicated pursuant to this article, and any factual reports verifying the final determination of any violation liability which was issued in accordance with this article.

e.  Promulgate rules and regulations reasonably required to operate and maintain the administrative adjudication system hereby created.

f.  Collect unpaid fines and penalties through private collection agencies and direct the pursuit of all post-judgment remedies available by law.

(3)  The system coordinator/computer operator is hereby authorized and directed to operate and maintain the computer programs for the administrative adjudication system of the ordinance enforcement department hereby created, on a day-to-day basis, including but not limited to:

a.  Input of violation notice information.

b.  Establishing hearing dates and notice dates.

c.  Record fine and penalty assessment and payments.

d.  Issue payment receipts.

e.  Issue succeeding notice of hearing dates and/or final determination of liability.

f.  Keep accurate records of appearances and nonappearances at administrative hearings, pleas entered, judgments entered, sanctions imposed, if any, fines and penalties assessed and paid.

(4)  All hearing room security personnel shall be qualified off-duty, full-time, part-time or auxiliary police officers who are hereby authorized and directed to:

a.  Maintain hearing room decorum.

b.  Have and execute authority as is granted to courtroom deputies of the circuit court.

c.  Perform such other duties or acts as may reasonably be required and as directed by the hearing officer or ordinance enforcement administrator.

(b)  The mayor is hereby authorized to appoint persons to hold the positions above set forth. Other than the hearing officer, one person may hold and fulfill the requirements of one (1) or more of the above stated

TICLE IX. CODE ENFORCEMENT*                                                              Page 3 of 6

positions and compensation for each of the above stated positions shall be as approved by the city council.

(Code 1980, § 2-504; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

### Sec. 2-944. Procedures.

The system of administrative adjudication of any ordinance violation authorized to be adjudicated hereunder, shall afford a party due process of law and the hearings shall be conducted in accordance with the following procedures:

(1) Violation notices of any City Code shall be issued by the persons authorized under this Code and shall contain information and shall be certified and constitute *prima facie* evidence of the violation cited as hereinafter set forth.

(2) All full-time, part-time and auxiliary police officers as well as other specifically authorized individuals of any department of the city shall have the authority to issue violation notices.

(3) Any individual authorized hereby to issue violation notices and who detects any ordinance violation authorized to be adjudicated under this article, is authorized to issue notice of violation thereof and shall make service thereof as is hereinafter set forth.

(4) The violation notice of the City Code shall contain, but shall not be limited to, the following information:

a. The name of the party violating the ordinance, if known.

b. The date, time and place of the violation (date of issuance).

c. The particular ordinance violated.

d. The fine and any penalty which may be assessed for the ordinance violation.

e. The signature and identification number of the person issuing the notice.

f. The date and location of the adjudicating hearing of ordinance violations, and the penalties for failure to appear at the hearing.

g. That payment of the indicated fine and any late payment shall operate as a final disposition of the violation.

(Code 1980, § 2-505; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

### Sec. 2-945. Service.

(a) Service of any violation notice shall be made by the person issuing such notice by:

(1) Handing the notice to the person responsible for the ordinance violation;

(2) Handing the notice to the responsible person or leaving the notice with any person twelve (12) years of age or older at the residence of the responsible person;

(3) Mailing the notice by first class mail, postage prepaid, to the person responsible for the ordinance violation; or,

(4) Posting the notice upon the property where the violation is found when the person is the owner or manager of the property.

(b) The correctness of facts contained in any violation notice shall be verified by the person issuing said notice by:

(1) Signing his name to the notice at the time of issuance; or

(2) In the case of a notice produced by a computer device, by signing a single certificate, to be kept by the ordinance enforcement administrator, attesting to the correctness of all notices produced by the device while under his control.

(c) The original or a facsimile of the violation notice shall be retained by the ordinance enforcement administrator and kept as a record in the ordinary course of business.

(d) Any violation notice issued, signed and served in accordance herewith, or a copy of the notice, shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the facts shown on the notice.

(Code 1980, § 2-506; Ord. No. 99-63, 11-10-1999)

**Sec. 2-946. Administrative hearings.**

An administrative hearing to adjudicate any alleged City Code ordinance violation on its merits shall be granted to the person named in the ordinance violation notice. All administrative hearings shall be recorded and shall culminate in a determination of liability or nonliability, made by the hearing officer, who shall consider facts and/or testimony without the application of the formal or technical rules of evidence. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonable prudent persons in the conduct of their affairs. The hearing officer shall, upon a determination of liability, assess fines, penalties and costs in accordance with section 2-952 hereof. Persons appearing to contest the alleged violation on its merits may be represented by counsel at their own expense. The burden of proof shall be on the alleged offender to refute the *prima facie* case set forth in the verified notice of violation.

(Code 1980, § 2-507; Ord. No. 99-63, 11-10-1999)

**Sec. 2-947. Notices.**

(a) Upon failure of the person receiving a notice of a violation of the City Code to appear at the time and date designated for a hearing, the ordinance enforcement administrator shall send, or cause to be sent, notices as provided in subsection (b) of this section, by first class mail, postage prepaid, to the person who received the notice of an ordinance violation. Service of notices sent in accordance herewith shall be complete as of the date of deposit in the United States mail.

(b) The notices sent pursuant to subsection (a) of this section shall be in the following sequence and contain, but not be limited to, the following information:

(1) Date and location of violation cited in the violation notice.

(2) Particular ordinance violated.

(3) Fine and any penalty that may be assessed for late payment.

(4) A section titled "Notice of Hearing" which shall clearly set forth that the person receiving a notice of the City Code ordinance violation may appear at an administrative hearing to contest the validity of the violation notice on the date and at the time and place as specified in the notice of hearing.

(5) Date, time and place of the administrative hearing at which the alleged violation may be contested on its merits.

(6) Statement that failure to either pay fine and any applicable penalty or failure to appear at the hearing on its merits on the date and at the time and place specified will result in a final determination of liability for the "cited" violation in the amount of the fine and penalty indicated.

(7) Statement that upon the occurrence of a final determination of liability for the failure, and the exhaustion of, or the failure to exhaust, available administrative or judicial procedures for review, any unpaid fine or penalty will constitute a debt due and owing the city.

(c) A notice of final determination of liability shall be sent following the conclusion of administrative hearing, as is hereinafter set forth, and shall contain, but not be limited to, the following information and warnings:

(1) A statement that the unpaid fine and any penalty assessed is a debt due and owing the city;

(2) A statement of any sanction ordered or costs imposed which costs are debts due and owing the city; and

(3) A warning that failure to pay the fine and any penalty due and owing the city within the time

specified may result in proceeding with collection procedures in the same manner as a judgment entered by any court of competent jurisdiction.

(Code 1980, § 2-508; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-948. Final determination of liability.

