IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICK SALINSKE, for himself and all others )
similarly situated, )
                                            )    Case No. 08-cv-03017
                      *Plaintiffs,* )
                                            )    Judge Wayne R. Anderson
    v. )    Magistrate Judge Morton Denlow
                                            )
CALUMET CITY, ILLINOIS, )
                                            )
                                     *Defendant.* )

**MEMORANDUM SUPPORTING PLAINTIFF NICK SALINSKE'S
AMENDED MOTION FOR CLASS CERTIFICATION**

        Plaintiff, Nick Salinske ("Salinske"), pursuant to Fed. R. Civ. P. 23(a) and (b)(2),

moves this Court for the entry of an order determining that this action may proceed as a class

action against Defendant Calumet City, Illinois ("City"). This memorandum is submitted in

support of Salinske's Amended Motion for Class Certification.

**I.      INTRODUCTION AND DISCUSSION OF RELATED LAWSUITS**

        Salinske, a property owner in City, has filed this class action seeking, among

other things, a declaration that City's Point of Sale Inspection Ordinance ("POS Inspection

Ordinance") is unconstitutional. The POS Inspection Ordinance provides that City property

owners are prohibited from selling their property unless it "passes" an inspection during which

City can order property owners to make cosmetic repairs to their property. Salinske contends

that the POS Inspection Ordinance is unconstitutional because it unreasonably and

unconstitutionally restrains property owners' right to freely sell their property without due

process of law. Salinske also contends that the POS Inspection Ordinance is unconstitutional

because it contains no due process protection against City requiring that legal nonconforming

property – as compared to illegally converted property – be "deconverted" (*i.e.*, reduced to fewer units) before it can be sold. Salinske also seeks a declaration that City's uniform refusal to issue re-build letters (*i.e.*, stating that legal nonconforming property can be rebuilt as such in accordance with City's Zoning Ordinance) in connection with the sale of legal nonconforming property is unconstitutional. He contends that City's refusal to issue re-build letters and/or other confirmation that property is legal nonconforming is unconstitutional because City effectively prohibits owners of legal nonconforming property from selling such property as nonconforming in violation of the protections in the U.S. Constitution and 65 ILCS 5/11-13-1. More specifically, Salinske contends that City knows that lenders require a re-build letter from City before lenders will loan money for the purchase of legal nonconforming property but City uniformly refuses to issue such letters. As a result of City's conduct, owners of legal nonconforming property are effectively prohibited from selling their property as legal nonconforming and instead are forced by City to deconvert their property if they want to sell it.

    This case presents the same issues raised in litigation brought by the Mainstreet Organization of Realtors® ("Association"), entitled *Realtor Association of West/South Suburban Chicagoland v. Calumet City*, No. 06 C 2271 (N.D. Ill.)(Shadur, J.) (the "Prior Litigation"). In the Prior Litigation, Association challenged the constitutionality of City's then-enacted point of sale inspection ordinance. Importantly, in the Prior Litigation, Judge Shadur twice ruled that immediate injunctive relief enjoining enforcement of various versions of City's POS Inspection Ordinance was necessary and appropriate. (*See* Exs. A and B). City appealed the second injunction entered by Judge Shadur. On October 17, 2007, the Seventh Circuit vacated the December 8 injunction on the ground that Association lacked "prudential" standing to challenge the POS Inspection Ordinance. *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th

524797.1

Cir. 2007), *cert. denied*, 2008 U.S. LEXIS 4558, 76 U.S.L.W. 3635 (U.S. June 2, 2008). In its

opinion in the Prior Litigation, the Court of Appeals stated that a challenge to the POS Inspection

Ordinance should be brought in a lawsuit by "all [] homeowners in Calumet City [] joined in a

class action." *Mainstreet Org. of Realtors*, 505 F.3d at 747. By this Amended Motion, Salinske

seeks to implement the suggestion of the Seventh Circuit.

This lawsuit is one of several actions that have been filed by City homeowners

seeking to have the injunctive relief entered by Judge Shadur reinstated. One of those actions,

*Walker v. Calumet City*, No. 07 C 6148 (N.D. Ill.) (Shadur, J.), was filed as a class action but

was recently dismissed as moot before the Court (Judge Shadur) ruled on a pending class

certification motion.[1] Judge Shadur determined that the case was moot after City represented

that it would not enforce its Point of Sale Inspection Ordinance against the designated class

representative because her property had recently passed an annual rental dwelling inspection

under a separate ordinance (even though the Point of Sale Inspection Ordinance nowhere states

that it does not apply if property passes a rental dwelling inspection). Prior to representing that it

would not enforce the ordinance against Walker, City represented to Judge Shadur that it would

not enforce the ordinance until he ruled on whether the ordinance with Constitutional. City made

that representation to induce Judge Shadur to defer consideration of Walker's motion for

preliminary injunction and motion for class certification. City then took actions to moot

Walker's claim before Judge Shadur could consider Walker's motions.[2] In light of City's tactics

in the *Walker* litigation, Salinske urges the Court to promptly consider this motion.

---

[1]    Another of those actions is currently pending before Judge Coar in *Mann v. Calumet City*, No. 08
C 555 (N.D. Ill.). The *Mann* action is not a class action. Rather, it is an action brought by individual
homeowners and, among other things, seeks monetary damages based on City's violation of Judge
Shadur's injunction in the Prior Litigation.

[2]    Salinske disputes that City's representation that it would not enforce its Point of Sale Inspection
Ordinance mooted Walker's claims. *See e.g.*, *Horina v. City of Granite City*, No. 05-cv-0079, 2005 U.S.

By this Amended Motion, Salinske seeks certification of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(2). As detailed below, each of the requirements set forth in Rule 23(a) is satisfied. The proposed class -- all owners of residential property in City -- is numerous. Fed. R. Civ. P. 23(a)(1). There exists questions of fact and law that are common among the class members (*i.e.*, the constitutionality of the POS Inspection Ordinance and City's uniform refusal to issue "re-build" letters in connection with the sale of legal nonconforming property). *Id.* at (a)(2). Salinske's claims are typical of the class members' claims because they arise from the face of the POS Inspection Ordinance which applies to all owners of residential property in City regardless of whether such property is conforming or legal nonconforming. *Id.* at (a)(3). Likewise, Salinske owns a legal nonconforming property subject to City's uniform refusal to issue "re-build" letters. *Id.* Salinske and his counsel will fairly and adequately represent the class. *Id.* at (a)(4). Accordingly, Salinske respectfully requests that this Court certify the proposed class. Salinske also respectfully requests that the Court appoint him as class representative and his counsel, Grippo & Elden LLC, as class counsel.

## II.    STATEMENT OF FACTS

### A.    City's Ordinances

As briefly described above, the Point of Sale Inspection Ordinance prohibits the sale of private property unless such property "passes" an inspection. During the inspection, City can order that property owners make cosmetic repairs to their property as a condition of the right to sell. The Point of Sale Inspection Ordinance thus takes away the right to freely sell property

---

Dist. LEXIS 36386, at *11-12 (S.D. Ill. Aug. 29, 2005)(the Seventh Circuit "has long recognized . . . that a defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time".) (Ex. C). Salinske also disputes that the Court could consider mootness before deciding the pending class certification motion because "the mooting of the named plaintiff's claim in a class action by the defendant's satisfying the claim does not moot the action so long as . . . a motion for class certification has been made and not ruled on." *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 546-47 (7th Cir. 2003).

without pre-deprivation due process. Rather than repeat for the Court the terms and requirements of City's Point of Sale Inspection Ordinance, and other pertinent City ordinances, Salinske respectfully directs the Court's attention to the Verified Class Action Complaint For Temporary Restraining Order, Preliminary Injunction, Permanent Injunction, Declaratory and Other Relief, filed May 23, 2008 ("Complaint"), for a discussion of the ordinances.

> **B.    Salinske's Property and Similarly Situated Property.**

Salinske owns legal nonconforming property in City located at 527 155th Street. Complaint at ¶ 7. Salinske's property contains two dwelling units. *Id.* Each unit has passed City's annual inspections. *Id.* The property is listed for sale and is subject to the POS Inspection Ordinance. *Id.* By virtue of its POS Inspection Ordinance, City has taken and interfered and continues to take and interfere with Salinske's right to alienate his property, without due process of law. *Id.*

According to U.S. Census Bureau data from 2000, City had a population of 39,071 with 15,947 housing units and at least 15,257 residential properties.[3] Conservatively, this data shows that there are likely more than 15,000 owners of residential property in City. As of July 9, 2008, there were approximately 560 active listing of property in City. (Ex. D, Joseph Declaration at ¶ 3). All residential property is subject to the POS Inspection Ordinance if not enjoined. Likewise, each legal nonconforming property is subject to City's refusal to issue re-build letters and/or other confirmation that property is legal nonconforming.

> **C.    The Proposed Class.**

Salinske seeks certification of a Rule 23(b)(2) class consisting of all owners of residential property in City.

---

[3]    The U.S. Census Bureau defines "housing units" as a house, apartment, mobile home, a group of rooms, or a single room that is occupied, or if vacant is intended for occupancy, as separate living quarters.

Alternatively, if the Court deems that such a class is too broad, Salinske requests that the Court certify a class of all owners of residential property in City who are subject to the POS Inspection Ordinance and who have listed their property for sale or transfer, either on their own, through a real estate agent or broker, or in some other manner. In addition, if the Court deems it necessary or appropriate, Salinske does not oppose the creation of a class of all owners of residential property in City (or those who have listed their property for sale) for purposes of Counts I and II of the Complaint and a sub-class of all owners of legal nonconforming property (or those who have listed their property for sale) in City.

## III.    **ARGUMENT**

Rule 23 of the Federal Rules of Civil Procedure requires a two-step analysis to determine whether class certification is appropriate. First, a plaintiff must satisfy all four requirements of Rule 23(a) (*i.e.*, numerosity, commonality, typicality, and adequacy of representation). *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 203 (7th Cir. 1993). Second, the action must also satisfy one of the conditions of Rule 23(b). *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). As discussed below, the requirements of both Rule 23(a) and (b) are satisfied. Indeed, the Court of Appeals anticipated as much.

Cases filed to remedy constitutional violations based upon city ordinances are particularly appropriate for class certification. *See e.g., Devines v. Maier*, 665 F.2d 138 (7th Cir. 1981)(class action suit challenging city's enforcement of its housing code; class members entitled to just compensation pursuant to the Fifth Amendment); *McKenzie v. City of Chicago*, 175 F.R.D. 280 (N.D. Ill. 1997)(granting property owners' motion for class certification to challenge city's municipal code).

6

At the hearing on July 18, City's counsel stated that City opposed class certification due to the cost of providing notice. We note that for Rule 23(b)(2) class actions, notice is optional. See Rule 23(c)(2)(A).

A.    **The Proposed Class Meets The Requirements Of Fed. R. Civ. P. 23(a).**

1.    **The Proposed Class Is Sufficiently Numerous.**

Fed. R. Civ. P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Impracticability does not mean impossibility; Salinske need only prove it would be inconvenient and difficult to join the proposed class members. *Bethards v. Bard Access Sys., Inc.*, No. 94 C 1522, 1995 U.S. Dist. LEXIS 22467, at *10 (N.D. Ill. Feb. 22, 1995). (Ex. F). "Where the class is large, the numbers alone are dispositive of the impracticability of joinder," and the Court need not consider other factors to determine whether the numerosity requirement is met. *Thillens, Inc. v. Community Currency Exch. Ass'n*, 97 F.R.D. 668, 677 (N.D. Ill. 1983). Salinske may establish impracticability based on good faith estimates, *Young v. County of Cook*, No. 06 C 552, 2007 U.S. Dist. LEXIS 31086, at *7 (N.D. Ill. Apr. 25, 2007) (Ex. G), and the court may also rely on "common sense assumptions" and reasonable inferences to determine if the numerosity requirement is met. *Walker v. Bankers Life & Cas. Co.*, No. 06 C 6906, 2007 U.S. Dist. LEXIS 73502, at *7 (N.D. Ill. Oct. 1, 2007)(citation omitted) (Ex. H). Although Rule 23(a)(1) contains no threshold requirement, generally 40 or more members are adequate to establish numerosity. *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 290, 296 (N.D. Ill. 2006). Moreover, where the purported class is seeking declaratory and injunctive relief, the remedy would protect the rights of future class members for whom joinder is necessarily impracticable. *See Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill. 1983).

