IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Nick Salinske, for himself and all others similarly situated, | ) ) | |
| | ) | Case No. 08 CV 3017 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Judge Wayne R. Anderson |
| Calumet City, Illinois, | ) | Magistrate Judge Morton Denlow |
| Defendant. | ) | |

**CITY OF CALUMET CITY'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

**I.     Counts I and II—Incorporation of Arguments by Reference**

With respect to Counts I and II, the City incorporates its arguments set forth in our response to plaintiffs' Motion for Preliminary Injunction. For the reasons set forth therein, the Count I and Count II challenges are without merit. The Ordinance is constitutional on its face.

**II.    Count III: The City Has No Constitutional Obligation to "Issue Rebuild Letters and/or Confirm that Property is Legal Nonconforming"**

In order to understand why Count III fails to state a federal constitutional claim, it is necessary to have some background on Illinois zoning law relating to legal nonconforming uses. A "legal nonconforming use" is a land use "that is not permitted under the current zoning ordinance, but is allowed to continue because it predates the ordinance." Taylor v. Zoning Board of Appeals of City of Evanston, 375 Ill. App.3d 585, 592, 314 Ill.Dec. 562 (1st Dist. 2007). Like most municipalities in Illinois, Calumet City's Zoning Ordinance has a section devoted to "nonconforming buildings and uses." That Ordinance is attached to this Memorandum as **Exhibit 1**.

Section 5.5, "Damage and Destruction," deals with the impact of damage or destruction to a structure containing a legal nonconforming use. The Ordinance provides:

> If a building or other structure containing a nonconforming use is damaged or destroyed … to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing costs, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

Count III speaks in terms of something called a "rebuild letter." Paragraph 18 claims that "the buyer's lender" "almost uniformly asks the City to issue a letter that states that if a legal nonconforming property is damaged it can be rebuilt as legal nonconforming property consistent with the zoning code." Paragraph 49 alleges that the City "arbitrarily and uniformly" refuses to issue" these rebuild letters.[1]

The question framed by Count III is whether a municipality has a duty rooted in the federal Constitution to send letters to would-be lenders explaining the rules relating to damage or destruction to a building containing a nonconforming use when (i) the rules are set forth in the law; (ii) the law is a matter of public record available, inter alia, on the internet as witnessed by Exhibit 1; and (iii) either the seller, his broker, his attorney, or the unnamed lender has the ability to read the governing ordinance.. As a matter of constitutional law, plaintiff's proposition is arrant nonsense. It is an argument which should be made as a legislative proposal to the Calumet City Council, not to this Court by way of a demand for a mandatory injunction..

The Constitution "is a charter of negative liberties; it tells the state to let people alone; it does not require … the state to provide services …" Bowers v. DeVito, 686 F.2d 616, 618 (7th Cir. 1982). The Constitution is not a "creator of affirmative rights to government services or resources." Ridlen v. Four County Counseling Center, 809 F.Supp. 1343, 1355 (N.D. Ind. 1992).

---

[1] It is hard to understand how a municipal practice which is "uniform" can also be "arbitrary."

2

Count III fails to state a constitutional claim. As a legal matter, a municipality has no constitutional obligation to provide code interpretation letters to unnamed lenders. Plaintiff has no standing to make such demands. Ordering the legislative branch to make affirmative representations to unknown "lenders" regarding properties not before this Court would be an extraordinarily unwarranted judicial intervention into the day-to-day operation of a co-equal branch of the government.

Plaintiffs' request for a mandatory injunction is unwarranted and without any constitutional underpinning. Apart from the absence of a constitutional underpinning, Count III ignores bedrock principles relating to mandatory injunctions. "A mandatory injunction requires the court to command the defendant to take a particular action, [so] mandatory … writs are ordinarily cautiously viewed and sparingly issued …" Graham v. Medical Mutual of Ohio, 130 F.2d 293, 295 (7th Cir. 1997) [Internal citations omitted]; W. A. Mack v. General Motors, 260 F.2d 886, 890 (7th Cir. 1958) (mandatory injunctions are rarely granted and will only be granted "upon the clearest equitable grounds").  These extraordinary grounds are not present in this case.

Sophisticated lenders can read the local law and determine the status of legal nonconforming uses without a federal court requiring a municipality to spell it out for them. After all, they are in the "fine print" business when they make their loans.

