IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICK SALINSKE, for himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 08-cv-03017 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Wayne R. Andersen |
| | ) | Magistrate Judge Morton Denlow |
| | ) | |
| CALUMET CITY, ILLINOIS, | ) ) | |
| | ) | |
| Defendant. | ) ) | |

## PLAINTIFF NICK SALINSKE'S REPLY MEMORANDUM OF LAW SUPPORTING AMENDED MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

In its Opposition to Plaintiff's Amended Motion For Class Certification ("Opp."), Defendant Calumet City, Illinois ("City") concedes that Salinske satisfies three of the four requirements of Rule 23(a) (*i.e.*, numerosity, commonality, and adequacy of representation) and the requirements of Rule 23(b)(2) (*e.g.*, City has acted on grounds generally applicable to the class, thereby making appropriate injunctive relief or declaratory relief with respect to the class as a whole). The arguments offered by City against typicality are wholly without merit. In sum, City failed to demonstrate that the requirements of Rule 23 are not met and that this action should not proceed as a class action.

Section I, below, reiterates the Seventh Circuit's suggestion that this action proceed as a class action on behalf of all residential property owners in City. Section II highlights City's concessions to three of the four requirements of Rule 23(a) and the requirements of Rule 23(b)(2). In Section III, Salinske shows that City's "typicality" argument, which is really an Article III standing argument, fails because the Seventh Circuit has already

stated that all homeowners in City are injured by the Ordinance because the Ordinance impairs

the salability of property thereby reducing *all* property value in City. Section IV explains that

the alternative proposed classes were offered in an effort to preserve the Court's and parties'

time and resources. Finally, in Section V, Salinske correctly identifies that the law in the

Seventh Circuit is that the Court should rule on a motion for class certification prior to ruling on

the merits.

I.    **THE SEVENTH CIRCUIT UNEQUIVOCALLY STATED THAT THE ORDINANCE CAN BE CHALLENGED BY ALL CITY'S HOMEOWNERS JOINED IN A CLASS ACTION.**

City begins its Opposition by claiming that this Motion should be denied because,

in City's view, the "real plaintiff [in this litigation] is the local Realtors Association." Opp. at 1.

This, of course, is a nonstarter, as City's view of the "real plaintiff" is wholly irrelevant to Rule

23 determinations. Moreover, Salinske is very real, and the damages caused by City's

unconstitutional Ordinance and conduct have caused very real and very significant harm to

Salinske and the other property owners he seeks to represent.

Next, City offers a tortured attempt at "dispos[ing] of [Salinske's] misstatement of

dicta" in *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007), *cert. denied*,

2008 U.S. LEXIS 4558, 76 U.S.L.W. 3635 (U.S. June 2, 2008). Opp. at 1-2. Salinske did not

misstate the Seventh Circuit. At page 3 of the Opening Memorandum, Salinske provided:

> The Court of Appeals stated that a challenge to the POS Inspection Ordinance
> should be brought in a lawsuit by "all [] homeowners in Calumet City [] joined in
> a class action." *Mainstreet Org. of Realtors*, 505 F.3d at 747. By this Amended
> Motion, Salinske seeks to implement the suggestion of the Seventh Circuit.

The complete Seventh Circuit discussion -- which City butchers in its Opposition

-- clearly demonstrates that Salinske did not misstate the Seventh Circuit and, more importantly,

the certification of a class of all homeowners in City is appropriate.

2

> We need not worry that unless the doctrine limiting third-party standing is bent in this case there will be nobody to obtain a ruling on the constitutionality of the Calumet City ordinance. Even if the harm to the individual homeowner who encounters delay and expense in selling his house because of the ordinance is too slight to motivate him to bear the expense of bringing a lawsuit, all the homeowners in Calumet City can be joined in a class action, since all will have suffered a possible diminution in the value of their property as a result of the ordinance. As there is no hindrance to the primary victims' enforcing their rights, there is no reason to allow the brokers into the litigation arena. *Mainstreet Org. of Realtors*, 505 F.3d at 746-47 (internal citations omitted).

Accordingly, Salinske requests that the Court follow the guidance of the Seventh Circuit and certify this suit as a class action on behalf of all owners of residential property in City.

## II.  CITY CONCEDES THE CLASS IS NUMEROUS, THERE IS AT LEAST ONE COMMON QUESTION OF FACT OR LAW, THAT SALINSKE WILL FAIRLY AND ADEQUATELY REPRESENT THE CLASS, AND CITY HAS ACTED ON GROUNDS APPLICABLE TO THE CLASS MAKING INJUNCTIVE OR DECLARATORY RELIEF APPROPRIATE.

City agrees that class certification is proper where (1) the class is so numerous that joinder of all members is impracticable; (2) there exists at least one question of fact or law that is common among the class members; (3) the claims of the representative party are typical of the claims of the class; and (4) the representative will fairly and adequately protect and represent the interests of the class. Opp. at 2; *see also* Fed. R. Civ. P. 23(a). City's Opposition does not dispute that the proposed class is numerous, that there exists common questions of fact or law, or that Salinske and his counsel will fairly and adequately protect the interests of the class. Accordingly, Salinske has satisfied the requirements of Rule 23(a)(1), (2), (4). City's argument with respect to Rule 23(a)(3)'s typicality requirement -- which is wholly without merit -- is discussed in Section III below.

City also does not dispute that the class certification requirements of Fed. R. Civ. P. 23(b)(2) ("the party opposing the class has acted or refused to act on grounds generally

3

applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole") are satisfied.

## III.    SALINSKE'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS.

According to City, the typicality requirement of Rule 23(a)(3) is not met because "the vast majority of the proposed class members are not subject to the Ordinance." Opp. at 4. City supports its argument with smoke-and-mirrors mathematics (*i.e.*, the 15,933 housing units in City identified in the 2000 census equates to over 25,000 individuals who are not subject to the Ordinance), unsubstantiated assumptions (*i.e.*, "most residential properties are owned in joint tenancy by a husband and wife"), and by reading the minds of the 25,000-plus people City manufactured with its math (*i.e.*, 25,000 individuals "have no intention of selling their homes" while others have "no intention of moving from Calumet City during the next 20 years" or "are not proposing to sell their homes"). Opp. at 3-4. City contends that the proposed class is fatally flawed because it "depends on the intent or state of mind of individual property owners," without acknowledging the self-contradictory nature of its argument.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Put differently, a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). Upon further examination, City's argument is not that Salinske's claims are not typical of the class members claims. Clearly such an argument would be futile. Both Salinske's and the class members' claims arise from the Ordinance and a common course of conduct, specifically, City's enforcement of the Ordinance. Likewise, Salinske's and the class members' claims are based upon the same legal theories. If Salinske's Fourteenth Amendment rights are being violated by City, then all class members'

4

constitutional rights are likewise being violated by City. Moreover, Salinske owns a legal nonconforming property subject to City's uniform refusal to issue "re-build" letters. Instead, City's argument is that some of the proposed class members do not currently intend to sell their property in City and, therefore, do not have standing to challenge the Ordinance. Opp. at 3-4.

