IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NICK SALINSKE, for himself and all others similarly situated, ) ) ) | Case No. 08 CV 3017 |
| Plaintiffs, ) ) | |
| v. ) ) | Judge Wayne R. Andersen |
| ) | Magistrate Judge Morton Denlow |
| CALUMET CITY, ILLINOIS, ) ) | |
| Defendant. ) | |

**PLAINTIFFS' RESPONSE
IN OPPOSITION TO MOTION TO DISMISS COMPLAINT**

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312)704-7700
Fax:   (312)558-1195

This Court should deny Calumet City's ("City") motion to dismiss because Nick Salinske, for himself and all others similarly situated ("Plaintiffs"), described their claims in sufficient detail and, at a minimum, their allegations plausibly suggest a right to relief. As explained below, City's motion fails to offer substantive legal arguments to the contrary, fails to apply the proper legal standard, and relies on irrelevancies.

I.  **Fed. R. Civ. P. 12(b)(6) Provides The Proper Legal Standard**

City confuses the controlling legal standard by incorporating arguments set forth in its response to Plaintiffs' motion for a preliminary injunction. Under Rule 12(b)(6), the Court assesses whether the complaint (1) "describe[s] the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and whether (2) "its allegations . . . plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (citation omitted); *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (2007). When performing this inquiry, the Court must "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [plaintiff's] favor." *Tamayo*, 526 F.3d at 1081.

A different standard controls the Court's inquiry into whether to grant a request for preliminary injunction. In addition to establishing irreparable harm and other equitable factors, to obtain a preliminary injunction, a party must show that *it is reasonably likely to succeed on the merits*. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). By incorporating its preliminary-injunction arguments, City thus applies the wrong standard to its motion to dismiss. Rule 12(b)(6)'s "easy-to-clear hurdles," *Tamayo*, 526 F.3d at 1084, not the more stringent preliminary-injunction factors, control City's motion to dismiss. City incorrectly assumes that should this Court decide not to grant a preliminary injunction, it necessarily must dismiss

1

pursuant to 12(b)(6). That is plainly not the law. As explained below, Plaintiffs have easily satisfied the pleading requirements to defeat a Rule 12(b)(6) attack.

II.     **Count I: Plaintiffs State A Claim That The Point Of Sale Inspection Ordinance Unreasonably Restrains The Right Of Property Owners To Transfer Their Property**

Count I is a facial challenge to City's Point of Sale Inspection Ordinance (the "Ordinance") and alleges that the Ordinance unconstitutionally interferes with the right to sell property without due process of law in violation of the due process clause of the Fourteenth Amendment. Count I also alleges that the Ordinance violates the Fourth Amendment because it contains no limitations on the scope of searches required by the Ordinance. More specifically, Plaintiffs allege that the Ordinance states that private property cannot be sold unless City says it can be sold. Under the Ordinance, property cannot be sold unless City issues a transfer stamp, which first requires that a City inspector decide that the property has "passed" an inspection. Compl. ¶ 36. There are no limitations on the scope of searches required by the Ordinance or the type of repair that City can require as a condition of the right to sell property. *Id.* City can stop a sale for any reason whatsoever by ordering cosmetic repairs such as repairing a soap-dish or painting a bathroom ceiling. *Id.* ¶¶ 13, 33. A property owner can "pass" an inspection only if it completes all repairs required by the inspector, even if those repairs are cosmetic. *Id.* ¶ 36. Count I further alleges that the Ordinance unconstitutionally interferes with the right to sell property by imposing unreasonably long delays while inspections, repairs, and re-inspections take place. *Id.* ¶¶ 16, 33, 36. In addition, Count I explains that the Ordinance is unnecessary to achieve City's stated goal of maintaining the quality of housing in the City because City can use other less intrusive means to ensure compliance with maintenance codes, *i.e.*, the Code Enforcement and the Rental Dwelling Inspection Ordinances. *Id.* ¶¶ 21–23, 33, 39.