A final determination of liability shall occur following the failure to pay the fine or penalty after the hearing officer's determination of liability and the exhaustion of, or the failure to exhaust, any administrative review procedures hereinafter set forth. Where a person fails to appear at the administrative hearing to contest the alleged violation on the date and at the time and place specified in a prior served or mailed notice pursuant to section 2-947(b) hereof, the hearing officer's determination of liability shall become final either upon a denial of a timely petition to set aside that determination or upon the expiration of the period for filing a petition without a filing having been made.

(Code 1980, § 2-509; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-949. Petition to set aside determination.

A petition to set aside a final determination of liability may be filed with the ordinance enforcement administrator within twenty-one (21) days of the date of the final determination of liability and payment of twenty-five dollars ($25.00).

(Code 1980, § 2-510; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-950. Judicial review.

Any final decision by a hearing officer that a City Code violation does or does not exist shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.).

(Code 1980, § 2-511; Ord. No. 99-63, 11-10-1999)

#### Sec. 2-951. Enforcement of judgment.

(a) Any fine, other sanction, or costs imposed, or part of any fine, other sanction, or costs imposed, remaining unpaid after the exhaustion of or the failure to exhaust judicial review procedures under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) are a debt due and owing the municipality and may be collected in accordance with applicable law.

(b) After expiration of the period in which judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) may be sought for a final determination of a code violation, unless stayed by a court of competent jurisdiction, the findings, decision, and order of the hearing officer may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

(c) In any case in which a hearing officer finds that a defendant has failed to comply with a judgment ordering a defendant to correct a code violation or imposing any fine or other sanction as a result of a code violation, any expenses incurred by the city to enforce the judgment including, but not limited to, attorney's fees, court costs, and costs related to property demolition or foreclosure after they are fixed by the hearing officer, shall be a debt due and owing the municipality and may be collected in accordance with applicable law.

(d) A lien shall be imposed on the real estate or personal estate, or both, of the defendant in the amount of any debt due and owing the city under this section. The lien may be recorded and enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction. No lien may be enforced under this section until it has been recorded in the manner provided by Article XII of the Code of Civil Procedure (735 ILCS 5/1-101 et seq.) or by the Uniform Commercial Code (810 ILCS 5/1-101et seq.).

(e) A hearing officer may set aside any judgment entered by default and set a new hearing date upon a petition filed within twenty-one (21) days after the issuance of the order of default if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the

ARTICLE IX. CODE ENFORCEMENT*                                                    Page 6 of 6

    petitioner establishes that the municipality did not provide proper service of process.

(Code 1980, § 2-512; Ord. No. 99-63, 11-10-1999)

**Sec. 2-952. Schedule of fines/penalties.**

    For an ordinance violation of the City Code, fines and penalties shall be as established from time to time by the mayor and city council.

(Code 1980, § 2-513; Ord. No. 99-63, 11-10-1999)

*//Calumet City, Illinois/MUNICIPAL CODE CALUMET CITY, ILLINOIS Codified through Ord. No. 07-72, enacted June 14, 2007. (Supplement No. 7)/Chapter 2 ADMINISTRATION*/ARTICLE IX. CODE ENFORCEMENT*——*

# EXHIBIT I

## DIVISION 2. RENTAL DWELLING INSPECTIONS*

*Editor's note: Ord. No. 06-49, adopted June 22, 2006, amended division 2 in its entirety to read as herein set out. Former division 2, which consisted of §§ 14-711—14-718, pertained to similar subject matter and derived from the 1980 Code; Ord. No. 87-5, adopted Mar. 26, 1987; Ord. No. 87-16, adopted July 23, 1987; Ord. No. 88-2, adopted Feb. 25, 1988; Ord. No. 89-8, adopted Feb. 9, 1989; Ord. No. 89-40, adopted Nov. 9, 1989; Ord. No. 90-1, adopted Jan. 11, 1990; Ord. No. 94-16, adopted May 12, 1994; and Ord. No. 04-42, adopted June 29, 2004.

**Sec. 14-711. Certificate of occupancy requirement.**

(a)  No owner, agent or person (hereinafter referred to as "responsible party") in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as "rental dwelling", as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the department of inspectional services ("department"). Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b)  No certificate of occupancy shall be issued unless the applicant[,] owner or operator agrees in his application to an inspection pursuant to this section. Notwithstanding any other provisions of this Code, when the city conducts inspections of a tenant's rental dwelling, the city must obtain the consent of such tenant to conduct the inspection. If a tenant refuses consent, the city may attempt to obtain a warrant pursuant to subsection (d) below.

(c)  Prior to the time that the department is scheduled to conduct the inspection, the department shall deliver to the owner and occupants of the structure written notice that includes the following:

(1)  Date and time of the inspection;

(2)  A statement that the owner or tenant has the right to withhold his consent to the inspection and require the city to attempt to obtain a warrant to conduct the inspection;

(d)  If the owner or occupant does not consent to the attempted inspection, the director of inspectional services ("director") or his designee shall seek in the circuit court of Cook County a warrant in accordance with the appropriate laws of the State of Illinois to allow an inspection. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the city building and zoning ordinances or any applicable housing, fire or property maintenance codes or regulations. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

(1)  Eyewitness account of violation;

(2)  Citizen complaints;

(3)  Tenant complaints;

(4)  Plain view violations;

(5)  Violations apparent from city records;

(6)  Property deterioration;

(7)  Age of property;

(8)  Nature of alleged violation;

(9)  Similar properties in the area;

DIVISION 2. RENTAL DWELLING INSPECTIONS*                                    Page 2 of 3

(10)  Documented violations on similar properties in the area;

(11)  Passage of time since last inspection;

(12)  Previous violations on the property.

(e)  If the annual inspection establishes that the rental dwelling complies with all the provisions of the property maintenance code as well as all other health, zoning, and building ordinances of the city, then the department of inspectional services shall issue a certificate of occupancy for said dwelling or structure. The certificate shall indicate the date of the inspection; that such dwelling or structure complies with the requirements of the property maintenance code as well as other health and building ordinances that apply to the dwelling. One (1) copy of the certificate shall be delivered to or mailed to the owner of the dwelling unit. A record of all certificates shall be kept on file by the department, and copies shall be furnished upon request to any person having a proprietary interest or tenancy interest in the dwelling affected. The director shall submit once a month to the mayor and the city council a list of addresses of those dwellings which have been inspected the previous month with an indication whether or not said dwellings have been issued certificate of occupancy permits. Every certificate of occupancy shall be issued for a period of one (1) year after its date of issuance, unless sooner revoked.

(f)  Inspection fee schedule.

(1)  Fifty dollars ($50.00) yearly.

(2)  Ten dollars ($10.00) per additional unit.

(3)  All inspection fees as herein provided shall be paid prior to the issuance of a certificate of occupancy.