Here, it is undeniable that the numerosity requirement is met. Clearly, the number of owners of residential property in City is greater than 40. In fact, according to U.S. Census

7

Bureau data from 2000, City had a population of 39,071 with 15,947 housing units and at least 15,257 residential properties. Conservatively, this data shows that there are likely more than 15,000 owners of residential property in City. This is sufficient to meet the numerosity requirement. In addition, if the Court were to certify the alternatively proposed class (those property owners selling their property), the numerosity requirement is also satisfied. As of July 9, 2008, there were approximately 560 active listing of property in City. (Ex. D, Joseph Declaration at ¶ 3).

### 2.    Common Questions Of Fact Or Law Exist.

To certify a class, there must exist at least one question of fact or law that is common among the class members. Fed. R. Civ. P. 23(a)(2). The Seventh Circuit has held that "[a] common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). A common set of operative facts is present when a defendant is claimed to have engaged in "standardized conduct toward the members of the proposed class." *Id.* "Not all factual or legal questions raised in a lawsuit need be common so long as a single issue is common to all class members." *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986). Class certification cannot be defeated merely because there are some factual variations among the members' grievances. *See Allen v. City of Chicago*, 828 F. Supp. 543, 551 (N.D. Ill. 1980).

This element is easily met here because this case involves a facial challenge (Counts I and II of the Complaint) and Salinske and the class have at least the following factual and legal issues in common (with respect to all Counts in the Complaint):

(a)  Whether the POS Inspection Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to sell their property without due process of law;

(b)  Whether the POS Inspection Ordinance is unconstitutional because it fails to provide procedural due process; and

(c)  Whether City's refusal to issue re-build letters and/or other confirmation that property is legal nonconforming is unconstitutional and in violation of 65 ILCS 5/11-13-1 because City effectively prohibits owners of legal nonconforming property from selling such property as nonconforming.

### 3.    Salinske's Claims Are Typical Of The Claims Of The Class.

A class may be certified where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).  "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).  The typicality requirement is meant to ensure that the named representative's claims "have the same essential characteristics as the claims of the class at large." *De La Fuente*, 713 F.2d at 232.

Salinske's claims are typical of the class members' claims because their claims arise from the POS Inspection Ordinance and a common course of conduct, specifically, City's enforcement of the ordinance.  In addition, Salinske's claims are typical of the class members' claims because they arise under the same legal theories.  If Salinske's Fourteenth Amendment rights are being violated by City, then all class members' constitutional rights are likewise being violated by City.  Moreover, Salinske owns a legal nonconforming property subject to City's uniform refusal to issue "re-build" letters.  Accordingly, Salinske's claims are typical of all class

9

members (for Counts I and II) and for all members of the class who own legal nonconforming property (Count III).

### 4.    Salinske Will Fairly And Adequately Protect And Represent The Interests Of The Class.

Fed. R. Civ. P. 23(a)(4) requires that Salinske fairly and adequately protect and represent the interests of the class. "The adequacy threshold is a low one: 'as long as the Court is assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest' the requirement is met." *Wallace v. Chicago Hous. Auth.*, 224 F.R.D. 420, 429 (N.D. Ill. 2004) (quoting *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.*, 94 F.R.D. 147, 154 (N.D. Ill. 1982)). The adequacy determination has two elements: (1) Salinske's attorneys must be qualified, experienced, and able to conduct the litigation; and (2) Salinske's interests must not be antagonistic to the class members' interests. *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1982). An adequate class representative must maintain only an "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Wahl v. Midland Credit Mgmt., Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). The burden of showing this basic understanding is "not difficult." *Murray v. New Cingular Wireless Serv., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

Salinske's counsel is experienced in class action and other complex litigation, and they are able to commit the resources needed to adequately prosecute the case. Furthermore, they have vigorously prosecuted similar constitutional claims on behalf of Association in the Prior Litigation, represented the plaintiff in the *Walker* litigation and are counsel of record in the *Mann* litigation.

Salinske's interests are not antagonistic to the class members' interests because his claims are identical to the claims of the class members. Given such identity, there is no potential for conflicting interests in this action. Salinske has a sufficient interest in the outcome of this suit because he is subject to the POS Inspection Ordinance and City's conduct, as are the members of the proposed class, and both he and the class stand to benefit from the protection of their constitutional rights through the declaratory judgment and injunction that Salinske seeks.

**B.**     **The Requirements Of Fed. R. Civ. P. 23(b)(2) Are Met.**

Class certification pursuant to Fed. R. Civ. P. 23(b)(2) is appropriate if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "The primary limitation on the use of Rule 23(b)(2) is the requirement that injunctive or declaratory relief is the primary or exclusive remedy sought." *Doe v. Guardian Life Ins. Co. of Am.*, 145 F.R.D. 466, 477 (N.D. Ill. 1992); *Wallace*, 224 F.R.D. at 431 (where the main sources of relief sought by plaintiff are declaratory and injunctive relief, the class falls within the ambit of Rule 23(b)(2), and is appropriate for certification).

Here, the only relief currently sought by Salinske and the proposed class members is injunctive and declaratory relief. Specifically, they seek a declaration that the POS Inspection Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to sell their property without due process of law and fails to provide procedural due process, and a preliminary and permanent injunction enjoining enforcement of the POS Inspection Ordinance. They also seek a declaration that City's uniform refusal to issue re-build letters is unconstitutional because City effectively prohibits owners of legal nonconforming property from selling such property as nonconforming in violation of the protections in the U.S.

524797.1

Constitution and 65 ILCS 5/11-13-1.  Accordingly, the requirements of Rule 23(b)(2) are satisfied.

## CONCLUSION

The proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(2). Accordingly, Salinske respectfully requests that this Court certify the class as set forth herein, appoint him as class representative and his counsel, Grippo & Elden LLC, as class counsel. Additionally, in light of the events in the *Walker* litigation, Salinske respectfully requests that the Court consider this Amended Motion promptly.

July 25, 2008

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois  60606
(312) 704-7700

Respectfully submitted,

**NICK SALINSKE**

By:    /s/ Patrick T. Nash
          One of his Attorneys

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, | ) ) ) | |
| Plaintiff, | ) | Case No. 06 C 2271 |
| | ) | |
| v. | ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) ) | |
| Defendant. | ) ) | |

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter coming to be heard on Plaintiff's motion for a preliminary injunction, due

notice having been given, and the Court being fully advised in the premises, for the reasons set

forth on the record at the hearing of this matter on August 2, 2006, and at prior hearings, and

based on the written submissions of the parties, the Court finds that, as to Plaintiff's claims that

the Deconversion Provisions and the Point of Sale Inspection Ordinance (as defined below) are

facially unconstitutional: (i) Plaintiff has associational standing, (ii) Plaintiff has established a

high likelihood of success on the merits, (iii) there is no adequate remedy at law and Plaintiff and

its Members will suffer irreparable harm if injunctive relief is not granted, (iv) the irreparable

harm the Plaintiff and its Members will suffer if injunctive relief is wrongfully denied will

outweigh any irreparable harm the Defendant will suffer if injunctive relief is wrongfully

granted, and (v) granting injunctive relief will not disserve the public interest in terms of the

consequences to non-parties.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    Calumet City, Illinois, including its agents, employees, officers, successors and

members (collectively, the "City"), is prohibited and enjoined from enforcing (i) Section 14-1 of

86409v4

Chapter 14, Article I of the Calumet City Code (the "Point of Sale Inspection Ordinance"), including but not limited to those provisions of the Point of Sale Inspection Ordinance that require sellers of legal nonconforming property to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions"), and (ii) Section 327(b) of Chapter 82, Article X of the Calumet City Code. This Order shall not prohibit the City from attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b) of Chapter 82, Article X of the Calumet City Code.

2.     The City is prohibited and enjoined from (i) conducting inspections pursuant to the Point of Sale Inspection Ordinance; (ii) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" and (iii) ordering the deconversion of legal nonconforming property. The City shall allow the sale or transfer of property without requiring point of sale inspections or deconversions of legal nonconforming property.

3.     This order shall remain in effect until the trial on the merits, unless modified by this Court.

4.     Because no costs or damages will be incurred or suffered by the City if the requested injunction is issued, the Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by the Plaintiff.

Dated:      August 8, 2006          ENTERED:

Judge Milton I. Shadur

-2-

86409v4

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| REALTOR® ASSOCIATION OF WEST/ SOUTH SUBURBAN CHICAGOLAND, | ) ) ) ) | Case No. 06 C 2271 |
| Plaintiff, | ) | |
| v. | ) ) | Judge Milton I. Shadur |
| CALUMET CITY, ILLINOIS, | ) ) | |
| Defendant. | ) ) | |

## ORDER GRANTING PRELIMINARY INJUNCTION

This matter has come on to be heard on the motion of plaintiff ("Association") for a preliminary injunction, with due notice having been given and this Court being fully advised in the premises. For the reasons set forth on the record at the hearing of this matter on August 2, 2006 and at other hearings, and based on the written submissions of the parties, this Court finds that as to Association's claims that the Deconversion Provisions and the Amended Point of Sale Inspection Ordinance (as defined below) are facially unconstitutional:

1.    Association has established associational standing.

2.    Association has established a high likelihood of success on the merits.

3.    There is no adequate remedy at law, and Association and its Members will suffer irreparable harm if injunctive relief is not granted.

4.    Such irreparable harm that Association and its Members will suffer if injunctive relief is wrongfully denied substantially outweighs any irreparable harm that defendant Calumet City ("City") will suffer if injunctive relief is wrongfully granted.

5.    Granting injunctive relief will not disserve the public interest – indeed, will serve the public interest – in terms of the consequences to non-parties.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    City and its agents, employees, officers, successors and members (collectively included within "City," though treated for convenience as a singular noun in this Order), is prohibited and enjoined from enforcing (a) Section 14-1 of Chapter 14, Article I of the Calumet City Code, as amended by Ordinance No. 06-68 (the "Amended Point of Sale Inspection Ordinance"), including but not limited to any provisions of the Amended Point of Sale Inspection Ordinance that require sellers of legal nonconforming property to "deconvert" them into structures with fewer income-producing rental units (the "Deconversion Provisions"), and (b) Section 327(b) of Chapter 82, Article X of the Calumet City Code ("Section 327(b)"). This Order shall not prohibit City from attempting to collect unpaid water bills by lawful means other than pursuant to Section 327(b).

2.    City is prohibited and enjoined from (a) conducting inspections pursuant to the Amended Point of Sale Inspection Ordinance; (b) prohibiting the sale of property and refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "certificate of compliance" or "conditional certificate of compliance;" and (c) ordering the deconversion of legal nonconforming property. City shall allow the sale or transfer of property without requiring point of sale inspections or deconversions of legal nonconforming property.