The relief requested by plaintiff is more appropriately directed to the corporate authorities at a City Council meeting rather than through attempted judicial imposition.

### III.     Conclusion

This Ordinance is constitutional.  The Complaint should be dismissed.

                                             City of Calumet City

                                             By:    /s/ John B. Murphey

| | |
|---|---|
| JOHN B. MURPHEY/ARDC #1992635 | MARK STERK/ARDC #3125540 |
| Rosenthal, Murphey & Coblentz | Odelson & Sterk, Ltd. |
| 30 North LaSalle Street, Suite 1624 | 3318 West 95th Street |
| Chicago, Illinois 60602 | Evergreen Park, Illinois 60805 |
| Tel. (312) 541-1070/Fax (312) 541-9191 | Tel. (708) 424-5678/Fax (708) 424-5829 |

G:\rmcj\Calumet City\Salinske\MemLawMTD C.doc

**CERTIFICATE OF SERVICE**

       I hereby certify that on August 8, 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

| | |
|---|---|
| Philip C. Stahl | Mark H. Sterk |
| Patrick T. Nash | Odelson & Sterk |
| Donald P. Bunnin | 3318 W. 95th St. |
| Mark A. Semisch | Evergreen Park, Ill. 60805 |
| Grippo & Elden | |
| 111 South Wacker Drive | |
| Chicago, Illinois 60606 | |

          /s/   Douglas M. Doty
ROSENTHAL, MURPHEY & COBLENTZ
Attorneys for Calumet City
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax: (312) 541-9191

*4.18 Application.*

    Any person desiring to erect a satellite receiving antenna shall apply in writing to the city clerk's office upon a form furnished by said office. A permit fee of twenty-five dollars ($25.00) shall be paid.

(Code 1980, App. B, § IV; Ord. No. 84-15, § 1, 4-26-1984; Ord. No. 85-32, § 1, 9-26-1985; Ord. No. 89-5, § 1, 1-26-1989; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 99-33, § 1, 6-10-1999)

## Sec. V. Nonconforming buildings and uses.

*5.1 Continuance of use.*

    Any lawfully established use of a building or land, on the effective date of the ordinance or of amendments thereto, that does not conform to the use of regulations for the district in which it is located, shall be deemed to be a legal nonconforming use and may be continued, except as otherwise provided herein.

    Any legal, nonconforming building or structure may be continued in use provided there is no physical change other than necessary maintenance and repair, as otherwise permitted herein.

    Any building for which a permit has been lawfully granted prior to the effective date of the ordinance, or of amendments thereto, may be completed in accordance with the approved plans; provided construction is started within ninety (90) days and diligently prosecuted to completion. Such building shall thereafter be deemed a lawfully established building.

*5.2 Discontinuance of use.*

    Whenever any part of a building, structure or land occupied by a nonconforming use is changed to or replaced by a use conforming to the provisions of the ordinance, such premises shall not thereafter be used or occupied by a nonconforming use, even though the building may have been originally designed and constructed for the prior nonconforming use.

    Whenever a nonconforming use of a building or structure or part thereof has been discontinued for a period of twelve (12) consecutive months, or whenever there is evident a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being discontinued or abandoned, be reestablished, and the use of the premises thereafter shall be in conformity with the regulations of the district.

    Where no enclosed building is involved, discontinuance of a nonconforming use for a period of twelve (12) months shall constitute abandonment and shall not thereafter be used in a nonconforming manner.

    A nonconforming use not authorized by the provisions of the zoning ordinance in effect at the time the amendatory ordinance becomes effective, shall be discontinued and not reestablished except when the provisions of the amendatory ordinance find the use to be conforming to the district in which it is then located.

*5.3 Change of nonconforming use.*

    The nonconforming use of any building, structure or portion thereof, which is designed or intended for a use not permitted in the district in which it is located, may be changed to another nonconforming use thereof but only if such other use is permitted by a special use permit as authorized in the administration section.

    A nonconforming structure that was erected, converted or structurally altered in violation of the provisions of the ordinance which this ordinance amends shall not be validated by the adoption of this ordinance, and such violations or any violations of this ordinance may be ordered removed or corrected by the proper officials at any time.