Article III standing does not require a certainty or even a high probability that the plaintiff is complaining about a real injury suffered or threatened. *Mainstreet Org. of Realtors*, 505 F.2d at 744. A suit to redress an injury to the plaintiff is a "case" or controversy" within the meaning of Article III of the Constitution as long as there is some nonnegligible, nontheoretical, probability of harm that the plaintiff's suit if successful would redress. *Id.* All that a plaintiff need show to establish standing to sue is a reasonable probability -- not a certainty -- of suffering tangible harm unless he obtains the relief that he is seeking in the suit. *Id.* at 745.

In *Mainstreet Org. of Realtors*, the Seventh Circuit acknowledged that all owners of residential property in City meet the Article III standing requirements. 505 F.3d at 744-46. The Ordinance's impairment of the salability of property reduces all property value in City because the right to freely alienate property is "one of the rights that, along with such other rights as the right to exclusive enjoyment of property, make a fee-simple interest more valuable than other interests in property, such as that of a licensee." *Mainstreet Org. of Realtors*, 505 F.3d at 745. Furthermore, the Seventh Circuit noted that the Ordinance is "quite likely to delay the sale of homes" and to "reduce sales prices." *Id.*

Moreover, this Court has certified a class consisting of property owners who were subject to a municipal ordinance "in the future." *McKenzie v. City of Chicago*, 175 F.R.D. 280, 289 (N.D. Ill. 1997). There, the plaintiffs were current and former property owners that challenged the City of Chicago's implementation of a state statute and city ordinance that

permitted the demolition of property. 175 F.R.D. at 283. The Court certified a class consisting

of property owners whose properties were "scheduled or *eligible* for demolition under the

[ordinance] *in the future*." 175 F.R.D at 289 (emphasis added).

## IV.    SALINSKE'S ALTERNATIVE PROPOSED CLASSES WERE OFFERED IN AN EFFORT TO PRESERVE THE COURT'S AND PARTIES' RESOURCES.

By this Motion, Salinske seeks certification of a Rule 23(b)(2) class consisting of

all owners of residential property in City. However, based upon the divergent suggestions of the

Seventh Circuit, Judge Shadur in the *Walker* litigation, and this Court, Salinske sought to

preserve the Court's and parties' time and resources by offering alternative proposed classes.

Mem. at 6. Nevertheless, should the Court believe that one of the alternative proposed classes is

the most appropriate and that Salinske should be required to file a second amended motion for

class certification, Salinske respectfully requests leave to file such an amended motion.

As noted in Section I above, the Seventh Circuit proposed "all the homeowners in

Calumet City can be joined in a class action." *Mainstreet Org. of Realtors*, 505 F.3d at 747.

Conversely, Judge Shadur suggested that the proper class should be owners of residential

property in City who are attempting to sell or transfer property subject to the Ordinance. And on

July 18, 2008, this Court suggested that the proper class would be all homeowners in City and

permitted Salinske leave to file an amended motion for class certification. Ex. A, July 18, 2008

Hearing Tr. 3:8-13, 4:21-23, 14:11-14.

Moreover, Salinske's rationale for offering alternative proposed class is sound.

First, it permits a decision on the merits of a motion for class certification without wasting

additional time and resources associated with filing another amended motion for class

certification. Second, it avoids delay that City could use to moot Salinske's claim, thereby

avoiding a decision on class certification and Salinske's motion for preliminary injunction.

Indeed, City took advantage of the delay in the *Walker* litigation created by amended motions for class certification by mooting Walker's claims before Judge Shadur could consider Walker's class certification and preliminary injunction motions. *See* Mem. at 3. Moreover, if City is so confident in its legal position that the Ordinance is constitutional, it should want a class consisting of all owners of residential property in City certified.

In response to the alternative proposed classes, City offers no legal argument or cites to any legal authorities. Instead, City simply makes conclusory statements because, as the *Walker* litigation demonstrates, City will go to any lengths to oppose any proposed class offered by Salinske. Opp. at 5-6. More importantly, City does not contend that the proposition of alternative proposed classes is prohibited by Rule 23 or is a ground to deny a motion for class certification, or that the alternative proposed classes do not satisfy the requirements of Rule 23.

Finally, City reasserts the red herring argument that class certification should be denied due to the cost of providing notice. Opp. at 5-6. City first raised this baseless argument during the hearing on July 18, 2008. Ex. A, July 18, 2008 Hearing Tr. 8:23-9:3. As we noted in our Opening Memorandum, notice is optional for Rule 23(b)(2) class actions. *See* Rule 23(c)(2)(A). Moreover, to the extent the Court deems notice necessary, Plaintiffs would be willing to pay for the costs associated with providing notice.

## V.     THE "RULE" IN THE SEVENTH CIRCUIT IS THAT THE COURT SHOULD DECIDE SALINSKE'S MOTION FOR CLASS CERTIFICATION BEFORE A DECISION ON THE MERITS.

Ignoring Seven Circuit law, City's argument -- to the extent one can be gleaned -- is that, because Salinske has asserted a facial challenge to the Ordinance, the Court has the option to defer ruling on this Motion until after it rules on pending motions to dismiss and for injunctive relief. Opp. at 6. Moreover, City also appears to be telling the Court that if the Court wants to avoid Seventh Circuit review of its decisions, it should not grant Salinske's request for

preliminary injunctive relief. Opp. at 6. Of course, whether parties will appeal the issuance or

denial of an injunction is wholly irrelevant to the Court's determination of a motion for class

certification under Rule 23.

More importantly, the "rule" in the Seventh Circuit is that the Court should issue

its ruling on a motion for class certification before a decision on the merits. *See, e.g.*, *Larson v.*

*JP Morgan Chase & Co.*, No. 08-1045, 2008 U.S. App. LEXIS 13298, at *5-6 (7th Cir. June 23,

2008)(had the district court complied with the "*rule*" that the district court certify a class before

ruling on the merits, there would have been no need to determine whether a would-be class

member may intervene after final judgment)(emphasis added)(Ex. B). Indeed, it is an

"exceptional" case in which deciding the merits of the case first and the motion for class

certification second is proper. *Weismueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008);

*Bieneman v. City of Chicago*, 838 F.2d 962, 963 (7th Cir. 1988)("It is therefore difficult to

imagine cases in which it is appropriate to defer class certification until after decision on the

merits"). "Treatment of plaintiffs and defendants is supposed to be symmetric, which is possible

only if a class is certified (or not) before decision on the merits." *Bertrand v. Maram*, 495 F.3d

452, 455 (7th Cir. 2007).

The Seventh Circuit explained the rationale for the rule in *Wiesmueller*:

> If the class is certified before the named plaintiff's claim becomes moot, the
> mooting of his claim does not doom the suit. For the suit is not moot unless the
> claims of all the unnamed class members have also become moot; if not, they
> have a live claim against the defendant. Were the rule otherwise, 'the defendant
> could delay the action indefinitely by paying off each class representative in
> succession.' Conversely, if the named plaintiff's claim becomes moot before the
> class is certified, the suit must be dismissed because no one besides the plaintiff
> has a legally protected interest in the litigation.

*Wiesmueller*, 513 F.3d at 785-86 (citing *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 547

(7th Cir. 2003)).