2

The allegations of Count I, which must be construed in Plaintiffs' favor, state a facial challenge to the Ordinance under the due process clause. The due process clause provides that a state shall not "deprive any person of . . . property, without due process of law." U.S. Const., amend. XIV, § 1. "Property," within the meaning of the Constitution, includes the "right to . . . dispose of it." *United States v. General Motors Corp.*, 323 U.S. 373, 377–78 (1945); *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53–54 (1993) ("right of sale" is one of many protected property rights associated with the ownership of property). Thus, the government may not deprive a person of his right to freely alienate his property without due process. *See* Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code . . . to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines. . . . Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code*") (emphasis added) (attached hereto as Ex. A); *Huggins v. Isenbarger*, 798 F.2d 203, 208 (7th Cir. 1986) ("[A] federal court is not authorized on that account to give the Attorney General's views lesser weight than they would receive if they appeared in a bound volume of legal opinions."); *Nectow v. City of Cambridge*, 277 U.S. 183, 188–89 (1928) (invalidating a zoning ordinance under the Fourteenth Amendment because when a municipal ordinance fails to promote "health, safety, convenience, and general welfare," but instead amounts to a "serious and highly injurious" invasion of property rights, it violates due process); *Petropoulos v. Chicago*, 5 Ill. 2d 270, 274, 125 N.E.2d 522, 525 (Ill. 1955) ("To place a legal restriction on the use of such property to the extent the same is rendered practically unsaleable would be an utter violation of a man's right to alienate property.").

3

Indeed, the Seventh Circuit, in addressing the Ordinance in prior litigation brought by the local realtor association has stated that the Ordinance interferes with the right to sell property:

> The challenged ordinance is quite likely to delay the sale of homes in the area . . . [and] to reduce sales prices. . . . The initial victims of an ordinance impeding the sale of homes are homeowners who would like to sell—or perhaps all homeowners subject to the ordinance; for as we said, any impairment of the salability ("alienability" in an older legal vocabulary) is one of the rights that, along with such other rights as the right to the exclusive enjoyment of the property, make a fee-simple interest more valuable than other interests in property, such as that of a licensee.

*Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742, 745 (7th Cir. 2007). Plaintiffs allege that the interference recognized by the Seventh Circuit crosses the line of unconstitutionality. Those allegations must be construed in favor of Plaintiffs.

Count I also states a claim for a facial challenge that the Ordinance violates the Fourth Amendment because it contains no limitations on the scope of permissible searches. Ordinances that lack restrictions or limitations on the scope of administrative searches violate the Fourth Amendment. *Camara v. Mun. Ct. of City and County of S.F.*, 387 U.S. 523, 532 (1967) (invalidating an inspection ordinance where "the occupant has no way of knowing . . . the lawful limits of the inspector's power to search"); *Black v. Vill. of Park Forest*, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998) (invalidating an unconstitutional inspection ordinance because it failed to "limit[] in any way the scope of inspections").

Well reasoned *Village of Park Forest* is very much on point. There, plaintiffs argued that "the inspection program runs afoul of *Camara* because it does not contain reasonable legislative and administrative standards and thus both fails to cabin the discretion of searching officials and fails to inform residents of the appropriate extent of the searches." *Id.* at 1229. *Village of Park Forest* held:

> Criteria for the frequency and scope of the inspections are an essential component of the legislative and administrative standards of which *Camara* speaks. Without such standards … an official conducting a search has no standards to guide his conduct, and a court reviewing the reasonableness of a search cannot determine if the search was properly limited.

*Id.* The Court continued:

> This court views … *Camara* as meaning, at a minimum, that the authorizing legislation, ordinance or regulation must contain a clear indication of the evils sought to be prevented by the inspection program (presumably supported by some legislative findings indicating that the evils in question exist) and some indication of appropriate parameters for the searches.

*Id.* at 1230. The Court ruled that the ordinance was unconstitutional because the Court "can find nothing that limits in any way the scope of inspections." *Id.*

Plaintiffs allege that the Ordinance, like the ordinance in *Park Forest*, does not contain restrictions on the scope of the mandated searches. Because the Ordinance lacks this "essential component," Plaintiffs have adequately pleaded that the Ordinance violates the Fourth Amendment.

City raises no arguments that even remotely suggest that Plaintiffs have failed to state a cause of action. Instead City argues that the Ordinance is constitutional because it passes "rational basis analysis." Def's Mem. Opp. Prelim. Inj. 7. It supports its argument by arguing that the property interest at stake in Counts I and II is "money—the cost of repairs" and then states "the Ordinance also easily survives rational bases [sic] scrutiny" because "[m]aintaining the quality of the housing stock and preventing [suburban] decline, are quintessential public purposes." *Id.* at 8, 9. City's argument should be rejected for three independent reasons. First, as a threshold matter, City's argument is misplaced in a motion to dismiss. City's alleged motive in enacting the Ordinance is irrelevant to a facial challenge. There is nothing in the Complaint (or anywhere else in the record) that suggests that the Ordinance was enacted to maintain the

5

housing stock or that it actually accomplishes that goal. Moreover, Plaintiffs' Complaint rebuts City's argument because it shows that City can achieve its stated purpose through its Rental Dwelling Inspection and Code Enforcement Ordinances without interfering with the right to sell property, a point City recently conceded in the related *Walker* litigation pending before Judge Shadur. Compl. ¶¶ 21–23. As explained in Plaintiffs' motion for a preliminary injunction, City has suffered no harm even though it has not enforced its Ordinance for over two years.