(4)  Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(5)  If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(Ord. No. 06-49, § 1, 6-22-2006)

Sec. 14-712. Notice of violation.

(a)  Whenever the building official determines that any rental dwelling or the premises surrounding fails to meet the requirements set forth in this chapter or in applicable rules and regulations issued pursuant thereto, the building official in accordance with the property maintenance code and the other city health, and building codes shall issue a notice setting forth the alleged failures and advising the responsible party that such failures must be corrected. This notice shall:

(1)  Be in writing.

(2)  Set forth the alleged violations of this chapter or of applicable rules and regulations issued pursuant thereto.

(3)  Describe the rental dwelling where the violations are alleged to exist or to have been committed. Such written notice shall specify an appropriate or acceptable method of correction.

(4)  Specify a specific date for the correction of any violation alleged.

(5)  Be served upon the responsible party of the rental dwelling by the building official, or mailed to the responsible party, if one (1) or more persons to whom such notice is addressed cannot be found after diligent effort to do so, service may be made upon such persons by posting the notice in or about the rental dwelling described in the notice.

(b)  At the end of the period of time allowed for the correction of any violation alleged, which was stated in the inspection notice, the building official shall reinspect the rental property described in the notice.

(c)  If, upon reinspection, the violations are determined by the building official not to have been corrected, the

http://library2.municode.com/mcc/DocView/13744/1/52/76/78                                    9/17/2007

DIVISION 2. RENTAL DWELLING INSPECTIONS*                                    Page 3 of 3

building official, in turn, shall issue an O.V. (ordinance violation) ticket to initiate legal proceedings to be handled in Calumet City's housing court for the immediate correction of the alleged violations or shall order the rental property vacated within thirty (30) days, or both.

(Ord. No. 06-49, § 1, 6-22-2006)

**Sec. 14-713. Responsibility of tenants.**

No tenant shall damage or cause to be damaged any unit or building leased nor shall any damage be caused to the general premises of any building used by the tenants. Each tenant and the families of each tenant shall maintain his rental unit free of any litter, and tenants shall not litter any of the premises or the buildings provided for use by the tenants. The tenants must maintain their responsibilities as outlined in the property maintenance code, subject to O.V. citations.

(Ord. No. 06-49, § 1, 6-22-2006)

**Sec. 14-714. Penalties.**

Any responsible party of a rental dwelling who has received an order or notice of an alleged violation of this article shall be subject to a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each day the alleged violation continues after expiration of the specified reasonable consideration period; provided that no such penalty shall be applicable while reconsideration, hearing or appeal to a court of competent jurisdiction is pending in the matter.

(Ord. No. 06-49, § 1, 6-22-2006)

**Sec. 14-715. Validity and severability.**

If any section, subsection, paragraph, sentence, clause, or phrase of this Code shall be declared invalid for any reason whatsoever, this decision shall not affect the remaining portions of this Code, which shall continue in full force and effect, and to this end, the provisions of this Code are hereby declared to be severable.

(Ord. No. 06-49, § 1, 6-22-2006)

**Sec. 14-716. Savings clause.**

This Code shall not affect violations of any other ordinance, code or regulation of the jurisdiction existing prior to the effective date hereof, and any such violation shall be governed and shall continue to be punishable to the full extent of the law under the provisions of those ordinances, codes or regulations in effect at the time the violation was committed.

(Ord. No. 06-49, § 1, 6-22-2006)

Secs. 14-717—14-750. Reserved.

# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AYANNA WALKER, for herself and all others )
similarly situated, )
                       Plaintiffs, )
                               )     Case No. 07 C 6148
v.                              )
                               )     Judge Milton Shadur
CALUMET CITY, ILLINOIS, )
                               )     Magistrate Judge Valdez
                    Defendant. )

## AFFIDAVIT OF VAL WILLIAMS

Val Williams being duly sworn and under oath deposes and states as follows:

1. I am Director of the Department of Inspectional Services ("Department") of the City of Calumet City.

2. The functions of the Department include:

    a. determining whether buildings are a legal conforming use; and

    b. determining whether buildings sufficiently comply with the applicable City building and property maintenance ordinances to warrant the issuance of transfer stamps.

3. I have reviewed the file maintained by the Department for the property commonly known as 521-523 GreenBay ("Property") and have determined:

    a. that the Property is a legally non-conforming use in accordance with the applicable ordinances of the City; and

    b. that the Property is sufficiently in compliance with the applicable building and property maintenance ordinances so that the City will issue transfer stamps in connection with conveyance of the Property upon application and payment of the applicable tax.

AFFIANT SAYETH FURTHER NOT.

                                       _Val Williams_
                                       Val Williams

Subscribed and Sworn to before
me this 8 day of April, 2008.

_____
    Notary Public
      MARK H. STERK
   Notary Public - State of Illinois
My Commission Expires May 01, 2012

# EXHIBIT K

Westlaw.

1994 WL 601863 (Ill.A.G.)                                                                 Page 1

1994 WL 601863 (Ill.A.G.)

Office of the Attorney General
State of Illinois

File No. 94-024

October 25, 1994

MUNICIPALITIES:

Requirement that Title Insurance Reports Reflect Payment of Document Inspection Fee

Mr. Frank C. Casillas
Director

Dear Mr. Casillas:

I have your letter wherein you inquire regarding the validity of ordinances adop-
ted by non-home-rule municipalities which require the inspection of documents and
the payment of fees prior to the transfer of real property lying within the muni-
cipality. Of particular concern to the Department, which regulates title insurance
companies (215 ILCS 155/1 et seq. (West 1992)), is a provision in the ordinances
which mandates that the requirement of inspection and payment of fees be reflected
in title insurance reports. For the reasons hereinafter stated, it is my opinion
that the ordinances in question are not valid.

In February, 1994, the village of Westchester adopted ordinance no. 94-1387, which
purports to require that any document evidencing the transfer of ownership of real
estate located in the village must be submitted to the village for inspection and
review. Upon payment of a fee of $25, the village will affix a stamp to the docu-
ment if the subject property is found to be in compliance with all village codes
in force at the time the document is submitted. The ordinance further provides
that the requirement be reflected on all real estate title insurance reports con-
ducted precedent to the transfer of ownership, to give public notice of the man-
datory inspection. In April, 1994, the village of River Grove adopted a similar
ordinance. Both Westchester and River Grove are non-home-rule municipalities.

Non-home-rule municipalities have only those powers which are expressly granted by
statute and the constitution, those powers which are incident to those which have
been expressly granted and those powers which are indispensable to the accomplish-
ment of the declared objects and purposes of the municipal corporation. (Pesticide
Pub. Pol. v. Village of Wauconda (1987), 117 Ill.2d 107, 111-112.) Consequently,

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 601863 (Ill.A.G.)    Page 2

as a threshold issue, it must be determined whether Westchester and River Grove
have the power to adopt the ordinances in question. Only if this question is
answered affirmatively will it be necessary to consider whether the villages'
power is preempted by State law relating to title insurers.