3.    This order shall remain in effect until the trial on the merits, unless modified by this Court.

4.    Because no costs or damages will be incurred or suffered by City if the requested injunction is issued, this Court deems it proper that, pursuant to Fed. R. Civ. P. 65(c), no security need be given by Association.

2

5.    This Court's August 8, 2006 Order Granting Preliminary Injunction as to an earlier version of the now-Amended Point of Sale Ordinance is now moot, and the injunction granted thereby is dissolved.

Dated:    December 8, 2006          ENTERED:

_Milton I. Shadur_
_____
Judge Milton I. Shadur

3

# EXHIBIT C

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 9 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                    Page 1 of 11

LexisNexis® *Total Research System*                    Switch Client | Preferences | Sign Out | ? Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | History | 🖋️

Service: Get by LEXSEE®
Citation: 2005 us dist lexis 36386

*2005 U.S. Dist. LEXIS 36386, ***

DONALD N. HORINA, Plaintiff, vs. CITY OF GRANITE CITY, ILLINOIS, Defendant.

05-cv-0079-MJR

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF ILLINOIS

2005 U.S. Dist. LEXIS 36386

August 29, 2005, Decided
August 29, 2005, Filed

**SUBSEQUENT HISTORY:** Injunction granted at Horina v. City of Granite City, 2006 U.S. Dist. LEXIS 31746 (S.D. Ill., May 19, 2006)

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Plaintiff sued defendant, the City of Granite City, Illinois, alleging that Granite City, Ill., Ordinance ch. 5.78.010 violated the First and Fourteenth Amendments. Plaintiff moved for a preliminary injunction under Fed. R. Civ. P. 65(a).

**OVERVIEW:** Plaintiff, who distributed religious tracts on public sidewalks, was ticketed for violating the ordinance after he placed a tract in a vehicle. The vehicle belonged to a security guard at a clinic at which abortions were performed. The citation was changed to a charge of trespass to vehicle. Plaintiff claimed that Granite City, Ill., Ordinance ch. 5.78.010, which prohibited leafleting in public places of any material that was free of charge, violated his and others' rights to freedom of speech and religion. The court found that plaintiff's claims were not mooted by the City's representations that it would not enforce the ordinance. Plaintiff was likely to succeed on his claim that the ordinance was unconstitutional as applied. The City offered no justification for the necessity of the ordinance, nor did it appear that the ordinance was a reasonable time, place, and manner restriction on speech. A facial challenge also was likely to succeed because the ordinance was overbroad. As the balance of harm favored plaintiff, who had curtailed his leafleting in fear of again being cited, injunctive relief was warranted.

**OUTCOME:** Plaintiff's motion for a preliminary injunction was granted.

**CORE TERMS:** ordinance, leafleting, preliminary injunction, leaflet, content-based, injunction, content-neutral, message, temporary, moot, sidewalk, peddling, clinic, public interest, enforcing, religious, overbroad, narrowly tailored, advertisement, overbreadth, speaker, street, ample, tract, public place, unconstitutionally, irreparable, channels, advertising, handbills

**LEXISNEXIS® HEADNOTES**                                                    ⊟ **Hide**

Civil Procedure > Remedies > Injunctions > Elements > General Overview 🔚
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🔚

*HN1* ± To obtain a preliminary injunction, a movant must show: (1) a reasonable likelihood of success on the merits; (2) that there is no adequate remedy at law; (3) that the movant will suffer irreparable harm if an injunction is not issued; (4) that the threatened injury he faces outweighs the injury the non-movant will suffer if the injunction is granted; and (5) that an injunction is in the public interest. If the movant can meet this threshold burden, then the inquiry becomes a "sliding scale analysis" where these factors are weighed against one another. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Elements > General Overview 🔚
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🔚
Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview 🔚

*HN2* ± When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, and money damages are therefore inadequate. As well, there can be no irreparable harm to a municipality when it is

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 10 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                                    Page 2 of 11

prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties. Therefore, if the movant can show a likelihood of success on the merits, the court will balance the harms to the parties and the public interest. More Like This Headnote

Civil Procedure > Justiciability > Mootness > General Overview
Evidence > Procedural Considerations > Burdens of Proof > General Overview
HN3± A defendant carries a heavy burden when it argues that a plaintiff's claims are moot. More Like This Headnote

Civil Procedure > Justiciability > Mootness > Voluntary Cessation Exception
Governments > Legislation > General Overview
Governments > State & Territorial Governments > General Overview
HN4± Disavowal of a statute requires that the State do more than say during litigation that it might never prosecute a plaintiff or that it does not intend to prosecute the plaintiff. In order to disavow the statute, the State must instead take some affirmative step against enforcement. More Like This Headnote

Civil Procedure > Justiciability > Mootness > Voluntary Cessation Exception
HN5± The United States Court of Appeals for the Seventh Circuit has long recognized that a defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time. More Like This Headnote

Governments > Legislation > General Overview
Governments > Legislation > Overbreadth
HN6± An "as-applied" challenge consists of a challenge to a regulation's application only to the party before the court. If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable. However, if an overbroad challenge is successful, the statute may not be applied to anyone. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
HN7± See U.S. Const. amend. I.

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview
Constitutional Law > Bill of Rights > State Application
HN8± The First Amendment applies to state governments under the Fourteenth Amendment. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
HN9± Leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
HN10± Speech addressing religious matters is speech of the highest constitutional order. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Forums
HN11± Public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Forums
Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > Scope of Freedom
Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner
HN12± When regulating First Amendment activity in a public forum, the government has a difficult burden to carry. For a state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. The state may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. Therefore, a court must determine whether an ordinance is content-based or content-neutral so as to apply the proper level of scrutiny. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview
Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview
HN13± Content-based regulations are presumptively invalid under the First Amendment and subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. Content-based regulations are defined as those that distinguish favored from disfavored speech based on the ideas expressed. If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. For instance, a general ban on speech in the

Case 1:08-cv-03017  Document 36-2  Filed 07/25/2008  Page 11 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                    Page 3 of 11

vicinity of a school is content-neutral whereas an analogous ban on speech containing an exemption for speech relating to labor disputes is content-based. The former regulation requires no consideration to content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the regulation applies. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview 🔍
HN14⊕ Where a government does not adopt a regulation of speech because of disagreement with the message the speech conveys, the regulation is content neutral. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Speech > General Overview 🔍
HN15⊕ A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner 🔍
Evidence > Procedural Considerations > Burdens of Proof > Allocation 🔍
Governments > Local Governments > Police Power 🔍
HN16⊕ There is no doubt a city has a legitimate interest in protecting its citizens and ensuring that its streets and sidewalks are safe for all citizens. A city's interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety. However, a city must be able to justify the necessity of an ordinance. In the context of a First Amendment challenge under the narrowly tailored test, the city has the burden of showing that there is evidence supporting its proffered justification. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview 🔍
Evidence > Procedural Considerations > Burdens of Proof > General Overview 🔍
HN17⊕ The United States Supreme Court has stated that it has never accepted mere conjecture as adequate to carry a First Amendment burden. Moreover, using a speech restrictive blanket with little or no factual justification flies in the face of preserving one of Americans' most cherished rights. More Like This Headnote

Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🔍
Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner 🔍
HN18⊕ Where a court finds that a city has failed to show an ordinance restricting speech advances a significant governmental interest, discussion as to whether the ordinance is a reasonable time, place and manner restriction is not necessary for purposes of issuing a preliminary injunction. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > General Overview 🔍
HN19⊕ A regulation of speech is narrowly tailored if it promotes a substantial government interest that would be achieved less effectively absent the regulation. To satisfy the narrowly tailored test, an ordinance need not be the least restrictive method for achieving the government's goal. Nevertheless, while a regulation does not have to be a perfect fit for the government's needs, it cannot substantially burden more speech than necessary. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner 🔍
HN20⊕ The final inquiry in determining whether an ordinance regulating speech is a reasonable time, place and manner restriction is whether the law leaves open ample alternative channels. An adequate alternative does not have to be the speaker's first choice. Yet an alternative is not adequate if it forecloses a speaker's ability to reach one audience even if it allows the speaker to reach other groups. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner 🔍
HN21⊕ For purposes of determining whether a law regulating speech leaves open ample alternative channels, the fact that a plaintiff can communicate his message elsewhere does not end a court's analysis if the intended message is rendered useless or is seriously burdened. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Time, Place & Manner 🔍
HN22⊕ For purposes of determining whether a law regulating speech leaves open ample alternative channels, an alternative is not ample if the speaker is not permitted to reach his intended audience. More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness 🔍
HN23⊕ Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face because it also threatens others not before the court--those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. A statute may be invalidated on its face, however, only if the overbreadth is "substantial." The requirement that the

Case 1:08-cv-03017   Document 36-2   Filed 07/25/2008   Page 12 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                Page 4 of 11

overbreadth be substantial arises from the recognition that application of the overbreadth doctrine is, manifestly, strong medicine, and that there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court for it to be facially challenged on overbreadth grounds.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness 🔖
HN24± Overbreadth challenges are only successful when a limiting construction cannot be used to narrow the challenged statute and remove the seeming threat or deterrence to constitutionally protected speech.  More Like This Headnote

Constitutional Law > Bill of Rights > Fundamental Freedoms > Judicial & Legislative Restraints > Overbreadth & Vagueness 🔖
HN25± Granite City, Ill., Ordinance ch. 5.78.010 is overbroad.  More Like This Headnote

Civil Procedure > Remedies > Injunctions > Elements > General Overview 🔖
Civil Procedure > Remedies > Injunctions > Preliminary & Temporary Injunctions 🔖
HN26± For preliminary injunction purposes, surely, upholding constitutional rights serves the public interest.  More Like This Headnote

**COUNSEL:** **[\*1]** For Donald N. Horina, Plaintiff: Jason R. Craddock, Sr., Law Offices of Jason Craddock, Sauk Village, IL.

For City of Granite City IL, Defendant: Heidi L. Eckert, Hinshaw & Culbertson - Belleville, Belleville, IL; John L. Gilbert, Hinshaw & Culbertson LLP - Edwardsville, IL, Generally Admitted, Edwardsville, IL.

**JUDGES:** REAGAN, District Judge.

**OPINION BY:** MICHAEL J. REAGAN

**OPINION**

**MEMORANDUM and ORDER**

**REAGAN, District Judge:**

On April 27, 2005, Plaintiff Donald N. Horina filed a "Motion for Temporary and Preliminary Injunction" (Doc. 7) against Defendant City of Granite City, Illinois (hereinafter "Granite City"). In his motion, Horina moves for temporary and preliminary injunction against Granite City prohibiting Granite City from enforcing its ordinance, Chapter 5.78.010, which in part, makes it unlawful to distribute handbills on any public place in Granite City. Horina argues that the ordinance violates both his and other third persons' First and Fourteenth Amendment rights.

A hearing was held on this matter on May 20, 2005, where testimony was heard, evidence was presented, and arguments were made. Because all parties received notice of and participated in the May 20, 2005 hearing, **[\*2]** the Court construes the instant motion as solely seeking preliminary injunction pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(a)** and denies as moot the motion for a temporary restraining order.

At the hearing, Granite City challenged whether Horina has standing to seek an injunction against Granite City. As a result, the Court had the parties brief the issue (see Docs. 17, 23, and 25) and entered an Order on August 1, 2005 finding that Horina has standing to challenge the ordinance (Doc. 27). In its August 1st Order, the Court set a briefing schedule as to the merits of Horina's motion. Accordingly, Granite City filed its response brief at Doc. 33 to which Horina replied at Doc. 34. This matter being fully briefed as to the merits of Horina's motion for preliminary injunction, the Court begins its analysis with a recitation of the factual background and procedural history as detailed in its August 1st Order.