*5.4 Repairs and alterations.*

    Normal maintenance of a building or other structure containing a nonconforming use is permitted, including necessary nonstructural repairs and incidental alterations which do not extend or intensify the nonconforming use.

[DEFENDANT'S EXHIBIT]

No structural alteration shall be made in a building or other structure containing a nonconforming use, except in the following situations:

    (a) When the alteration is required by law.

    (b) When the alteration will actually result in eliminating the nonconforming use.

    (c) When a building in a residential district containing residential nonconforming uses may be altered in any way to improve livability, provided no structural alteration shall be made which would increase the number of dwelling units or the bulk of the building.

### 5.5 Damage and destruction.

If a building or other structure containing a nonconforming use is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing costs, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

In either event, restoration or repair of the building or other structure must be started within a period of six (6) months from the date of damage or destruction, and diligently prosecuted to completion.

### 5.6 Additions and enlargements.

A nonconforming building may be enlarged or extended only if the entire building is hereafter devoted to a conforming use, and is made to conform to all the regulations of the district in which it is located.

No building partially occupied by a nonconforming use shall be altered in such a way as to permit the enlargement or expansion of the space occupied by such nonconforming use.

No nonconforming use may be enlarged or extended in such a way as to occupy any required useable open space, or any land beyond the boundaries of the zoning lot as it existing on the effective date of the ordinance, or to displace any conforming use in the same building or on the same parcel.

A building or structure which in nonconforming with respect to yards, floor area ratio, or any other element of bulk regulated herein shall not be altered or expanded in any manner which would increase the degree or extent of its nonconformity with respect to the bulk regulations for the district in which it is located.

### 5.7 Exempted buildings, structures and uses.

Wherever a lawfully existing building or other structure otherwise conforms to the use regulations herein but is nonconforming only in the particular manner hereinafter specified, the building and use thereof shall be exempt from the requirements of sections 5.4 and 5.5.

In any residential district where a dwelling is nonconforming only as to the number of dwelling units it contains, provided no such building shall be altered in any way so as to increase the number of dwelling units therein.

In any residential district, where a use permitted in the B-1 district occupies ground floor space within a multiple-family dwelling located on a corner lot.

In any business or manufacturing district, where the use is less distant from a residential district than that specified in the regulations for the district in which it is located.

In any district, where an established building, structure or use is nonconforming with respect to the standards prescribed herein for any of the following:

    (a) Floor area ratio;

    (b) Yards, front, side, rear, or transitional;

    (c) Off-street parking or loading;

(d) Building height;

(e) Gross floor area.

*5.8 Conversion to special use.*

Any nonconforming use may be made a special use by the granting of a special permit, as authorized in the administrative section.

(Code 1980, App. B, § V; Ord. No. 94-23, § 1, 5-26-1994)

## Sec. VI. Zoning districts and zoning district map.

*6.1 Classes of districts.*

In order to classify, regulate and restrict the location of trades, industries and the location of buildings designed for specified uses, to regulate and limit the height and bulk of buildings hereafter erected or structurally altered, to regulate and limit the intensity of the use of the lot areas, and to regulate and determine the areas of yards, courts and other open spaces within and surrounding such buildings, the City of Calumet City, Illinois, is hereby divided into ten (10) classes of districts:

R-1 One-family residence district

R-2 Two-family and three-family residence district

R-3 Multiple-family residence district

B Commercial business district

B-2 Service business commercial district

B-3 Community commercial business district

M-1 Light industrial district

M-2 Heavy industrial district

OR Office research district

Public land use

and the location and boundaries of which are shown on the map and notations thereon titled "The Zoning Map of Calumet City," which said map is on file in the office of the building commission of Calumet City, and together with all notations, references, and other information shown thereon, are a part of this ordinance and have the same force and effect as if said map and all the notations, references and other information thereon were all fully set forth and described herein.

Except as hereinafter provided:

(1) No building shall hereafter be erected or altered, nor shall any building or premises be used for any purpose other than is permitted in the district in which such building or premises is located.

(2) No building shall be erected or altered to exceed in height the limit herein established for the district in which such building is located.

(3) No building shall be erected or altered except in conformity with the area regulations of the district in which the building is located.

(4) The minimum yards and other open space, including lot area required by the ordinance for each and every building existing at the time of passage of this ordinance, or for any building hereafter erected shall not be encroached upon or considered as yard or open space requirements for any other building.