Here, City has not demonstrated that this is an "exceptional" case that warrants deviation from the rule that the Court rule upon class certification prior to a decision on the merits. Certainly the fact that this suit is a facial challenge does not elevate it to the level of "exceptional," and City neither argues as much nor provides any authorities supporting such a characterization. And as the *Walker* litigation (*see* Section I of Opening Memorandum) unequivocally demonstrates, City has and will continue to "delay the action indefinitely by paying off each class representative in succession." *Wiesmueller*, 513 F.3d at 785-86.

At a minimum, Salinske respectfully requests that the Court consider this amended motion for class certification simultaneously with its consideration of Salinske's motion for preliminary injunction and City's motion to dismiss. The Court previously indicated its belief that such an approach may be appropriate. Ex. A, July 18, 2008 Hearing Tr. 4:7-9.

## CONCLUSION

The proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(2). Accordingly, Salinske respectfully requests that this Court certify the class as set forth herein, appoint him as class representative and his counsel, Grippo & Elden LLC, as class counsel. Additionally, pursuant to the law of the Seventh Circuit, Salinske respectfully requests that the Court consider this Amended Motion promptly and prior to a decision on the pending motions to dismiss and for preliminary injunction.

August 29, 2008

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

Respectfully submitted,

**NICK SALINSKE**

By:    /s/ Patrick T. Nash
       One of his Attorneys

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 29th day of August, 2008, I served the

foregoing **PLAINTIFF NICK SALINSKE'S REPLY MEMORANDUM OF LAW**

**SUPPORTING AMENDED MOTION FOR CLASS CERTIFICATION** upon the following

by Electronic Mail Transmission via the Court's ECF System:

> Mark H. Sterk
> Odelson & Sterk, Ltd.
> 3318 West 95th Street
> Evergreen Park, Illinois  60805
>
> John B. Murphey
> ROSENTHAL, MURPHEY & COBLENTZ
> 30 North LaSalle Street
> Suite 1624
> Chicago, IL  60602

> s/ Patrick T. Nash_____
> Patrick T. Nash

# EXHIBIT A

1

1    IN THE UNITED STATES DISTRICT COURT
     FOR THE NORTHERN DISTRICT OF ILLINOIS
2    EASTERN DIVISION

3    NICK SALINSKE, et al.,          )   No. 08 C 3017
                                      )
4                      Plaintiffs,    )   Chicago, Illinois
                                      )   July 18, 2008
5                                     )   9:30 o'clock a.m.
     -vs-                             )
6                                     )
                                      )
7    CALUMET CITY, ILLINOIS           )
                                      )
8                      Defendant.     )

9
             TRANSCRIPT OF PROCEEDINGS - MOTION
10      BEFORE THE HONORABLE WAYNE R. ANDERSEN

11   APPEARANCES:

12   For the Plaintiff:        GRIPPO & ELDEN
                               111 South Wacker Drive
13                             Suite 5100
                               Chicago, Illinois 60606
14                             BY:  MR. PATRICK T. NASH
                                    MR. DONALD P. BUNNIN
15
     For the Defendant:        ROSENTHAL, MURPHEY, COBLENTZ
16                             & JANEGA
                               30 North LaSalle Street
17                             Suite 1624
                               Chicago, Illinois 60602
18                             BY:  MR. JOHN B. MURPHEY

19

20

21

22

23   Court Reporter:           ROSEMARY SCARPELLI
                               219 South Dearborn Street
24                             Room 1412
                               Chicago, Illinois  60604
25                             (312) 435-5815

```
 1                    THE COURT:  Okay.  Salinske versus Calumet City, 8
 2    C 3017.
 3                    MR. NASH:  Good morning, your Honor, Patrick Nash
 4    and Don Bunnin on behalf of the plaintiffs.
 5                    MR. MURPHEY:  John Murphey and Mark Sterk for the
 6    City.
 7                    THE COURT:  Let me -- permit me to give you my
 8    thoughts.  And then when I finish, you can tell me what you
 9    think.  All right?
10                    When -- you know, since Judge Shadur issued the
11    injunctions that he issued, it tells me certainly that he
12    thought that there was a reasonable, valid basis for
13    challenging the constitutionality of the ordinance.
14                    I could think of a lot of reasons why it is a
15    reasonable ordinance and might well be within the City's
16    constitutional authority for the health, welfare, safety of
17    the citizens and so on.  So it seems -- and I can see how it
18    can have a dramatic impact on actually any property owner,
19    any residential property owner in the City.
20                    So it seems to me that -- that every -- that the
21    Village and the people who own homes there need to have this
22    resolved.  Either it is a -- it is valid or not or perhaps it
23    would be valid with certain changes.  And, obviously, I can't
24    figure that out in a short period of time and I would
25    certainly want the legal views and assistance of the
```

1    attorneys who are involved and, you know, and give their best

2    thought to it as well.  So that tells me that in order to

3    determine whether or not the ordinance is constitutional, we

4    ought to take a reasonable period of time to properly legally

5    research it so that I can study it and reflect.  Okay, that

6    is number one.

7              Number two, there have been several suits, perhaps

8    because there really hasn't been a valid class action.  And

9    it does seem to me that there is a certain similar situation

10   between -- I might even go beyond people whose homes are for

11   sale.  And everybody who owns property, frankly, is affected

12   by this because eventually almost everyone plans to sell a

13   house and buy a house.

14             So I think, even though I am not a huge fan of

15   class actions, it seems to me that the City doesn't want to

16   have to run a gauntlet of lawsuits on it, so the sensible

17   thing to do, probably, is to certify some kind of a class so

18   that everybody knows where they stand.  And, obviously, under

19   the federal rules class certification is supposed to antedate

20   motions to dismiss and things like that.  I think that is a

21   rule that is way too rigid, and I myself have violated it

22   plenty of times, which I think was sensible in many

23   situations.

24             But my fear is in this particular case let -- no

25   matter what I have decided -- let's say I granted a motion to

1    dismiss, somebody would file another lawsuit.  So, you know,
2    it is proven by the past.  If I didn't -- if we attended to
3    the motion to dismiss first and I denied it and we handled
4    the class certification as the next step, now we are keeping
5    everybody under a cloud for two, four, six months, however
6    long it takes to decide all that.

7            So my thought at this point in time is that we
8    ought to attend to a class certification simultaneous to
9    considering whether or not the ordinance is constitutional,
10   which might -- which would entail, certainly, briefing and,
11   perhaps, conceivably some kind of hearing, because when you
12   look at some of the concerns that are expressed with the
13   ordinance, they are more theoretical than actual, perhaps.  I
14   mean all these problems depend upon how expeditiously and
15   honestly the Village officials enforce their ordinance.  So
16   -- and then that is the sort of fact that, perhaps, only then
17   comes out in a hearing kind of context.

18           So from where I sit right now, what I would say I
19   need from the group is a timetable to prevent legal -- to
20   present legal briefs to me on those issues.  And, frankly, if
21   there is an agreed certification of a class, I would start
22   with all homeowners and then maybe make it narrower down to
23   people with their houses on the market.

24           The problem with that is let's say that we issue a
25   decision a year from now.  Someone puts their house on the

5

1   market.  Were they covered by that?  I don't know.  The

2   Village needs to know where it is going.  And I might say too

3   I have a certain amount of empathy for Calumet City.  I

4   haven't driven through lately, but I am sure that maintaining

5   property values and maintaining things in good condition is a

6   very high priority for the Village.  And it is not that easy

7   to do.