Second, even if City's argument could properly be raised at the pleading stage, it should be rejected because it mischaracterizes Plaintiffs' claim. The property interest at stake is not "the cost of repairs," but rather "the right to freely transfer property." Moreover, City's argument that the right to sell property is not a fundamental right is plainly wrong. City relies only on *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1000 (7th Cir. 2008), an inapposite case that addresses the right to display a commercial advertisement but not the right to sell property. City ignores controlling authority that shows that the right to sell property is a fundamental property right. *See James Daniel Good*, 510 U.S. at 54 (finding the right of sale a "valuable right[] of ownership"); *Linmark Assocs., Inc. v. Twp. of Willingboro*, 431 U.S. 85, 96 (finding that the right of sale pertains to "one of the most important decisions they have a right to make: where to live and raise their families"). Because the right to sell property is fundamental, City must pass strict scrutiny by showing that the Ordinance is narrowly crafted to achieve a compelling governmental purpose. *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 644 (7th Cir. 2007). City offers no argument that the Ordinance could pass strict scrutiny. Nor could it because it unreasonably (and unnecessarily) impairs the right to sell property without due process even though the City has other less intrusive means available to ensure that property in City is properly maintained.

Third, even if rational-basis review were the proper legal standard, Plaintiffs state a claim because they "plausibly suggest . . . a right to relief." *Tamayo*, 526 F.3d at 1084. Under this test, Plaintiffs must allege that the Ordinance is "arbitrary and unreasonable, bearing no substantial relationship to public health, safety or welfare." *Gen. Auto*, 526 F.3d at 1000–01. The Ordinance cannot survive rational-basis review because delaying home sales for long periods and requiring inconsequential repairs is arbitrary and unreasonable (*e.g.*, homes that are not for sale are permitted to have loose soap dishes but homes for sale are not) and not substantially related to public health and safety (both of which are policed pursuant to the Rental Dwelling Inspection and Code Enforcement Ordinances). Based on the Complaint's allegations, which must be interpreted in favor of Plaintiffs, the Ordinance would fail to withstand any level of scrutiny.

City also argues that this Court should not consider Count I because Plaintiffs "allege no independent constitutional violation and the process is replete with state remedies." Def's Mem. Opp. Prelim. Inj. 7 (citing *Gen. Auto*, 526 F.3d at 1001). However, plaintiffs need establish "either an independent constitutional violation or the inadequacy of state remedies" only as a prerequisite to as-applied challenges, not facial challenges. *E.g.*, *Gen. Auto*, 526 F.3d at 1001; *accord Smithfield Concerned Citizens for Fair Zoning v. Town of Smithfield*, 907 F.2d 239, 242–43 (1st Cir. 1990) (citing cases) ("The district court erred in ruling that a facial substantive due process challenge to a zoning ordinance . . . is not ripe for adjudication until [plaintiff exhausts state remedies]."); *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926); *County Concrete Corp. v. Town of Roxbury*, 442 F.3d 159, 166 (3d Cir. 2006). Even were an independent constitutional violation required in this case (which it is not), Plaintiffs, as explained above, allege that the Ordinance violates the Fourth Amendment and, as set forth next, they allege that the Ordinance also fails to provide procedural due process.

7

City further argues that, because this is a facial challenge, Plaintiffs "bear[] the burden of proving that the law could never be applied in a constitutional manner." Def's Mem. Opp. Prelim. Inj. 3 (citing *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007)). However, Plaintiffs need not "prove" anything at the pleading stage. If anything, Plaintiffs need only *allege* "that the law could never be applied in a constitutional manner," *id.*, which they do. Plaintiffs, as explained above, allege that the Ordinance violates due process whenever it is applied. City rebuts, relying on *Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1193–94 (2008), that "[s]peculation about hypothetical applications of the Ordinance has no place in a facial challenge." Def's Mem. Opp. Prelim. Inj. 6. However, *Washington State Grange* involved an ordinance that "has never been implemented." 128 S.Ct. at 1194. By contrast, the Ordinance has a rich history obviating the need for "sheer speculation" about its application. *Id.* at 1193. Plaintiffs do not "speculate" but rather provide specific facts showing that the Ordinance violates their due process rights.