Neither village has cited any authority for the adoption of these ordinances. The
only purpose suggested within the body of each ordinance, apart from the collec-
tion of a $25 fee, is to determine whether the property is in compliance with vil-
lage codes (Village of Westchester Ordinance No. 94-1387, adopted February 8,
1994, at p. 1) or to determine whether any "outstanding obligation is due to the
[v]illage with respect to the property" (Village of River Grove Ordinance No.
1994-05, adopted April 21, 1994, at p. 1). Municipalities are authorized, under
Article 11 of the Municipal Code (65 ILCS 5/11-1-1 et seq. (West 1992)), to adopt
a number of ordinances and codes designed to protect public health and safety, and
are authorized to enforce such codes by requiring permits, fees, and fines. (E.g.,
65 ILCS 5/11-31.1-1 et seq.; 5/11-37-1 et seq.; 5/11-38-4 (West 1992).) Further,
municipalities may impose various fees for other services relating to real prop-
erty. In no instance, however, are municipalities authorized to limit the alienab-
ility of property in order to enforce such codes.

Although these ordinances do not expressly so state, I assume that the villages
will refuse to affix the "document review" stamp to any deed for property which is
not in compliance with the village codes (the village of Westchester) or concern-
ing which unpaid obligations may be deemed to be due (the village of River Grove).
Thus, even if the deeds are returned to the persons submitting them, if they pro-
ceed with the transactions they will violate the application ordinance and be sub-
jected to its penalties. This attempt to make alienability subject to municipal
regulation clearly exceeds the villages' powers.

Further, non-home-rule municipalities have no authority to impose a tax on the
transfer of real property. The authority to impose such a tax is expressly re-
served to home rule municipalities (65 ILCS 5/8-11-6a (West 1992)). While the fee
imposed by the River Grove and Westchester ordinances is denominated a document
inspection fee, rather than a transfer tax, there can be little doubt that it op-
erates as the latter. As previously discussed, the villages' authority to enforce
their health and safety codes is entirely unrelated to the transfer of property.
Moreover, a document inspection would provide no basis upon which to determine
whether the property was in compliance with codes, and the ordinances do not even
suggest that the affixing of the required stamp will depend upon an inspection of
the property itself. In my opinion, the inspection fee is, in both operation and
effect, a prohibited transfer tax.

Because the non-home-rule villages in question have no authority to enact or en-
force ordinances restricting the transfer of real property or to impose a fee or
tax thereon, it is my opinion that the ordinances are void and unenforceable. Be-
cause of this conclusion, it is not necessary to determine whether such ordin-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1994 WL 601863 (Ill.A.G.)                                                                    Page 3

ances, with respect to their effect on title insurers, are preempted or superseded
by State laws requiring the licensure of title insurers.

Respectfully yours,
Roland W. Burris
Attorney General

1994 WL 601863 (Ill.A.G.)
END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT L

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Sign Out | ? Help

Search | Research Tasks | Get a Document | *Shepard's*® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History | ⌂

Service: **Get by LEXSEE®**
Citation: **1998 us dist lexis 7287**

1998 U.S. Dist. LEXIS 7287, *

LIONEL BORDELON, Plaintiff, v. CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, successor to the Board of Education of the City of Chicago, Defendant.

Case No. 98 C 1932

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1998 U.S. Dist. LEXIS 7287

May 8, 1998, Decided

**DISPOSITION:** [*1] Recommended that Plaintiff's motion for preliminary injunction treated as motion for permanent injunctive relief and that motion granted.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff school principal brought an action alleging breach of contract against defendant board of trustees (trustees), alleging that the trustees deprived him of his Fourteenth Amendment procedural due process rights in violation of 42 U.S.C.S. § 1983 when it reassigned him without a hearing or notice of misconduct charges against him.

**OVERVIEW:** The principal was reassigned from his position despite that an investigation demonstrated that the charges were insufficient to satisfy the legal standard required by Ill. Code § 34-85 and the Chief Executive Officer of the Board of Education declined to approve the charges against him. In his action, the principal sought reinstatement and an injunction preventing the trustees from reassigning him from his position without due process of law. The court granted the principal's motion for injunctive relief and treated the motion for a preliminary injunction as one for permanent injunctive relief. The court recommended that he be reinstated to his position. The principal established that he had already succeeded on the merits by demonstrating that the trustees failed to provide him with the constitutionally required notice and opportunity to be heard. The reassignment deprived the principal of the position to which he had a contractual right and in which he maintained a protected property interest. The principal's contract provided that he could be removed for cause, but no cause existed. Thus, the trustees' action was nothing more than an attempt to evade the contract terms.

**OUTCOME:** In the principal's action for breach of contract and constitutional violations, the court recommended that the principal's motion for a preliminary injunction be treated as motion for permanent injunctive relief and that the motion granted. The court also recommended the principal's reinstatement to his former position.

**CORE TERMS:** reassignment, injunctive relief, deprivation, injunction, notice, recommendation, reassigned, Board Rule, irreparable harm, adequate remedy, constitutional violation, removal, preliminary injunction, property interest, monetary damages, terminated, deprived, temporary, employment contract, process rights, irreparable injury, liberty interest, likelihood of success, post-termination, recommend, issuance, educational, removing, state law, process violation

## LEXISNEXIS® HEADNOTES    ⊟Hide

Civil Procedure > Judgments > Relief From Judgment > General Overview 🔍
Civil Procedure > Remedies > Injunctions > Elements > General Overview 🔍
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🔍

HN1⬆ In order to qualify for a preliminary injunction, a plaintiff must show that: (1) there is a reasonable likelihood of success on the merits; (2) he will suffer irreparable harm without the issuance of a preliminary injunction; (3) no adequate remedy exists at law; (4) the harm he will suffer is greater than any harm defendant will suffer if injunctive relief is granted; and (5) the injunction will not harm the public interest. More Like This Headnote

Civil Rights Law > Section 1983 Actions > Elements > Color of State Law > General Overview 🔍
Constitutional Law > Privileges & Immunities 🔍

Constitutional Law > Qualifications for Federal Office
**HN2** To succeed in 42 U.S.C.S. § 1983 action, plaintiff must establish that the conduct complained of was carried out under color of state law and that this conduct deprived him of rights, privileges or immunities guaranteed by the Constitution or laws of the United States.  More Like This Headnote