**Factual Background and Procedural History**

Horina is a Christian who feels obligated to tell others about their need to be "born again." He accomplishes his purpose primarily through public distribution of free religious literature, also known as gospel tracts. **[\*3]** ¹ Horina offers the tracts on public sidewalks and places them on automobile windshields in a manner that does not impede pedestrian traffic.

**FOOTNOTES**

₁ Horina testified his religious tracts carry the following message: "Jesus loves the sinners, Jesus died on the cross, shed his blood so that sinners, which we all are, can have our sins forgiven, and if we'll all trust Jesus

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 13 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                                    Page 5 of 11

alone, we can go to heaven on the merits of Christ and not our own merits." Transcript, p. 10.

On July 26, 2003, Horina was distributing gospel tracts on a public sidewalk in Granite City, Illinois on the 2000 block of Iowa Avenue, which is a sidewalk located in front of Hope Clinic. Hope Clinic is a medical facility, that among other procedures, performs abortions. Horina placed a gospel tract through the open window of a vehicle belonging to Nathaniel Lang ("Lang"), a security guard employed at Hope Clinic. Lang had repeatedly asked Horina not to put anything on or in his car. As a result of Horina's placing the gospel tract in the car, Lang [*4] contacted the Granite City Police Department. Granite City Police Officer Ronald Fisher issued a ticket to Horina for violating Chapter 5.78.010 [2], the Handbill Distribution Ordinance (hereinafter "the ordinance").

#### FOOTNOTES

[2] Granite City Ordinance Chapter 5.78.010 states in pertinent part: "It is unlawful for any person, firm or corporation to distribute indiscriminately to the public any cards, circulars, handbills, samples of merchandise or any advertisement or advertising matter whatsoever on any public street or sidewalk or other public place in the city; provided, that this section shall not be construed to prohibit the peddling or sale of any article or publication that may carry or be accompanied by advertising matter where a charge is made or a price is paid for such article or publication."

On April 19, 2004, Horina appeared at an administrative hearing regarding the ticket. At the hearing the citation was amended to a charge of trespass to vehicle under a different city ordinance, and Horina was fined [*5] $ 100.00. Plaintiff's Exhibit 3.

On February 4, 2005, Horina filed his "Plaintiffs' [sic] Verified Complaint for Declaratory Judgment, Preliminary and Permanent Injunctive Relief and Compensatory Damages" (Doc. 1). In his complaint, Horina seeks to enjoin Granite City from enforcing the ordinance on the grounds that it unconstitutionally prohibits Horina, as well as other similarly situated third persons, from exercising their rights to freedom of speech and religion, and violates their equal protection rights under the First and Fourteenth Amendments. Then on April 27, 2005, Horina filed his "Motion for Temporary and Preliminary Injunction" (Doc. 7) seeking, among other things, preliminary and permanent injunctions restraining Defendant from enforcing the ordinance.

The Court held a hearing regarding Horina's motion for temporary and preliminary injunction on May 20, 2005. At the hearing, Horina testified that prior to being cited under the ordinance, he would leaflet about once a week. Transcript, p. 7. Horina testified that he has curtailed leafleting as a result of having received the citation, as every time he leaflets he fears being cited under the ordinance and having to [*6] go to Court and pay fines. Id. He stated that "every time I [leaflet], I keep one eye out for the law so I don't get a ticket. I am fearful." Id. at 15. Horina further stated that if the ordinance were not in place he would not be in fear of leafleting. Id. at 7. Horina also stated that the times he did leaflet since having received the citation, no one from Granite City cited him under the ordinance. Id. at 10. However, Horina did state that at least twice when he was leafleting outside the Hope Clinic, Granite City police officers approached him and told him that he could not hand out literature as it is against city ordinance. [3] Id. at 11.

#### FOOTNOTES

[3] On cross-examination, Horina was uncertain whether the officers approached him and told him he could not hand out literature as it is against city ordinance at the clinic before or after his arrest in July 2003. Transcript, p. 13.

Also testifying at the hearing was Granite City Police Chief David Ruebhausen who has served as chief for eleven [*7] years. Ruebhausen stated that the Granite City Police Officers "bend over backwards to protect the protesters' First Amendment rights." Id. at 22. Ruebhausen has never cited anyone under the ordinance in question and has been handed literature that would fall under the ordinance. Id. at 23. To his knowledge, Horina was the first and only person to ever be cited under the ordinance. Id. at 24-25. However, Ruebhausen did state that if a person came up to a Granite City police officer upset that they had been given a piece of pro-life literature and wanted something to be done about it, a recourse available to the officer would be to issue a citation under the ordinance at issue in this matter, to the person that was leafleting. Id. at 35. Officer Ronald Fischer, the officer that issued Horina the citation under the ordinance, also testified. He stated he issued Horina a citation under the ordinance as he felt his conduct fell under the perimeters of the ordinance. Id. at 41.

At the close of the hearing, Granite City argued that Horina does not have standing to challenge the ordinance because the earlier charge against him was resolved and there are no pending charges [*8] under the ordinance against him. As a result, the Court set a briefing schedule regarding the issue of standing. Granite City filed its brief (Doc. 17) to which Horina responded (Doc. 23) and then Granite City replied (Doc. 25). On August 1, 2005, the Court entered its Order finding that Horina has standing to seek a temporary and preliminary injunction against

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 14 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386

Page 6 of 11

Granite City (Doc. 27). In that same Order, the Court set a briefing schedule as to the merits of Horina's motion. Accordingly, Granite City filed its response brief at Doc. 33 to which Horina replied at Doc. 34. This matter being fully briefed, the Court finds as follows.

**Standard for a Preliminary Injunction**

*HN1* To obtain a preliminary injunction, Horina must show: (1) a reasonable likelihood of success on the merits; (2) that there is no adequate remedy at law; (3) that Horina will suffer irreparable harm if an injunction is not issued; (4) that the threatened injury he faces outweighs the injury Granite City will suffer if the injunction is granted; and (5) that an injunction is in the public interest. *JAK Prods., Inc. v. Wiza,* 986 F.2d 1080, 1084 (7th Cir. 1993). If the movant can meet this [*9] threshold burden, then the inquiry becomes a "sliding scale analysis" where these factors are weighed against one another. *See AM General Corp. v. DaimlerChrysler Corp.,* 311 F.3d 796, 804 (7th Cir. 2002).

*HN2* When a party seeks a preliminary injunction on the basis of a potential First Amendment violation, the likelihood of success on the merits will often be the determinative factor. *Joelner v. Village of Washington Park, Illinois,* 378 F.3d 613, 620 (7th Cir. 2004). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," and money damages are therefore inadequate. *See Elrod v. Burns,* 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976). As well, there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because "it is always in the public interest to protect First Amendment liberties." *Connection Distrib. Co. v. Reno,* 154 F.3d 281, 288 (6th Cir. 1998). Therefore, if Horina can show a likelihood of success on the merits, the Court will balance the harms to the parties and the public interest. *See* [*10] *Joelner, 378 F.3d at 627-29.*

**Analysis**

**1. Whether Horina's motion is moot in light of Granite City's counsel's representations to this Court that it will not enforce the ordinance until there is a final disposition of this case.**

Before the Court can address the merits of Horina's motion for preliminary injunction, the Court must address Granite City's arguments that Horina's motion for preliminary injunction is moot in light of Granite City's counsel's representations to the Court in its response brief at Doc. 33 that until there is a final disposition of this case, or until the ordinance is repealed, it will not enforce the ordinance. Horina responds that his motion is not moot in spite of these representations. *HN3* A defendant carries a heavy burden when it argues that a plaintiff's claims are moot, *see Kikimura v. Turner,* 28 F.3d 592, 597 (7th Cir. 1994), and this Court is not convinced by Granite City's arguments.

As this Court *previously* addressed in its August 1st Order, *HN4* disavowal of a statute requires that the state do more than say during the litigation that it might never prosecute plaintiff or that it does not [*11] intend to prosecute plaintiff. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 302, 99 S. Ct. 2301, 60 L. Ed. 2d 895 (7th Cir. 1979); *Citizens for Responsible Gov't State Political Action Comm. v. Davidson,* 236 F.3d 1174, 1192-93 (10th Cir. 2000). In order to disavow the statute, the state must instead take some affirmative step against enforcement. *See Wisconsin Right to Life, Inc. v. Paradise,* 138 F.3d 1183, 1185 (7th Cir. 1998)(court found plaintiff did not face a credible threat of prosecution where the state body that enforced the law had promulgated a rule stating that it would not enforce the law against groups like the plaintiff and had consistently for twenty-five years followed an Attorney General Opinion recommending against enforcement).

While the Court made those findings in its discussion as to whether Horina faced a credible threat of prosecution in order to confer standing on him to bring the instant motion, they are analogously applicable to the discussion of whether Granite City's current representations make the motion moot. This is because *HN5* the United States Court of Appeals for the Seventh Circuit has "long recognized . [*12] .. that a defendant cannot moot a claim simply by voluntarily ceasing behavior when it is free to resume that behavior at any time." *See Edwards v. Illinois Bd. of Admissions to Bar,* 261 F.3d 723 (7th Cir. 2001); *Milwaukee Police Ass'n v. Jones,* 192 F.3d 742, 747 (7th Cir. 1999); *Sefick v. Gardner,* 164 F.3d 370, 372 (7th Cir. 1998); *Jones v. Sullivan,* 938 F.2d 801, 807 (7th Cir. 1991). For instance, in *Citizens for a Responsible Government, 236 F.3d at 1192-93,* the United States Court of Appeals for the Tenth Circuit found that the plaintiff therein faced a credible threat of prosecution even though the state had insisted throughout the litigation it would not prosecute groups like plaintiff. The court held that the state's assertions during the litigation were not binding on future administrations. *Id.* This Court finds the same to be true in the case at bar. Accordingly, the Court finds that Horina's claims are not moot even in light of Granite City's latest representations to the Court that it will not enforce the ordinance.

**2. Whether Horina is likely to succeed on the [*13] merits of his motion.**

The Court must decide, in the context of a preliminary injunction, whether a municipality can prohibit leafleting in all public places in its borders. Horina argues that he will succeed on the merits as: (1) the ordinance is unconstitutionally overbroad, and (2) the ordinance is unconstitutional as applied to him. The difference between the two arguments, is that *HN6* an "as-applied" challenge consists of a challenge to a regulation's application only to the

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 15 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                                    Page 7 of 11

party before the court. ***City of Lakewood v. Plain Dealer Publ'g Co.,*** 486 U.S. 750, 758-59, 108 S. Ct. 2138, 100 L. Ed. 2d 771 (1998). If an as-applied challenge is successful, the statute may not be applied to the challenger, but is otherwise enforceable. *Id.* However, if an overbroad challenge is successful, the statute may not be applied to anyone. *Id.* The Court will begin its analysis as to whether the ordinance is unconstitutional as applied to Horina.

**2a. Whether the ordinance is unconstitutional as applied to Horina.**

The First Amendment provides that *HN7*"Congress shall make no law ... abridging the freedom of speech, or of the press." U.S. Const. Amend. I. The United States Supreme Court **[*14]** recognized in *Gitlow v. New York,* 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925), that *HN8*this provision also applies to state governments under the Fourteenth Amendment. *HN9*Horina wants to pass out his religious leaflets free of fear that he will be cited under the city ordinance. *HN9*Leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment. ***Martin v. City of Struthers,*** 319 U.S. 141, 143, 63 S. Ct. 862, 87 L. Ed. 1313 (1943). Further, Horina's *HN10*speech addressing religious matters is speech of the highest constitutional order. ***See DeBoer v. Vill. of Oak Park,*** 267 F.3d 558, 570 (7th Cir. 2001), *citing Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760, 115 S. Ct. 2440, 132 L. Ed. 2d 650 (1995).