8           I mean the zoning laws provides a certain power

9   there, but as a practical matter when someone wants to sell

10  their house, they now have an incentive to really do it

11  rather than fake doing it or hide it and so on.  So to me the

12  ordinance isn't obviously irrational.  To me it might -- it

13  actually makes a certain amount of sense.

14          So, in any event, that --- those are my ruminations

15  on it so far.  What -- what do you guys have to say?

16          MR. NASH:  Well, Pat Nash on behalf of plaintiffs.

17  I agree with what you have said in terms of how we ought to

18  proceed.  I think briefing class certification along with the

19  constitutionality of the ordinance -- I think maybe currently

20  we could brief the motion for preliminary injunction at the

21  same time we brief the motion to dismiss because then we get

22  all arguments.  I think that is the right way to proceed.

23          THE COURT:  Do you think -- would we have a fight

24  over class certification, would you think?

25          MR. NASH:  Well, you have to ask Mr. Murphey that.

| | |
|---|---|
| 1 | I mean we -- |
| 2 | THE COURT:  How about it, Murph? |
| 3 | MR. MURPHEY:  Yeah, we would have a fight over |
| 4 | class certification. |
| 5 | THE COURT:  What do you think should be done? |
| 6 | MR. MURPHEY:  I -- well, I -- well, I -- I agree |
| 7 | with Pat in terms of the scheduling.  We have -- because this |
| 8 | is largely a facial challenge, it -- the -- the lawsuit lends |
| 9 | itself to a 12(b)(6) determination because facial challenge |
| 10 | means there is no facts, it is law.  Look at the ordinance. |
| 11 | Up or down.  So I agree with that. |
| 12 | We are briefing the motion to dismiss/preliminary |
| 13 | injunction, identical lawyers, near identical complaint with |
| 14 | Judge Coar who didn't view -- didn't view them -- my motion |
| 15 | to assign -- he denied it, so here we are. |
| 16 | Be that as it may, we can -- we can on a -- on a |
| 17 | pretty fast track basis respond to all of them -- everything |
| 18 | at the same time.  It is -- to be honest with you, Judge, I |
| 19 | have written this brief 17 times, so it is more -- |
| 20 | THE COURT:  Does it get better each time? |
| 21 | MR. MURPHEY:  You know, I am -- I am adding more |
| 22 | flourishes. |
| 23 | THE COURT:  For the ones for me take the footnote |
| 24 | out. |
| 25 | MR. MURPHEY:  Judge Breyer theory, huh?  The -- |

1  THE COURT:  Well.

2  MR. MURPHEY:  So I would propose this:  That the

3  City would file a combined response in -- combined response

4  in support of the motion to dismiss and in opposition to the

5  preliminary because that -- those items fold.

6  THE COURT:  Right.

7  MR. MURPHEY:  At the same -- on the same track --

8  and I don't care if it is 14 days -- It is is fine with me

9  because I have semi-written it already -- we would give the

10  Court our thoughts on class certification.  We did this once

11  with Judge Shadur.

12  THE COURT:  What do -- what do you think?

13  MR. MURPHEY:  Well, I think that, to use Judge

14  Posner's words, this business of class certification first,

15  the -- a District Court has wiggle room and --

16  THE COURT:  Yes, he just wacked me the other day

17  for wiggling the wrong way, although I was roundly affirmed.

18  MR. MURPHEY:  Well, I --

19  THE COURT:  And I think I was right.

20  MR. MURPHEY:  Your Honor, I am not -- the City is

21  not so concerned about multiple challenges.  It is the two

22  fellas next to me who are representing all of the challenges,

23  whether -- so sooner or later either you or Judge Coar is

24  going to decide it is going to go up and there is going to be

25  a decision by the 7th Circuit.

8

1      THE COURT:  So that the issue then becomes, though,

2   what happens to people in the meantime.

3           MR. MURPHEY:  Well --

4      THE COURT:  And if -- obviously if the Village --

5   let's say that I find it is unconstitutional or enjoin the

6   Village, would the Village in effect stand down its

7   enforcement until the Court of Appeals rules one way or the

8   other?

9           MR. MURPHEY:  Yes, that is what we did with Judge

10   Shadur when -- when the, you know, the realtors association

11   brought the first lawsuit.

12           THE COURT:  Right.

13           MR. MURPHEY:  And then I have to note

14   parenthetically that we have amended the ordinance since

15   Judge Shadur first -- so it is a different ordinance.  But we

16   would -- if this Court went against us on Mr. Salinske's

17   case, we would stand down.  We would.

18           THE COURT:  So in that case what you are telling me

19   is you don't see a -- it is still -- the ordinance is still

20   on the books, but -- but nobody should be harmed unless and

21   until it is validated by a court?

22           MR. MURPHEY:  The incremental -- yes.

23           THE COURT:  His brow is furrowing.

24           MR. MURPHEY:  Well, if -- if -- yes, our view is

25   that the incremental costs of getting involved in class

1    certification, potential notice, is very expensive to a

2    defendant and -- and confusing.  Confusing if everybody in

3    town gets this notice.

4         THE COURT:  Well, not that we ought to really think

5    about it, but let's think about who pays the plaintiffs'

6    lawyers, for example.  Because, obviously, if you have a

7    class action, presumably relief, if you prevail, could be,

8    you know, the defendant maybe ends up paying you.  In your

9    current situation this is a serious legal action.  And I am

10   going to guess few Calumet City homeowners can afford to pay

11   this incredibly high-powered legal talent to fight this

12   exciting constitutional legal challenge.

13        So what -- what is your view of that?

14        MR. NASH:  Our view is it is absolutely critical

15   that we decide class certification either before or, as you

16   suggest, at the same time as you decide the other things.

17   And the reason is -- first of all, that is what the rules

18   suggest and the 7th Circuit has -- you know, even he case

19   that Mr. Murphey cites in his brief says, "In most

20   circumstances a judge should determine whether to grant or

21   deny certification prior to ruling on the merits.  It is

22   difficult to imagine cases in which it is appropriate to

23   defer class certification until after a decision."

24        But we have to look at what actually happened

25   through the course of this litigation.  After the 7th Circuit

1    issued its opinion saying that the association didn't have

2    jurisdictional standing or --

3              THE COURT:  Well, we understand.

4              MR. NASH:  Prudential standing.  Right.

5              THE COURT:  They are not a homeowner.

6              MR. NASH:  Immediately after that a City property

7    owner by the name of Walker did file a class action lawsuit.

8    And Cal City in response persuaded Judge Shadur to defer

9    certification of class certification, to defer consideration

10   of the preliminary injunction motion for many, many months.

11   Abn when the day of reckoning came, they told Judge Shadur,

12   you know what, we are not going to enforce the ordinance

13   against Miss Walker, her claim is moot.  And we had wasted

14   several months without moving the case forward, without

15   getting a determination, without seeing if the Court that

16   would reinstate the injunction that Judge Shadur had entered.

17   We can't let that happen.

18             If you certify the class, then they can't take that

19   similar action.  And if -- you say if we lose, then, you

20   know, the class --

21             THE COURT:  It is a biggy.

22             MR. NASH:  -- is bound.  It is a biggy.  But if we

23   win, then we prevent the --

24             THE COURT:  You know, I have always -- just, you

25   know, I haven't figured out what to do, obviously, yet, but I

1   have always been sort of puzzled that defendants normally

2   resist class certification when a class certification gives

3   them a chance for a really big victory and avoid a gauntlet

4   of lawsuits.