### III. Count II: Plaintiffs State A Claim That The Ordinance Fails To Provide Pre-Deprivation Procedural Due Process

#### A. Lack of Pre-Deprivation Due Process

The Fourteenth Amendment requires that a government must provide procedural due process, including the right to be heard, *before* it takes a property right. *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 11 (1978) ("[S]ome kind of hearing is required at some time *before* a person is finally deprived of his property interests.") (emphasis added). The Supreme Court has repeatedly applied this fundamental due process rule to invalidate ordinances that deprive persons of the right to sell property without first providing adequate due process. For example, *Connecticut v. Doehr*, 501 U.S. 1 (1991), held unconstitutional a statute that permitted

8

prejudgment attachment of real estate without a hearing. The Supreme Court emphasized the significance of an owner's right to freely sell his home without governmental interference:

> [T]he property interests that attachment affects are significant. For a property owner . . . attachment ordinarily clouds title; impairs the ability to sell or otherwise alienate the property . . . .

*Id.* at 11. The Supreme Court also held that the taking of the right to sell property—even if only temporary—requires pre-deprivation due process protection:

> [T]he Court has never held that only such extreme deprivations trigger due process concern. To the contrary, our cases show that even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection.

*Id.* at 12 (citation omitted). Similarly, the Court stated:

> The Fourteenth Amendment draws no bright lines around three-day, 10-day, or 50-day deprivations of property. Any significant taking of property by the State is within the purview of the Due Process Clause.

*Id.* at 15 (quoting *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972)). The Court also held that *post-deprivation* hearings are insufficient to comply with due process because a post-deprivation hearing "would not cure the temporary deprivation that an earlier hearing might have prevented." *Id.* at 15.

Similarly, *James Daniel Good* held that, as respects the deprivation of a home, the requirement for a predeprivation hearing is critically important because, without a hearing, property owners are deprived of "valuable rights of ownership, including the right of sale." 510 U.S. at 53–54. In *James Daniel Good*, the Court held that a hearing was required before a home could be seized pursuant to 21 U.S.C. § 881(a)(7) on the ground that the home was used to facilitate a federal drug offense. Relevant to this case, the Supreme Court observed:

> [A property owner's] right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance. . . . The seizure deprived [the property owner] of valuable rights of ownership, including the right of sale. . . . All that the seizure left him was

> the right to bring a claim for the return of title at some unscheduled future hearing. . . .

*James Daniel Good*, 510 U.S. at 53–54, 62.

Count II alleges facts which, at a minimum, plausibly suggest that the Ordinance fails to comply with the Supreme Court's edict that a hearing must be provided *before* a property right—here, the right to sell property—can be taken. As respects point of sale inspections, the Ordinance results in the immediate deprivation of a homeowner's right to sell her property until City decides to permit it. Compl. ¶ 42. Upon issuance of an inspector's repair order, homeowners are prohibited from selling property until repairs are made. *Id.* ¶¶ 42–43. The Ordinance provides homeowners no due process *prior to* this deprivation of the right to sell property. In effect, City has enjoined the transfer of residential property—without a complaint, evidence, a hearing or any procedural or substantive rules—until it decides to consent. *Id.* ¶ 42.

As respects deconversions, the Ordinance does not provide pre-deprivation due process protection to ensure that City does not wrongfully deprive property owners of the "valuable property right" to sell legal nonconforming property. *Village of Oak Park v. Gordon*, 32 Ill. 2d 295, 298, 205 N.E.2d 464, 466 (Ill. 1965). For example, Count II alleges that the Ordinance does not explain how City will determine whether property is "illegal." Compl. ¶ 44. Further, property owners are not granted a pre-deprivation hearing where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion. Once City declares property to be illegally converted, it cannot be sold without deconversion.

City's arguments miss the mark by focusing exclusively on *post*-deprivation due process. The Supreme Court has held that it does not matter if an ordinance provides some *post*-

*deprivation* due process, such as the right to appeal, because the Constitution requires *pre-deprivation* due process. *Doehr*, 501 U.S. at 15.