Constitutional Law > Substantive Due Process > Scope of Protection
**HN3** In order to assert a substantive due process violation, plaintiff must plead and prove that he had a constitutionally protected property or liberty interest, that the decision to deprive him of that interest was arbitrary or irrational, and that he either suffered a separate constitutional violation or that the state law remedies are inadequate.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
**HN4** Procedural due process claims encompass a two step analysis. First, the court must ascertain whether the plaintiff has been deprived of a protected property or liberty interest, and if so, the court must then determine what process is constitutionally due.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Rights > Procedural Due Process > Scope of Protection
Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > General Overview
Public Contracts Law > Contract Interpretation > General Overview
**HN5** A term of employment set by contract gives rise to a property interest, which the state cannot extinguish without conforming to the dictates of procedural due process. In ascertaining the nature and boundaries of the property interest protected, the court must look to the instrument, which creates the interest asserted.  More Like This Headnote

Civil Procedure > Equity > Adequate Remedy at Law
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
**HN6** To justify the entry of a preliminary injunction, plaintiff must first prove that he has no adequate remedy at law.  More Like This Headnote

Civil Procedure > Remedies > Injunctions > Elements > General Overview
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
**HN7** There is no adequate remedy at law if the plaintiff will suffer irreparable harm in the interim that is, harm that cannot be prevented or fully rectified by final judgment after trial. Although sometimes treated as conceptually distinct elements, the no adequate remedy at law element and irreparable harm element are really part of the same analysis. Thus, a conclusion that the injury is irreparable in turn establishes that there is no adequate remedy at law.  More Like This Headnote

Civil Procedure > Remedies > Damages > Monetary Damages
Civil Procedure > Remedies > Injunctions > Elements > General Overview
**HN8** Irreparable harm is presumed to flow from a constitutional violation that is not fully compensable by monetary damages.  More Like This Headnote

Civil Procedure > Remedies > Injunctions > Elements > General Overview
Civil Procedure > Remedies > Injunctions > Permanent Injunctions
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions
**HN9** In order to obtain permanent injunctive relief, plaintiff must establish that he has in fact succeeded on the merits rather than merely establishing the likelihood of success on the merits, as would be required on a motion for preliminary injunctive relief.  More Like This Headnote

**COUNSEL:** For Plaintiff: EDWARD J. COPELAND, Esq., MICHAEL F. BRAUN, Esq., Schuyler, Roche & Zwirner, P.C., Chicago, IL.

For Defendant: MARILYN F. JOHNSON, Esq., JAMES J. SEABERRY, JR., Esq., Board of Education of the City of Chicago, Chicago, IL.

**JUDGES:** MARTIN C. ASHMAN, United States Magistrate Judge. Judge Robert W. Gettleman.

**OPINION BY:** MARTIN C. ASHMAN

**OPINION**

**REPORT AND RECOMMENDATION**

## I. Background

On March 30, 1998, Plaintiff, Lionel Bordelon (hereinafter "Bordelon"), filed a two-count complaint alleging the deprivation of his civil rights and the breach of his employment contract with the Defendant, Chicago School Reform Board Trustees of (hereinafter "the Trustees"). Plaintiff seeks, *inter alia*, his reinstatement as the Principal of Kozminski Community Academy and an injunction preventing the Board from reassigning Plaintiff from his position as Principal without due process of law.

The facts relevant to this motion are not in dispute. On or about April 12, 1995, Plaintiff entered into a Uniform Principal Performance Contract [*2] with the Kozminski Local School Council wherein Plaintiff contracted to serve as the Principal of the Kozminski Community Academy located at 936 East 54th Street in Chicago. Pursuant to the contract, Plaintiff was to be employed as the Principal of the Kozminski Community Academy commencing July 1, 1995 and ending June 30, 1999. Additionally, the contract provides that it constitutes the entire agreement of the parties and that no additions, deletions, or modifications may be made thereto.

Plaintiff was employed without incident as the Principal of the Kozminski Community Academy for approximately one and a half years. However, by letter dated December 12, 1996, the Kozminski Local School Council recommended that the Board of Education revoke Plaintiff's contract. This recommendation was predicated on several alleged violations of state and federal law, in addition to allegations of other misconduct and wrongdoing. After conducting a "lengthy investigation" wherein "each and every assertion brought forth by [the Local School Council] was examined in detail," Paul Vallas, Chief Executive Officer of the Board of Education, concluded that the charges were insufficient to satisfy the [*3] legal standard required by Section 34-85 of the Illinois Code which governs the removal of a principal. Vallas consequently declined to approve the charges pending against Plaintiff, and by letter dated February 24, 1997, so informed Josephine Hampton, the Chairperson of the Kozminski Local School Council.

While Vallas' findings would appear to have resolved the conflict surrounding Plaintiff's employment, such was not the case. On March 11, 1997, Plaintiff received a letter from Dr. Blondean Y. Davis, Deputy Chief Education Officer of the Board of Education, informing him that, effective March 12, 1997, he was to be "temporarily reassigned" to the Office of Schools and Regions of the Board of Education (hereinafter "the Central Office"). Defendant made this decision allegedly under the authority of Board Rule 4-52. Board Rule 4-52 grants the General Superintendent of Schools authority to assign a principal to a temporary assignment when the Superintendent believes the reassignment to be in the best interests of the Chicago Public Schools and the reassignment does not unreasonably compromise the educational program at the principal's school.

On October 28, 1997, Plaintiff wrote a [*4] letter to Marilyn Johnson, General Counsel of the Board of Education, requesting information as to whether he was the subject of an investigation and if so, requesting a copy of the charges against him. Plaintiff received no response to the letter. To date, Plaintiff has been working in the Central Office for over a year, during which time he has continued to receive the salary and benefits provided under his contract.

As Defendant has given no indication that the temporary reassignment will end prior to the expiration of Plaintiff's employment contract, Plaintiff has filed the instant motion for a temporary restraining order and preliminary injunction, asking that he be reinstated to his former position as Principal of the Kozminski Community Academy and further asking that the Defendant be enjoined from taking any action against the Plaintiff which would prevent him from being employed in this position. Plaintiff alleges that, without such injunctive relief, he will suffer irreparable harm as a result of the Defendant's actions, including the deprivation of his property and liberty rights under the Fourteenth Amendment, and the loss of his good name, reputation and honor. Plaintiff [*5] concludes that, while the issuance of an injunction will prevent his irreparable injury, such relief will not cause any loss or injury to the Defendant.

## II. Analysis

We begin by noting that, during oral argument, the parties waived their right to present evidence and agreed to stand on the facts as set out in their papers. In light of the absence of any factual disputes, the Court has made its ruling based strictly on the parties' written submissions.