Important to the standard or review in this matter, the ordinance in question prohibits leafleting on any public street or sidewalk or other public place in Granite City. *HN11*"Public streets and sidewalks have been used for public assembly and debate, the hallmarks of a traditional public forum." *Frisby v. Schultz,* 487 U.S. 474, 480, 108 S. Ct. 2495, 101 L. Ed. 2d 420 (1988). *HN12*When regulating First Amendment activity in a public forum, the government has a difficult **[*15]** burden to carry. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S. Ct. 948, 74 L. Ed. 2d 794 (1983). For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Id.* at 44, *citing Carey v. Brown,* 447 U.S. 455, 461, 100 S. Ct. 2286, 65 L. Ed. 2d 263 (1980). The state may also enforce regulations of the time, place and manner of expression which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. *Id., citing United States Postal Service v. Council of Greenburgh,* 453 U.S. 114, 101 S. Ct. 2676, 69 L. Ed. 2d 517 (1981). Therefore, this Court must determine whether the ordinance at issue here is content-based or content-neutral so as to apply the proper level of scrutiny.

*HN13*Content-based regulations are presumptively invalid under the First Amendment and subject to strict scrutiny, while content-neutral restrictions receive lesser scrutiny. *Schultz v. City of Cumberland,* 228 F.3d 831, 840 (7th Cir. 2000). Content-based regulations are defined as **[*16]** those that distinguish favored from disfavored speech based on the ideas expressed. *Turner Broadcasting Sys., Inc. v. F.C.C.,* 512 U.S. 622, 643, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). If it is necessary to look at the content of the speech in question to determine whether the speaker violated the regulation, then the regulation is content-based. *Gresham v. Peterson,* 225 F.3d 899, 905 (7th Cir. 2000). For instance, "a general ban on speech in the vicinity of a school is content-neutral ... whereas an analogous ban on speech containing an exemption for speech relating to labor disputes is content-based. The former regulation requires no consideration of content before applying the ban, while the latter regulation requires consideration of whether the speech in question refers to a labor dispute before it is possible to determine if the regulation applies." *Schultz,* 228 F.3d at 840-41.

Horina argues that the ordinance is content-based since it requires a determination as to whether the literature being distributed falls within the category of "peddling" or "advertising" as the ordinance allows for the peddling or sale of any item that contains or **[*17]** is accompanied by an advertisement. However, the Court finds that this exemption is not enough to automatically qualify the ordinance as being content-based.

Horina alleges that the ordinance is not content-neutral as it permits the sale of materials having advertisements. The Court construes this exception is allowing for the sale of newspaper or magazine-like materials. Similar to the Seventh Circuit's decision in *Weinberg v. City of Chicago,* 310 F.3d 1029 (7th Cir. 2002), the Court finds that Horina's argument fails for several reasons. In *Weinberg,* the plaintiff tried to argue that the ordinance he was challenging, that prohibited the peddling of books within a 1000 feet of the United Center, was not content-neutral because it made a distinction between peddling books and peddling newspapers. In that case, the Seventh Circuit found that the *HN14*because the City of Chicago did not adopt the regulation of speech "because of disagreement with the message [the speech] conveys," the ordinance was content neutral. *Id.* at 1037, *citing Ward v. Rock against Racism,* 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661. The Seventh Circuit stated that "the ordinance is wholly indifferent **[*18]** to any specific message or viewpoint. These regulations do not single out a certain message for different treatment." *Id., citing Schultz,* 228 F.3d at 840.

Similarly, in the case at bar, the leafleting ordinance does not require one to consider the content of the leaflet, merely whether it is being handed out for free, and if not, whether it involves advertisements. Since Granite City treats those handing out any type of material for free, regardless of its content, equally, the Court cannot find that the ordinance is content-based. The fact that the ordinance adversely affects those handing out leaflets while not affecting those peddling materials with advertisements, is of little importance, as *HN15*"[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward,* 491 U.S. at 791. What matters to the Court is that the ordinance does not require one to consider the content of the speech, merely its format. Since the ordinance treats anyone

Case 1:08-cv-03017   Document 36-2   Filed 07/25/2008   Page 16 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                                    Page 8 of 11

distributing leaflets without advertisements, regardless of its content, equally, this **[*19]** Court cannot find that the ordinance is content-based. Therefore, the Court finds that the ordinance is content-neutral.

As the Court finds that the ordinance is content-neutral, the Court must now determine whether Horina has a likelihood of success in proving that the ordinance is not a content neutral time, place and manner regulation, that is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication. *Id., citing **United States Postal Service, 453 U.S. at 114.*** Turning to whether the ordinance is narrowly tailored to achieve a significant governmental interest, the Court finds that *HN16*there is no doubt a city has a legitimate interest in protecting its citizens and ensuring that its streets and sidewalks are safe for all citizens. ***Int'l Soc'y for Krishna Consciousness, Inc. v. Lee,*** 505 U.S. 672, 683-85, 112 S. Ct. 2701, 120 L. Ed. 2d 541 (1992). A city's interest in maintaining the flow of pedestrian traffic is intertwined with the concern for public safety. ***See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.,*** 452 U.S. 640, 650-51, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981). However, Granite City must be able to justify **[*20]** the necessity of the ordinance. In the context of a First Amendment challenge under the narrowly tailored test, Granite City has the burden of showing that there is evidence supporting its proffered justification. ***DiMa Corp. v. Town of Hallie,*** 185 F.3d 823, 829 (7th Cir. 1999).

However, neither at the hearing nor in its pleadings submitted after the Court directed the parties to the brief the merits of Horina's preliminary injunction motion, did Granite City offer justification for the necessity of the ordinance. While the Court assumes that some sort of safety and congestion concerns motivated Granite City's invocation of the ordinance, Granite City "cannot blindly invoke safety and congestion concerns without more." 4 ***Weinberg, 310 F.3d at 1038.*** However, Granite City has offered no empirical studies, no police records, no reported injuries, no evidence of any lawsuits filed as a result of leafleting in Granite City. The Court finds that only speculation exists as to the justification of this ordinance, which is problematic, as *HN17*the United States Supreme Court has stated that it has "never accepted mere conjecture as adequate to carry **[*21]** a First Amendment burden." ***Nixon v. Shrink Missouri Government PAC,*** 528 U.S. 377, 392, 120 S. Ct. 897, 145 L. Ed. 2d 886 (2000). Moreover, "using a speech restrictive blanket with little or no factual justification flies in the face of preserving one of our most cherished rights." ***Weinberg, 310 F.3d at 1039.*** Accordingly, the Court finds that at this stage Granite City has failed to show the ordinance advances a significant governmental interest. 5 *Cf. **Watseka v. Illinois Public Action Council,*** 796 F.2d 1547 (7th Cir. 1986), aff'd, 479 U.S. 1048, 107 S. Ct. 919, 93 L. Ed. 2d 972 (1987).

### FOOTNOTES

4 As well, the Court notes that the ordinance bans leafleting, but permits such activities as newspaper and magazine sales, peddling, street performances, and charitable solicitations. Any possible argument by Granite City that the ordinance is to advance the city's interest in maintaining traffic congestion is without merit based on its inconsistent approach. *Cf. **Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Village of Stratton,*** 536 U.S. 150, 122 S. Ct. 2080, 153 L. Ed. 2d 205 (2002).

5 The Court notes that most of the testimony at the May 20, 2005 hearing focused on those leafleting near the Hope Clinic. The Court finds it noteworthy that Granite City Police Chief Ruebhausen testified at the hearing that the protestors leafleting at Hope Clinic, which included Horina, were always peaceful and harmless.

**[*22]** *HN18*Having found that Granite City has failed to show the ordinance advances a significant governmental interest, discussion as to whether the ordinance is a reasonable time, place and manner restriction is not necessary for purposes of issuing a preliminary injunction. However, the Court also finds that at this stage in the proceedings it is unlikely that Granite City has narrowly tailored the leafleting ordinance. *HN19*A regulation is narrowly tailored if it "promotes a substantial government interest that would be achieved less effectively absent the regulation." ***Ward, 491 U.S. at 799.*** To satisfy the narrowly tailored test, an ordinance need not be the least restrictive method for achieving the government's goal. ***Id. at 797.*** Nevertheless, while a regulation does not have to be a perfect fit for the government's needs, it cannot substantially burden more speech than necessary. ***Id. at 800.***

The ordinance completely prohibits all leafleting in any public place in Granite City. This ordinance leaves no alternative means available to those seeking to leaflet. There is no middle ground available, such as a restriction of a certain **[*23]** distance from highly congested areas or from leafleting on certain narrow sidewalks. Such alternatives would be less restrictive, less encompassing and less intrusive on First Amendment rights. *See **Weinberg, 310 F.3d at 1040.***

As well, the Court finds as highly instructive ***Krantz v. City of Fort Smith,*** 160 F.3d 1214, 1222 (8th Cir. 1998). In *Krantz,* the United States Court of Appeals for the Eighth Circuit found that a content-neutral law prohibiting leafleting on vehicles was not narrowly tailored to serve a substantial state interest. The Eighth Circuit found that the regulation was not narrowly tailored because instead of permitting automobile owners who were interested in receiving messages from doing so and allowing uninterested owners to place the equivalent of a no-trespassing sign on their dashboards, the ordinance simply prohibited all leafleting. *Id.* As a result, the Court found that the law restricted more speech than was necessary. Similarly, Granite City's complete prohibition on leafleting in all public areas in Granite City is too great of a restriction that "cannot be reconciled with our First Amendment rights. **[*24]** " *See **Cox v. Louisiana,*** 379 U.S. 559, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965). Accordingly, the Court finds at

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 17 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386    Page 9 of 11

this stage in the proceeding for purposes of issuing a preliminary injunction, the ordinance burdens more speech than is necessary and is not sufficiently narrow to promote its legitimate interest.

*HN20* Final inquiry in determining whether Granite City's ordinance is a reasonable time, place and manner restriction is whether the law leaves open ample alternative channels. Again, while the Court need not decide this issue, it seems unlikely that Granite City's ordinance leaves open ample alternative channels. An adequate alternative does not have to be the speaker's first choice. *Heffron,* **452 U.S. at 647.** Yet an alternative is not adequate if it"foreclose[s] a speaker's ability to reach one audience even if it allows the speaker to reach other groups." *Gresham v. Peterson,* 225 F.3d 899, 907.

In the case at bar, Horina is prevented from leafleting in any public forum in Granite City. While Granite City could argue that Horina could post his message via other channels of communication, such as the internet, *HN21* the fact that Horina can communicate **[*25]** his message elsewhere does not end this Court's analysis if the intended message is rendered useless or is seriously burdened. *See City of Ladue v. Gilleo,* **512 U.S. 43, 56-57, 114 S. Ct. 2038, 129 L. Ed. 2d 36 (1994).** Leafleting is an inexpensive, unobtrusive, peaceful manner of disseminating information. It allows those not interested to simply not take a leaflet and for others to take one, and read the information. The audience Horina wants to reach are those using the abortion services of the Hope Clinic. As the Seventh Circuit stated in *Weinberg, HN22* "an alternative is not ample if the speaker is not permitted to reach his intended audience." **310 F.3d at 1042.** This Court is not prepared to say that the alternatives available to Horina are ample, as the Court believes his ability to communicate effectively is likely threatened. *See City Council of Los Angeles v. Taxpayers for Vincent,* **466 U.S. 789, 812, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984); Schneider,** 308 U.S. at 162-63; *American Civil Liberties Union of Nevada v. City of Las Vegas,* 333 F.3d 1092, 1106 (9th Cir. 2003). Accordingly, the Court finds that Horina is likely to succeed on the merits as **[*26]** to demonstrating that the ordinance is not a reasonable time, place and manner restriction and is unconstitutional as applied to Horina.