5        And when I read through the materials on this and

6   reflected on it, it strikes me that it is enough of a burden

7   on people so that there -- there is likely to be a series of

8   challenges and maybe the best thing from the Village's

9   standpoint is to get it over with all at once.  Plus if you

10  win, then Nash, et al. can -- will have done a really good

11  deed at a substantial expense just to themselves.

12        So it is -- so, you know, unless you contemplate a

13  settlement or losing, I would just urge the Village to say --

14  to actually say, okay, what -- not only what are the

15  disadvantages of a class action, but what are the advantages.

16  And the fact that an adversary wants it doesn't necessarily

17  mean it is to your disadvantage.

18        MR. MURPHEY:  We will -- we will --

19        THE COURT:  You don't have to decide.

20        MR. MURPHEY:  No, no, I understand the Court's

21  point.  And that is something we have struggled with.  I

22  won't -- there is no point in my responding to the

23  misstatements regarding Miss Walker.  That is -- that is --

24  you know, they lost that one.  So I will take care of that

25  one.

1       THE COURT:  The win speaks for itself.

2       MR. MURPHEY:  The win speaks for itself.

3       So -- my suggestion is 14 or, you know, maybe until

4   the following Monday.

5       THE COURRT:  So let's --

6       MR. MURPHEY:  Seven -- 17 days for the City to file

7   -- respond.

8       THE COURT:  You don't have to write anything down

9   yet.  We will get a draft order from them.

10      MR. MURPHEY:  My -- yeah, my proposal is 17 days

11  for the City to file a response to the motion -- memorandum

12  in support of the motion to dismiss.

13      THE COURT:  Now, I have a problem with 17 because

14  it is a Monday and I am still philosophically deeply opposed

15  to having things due on Mondays because, first of all, some

16  associate has their weekend wrecked, which they might anyhow,

17  plus the average brief is 2.6 pages longer when they are due

18  on Mondays as opposed to Fridays.  So I decided that every --

19  unless there is a genuine emergency, what we want to do is

20  gear things to Fridays.

21      MR. MURPHEY:  All right.

22      THE COURT:  So let's --

23      MR. MURPHEY:  Fourteen.

24      THE COURT:  Okay.  Let's pick the days then so that

25  -- then maybe you guys can give us a draft order so we know

1    where we stand.

2            MR. MURPHEY:  Four --

3            THE COURT:  So today is what, the 18th?

4            THE CLERK:  Yes.

5            THE COURT:  Thanks.

6            So then what motions are on are on file?

7            MR. MURPHEY:  We have a motion to dismiss.

8            THE COURT:  Okay.

9            MR. MURPHEY:  They have a motion for preliminary.

10           MR. NASH:  And the motion for class certification.

11           MR. MURPHEY:  And a motion --

12           THE COURT:  Okay.  So let's say on the motion for

13   -- and they are the plaintiffs.  So on the motion for

14   preliminary injunction and the motion for class

15   certification, what do you think would be a fair time frame

16   within which to respond?

17           MR. MURPHEY:  Fourteen.

18           THE COURT:  That quickly?

19           MR. MURPHEY:  Yes.

20           MR. NASH:  Can I comment?  Taking into account what

21   you said earlier about what perhaps ought to be the proper

22   class, the 7th Circuit actually agreed with you and said that

23   the proper class in this case ought to be all homeowners.

24   Now, when we presented that motion initially to Judge Shadur,

25   he was somewhat reluctant to approach it that way and

1    suggested the more narrow class of those selling their
2    property.  We agree with the 7th Circuit and with your
3    preliminary comments earlier that it ought to be all home
4    owners, so we would like to file a revised motion.  We can do
5    that in -- by next Wednesday.  It -- our legal arguments will
6    be the same.  It is just the scope of the class.
7              THE COURT:  Now, just to make sure that we don't
8    have to redo -- rework schedules, particularly at a time when
9    -- when I don't plan to be darkening the doors.  But with
10   BlackBerries and mail and stuff, it is not like I am ever off
11   the job.  So what about if we gave the plaintiffs until July
12   25th to file a -- an amended motion for class certification.
13   And do whatever you think is best, all right, but I would say
14   the object isn't to trick Mr. Murphey.  You know, let him
15   know what you are going to do.  And then provide that the
16   City can respond to the motion for temporary injunction and
17   motion for class certification by August 8th.  Give them one
18   more week than they have asked for.  And then you can respond
19   on -- by August 8th on their motion to dismiss.
20             How about that?
21             MR. MURPHEY:  Your Honor, I have only -- on the
22   motion to dismiss I have only filed a -- filed the motion
23   itself without the memorandum, so --
24             THE COURT:  When do you want -- when do you want to
25   do that?

1    MR. MURPHEY:  My thought was that I -- within the

2    14 days that I was suggesting I will respond -- I will file,

3    A, response to motion for preliminary and, B, memo in support

4    of motion to dismiss, so they have all of my arguments.

5    THE COURT:  So August 8th let's say.  It is an

6    extra week.

7    MR. MURPHEY:  Right.

8    THE COURT:  There is nothing stopping you from

9    doing things earlier.  And I figured that between three and

10   four percent of the times lawyers do things ahead of time, so

11   there is a chance you will get it earlier.  But let's say by

12   August 8th you can file everything then, the memo in support

13   of your motion to dismiss as well as your response to their

14   amended motion for class certification and their motion for a

15   preliminary injunction.

16   Okay.  And then how much time would you like to

17   respond to whatever they file?

18   Well, we know it is August and you are entitled to

19   have part of a life.  And I might not deeply engage in this.

20   And one of your partners wants to comment here.

21   MR. NASH:  Can we have until the 29th --

22   THE COURT:  Yes.

23   MR. NASH:  -- of August?

24   THE COURT:  Sure.  And I started my comments today

25   by saying my feeling is this really needs some thought and

1    reflection and that that is -- we don't want to dillydally as

2    I said to Kate Cook, who -- is this going to be yours?

3              CLERK COOK:  I guess so.

4              THE COURT:  So Kate Cook will be the law clerk

5    working on it.  She is smart and patient, but she always

6    moves forward.  So we agreed that we would hope that by

7    Columbus Day or so we would have an answer, our answer.  So

8    that is not -- you know, we are not looking at our usual six-

9    month thing, but I don't feel a need to do it tomorrow.  I

10   want a chance to sort of think about it.  So that is sort of

11   the time frame in mind.  So if you wanted to file your

12   responses by August 29, that is fine with me.

13             Do you think that is a reasonable period of time?

14             MR. NASH:  It is.

15             THE COURT:  Okay.  And then I can see there could

16   be replies due.  Should we say September 12 for replies?

17             MR. MURPHEY:  That is fine.

18             THE COURT:  Okay.  But we -- what I would commit to

19   the parties, we would begin to -- you know, as -- as things

20   come in, we will take a look at it.  You know, usually we

21   just pile it up and then that pile is underneath a couple

22   other piles.  But in this particular case we will try to

23   actually read it as a comes in.  All right?