### B. Void for Vagueness

The Fourteenth Amendment prohibits ordinances that "are so vague that 'men of common intelligence must necessarily guess at its meaning.'" *Penny Saver Publ'ns, Inc. v. Vill. of Hazel Crest*, 905 F.2d 150, 155 (7th Cir. 1990) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) (invalidating ordinance on vagueness grounds)). "All are entitled to be informed as to what the statute commands or forbids." *Penny Saver*, 905 F.2d at 155.

Count II alleges that the Ordinance is unconstitutionally vague because (1) it requires that property be in "good repair" before it can be sold but fails to notify property owners of what conditions constitute "good repair" (Compl. ¶ 43); and (2) City inspectors have historically relied on the "good repair" provisions of the Ordinance to order repairs unrelated to conditions that affect health, safety, or the public good, *e.g.*, repairs to soap dishes, painting a bathroom ceiling. *Id.* ¶¶ 13, 41. City argues that "[p]eople with common intelligence can understand what it means to keep a house in good repair" but fails to cite any precedent indicating that "in good repair" constitutes the "little cosmetic repairs" City admits are central to its Ordinance. For example, City cites no cases that show that citizens would know that they were to have working soap dishes before they can sell their home.[1] In sum, the allegations of the Complaint, which must be construed in Plaintiffs' favor, state a claim that the Ordinance is void for vagueness.

---

[1] The cases cited by City are inapposite. *See* Plaintiffs' Reply Brief in Support of Preliminary Injunction Motion at pp. 12-13.

IV.  **Count III: Plaintiffs State A Claim That City Unconstitutionally Refuses To Issue Rebuild Letters And/Or Confirm That Property Is Legal Nonconforming**

As set forth in Part II above, the Fourteenth Amendment prohibits a state from depriving a person of his right to alienate his property without due process of law. *See, e.g., Nectow*, 277 U.S. at 188–89. The right to freely alienate property includes the right to sell legal nonconforming property as such. *Gordon*, 32 Ill. 2d at 298, 205 N.E.2d at 466 (recognizing the right to sell legal nonconforming property). As with Count I, the allegations of Count III state a claim based on a violation of constitutional protections against unreasonable restrictions on the right to sell legal nonconforming property. City's response relies on the erroneous and unfounded premise that the Complaint alleges a constitutional duty to provide letters of certification to lenders. The Complaint makes no such allegation. Nor does the Complaint ask this Court to inappropriately usurp any legislative function, as City alleges.

Plaintiffs allege that City's refusal to issue rebuild letters and/or otherwise confirm that property is legal nonconforming unconstitutionally restrains the right to sell legal nonconforming property. The Complaint alleges that the Zoning Ordinance provides that if legal nonconforming property is damaged by less than 50%, then it can be rebuilt as legal nonconforming even if current zoning regulations would otherwise restrict what could be built. Compl. ¶ 49. Further, the Complaint alleges that, City arbitrarily and uniformly (through pre-printed forms) refuses to issue rebuild letters (that state legal nonconforming property can be built as such if damaged by less than 50%) that buyers' lenders uniformly require before they will lend money for the purchase of legal nonconforming property. *Id.* The complaint alleges that under the current scheme, owners of legal nonconforming property are thus forever barred from selling their property unless they "deconvert" it to comply with current zoning restrictions. *Id.*

These allegations, which must be accepted as true and construed in Plaintiffs' favor, state a claim that City's refusal to issue rebuild letters or confirm that property is legal nonconforming violates the constitutionally protected right to sell legal nonconforming property.

## V. Conclusion

For these reasons, the Court should deny City's motion to dismiss.

Dated: August 29, 2008

Respectfully Submitted,

NICK SALINSKE, for himself
and all others similarly situated

/s/ Patrick T. Nash
One of Their Attorneys

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 S. Wacker Drive
Chicago, IL 60606
Phone: (312)704-7700
Fax:　(312)558-1195

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 29th day of August, 2008, I served the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS COMPLAINT** upon the following by Electronic Mail Transmission via the Court's ECF System:

>Mark H. Sterk
>Odelson & Sterk, Ltd.
>3318 West 95th Street
>Evergreen Park, Illinois 60805
>
>John B. Murphey
>ROSENTHAL, MURPHEY & COBLENTZ
>30 North LaSalle Street
>Suite 1624
>Chicago, IL 60602

>s/ Patrick T. Nash
>Patrick T. Nash

# EXHIBIT A

Westlaw.