Turning to the merits of the instant motion, the Defendant argues that Plaintiff's motion for an injunction [1] should be denied because Plaintiff has failed to establish the prerequisites to injunctive relief. *HN1* In order to qualify for a preliminary injunction, Plaintiff must show that: (1) there is a reasonable likelihood of success on the merits; (2) he will suffer irreparable harm without the issuance of a preliminary injunction; (3) no adequate remedy exists at law; (4) the harm he will suffer is greater than any harm the Defendant will suffer if injunctive relief is granted; and (5) the injunction will not harm the public interest. *Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986); *Roland Machinery Co. v. Dresser* [*6] *Industries*, 749 F.2d 380 (7th Cir. 1984). Defendant contends that Plaintiff is unable to establish any of above factors and is therefore not entitled to injunctive relief. The Court reviews the five factors below.

## FOOTNOTES

**1** Defendant first advances arguments directed at defeating the Temporary Restraining Order portion of Plaintiff's motion. However, as this case has advanced beyond the TRO stage, we do not address the parties' arguments which relate to the Plaintiff's request for such relief.

### A. Likelihood of Success on the Merits

In addressing the first factor, Defendant contends that the Plaintiff has misconstrued the action that the Board of Education (hereinafter "the Board") has taken. Defendant contends that, contrary to Plaintiff's assertions, he has not been removed or terminated and that, as a result, Plaintiff's reliance on the discharge procedures set forth in 105 ILCS 5/34-85 is misplaced. Defendant argues that, because Bordelon has not been terminated, he has not suffered any cognizable constitutional **[*7]** deprivation and is therefore not entitled to notice and a pre- or post-termination hearing. Additionally, Defendant argues that even if Plaintiff's reassignment did constitute a deprivation of a protected property right, the delay in providing a hearing does not implicate the due process clause. We disagree.

Plaintiff alleges that the Defendant deprived him of his Fourteenth Amendment procedural **2** due process rights in violation of 42 U.S.C. § 1983 when it reassigned him to his current position at the Central Office without a hearing or notice of the charges against him. **HN2**To succeed in a Section 1983 action, Plaintiff must establish that the conduct complained of was carried out under color of state law and that this conduct deprived him of rights, privileges or immunities guaranteed by the Constitution or laws of the United States. Larsen v. City of Beloit, 130 F.3d 1278, 1282 (7th Cir. 1997). In this case, Defendant apparently concedes that it was acting under color of state law when it reassigned the Plaintiff. **3** Thus, the only remaining issue is whether the Defendant deprived Bordelon of his procedural due process rights.

**FOOTNOTES**

**2** The Court notes that, while the deprivation of a constitutionally protected property interest such as the one suffered by Plaintiff may be sufficient on its own to support a substantive due process claim, Plaintiff does not appear to have asserted such a claim in his complaint or briefs. **HN3**In order to assert a substantive due process violation, the Plaintiff must plead and prove that he had a constitutionally protected property or liberty interest, that the decision to deprive him of that interest was arbitrary or irrational, and that he either suffered a separate constitutional violation or that the state law remedies are inadequate. New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1481 (7th Cir. 1990). Plaintiff has neither alleged nor argued any of the above. **[*8]**

**3** We base this conclusion on the absence of any argument to the contrary in Defendant's response brief.

**HN4**Procedural due process claims encompass a two step analysis. See Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996). First, the court must ascertain whether the plaintiff has been deprived of a protected property or liberty interest, and if so, the court must then determine what process is constitutionally due. See id.

Turning to the first factor, it is well established that **HN5**"a term of employment set by contract [gives rise to] a property interest which the state cannot extinguish without conforming to the dictates of procedural due process." Vail v. Board of Education of Paris Union School District No. 95, 706 F.2d 1435, 1437 (7th Cir. 1983), aff'd, 466 U.S. 377, 104 S. Ct. 2144, 80 L. Ed. 2d 377 (1984) (citing Hostrop v. Board of Junior College District No. 515, 471 F.2d 488, 494 (7th Cir. 1972), cert. denied, 411 U.S. 967, 93 S. Ct. 2150, 36 L. Ed. 2d 688 (1973)). In ascertaining the nature and boundaries of the property interest protected, the Court **[*9]** must look to the instrument which creates the interest asserted -- here, Bordelon's employment contract. See Vail, 706 F.2d at 1437.

Plaintiff's employment contract clearly created a contractual right of employment for the term of the contract. We reach this conclusion on the basis of the contract terms themselves which provide that the contract may not be terminated except by (1) written agreement of the parties; (2) discharge of the principal for cause; (3) closure of the school; (4) the death, resignation or retirement of the principal; or (5) misrepresentation regarding the principal's certification.

The rights created by the contract included the Plaintiff's right to perform the duties and responsibilities incident to the position of Principal of the Kozminski Community Academy, in exchange for which, the Plaintiff was to receive the specified compensation and benefits. The rights encompassed by the contract therefore include not only the relevant compensation, but also the intangible, non-economic benefits that flowed from Plaintiff's duties and responsibilities as Principal. By removing Plaintiff from his position as Principal and assigning him to a job in the Central **[*10]** Office with responsibilities which are not commensurate with those performed by Plaintiff in his capacity as Principal, **4** Defendant has, in effect, terminated Plaintiff's employment as Principal, and while Defendant's decision to continue to provide Plaintiff with his salary and benefits may impact the determination of damages, it does not alter the fact that Plaintiff is no longer performing the job for which he contracted. Thus, the reassignment deprived Plaintiff of the position to which he has a contractual right and in which he consequently maintains a protected property interest.

**FOOTNOTES**

4 Indeed, when the Court suggested at oral argument that the Plaintiff had been assigned to a "paper shuffler" position in the Central Office, Defendant's attorney did not deny this characterization.

The Defendant's argument that Plaintiff was reassigned, pursuant to the authority of Board Rule 4-52, rather than terminated is unconvincing. The contract, as it relates to the Plaintiff's responsibilities, mentions the Kozminski [*11] Community Academy in at least six paragraphs. Specifically, the contract provides, *inter alia*, that Plaintiff is to supervise the educational operation of the Kozminski Community Academy; assume administrative responsibility and instructional leadership for the planning, operation and evaluation of the educational program of the Kozminski Community Academy; assume primary responsibility for the improvement of the instruction at the Kozminski Community Academy; develop a three-year Local School Improvement Plan for the Kozminski Community Academy; and develop an expenditure plan for the Kozminski Community Academy. Thus, Plaintiff's reassignment to the Central Office constitutes a deprivation of all of the rights and responsibilities provided to him as Principal of the Kozminski Community Academy in that it not only prevents Plaintiff from performing the responsibilities attendant to his position as Principal but also prevents him from serving the Kozminski Community Academy in any capacity.

In light of the fact that Plaintiff's reassignment effectively operates as a termination of the Plaintiff's employment as Principal of the Kozminski School, we conclude that the Board acted [*12] outside its authority in reassigning Plaintiff pursuant to Board Rule 4-52. We reach this conclusion on two bases. First, we note that the contract does not incorporate this Rule 5 and therefore does not provide the Board with resort to the Rule as a means of removing Plaintiff from his position. The contract specifically provides the mechanisms for such a removal -- namely, that Plaintiff may be removed for cause. However, Vallas concluded after conducting his investigation that no such cause existed in this case. Thus, we view the Board's actions pursuant to Board Rule 4-52 as nothing more than an attempt to evade the terms of the Plaintiff's contract.