### 2b. Whether the ordinance is unconstitutionally overbroad.

Horina also challenges the ordinance contending that it is unconstitutionally overbroad. *HN23* Under the First Amendment overbreadth doctrine, an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face "because it also threatens others not before the court -- those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid." *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 503, 105 S. Ct. 2794, 86 L. Ed. 2d 394 (1985). A statute may be invalidated on its face, however, only if the overbreadth is "substantial." *City of Houston v. Hill,* 482 U.S. 451, 458-59, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). The requirement that the overbreadth be substantial arose from our recognition that application of the overbreadth doctrine is, "manifestly, strong medicine," *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973), and that "there must be **[*27]** a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *City Council of Los Angeles,* 466 U.S. at 801.

In addition to the findings made above in the discussion of the ordinance as it was applied to Horina, on its face, the ordinance appears to be overbroad as it effectively prohibits all leafleting in Granite City of any material that is free of charge. The ordinance broadly prohibits any distribution of any cards, circulars, handbills, samples of merchandise or any advertising matter whatsoever. As a result, the ordinance, as written, manifestly applies to any pamphlets, magazines and periodicals that are being distributed free of charge. The ordinance is not limited to materials that are obscene or offensive to public morals or that advocate for unlawful conduct. In the case at bar, there is no suggestion that Horina was passing out materials of this nature. Instead, Horina was ticketed under the ordinance for handing out religious leaflets, speech which is protected and of the highest constitutional order. **[*28]** *See Martin,* 319 U.S. at 143 (leafleting is a form of speech arguably protected by the Free Speech Clause of the First Amendment). *See also DeBoer,* 267 F.3d at 570, citing *Capitol Square Review & Advisory Bd. v. Pinette,* 515 U.S. 753, 760, 115 S. Ct. 2440, 132 L. Ed. 2d 650 (1995)(speech addressing religious matters is speech of the highest constitutional order). The ordinance clearly includes an entire spectrum of protected First Amendment expression, not only leafleting and religious speech, but would apply to anyone who "wishes to express his views on political, social or economic questions" or advocate for any cause. *Schneider v. State of New Jersey,* 308 U.S. 147, 163, 60 S. Ct. 146, 84 L. Ed. 155 (1939); *see also McIntyre v. Ohio Elections Comm'n,* 514 U.S. 334, 357, 115 S. Ct. 1511, 131 L. Ed. 2d 426 (1995)(describing the long-standing practice in this country of anonymous pamphleteering).

As well, the ordinance appears to be overbroad as it is comprehensive with respect to the method of distribution. It covers anyone who "indiscriminately distributes" materials. As a result, there is no restriction in the ordinance's application to time or place. The ordinance "is not limited to ways **[*29]** which might be regarded as inconsistent with the maintenance of public order, or as involving disorderly conduct, the molestation of the inhabitants, or the misuse or littering of the streets." *Lovell v. City of Griffin,* 303 U.S. 444, 451, 58 S. Ct. 666, 82 L. Ed. 949 (1938). Consequently, the ordinance prohibits the distribution of all materials that are not for sale at any time, at any place, and in any manner.

Finally, the Court recognizes that *HN24* overbreadth challenges are only successful when a limiting construction

Case 1:08-cv-03017   Document 36-2   Filed 07/25/2008   Page 18 of 30

Get a Document - by Citation - 2005 U.S. Dist. LEXIS 36386                                        Page 10 of 11

cannot be used to narrow the challenged statute and "remove the seeming threat or deterrence to constitutionally protected speech." **Broadrick, 413 U.S. at 613.** However, at this stage in the proceeding, the Court does not believe the ordinance is susceptible to a narrowing construction. The ordinance sweeps into it constitutionally protected First Amendment speech, including political materials. It also sweeps into its coverage all public areas in Granite City, it does not limit the time or place of distribution. Given the broad scope of this ordinance's application, the Court believes, at this stage in the proceedings, that limiting the ordinance would **[*30]** require a complete overhaul of the ordinance, a task the Court finds is better left to Granite City. See **Kraimer v. City of Schofield, 342 F.Supp.2d 807, 823 (E.D. Wisc. 2005).**

Accordingly, the Court finds that Horina is likely to succeed in proving that the ordinance is invalid on its face. Whatever Granite City's motive was in creating the ordinance, its character is such that it strikes at the very foundation of the freedom of speech and the right to leaflet. As the United States Supreme Court states in *Lovell*, "[Pamphlets and leaflets] indeed have been historic weapons in the defense of liberty, as the pamphlets of Thomas Paine and others in our own history abundantly attest." **303 U.S. at 452.** Consequently, the Court concludes ᴴᴺ²⁵ ⴲthe ordinance is overbroad.

**3. Balancing the harm to the parties and the public interest.**

As to Horina's irreparable injury, as explained earlier, the United States Supreme Court has stated that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." **Elrod, 427 U.S. at 373.** Horina has testified that he has curtailed **[*31]** his leafleting in fear of being cited under the ordinance again. Yet on the other hand, Granite City has offered no evidence of the harm that would befall it if an injunction were put in place preventing them from enforcing the ordinance against Horina or any other person. In fact, Granite City offered to abstain from enforcing the ordinance until this matter reached its conclusion, leading this Court to believe that no harm would befall Granite City if an injunction were granted. Moreover, the public interest weighs in favor of granting the injunction. See **Newsom v. Albemarle County School Bd., 354 F.3d 249, 261 (4th Cir. 2003)**ᴴᴺ²⁶ⴲ("Surely, upholding constitutional rights serves the public interest"). *Cf.* **Homans v. City of Albuquerque, 264 F.3d 1240, 1244 (10th Cir. 2001)**("We believe that the public interest is better served by following binding Supreme Court precedent and protecting the core First Amendment right of political expression.") Accordingly the Court finds the balance of harm to the parties weighs in favor of issuing the injunction.

**Conclusion**

The Court hereby **GRANTS in part** and **DENIES in part** Plaintiff **[*32]** Donald N. Horina's "Motion for Temporary and Preliminary Injunction" (Doc. 7). The Court **DENIES** the motion in that as all parties received notice of and participated in the May 20, 2005 hearing on the motion for temporary and preliminary injunction, the Court denies as moot the request for temporary injunction. The Court **GRANTS** the motion in that it issues a preliminary injunction preventing Defendant City of Granite City, Illinois from enforcing Granite City Ordinance Chapter 5.78.010 against Plaintiff Donald H. Horina or any other person(s) until this litigation is resolved.

Therefore, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 65(c),** the Court **DIRECTS** Donald H. Horina to post a bond of One Thousand Dollars ($ 1,000.00) with the Clerk of this Court **on or before Thursday, September 22, 2005** to cover taxable costs in the event Granite City prevails.

Additionally, the Court hereby **SETS** an in-court status conference for **Friday, September 23, 2005 at 3:30 p.m.** to discuss the further pretrial proceedings of this case in light of the Court's rulings in this Order.

**IT IS SO ORDERED.**

**DATED this 29th day of August, 2005.**

**s/ Michael [*33] J. Reagan**

**MICHAEL J. REAGAN**

**United States District Judge**

Service: Get by LEXSEE®
Citation: 2005 us dist lexis 36386
View: Full
Date/Time: Wednesday, July 9, 2008 - 3:42 PM EDT

* Signal Legend:
⬤ - Warning: Negative treatment is indicated
🅀 - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NICK SALINSKE, for himself and all others            )
similarly situated,                                  )
                                                     )        Case No. 08-cv-03017
                            *Plaintiffs,*            )
                                                     )        Judge Wayne R. Anderson
            v.                                       )        Magistrate Judge Morton Denlow
                                                     )
                                                     )
CALUMET CITY, ILLINOIS,                              )
                                                     )
                                                     )
                            *Defendant.*             )

### DECLARATION OF THOMAS JOSEPH
### IN SUPPORT OF PLAINTIFF NICK SALINSKE'S MOTION FOR CLASS
### CERTIFICATION

I, THOMAS JOSEPH, declare as follows:

1.    The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.    I act as Government Affairs Director for the Mainstreet Organization of Realtors® ("Association") for the South and Southwest Suburban Cook and Will counties.

3.    Since January 1, 2008, there have been at least 141 sales of property that have closed in Calumet City, Illinois ("City"). As of July 9, 2008, there were 564 active listings of property in City. Data supporting these facts is available through the Multiple Listing Service.

490852.1

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 9th, 2008

_____

Thomas Joseph

490921.1

# EXHIBIT E

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 23 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                    Page 1 of 8

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Sign Out | [?] Help

Search  Research Tasks  Get a Document  Shepard's®  Alerts  Total Litigator  Transactional Advisor  Counsel Selector  History | ⚓

Service: **Get by LEXSEE®**
Citation: **1995 us dist lexis 22467**

*1995 U.S. Dist. LEXIS 22467, \**

GORDON BETHARDS, as Special Administrator of the Estate of MARC BETHARDS, Deceased, and on behalf of all others similarly situations, Plaintiff, v. BARD ACCESS SYSTEMS, INC., a foreign corporation, and C.R. BARD, INC., a foreign corporation, Defendant.

No. 94 C 1522

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1995 U.S. Dist. LEXIS 22467

February 21, 1995, Decided

**SUBSEQUENT HISTORY:** Adopted by, Class certification denied by Bethards v. Bard Access Sys., 1995 U.S. Dist. LEXIS 22468 (N.D. Ill., Mar. 17, 1995)

**CORE TERMS:** catheter, class action, class member, class certification, patient, liner, warranty, displacement, strict liability, certification, prerequisite, proximately, implantee, warning, product liability, decedent's, health care providers, breach of implied warranty, manufacture, commonality, adjudicate, proximate, surgery, lawsuit, joinder, staff, common questions of law, individual cases, medical personnel

**COUNSEL:** **[\*1]** For Bard Access Systems, Inc., a foreign corporation, C. R. Bard, Inc, a foreign corporation, Defendants: Terry M. Grimm, LEAD ATTORNEY, David E. Koropp, Winston & Strawn, LLP, Chicago, IL.

For Gordon Bethards, Special administrator estate of Marc Bethards, executor plaintiff: Robert James Pavich, LEAD ATTORNEY, Barry A. Spevack, Monico, Pavich & Spevack, Chicago, IL; Steven Jay Seidman, Law Offices of Steven J. Seidman, Chicago, IL.

**JUDGES:** RONALD A. GUZMAN, United States Magistrate Judge.

**OPINION BY:** RONALD A. GUZMAN

**OPINION**

TO: HONORABLE CHARLES R. NORGLE, Sr., JUDGE

UNITED STATES DISTRICT COURT

**REPORT AND RECOMMENDATION of Magistrate Judge Ronald A. Guzman**

Pending is plaintiff Marc Bethard's Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23(b)(3). For the reasons stated below, it is hereby recommended that Plaintiff's Motion for Class Certification be denied.