24             MR. MURPHEY:  Thank you.

25             THE COURT:  And then I don't think we -- we really

1   need a date, but just so we don't lose track of it I will set

2   a status for October 2nd at 9:00 o'clock.  But when -- when

3   the last things come in, let us know.  And your -- you are

4   welcome -- since we won't being around during August, you are

5   welcome to e-mail copies to us, you know, which we can,

6   obviously, easily print off.  So before -- so could someone

7   give us a draft order that recites all this.  Mr. Nash might

8   do that.

9           MR. NASH:  We will prepare it and send it to

10  counsel to look at.  We will get it over.

11          THE COURT:  Then actually you can -- we have our

12  proposed E-filing system here that I don't understand, but if

13  you want to just put it on to that, we can tell Tresa and

14  then when he she gets here Monday, she could probably

15  actually enter that order.  How does that seem to everybody?

16          MR. MURPHEY:  Fair enough.

17          MR. NASH:  E-file the proposed order rather than

18  sending it over?

19          THE COURT:  Sure.

20          MR. NASH:  Okay.

21          THE COURT:  Actually it is easier for the clerk to

22  do it that way, right?

23          Yeah, because if -- hard copies, now the system has

24  to spend another day scanning in and everything else.  So

25  with the E-filing, it is just so cool, 24/7.  Oh, well.

1        MR. MURPHEY:  A mixed blessing because you never

2    get away from the job.

3        THE COURT:  No, on Super Bowl Sunday two years ago

4    we -- the e-mails were coming at me so fast.  And for what

5    the lawyers were billing, like guadzillions, I finally said

6    at 3:00 o'clock, it is 3:00 o'clock on Super Bowl Sunday; I

7    don't want to see any e-mails from you guys.  They had to

8    downgrade their pizza orders for that night.

9        MR. NASH:  Thank you very much, your Honor.

10        THE COURT:  Okay.  So you agree with my comments,

11    though, that it is -- now, let me ask you one other question.

12    Judge Coar like -- like me, Judge Coar is a fixed pay worker

13    not looking for extra work.  So I -- I am inclined to tell

14    him what we have done.  And he might want to let his matter

15    sit.  For example, if we were to declare a class and that

16    plaintiff there didn't want to opt out, then that plaintiff

17    would be scooped up into this action.

18        And I am not sure we want me giving this all this

19    good thought while Judge Coar is giving it it lots of good

20    thought as well.  So I might tell him our timetable and say

21    to him, gee, if you want to hold off until I rule, at least

22    on the class certification, you are welcome to do that.  I

23    don't see why both of us should do it.

24        But if there is a plaintiff there who has some real

25    need to get this resolved in their life, then maybe that

1    wouldn't be fair.  What do you guys think?

2            MR. NASH:  Yeah, we have no objection to you

3    talking with Judge Coar about what we are doing here.  I

4    think, just so you know, the case before Judge Coar was

5    brought primarily as a claim for damages because Cal City

6    violated the injunction that Judge Shadur had entered which

7    law -- caused the plaintiffs in the case before Judge Coar to

8    lose a sale of their house.  So Judge Shadur entered an order

9    saying they were entitled to damages which haven't been paid.

10   So the primary focus on that case is to recover those

11   damages.

12           Now they are also trying to sell their house.  They

13   are in dire straits.  One of two things is going to happen.

14   They are either they are going to lose their home to

15   foreclosure of, if there is luck, they will sell it, in which

16   case that becomes a pure damages case.  You know, they are

17   seeking injunctive relief so that they can --

18           THE COURT:  Plus they get a higher price.

19           MR. NASH:  Right.  Well, that -- that --

20           THE COURT:  Then they can pay their lawyers at

21   least.

22           MR. NASH:  That would be great.  You know, they are

23   seeking injunctive relief against the ordinance simply to

24   help them sell their -- sell their house, but --

25           THE COURT:  Okay.  I am going to tell Judge Coar

1     what I am doing so he is aware of it but not suggest a

2     particular -- I will point out that his -- his plaintiff is

3     in a different position than others and, you know, he is --

4     that you guys will assume he is going to proceed in the

5     normal course of affairs.  Although, obviously, if I reach

6     some conclusions and he does, we might advise the other, for

7     whatever that is worth.  All right?

8          Okay.  Thank you for coming over and thanks for

9     coming over two days in a row, but I really wanted a chance

10    to look at this.

11         MR. MURPHEY:  We appreciate it.  Thank you.

12         THE COURT:  My goal would be to do my best so that

13    you can see if you can find at least two people upstairs who

14    want to do better.  Okay?

15         MR. MURPHEY:  Thank you.

16         MR. NASH:  Thank you.  Thank you, your Honor.

17         THE COURT:  Thank you.

18       (Which were all the proceedings heard.)

19                 CERTIFICATE

20      I certify that the foregoing is a correct transcript

21    from the record of proceedings in the above-entitled matter.

22

23    s/Rosemary Scarpelli/        Date: ___8/18/08___

24

25

# EXHIBIT B

LEXSEE 2008 USAPPLEXIS 13298

**HARRY A. LARSON, FRANK F. VILLANO, and ROBERT J. MURPHY, indi-
vidually and on behalf all others similarly situated, Plaintiffs, v. JPMORGAN
CHASE & CO., Defendant-Appellee/Cross-Appellant. APPEAL OF: COLORADO
PUBLIC EMPLOYEES' RETIREMENT ASSOCIATION.**

**Nos. 08-1045, 08-1064, 08-1170**

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**

*530 F.3d 578; 2008 U.S. App. LEXIS 13298*

**May 29, 2008, Argued
June 23, 2008, Decided**

**PRIOR HISTORY:** [**1]
Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division. No. 00 C
2100. Wayne R. Andersen, Judge.
*In re Old Bank One S'holders Secs. Litig., 2007 U.S.
Dist. LEXIS 94776 (N.D. Ill., Dec. 28, 2007)*

**COUNSEL:** For HARRY R. LARSON, FRANK F.
VILLANO, ROBERT J. MURPHY, on behalf of them-
selves and all others similary situated, ELECTRONIC
PROCESSING SOURCE INCORPORATED, as trustee
for FRANK F. VILLANO (08-1045, 08-1064), Plain-
tiffs: Patrick V. Dahlstrom, POMERANTZ, HAUDEK,
BLOCK, GROSSMAN & GROSS, Chicago, IL USA.

For JPMORGAN CHASE & COMPANY, as successor
to BANK ONE CORPORATION (08-1045, 08-1064),
Defendant - Appellee: Linda T. Coberly, Robert Y. Sper-
ling, WINSTON & STRAWN, Chicago, IL USA.

For COLORADO PUBLIC EMPLOYEES' RETIRE-
MENT ASSOCIATION (08-1045), Appellant: Gary D.
McCallister, MCCALLISTER & ASSOCIATES, Chi-
cago, IL.

For COLORADO PUBLIC EMPLOYEES' RETIRE-
MENT ASSOCIATION (08-1064, 08-1170), Intervenor
- Appellant: Gary D. McCallister, MCCALLISTER &
ASSOCIATES, Chicago, IL.