1994 WL 601863 (Ill.A.G.)

Page 1

1994 WL 601863 (Ill.A.G.)

Office of the Attorney General
State of Illinois

File No. 94-024

October 25, 1994

MUNICIPALITIES:

Requirement that Title Insurance Reports Reflect Payment of Document Inspection Fee

Mr. Frank C. Casillas
Director

Dear Mr. Casillas

I have your letter wherein you inquire regarding the validity of ordinances adopted by non-home-rule municipalities which require the inspection of documents and the payment of fees prior to the transfer of real property lying within the municipality. Of particular concern to the Department, which regulates title insurance companies (215 ILCS 155/1 et seq. (West 1992)), is a provision in the ordinances which mandates that the requirement of inspection and payment of fees be reflected in title insurance reports. For the reasons hereinafter stated, it is my opinion that the ordinances in question are not valid.

In February, 1994, the village of Westchester adopted ordinance no. 94-1387, which purports to require that any document evidencing the transfer of ownership of real estate located in the village must be submitted to the village for inspection and review. Upon payment of a fee of $25, the village will affix a stamp to the document if the subject property is found to be in compliance with all village codes in force at the time the document is submitted. The ordinance further provides that the requirement be reflected on all real estate title insurance reports conducted precedent to the transfer of ownership, to give public notice of the mandatory inspection. In April, 1994, the village of River Grove adopted a similar ordinance. Both Westchester and River Grove are non-home-rule municipalities.

Non-home-rule municipalities have only those powers which are expressly granted by statute and the constitution, those powers which are incident to those which have been expressly granted and those powers which are indispensable to the accomplishment of the declared objects and purposes of the municipal corporation. (Pesticide Pub. Pol. v. Village of Wauconda (1987), 117 Ill.2d 107, 111-112.) Consequently, as a threshold issue, it must be determined whether Westchester and River Grove have the power to adopt the ordinances in question. Only if this

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

question is answered affirmatively will it be necessary to consider whether the villages' power is preempted by State law relating to title insurers.

Neither village has cited any authority for the adoption of these ordinances. The only purpose suggested within the body of each ordinance, apart from the collection of a $25 fee, is to determine whether the property is in compliance with village codes (Village of Westchester Ordinance No. 94-1387, adopted February 8, 1994, at p. 1) or to determine whether any "outstanding obligation is due to the [v]illage with respect to the property" (Village of River Grove Ordinance No. 1994-05, adopted April 21, 1994, at p. 1). Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 et seq. (West 1992)), to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines. (E.g., 65 ILCS 5/11-31.1-1 et seq.; 5/11-37-1 et seq.; 5/11-38-4 (West 1992).) Further, municipalities may impose various fees for other services relating to real property. In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such codes.

Although these ordinances do not expressly so state, I assume that the villages will refuse to affix the "document review" stamp to any deed for property which is not in compliance with the village codes (the village of Westchester) or concerning which unpaid obligations may be deemed to be due (the village of River Grove). Thus, even if the deeds are returned to the persons submitting them, if they proceed with the transactions they will violate the application ordinance and be subjected to its penalties. This attempt to make alienability subject to municipal regulation clearly exceeds the villages' powers.

Further, non-home-rule municipalities have no authority to impose a tax on the transfer of real property. The authority to impose such a tax is expressly reserved to home rule municipalities (65 ILCS 5/8-11-6a (West 1992)). While the fee imposed by the River Grove and Westchester ordinances is denominated a document inspection fee, rather than a transfer tax, there can be little doubt that it operates as the letter. As previously discussed, the villages' authority to enforce their health and safety codes is entirely unrelated to the transfer of property. Moreover, a document inspection would provide no basis upon which to determine whether the property was in compliance with codes, and the ordinances do not even suggest that the affixing of the required stamp will depend upon an inspection of the property itself. In my opinion, the inspection fee is, in both operation and effect, a prohibited transfer tax.

Because the non-home-rule villages in question have no authority to enact or enforce ordinances restricting the transfer of real property or to impose a fee or tax thereon, it is my opinion that the ordinances are void and unenforceable. Because of this conclusion, it is not necessary to determine whether such ordinances, with respect to their effect on title insurers, are preempted or superseded by State laws requiring the licensure of title insurers.

Respectfully yours,
Roland W. Burris
Attorney General

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

1994 WL 601863 (Ill.A.G.)                                                      Page 3

1994 WL 601863 (Ill.A.G.)
END OF DOCUMENT

© 2008 Thomson Reuters/West. No Claim to Orig. US Gov. Works.