**FOOTNOTES**

5 The failure to incorporate Board Rule 4-52 into the contractual terms is especially noteworthy in light of the fact that the contract did incorporate the Board Rules governing compensation, Plaintiff's professional growth through his attendance at professional meetings and his pursuit of additional education, and Plaintiff's other obligations under the contract.

[*13] Second, we note that even if Board Rule 4-52 was incorporated into the terms of the contract, the rule only granted the Superintendent authority to **temporarily** reassign Plaintiff. In the instant case, Plaintiff was reassigned approximately half way through his contract term. Plaintiff has remained in that reassignment for over 13 months and the Board has given no indication that Plaintiff's reassignment will conclude prior to the end of his contract term which expires on June 30, 1999. 6 Thus, Plaintiff has, for all intent and purposes, been **permanently** reassigned to the Central Office and the Defendant has consequently acted outside of the scope of the Rule itself in carrying out the instant reassignment.

**FOOTNOTES**

6 Of the 34 months served under his contract to date, Plaintiff has spent approximately 38% of this time reassigned to the Central Office.

The bottom line of the above conclusions is that Defendant cannot be allowed to make an end run around the terms of the contract and the Illinois statute [*14] governing the removal of principals by calling the removal of a principal a "temporary reassignment."

Based on the foregoing, we conclude that Plaintiff has demonstrated a reasonable likelihood of success on the merits with respect to his ability to establish the deprivation of a constitutionally cognizable property right. 7 This conclusion, however, does not end our inquiry into Plaintiff's due process claim, for it is not the deprivation of Plaintiff's property interest which triggers a procedural due process violation, but rather, it is the Defendant's failure to provide the constitutionally required notice and opportunity to be heard.

**FOOTNOTES**

7 Although it is unclear from Plaintiff's complaint and briefs, it appears that Plaintiff also attempts to assert the loss of a liberty interest based on damage to his reputation and integrity. We, however, find no competent evidence that the Board or any of its agents publicly revealed any of the charges publicly against Plaintiff. Plaintiff bases his claim, in large part, on statements made by Josephine Hampton. However, the comments attributable to Josephine Hampton were made in her individual capacity during her campaign for reelection to the local school

council and cannot therefore be attributed to the Board. We consequently note that the relief granted by this Court is in no way predicated on a finding that the School Board's actions violated Plaintiff's liberty interest.

**[*15]** Defendant contends that, even if Plaintiff has a protected property interest, the delay in providing him with a hearing does not implicate the due process clause. In support of this assertion, Defendant cites *DeVito v. Chicago Park District, 972 F.2d 851* (7th Cir. 1992), for the proposition that a one-year delay in the administration of a post-deprivation hearing does not violate the due process clause. Defendant, however, misreads *DeVito*.

In *DeVito*, the plaintiff was formally discharged after he received notice of the charges against him and a pre-suspension hearing. *972 F.2d at 851*. Plaintiff appealed the discharge and requested a post-termination hearing. *Id.* Approximately one year after this request, the Park District finally scheduled a post-termination hearing. *Id.* In ruling that the one-year delay in providing a post-termination hearing did not violate plaintiff's due process rights, the court examined three factors: (1) the importance of the private interests and the harm to the interests occasioned by the delay in providing the hearing; (2) the justification offered by the government for the delay and its relation to the underlying governmental interest; **[*16]** and (3) the likelihood that the interim decision may have been erroneous. *Id. at 855.* Analyzing these factors, the Seventh Circuit noted that the Park District's administrative backlog provided a legitimate reason for the delay and that the risk of the interim decision being erroneous was minimized by the fact that the plaintiff was given a pre-termination hearing. *Id. at 856-57.* The court consequently concluded that the delay in the administration of the plaintiff's post-discharge hearing did not give rise to a constitutional violation. *Id. at 851.*

Contrary to Defendant's assertions, *DeVito*, therefore, does not stand for the proposition that the Defendant may delay the Plaintiff's hearing for over a year without implicating the due process clause. Indeed, applying *DeVito* to the facts of the instant case yields the opposite conclusion, for in the instant case, the Plaintiff has not been given notice of the charges against him, nor a hearing of any sort. Additionally, the Defendant has offered no explanation whatsoever for the lengthy delay in providing the Plaintiff with notice or a hearing. Indeed, rather than offering an explanation for the delay, Defendant has **[*17]** steadfastly maintained that Plaintiff is not entitled to a hearing now or at any time in the future and, in fact, the real reason no notice or hearing has been provided is that, according to Vallas on behalf of Defendant, insufficient grounds exist for a removal and thus, a hearing would be superfluous. On these facts, we easily conclude that the Plaintiff has established a deprivation of his procedural due process rights and has consequently successfully established the elements of his Section 1983 claim. [8]

**FOOTNOTES**

[8] In ruling on the instant motion, we do not address the Plaintiff's breach of contract count as that count does not seek injunctive relief but rather seeks monetary damages.

**B. The Adequacy of the Remedy At Law and Plaintiff's Irreparable Harm**

Defendant contends that Plaintiff will not suffer irreparable harm in the absence of injunctive relief because he has and will continue to draw his full salary and benefits during the term of his reassignment. Thus, Defendant concludes that the reassignment **[*18]** has absolutely no economic impact on the Plaintiff and therefore does not necessitate the issuance of an injunction. Additionally, Defendant argues that the Plaintiff's breach of contract and constitutional claims are both compensable by monetary damages, should Plaintiff prevail on the merits. Defendant therefore concludes that Plaintiff has adequate legal remedies. Defendant's conclusions, however, are without merit.

*HN6* To justify the entry of a preliminary injunction, the Plaintiff must first prove that he has no adequate remedy at law. This requirement is a vestige from the time when there were separate tribunals for legal and equitable relief and equity courts were only empowered to provide relief when no legal remedies were available or when those that were available were ineffective. 11 WRIGHT AND MILLER, INJUNCTIONS § 2944, pp. 392-94 (1973). The Seventh Circuit has stated *HN7* that there is no adequate remedy at law if the plaintiff "will suffer irreparable harm in the interim -- that is, harm that cannot be prevented or fully rectified by final judgment after trial. . . ." *Roland Machinery, 749 F.2d at 386.* Although sometimes treated as conceptually distinct elements, the no **[*19]** adequate remedy at law element and irreparable harm element are really part of the same analysis. See *Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11* (7th Cir. 1992). Thus, "a conclusion that the injury is irreparable in turn establishes that there is no adequate remedy at law." *Tanford v. Brand, 883 F. Supp. 1231, 1237* (S.D. Ind. 1995) (citing *Fleet Wholesale Supply v. Remington Arms Co., 846 F.2d 1095, 1098* (7th Cir. 1988)). With these principles in mind, we turn to the facts of the case now before us.