**BACKGROUND FACTS**

This is a product liability, personal injury case claiming that Defendants are strictly liable in tort and have breached implied warranties in designing, manufacturing and distributing the Groshong 8 French High Performance **[\*2]** Catheter ("HP 8 Catheter"). [1]

**FOOTNOTES**

[1] Defendants' Response to Plaintiff's Motion, P2

Defendants Bard Access Systems and C.R. Bard, Inc ▾., ("Defendants") manufacture and sell catheters for human patients throughout the United States and in other countries. [2] One type of catheter, the HP 8 Catheter, was inserted

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 24 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                                                Page 2 of 8

into plaintiff's decedent, Marc Bethards ("Plaintiff"), prior to January 13, 1994. [3]

**FOOTNOTES**

2 Plaintiff's Amended Class Action Complaint, P6

3 Plaintiff's Amended Class Action Complaint, P8

On January 13, 1994, Defendants issued a product recall on the HP 8 Catheter. The recall stated in part:

> "These products are being recalled due to an unanticipated complication. You should immediately discontinue use of these products.
>
> If the catheter becomes occluded and pressure is applied to remove the occlusion and the occlusion is [*3] cleared, there is the possibility that the inner liner may move distally down the catheter lumen and be pushed out through the valve at the end of the catheter into the patient's circulatory system. Even if the liner remains attached to the catheter, a situation is created for possible stimulation of a cardiac arrhythmia. Complete displacement of the liner into the circulatory system with embolization and its associated risks is possible." [4]

On that date, Defendants also distributed information to health care providers concerning those patients in whom the HP 8 Catheter had been inserted. This letter stated in part:

> "If catheter occlusion occurs, and the catheter is overpressurized while trying to clear it, the liner may become dislodged and either move or migrate through the Groshong valve. Therefore, please carefully review the following information:
>
> > Overpressurization during infusion or irrigation procedures must be rigorously avoided. Thrombosed catheters should not be subjected to thrombolytic maneuvers of forceful irrigation and aspiration or any mechanical intra-luminal manipulations.
> >
> > Therefore, **DO NOT USE** syringes smaller than 10 cc for infusion [*4] or irrigation and **DO NOT INJECT** if **ANY** resistance is felt to avoid overpressurization.
> >
> > Although individual judgments by the responsible physicians will dictate the course of action in individual cases, BAS (Defendants) is recommending removal of these catheters when they are no longer necessary in active treatment regimens.
>
>
> Please forward this information to other health care providers who are involved in the management of the venous access devices in patients in whom you have placed a Groshong High Performance catheter." [5]

**FOOTNOTES**

4 Defendants' Response to Plaintiff's Motion, Exhibit A

5 Defendants' Response to Plaintiff's Motion, Exhibit B

On January 26, 1994, the inner liner of plaintiff's decedent's catheter became displaced into his left pulmonary artery. [6] On January 27, 1994, decedent underwent surgery to remove the catheter liner, [7] on January 28, the remainder of the catheter was removed and on January 29, decedent underwent additional surgery to implant a replacement [*5] catheter. [8] The medical staff at the hospital was aware of the HP 8 Catheter information, as it was attached to the decedent's chart, including the warnings to use a 10 cc or larger syringe and not to pressurize an occluded HP 8 Catheter. [9]

**FOOTNOTES**

6 Plaintiff's Memorandum in Support of Motion for Class Certification, P4

7 Defendants' Response to Plaintiff's Motion, Exhibit C

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 25 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467

Page 3 of 8

8 Plaintiff's Amended Class Action Complaint, P11

9 Defendants' Response to Plaintiff's Motion, Exhibit C

Plaintiff complains that at the time of the manufacture, sale and distribution of the HP 8 Catheter, Defendants knew that the HP 8 Catheter was defective and not reasonably safe for its foreseeable use-that the inner liner of the catheter could become partially or totally displaced into the patient's circulatory system, and that partial displacement could cause cardiac arrhythmias and total displacement could cause the formation of life threatening emboli. 10

## FOOTNOTES

10 Plaintiff's Amended Class Action Complaint, P7

**[*6]** Plaintiff and the class he seeks to represent allege that Defendants should be held strictly liable or negligent with regard to the manufacture, sale and distribution of the HP 8 Catheters. 11 Consequently, Plaintiff requests that the court award damages, pre-judgment interest, court costs and attorney fees and such other relief as is just and necessary. 12

## FOOTNOTES

11 Plaintiff's Memorandum in Support of Motion for Class Certification, P2

12 Plaintiff's Amended Class Action Complaint, P30

## CLASS CERTIFICATION

Whether a class should be certified in any given case must be decided by the court "as soon as practicable after the commencement of an action brought as a class action." Fed.R.Civ.P. 23(c)(1). In evaluating a motion for class certification, the allegations that support certification are taken as true, and the court does not examine the merits of the case. *Allen v. City of Chicago,* 828 F.Supp. 543, 550 (N.D. Ill. 1993). The movant, however, **[*7]** must establish that all requirements of Fed.R.Civ.P. 23 ("Rule 23") are met to prove that certification is proper. *Elliott v. ITT Corp.,* 150 F.R.D. 569, 575 (N.D. Ill. 1992).

In this case, pursuant to Rule 23(b)(3), Plaintiff asks the court to certify the following proposed class:

> "All patients in the United States and elsewhere who have had implanted within them Groshong 8 French High Performance Catheters." 13

## FOOTNOTES

13 Plaintiff's Amended Class Action Complaint, P13

The Fourth Circuit provided an historical background of the interpretation of Rule 23 in respect to mass tort cases. *In re A.H. Robins Co. Inc.,* 880 F.2d 709, 728-40 (4th Cir. 1989), *cert. denied* 493 U.S. 959, 110 S. Ct. 376, 107 L. Ed. 2d 362 (1989). Originally Rule 23 was interpreted liberally, but courts adopted a strict construction of the Rule based on the Advisory Committee's Note on Rule 23(b)(3), wherein the Committee states:

> "A 'mass accident' resulting in injuries to **[*8]** numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits tried separately." *In re A.H. Robins.,* 880 F.2d at 730.

The court urged other appellate courts to abandon that narrow approach and adopt a more flexible application of Rule 23 in the mass-tort context to better serve the interests of justice. In support of its contentions, the court referred to various certifications of asbestos and Agent Orange class action suits. In those cases, the "unique" common issues predominated to take the cases out of the general rule stated in the Advisory Committee's Note. *In re A.H. Robins,* 880 F.2d at 734-37.

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 26 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                                    Page 4 of 8

Despite the Fourth Circuit's assertions that the "trend" is once again to give Rule 23 a more liberal rather than a restrictive construction, this District, like the Ninth Circuit in *In re Northern District of California, Dalkon Shield IUD Products Liability Litigation*, 693 F.2d 847 (9th Cir. 1982), **[*9]** *cert. denied* 459 U.S. 1171, 103 S. Ct. 817, 74 L. Ed. 2d 1015 (1983), recognized that individual issues in products liability class actions may outnumber common issues, *Wadleigh v. Rhone-Poulenc Rorer, Inc.*, 157 F.R.D. 410, 1994 WL 460864 9 (N.D. Ill. 1994). Mass accident cases, such as an airplane crash or cruise ship food poisoning, involve virtually identical issues of injury, breach of duty, causation and injury for each plaintiff. *In re Dalkon Shield*, 693 F.2d at 853. In a Rule 23(b)(3) products liability case, however,

> "no single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case." *Id.*

In this case, as in *Wadleigh*, individual issues predominate in the strict product liability and breach of warranty claims. Hence, the requirements of Rule 23(b)(3) **[*10]** are not satisfied and Plaintiff's motion for class certification must be denied.

### PLAINTIFF'S CLASS IS SO NUMEROUS THAT JOINDER OF ALL MEMBERS IS IMPRACTICABLE.

Plaintiff claims that they have satisfied Rule 23(a)(1), the first prerequisite to class certification, because the proposed class number is in the tens or thousands, therefore so numerous that joinder of all class members is impracticable. [14] Impracticability does not mean impossibility, but instead requires the plaintiff to prove that it would be inconvenient and difficult to join all proposed members of the class. *Bowling v. Pfizer, Inc.*, 143 F.R.D. 141, 158 (S.D. Ohio 1992), *aff'd without opinion*, 995 F.2d 1066 (6th Cir. 1993). While a plaintiff may not rely on conclusory allegations or speculation regarding the size of the class, the complaint need not specify the exact number of persons included in the class. *Allen*, 828 F.Supp. at 550. The class must only be sufficiently definite so that it is "administratively feasible" for a court to ascertain whether a particular individual is a member of the class. *Elliott*, 150 F.R.D. at 574. Additionally, **[*11]** the requisite finding of numerosity may be supported by common sense assumptions. *Allen*, 828 F.Supp. at 550.

#### FOOTNOTES

[14] Plaintiff's Amended Class Action Complaint, P14

Plaintiff here relies upon common sense assumptions that joinder of all proposed members is impracticable, especially because Defendants possess the most relevant information to determine an actual number of members. Defendants sold the HP 8 Catheter throughout the United States and recalled six (6) different varieties of the product. In order to recall the catheters, Defendants contacted a multitude of health care providers. These facts suggest that the number of implanted catheters could be so numerous that joinder of all implantees is not probable. [15]

#### FOOTNOTES

[15] Plaintiff's Memorandum in Support of Motion for Class Certification, Page 4

Nonetheless, Defendants are **[*12]** only aware of nine (9) incidents in which a patient suffered a liner displacement, none of which have resulted in the filing of a lawsuit besides the instant action. They point out that class certification for such a small number of individuals is inappropriate. [16] The class, however, as defined by Plaintiff, includes all patients in whom the HP 8 Catheter has been inserted, not just those patients who experienced a liner displacement. [17] Plaintiff need not specify an exact number of proposed class members and satisfies the prerequisite of numerosity based on common sense assumptions.

#### FOOTNOTES

[16] Defendants' Response to Plaintiff's Motion, Page 15

[17] Plaintiff's Amended Class Action Complaint, P13

### QUESTIONS OF LAW OR FACT ARE NOT ENTIRELY COMMON TO THE CLASS.

Case 1:08-cv-03017   Document 36-2   Filed 07/25/2008   Page 27 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                                    Page 5 of 8

The second prerequisite to class certification demands that common questions of law or fact exist as to the class. Fed.R.Civ.P. 23(a)(2). Plaintiff argues that the general questions of whether Defendants' **[\*13]** product is defective and whether Defendants are liable for the alleged defect, will be the same for each proposed class member. [18]

#### FOOTNOTES

[18] Plaintiff's Memorandum in Support of Motion for Class Certification, Page 5

Not all factual or legal questions raised in this lawsuit need be common as long as a single issue is common to all class members, *Allen*, 828 F.Supp. at 551. Factual variations among individual complaints cannot defeat certification. *Id.* If a question of law refers to standardized conduct by Defendants toward members of the supposed class, a common nucleus of operative fact is typically presented and satisfies the commonality requirement. *Id.* There, differences in individual cases concerning treatment or damages do not defeat commonality, either. *Id.*

Plaintiff claims that he and other members of the class have been affected by Defendants' conduct in purportedly violating product liability and warranty laws. Despite common issues of design, testing, and manufacturing of the **[\*14]** product, on the issues of strict products liability and breach of warranty "commonality begins to be obscured by individual case histories." *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *In re Dalkon Shield*, 693 F.2d at 854. In this case, each proposed class member's individual case history will involve different liability and breach of warranty issues.