For HARRY R. LARSON, ROBERT J. MURPHY, on
behalf of themselves and all others similary situated,
ELECTRONIC PROCESSING SOURCE INCORPO-
RATED, as trustee for FRANK F. VILLANO (08-1170),
Plaintiffs: Brian Schrador, New York, NY USA; Patrick
V. Dahlstrom, POMERANTZ, HAUDEK, BLOCK,

GROSSMAN [**2] & GROSS, Chicago, IL USA; Jo-
seph Lipofsky, ZWERLING, SCHACHTER & ZWER-
LING, New York, NY USA.

For FRANK F. VILLANO (08-1170), Plaintiff: Brian
Schrador, New York, NY USA; Patrick V. Dahlstrom,
POMERANTZ, HAUDEK, BLOCK, GROSSMAN &
GROSS, Chicago, IL USA; Marvin A. Miller, MILLER
LAW, Chicago, IL; Joseph Lipofsky, ZWERLING,
SCHACHTER & ZWERLING, New York, NY USA.

For JPMORGAN CHASE & COMPANY, on its own
behalf and on behalf of its predecessor BANK ONE
CORPORATION (08-1170), Defendant - Appellant:
Linda T. Coberly, Robert Y. Sperling, WINSTON &
STRAWN, Chicago, IL USA.

**JUDGES:** Before CUDAHY, POSNER, and TINDER,
Circuit Judges.

**OPINION BY:** POSNER

**OPINION**

[*580] POSNER, *Circuit Judge.* The Colorado
Public Employees' Retirement Association (CoPERA)
appeals from the district judge's refusal to allow it to
intervene as a plaintiff in this class action for the purpose
of appealing a three-and-a-half-year-old order granting
summary judgment against the original representatives of
the class. The question is whether CoPERA was entitled
to wait so long before trying to become a party.

In 2000 the three plaintiffs brought this federal secu-
rities suit on behalf of themselves and all other stock-
holders who two years earlier had acquired stock [**3]
in Bank One (now JPMorgan, but we'll continue to refer
to the defendant as Bank One) when Bank One was cre-

ated by the merger of Old Banc One and First Chicago NBD Corp. The suit charged that the prospectus for the merger transaction contained misrepresentations. The plaintiffs, along with a number of other members of the proposed class, had acquired stock in Old Banc One, converted to stock in Bank One in the merger, before the prospectus had been issued; they are called the "early purchasers" (of Bank One Stock). Other class members, the "late purchasers," had acquired stock in Bank One after the prospectus was issued; and some class members, including CoPERA, were both early and late purchasers.

In April 2004, the district judge, before certifying any class, granted summary judgment in favor of Bank One with respect to the named plaintiffs, on the ground that early purchasers could not have been harmed by misrepresentations in the prospectus. On the contrary, they had benefited, because by exaggerating the value of Old Banc One stock the misrepresentations had given the early purchasers (those investors in Bank One who paid for their Bank One stock with stock in Old Banc One) more [**4] Bank One stock than they would have gotten had it not been for the misrepresentations.

Having disposed of the early purchasers, the judge in November 2004 certified a class limited to the late purchasers and appointed a member of that class to be the class representative. Villano, one of the original class representatives, invoking *Fed. R. Civ. P. 23(f)*, asked us to review the district judge's refusal to retain him as a representative of the newly defined class, but we declined to entertain the appeal.

CoPERA had an early-purchaser claim that it tells us is worth $ 6 million. (It must be worth plenty, or CoPERA wouldn't have bothered with moving to intervene and appealing from the denial of the motion; it's not a professional class action plaintiff.) But it made no effort to become a party to the lawsuit until it filed the motion to intervene that is at issue in this appeal.

The class action, now limited to the late purchasers-- not only had no class that included early purchasers been certified but the early purchasers' claim had been rejected on the merits by the grant of summary judgment-- proceeded to pretrial discovery and settlement negotiations. In January 2007 the district judge [**5] formally notified the late purchasers of the class [*581] action and in September the parties asked the district judge to approve a $ 28 million settlement. He did so in December, entering a final judgment that terminated the suit. The settlement included a release of the named plaintiffs' claims, and of the late-purchaser claims of the unnamed members of the certified class, but not of the early-purchaser claims of the unnamed members of the shadow class. It was shortly after the entry of the final judgment

that CoPERA moved unsuccessfully to intervene for the purpose of appealing any orders affecting the early purchasers, mainly the partial summary judgment that had been issued in 2004.

As both an early and a late purchaser, and an early purchaser with a substantial stake, CoPERA almost certainly either knew--and if it did not know it was negligent in failing to learn--back in 2004 that summary judgment had been entered dismissing the early-purchaser claims on the merits and therefore with prejudice. All doubts would have been dispelled had the district judge certified an early-purchaser class before granting summary judgment, as he should have done anyway, *Fed. R. Civ. P. 23(c)(1)*; *Wiesmueller v. Kosobucki, 513 F.3d 784, 787 (7th Cir. 2008)*; [**6] *Bertrand ex. rel. Bertrand v. Maram, 495 F.3d 452, 455 (7th Cir. 2007)*; *Bieneman v. City of Chicago, 838 F.2d 962, 964 (7th Cir. 1988)* ("it is . . . difficult to imagine cases in which it is appropriate to defer class certification until after decision on the merits"), and gave no reason for not doing. Had he complied with the rule, there would have been no need for him and for us to determine whether a would-be class member may intervene, after final judgment, to appeal an adverse interlocutory decision that the named plaintiffs had abandoned.

It is *possible* that a large, sophisticated investor with a $ 6 million claim would not know that it was a member of a class in a class action suit, but it is exceedingly unlikely. The statute of limitations for the kind of securities claims involved in this case is only one year, *15 U.S.C. § 77m*, so someone having such a claim would have to ascertain promptly whether he was a member of a class since if he were not he would have to file his own suit post haste to avoid being time-barred. As a sophisticated member of the late-purchaser class, CoPERA would also have known that the original named plaintiffs, at least one of whom had had an early-purchaser [**7] claim, had been dismissed as class representatives.

CoPERA is not some hapless individual who might be a member of a class in a class action suit without knowing it because the class had not been certified and the class members therefore formally notified. Large pension funds have securities lawyers on retainer, and their lawyers would have known about and monitored the progress of the class action whether or not the fund's trustees did. CoPERA is the 23rd largest pension fund in the United States, with $ 38 billion in assets in 2006, www.copera.org/PERA/about/overview.stm, visited June 10, 2008. And obviously CoPERA *had* to have learned about the class action when it received the formal notice in January 2007, yet still it waited almost a year before moving to intervene.

Assuming as realism requires us to do that CoPERA knew or should have known about the class action and the summary judgment order, it could back in 2004 have moved to intervene in the district court. The motion would doubtless have been granted, as there was no longer a party pressing the early purchasers' claims; and having been allowed to intervene CoPERA could have filed a motion asking the district judge to certify [**8] his summary judgment order for an immediate appeal under [*582] *Fed. R. Civ. P. 54(b)*. The motion would almost certainly have been granted, because there were separate parties, separate claims, and no "just reason for delay." If it hadn't been granted, or the motion to intervene had been denied, CoPERA could have filed its own early-purchaser suit; the statute of limitations had not yet run, having been tolled by the filing of this suit. The district judge would have dismissed CoPERA's suit, since he had already decided that the early-purchaser claims had no merit; and that dismissal would have opened the way to an appeal by CoPERA from a final judgment as a matter of right. *28 U.S.C. § 1291.*

CoPERA's delay in seeking relief from the summary judgment probably was strategic. As a member of the late-purchaser class, as well as of the early-purchaser shadow class, it would have wanted to obtain its share of a late-purchaser judgment or settlement before bringing the early purchasers, including itself, back into the case, since their presence might delay or even derail a settlement. In fact, its attempt to intervene and its appeal from the denial of its motion have delayed the execution of the [**9] $ 28 million settlement.