Interestingly, Defendant first argues that there is an adequate remedy at law because the Plaintiff can collect monetary damages if he prevails at trial, but then argues that the Plaintiff has suffered no irreparable injury because his reassignment has had no economic impact. We disagree.

Plaintiff's reassignment has and will continue, if left unabated, to result in an irreparable injury for which no adequate remedy at law exists. We begin by noting that *HN8* irreparable harm is presumed to flow from a constitutional violation which is not fully compensable by monetary damages. *Hamlyn v. Rock Island County*

*Metropolitan Mass Transit District*, 960 F. Supp. 160, **[\*20]** 162 (C.D. Ill. 1997); *Tanford*, 883 F. Supp. at 1237; 11 WRIGHT AND MILLER, INJUNCTIONS § 2944, p. 94 (1973). We have already concluded that the Plaintiff has likely established a constitutional violation arising from the deprivation of the non-economic benefits associated with his position as Principal and we now conclude that this violation is not fully compensable through the award of monetary damages.

We reach this conclusion based on the nature of the losses at issue here. The losses occasioned by the Defendant's constitutional violation are intangible and nebulous, for they are bound up with such benefits as job satisfaction, professional growth and development, service to the community and professional advancement. For every day that Plaintiff remains assigned to his administrative position, Plaintiff is denied the opportunity to perform his chosen profession. Plaintiff has dedicated significant time and energy to serving the community in his capacity as Principal. Therefore, Plaintiff suffers when he is unable to perform in that capacity. *See Banks v. Chicago Public Schools*, 1996 U.S. Dist. LEXIS 5163, 1996 WL 197545 at \*4 (N.D. Ill. 1996). In addition to suffering these losses, Plaintiff will **[\*21]** also be harmed in that, if the reassignment goes unremedied, Plaintiff's resume will necessarily contain a reference to his removal from the position of Principal of Kozminski and will indicate that his current position is that of an administrator in the Central Office. Money will not adequately compensate Plaintiff for these losses and we thus conclude that Plaintiff has suffered an irreparable injury for which no adequate legal remedy exists.

**C. Harm To the Defendants and the Public Interest**

With respect to the third and fourth factors, the Defendant contends that the harm to the students, teachers and staff of the Kozminski School that would accrue if the Court grants the Plaintiff's motion for an injunction militates against such an order. Defendant contends that the Plaintiff is unable to provide the appropriate educational environment and the improvements students need to learn and that the Plaintiff's purported interests must therefore give way to the interests of the student and teachers.

Defendant offers no evidentiary support for its position that the reinstatement of Plaintiff would harm the students or staff of the Kozminski School. The only arguable support offered **[\*22]** by Defendant is the School Report issued by the Office of Accountability which was rendered pursuant to observations conducted by that office shortly after Plaintiff was reassigned. This evidence, however, does not support Defendant's argument because it was conducted after Plaintiff left his position and more importantly, because it does not specifically attribute the problems discussed in the report to the Plaintiff. Indeed, the evidence provided by Defendant is to the contrary. After conducting a thorough investigation, Vallas concluded that most of the charges levied against Plaintiff were without foundation or substantial justification and that there was no basis for the initiation of dismissal proceedings. [9] Additionally, Plaintiff provided a long list of programs and activities which he initiated while serving as Principal of the Kozminski School which facts Defendant has not refuted. Finally, there is no evidence that the Kozminski School was ever placed on probation or remediation nor evidence that Plaintiff was ever disciplined or counseled for any alleged failure to adequately perform his job.

**FOOTNOTES**

[9] To the extent that there were legitimate problems uncovered by Vallas' investigation, Vallas himself concluded that the problems could be promptly addressed without resort to removing Plaintiff from his position.

**[\*23]** Based on the above considerations, the Court finds that the harm to the Defendant which would result from the issuance of this injunction, if there is any harm at all, is greatly outweighed by the harm that will accrue to the Plaintiff if no such relief is granted.

**III. Conclusion and Recommendation**

Prior to reaching its recommendation on the proper adjudication of the motion now before the Court, the Court first recommends the consolidation of the preliminary and permanent injunction stages of this motion pursuant to Federal Rule of Civil Procedure 65(a)(2). The Court bases this recommendation on its finding that there are no factual disputes and that the evidence considered at this stage would be duplicative of that which would be considered in deciding Plaintiff's prayer for permanent injunctive relief. Based on these findings, the Court believes it would be appropriate to treat the instant motion as one for permanent injunctive relief under Rule 65(a)(2).

Pursuant to this recommendation, the court notes that, [HN9] in order to obtain permanent injunctive relief, the Plaintiff must establish that he has in fact succeeded on the merits rather than merely establishing the **[\*24]** likelihood of success on the merits, as would be required on a motion for preliminary injunctive relief. *Plummer v. American Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996).

In the instant case, the Court believes that the Plaintiff has satisfied this heightened requirement. As no additional evidence on the issue of the alleged constitutional violation will be forthcoming, the Court finds that the reasoning applied in reaching the conclusion that the Plaintiff established a likelihood of success on the merits is equally applicable to a finding that the Plaintiff has in fact succeeded in establishing the required constitutional violation. The Court thus concludes that the Plaintiff has satisfied all of the factors required for either preliminary or permanent

injunctive relief and the Court consequently recommends that the Plaintiff's motion for a preliminary injunction be treated as a motion for permanent injunctive relief and that the motion be granted.

Ordinarily, in granting a motion for injunctive relief based on a procedural due process violation, the Court would recommend that the Plaintiff be given notice of the charges against him and a hearing **[*25]** on those charges. However, as Vallas has already concluded that the charges against Plaintiff were insufficient to support his dismissal and therefore insufficient to warrant a hearing, the Court instead recommends that the Plaintiff be reinstated to his position as Principal of the Kozminski Community Academy and that the Defendant be enjoined from removing Plaintiff from that position without notice and an opportunity to be heard.

**Dated:** May 8, 1998.

**MARTIN C. ASHMAN**

United States Magistrate Judge

Written objections to any finding of fact, conclusion of law, or the recommendation for disposition of this matter must be filed with the Honorable Robert W. Gettleman within ten (10) days after service of this Report and Recommendation. *See* FED. R. C.V. P. 72(b). Failure to object will constitute a waiver of objections on appeal.



Service: **Get by LEXSEE®**
Citation: **1998 us dist lexis 7287**
View: Full
Date/Time: Thursday, July 10, 2008 - 12:48 PM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Out | Help

**LexisNexis®**    About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.