Plaintiff alleges that all potential class members have in common the fact that the HP 8 Catheters either have been or may have to be removed due to the risks if they are left in place. [19] Although Defendants recalled the product, they issued a warning to health care providers for those patients in whom the catheter was currently placed. This warning recommends removal of the catheter when it is no longer necessary in an active treatment regimen, and acknowledges that individual judgments by the responsible physician will dictate the course of action for an individual case. [20] There is no clear standardized conduct by Defendants towards the prospective class members, as each implantee is treated differently according to their individual medical needs and private physician's **[\*15]** advice. Therefore, it can only be concluded "problems of commonality" exist. *Ikonen, 122 F.R.D. at 262.*

#### FOOTNOTES

[19] Plaintiff's Memorandum in Support of Motion for Class Certification, Page 6

[20] Defendants' Response to Plaintiff's Motion, Exhibit B

#### THE REPRESENTATIVE PLAINTIFF'S CLAIMS ARE NOT TYPICAL OF THE CLAIMS OF THE CLASS.

The third requirement for a class action, typicality, also has not been met. Fed.R.Civ.P. 23(c)(3). Typicality concentrates on whether a plaintiff's claim contains the same essential characteristics and core allegations as the claims of the class at large. *Allen*, 828 F.Supp. at 553. Factual differences between claims alone do not preclude certification, but a plaintiff's claims must be based on the same legal theories and arise from the same course of conduct that gives rise to the claims of the other class members. *Id.*

Here, Plaintiff endured surgery as a result of the displaced liner. He alleges **[\*16]** that other members of the class have been injured by the defective catheters and have undergone, or may soon have to undergo an operation to have the catheters removed, and that the same legal theories apply to both his case and the potential class members' cases [21] - Defendants are strictly liable in tort and breached implied warranties of merchantability and fitness. Plaintiff contends, therefore, that his claims or defenses are typical of the claims or defenses of the class. Fed.R.Civ.P. 23(a)(3).

#### FOOTNOTES

[21] Plaintiff's Memorandum in Support of Motion for Class Certification, Page 6-7

The allegations that Defendant manufactured, sold and distributed a defective product not reasonably safe for its foreseeable use and neglected to warn the general public of its risks and dangers could be common to Plaintiff and class members, as well as the damages issues. [22] To allege Defendants' strict liability, though, Plaintiff must establish that Defendants' actions proximately caused **[\*17]** the injury. [23] Plaintiff must also establish that the sale of the defective catheters constituted a breach of an implied warranty of merchantability and fitness which proximately caused Plaintiff's injury. [24] The HP 8 Catheters might have been negligently manufactured but still safe, merchantable and fit for the purpose intended. *Wadleigh*, 157 F.R.D. 410, 1994 WL 460864 14. In this case, patients implanted with the HP 8 Catheter who have not experienced displacement cannot maintain a cause of action in either strict liability or breach of implied warranty since they sustained no injury and suffered no damages. An

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 28 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                    Page 6 of 8

implantee who completes their treatment regimen without complications actually benefits from the product, whereas Plaintiff claims that his defective HP 8 Catheter proximately caused his ultimate surgeries.

### FOOTNOTES

22 Plaintiff's Amended Class Certification Complaint, P6-10, Page 6

23 Plaintiff's Amended Class Action Complaint, P23

24 Plaintiff's Amended Class Action Complaint, P28-9


Additionally, **[*18]** Plaintiff's burden of proof may be more difficult than that of other potential class members. After the recall and warning were issued by Defendants to the hospital staff, Plaintiff encountered problems with his HP 8 Catheter. 25 The staff was aware of the recall and warning information as it was attached to Plaintiff's chart and also separately provided to the tending medical personnel. 26 Plaintiff must overcome the fact that the medical personnel were aware of the information and could, in fact, be partially at fault. If the staff was adequately warned, Plaintiff will find it more difficult to demonstrate Defendants' liability and may encounter stronger defenses. _Davenport v. Gerber Products Co._, 125 F.R.D. 116, 118 (E.D. Penn. 1989). Individuals who also suffered displacement of the catheter's lining but were treated by medical personnel legitimately unaware of the recall and warning information will not be confronted with similar obstacles of proof. A representative plaintiff should not be permitted to impose such a disadvantage on the class. _Koos v. First Nat'l Bank of Peoria_, 496 F.2d 1162, 1164 (7th Cir. 1974). For these reasons, typicality **[*19]** does not exist.

### FOOTNOTES

25 Plaintiff's Amended Class Action Complaint, P11

26 Defendants' Response to Plaintiff's Motion, Exhibit C


### THE REPRESENTATIVE PLAINTIFF WILL NOT FAIRLY AND ADEQUATELY PROTECT THE INTERESTS OF THE CLASS.

The fourth prerequisite for class certification, fair and adequate protection of the interests of the class, ensures that (1) the representative parties' interests are not antagonistic or conflicting with those of the class, and (2) qualified counsel will sufficiently pursue the putative class action. _Allen_, 828 F.Supp. at 553. Plaintiff, here, does not adequately represent the class members.

Plaintiff has not suffered the same or similar harm as most of the implantees, nor did he receive his injuries in the same manner as the others. The majority of the potential class members have not encountered a problem with the HP 8 Catheter, as only nine (9) cases have been reported and this the only lawsuit. 27 Under strict liability and breach of warranty charges, **[*20]** those unharmed individuals cannot maintain a suit. They sustained no injuries that could be proximately caused by the HP 8 Catheter.

### FOOTNOTES

27 Defendants' Response to Plaintiffs Motion, Page 15


Although Plaintiff points to other cases that allowed the proposed class to include those exposed to a product but who did not manifest related injuries, those individuals demonstrated an "injury in fact which is concrete and particularized, and actual or imminent rather than merely conjectural or hypothetical." _Carlough v. Amchem Products, Inc._, (E.D. Penn. 1993), 834 F.Supp. 1437, 1450. Those cases narrowly dealt with exposure to toxins, because some types of resulting bodily injuries were latent and occurred prior to the appearance of any symptoms. _Carlough_, 834 F.Supp. at 1452. Here, there are no latent injuries. A patient may possibly suffer injuries proximately caused by the HP 8 Catheter only if a catheter occlusion occurs and, then, the catheter is overpressurized while trying to clear **[*21]** it. 28 Uninjured implantees have no standing to sue due to lack of proof of proximate causation, which is an essential element of both strict liability and breach of implied warranty.

### FOOTNOTES

28 Defendants' Response to Plaintiff's Motion, Exhibit B


Still other cases allowed uninjured plaintiffs to sue, but these proceedings concerned claims for medical monitoring,

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 29 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                                                    Page 7 of 8

*In re Paoli R.R. Yard PCB Liti.,* 916 F.2d 829 (3d Cir. 1990), *cert. denied,* 499 U.S. 961, 111 S. Ct. 1584, 113 L. Ed. 2d 649 (1991), emotional distress, *Bowling,* 143 F.R.D. 141, or was a settlement so the prerequisites for Fed.R.Civ.P. 23 were more easily satisfied than in the litigation context, *In re A.H. Robins,* 880 F.2d 709; *Bowling,* 143 F.R.D. 141. In this case, the uninjured implantees may claim rights under contract law or another area of tort law, such as emotional distress, but not under strict liability or breach of implied warranty.

Furthermore, the more **[*22]** difficult burden of proof and potential defenses that Plaintiff might be forced to tackle, as previously mentioned, vary from those of other class members who incurred injuries in the absence of a third party's possible negligence. Clearly, Plaintiff does not adequately represent and fairly protect the interests of other class members.

**COMMON QUESTIONS OF LAW OR FACT DO NOT PREDOMINATE OVER ANY INDIVIDUAL QUESTIONS, AND A CLASS ACTION IS NOT THE SUPERIOR METHOD TO FAIRLY AND EFFICIENTLY ADJUDICATE THE CONTROVERSY.**

Besides fulfilling the four (4) prerequisites to a class action, a plaintiff must prove that the common questions of law or fact predominate over any questions affecting only individual members of the class, and that a class action is the superior method to fairly and sufficiently adjudicate the controversy. Fed.R.Civ.P. 23(b)(3). In deciding, the court will consider (A) the interest of the members of the class to individually control the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability **[*23]** or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action, Fed.R.Civ.P. 23(b)(3).

The major issues in this case, according to Plaintiff, involve Defendants' strict liability or negligence with regard to the manufacture and distribution of defective catheters. [29] The court must ascertain whether the group is more bound by their mutual interest in these issues than it is divided by each member's individual concerns. *Elliott,* 150 F.R.D. at 576.

### FOOTNOTES

[29] Plaintiff's Memorandum in Support of Motion for Class Certification, Page 8

The generic question of whether the HP 8 Catheter had the capacity to cause harm is really a particular determination of whether the catheters did cause harm, and if so, to whom. *Ikonen,* 122 F.R.D. at 265. Any conclusions depend upon the characteristics of each individual. *Id.* Here, the determination **[*24]** of whether the HP 8 Catheter was unreasonably dangerous or whether Defendants breached any implied warranties must be made on the basis of evidence relating specifically to the catheter used by each particular plaintiff, and if that catheter resulted in that plaintiff's injury (if any). *Wadleigh,* 157 F.R.D. 410, 1994 WL 460864 15. A single jury could not comprehend and determine the proximate cause questions presented by the claims of "hundreds or thousands" [30] of class members. *Wadleigh,* 157 F.R.D. 410, 1994 WL 460864 9. Furthermore, if a single jury cannot decide whether the HP 8 Catheter caused actual damages or injuries to each particular class member, it cannot define the nature and extent of these damages or injuries. *Wadleigh,* 157 F.R.D. 410, 1994 WL 460864 15. Individual determinations thereby overwhelm the major issues of strict liability or breach of implied warranties, and certification of any class or subclass is inappropriate.

### FOOTNOTES

[30] Plaintiff's Amended Class Action Complaint, P14

Nor is a class **[*25]** action a superior method to adjudicate these issues. This court may be an appropriate forum to concentrate the litigation because Defendants marketed and distributed the catheters in Illinois, where Plaintiff allegedly suffered from their defective product. [31] Despite the potential application of different state laws noted by Defendants [32], this is not in itself a deterrent to class certification. *Elliott,* 150 F.R.D. at 579. Different degrees of personal injury (if any) and varying burdens of proof, however, support individuals' desires to pursue their own claims. Also, management of the class poses many difficulties because the determination of Plaintiff's allegations is inseparable from the issue of each individual's showing of proximate cause. *Wadleigh,* 157 F.R.D. 410, 1994 WL 460864 15. If an injured class member cannot show that this harm was proximately caused by the HP 8 Catheter, the person has not shown that the catheter was unfit, unmerchantable, or unreasonably dangerous. *Id.* Finally, other options exist to adjudicate the issues, such as individual trials, the use of special verdicts and collateral estoppel, *Davenport,* 125 F.R.D. at 120, **[*26]** consolidated discovery proceedings, *Ikonen,* 122 F.R.D. at 266, a few verdicts followed by settlements or small claims court, *Id.*

### FOOTNOTES

Case 1:08-cv-03017    Document 36-2    Filed 07/25/2008    Page 30 of 30

Get a Document - by Citation - 1995 U.S. Dist. LEXIS 22467                                 Page 8 of 8

31 Plaintiff's Reply Memorandum, Page 6

32 Defendants' Response to Plaintiff's Motion, Page 13

## CONCLUSION

For the reasons stated above, it is hereby recommended that Plaintiff's Motion for Class Certification be **DENIED**.

**Respectfully submitted,**

**RONALD A. GUZMAN**

**United States Magistrate Judge**

**DATE: FEBRUARY 21, 1995**

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within (10) days of receipt of this notice. See Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. *Egert v. Connecticut General Life Ins. Co.,* 900 F.2d 1032, 1039 (7th Cir. 1990).

Service: **Get by LEXSEE®**
Citation: **1995 us dist lexis 22467**
View: Full
Date/Time: Wednesday, July 9, 2008 - 3:52 PM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

Search | Research Tasks | Get a Document | *Shepard's®* | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Switch Client | Preferences | Sign Out | Help

 LexisNexis®   About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2008 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.