The suit was filed within five months of the accrual of the claims, and its filing, as we mentioned, tolled the statute of limitations for unnamed class members like CoPERA, *American Pipe & Construction Co. v. Utah, 414 U.S. 538, 550-54, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974); Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 352-54, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983);* otherwise, unnamed class members, to protect their rights, would have to intervene or bring separate suits, and the economies of the class action procedure would be lost. But the limitations clock resumed ticking for the early purchasers--with only seven months remaining on the clock--when after the grant of partial summary judgment a class that excluded the early purchasers was certified, since by then it was certain that the suit would not proceed as a class action on behalf of those purchasers. *See id. at 354; In re Rhone-Poulenc Rorer, Inc., 51 F.3d 1293, 1298 (7th Cir. 1995); Bridges v. Department of Maryland State Police, 441 F.3d 197, 210-12 (4th Cir. 2006).* That was in November 2004, so that the statute of limitations applicable to a suit by CoPERA would have expired in June 2005, three years ago.

A motion to intervene in order to appeal the termination [**10] of a class action (in this case, so much of the class action as sought relief for the early purchasers) is not governed by the statute of limitations applicable to the original suit. The motion is timely if filed promptly after the entry of the final judgment in the class action--at least in a case in which, because "the named plaintiffs had attempted to take an interlocutory appeal from the order of denial at the time the order was entered, there was no reason for the respondent to suppose that they would not later take an appeal until she was advised to the contrary after the trial court had entered its final judgment." *United Airlines, Inc. v. McDonald, 432 U.S. 385, 393-94, 97 S. Ct. 2464, 53 L. Ed. 2d 423 (1977).* That is a significant qualification, as recognized in *Jones v. Caddo Parish School Board, 735 F.2d 923, 933-35 (5th Cir. 1984); Garrity v. Gallen, 697 F.2d 452, 458 (1st Cir. 1983);* and *In re Fine Paper Antitrust Litigation, 695 F.2d 494, 501 (3d Cir. 1982);* see also *Associated Builders & Contractors, Inc. v. Herman, 334 U.S. App. D.C. 285, 166 F.3d 1248, 1256-57 (D.C. Cir. 1999)*--and *United Airlines* is the principal case on which CoPERA relies. It was indeed a case much like this but with the critical difference that the class [**11] representative had filed an interlocutory appeal (under *28 U.S.C. § 1292(b)*) from the order [*583] excluding the subclass to which the would-be intervenor (McDonald) belonged, and the court of appeals had exercised its discretion to refuse to accept the appeal. The members of the subclass had every reason to expect that when the class action was concluded in the district court the named plaintiff would exercise her right to appeal as a matter of right (since the judgment in the district court would then be final) from the order of exclusion, provided of course that certifying the class could be expected to result eventually in a favorable settlement or judgment. When the named plaintiff did not appeal, McDonald sought to intervene. Her motion was timely because it would not have made sense for her to go to the bother of bringing her own suit (and clogging up the courts with another suit that they don't need) on the off-chance that the class representative had abandoned McDonald's claim.

In light of other language in *United Airlines* and subsequent cases such as *Champ v. Siegel Trading Co., 55 F.3d 269, 272-73 (7th Cir. 1995); Roe v. Town of Highland, 909 F.2d 1097, 1099 (7th Cir. 1990),* and [**12] *Alaska v. Suburban Propane Gas Corp., 123 F.3d 1317, 1319-20 (9th Cir. 1997),* we can assume that the *general* rule is that the member of a shadow class can delay filing his motion to intervene to appeal the denial of certification of his class until the final judgment is entered. Even so, this case is different from all those cases because CoPERA's goal in seeking to intervene was not to obtain class certification (what good would that do it?) but to obtain the reversal of the summary

judgment order that had wiped out its $ 6 million claim. The fact that the named plaintiff in a class action suit does not try to take an immediate appeal from the denial of class certification does not alert members of the shadow class that he is abandoning them; he may want to wait and see how he does on the merits of the suit before deciding whether to challenge the denial of certification, since if he loses on the merits and does not have a good shot at getting a reversal he will have nothing to gain from seeking to certify a class. (A member of the class may disagree about the likelihood of a reversal on the merits, however, and therefore want to intervene both to challenge the final judgment and [**13] to obtain class certification.) But when the named plaintiff has lost on the merits at an early stage in the litigation and could but does not seek an immediate appeal, the likelihood that he will abandon the class members' claims soars, as he has signaled pessimism about the merits. And since the litigation is continuing, the plaintiff may decide that he doesn't need a reversal of the partial summary judgment to assure an overall positive outcome.

A motion to intervene may be granted only if it is "timely," *Fed. R. Civ. P. 24(a), (b)*, and appellate review of a district court's determination of timeliness is deferential because of the variety of considerations (akin to those that inform decisions whether to toll statutes of limitations) bearing on whether a late filing should be considered timely. E.g., *Ligas ex rel. Foster v. Maram, 478 F.3d 771, 773 (7th Cir. 2007)*; *United States v. British American Tobacco Australia Services, Ltd., 369 U.S. App. D.C. 383, 437 F.3d 1235, 1238 (D.C. Cir. 2006)*. We do not read *United Airlines* as establishing an inflexible rule that a motion to intervene in a class action to appeal an earlier order in that action is always timely provided it is filed shortly after the final [**14] judgment in the class action. A district judge has discretion in

deciding whether a motion to intervene is timely, and he did not abuse that discretion in this case when he refused to allow belated intervention by a sophisticated [*584] litigant with a large stake who had no good excuse for failing to seek intervention (or bringing its own suit) years ago, who violated the spirit albeit not the letter of the statute of limitations, who appears to have acted for strategic reasons, and whose attempt to intervene delayed a settlement, thus further delaying the conclusion of an already protracted litigation growing out of a decade-old merger. The appeal from the denial of the motion to intervene precipitated a cross-appeal by Bank One (No. 08-1170 in this court), as well as an appeal in which the plaintiffs in the class action ask us to direct the district court to order Bank One to pay the $ 28 million settlement. *In re Old Banc One Shareholders Securities Litigation* (No. 08-1376).

As the Third Circuit stated in *In re Fine Paper Antitrust Litigation, supra, 695 F.2d at 501*, "By contrast [with *United Airlines*], appellants here did not seek intervention [to appeal an earlier order] until long after [**15] they should have realized that they were not members of the certified class." *United Airlines* "involved a sudden, complete reversal of position by the [class] representative." *Jones v. Caddo Parish School Board, supra, 735 F.2d at 934*. All the equities line up the other way in this case.

The cross-appeal (No. 08-1170) is contingent on the reversal of the judgment, and is therefore DISMISSED. The judgment is AFFIRMED. The appeal in No. 08-1376 is likely to become moot, now that we have cleared the last obstacle to settlement, so rather than proceeding to adjudicate the appeal we ask the parties to submit a status report to us in thirty days.