IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICK SALINSKE, for himself and all others )
similarly situated, )
  )  Case No. 08-cv-03017
               *Plaintiffs*, )
  )  Judge Wayne R. Andersen
    v. )  Magistrate Judge Morton Denlow
  )
CALUMET CITY, ILLINOIS, )
  )
  )
               *Defendant*. )
  )
  )

## ALONZO SMILEY'S MOTION TO SUBSTITUTE PROPOSED CLASS REPRESENTATIVE

Pursuant to Fed. R. Civ. P. 23, Alonzo Smiley ("Smiley"), by his attorneys Grippo & Elden LLC, hereby moves for an order substituting him for Plaintiff Nick Salinske ("Salinske") as the proposed class representative in the above-captioned matter. If this motion is granted, no new briefing on class certification, Calumet City's ("City") motion to dismiss or the motion for preliminary injunction would be required. All that would be required would be a change in the caption. In support of his motion, Smiley states as follows:

## IT IS NECESSARY TO SUBSTITUTE SMILEY FOR SALINSKE BECAUSE SALINSKE IS IN THE PROCESS OF LOSING HIS PROPERTY TO FORECLOSURE

1.      In this action, Salinske – the original proposed class representative – challenges the constitutionality of City's Point of Sale Inspection Ordinance ("Ordinance"). Specifically, Salinske seeks, among other things, a declaration that City's Ordinance is unconstitutional. The Ordinance provides that City property owners are prohibited from selling their property unless it "passes" an inspection during which City can order property owners to

make cosmetic repairs to their property. Salinske contends that the Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to freely sell their property without due process of law. Particularly relevant to this motion, Salinske also contends that the Ordinance is unconstitutional because it contains no due process protection against City requiring that legal nonconforming property – as compared to illegally converted property – be "deconverted" (*i.e.*, reduced to fewer units) before it can be sold. Salinske also seeks a declaration that City's uniform refusal to issue re-build letters (*i.e.*, stating that legal nonconforming property can be rebuilt as such in accordance with City's Zoning Ordinance) in connection with the sale of legal nonconforming property is unconstitutional. He contends that City's refusal to issue re-build letters and/or other confirmation that property is legal nonconforming is unconstitutional because City effectively prohibits owners of legal nonconforming property from selling such property as nonconforming in violation of the protections in the U.S. Constitution and 65 ILCS 5/11-13-1.

2.    Salinske owns legal nonconforming property in City located at 527 155th Street. Compl. at ¶ 7. Unfortunately, Salinske is in the process of losing his property in foreclosure proceedings due to City's interference with the potential sale of his property. In July 2008, Salinske found a potential buyer for his property. Ex. A, Hanrahan Declaration at ¶ 3. After Salinske's buyer made his offer, Salinske's real estate broker went to City's Department of Inspectional Services to determine what needed to be done to complete the sale of the property. *Id.* at ¶ 4. City acknowledged that the tax records for Salinske's property confirmed that the property has been taxed as a two flat since Salinske acquired it in 1989, but, nevertheless, without providing any due process whatsoever, told Salinske's broker that Salinske's property is "illegal" nonconforming and must be deconverted to a single family home before it can be sold.

548881.2

*Id.* City even went so far as claiming that if the building on Salinske's property was destroyed, *nothing* could be re-built on the property. *Id.* After being informed of City's position and contentions, the potential buyer informed Salinske that he would not purchase the property because he was only interested in the property if it could be purchased (and subsequently leased) as a two flat. *Id.* at ¶ 5. To date, Salinske has been unable to locate another buyer or sell his property. *Id.*

   3. The lender on Salinske's property has initiated foreclosure proceedings and it is extremely likely that Salinske will lose his property in the very near future. In light of these events, Salinske no longer wishes to act a class representative and consents to the granting of this motion.

   4. Mr. Smiley, however, who also owns legal nonconforming property in City, desires to take up the fight on behalf of City property owners and moves to substitute himself for Salinske as the proposed class representative. Smiley also seeks leave to file a first amended verified class action complaint for temporary restraining order, preliminary injunction, permanent injunction, declaratory, and other relief (attached hereto as Ex. B). Smiley's complaint is captioned as a first amended verified class action complaint because it seeks relief identical to the relief sought in Salinske's verified complaint. Accordingly, the result of granting the relief requested herein and the filing of Smiley's first amended verified class action complaint is nothing more than a change in the caption of this action whereby Smiley, as opposed to Salinske, is identified as the plaintiff. Because Smiley's claims and legal theories are the same as Salinske's, no additional briefing (other than that permitted by the Court's original briefing schedule) is required or necessary on the pending motion for class certification, City's motion to dismiss or the motion for preliminary injunction.

<div align="center">3</div>

## SUBSTITUTION OF SMILEY FOR SALINSKE IS PROPER

5.      Substitution of unnamed class members for named plaintiffs who fall out
of the case because of settlement or other reasons is a common feature of class action litigation
in the federal courts. *Phillips v. DaimlerChrysler Corp.*, 435 F.3d 785, 787 (7th Cir. 2006). The
fact that a class has of yet not been certified is of no consequence. "Strictly speaking, if no
motion to certify has been filed (perhaps if it has been filed but not acted on), the case is not yet a
class action and so a dismissal of the named plaintiffs' claims should end the case. . . . But the
courts, both federal and Illinois, are not so strict. Unless jurisdiction never attached, or the
attempt to substitute comes long after the claims of the named plaintiffs were dismissed,
substitution for the named plaintiffs is allowed." *Id.* Put differently, the courts "disregard the
jurisdictional void that is created when the named plaintiffs' claims are dismissed and, shortly
afterwards, surrogates step forward to replace the named plaintiffs." *Id.* Here, there is no
dispute that jurisdiction has attached. Moreover, Smiley's substitution request is timely as
Salinske's foreclosure proceedings have not been completed and he has not been dismissed.
Thus, even though the Court has not yet ruled on Salinske's amended motion for class
certification, Smiley can be substituted for Salinske as the proposed class representative without
the need for Smiley filing a new action.

6.      As explained in full detail in Salinske's amended motion for class
certification and accompanying memorandum, and Salinske's corresponding reply
memorandum, all of the requirements of Rule 23(a) and (b)(2) of the Federal Rules of Civil
Procedure are met. This is the case regardless of whether Salinske or Smiley is the class
representative. As was the case with Salinske, Smiley's claims are typical of those of the class

4

members. All residential property is subject to the Ordinance. Smiley's and the class members' claims under Counts I and II arise from the face of the Ordinance. In addition, Smiley owns legal nonconforming property subject to the Zoning Code's provisions at issue and City's conduct associated therewith and his claims are thus typical of other owners of legal nonconforming property under Count III.

WHEREFORE, Smiley respectfully requests that this Court enter an order substituting Smiley for Salinske as the proposed class representative. Additionally, Smiley respectfully requests that the Court issue an order determining that this action may proceed as a class action consisting of a class of all owners of residential property in City, appointing Smiley as class representative, and appointing Grippo & Elden LLC as class counsel. Finally, Smiley asks the Court to grant leave to file amended complaint attached hereto as Exhibit B.

September 2, 2008

Respectfully submitted,

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin
Mark A. Semisch
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, Illinois 60606
(312) 704-7700

**ALONZO SMILEY**

By:    /s/ Patrick T. Nash
       One of his Attorneys

## CERTIFICATE OF SERVICE

I, Patrick T. Nash, certify that on this 2nd day of September, 2008, I served the

foregoing **ALONZO SMILEY'S MOTION TO SUBSTITUTE PROPOSED CLASS**

**REPRESENTATIVE** to the following by Electronic Mail Transmission via the ECF System

upon:

> Mark H. Sterk
> ODELSON & STERK, LTD.
> 3318 West 95th Street
> Evergreen Park, Illinois 60805
>
> John B. Murphey
> ROSENTHAL, MURPHEY & COBLENTZ
> 30 North LaSalle Street
> Suite 1624
> Chicago, IL 60602

> /s/ Patrick T. Nash
> Patrick T. Nash

548881.2

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICK SALINSKE, for himself and all others similarly situated, | ) ) ) | |
| | ) | Case No. 08-cv-03017 |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Wayne R. Anderson |
| | ) | Magistrate Judge Morton Denlow |
| CALUMET CITY, ILLINOIS, | ) ) | |
| | ) ) | |
| Defendant. | ) | |

## DECLARATION OF DONNA HANRAHAN

I, DONNA HANRAHAN, declare as follows:

1.      The following facts are personally known to me, and if called to testify, I could and would competently testify thereto.

2.      I am a realtor licensed in Illinois and Indiana.  Pursuant to a written exclusive agreement, I acted as realtor for the property located at 527 155th Street, Calumet City, Illinois, which is owned by Plaintiff Nick Salinske ("Salinske").

3.      In July 2008, Salinske found a potential buyer for his property, which is listed for $130,000.  The potential buyer stated that he was willing to purchase the property for between $115,000 and $120,000, subject to his confirmation that there were no major problems with the property.  The price range orally offered to Salinske was acceptable to him.

4.      After Salinske's buyer made his oral offer, I went to Defendant Calumet City, Illinois' ("City") Department of Inspectional Services to determine what needed to be done to complete the sale of the property.  During my meeting with City, City confirmed that the tax records for Salinske's property confirmed that the property has been taxed as a two flat since

542905.1

Salinske acquired it. Nonetheless, City told me that Salinske's property is "illegal" nonconforming and must be deconverted to a single family home before it can be sold. City also claimed that if the building on Salinske's property was destroyed, *nothing* could be re-built on the property.

5.      After being informed on City's position and contentions, the potential buyer's agent informed me that he would not purchase the property because he was only interested in the property if it could be purchased (and subsequently leased) as a two flat. To date, Salinske has been unable to locate another buyer or sell his property. Salinske has informed me that he will likely lose his property to foreclosure as a result of City's interference with the sale of his property.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 28, 2008

*Donna Hanrahan*
Donna Hanrahan

(THU)AUG 28 2008 14:28/ST. 14:25/No. 7500000511 P 9          FROM McColly Real Estate Crete

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALONZO SMILEY, for himself and all others similarly situated, | ) ) ) | Case No. 08-cv-03017 |
| *Plaintiffs,* | ) ) | |
| v. | ) ) | Judge Wayne R. Anderson Magistrate Judge Morton Denlow |
| CALUMET CITY, ILLINOIS, | ) ) ) | |
| *Defendant.* | ) ) ) | |

**FIRST AMENDED VERIFIED CLASS ACTION COMPLAINT FOR
TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,
PERMANENT INJUNCTION, DECLARATORY AND OTHER RELIEF**

Plaintiff Alonzo Smiley ("Smiley") on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by his attorneys, Grippo & Elden LLC, for his complaint against defendant, Calumet City, Illinois ("City") states as follows:

**NATURE OF THE ACTION**

1.    Plaintiffs bring this action for injunctive, declaratory and other relief, pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§2201 and 2202 to redress the deprivation, under color of law, of rights guaranteed to Plaintiffs, by the United States Constitution and under Illinois law.  Plaintiffs seek declarations that certain provisions of Chapter 14 of the Municipal Code of Calumet City, Illinois, (the "Code"), codified through Ordinance No. 08-06, enacted January 31, 2008, are facially unconstitutional.  Moreover, Plaintiffs seek a declaration that City's conduct in refusing to issue "re-build" letters and/or confirm that property is legal nonconforming in connection with the sale of legal nonconforming property constitutes an unconstitutional and unreasonable restraint on the right to freely transfer property.

546590.1

2.      More particularly, Plaintiffs seek a declaration that Section 14-1 of Article
I of Chapter 14 of the Code (the "Point of Sale Inspection Ordinance," attached as Ex. A), is
unconstitutional because it (a) unreasonably and unconstitutionally restrains property owners'
right to sell their property without due process of law, and (b) fails to provide procedural due
process.  In addition, Plaintiffs seek a declaration that City's policy of refusing to issue re-build
letters and/or to confirm that property is legal nonconforming in connection with the sale of legal
nonconforming property effectively forces owners of legal nonconforming property to conform
their property to the current zoning classification if they want to sell it.  Such conduct
unreasonably interferes with the right to freely sell property and violates state law prohibiting the
immediate elimination of legal nonconforming property.

3.      Plaintiffs request immediate declaratory and injunctive relief by which the
Court, among other things, would preliminarily and permanently enjoin enforcement of the Point
of Sale Inspection Ordinance and declare the Point of Sale Inspection Ordinance
unconstitutional.

4.      Plaintiffs challenge the constitutionality of the Point of Sale Inspection
Ordinance on its face because it takes City owners' property rights, without due process.
Plaintiffs have standing to bring this suit as property owners in City.  A judgment from this Court
will redress the harm being suffered and directly advance and protect the interests of Plaintiffs.

## JURISDICTION AND VENUE

5.      Plaintiffs' claims arise under the United States Constitution.  This Court
has original jurisdiction pursuant to 28 U.S.C. § 1331.

6.      City is subject to personal jurisdiction in this district and venue is proper
under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in this district.

2

546590.1

## PARTIES

7.      Smiley owns legal nonconforming property in City located at 508 Jeffrey. When Smiley bought his property, it contained three units and was understood to be legal nonconforming property. After Smiley purchased the property, City required him to deconvert the property to two units as a precondition to allowing him to rent any of the units. Smiley's property now contains two dwelling units but he desires to sell it with three units (*i.e.*, in the same legal nonconforming condition in which he purchased the property). The property is subject to the Point of Sale Inspection Ordinance. By virtue of its Point of Sale Inspection Ordinance, City has taken and interfered and continues to take and interfere with Smiley's right to alienate his property, without due process of law.

8.      Defendant Calumet City, Illinois is a unit of local government incorporated under the laws of Illinois. City is located in Cook County, Illinois.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I.      Summary Of Point Of Sale Inspection Ordinance.

9.      The Point of Sale Inspection Ordinance (Ex. A) and other provisions of the Code provide that property can only be sold if City issues transfer stamps. Code §§ 82-325, 82-328. In all but one instance,[1] the only way for sellers to obtain transfer stamps is to first obtain a final or conditional "Certificate of Compliance" from City and to pay any outstanding water bill (even if disputed). Code §§ 14-1(h); 14-1(i); § 82-327(b). City will issue a Certificate of Compliance only if it decides that property "passed" a point of sale inspection. To "pass" an inspection and obtain a Certificate of Compliance, a property owner must make all repairs (using

---

[1]      The only situation in which a Certificate of Compliance is not required to obtain transfer stamps is when an owner refuses his consent to an inspection and City fails to obtain a warrant to conduct the search. Code §14-1(f).

546590.1

a licensed and bonded contractor unless the property owner makes the repairs himself) ordered by City after the inspection. *Id.; see also id.* at § 14-1(k).

   10. The Point of Sale Inspection Ordinance results in the immediate deprivation of a home owner's right to sell her property until City decides to permit it. Upon issuance of an inspector's repair order, the home owner is prohibited from selling her property until repairs are made. The Point of Sale Inspection Ordinance provides the home owner no due process prior to this deprivation of her right to sell her property.

   11. In addition, the Point of Sale Inspection Ordinance requires citizens to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i). Although the Point of Sale Inspection Ordinance states that an owner can dispute the water bill in a "predeprivation hearing," the ordinance does not explain the due process protections, if any, of such hearing and requires the owner to pay the bill "under protest" while he challenges it. Thus, if a property owner wants to sell his property, he must capitulate and pay (albeit "under protest") what City claims it is owed. *Id.* Otherwise, he will be unable to obtain the necessary transfer stamp. *Id.*

   12. The Point of Sale Inspection Ordinance does not restrict, in any way, the scope of searches. Rather, City inspectors are permitted to search for *any* violation of City's "Property Maintenance Code" (regardless of whether the violation relates to health or safety issues). Moreover, the Point of Sale Inspection Ordinance does not contain any limitations on the duration or location of inspections (*e.g.*, there is no limitation on inspectors searching bedrooms, closets, desks or other areas where private or personal property may be stored). Rather than placing limitations on the scope of searches (*e.g.,* limiting searches to matters that concern health and safety), the Point of Sale Inspection Ordinance states that "[a]ll structures shall be incompliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, 'Property

4

Maintenance Code.'" Ex. A at §14-1(c)(1).  Sections 14-691 and 14-692, in turn, expressly

adopt the "2006 International Property Maintenance Code" (the "International Code") with

minor modifications.  Ex. B.  The International Code is not limited to conditions that affect

health and safety.  *Id.*  Nor does the International Code restrict the type of things City can order

to be "repaired" before it will issue transfer stamps.  Rather, the International Code contains

provisions requiring maintaining property in "good repair."  *See id.*, at §§ 304, 305.  Under the

International Code, City inspectors have unfettered discretion to search for as long as, and for

whatever, and wherever they want.  Property owners have no notice of the conditions that fail to

constitute "good repair" before a search.  City inspectors have unfettered discretion to order

"repairs" that must then be made by a licensed and bonded contractor or the homeowner himself.

      13.    Under a similar prior ordinance (which was amended during the pendancy

of related litigation filed by the Realtor® Association of West/South Suburban Chicagoland)

City repeatedly stopped sales of property (by refusing to issue Certificates of Compliance) until

property owners made "cosmetic repairs" unrelated to health, safety, and public welfare such as:

      a.    Painting windows, tightening a loose soap dish, replacing a "decorative
cover" on a vanity;

      b.    Replacing floor tiles, tightening a loose soap dish, painting a bedroom
wall, putting a "globe" on a light, painting a bathroom ceiling;

      c.    Repairing closet doors, painting door trims, repairing kitchen cabinets; and

      d.    "Patch – Paint – Clean – Decorate."

      14.    City can -- as it has in the past – improperly rely on the "good repair"

provisions of the International Code to order any kind of cosmetic repair it wants as a condition

to the right to sell private property.  A seller of property cannot stop an overly intrusive search or

refuse to make cosmetic repairs because the seller needs a "Certificate of Compliance" to obtain

a "transfer stamp" to transfer the property. The seller/owner is completely at the mercy of the

inspector's unfettered discretion in conducting the search and ordering repairs. Under the Point

of Sale Inspection Ordinance, property owners must capitulate to an inspector's demands, even if

the repair work is unnecessary from a public health or safety standpoint, if they want to sell their

property.

        15.     The Point of Sale Inspection Ordinance permits City to order the

"deconversion" of "illegally converted" property. Ex. A at §§ 14-1(c)(2), 14-1(g). The Point of

Sale Inspection Ordinance contains no due process protection against City improperly ordering

the deconversion of *legal nonconforming* property as a precondition of the right to sell the

property. There is no pre-deprivation hearing at which property owners are permitted to be

represented by counsel and to submit evidence that the property is legal. *Id.* Thus, City may

prevent the sales of *legal nonconforming* property simply by declaring it illegal. *Id.* City

declared Smiley's property to be an illegal conversion and required that it be deconverted even

though Smiley purchased the building as a legal nonconforming three-flat.

        16.     The Point of Sale Inspection Ordinance also unreasonably restrains the

free alienability of property by allowing City unreasonably long time periods for City to conduct

its searches, order repairs, and make re-inspections. *See id.* A at § 14-1(d) (allowing City 28

days to conduct inspection after receipt of notice of transfer), § 14-1(g)(1) (granting City three

additional days after inspection to issue inspection report), § 14-1(h) (granting City three

additional days to complete re-inspections after repairs are made). The Ordinance imposes *no*

limit on the number of reinspections City may require because "new repairs" may be ordered

during reinspection, and *no* time limit on when City must issue a Certificate of Compliance after

reinspection. *Id.* at § 14-1(h) (no limitation on when City must issue Certificate of Compliance after all repairs are made). An owner is prohibited from having repairs done by a family member or unlicensed person. Thus, where repairs are ordered under the Point of Sale Inspection Ordinance, City can, at a minimum, prevent sales of private property for at least fifty days (assuming conservatively, that (i) it takes ten days for a home owner to find a licensed and bonded contractor who can make all repairs, and for such contractor to make repairs, and (ii) City issues a Certificate of Compliance within ten days after reinspection). During such time, sales can and will be lost.

II.     **Zoning Code And City's Policy Of Refusing To Issue Re-Build Letters And/Or Confirmation That Property Is Legal Nonconforming.**

17.     The Zoning Code provides that legal nonconforming property cannot be rebuilt as-such if it is damaged by more than 50%. Relevant excerpts at Ex. C, Zoning Code at §5.5. This provision of the Zoning Code thus also means that, if legal nonconforming property is damaged by less than 50%, it can be rebuilt or repaired as legal nonconforming property, even if current zoning restrictions would otherwise limit what could be built on the land.

18.     When an owner of legal nonconforming property finds a buyer for his property, the buyer's lender almost uniformly asks City to issue a letter that states that, if the legal nonconforming property is damaged, it can be re-built as legal nonconforming property consistent with the Zoning Code. City uniformly refuses to issue such "re-build" letters. Indeed, City uses a pre-printed form as part of its procedures that explicitly states that City will not issue re-build letters, despite the Zoning Code's provisions permitting rebuilding of legal nonconforming property.

19.     In addition, buyers and/or their lenders often ask City to confirm that property is legal nonconforming (*e.g.*, by confirming that all existing units in a four-unit building

7

GRIPPO
&ELDEN

be leased even though the property is located in an area zoned for fewer than four units)

before agreeing to either buy property or loan money to prospective purchasers for the purchase

of property in City.  City refuses to provide such information requested by buyers and/or their

lenders.

20.     As a result of City's conduct, notwithstanding that the Point of Sale

Inspection Ordinance states that only "illegally" converted property must be deconverted, City,

in reality, forever prohibits the sale of legal nonconforming property because lenders will not

loan money to buyers in the absence of a re-build letter and/or confirmation that property is, in

fact, legal nonconforming.  This means that, if an owner of legal nonconforming property wants

to sell his property, he is forced to modify or deconvert it, without due process or compensation

by City.

**III.     Other Relevant Codes.**

21.     City has also enacted a Code Enforcement Ordinance (Ex. D), to prosecute

property owners who fail to maintain their property in compliance with City's building and

maintenance codes.  *Id.*  City can also remedy health and safety related code violations through

its Rental Dwelling Inspection Ordinance (Ex. E.), which permits City to annually inspect multi-

unit dwellings.  Unlike the Point of Sale Inspection Ordinance, neither the Code Enforcement

Ordinance nor the Rental Dwelling Inspection Ordinance is tied to the transfer of property.

Rather, City may invoke the provisions (including as respects illegal conversions) whenever it

believes that there is a code violation that poses a risk to public health and safety.

22.     Unlike the Point of Sale Inspection Ordinance, the Code Enforcement

Ordinance contains *pre-deprivation* due process protections.  For example, under the Code

Enforcement Ordinance, before a property owner can be fined, a property owner is entitled to an

administrative hearing where he is permitted to be represented by counsel, to present testimony

8

546590.1

and other evidence to challenge City's complaint, and to subpoena and cross-examine City officials regarding the alleged code violation. Ex. D at §§ 2-943, 2-946. Further, a property owner may petition for rehearing of an adverse decision before the enforcement administrator, *Id.* at § 2-949, and appeal any final decision to a Cook County Court. *Id.* at § 2-950. Finally, if a property owner is found guilty of a code violation, he is fined, *id.* at § 2-952, not deprived of his Constitutional right to sell and transfer his property. None of these pre-deprivation due process protections are present in the Point of Sale Inspection Ordinance.

23.     Under the Code, when a property passes the Rental Dwelling Inspection the property owner receives a Certificate of Occupancy that is valid for one year. Ex. E at §14-711(e). Passing the Rental Dwelling Inspection does not negate the requirements of the Point of Sale Inspection Ordinance. As such, regardless of the outcome of the Rental Dwelling Inspection, a property owner must submit to both an annual rental inspection and an inspection at the point of sale.

**IV.    Impact Of The Point Of Sale Inspection Ordinance On City Property Owners.**

24.     Transfer of every property in City that is subject to the Point of Sale Inspection Ordinance is enjoined until City permits transfer, without any pre-injunction due process. The unconstitutional taking of the right to alienate property depresses the value of all residential property in City.

25.     Since August 8, 2006, there have been at least 611 sales of property that have closed in City. As of July 9, 2008, there were 564 active listings of property in City. As of July 17, 2008, there were 44 residential real estate listings in City with contracts pending.

26.     Each of the 44 properties under contract will continue to be subject to an unconstitutional taking of the right to transfer prior to closing if City is permitted to enforce the

9

Point of Sale Inspection Ordinance. Similarly, the 564 properties currently listed for sale will continue to be at risk of unconstitutional taking of the right to transfer by City pursuant to the Point of Sale Inspection Ordinance.

<div align="center">

**CLASS ACTION ALLEGATIONS**

</div>

27.    Smiley brings this action as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure on behalf of a class consisting of all owners of residential property in City.[2]

28.    The class is sufficiently numerous to make bringing all parties before the court impractical.

29.    There are questions of law and fact common to the class that predominate over any questions affecting only individual class members, including, but not limited to:

a.    Whether the Point of Sale Inspection Ordinance is unconstitutional because it unreasonably and unconstitutionally restrains property owners' right to sell their property without due process of law;

b.    Whether the Point of Sale Inspection Ordinance is unconstitutional because it fails to provide procedural due process; and

c.    Whether City's policy of refusing to issue re-build letters and/or confirmation that property is legal nonconforming unconstitutionally interferes with the right to freely sell property including by prohibiting

---

[2]    As stated in the pending Amended Motion for Class Certification, if the Court deems that such a class is too broad, Smiley requests that the Court certify a class of all owners of residential property in City who are subject to the POS Inspection Ordinance and who have listed their property for sale or transfer, either on their own, through a real estate agent or broker, or in some other manner. In addition, if the Court deems it necessary or appropriate, Smiley does not oppose the creation of a class of all owners of residential property in City (or those who have listed their property for sale) for purposes of Counts I and II of the Complaint and a sub-class of all owners of legal nonconforming property (or those who have listed their property for sale) in City.

546590.1

owners of legal nonconforming property from selling such property without deconverting.

30.    Smiley is a member of the class, his claims are typical of the claims of the class members, and he will fairly and adequately protect the interests of the class. Smiley is a typical residential property owner in City and his interests are coincident with and not antagonistic to those of the other members of the class. Smiley has retained counsel able and experienced in class action litigation and other litigation advancing constitutional rights related to the ownership and sale of real property.

31.    City has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

32.    A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of claims by many class members who could not afford individually to litigate constitutional claims such as those asserted herein. This class action likely presents no difficulties in management that would preclude maintenance as a class action. The class is readily ascertainable.

## CAUSES OF ACTION

### COUNT I: THE POINT OF SALE INSPECTION ORDINANCE UNREASONABLY RESTRAINS THE RIGHT OF PROPERTY OWNERS TO TRANSFER THEIR PROPERTY

33.    Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-32, as though fully set forth herein.

11

546590.1

34.    Title 42, Section 1983 of the United States Constitution provides as follows:

> Every person who, under the color of an statute, ordinance, regulation, custom, or usage of any State or Territory, or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

35.    City, as a municipal corporation under the laws of Illinois, is a "person" that is subject to suit under 42 U.S.C. § 1983.

36.    The Point of Sale Inspection Ordinance unreasonably and unconstitutionally restrains the alienability of property. The Point of Sale Inspection Ordinance provides that property cannot be sold unless City issues a transfer stamp. Ex. A § 14-1(h) and Code §§ 82-325, 82-327(b), 82-328. With one limited exception (*see* n. 1), the only way to obtain a transfer stamp is to first obtain a "Certificate of Compliance" which, in turn, can only be obtained if an inspector decides that property "passed" a point of sale inspection. *Id.* In violation of the Fourth Amendment, there are no limitations on the scope of searches required by the Point of Sale Inspection Ordinance or the type of repair City can require as a condition of the right to sell property. A property owner can "pass" a point of sale inspection only if it completes all repairs required by the inspector -- even if those repairs are cosmetic in nature -- by using a licensed contractor. *Id.* at § 14-1(k). Thus, even if property complies with all City codes, a property owner may not transfer his property if City refuses to issue a "Certificate of Compliance." When City fails or refuses to issue a "Certificate of Compliance" a property owner has no meaningful right to a hearing to contest the inspector's decision. *Id.* Even where City eventually issues a Certificate of Compliance, it prohibits sales of property for an unreasonably long period of time while inspections, repairs and re-inspections take place.

12

37.    In addition, the Point of Sale Inspection Ordinance requires a seller to pay the water bill before City will issue transfer stamps. *Id.* at § 14-1(i).  Although an owner can dispute the water bill in a "predeprivation hearing," the ordinance does not provide any detail regarding the due process protection of such hearing and requires the owner to pay the disputed bill "under protest" while he challenges the bill if he wants to obtain a transfer stamp. *Id.*

38.    Although cities are permitted to adopt ordinances to protect public health and safety, they may not use such ordinances to restrict the free transfer of property. *See* Op. Ill. Att'y Gen. No. 94-024 (Oct. 25, 1994), 1994 WL 601863 ("Municipalities are authorized, under Article 11 of the Municipal Code (65 ILCS 5/11-1-1 *et seq.*) (West 1992) to adopt a number of ordinances and codes designed to protect public health and safety, and are authorized to enforce such codes by requiring permits, fees, and fines ... Further, municipalities may impose various fees for other services relating to real property. *In no instance, however, are municipalities authorized to limit the alienability of property in order to enforce such code.*") (emphasis added).

39.    Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance.  The Point of Sale Inspection Ordinance is unconstitutional because it violates the protections in the United States Constitution against unreasonable governmental restriction on the right to sell private property. This irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted.  Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

40.    There is no adequate remedy at law.  Money damages are not adequate to remedy the immediate loss of the Constitutional right to alienate property.

13

**WHEREFORE**, Plaintiffs pray for the following relief:

a.      That this action be certified and proceed as a class action and that Smiley be certified as the representative of the class and that his counsel be appointed class counsel;

b.      A declaration that the Point of Sale Inspection Ordinance is unconstitutional;

c.      A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "Certificate of Compliance;"

d.      An award of reasonable attorneys fees and expenses as part of the costs of this action, pursuant to 42 U.S.C. § 1988; and

e.      Such other relief as the Court deems just and proper.

### COUNT II:  LACK OF PROCEDURAL DUE PROCESS

41.      Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-32, as though fully set forth herein.

42.      The Point of Sale Inspection Ordinance fails to provide procedural due process.  Among other things, the due process clause requires that, at a minimum, a hearing must be provided *before* a property right -- here, the right to transfer property -- can be taken.  The Point of Sale Inspection Ordinance immediately deprives a property owner of her right to sell her property without first providing due process.  The Point of Sale Inspection Ordinance prohibits the transfer of every residential property unless City consents, but no pre-deprivation due process protection attaches.  In effect, City has enjoined the transfer of residential property -- without a

14

complaint, evidence, a hearing or any procedural or substantive rules -- until it decides to consent.

43.    In addition, the Point of Sale Inspection Ordinance requires that property be in "good repair" before it can pass a Point of Sale Inspection but fails to notify a property owner of what conditions fail to constitute "good repair" and is, therefore, void for vagueness. City has historically relied on the "good repair" provisions to require property owners to make cosmetic repairs such as repairing soap dishes before allowing property to be sold. An inspector has unfettered discretion to order repairs unrelated to conditions that affect health or safety or the public good. The Point of Sale Inspection Ordinance contains no standards to prevent arbitrary enforcement. An owner must comply with any repair order before he can obtain the transfer stamp necessary to close the sale of the property. Property owners must capitulate to City's inspectors' demands, even if the repair order is mistaken, unnecessary from a public health or safety standpoint or otherwise improper, if they want to sell their property. Owners are not permitted to make their own repairs; they must use a licensed contractor and endure unnecessary cost and delay. The home seller has no protection if an inspector conditions City's consent on "repairs" that have no relationship to health or safety. Such a scheme does not comport with due process. It is also unconstitutionally vague.

44.    As respects deconversions, the Point of Sale Inspection Ordinance does not provide *any* procedural due process protection to ensure that City does not wrongfully deprive property owners of the "valuable property right" to sell and transfer legal nonconforming property. The ordinance does not provide any notice of how City will determine whether property is "legal" or "illegal." Further, property owners are not granted a meaningful hearing

before an independent tribunal, where they can be represented by counsel, rebut City's positions or submit evidence to show that the property is not an illegal conversion.

45.    Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from enforcement of the Point of Sale Inspection Ordinance, including its deconversion provisions, because the Point of Sale Inspection Ordinance fails to provide procedural due process guaranteed by the United States Constitution.  This irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted.  Even if the Point of Sale Inspection Ordinance is enjoined, City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

46.    There is no adequate remedy at law.  Money damages are not adequate to remedy the immediate loss of Constitutional rights.

**WHEREFORE**, Plaintiffs pray for the following relief:

a.    That this action be certified and proceed as a class action and that and Smiley be certified as the representative of the class and that his counsel be appointed class counsel;

b.    A declaration that the Point of Sale Inspection Ordinance is unconstitutional under the United States Constitution;

c.    A temporary restraining order, preliminary and permanent injunction prohibiting City from enforcing the Point of Sale Inspection Ordinance and enjoining City from prohibiting the sale of property or refusing to issue transfer stamps in the absence of a point of sale inspection and/or issuance of a "Certificate of Compliance;"

16

546590.1

d.      An award of reasonable attorneys fees and expenses as part of the costs of

this action, pursuant to 42 U.S.C. § 1988; and

e.      Such other relief as the Court deems just and proper.

### COUNT III: CITY UNCONSTITUTIONALLY REFUSES TO ISSUE RE-BUILD LETTERS AND/OR CONFIRM THAT PROPERTY IS LEGAL NONCONFORMING TO FORCE THE DECONVERSION OR MODIFICATION OF LEGAL NONCONFORMING PROPERTY AS A CONDITION OF THE RIGHT TO SELL SUCH PROPERTY

47.      Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-32,

as though fully set forth herein.

48.      The right to continued use of, and the right to sell, legal nonconforming

property are constitutionally protected property rights.  Under Illinois law, the right to continue a

legal nonconforming use can only be taken away gradually and only if necessary for health and

safety reasons.  65 ILCS 5/11-13-1.

49.      The Point of Sale Inspection Ordinance, the Zoning Ordinance and City's

refusal to issue re-build letters and/or confirmation that property is legal nonconforming

effectively prohibits owners of legal nonconforming property from selling it unless they

immediately deconvert it or conform it to the current zoning classification.  The Zoning

Ordinance states that legal nonconforming property cannot be rebuilt as such if it is damaged by

more than 50%.  Ex. C.  This, of course, means that if legal nonconforming property is damaged

by less than 50%, it can be rebuilt as legal nonconforming even if current zoning regulations

would otherwise restrict what could be built.  Notwithstanding the terms of the Zoning

Ordinance, City arbitrarily and uniformly refuses to issue re-build letters (that state legal

nonconforming property can be built as such if damaged by less than 50%) that buyers' lenders

uniformly require.  City's pre-printed forms state that City will not issue re-build letters.  Buyers'

lenders will not loan buyers money in the absence of a re-build letter.  City also refuses to

17

confirm for buyers and/or their lenders whether property is, in fact, legal nonconforming. Thus, under the current scheme, owners of legal conforming property are forever barred from selling their legal nonconforming property unless they deconvert.

50.    City applies the Zoning Code and refuses to issue re-build letters and/or confirmation that property is legal nonconforming in such a way that unreasonably restrains the rights of owners of legal nonconforming property from selling their property as legal nonconforming. City's conduct thus also violates 65 ILCS 5/11-13-1.

51.    Plaintiffs have suffered and will continue to suffer immediate and irreparable harm from how City applies the Zoning Code, including its refusal to issue re-build letters and confirmation of the legal nonconforming status of property because City's conduct effectively prohibits owners of legal nonconforming property from selling such property as legal nonconforming. Thus, City's conduct in refusing to issue re-build letters and/or confirmation of the legal nonconforming status of property violates the protections in the United States Constitution against unreasonable governmental restriction on the right to sell private property. This irreparable harm to Plaintiffs will substantially outweigh any harm to City if immediate relief is granted. City can protect public health and safety with the Code Enforcement Ordinance and Rental Dwelling Inspection Ordinance.

52.    There is no adequate remedy at law. Money damages are not adequate to remedy the immediate loss of Constitutional rights.

**WHEREFORE**, Plaintiffs pray for the following relief:

a.    That this action be certified and proceed as a class action and that Smiley be certified as the representative of the class and that his counsel be appointed class counsel;

18

b.     A declaration that City's refusal to issue re-build letters is unconstitutional

under the United States Constitution and violates 65 ILCS 5/11-13-1;

c.     A declaration that City's refusal to confirm for buyers or their lenders

whether property is legal nonconforming is unconstitutional under the United

States Constitution and violates 65 ILCS 5/11-13-1;

d.     A temporary restraining order, preliminary and permanent injunction

prohibiting City from refusing to issue re-build letters and/or confirmation

regarding whether property is legal nonconforming;

e.     An award of reasonable attorneys fees and expenses as part of the costs of

this action, pursuant to 42 U.S.C. § 1988; and

f.     Such other relief as the Court deems just and proper.

DATED:  September ___, 2008                    Respectfully submitted,

                                               **ALONZO SMILEY AND ALL OTHERS
                                               SIMILARLY SITUATED,**

Philip C. Stahl
Patrick T. Nash
Donald P. Bunnin                               By:  /s/ Patrick T. Nash_____
Mark A. Semisch                                     One of Their Attorneys
GRIPPO & ELDEN LLC
111 South Wacker Drive
Chicago, IL 60606
Phone: (312) 704-7700
Fax: (312) 558-1195

546590.1

# Exhibit A

2008-Feb-15 12:11 PM    13125419191    7/11
ROSENTHAL MURPHY COBLENT Fax:13125419191    Feb 15 2008 11:51am P003/011

THE CITY OF CALUMET CITY
COOK COUNTY, ILLINOIS

ORDINANCE
NUMBER 08-06

AN ORDINANCE AMENDING CHAPTERS 14 AND 82
OF THE MUNICIPAL CODE OF CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND
REAL ESTATE TRANSFER TAX

MICHELLE MARKIEWICZ QUALKINBUSH, Mayor
Gloria L. Dooley, City Clerk

EDWARD GONZALEZ
THADDEUS JONES
BRIAN WILSON
GERALD A. TARKA
NIKOLAOS MANOUSOPOULOS
CYNTHIA M. PALLICK
LENI WOSCZYNSKI
Aldermen

Published in pamphlet form by authority of the Mayor and City Council of the City of Calumet City on 1-31-08
ODELSON & STERK, LTD. - City Attorneys - 3318 West 95th Street - Evergreen Park, Illinois 60805

ORDINANCE NO. 08 - 06

AN ORDINANCE AMENDING CHAPTERS 14 and 82 OF THE MUNICIPAL CODE OF
CALUMET CITY REGARDING
POINT OF SALE INSPECTIONS AND REAL ESTATE TRANSFER TAX

**WHEREAS,** the City of Calumet City has reviewed the provisions of its Municipal Code governing Point of Sale Inspections; and

**WHEREAS,** it is the intention of the City of Calumet City to continue to provide for periodic inspections of dwellings upon the transfer of interest or ownership thereof; and

**WHEREAS,** the City of Calumet City believes it is in the best interests of the health, safety and welfare to make the following amendments to its Ordinance regarding Point of Sale Inspections.

**NOW, THEREFORE,** be it ordained by the Mayor and City Council of the City of Calumet City, Cook County, Illinois, in the exercise of Calumet City's home rule powers as follows:

**Section 1:**     Chapter 14, Article 1, Section 14-1 of the Municipal Code of the City of Calumet City is hereby amended by deleting the text thereof and substituting the following text in its place:

Sec. 14-1. *Point of Sale Inspection Requirement; Certificate of Compliance Procedures*

**(a)** *Department Created; Definition; General Requirement.*

1.   A Department of Inspectional Services is hereby created pursuant to this section. The Department of Inspectional Services ("Department") shall be headed by a Director of Inspectional Services ("Director," which shall also include the Director's designees) who shall be appointed by the Mayor with the advice and consent of the City Council. All inspectional services concerning point of sale matters within the City, including building and housing, shall be under the jurisdiction of the Department. The building commissioner, electrical inspector, plumbing inspector, housing director and all Department inspectors and staff shall be responsible for reporting to the Director relative to all matters relating to this section and the Director shall have full authority to direct, train and provide appropriate personnel subject to City Council approval as to expenditures and/or requirements as provided herein.

2.   For the purpose of this section the term "Point of Sale Inspection" means an inspection of real property by the Department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this Section.

3.   A Point of Sale Inspection shall be required relative to any transfer of any interest in property which is subject to this Section, except as exempted herein.

(b)   *Notice of Transfer of Real Property Required.*   Whenever an owner of real property in the City proposes to engage in a transfer of real property in the City which is subject to taxation under Chapter 82, Article X of the Calumet City Municipal Code (Real Estate Transfer Tax) such owner shall provide the Department a Notice of Transfer for said property, on a form therefore provided by the Department.

(c)   *Compliance Inspection; Pertinent Code Requirements.* The Notice of Transfer form shall also constitute the Director's request to inspect such property ("Compliance Inspection") to determine whether such property is in compliance with the following specific requirements, which the corporate authorities of the City find are related to the public health, safety and welfare:

   (1)   *Compliance with Property Maintenance Code.* All structures shall be in compliance with Article X, Sections 14-691 and 14-692 of this Chapter 14, "Property Maintenance Code."
   (2)   *Inspection to Determine Possible Illegal Conversions.* All structures shall be inspected to determine whether they have been illegally converted. For purposes of this subsection, "illegally converted" means that the property was converted to another or additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance.

(d)   *Proposed Compliance Inspection.* When the owner files the Notice of Transfer, the Department will schedule a proposed Compliance Inspection to be conducted within 28 calendar days of the Notice. The Notice of Transfer Form shall includes the following:

(1)   Date and time of the proposed Compliance Inspection.

   (2)   A statement that the owner or occupant has the right to withhold consent to the Compliance Inspection and require the City to obtain a warrant to conduct the inspection;
   (3)   For occupied rental dwellings, the City must also request and obtain the consent of the tenant prior to conducting any inspection; and
   (4)   A space for the owner and/or to indicate that the owner and/or tenant either consent to the Compliance Inspection, or refuse consent

2008-Feb-15 12:11 PM    13125419191        6/11
ROSENTHALMURPHYCOBLENT Fax:13125419191              Feb 15 2008 11:52am P006/011

(e)    *Refusal to Consent; Warrant Procedures.* If the owner or occupant does not consent to the proposed inspection, the Director may appear before any judge in the Circuit Court of Cook County and seek an administrative search warrant to allow an inspection. Any such application shall be made within 10 calendar days after the owner's nonconsent. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this Section, and whether there have been any illegal conversions. The Court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

    (1)    eyewitness account of violation;
    (2)    citizen complaints;
    (3)    tenant complaints;
    (4)    plain view violations;
    (5)    violations apparent from City records;
    (6)    property deterioration;
    (7)    age of property;
    (8)    nature of alleged violation;
    (9)    condition of similar properties in the area;
    (10)    documented violations on similar properties in the area;
    (11)    passage of time since last inspection;
    (12)    previous violations on the property.

(f)    *Uninspected Property; Transfer Stamps.* In the event the owner or occupant refuses to consent to an inspection, and the Director does not seek a warrant (or if Court refuses an application for the warrant), the Department shall notify the City Clerk that "Uninspected Property" transfer stamps may issue. In connection with the issuance of transfer stamps, the City Clerk shall advise the purchaser of such property that it is "Uninspected Property."

(g)    *Inspection Procedures; Appeal.*

    (1)    In the event consent is given or a warrant issues, the Department shall conduct the Compliance Inspection as provided in subsection (c) and (d). Within 3 business days after the Compliance Inspection the Department shall issue a written notice of violations and repairs, if any, necessary to bring the property into compliance with this Section. In the event the inspection reveals a structure which has been illegally converted, the Department shall issue a Notice of Deconversion, specifying the measures which must be taken in order to bring the illegally converted structure into compliance with applicable zoning regulations.

4

2008-Feb-15 12:11 PM    13125419191    7/11
ROSENTHAL MURPHY COB LENT Fax:13125419191        Feb 15 2008 11:53am  P007/011

(2)    In the event the owner disputes the determination of violations and repairs, the owner may file a request for administrative review on a form provided by the City. An independent administrative hearing officer appointed by the City shall convene an administrative hearing within five (5) business days from the date of appeal. Upon completion of the administrative hearing, the hearing officer will issue a final determination of violation and repairs.

(3)    In the event an owner disagrees with an administrative issuance of a notice of deconversion, said owner may appeal to the Zoning Board of Appeals in accordance with Section 12-5 of the City's Zoning Ordinance.

(h)   *Follow-Up Repairs; Reinspection.*  A party issued a notice of repairs as provided for in subsection (g) shall proceed to make such repairs. Upon completion of said repairs and notice thereof to the Department, the Department will conduct a reinspection within 3 business days thereafter. Upon completion of the follow-up repairs, and the completion of any deconversion measures required by the Department, the Department shall issue a Certificate of Compliance.

(i)   *Payment of Current Water Bills; Predeprivation Hearing.*  The seller must pay the current water bill (as defined in Section 82-327(b) of the Municipal Code) and other fees owed by the seller to Calumet City prior to the issuance of transfer stamps. In the event the owner disputes any such obligation (or any portion thereof), the Office of City Clerk shall promptly provide the owner with a predeprivation due process hearing consistent with the principles enunciated in *Memphis Light, Gas & Water Division v Craft*, 436 U.S. 1 (1978). The City Clerk's office shall provide the hearing with 3 business days of a request. If the owner disputes the City's determination as to liability, the owner may pay said bill under protest, and may pursue any remedies available to said seller to recover the claimed overcharge.

(j)   *Conditional Certificate of Compliance; Procedures.*  An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

(1)    The owner or agent has deposited with the City an amount of money determined by the Director or his designee to be sufficient to bring the structure into compliance with all City building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

(2)    The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter "buyer") has entered into an agreement with the City whereby the buyer agrees to bring the structure into compliance within the time period determined by the Director or his designee, to bring the structure into compliance with all applicable Code requirements within a period not to exceed

5

Ord. 108-6

one hundred eighty (180) calendar days after the closing of the transaction ("closing").

(3)    If the buyer enters into such an agreement, a Conditional Certificate of Compliance will issue in order to allow the closing to be completed. The Conditional Certificate of Compliance shall be issued by the Department and shall terminate on the one hundred eighty-first day after closing and no extensions shall be granted. A buyer who elects to accept the premises subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the Director, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty (180) days of the closing. The City shall issue a Certificate of Compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance.

(4)    In the event the buyer fails to complete the required repairs and have the repairs verified on reinspection, the Director is hereby authorized to pursue enforcement proceedings through the Calumet City administrative adjudication process, or, at his discretion, through the Circuit Court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Calumet City Administrative Adjudication Process and the Circuit Court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the City to expeditiously obtain an order of compliance with this section.

(5)    If reasonable proof that the repairs have been completed is not received by the Director or his designee within the required period for the repairs to be completed, the City may also issue a citation for violation of this Chapter and/or the escrow repair agreement, and may also pursue any applicable administrative or judicial remedies to bring the
structure and property into compliance with applicable codes and regulations.

(6)    The fine for violations of this Chapter shall be not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000.00) per day for each day the violations remain uncorrected.

(k)   *Licensed and Bonded Contractors.* All contractors performing repairs identified in the point of sale inspection, or issuing certifications shall be licensed by the City and bonded and

6

shall make available, upon request, copies of their license(s), verification of their liability insurance, errors and omissions insurance policies, and surety bond.

(l)     *Validity of Certificate of Compliance.*     A Certificate of Compliance issued to the seller shall be valid for one hundred eighty (180) days from the date of issuance.

(m)     *No Warranty.* In issuing a certificate of compliance or a conditional certificate of compliance, the City and its agents do not make any warranty, representation or statement nor does it intend to insure or guarantee to either buyer or seller of the property subject to the point of sale inspection or any of their designees, agents, representatives, heirs or assigns or any other interested party, including mortgage companies, insurance companies, banks or any other party which may have any interest relative to the property subject to the point of sale inspection, nor does the City affirm that there are no additional, unnoted violations relative to any other provisions of any of the Municipal Code of the City of Calumet City, or relevant statutes, ordinances, rules and regulations of the County of Cook, the State of Illinois or the United States of America.

(o)     *Inspection Fee Schedule.*

    (1)     The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) for all single-family residential inspections. The failure of an owner/seller or his designee to appear at the time of inspection shall result in a fifty-dollar ($50.00) penalty.
    (2)     The fee for a point of sale inspection shall be one hundred fifty dollars ($150.00) plus twenty-five additional dollars ($25.00) for each residential unit in excess of one unit.
    (3)     A fee of twenty cents ($0.20) per square foot shall be charged for each commercial/industrial unit inspected with a minimum fee of two hundred dollars ($200.00) per commercial/industrial unit.
    (4)     Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) per unit shall be assessed.
    (5)     If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) per unit shall be assessed.

**Section 2:**     Section 82-327(b) of the Calumet City Municipal Code is hereby amended to provide as follows:

7

Ord. #08-6

2008-Feb-15 12:11 PM    13125419191    10/41
ROSENTHALMURPHYCOBLENT Fax:13125419191         Feb 15 2008 11:55am    P010/011

(b) The City Clerk shall issue no stamps for the transfer of any dwelling, structure, commercial or industrial building unless the grantor/seller (i) presents a "Certificate of Compliance" or other certificate indicating compliance with appropriate city ordinances and/or codes signed by an authorized signatory of the department of inspectional services or (ii) presents an "Uninspected Property" notice to the City Clerk pursuant to Section 14-1(f) of the City Code. The City Clerk shall provide the purchaser notice whether the property is inspected or uninspected.

Additionally, prior to the issuance of transfer tax stamps, and subject to the procedures as set forth in Section 14-1(i) of the City Code, the grantor/seller shall present to the city clerk proof of a current paid water bill. The term "current" shall be defined as the most recent bill issued to the grantor/seller and certified as same by an authorized official of the water department of the city. The water department shall not issue certification of a paid water bill relative to any transfer of title unless the new owner's name and address is supplied to an official of the water department simultaneously upon request for certification of a paid water bill. Grantors/sellers who are exempt from the requirement of purchase of transfer stamps shall be required to comply with the requirements of this section, and shall have the Section 14-1(f) procedural rights.

**Section 3:**     If any section, paragraph, clause or provision of this ordinance shall be held invalid, the invalidity thereof shall not effect any of the other provisions of this ordinance.

**Section 4:**     All ordinances in conflict herewith are hereby repealed to the extent of such conflict.

**Section 5:**     This ordinance shall be in full force and effect from and after its passage, approval and publication as provided by law.

8

Ord. #08-6

2008-Feb-15 12:11 PM    13125419191    11/11
ROSENTHALMURPHYCOBLENT Fax:13125419191        Feb 15 2008 11:55am P011/011

ADOPTED this 31st day of February, 2008, pursuant to a roll call vote as follows:

|  | YES | NO | ABSENT | PRESENT |
|---|---|---|---|---|
| Gonzalez | | x | | |
| Jones | x | | | |
| Pallick | x | | | |
| Maneusopoulos | x | | | |
| Tarka | x | | | |
| Wilson | x | | | |
| Wosczynski | x | | | |
| Qualkinbush (Mayor) | | | | |
| TOTAL | 7 | | | |

APPROVED by the Mayor on January 31, 2008.

Michelle Markiewicz Qualkinbush
MAYOR

ATTEST:

Gloria Dooley
CITY CLERK

C:\Documents and Settings\deputy clerk\Local Settings\Temporary Internet Files\Content.IE5\LRVZ194E\amending chap 14 & 82 1[1]31.08.wpd

9

Ord #08-6

# hp LaserJet 4345mfp series



## Fax Call Report                                                           1

Grippo & Elden LLC
(312)704-7700
2008-Feb-15 12:11 PM

| Job | Date/Time | Type | Identification | Duration | Pages | Result |
|-----|-----------|------|----------------|----------|-------|--------|
| 544 | 2008-Feb-15 12:05 PM | Receive | 13125419191 | 5:34 | 11 | Success |

# Exhibit B



2006 International Property Maintenance Code®

First Printing: January 2006
Second Printing: November 2006

ISBN-13: 978-1-58001-263-8 (soft)
ISBN-10: 1-58001-263-9 (soft)
ISBN-13: 978-158001-311-6 (e-document)
ISBN-10: 1-58001-311-2 (e-document)

COPYRIGHT © 2006
by
INTERNATIONAL CODE COUNCIL, INC.

ALL RIGHTS RESERVED. This 2006 *International Property Maintenance Code®* is a copyrighted work owned by the International Code Council, Inc. Without advance written permission from the copyright owner, no part of this book may be reproduced, distributed or transmitted in any form or by any means, including, without limitation, electronic, optical or mechanical means (by way of example and not limitation, photocopying, or recording by or in an information storage retrieval system). For information on permission to copy material exceeding fair use, please contact: Publications, 4051 West Flossmoor Road, Country Club Hills, IL 60478-5795. Phone 1-888-ICC-SAFE (422-7233).

Trademarks: "International Code Council," the "International Code Council" logo and the "International Property Maintenance Code" are trademarks of the International Code Council, Inc.

PRINTED IN THE U.S.A.

# PREFACE

## Introduction

Internationally, code officials recognize the need for a modern, up-to-date property maintenance code governing the maintenance of existing buildings. The *International Property Maintenance Code*®, in this 2006 edition, is designed to meet this need through model code regulations that contain clear and specific property maintenance requirements with required property improvement provisions.

This 2006 edition is fully compatible with all *International Codes*® (I-Codes®) published by the International Code Council (ICC)®, including the *International Building Code*®, ICC Electrical Code®—*Administrative Provisions, International Energy Conservation Code*®, *International Existing Building Code*®, *International Fire Code*®, *International Fuel Gas Code*®, *International Mechanical Code*®, ICC *Performance Code*®, *International Plumbing Code*®, *International Private Sewage Disposal Code*®, *International Residential Code*®, *International Wildland-Urban Interface Code*™ and *International Zoning Code*®.

The *International Property Maintenance Code* provisions provide many benefits, among which is the model code development process that offers an international forum for code officials and other interested parties to discuss performance and prescriptive code requirements. This forum provides an excellent arena to debate proposed revisions. This model code also encourages international consistency in the application of provisions.

## Development

The first edition of the *International Property Maintenance Code* (1998) was the culmination of an effort initiated in 1996 by a code development committee appointed by ICC and consisting of representatives of the three statutory members of the International Code Council at that time, including: Building Officials and Code Administrators International, Inc. (BOCA), International Conference of Building Officials (ICBO) and Southern Building Code Congress International (SBCCI). The committee drafted a comprehensive set of regulations for existing buildings that was consistent with the existing model property maintenance codes at the time. This 2006 edition presents the code as originally issued, with changes reflected through the previous 2003 editions and further changes developed through the ICC Code Development Process through 2005. A new edition of the code is promulgated every three years.

This code is founded on principles intended to establish provisions consistent with the scope of a property maintenance code that adequately protects public health, safety and welfare; provisions that do not unnecessarily increase construction costs; provisions that do not restrict the use of new materials, products or methods of construction; and provisions that do not give preferential treatment to particular types or classes of materials, products or methods of construction.

## Adoption

The *International Property Maintenance Code* is available for adoption and use by jurisdictions internationally. Its use within a governmental jurisdiction is intended to be accomplished through adoption by reference in accordance with proceedings establishing the jurisdiction's laws. At the time of adoption, jurisdictions should insert the appropriate information in provisions requiring specific local information, such as the name of the adopting jurisdiction. These locations are shown in bracketed words in small capital letters in the code and in the sample ordinance. The sample adoption ordinance on page v addresses several key elements of a code adoption ordinance, including the information required for insertion into the code text.

## Maintenance

The *International Property Maintenance Code* is kept up to date through the review of proposed changes submitted by code enforcing officials, industry representatives, design professionals and other interested parties. Proposed changes are carefully considered through an open code development process in which all interested and affected parties may participate.

The contents of this work are subject to change both through the Code Development Cycles and the governmental body that enacts the code into law. For more information regarding the code development process, contact the Codes and Standards Development Department of the International Code Council.

While the development procedure of the *International Property Maintenance Code* ensures the highest degree of care, ICC, its membership and those participating in the development of this code do not accept any liability resulting from compliance or noncompliance with the provisions because ICC does not have the power or authority to police or enforce compliance with the contents of this code. Only the governmental body that enacts the code into law has such authority.

## Letter Designations in Front of Section Numbers

In each code development cycle, proposed changes to this code are considered at the Code Development Hearings by the ICC Property Maintenance/Zoning Code Development Committee, whose action constitutes a recommendation to the voting membership for final action on the proposed changes. Proposed changes to a code section having a number beginning with a letter in brackets are considered by a different code development committee. For example, proposed changes to code sections that have the letter [F] in front of them (e.g., [F] 704.1) are considered by the International Fire Code Development Committee at the Code Development Hearings.

The content of sections in this code that begin with a letter designation are maintained by another code development committee in accordance with the following:

[F] = International Fire Code Development Committee;

[P] = International Plumbing Code Development Committee;

[F] = International Fire Code Development Committee; and

[B] = International Building Code Development Committee.

## Marginal Markings

Solid vertical lines in the margins within the body of the code indicating a technical change from the requirements of the previous edition. Deletion indicators in the form of an arrow ( → ) are provided in the margin where an entire section, paragraph, exception or table has been deleted or an item in a list of items or a table has been deleted.

# ORDINANCE

The *International Codes* are designed and promulgated to be adopted by reference by ordinance. Jurisdictions wishing to adopt the 2006 *International Property Maintenance Code* as an enforceable regulation governing existing structures and premises should ensure that certain factual information is included in the adopting ordinance at the time adoption is being considered by the appropriate governmental body. The following sample adoption ordinance addresses several key elements of a code adoption ordinance, including the information required for insertion into the code text.

## SAMPLE ORDINANCE FOR ADOPTION OF
## THE *INTERNATIONAL PROPERTY MAINTENANCE CODE*
## ORDINANCE NO._____

An ordinance of the [JURISDICTION] adopting the 2006 edition of the *International Property Maintenance Code*, regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures in the [JURISDICTION]; providing for the issuance of permits and collection of fees therefor; repealing Ordinance No. _____ of the [JURISDICTION] and all other ordinances and parts of the ordinances in conflict therewith.

The [GOVERNING BODY] of the [JURISDICTION] does ordain as follows:

**Section 1.** That a certain document, three (3) copies of which are on file in the office of the [TITLE OF JURISDICTION'S KEEPER OF RECORDS] of [NAME OF JURISDICTION], being marked and designated as the *International Property Maintenance Code*, 2006 edition, as published by the International Code Council, be and is hereby adopted as the Property Maintenance Code of the [JURISDICTION], in the State of [STATE NAME] for regulating and governing the conditions and maintenance of all property, buildings and structures; by providing the standards for supplied utilities and facilities and other physical things and conditions essential to ensure that structures are safe, sanitary and fit for occupation and use; and the condemnation of buildings and structures unfit for human occupancy and use, and the demolition of such existing structures as herein provided; providing for the issuance of permits and collection of fees therefor; and each and all of the regulations, provisions, penalties, conditions and terms of said Property Maintenance Code on file in the office of the [JURISDICTION] are hereby referred to, adopted, and made a part hereof, as if fully set out in this ordinance, with the additions, insertions, deletions and changes, if any, prescribed in Section 2 of this ordinance.

**Section 2.** The following sections are hereby revised:

  Section 101.1. Insert: [NAME OF JURISDICTION]

  Section 103.5. Insert: [APPROPRIATE SCHEDULE]

  Section 302.4. Insert: [HEIGHT IN INCHES]

  Section 304.14. Insert: [DATES IN TWO LOCATIONS]

  Section 602.3. Insert: [DATES IN TWO LOCATIONS]

  Section 602.4. Insert: [DATES IN TWO LOCATIONS]

**Section 3.** That Ordinance No. _____ of [JURISDICTION] entitled [FILL IN HERE THE COMPLETE TITLE OF THE ORDINANCE OR ORDINANCES IN EFFECT AT THE PRESENT TIME SO THAT THEY WILL BE REPEALED BY DEFINITE MENTION] and all other ordinances or parts of ordinances in conflict herewith are hereby repealed.

**Section 4.** That if any section, subsection, sentence, clause or phrase of this ordinance is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this ordinance. The [GOVERNING BODY] hereby declares that it would have passed this ordinance, and each section, subsection, clause or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses and phrases be declared unconstitutional.

**Section 5.** That nothing in this ordinance or in the Property Maintenance Code hereby adopted shall be construed to affect any suit or proceeding impending in any court, or any rights acquired, or liability incurred, or any cause or causes of action acquired or exist-

ing, under any act or ordinance hereby repealed as cited in Section 3 of this ordinance; nor shall any just or legal right or remedy of any character be lost, impaired or affected by this ordinance.

**Section 6.** That the [JURISDICTION'S KEEPER OF RECORDS] is hereby ordered and directed to cause this ordinance to be published. (An additional provision may be required to direct the number of times the ordinance is to be published and to specify that it is to be in a newspaper in general circulation. Posting may also be required.)

**Section 7.** That this ordinance and the rules, regulations, provisions, requirements, orders and matters established and adopted hereby shall take effect and be in full force and effect [TIME PERIOD] from and after the date of its final passage and adoption.

# TABLE OF CONTENTS

**CHAPTER 1   ADMINISTRATION** ................ 1
Section
101    General ........................................ 1
102    Applicability ................................. 1
103    Department of Property Maintenance
       Inspection ................................... 1
104    Duties and Powers of the Code Official ........ 2
105    Approval ...................................... 2
106    Violations .................................... 2
107    Notices and Orders ............................ 3
108    Unsafe Structures and Equipment .............. 3
109    Emergency Measures ............................ 4
110    Demolition .................................... 4
111    Means of Appeal ............................... 5

**CHAPTER 2   DEFINITIONS** .................... 7
Section
201    General ....................................... 7
202    General Definitions ........................... 7

**CHAPTER 3   GENERAL REQUIREMENTS** ....... 9
Section
301    General ....................................... 9
302    Exterior Property Areas ....................... 9
303    Swimming Pools, Spas and Hot Tubs ............. 9
304    Exterior Structure ............................ 10
305    Interior Structure ............................ 11
306    Handrails and Guardrails ...................... 11
307    Rubbish and Garbage ........................... 11
308    Extermination ................................. 11

**CHAPTER 4   LIGHT, VENTILATION AND
              OCCUPANCY LIMITATIONS** ...... 13
Section
401    General ....................................... 13
402    Light ......................................... 13
403    Ventilation ................................... 13
404    Occupancy Limitations ......................... 13

**CHAPTER 5   PLUMBING FACILITIES AND
              FIXTURE REQUIREMENTS** ....... 15
Section
501    General ....................................... 15
502    Required Facilities ........................... 15

503    Toilet Rooms .................................. 15
504    Plumbing Systems and Fixtures ................. 15
505    Water System .................................. 15
506    Sanitary Drainage System ...................... 16
507    Storm Drainage ................................ 16

**CHAPTER 6   MECHANICAL AND ELECTRICAL
              REQUIREMENTS** ................ 17
Section
601    General ....................................... 17
602    Heating Facilities ............................ 17
603    Mechanical Equipment .......................... 17
604    Electrical Facilities ......................... 17
605    Electrical Equipment .......................... 18
606    Elevators, Escalators and Dumbwaiters ......... 18
607    Duct Systems .................................. 18

**CHAPTER 7   FIRE SAFETY
              REQUIREMENTS** ................ 19
Section
701    General ....................................... 19
702    Means of Egress ............................... 19
703    Fire-Resistance Ratings ....................... 19
704    Fire Protection Systems ....................... 19

**CHAPTER 8   REFERENCED STANDARDS** ....... 21

**INDEX** ........................................ 23

# CHAPTER 1

# ADMINISTRATION

## SECTION 101
## GENERAL

**101.1 Title.** These regulations shall be known as the *Property Maintenance Code* of [NAME OF JURISDICTION], hereinafter referred to as "this code."

**101.2 Scope.** The provisions of this code shall apply to all existing residential and nonresidential structures and all existing premises and constitute minimum requirements and standards for premises, structures, equipment and facilities for light, ventilation, space, heating, sanitation, protection from the elements, life safety, safety from fire and other hazards, and for safe and sanitary maintenance; the responsibility of owners, operators and occupants; the occupancy of existing structures and premises, and for administration, enforcement and penalties.

**101.3 Intent.** This code shall be construed to secure its expressed intent, which is to ensure public health, safety and welfare in so far as they are affected by the continued occupancy and maintenance of structures and premises. Existing structures and premises that do not comply with these provisions shall be altered or repaired to provide a minimum level of health and safety as required herein.

**101.4 Severability.** If a section, subsection, sentence, clause or phrase of this code is, for any reason, held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this code.

## SECTION 102
## APPLICABILITY

**102.1 General.** The provisions of this code shall apply to all matters affecting or relating to structures and premises, as set forth in Section 101. Where, in a specific case, different sections of this code specify different requirements, the most restrictive shall govern.

**102.2 Maintenance.** Equipment, systems, devices and safeguards required by this code or a previous regulation or code under which the structure or premises was constructed, altered or repaired shall be maintained in good working order. No owner, operator or occupant shall cause any service, facility, equipment or utility which is required under this section to be removed from or shut off from or discontinued for any occupied dwelling, except for such temporary interruption as necessary while repairs or alterations are in progress. The requirements of this code are not intended to provide the basis for removal or abrogation of fire protection and safety systems and devices in existing structures. Except as otherwise specified herein, the owner or the owner's designated agent shall be responsible for the maintenance of buildings, structures and premises.

**102.3 Application of other codes.** Repairs, additions or alterations to a structure, or changes of occupancy, shall be done in accordance with the procedures and provisions of the *International Building Code, International Fuel Gas Code, International Mechanical Code* and the *ICC Electrical Code.* Nothing in this code shall be construed to cancel, modify or set aside any provision of the *International Zoning Code.*

**102.4 Existing remedies.** The provisions in this code shall not be construed to abolish or impair existing remedies of the jurisdiction or its officers or agencies relating to the removal or demolition of any structure which is dangerous, unsafe and insanitary.

**102.5 Workmanship.** Repairs, maintenance work, alterations or installations which are caused directly or indirectly by the enforcement of this code shall be executed and installed in a workmanlike manner and installed in accordance with the manufacturer's installation instructions.

**102.6 Historic buildings.** The provisions of this code shall not be mandatory for existing buildings or structures designated as historic buildings when such buildings or structures are judged by the code official to be safe and in the public interest of health, safety and welfare.

**102.7 Referenced codes and standards.** The codes and standards referenced in this code shall be those that are listed in Chapter 8 and considered part of the requirements of this code to the prescribed extent of each such reference. Where differences occur between provisions of this code and the referenced standards, the provisions of this code shall apply.

**102.8 Requirements not covered by code.** Requirements necessary for the strength, stability or proper operation of an existing fixture, structure or equipment, or for the public safety, health and general welfare, not specifically covered by this code, shall be determined by the code official.

## SECTION 103
## DEPARTMENT OF PROPERTY
## MAINTENANCE INSPECTION

**103.1 General.** The department of property maintenance inspection is hereby created and the executive official in charge thereof shall be known as the code official.

**103.2 Appointment.** The code official shall be appointed by the chief appointing authority of the jurisdiction; and the code official shall not be removed from office except for cause and after full opportunity to be heard on specific and relevant charges by and before the appointing authority.

**103.3 Deputies.** In accordance with the prescribed procedures of this jurisdiction and with the concurrence of the appointing authority, the code official shall have the authority to appoint a deputy code official, other related technical officers, inspectors and other employees.

ADMINISTRATION

**103.4 Liability.** The code official, officer or employee charged with the enforcement of this code, while acting for the jurisdiction. shall not thereby be rendered liable personally, and is hereby relieved from all personal liability for any damage accruing to persons or property as a result of an act required or permitted in the discharge of official duties.

Any suit instituted against any officer or employee because of an act performed by that officer or employee in the lawful discharge of duties and under the provisions of this code shall be defended by the legal representative of the jurisdiction until the final termination of the proceedings. The code official or any subordinate shall not be liable for costs in an action, suit or proceeding that is instituted in pursuance of the provisions of this code; and any officer of the department of property maintenance inspection, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of official duties in connection therewith.

**103.5 Fees.** The fees for activities and services performed by the department in carrying out its responsibilities under this code shall be as indicated in the following schedule.

[JURISDICTION TO INSERT APPROPRIATE SCHEDULE.]

## SECTION 104
## DUTIES AND POWERS OF THE CODE OFFICIAL

**104.1 General.** The code official shall enforce the provisions of this code.

**104.2 Rule-making authority.** The code official shall have authority as necessary in the interest of public health, safety and general welfare, to adopt and promulgate rules and procedures; to interpret and implement the provisions of this code; to secure the intent thereof; and to designate requirements applicable because of local climatic or other conditions. Such rules shall not have the effect of waiving structural or fire performance requirements specifically provided for in this code, or of violating accepted engineering methods involving public safety.

**104.3 Inspections.** The code official shall make all of the required inspections, or shall accept reports of inspection by approved agencies or individuals. All reports of such inspections shall be in writing and be certified by a responsible officer of such approved agency or by the responsible individual. The code official is authorized to engage such expert opinion as deemed necessary to report upon unusual technical issues that arise, subject to the approval of the appointing authority.

**104.4 Right of entry.** The code official is authorized to enter the structure or premises at reasonable times to inspect subject to constitutional restrictions on unreasonable searches and seizures. If entry is refused or not obtained, the code official is authorized to pursue recourse as provided by law.

**104.5 Identification.** The code official shall carry proper identification when inspecting structures or premises in the performance of duties under this code.

**104.6 Notices and orders.** The code official shall issue all necessary notices or orders to ensure compliance with this code.

**104.7 Department records.** The code official shall keep official records of all business and activities of the department specified in the provisions of this code. Such records shall be retained in the official records as long as the building or structure to which such records relate remains in existence, unless otherwise provided for by other regulations.

## SECTION 105
## APPROVAL

**105.1 Modifications.** Whenever there are practical difficulties involved in carrying out the provisions of this code, the code official shall have the authority to grant modifications for individual cases, provided the code official shall first find that special individual reason makes the strict letter of this code impractical and the modification is in compliance with the intent and purpose of this code and that such modification does not lessen health, life and fire safety requirements. The details of action granting modifications shall be recorded and entered in the department files.

**105.2 Alternative materials, methods and equipment.** The provisions of this code are not intended to prevent the installation of any material or to prohibit any method of construction not specifically prescribed by this code, provided that any such alternative has been approved. An alternative material or method of construction shall be approved where the code official finds that the proposed design is satisfactory and complies with the intent of the provisions of this code, and that the material, method or work offered is, for the purpose intended, at least the equivalent of that prescribed in this code in quality, strength, effectiveness, fire resistance, durability and safety.

**105.3 Required testing.** Whenever there is insufficient evidence of compliance with the provisions of this code, or evidence that a material or method does not conform to the requirements of this code, or in order to substantiate claims for alternative materials or methods, the code official shall have the authority to require tests to be made as evidence of compliance at no expense to the jurisdiction.

**105.3.1 Test methods.** Test methods shall be as specified in this code or by other recognized test standards. In the absence of recognized and accepted test methods, the code official shall be permitted to approve appropriate testing procedures performed by an approved agency.

**105.3.2 Test reports.** Reports of tests shall be retained by the code official for the period required for retention of public records.

**105.4 Material and equipment reuse.** Materials, equipment and devices shall not be reused unless such elements are in good repair or have been reconditioned and tested when necessary, placed in good and proper working condition and approved.

## SECTION 106
## VIOLATIONS

**106.1 Unlawful acts.** It shall be unlawful for a person, firm or corporation to be in conflict with or in violation of any of the provisions of this code.

2

**106.2 Notice of violation.** The code official shall serve a notice of violation or order in accordance with Section 107.

**106.3 Prosecution of violation.** Any person failing to comply with a notice of violation or order served in accordance with Section 107 shall be deemed guilty of a misdemeanor or civil infraction as determined by the local municipality, and the violation shall be deemed a strict liability offense. If the notice of violation is not complied with, the code official shall institute the appropriate proceeding at law or in equity to restrain, correct or abate such violation, or to require the removal or termination of the unlawful occupancy of the structure in violation of the provisions of this code or of the order or direction made pursuant thereto. Any action taken by the authority having jurisdiction on such premises shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

**106.4 Violation penalties.** Any person who shall violate a provision of this code, or fail to comply therewith, or with any of the requirements thereof, shall be prosecuted within the limits provided by state or local laws. Each day that a violation continues after due notice has been served shall be deemed a separate offense.

**106.5 Abatement of violation.** The imposition of the penalties herein prescribed shall not preclude the legal officer of the jurisdiction from instituting appropriate action to restrain, correct or abate a violation, or to prevent illegal occupancy of a building, structure or premises, or to stop an illegal act, conduct, business or utilization of the building, structure or premises.

## SECTION 107
## NOTICES AND ORDERS

**107.1 Notice to person responsible.** Whenever the code official determines that there has been a violation of this code or has grounds to believe that a violation has occurred, notice shall be given in the manner prescribed in Sections 107.2 and 107.3 to the person responsible for the violation as specified in this code. Notices for condemnation procedures shall also comply with Section 108.3.

**107.2 Form.** Such notice prescribed in Section 107.1 shall be in accordance with all of the following:

1. Be in writing.
2. Include a description of the real estate sufficient for identification.
3. Include a statement of the violation or violations and why the notice is being issued.
4. Include a correction order allowing a reasonable time to make the repairs and improvements required to bring the dwelling unit or structure into compliance with the provisions of this code.
5. Inform the property owner of the right to appeal.
6. Include a statement of the right to file a lien in accordance with Section 106.3.

**107.3 Method of service.** Such notice shall be deemed to be properly served if a copy thereof is:

1. Delivered personally;
2. Sent by certified or first-class mail addressed to the last known address; or
3. If the notice is returned showing that the letter was not delivered, a copy thereof shall be posted in a conspicuous place in or about the structure affected by such notice.

**107.4 Penalties.** Penalties for noncompliance with orders and notices shall be as set forth in Section 106.4.

**107.5 Transfer of ownership.** It shall be unlawful for the owner of any dwelling unit or structure who has received a compliance order or upon whom a notice of violation has been served to sell, transfer, mortgage, lease or otherwise dispose of such dwelling unit or structure to another until the provisions of the compliance order or notice of violation have been complied with, or until such owner shall first furnish the grantee, transferee, mortgagee or lessee a true copy of any compliance order or notice of violation issued by the code official and shall furnish to the code official a signed and notarized statement from the grantee, transferee, mortgagee or lessee, acknowledging the receipt of such compliance order or notice of violation and fully accepting the responsibility without condition for making the corrections or repairs required by such compliance order or notice of violation.

## SECTION 108
## UNSAFE STRUCTURES AND EQUIPMENT

**108.1 General.** When a structure or equipment is found by the code official to be unsafe, or when a structure is found unfit for human occupancy, or is found unlawful, such structure shall be condemned pursuant to the provisions of this code.

**108.1.1 Unsafe structures.** An unsafe structure is one that is found to be dangerous to the life, health, property or safety of the public or the occupants of the structure by not providing minimum safeguards to protect or warn occupants in the event of fire, or because such structure contains unsafe equipment or is so damaged, decayed, dilapidated, structurally unsafe or of such faulty construction or unstable foundation, that partial or complete collapse is possible.

**108.1.2 Unsafe equipment.** Unsafe equipment includes any boiler, heating equipment, elevator, moving stairway, electrical wiring or device, flammable liquid containers or other equipment on the premises or within the structure which is in such disrepair or condition that such equipment is a hazard to life, health, property or safety of the public or occupants of the premises or structure.

**108.1.3 Structure unfit for human occupancy.** A structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin or rat infested, contains filth and contamination, or lacks ventilation, illumination,

sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

**108.1.4 Unlawful structure.** An unlawful structure is one found in whole or in part to be occupied by more persons than permitted under this code, or was erected, altered or occupied contrary to law.

**108.2 Closing of vacant structures.** If the structure is vacant and unfit for human habitation and occupancy, and is not in danger of structural collapse, the code official is authorized to post a placard of condemnation on the premises and order the structure closed up so as not to be an attractive nuisance. Upon failure of the owner to close up the premises within the time specified in the order, the code official shall cause the premises to be closed and secured through any available public agency or by contract or arrangement by private persons and the cost thereof shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate and may be collected by any other legal resource.

**108.3 Notice.** Whenever the code official has condemned a structure or equipment under the provisions of this section, notice shall be posted in a conspicuous place in or about the structure affected by such notice and served on the owner or the person or persons responsible for the structure or equipment in accordance with Section 107.3. If the notice pertains to equipment, it shall also be placed on the condemned equipment. The notice shall be in the form prescribed in Section 107.2.

**108.4 Placarding.** Upon failure of the owner or person responsible to comply with the notice provisions within the time given, the code official shall post on the premises or on defective equipment a placard bearing the word "Condemned" and a statement of the penalties provided for occupying the premises, operating the equipment or removing the placard.

**108.4.1 Placard removal.** The code official shall remove the condemnation placard whenever the defect or defects upon which the condemnation and placarding action were based have been eliminated. Any person who defaces or removes a condemnation placard without the approval of the code official shall be subject to the penalties provided by this code.

**108.5 Prohibited occupancy.** Any occupied structure condemned and placarded by the code official shall be vacated as ordered by the code official. Any person who shall occupy a placarded premises or shall operate placarded equipment, and any owner or any person responsible for the premises who shall let anyone occupy a placarded premises or operate placarded equipment shall be liable for the penalties provided by this code.

**SECTION 109**
**EMERGENCY MEASURES**

**109.1 Imminent danger.** When, in the opinion of the code official, there is imminent danger of failure or collapse of a building or structure which endangers life, or when any structure or part of a structure has fallen and life is endangered by the occupation of the structure, or when there is actual or potential dan-

ger to the building occupants or those in the proximity of any structure because of explosives, explosive fumes or vapors or the presence of toxic fumes, gases or materials, or operation of defective or dangerous equipment, the code official is hereby authorized and empowered to order and require the occupants to vacate the premises forthwith. The code official shall cause to be posted at each entrance to such structure a notice reading as follows: "This Structure Is Unsafe and Its Occupancy Has Been Prohibited by the Code Official." It shall be unlawful for any person to enter such structure except for the purpose of securing the structure, making the required repairs, removing the hazardous condition or of demolishing the same.

**109.2 Temporary safeguards.** Notwithstanding other provisions of this code, whenever, in the opinion of the code official, there is imminent danger due to an unsafe condition, the code official shall order the necessary work to be done, including the boarding up of openings, to render such structure temporarily safe whether or not the legal procedure herein described has been instituted; and shall cause such other action to be taken as the code official deems necessary to meet such emergency.

**109.3 Closing streets.** When necessary for public safety, the code official shall temporarily close structures and close, or order the authority having jurisdiction to close, sidewalks, streets, public ways and places adjacent to unsafe structures, and prohibit the same from being utilized.

**109.4 Emergency repairs.** For the purposes of this section, the code official shall employ the necessary labor and materials to perform the required work as expeditiously as possible.

**109.5 Costs of emergency repairs.** Costs incurred in the performance of emergency work shall be paid by the jurisdiction. The legal counsel of the jurisdiction shall institute appropriate action against the owner of the premises where the unsafe structure is or was located for the recovery of such costs.

**109.6 Hearing.** Any person ordered to take emergency measures shall comply with such order forthwith. Any affected person shall thereafter, upon petition directed to the appeals board, be afforded a hearing as described in this code.

**SECTION 110**
**DEMOLITION**

**110.1 General.** The code official shall order the owner of any premises upon which is located any structure, which in the code official's judgment is so old, dilapidated or has become so out of repair as to be dangerous, unsafe, insanitary or otherwise unfit for human habitation or occupancy, and such that it is unreasonable to repair the structure, to demolish and remove such structure; or if such structure is capable of being made safe by repairs, to repair and make safe and sanitary or to demolish and remove at the owner's option; or where there has been a cessation of normal construction of any structure for a period of more than two years, to demolish and remove such structure.

**110.2 Notices and orders.** All notices and orders shall comply with Section 107.

**110.3 Failure to comply.** If the owner of a premises fails to comply with a demolition order within the time prescribed, the

code official shall cause the structure to be demolished and removed, either through an available public agency or by contract or arrangement with private persons, and the cost of such demolition and removal shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate.

110.4 Salvage materials. When any structure has been ordered demolished and removed, the governing body or other designated officer under said contract or arrangement aforesaid shall have the right to sell the salvage and valuable materials at the highest price obtainable. The net proceeds of such sale, after deducting the expenses of such demolition and removal, shall be promptly remitted with a report of such sale or transaction, including the items of expense and the amounts deducted, for the person who is entitled thereto, subject to any order of a court. If such a surplus does not remain to be turned over, the report shall so state.

## SECTION 111
## MEANS OF APPEAL

111.1 Application for appeal. Any person directly affected by a decision of the code official or a notice or order issued under this code shall have the right to appeal to the board of appeals, provided that a written application for appeal is filed within 20 days after the day the decision, notice or order was served. An application for appeal shall be based on a claim that the true intent of this code or the rules legally adopted thereunder have been incorrectly interpreted, the provisions of this code do not fully apply, or the requirements of this code are adequately satisfied by other means.

111.2 Membership of board. The board of appeals shall consist of a minimum of three members who are qualified by experience and training to pass on matters pertaining to property maintenance and who are not employees of the jurisdiction. The code official shall be an ex-officio member but shall have no vote on any matter before the board. The board shall be appointed by the chief appointing authority, and shall serve staggered and overlapping terms.

111.2.1 Alternate members. The chief appointing authority shall appoint two or more alternate members who shall be called by the board chairman to hear appeals during the absence or disqualification of a member. Alternate members shall possess the qualifications required for board membership.

111.2.2 Chairman. The board shall annually select one of its members to serve as chairman.

111.2.3 Disqualification of member. A member shall not hear an appeal in which that member has a personal, professional or financial interest.

111.2.4 Secretary. The chief administrative officer shall designate a qualified person to serve as secretary to the board. The secretary shall file a detailed record of all proceedings in the office of the chief administrative officer.

111.2.5 Compensation of members. Compensation of members shall be determined by law.

111.3 Notice of meeting. The board shall meet upon notice from the chairman, within 20 days of the filing of an appeal, or at stated periodic meetings.

111.4 Open hearing. All hearings before the board shall be open to the public. The appellant, the appellant's representative, the code official and any person whose interests are affected shall be given an opportunity to be heard. A quorum shall consist of not less than two-thirds of the board membership.

111.4.1 Procedure. The board shall adopt and make available to the public through the secretary procedures under which a hearing will be conducted. The procedures shall not require compliance with strict rules of evidence, but shall mandate that only relevant information be received.

111.5 Postponed hearing. When the full board is not present to hear an appeal, either the appellant or the appellant's representative shall have the right to request a postponement of the hearing.

111.6 Board decision. The board shall modify or reverse the decision of the code official only by a concurring vote of a majority of the total number of appointed board members.

111.6.1 Records and copies. The decision of the board shall be recorded. Copies shall be furnished to the appellant and to the code official.

111.6.2 Administration. The code official shall take immediate action in accordance with the decision of the board.

111.7 Court review. Any person, whether or not a previous party of the appeal, shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law. Application for review shall be made in the manner and time required by law following the filing of the decision in the office of the chief administrative officer.

111.8 Stays of enforcement. Appeals of notice and orders (other than Imminent Danger notices) shall stay the enforcement of the notice and order until the appeal is heard by the appeals board.

# CHAPTER 2

# DEFINITIONS

## SECTION 201
## GENERAL

**201.1 Scope.** Unless otherwise expressly stated, the following terms shall, for the purposes of this code, have the meanings shown in this chapter.

**201.2 Interchangeability.** Words stated in the present tense include the future; words stated in the masculine gender include the feminine and neuter; the singular number includes the plural and the plural, the singular.

**201.3 Terms defined in other codes.** Where terms are not defined in this code and are defined in the *International Building Code, International Fire Code, International Zoning Code, International Plumbing Code, International Mechanical Code* or the ICC *Electrical Code*, such terms shall have the meanings ascribed to them as stated in those codes.

**201.4 Terms not defined.** Where terms are not defined through the methods authorized by this section, such terms shall have ordinarily accepted meanings such as the context implies.

**201.5 Parts.** Whenever the words "dwelling unit," "dwelling," "premises," "building," "rooming house," "rooming unit" "housekeeping unit" or "story" are stated in this code, they shall be construed as though they were followed by the words "or any part thereof."

## SECTION 202
## GENERAL DEFINITIONS

**APPROVED.** Approved by the code official.

**BASEMENT.** That portion of a building which is partly or completely below grade.

**BATHROOM.** A room containing plumbing fixtures including a bathtub or shower.

**BEDROOM.** Any room or space used or intended to be used for sleeping purposes in either a dwelling or sleeping unit.

**CODE OFFICIAL.** The official who is charged with the administration and enforcement of this code, or any duly authorized representative.

**CONDEMN.** To adjudge unfit for occupancy.

**[B] DWELLING UNIT.** A single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation.

**EASEMENT.** That portion of land or property reserved for present or future use by a person or agency other than the legal fee owner(s) of the property. The easement shall be permitted to be for use under, on or above a said lot or lots.

**EXTERIOR PROPERTY.** The open space on the premises and on adjoining property under the control of owners or operators of such premises.

**EXTERMINATION.** The control and elimination of insects, rats or other pests by eliminating their harborage places; by removing or making inaccessible materials that serve as their food; by poison spraying, fumigating, trapping or by any other approved pest elimination methods.

**GARBAGE.** The animal or vegetable waste resulting from the handling, preparation, cooking and consumption of food.

**GUARD.** A building component or a system of building components located at or near the open sides of elevated walking surfaces that minimizes the possibility of a fall from the walking surface to a lower level.

**HABITABLE SPACE.** Space in a structure for living, sleeping, eating or cooking. Bathrooms, toilet rooms, closets, halls, storage or utility spaces, and similar areas are not considered habitable spaces.

**HOUSEKEEPING UNIT.** A room or group of rooms forming a single habitable space equipped and intended to be used for living, sleeping, cooking and eating which does not contain, within such a unit, a toilet, lavatory and bathtub or shower.

**IMMINENT DANGER.** A condition which could cause serious or life-threatening injury or death at any time.

**INFESTATION.** The presence, within or contiguous to, a structure or premises of insects, rats, vermin or other pests.

**INOPERABLE MOTOR VEHICLE.** A vehicle which cannot be driven upon the public streets for reason including but not limited to being unlicensed, wrecked, abandoned, in a state of disrepair, or incapable of being moved under its own power.

**LABELED.** Devices, equipment, appliances, or materials to which has been affixed a label, seal, symbol or other identifying mark of a nationally recognized testing laboratory, inspection agency or other organization concerned with product evaluation that maintains periodic inspection of the production of the above-labeled items and by whose label the manufacturer attests to compliance with applicable nationally recognized standards.

**LET FOR OCCUPANCY OR LET.** To permit, provide or offer possession or occupancy of a dwelling, dwelling unit, rooming unit, building, premise or structure by a person who is or is not the legal owner of record thereof, pursuant to a written or unwritten lease, agreement or license, or pursuant to a recorded or unrecorded agreement of contract for the sale of land.

**OCCUPANCY.** The purpose for which a building or portion thereof is utilized or occupied.

**OCCUPANT.** Any individual living or sleeping in a building, or having possession of a space within a building.

**OPENABLE AREA.** That part of a window, skylight or door which is available for unobstructed ventilation and which opens directly to the outdoors.

DEFINITIONS

**OPERATOR.** Any person who has charge, care or control of a structure or premises which is let or offered for occupancy.

**OWNER.** Any person, agent, operator, firm or corporation having a legal or equitable interest in the property; or recorded in the official records of the state, county or municipality as holding title to the property; or otherwise having control of the property, including the guardian of the estate of any such person, and the executor or administrator of the estate of such person if ordered to take possession of real property by a court.

**PERSON.** An individual, corporation, partnership or any other group acting as a unit.

**PREMISES.** A lot, plot or parcel of land, easement or public way, including any structures thereon.

**PUBLIC WAY.** Any street, alley or similar parcel of land essentially unobstructed from the ground to the sky, which is deeded, dedicated or otherwise permanently appropriated to the public for public use.

**ROOMING HOUSE.** A building arranged or occupied for lodging, with or without meals, for compensation and not occupied as a one- or two-family dwelling.

**ROOMING UNIT.** Any room or group of rooms forming a single habitable unit occupied or intended to be occupied for sleeping or living, but not for cooking purposes.

**RUBBISH.** Combustible and noncombustible waste materials, except garbage; the term shall include the residue from the burning of wood, coal, coke and other combustible materials, paper, rags, cartons, boxes, wood, excelsior, rubber, leather, tree branches, yard trimmings, tin cans, metals; mineral matter, glass, crockery and dust and other similar materials.

**[B] SLEEPING UNIT.** A room or space in which people sleep, which can also include permanent provisions for living, eating and either sanitation or kitchen facilities, but not both. Such rooms and spaces that are also part of a dwelling unit are not sleeping units.

**STRICT LIABILITY OFFENSE.** An offense in which the prosecution in a legal proceeding is not required to prove criminal intent as a part of its case. It is enough to prove that the defendant either did an act which was prohibited, or failed to do an act which the defendant was legally required to do.

**STRUCTURE.** That which is built or constructed or a portion thereof.

**TENANT.** A person, corporation, partnership or group, whether or not the legal owner of record, occupying a building or portion thereof as a unit.

**TOILET ROOM.** A room containing a water closet or urinal but not a bathtub or shower.

**VENTILATION.** The natural or mechanical process of supplying conditioned or unconditioned air to, or removing such air from, any space.

**WORKMANLIKE.** Executed in a skilled manner; e.g., generally plumb, level, square, in line, undamaged and without marring adjacent work.

**YARD.** An open space on the same lot with a structure.

# CHAPTER 3

# GENERAL REQUIREMENTS

## SECTION 301
## GENERAL

**301.1 Scope.** The provisions of this chapter shall govern the minimum conditions and the responsibilities of persons for maintenance of structures, equipment and exterior property.

**301.2 Responsibility.** The owner of the premises shall maintain the structures and exterior property in compliance with these requirements, except as otherwise provided for in this code. A person shall not occupy as owner-occupant or permit another person to occupy premises which are not in a sanitary and safe condition and which do not comply with the requirements of this chapter. Occupants of a dwelling unit, rooming unit or housekeeping unit are responsible for keeping in a clean, sanitary and safe condition that part of the dwelling unit, rooming unit, housekeeping unit or premises which they occupy and control.

**301.3 Vacant structures and land.** All vacant structures and premises thereof or vacant land shall be maintained in a clean, safe, secure and sanitary condition as provided herein so as not to cause a blighting problem or adversely affect the public health or safety.

## SECTION 302
## EXTERIOR PROPERTY AREAS

**302.1 Sanitation.** All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**302.2 Grading and drainage.** All premises shall be graded and maintained to prevent the erosion of soil and to prevent the accumulation of stagnant water thereon, or within any structure located thereon.

Exception: Approved retention areas and reservoirs.

**302.3 Sidewalks and driveways.** All sidewalks, walkways, stairs, driveways, parking spaces and similar areas shall be kept in a proper state of repair, and maintained free from hazardous conditions.

**302.4 Weeds.** All premises and exterior property shall be maintained free from weeds or plant growth in excess of (jurisdiction to insert height in inches). All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.

Upon failure of the owner or agent having charge of a property to cut and destroy weeds after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3 and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.

**302.5 Rodent harborage.** All structures and exterior property shall be kept free from rodent harborage and infestation. Where rodents are found, they shall be promptly exterminated by approved processes which will not be injurious to human health. After extermination, proper precautions shall be taken to eliminate rodent harborage and prevent reinfestation.

**302.6 Exhaust vents.** Pipes, ducts, conductors, fans or blowers shall not discharge gases, steam, vapor, hot air, grease, smoke, odors or other gaseous or particulate wastes directly upon abutting or adjacent public or private property or that of another tenant.

**302.7 Accessory structures.** All accessory structures, including detached garages, fences and walls, shall be maintained structurally sound and in good repair.

**302.8 Motor vehicles.** Except as provided for in other regulations, no inoperative or unlicensed motor vehicle shall be parked, kept or stored on any premises, and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled. Painting of vehicles is prohibited unless conducted inside an approved spray booth.

Exception: A vehicle of any type is permitted to undergo major overhaul, including body work, provided that such work is performed inside a structure or similarly enclosed area designed and approved for such purposes.

**302.9 Defacement of property.** No person shall willfully or wantonly damage, mutilate or deface any exterior surface of any structure or building on any private or public property by placing thereon any marking, carving or graffiti.

It shall be the responsibility of the owner to restore said surface to an approved state of maintenance and repair.

## SECTION 303
## SWIMMING POOLS, SPAS AND HOT TUBS

**303.1 Swimming pools.** Swimming pools shall be maintained in a clean and sanitary condition, and in good repair.

**303.2 Enclosures.** Private swimming pools, hot tubs and spas, containing water more than 24 inches (610 mm) in depth shall be completely surrounded by a fence or barrier at least 48 inches (1219 mm) in height above the finished ground level measured on the side of the barrier away from the pool. Gates and doors in such barriers shall be self-closing and self-latching. Where the self-latching device is less than 54 inches (1372 mm) above the bottom of the gate, the release mechanism shall be located on the pool side of the gate. Self-closing and self-latching gates shall be maintained such that the gate will positively close and latch when released from an open position of 6 inches (152 mm) from the gatepost. No existing pool enclosure

GENERAL REQUIREMENTS

shall be removed, replaced or changed in a manner that reduces its effectiveness as a safety barrier.

Exception: Spas or hot tubs with a safety cover that complies with ASTM F 1346 shall be exempt from the provisions of this section.

## SECTION 304
## EXTERIOR STRUCTURE

**304.1 General.** The exterior of a structure shall be maintained in good repair, structurally sound and sanitary so as not to pose a threat to the public health, safety or welfare.

**304.2 Protective treatment.** All exterior surfaces, including but not limited to, doors, door and window frames, cornices, porches, trim, balconies, decks and fences shall be maintained in good condition. Exterior wood surfaces, other than decay-resistant woods, shall be protected from the elements and decay by painting or other protective covering or treatment. Peeling, flaking and chipped paint shall be eliminated and surfaces repainted. All siding and masonry joints as well as those between the building envelope and the perimeter of windows, doors, and skylights shall be maintained weather resistant and water tight. All metal surfaces subject to rust or corrosion shall be coated to inhibit such rust and corrosion and all surfaces with rust or corrosion shall be stabilized and coated to inhibit future rust and corrosion. Oxidation stains shall be removed from exterior surfaces. Surfaces designed for stabilization by oxidation are exempt from this requirement.

**[F] 304.3 Premises identification.** Buildings shall have approved address numbers placed in a position to be plainly legible and visible from the street or road fronting the property. These numbers shall contrast with their background. Address numbers shall be Arabic numerals or alphabet letters. Numbers shall be a minimum of 4 inches (102 mm) high with a minimum stroke width of 0.5 inch (12.7 mm).

**304.4 Structural members.** All structural members shall be maintained free from deterioration, and shall be capable of safely supporting the imposed dead and live loads.

**304.5 Foundation walls.** All foundation walls shall be maintained plumb and free from open cracks and breaks and shall be kept in such condition so as to prevent the entry of rodents and other pests.

**304.6 Exterior walls.** All exterior walls shall be free from holes, breaks, and loose or rotting materials; and maintained weatherproof and properly surface coated where required to prevent deterioration.

**304.7 Roofs and drainage.** The roof and flashing shall be sound, tight and not have defects that admit rain. Roof drainage shall be adequate to prevent dampness or deterioration in the walls or interior portion of the structure. Roof drains, gutters and downspouts shall be maintained in good repair and free from obstructions. Roof water shall not be discharged in a manner that creates a public nuisance.

**304.8 Decorative features.** All cornices, belt courses, corbels, terra cotta trim, wall facings and similar decorative features shall be maintained in good repair with proper anchorage and in a safe condition.

**304.9 Overhang extensions.** All overhang extensions including, but not limited to canopies, marquees, signs, metal awnings, fire escapes, standpipes and exhaust ducts shall be maintained in good repair and be properly anchored so as to be kept in a sound condition. When required, all exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment.

**304.10 Stairways, decks, porches and balconies.** Every exterior stairway, deck, porch and balcony, and all appurtenances attached thereto, shall be maintained structurally sound, in good repair, with proper anchorage and capable of supporting the imposed loads.

**304.11 Chimneys and towers.** All chimneys, cooling towers, smoke stacks, and similar appurtenances shall be maintained structurally safe and sound, and in good repair. All exposed surfaces of metal or wood shall be protected from the elements and against decay or rust by periodic application of weather-coating materials, such as paint or similar surface treatment.

**304.12 Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

**304.13 Window, skylight and door frames.** Every window, skylight, door and frame shall be kept in sound condition, good repair and weather tight.

**304.13.1 Glazing.** All glazing materials shall be maintained free from cracks and holes.

**304.13.2 Openable windows.** Every window, other than a fixed window, shall be easily openable and capable of being held in position by window hardware.

**304.14 Insect screens.** During the period from [DATE] to [DATE], every door, window and other outside opening required for ventilation of habitable rooms, food preparation areas, food service areas or any areas where products to be included or utilized in food for human consumption are processed, manufactured, packaged or stored shall be supplied with approved tightly fitting screens of not less than 16 mesh per inch (16 mesh per 25 mm), and every screen door used for insect control shall have a self-closing device in good working condition.

Exception: Screens shall not be required where other approved means, such as air curtains or insect repellent fans, are employed.

**304.15 Doors.** All exterior doors, door assemblies and hardware shall be maintained in good condition. Locks at all entrances to dwelling units and sleeping units shall tightly secure the door. Locks on means of egress doors shall be in accordance with Section 702.3.

**304.16 Basement hatchways.** Every basement hatchway shall be maintained to prevent the entrance of rodents, rain and surface drainage water.

**304.17 Guards for basement windows.** Every basement window that is openable shall be supplied with rodent shields, storm windows or other approved protection against the entry of rodents.

GENERAL REQUIREMENTS

**304.18 Building security.** Doors, windows or hatchways for dwelling units, room units or housekeeping units shall be provided with devices designed to provide security for the occupants and property within.

**304.18.1 Doors.** Doors providing access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with a deadbolt lock designed to be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort and shall have a lock throw of not less than 1 inch (25 mm). Such deadbolt locks shall be installed according to the manufacturer's specifications and maintained in good working order. For the purpose of this section, a sliding bolt shall not be considered an acceptable deadbolt lock.

**304.18.2 Windows.** Operable windows located in whole or in part within 6 feet (1828 mm) above ground level or a walking surface below that provide access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with a window sash locking device.

**304.18.3 Basement hatchways.** Basement hatchways that provide access to a dwelling unit, rooming unit or housekeeping unit that is rented, leased or let shall be equipped with devices that secure the units from unauthorized entry.

**SECTION 305**
**INTERIOR STRUCTURE**

**305.1 General.** The interior of a structure and equipment therein shall be maintained in good repair, structurally sound and in a sanitary condition. Occupants shall keep that part of the structure which they occupy or control in a clean and sanitary condition. Every owner of a structure containing a rooming house, housekeeping units, a hotel, a dormitory, two or more dwelling units or two or more nonresidential occupancies, shall maintain, in a clean and sanitary condition, the shared or public areas of the structure and exterior property.

**305.2 Structural members.** All structural members shall be maintained structurally sound, and be capable of supporting the imposed loads.

**305.3 Interior surfaces.** All interior surfaces, including windows and doors, shall be maintained in good, clean and sanitary condition. Peeling, chipping, flaking or abraded paint shall be repaired, removed or covered. Cracked or loose plaster, decayed wood and other defective surface conditions shall be corrected.

**305.4 Stairs and walking surfaces.** Every stair, ramp, landing, balcony, porch, deck or other walking surface shall be maintained in sound condition and good repair.

**305.5 Handrails and guards.** Every handrail and guard shall be firmly fastened and capable of supporting normally imposed loads and shall be maintained in good condition.

**305.6 Interior doors.** Every interior door shall fit reasonably well within its frame and shall be capable of being opened and closed by being properly and securely attached to jambs, headers or tracks as intended by the manufacturer of the attachment hardware.

**SECTION 306**
**HANDRAILS AND GUARDRAILS**

**306.1 General.** Every exterior and interior flight of stairs having more than four risers shall have a handrail on one side of the stair and every open portion of a stair, landing, balcony, porch, deck, ramp or other walking surface which is more than 30 inches (762 mm) above the floor or grade below shall have guards. Handrails shall not be less than 30 inches (762 mm) high or more than 42 inches (1067 mm) high measured vertically above the nosing of the tread or above the finished floor of the landing or walking surfaces. Guards shall not be less than 30 inches (762 mm) high above the floor of the landing, balcony, porch, deck, or ramp or other walking surface.

**Exception:** Guards shall not be required where exempted by the adopted building code.

**SECTION 307**
**RUBBISH AND GARBAGE**

**307.1 Accumulation of rubbish or garbage.** All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

**307.2 Disposal of rubbish.** Every occupant of a structure shall dispose of all rubbish in a clean and sanitary manner by placing such rubbish in approved containers.

**307.2.1 Rubbish storage facilities.** The owner of every occupied premises shall supply approved covered containers for rubbish, and the owner of the premises shall be responsible for the removal of rubbish.

**307.2.2 Refrigerators.** Refrigerators and similar equipment not in operation shall not be discarded, abandoned or stored on premises without first removing the doors.

**307.3 Disposal of garbage.** Every occupant of a structure shall dispose of garbage in a clean and sanitary manner by placing such garbage in an approved garbage disposal facility or approved garbage containers.

**307.3.1 Garbage facilities.** The owner of every dwelling shall supply one of the following: an approved mechanical food waste grinder in each dwelling unit; an approved incinerator unit in the structure available to the occupants in each dwelling unit; or an approved leakproof, covered, outside garbage container.

**307.3.2 Containers.** The operator of every establishment producing garbage shall provide, and at all times cause to be utilized, approved leakproof containers provided with close-fitting covers for the storage of such materials until removed from the premises for disposal.

**SECTION 308**
**EXTERMINATION**

**308.1 Infestation.** All structures shall be kept free from insect and rodent infestation. All structures in which insects or rodents are found shall be promptly exterminated by approved processes that will not be injurious to human health. After extermination, proper precautions shall be taken to prevent reinfestation.

GENERAL REQUIREMENTS

**308.2 Owner.** The owner of any structure shall be responsible for extermination within the structure prior to renting or leasing the structure.

**308.3 Single occupant.** The occupant of a one-family dwelling or of a single-tenant nonresidential structure shall be responsible for extermination on the premises.

**308.4 Multiple occupancy.** The owner of a structure containing two or more dwelling units, a multiple occupancy, a rooming house or a nonresidential structure shall be responsible for extermination in the public or shared areas of the structure and exterior property. If infestation is caused by failure of an occupant to prevent such infestation in the area occupied, the occupant shall be responsible for extermination.

**308.5 Occupant.** The occupant of any structure shall be responsible for the continued rodent and pest-free condition of the structure.

> **Exception:** Where the infestations are caused by defects in the structure, the owner shall be responsible for extermination.

CHAPTER 4

# LIGHT, VENTILATION AND OCCUPANCY LIMITATIONS

## SECTION 401
## GENERAL

**401.1 Scope.** The provisions of this chapter shall govern the minimum conditions and standards for light, ventilation and space for occupying a structure.

**401.2 Responsibility.** The owner of the structure shall provide and maintain light, ventilation and space conditions in compliance with these requirements. A person shall not occupy as owner-occupant, or permit another person to occupy, any premises that do not comply with the requirements of this chapter.

**401.3 Alternative devices.** In lieu of the means for natural light and ventilation herein prescribed, artificial light or mechanical ventilation complying with the *International Building Code* shall be permitted.

## SECTION 402
## LIGHT

**402.1 Habitable spaces.** Every habitable space shall have at least one window of approved size facing directly to the outdoors or to a court. The minimum total glazed area for every habitable space shall be 8 percent of the floor area of such room. Wherever walls or other portions of a structure face a window of any room and such obstructions are located less than 3 feet (914 mm) from the window and extend to a level above that of the ceiling of the room, such window shall not be deemed to face directly to the outdoors nor to a court and shall not be included as contributing to the required minimum total window area for the room.

> **Exception:** Where natural light for rooms or spaces without exterior glazing areas is provided through an adjoining room, the unobstructed opening to the adjoining room shall be at least 8 percent of the floor area of the interior room or space, but not less than 25 square feet (2.33 m²). The exterior glazing area shall be based on the total floor area being served.

**402.2 Common halls and stairways.** Every common hall and stairway in residential occupancies, other than in one- and two-family dwellings, shall be lighted at all times with at least a 60-watt standard incandescent light bulb for each 200 square feet (19 m²) of floor area or equivalent illumination, provided that the spacing between lights shall not be greater than 30 feet (9144 mm). In other than residential occupancies, means of egress, including exterior means of egress, stairways shall be illuminated at all times the building space served by the means of egress is occupied with a minimum of 1 footcandle (11 lux) at floors, landings and treads.

**402.3 Other spaces.** All other spaces shall be provided with natural or artificial light sufficient to permit the maintenance of sanitary conditions, and the safe occupancy of the space and utilization of the appliances, equipment and fixtures.

## SECTION 403
## VENTILATION

**403.1 Habitable spaces.** Every habitable space shall have at least one openable window. The total openable area of the window in every room shall be equal to at least 45 percent of the minimum glazed area required in Section 402.1.

> **Exception:** Where rooms and spaces without openings to the outdoors are ventilated through an adjoining room, the unobstructed opening to the adjoining room shall be at least 8 percent of the floor area of the interior room or space, but not less than 25 square feet (2.33 m²). The ventilation openings to the outdoors shall be based on a total floor area being ventilated.

**403.2 Bathrooms and toilet rooms.** Every bathroom and toilet room shall comply with the ventilation requirements for habitable spaces as required by Section 403.1, except that a window shall not be required in such spaces equipped with a mechanical ventilation system. Air exhausted by a mechanical ventilation system from a bathroom or toilet room shall discharge to the outdoors and shall not be recirculated.

**403.3 Cooking facilities.** Unless approved through the certificate of occupancy, cooking shall not be permitted in any rooming unit or dormitory unit, and a cooking facility or appliance shall not be permitted to be present in the rooming unit or dormitory unit.

> **Exceptions:**
> 1. Where specifically approved in writing by the code official.
> 2. Devices such as coffee pots and microwave ovens shall not be considered cooking appliances.

**403.4 Process ventilation.** Where injurious, toxic, irritating or noxious fumes, gases, dusts or mists are generated, a local exhaust ventilation system shall be provided to remove the contaminating agent at the source. Air shall be exhausted to the exterior and not be recirculated to any space.

**403.5 Clothes dryer exhaust.** Clothes dryer exhaust systems shall be independent of all other systems and shall be exhausted in accordance with the manufacturer's instructions.

## SECTION 404
## OCCUPANCY LIMITATIONS

**404.1 Privacy.** Dwelling units, hotel units, housekeeping units, rooming units and dormitory units shall be arranged to provide privacy and be separate from other adjoining spaces.

**404.2 Minimum room widths.** A habitable room, other than a kitchen, shall not be less than 7 feet (2134 mm) in any plan dimension. Kitchens shall have a clear passageway of not less

than 3 feet (914 mm) between counterfronts and appliances or counterfronts and walls.

**404.3 Minimum ceiling heights.** Habitable spaces, hallways, corridors, laundry areas, bathrooms, toilet rooms and habitable basement areas shall have a clear ceiling height of not less than 7 feet (2134 mm).

**Exceptions:**

1. In one- and two-family dwellings, beams or girders spaced not less than 4 feet (1219 mm) on center and projecting not more than 6 inches (152 mm) below the required ceiling height.
2. Basement rooms in one- and two-family dwellings occupied exclusively for laundry, study or recreation purposes, having a ceiling height of not less than 6 feet 8 inches (2033 mm) with not less than 6 feet 4 inches (1932 mm) of clear height under beams, girders, ducts and similar obstructions.
3. Rooms occupied exclusively for sleeping, study or similar purposes and having a sloped ceiling over all or part of the room, with a clear ceiling height of at least 7 feet (2134 mm) over not less than one-third of the required minimum floor area. In calculating the floor area of such rooms, only those portions of the floor area with a clear ceiling height of 5 feet (1524 mm) or more shall be included.

**404.4 Bedroom and living room requirements.** Every bedroom and living room shall comply with the requirements of Sections 404.4.1 through 404.4.5.

**404.4.1 Room area.** Every living room shall contain at least 120 square feet (11.2 $m^2$) and every bedroom shall contain at least 70 square feet (6.5 $m^2$).

**404.4.2 Access from bedrooms.** Bedrooms shall not constitute the only means of access to other bedrooms or habitable spaces and shall not serve as the only means of egress from other habitable spaces.

**Exception:** Units that contain fewer than two bedrooms.

**404.4.3 Water closet accessibility.** Every bedroom shall have access to at least one water closet and one lavatory without passing through another bedroom. Every bedroom in a dwelling unit shall have access to at least one water closet and lavatory located in the same story as the bedroom or an adjacent story.

**404.4.4 Prohibited occupancy.** Kitchens and nonhabitable spaces shall not be used for sleeping purposes.

**404.4.5 Other requirements.** Bedrooms shall comply with the applicable provisions of this code including, but not limited to, the light, ventilation, room area, ceiling height and room width requirements of this chapter; the plumbing facilities and water-heating facilities requirements of Chapter 5; the heating facilities and electrical receptacle requirements of Chapter 6; and the smoke detector and emergency escape requirements of Chapter 7.

**404.5 Overcrowding.** The number of persons occupying a dwelling unit shall not create conditions that, in the opinion of the code official, endanger the life, health, safety or welfare of the occupants.

**404.6 Efficiency unit.** Nothing in this section shall prohibit an efficiency living unit from meeting the following requirements:

1. A unit occupied by not more than two occupants shall have a clear floor area of not less than 220 square feet (20.4 $m^2$). A unit occupied by three occupants shall have a clear floor area of not less than 320 square feet (29.7 $m^2$). These required areas shall be exclusive of the areas required by Items 2 and 3.
2. The unit shall be provided with a kitchen sink, cooking appliance and refrigeration facilities, each having a clear working space of not less than 30 inches (762 mm) in front. Light and ventilation conforming to this code shall be provided.
3. The unit shall be provided with a separate bathroom containing a water closet, lavatory and bathtub or shower.
4. The maximum number of occupants shall be three.

**404.7 Food preparation.** All spaces to be occupied for food preparation purposes shall contain suitable space and equipment to store, prepare and serve foods in a sanitary manner. There shall be adequate facilities and services for the sanitary disposal of food wastes and refuse, including facilities for temporary storage.

CHAPTER 5

# PLUMBING FACILITIES AND FIXTURE REQUIREMENTS

## SECTION 501
### GENERAL

**501.1 Scope.** The provisions of this chapter shall govern the minimum plumbing systems, facilities and plumbing fixtures to be provided.

**501.2 Responsibility.** The owner of the structure shall provide and maintain such plumbing facilities and plumbing fixtures in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any structure or premises which does not comply with the requirements of this chapter.

## [P] SECTION 502
### REQUIRED FACILITIES

**502.1 Dwelling units.** Every dwelling unit shall contain its own bathtub or shower, lavatory, water closet and kitchen sink which shall be maintained in a sanitary, safe working condition. The lavatory shall be placed in the same room as the water closet or located in close proximity to the door leading directly into the room in which such water closet is located. A kitchen sink shall not be used as a substitute for the required lavatory.

**502.2 Rooming houses.** At least one water closet, lavatory and bathtub or shower shall be supplied for each four rooming units.

**502.3 Hotels.** Where private water closets, lavatories and baths are not provided, one water closet, one lavatory and one bathtub or shower having access from a public hallway shall be provided for each ten occupants.

**502.4 Employees' facilities.** A minimum of one water closet, one lavatory and one drinking facility shall be available to employees.

**502.4.1 Drinking facilities.** Drinking facilities shall be a drinking fountain, water cooler, bottled water cooler or disposable cups next to a sink or water dispenser. Drinking facilities shall not be located in toilet rooms or bathrooms.

## [P] SECTION 503
### TOILET ROOMS

**503.1 Privacy.** Toilet rooms and bathrooms shall provide privacy and shall not constitute the only passageway to a hall or other space, or to the exterior. A door and interior locking device shall be provided for all common or shared bathrooms and toilet rooms in a multiple dwelling.

**503.2 Location.** Toilet rooms and bathrooms serving hotel units, rooming units or dormitory units or housekeeping units, shall have access by traversing not more than one flight of stairs and shall have access from a common hall or passageway.

**503.3 Location of employee toilet facilities.** Toilet facilities shall have access from within the employees' working area. The required toilet facilities shall be located not more than one story above or below the employees' working area and the path of travel to such facilities shall not exceed a distance of 500 feet (152 m). Employee facilities shall either be separate facilities or combined employee and public facilities.

**Exception:** Facilities that are required for employees in storage structures or kiosks, which are located in adjacent structures under the same ownership, lease or control, shall not exceed a travel distance of 500 feet (152 m) from the employees' regular working area to the facilities.

**503.4 Floor surface.** In other than dwelling units, every toilet room floor shall be maintained in a smooth, hard, nonabsorbent surface to permit such floor to be easily kept in a clean and sanitary condition.

## [P] SECTION 504
### PLUMBING SYSTEMS AND FIXTURES

**504.1 General.** All plumbing fixtures shall be properly installed and maintained in working order, and shall be kept free from obstructions, leaks and defects and be capable of performing the function for which such plumbing fixtures are designed. All plumbing fixtures shall be maintained in a safe, sanitary and functional condition.

**504.2 Fixture clearances.** Plumbing fixtures shall have adequate clearances for usage and cleaning.

**504.3 Plumbing system hazards.** Where it is found that a plumbing system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, inadequate venting, cross connection, backsiphonage, improper installation, deterioration or damage or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard.

## SECTION 505
### WATER SYSTEM

**505.1 General.** Every sink, lavatory, bathtub or shower, drinking fountain, water closet or other plumbing fixture shall be properly connected to either a public water system or to an approved private water system. All kitchen sinks, lavatories, laundry facilities, bathtubs and showers shall be supplied with hot or tempered and cold running water in accordance with the *International Plumbing Code*.

**[P] 505.2 Contamination.** The water supply shall be maintained free from contamination, and all water inlets for plumbing fixtures shall be located above the flood-level rim of the fixture. Shampoo basin faucets, janitor sink faucets and other hose bibs or faucets to which hoses are attached and left in

PLUMBING FACILITIES AND FIXTURE REQUIREMENTS

place, shall be protected by an approved atmospheric-type vacuum breaker or an approved permanently attached hose connection vacuum breaker.

**505.3 Supply.** The water supply system shall be installed and maintained to provide a supply of water to plumbing fixtures, devices and appurtenances in sufficient volume and at pressures adequate to enable the fixtures to function properly, safely, and free from defects and leaks.

**505.4 Water heating facilities.** Water heating facilities shall be properly installed, maintained and capable of providing an adequate amount of water to be drawn at every required sink, lavatory, bathtub, shower and laundry facility at a temperature of not less than 110°F (43°C). A gas-burning water heater shall not be located in any bathroom, toilet room, bedroom or other occupied room normally kept closed, unless adequate combustion air is provided. An approved combination temperature and pressure-relief valve and relief valve discharge pipe shall be properly installed and maintained on water heaters.

## [P] SECTION 506
## SANITARY DRAINAGE SYSTEM

**506.1 General.** All plumbing fixtures shall be properly connected to either a public sewer system or to an approved private sewage disposal system.

**506.2 Maintenance.** Every plumbing stack, vent, waste and sewer line shall function properly and be kept free from obstructions, leaks and defects.

## [P] SECTION 507
## STORM DRAINAGE

**507.1 General.** Drainage of roofs and paved areas, yards and courts, and other open areas on the premises shall not be discharged in a manner that creates a public nuisance.

CHAPTER 6

# MECHANICAL AND ELECTRICAL REQUIREMENTS

## SECTION 601
### GENERAL

601.1 Scope. The provisions of this chapter shall govern the minimum mechanical and electrical facilities and equipment to be provided.

601.2 Responsibility. The owner of the structure shall provide and maintain mechanical and electrical facilities and equipment in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any premises which does not comply with the requirements of this chapter.

## SECTION 602
### HEATING FACILITIES

602.1 Facilities required. Heating facilities shall be provided in structures as required by this section.

602.2 Residential occupancies. Dwellings shall be provided with heating facilities capable of maintaining a room temperature of 68°F (20°C) in all habitable rooms, bathrooms and toilet rooms based on the winter outdoor design temperature for the locality indicated in Appendix D of the *International Plumbing Code*. Cooking appliances shall not be used to provide space heating to meet the requirements of this section.

Exception: In areas where the average monthly temperature is above 30°F (-1°C), a minimum temperature of 65°F (18°C) shall be maintained.

602.3 Heat supply. Every owner and operator of any building who rents, leases or lets one or more dwelling units or sleeping units on terms, either expressed or implied, to furnish heat to the occupants thereof shall supply heat during the period from [DATE] to [DATE] to maintain a temperature of not less than 68°F (20°C) in all habitable rooms, bathrooms, and toilet rooms.

Exceptions:

1. When the outdoor temperature is below the winter outdoor design temperature for the locality, maintenance of the minimum room temperature shall not be required provided that the heating system is operating at its full design capacity. The winter outdoor design temperature for the locality shall be as indicated in Appendix D of the *International Plumbing Code*.

2. In areas where the average monthly temperature is above 30°F (-1°C) a minimum temperature of 65°F (18°C) shall be maintained.

602.4 Occupiable work spaces. Indoor occupiable work spaces shall be supplied with heat during the period from [DATE] to [DATE] to maintain a temperature of not less than 65°F (18°C) during the period the spaces are occupied.

Exceptions:

1. Processing, storage and operation areas that require cooling or special temperature conditions.

2. Areas in which persons are primarily engaged in vigorous physical activities.

602.5 Room temperature measurement. The required room temperatures shall be measured 3 feet (914 mm) above the floor near the center of the room and 2 feet (610 mm) inward from the center of each exterior wall.

## SECTION 603
### MECHANICAL EQUIPMENT

603.1 Mechanical appliances. All mechanical appliances, fireplaces, solid fuel-burning appliances, cooking appliances and water heating appliances shall be properly installed and maintained in a safe working condition, and shall be capable of performing the intended function.

603.2 Removal of combustion products. All fuel-burning equipment and appliances shall be connected to an approved chimney or vent.

Exception: Fuel-burning equipment and appliances which are labeled for unvented operation.

603.3 Clearances. All required clearances to combustible materials shall be maintained.

603.4 Safety controls. All safety controls for fuel-burning equipment shall be maintained in effective operation.

603.5 Combustion air. A supply of air for complete combustion of the fuel and for ventilation of the space containing the fuel-burning equipment shall be provided for the fuel-burning equipment.

603.6 Energy conservation devices. Devices intended to reduce fuel consumption by attachment to a fuel-burning appliance, to the fuel supply line thereto, or to the vent outlet or vent piping therefrom, shall not be installed unless labeled for such purpose and the installation is specifically approved.

## SECTION 604
### ELECTRICAL FACILITIES

604.1 Facilities required. Every occupied building shall be provided with an electrical system in compliance with the requirements of this section and Section 605.

604.2 Service. The size and usage of appliances and equipment shall serve as a basis for determining the need for additional facilities in accordance with the ICC *Electrical Code*. Dwelling units shall be served by a three-wire, 120/240 volt, single-

phase electrical service having a rating of not less than 60 amperes.

**604.3 Electrical system hazards.** Where it is found that the electrical system in a structure constitutes a hazard to the occupants or the structure by reason of inadequate service, improper fusing, insufficient receptacle and lighting outlets, improper wiring or installation, deterioration or damage, or for similar reasons, the code official shall require the defects to be corrected to eliminate the hazard.

## SECTION 605
## ELECTRICAL EQUIPMENT

**605.1 Installation.** All electrical equipment, wiring and appliances shall be properly installed and maintained in a safe and approved manner.

**605.2 Receptacles.** Every habitable space in a dwelling shall contain at least two separate and remote receptacle outlets. Every laundry area shall contain at least one grounded-type receptacle or a receptacle with a ground fault circuit interrupter. Every bathroom shall contain at least one receptacle. Any new bathroom receptacle outlet shall have ground fault circuit interrupter protection.

**605.3 Luminaires.** Every public hall, interior stairway, toilet room, kitchen, bathroom, laundry room, boiler room and furnace room shall contain at least one electric luminaire.

## SECTION 606
## ELEVATORS, ESCALATORS AND DUMBWAITERS

**606.1 General.** Elevators, dumbwaiters and escalators shall be maintained in compliance with ASME A17.1. The most current certification of inspection shall be on display at all times within the elevator or attached to the escalator or dumbwaiter, or the certificate shall be available for public inspection in the office of the building operator. The inspection and tests shall be performed at not less than the periodical intervals listed in ASME A17.1, Appendix N, except where otherwise specified by the authority having jurisdiction.

**606.2 Elevators.** In buildings equipped with passenger elevators, at least one elevator shall be maintained in operation at all times when the building is occupied.

**Exception:** Buildings equipped with only one elevator shall be permitted to have the elevator temporarily out of service for testing or servicing.

## SECTION 607
## DUCT SYSTEMS

**607.1 General.** Duct systems shall be maintained free of obstructions and shall be capable of performing the required function.

CHAPTER 7

# FIRE SAFETY REQUIREMENTS

## SECTION 701
## GENERAL

**701.1 Scope.** The provisions of this chapter shall govern the minimum conditions and standards for fire safety relating to structures and exterior premises, including fire safety facilities and equipment to be provided.

**701.2 Responsibility.** The owner of the premises shall provide and maintain such fire safety facilities and equipment in compliance with these requirements. A person shall not occupy as owner-occupant or permit another person to occupy any premises that do not comply with the requirements of this chapter.

## [F] SECTION 702
## MEANS OF EGRESS

**702.1 General.** A safe, continuous and unobstructed path of travel shall be provided from any point in a building or structure to the public way. Means of egress shall comply with the *International Fire Code*.

**702.2 Aisles.** The required width of aisles in accordance with the *International Fire Code* shall be unobstructed.

**702.3 Locked doors.** All means of egress doors shall be readily openable from the side from which egress is to be made without the need for keys, special knowledge or effort, except where the door hardware conforms to that permitted by the *International Building Code*.

**702.4 Emergency escape openings.** Required emergency escape openings shall be maintained in accordance with the code in effect at the time of construction, and the following. Required emergency escape and rescue openings shall be operational from the inside of the room without the use of keys or tools. Bars, grilles, grates or similar devices are permitted to be placed over emergency escape and rescue openings provided the minimum net clear opening size complies with the code that was in effect at the time of construction and such devices shall be releasable or removable from the inside without the use of a key, tool or force greater than that which is required for normal operation of the escape and rescue opening.

## [F] SECTION 703
## FIRE-RESISTANCE RATINGS

**703.1 Fire-resistance-rated assemblies.** The required fire-resistance rating of fire-resistance-rated walls, fire stops, shaft enclosures, partitions and floors shall be maintained.

**703.2 Opening protectives.** Required opening protectives shall be maintained in an operative condition. All fire and smokestop doors shall be maintained in operable condition.

Fire doors and smoke barrier doors shall not be blocked or obstructed or otherwise made inoperable.

## [F] SECTION 704
## FIRE PROTECTION SYSTEMS

**704.1 General.** All systems, devices and equipment to detect a fire, actuate an alarm, or suppress or control a fire or any combination thereof shall be maintained in an operable condition at all times in accordance with the *International Fire Code*.

**704.2 Smoke alarms.** Single or multiple-station smoke alarms shall be installed and maintained in Groups R-2, R-3, R-4 and in dwellings not regulated as Group R occupancies, regardless of occupant load at all of the following locations:

1. On the ceiling or wall outside of each separate sleeping area in the immediate vicinity of bedrooms.

2. In each room used for sleeping purposes.

3. In each story within a dwelling unit, including basements and cellars but not including crawl spaces and uninhabitable attics. In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level.

Single or multiple-station smoke alarms shall be installed in other groups in accordance with the *International Fire Code*.

**704.3 Power source.** In Group R occupancies and in dwellings not regulated as Group R occupancies, single-station smoke alarms shall receive their primary power from the building wiring provided that such wiring is served from a commercial source and shall be equipped with a battery backup. Smoke alarms shall emit a signal when the batteries are low. Wiring shall be permanent and without a disconnecting switch other than as required for overcurrent protection.

> **Exception:** Smoke alarms are permitted to be solely battery operated in buildings where no construction is taking place, buildings that are not served from a commercial power source and in existing areas of buildings undergoing alterations or repairs that do not result in the removal of interior wall or ceiling finishes exposing the structure, unless there is an attic, crawl space or basement available which could provide access for building wiring without the removal of interior finishes.

**704.4 Interconnection.** Where more than one smoke alarm is required to be installed within an individual dwelling unit in Group R-2, R-3, R-4 and in dwellings not regulated as Group R occupancies, the smoke alarms shall be interconnected in such

FIRE SAFETY REQUIREMENTS

a manner that the activation of one alarm will activate all of the alarms in the individual unit. The alarm shall be clearly audible in all bedrooms over background noise levels with all intervening doors closed.

Exceptions:

1. Interconnection is not required in buildings which are not undergoing alterations, repairs, or construction of any kind.

2. Smoke alarms in existing areas are not required to be interconnected where alterations or repairs do not result in the removal of interior wall or ceiling finishes exposing the structure, unless there is an attic, crawl space or basement available which could provide access for interconnection without the removal of interior finishes.

# CHAPTER 8

# REFERENCED STANDARDS

This chapter lists the standards that are referenced in various sections of this document. The standards are listed herein by the promulgating agency of the standard, the standard identification, the effective date and title and the section or sections of this document that reference the standard. The application of the referenced standards shall be as specified in Section 102.7.

## ASME

American Society of Mechanical Engineers
Three Park Avenue
New York, NY 10016-5990

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| A17.1—2000 | Safety Code for Elevators and Escalators with A17.1a 2002 Addenda | 606.1 |

## ASTM

ASTM International
100 Barr Harbor Drive
West Conshohocken, PA 19428-2959

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| F1346—91 (2003) | Performance Specifications for Safety Covers and Labeling Requirements for All Covers for Swimming Pools, Spas and Hot Tubs | 303.2 |

## ICC

International Code Council
5203 Leesburg Pike, Suite 600
Falls Church, VA 22041

| Standard reference number | Title | Referenced in code section number |
|---|---|---|
| ICC EC—06 | ICC Electrical Code® — Administrative Provisions | 201.3, 604.2 |
| IBC—06 | International Building Code® | 102.3, 201.3, 401.3, 702.3 |
| IFC—06 | International Fire Code® | 201.3, 702.1, 702.2, 704.1, 704.2 |
| IFGC—06 | International Fuel Gas Code® | 102.3 |
| IMC—06 | International Mechanical Code® | 102.3, 201.3 |
| IPC—06 | International Plumbing Code® | 201.3, 505.1, 602.2, 602.3 |
| IZC—06 | International Zoning Code® | 102.3, 201.3 |

# INDEX

## A

ACCEPTED ENGINEERING METHODS . . . . . . . 104.2
ACCESS
    Egress . . . . . . . . . . . . . . . . . . . . . . . . . . . .702
    From bedrooms . . . . . . . . . . . . . . . . . . . . . 404.4.2
    Plumbing fixtures, access for cleaning . . . . . 504.2
    To public way . . . . . . . . . . . . . . . . . . . . . . .702.1
    Toilet room as passageway . . . . . . . . . . . . . 503.1
    Water closet . . . . . . . . . . . . . . . . . . . . . . . 404.4.3
ADJACENT
    Privacy (hotel units, rooming units) . . . . . . . 404.1
ADMINISTRATION
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
AGENT (See also OPERATOR) . . . . . . . . . . . . 202
    (See OWNER)
AIR
    Combustion air . . . . . . . . . . . . . . . . . . . . . .603.5
AISLES
    Minimum width . . . . . . . . . . . . . . . . . . . . . . 702.2
ALTERATION
    Applicability of other codes . . . . . . . . . . . . 102.3
    Condemnation . . . . . . . . . . . . . . . . . 108.1, 108.2
    Inspection . . . . . . . . . . . . . . . . . . . . . . . . . 104.3
    Prosecution . . . . . . . . . . . . . . . . . . . . . . . . 106.3
    Unlawful acts . . . . . . . . . . . . . . . . . . . . . . 106.1
ANCHOR
    Architectural trim . . . . . . . . . . . . . . . . . . . . 304.8
    Signs, marquees and awnings . . . . . . . . . . 304.9
APPEAL
    Application . . . . . . . . . . . . . . . . . . . . . . . . .111.1
    Board decision . . . . . . . . . . . . . . . . . . . . . .111.6
    Board of appeals . . . . . . . . . . . . . . . . . . . . .111.2
    Court review . . . . . . . . . . . . . . . . . . . . . . . .111.7
    Disqualification . . . . . . . . . . . . . . . . . . . . 111.2.3
    Financial interest . . . . . . . . . . . . . . . . . . . 111.2.3
    Hearing, emergency orders . . . . . . . . . . . . 109.6
    Membership . . . . . . . . . . . . . . . . . . . . . . . .111.2
    Notice of appeal . . . . . . . . . . . . . . . . . . . . .111.1
    Postponed hearing . . . . . . . . . . . . . . . . . . .111.5
    Records . . . . . . . . . . . . . . . . . . . . . . . . . . .104.7
    Right to appeal . . . . . . . . . . . . . . . . . . . . . .111.1
    Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .111.6
APPLIANCE
    Cooking . . . . . . . . . . . . . . . . . . . . . 403.3, 602.2
    Heating . . . . . . . . . . . . . . . . . . . . . . 602.2, 603.1
    Mechanical . . . . . . . . . . . . . . . . . . . . . . . . 603.1
APPLICATION
    Other codes . . . . . . . . . . . . . . . . . . . . . . . 102.3
APPROVAL
    Alternatives . . . . . . . . . . . . . . . . . . . . . . . .105.2
    Authority . . . . . . . . . . . . . . . . . . . . . 104.1, 105.2
    Modifications . . . . . . . . . . . . . . . . . . . . . . .105.1
APPROVED

Alternative materials, methods and
    equipment . . . . . . . . . . . . . . . . . . . . . . . . 105.2
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Energy conservation devices . . . . . . . . . . . 603.6
    Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . . 603.1
    Garbage storage facilities . . . . . . . . . . . . . 307.3.1
    Modifications . . . . . . . . . . . . . . . . . . . . . . . 105.1
    Used materials and equipment . . . . . . . . . . 105.4
ARCHITECTURAL
    Structural members . . . . . . . . . . . . . . . . . . 304.4
    Trim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.8
ARTIFICIAL
    Lighting of habitable rooms . . . . . . . . . . . . .401.3
    Lighting of other spaces . . . . . . . . . . . . . . .402.3
AUTOMOBILE
    Motor vehicles . . . . . . . . . . . . . . . . . . . . . . 302.8
AWNING
    Signs, marquees and awnings . . . . . . . . . . 304.9

## B

BALCONY
    Handrails and guardrails . . . . . . . . . . . . . . 306.1
BASEMENT
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . .202
    Hatchways . . . . . . . . . . . . . . . . . . . . . . . 304.16
    Windows . . . . . . . . . . . . . . . . . . . . . . . . . 304.17
BATHROOM
    Common bathrooms . . . . . . . . . . . . 502.3, 503.1
    Hotels . . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
    Lighting . . . . . . . . . . . . . . . . . . . . . . . . . . .605.3
    Locks . . . . . . . . . . . . . . . . . . . . . . . . . . . . .503.1
    Outlets required . . . . . . . . . . . . . . . . . . . . .605.2
    Privacy . . . . . . . . . . . . . . . . . . . . . . . . . . . 503.1
    Ventilation . . . . . . . . . . . . . . . . . . . . . . . . .403.2
BATHTUB
    Required facilities . . . . . . . . . . . . . . . . . . . .502.1
    Rooming houses . . . . . . . . . . . . . . . . . . . . .502.2
    Sewage system . . . . . . . . . . . . . . . . . . . . .506.1
    Water heating facilities . . . . . . . . . . . . . . . .505.4
    Water system . . . . . . . . . . . . . . . . . . . . . . 505.1
BEDROOM
    Room area . . . . . . . . . . . . . . . . . . . . . . . 404.4.1
BOILER
    Unsafe equipment . . . . . . . . . . . . . . . . . . 108.1.2

## C

CAPACITY
    Heating facilities . . . . . . . . . . 602.2, 602.3, 602.4
CAR (See AUTOMOBILE)
CEILING
    Basement rooms . . . . . . . . . . . . . . . . . . . .404.3

INDEX

Fire-resistance ratings . . . . . . . . . . . . . . . .703.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . .305.3
Minimum height . . . . . . . . . . . . . . . . . . . . .404.3
CHANGE, MODIFY
Application of other codes . . . . . . . . . . . . . .102.3
CHIMNEY
Exterior structure . . . . . . . . . . . . . . . . . . .304.11
Fireplaces . . . . . . . . . . . . . . . . . . . . . . . . . .603.1
Flue . . . . . . . . . . . . . . . . . . . . . . . . .603.2, 603.3
CLEANING
Access for cleaning . . . . . . . . . . . . . . . . . . .504.2
Bathroom and kitchen floors . . . . . . .305.3, 503.4
Disposal of garbage . . . . . . . . . . . . . . . . . . .307.3
Disposal of rubbish . . . . . . . . . . . . . . . . . . .307.2
Interior sanitation . . . . . . . . . . . . . . . . . . . .307.1
Interior surfaces . . . . . . . . . . . . . . . . . . . . .305.3
Plumbing facilities, maintained . . . . . . . . . .504.1
Required plumbing facilities . . . . . . . . . . . . . .502
Responsibility of persons . . . . . . . . . . . . . . .305.1
Trash containers . . . . . . . . . . . . . . . . . . . .307.3.2
Vacant structures and land . . . . . . . . . . . . .301.3
CLEARANCE
Heating facilities . . . . . . . . . . . . . . . . . . . . .603.3
Plumbing fixtures . . . . . . . . . . . . . . . . . . . .504.2
CLOSING
Streets . . . . . . . . . . . . . . . . . . . . . . . . . . . . .109.3
Vacant structures . . . . . . . . . . . . . . . . . . . .108.2
CLOTHES DRYER
Exhaust . . . . . . . . . . . . . . . . . . . . . . . . . . . .403.5
CODE OFFICIAL
Condemnation . . . . . . . . . . . . . . . . . . . . . .108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . .110
Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .104
Emergency order . . . . . . . . . . . . . . . . . . . . . .109
Enforcement authority . . . . . . . . . . . . . . . . .104.1
Failure to comply with demolition order . . . .110.3
Identification . . . . . . . . . . . . . . . . . . . . . . . .104.5
Inspections . . . . . . . . . . . . . . . . . . . . . . . . .104.3
Liability, relief of personal . . . . . . . . . . . . . .103.4
Membership of board of appeals . . . . . . . . .111.2
Notice of violation . . . . . . . . . . . . . . . .104.6, 107
Notices and orders . . . . . . . . . . . . . . . . . . . . .107
Official records . . . . . . . . . . . . . . . . . . . . . .104.7
Personal liability . . . . . . . . . . . . . . . . . . . . .103.4
Placarding . . . . . . . . . . . . . . . . . . . . . . . . . .108.4
Prosecution . . . . . . . . . . . . . . . . . . . . . . . . .106.3
Removal of placard . . . . . . . . . . . . . . . . . .108.4.1
Right of entry . . . . . . . . . . . . . . . . . . . . . . .104.4
Rule-making authority . . . . . . . . . . . . . . . . .104.2
Transfer of ownership . . . . . . . . . . . . . . . . .107.5
Vacant structures . . . . . . . . . . . . . . . . . . . .108.2
Voting of appeals board . . . . . . . . . .111.2, 111.6
COLD WATER
Drinking . . . . . . . . . . . . . . . . . . . . . . . . . . .502.4
Required facilities . . . . . . . . . . . . . . . . . . . . .502
Rooming houses . . . . . . . . . . . . . . . . . . . . .502.2
Water system . . . . . . . . . . . . . . . . . . . . . . . .505
COMBUSTION
Combustion air . . . . . . . . . . . . . . . . . . . . . .603.5

CONDEMNATION
Closing of vacant structures . . . . . . . . . . . .108.2
Failure to comply . . . . . . . . . . . . . . . . . . . . .110.3
General . . . . . . . . . . . . . . . . . . . . . . . . . . . .108.1
Notices and orders . . . . . . . . . . . . . .108.2, 108.3
Placarding . . . . . . . . . . . . . . . . . . . . . . . . . .108.4
Removal of placard . . . . . . . . . . . . . . . . . .108.4.1
CONFLICT
Conflict of interest . . . . . . . . . . . . . . . . . . .111.2.3
Violations . . . . . . . . . . . . . . . . . . . . . . . . . .106.1
CONNECTION
Plumbing fixtures . . . . . . . . . . . . . . . . . . . .504.1
Sewage system . . . . . . . . . . . . . . . . . . . . . .506.1
Water heating . . . . . . . . . . . . . . . . . . . . . . .505.4
Water system . . . . . . . . . . . . . . . . . . . . . . .505.1
CONSTRUCTION
Existing structures . . . . . . . . . . . . . . . . . . . .101.2
CONTAINER
Garbage . . . . . . . . . . . . . . . . . . . . . . . . . .307.3.2
Rubbish storage . . . . . . . . . . . . . . . . . . . .307.2.1
CONTINUOUS
Egress . . . . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
CONTRACTOR
Conflict of interest . . . . . . . . . . . . . . . . . . .111.2.3
CONTROL
Insect and rodent control . . . . . . . . .302.5, 304.5
Safety controls . . . . . . . . . . . . . . . . . . . . . .603.4
COOLING
Cooling towers . . . . . . . . . . . . . . . . . . . . .304.11
CORRIDOR
Accumulation of rubbish . . . . . . . . . . . . . . .307.1
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .402.2
Lighting fixtures . . . . . . . . . . . . . . . . . . . . .605.3
Ratings maintained . . . . . . . . . . . . . . . . . . . .703
Toilet rooms, access . . . . . . . . . . . . . . . . . .503.1

D

DAMP, DAMPNESS
Roofs . . . . . . . . . . . . . . . . . . . . . . . . . . . . .304.7
Window, door frames . . . . . . . . . . . . . . . . .304.13
DANGEROUS, HAZARDOUS
Condemnation . . . . . . . . . . . . . . . . . . . . . .108.1
Demolition . . . . . . . . . . . . . . . . . . . . . . . . . .110
Electrical hazards . . . . . . . . . . . . . . . . . . . .604.3
Elevators . . . . . . . . . . . . . . . . . . . . . . . . . . .606.1
Existing remedies . . . . . . . . . . . . . . . . . . . .102.4
Fire safety . . . . . . . . . . . . . . . . . . . . . . . . . .701.1
Heating facilities . . . . . . . . . . . . . . . .602, 603.1
Imminent danger . . . . . . . . . . . . . . . . . . . . . .202
Unsafe structures and equipment . . . . . . . . .108
DECKS
Handrails and guardrails . . . . . . . . . . . . . .304.12
Maintenance . . . . . . . . . . . . . . . .304.2, 304.10
DECORATION
Exterior structure . . . . . . . . . . . . . . . . . . . .304.8
DEMOLITION
Existing remedies . . . . . . . . . . . . . . . . . . . .102.4

INDEX

Failure to comply. . . . . . . . . . . . . . . . . . . .110.3
General . . . . . . . . . . . . . . . . . . . . . . . . . . .110
Order. . . . . . . . . . . . . . . . . . . . . . . . . . . .110.2
Salvage materials . . . . . . . . . . . . . . . . . .110.4
Violations . . . . . . . . . . . . . . . . . . . . . . . .110.3
DETECTORS
Smoke . . . . . . . . . . . . . . . . . . . . . . . . . . .704
DETERIORATION
Exterior walls . . . . . . . . . . . . . . . . . . . . .304.6
DIRECT
Egress. . . . . . . . . . . . . . . . . . . . . . . . . . .702.1
DISPOSAL
Disposal of garbage . . . . . . . . . . . . . . . .307.3
Disposal of rubbish. . . . . . . . . . . . . . . . .307.2
DOOR
Exit doors . . . . . . . . . . . . . . . . . . . . . . . .702.2
Fire . . . . . . . . . . . . . . . . . . . . . . . . . . . . .703.2
Hardware . . . . . . . . . . . . . . . . . . . . . . .304.15
Insect screens. . . . . . . . . . . . . . . . . . . .304.14
Interior surfaces . . . . . . . . . . . . . . . . . . .305.3
Locks . . . . . . . . . . . . . . . . . . . . .304.15, 702.3
Maintenance . . . . . . . . . . . . . .304.13, 304.15
Weather tight. . . . . . . . . . . . . . . . . . . .304.13
Window and door frames . . . . . . . . . . .304.13
DORMITORY (ROOMING HOUSE, HOTEL, MOTEL)
Locked doors . . . . . . . . . . . . . . . . . . . .702.3
Privacy . . . . . . . . . . . . . . . . . . . . .503.1, 503.2
DRAIN, DRAINAGE
Basement hatchways . . . . . . . . . . . . . .304.16
Plumbing connections . . . . . . . . . . . . . . .506
Storm drainage . . . . . . . . . . . . . . . . . . . .507
DUCT
Exhaust duct . . . . . . . . . . . . . . . . . . . . .304.9
DUST
Process ventilation . . . . . . . . . . . . . . . .403.4
DWELLING
Cleanliness . . . . . . . . . . . . . . . .305.1, 307.1
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
Electrical . . . . . . . . . . . . . . . . . . . . . . . .604.1
Heating facilities. . . . . . . . . . . . . . . . . . .602
Required facilities . . . . . . . . . . . . . . . . . .502

E

EASEMENT
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
EGRESS
Aisles . . . . . . . . . . . . . . . . . . . . . . . . . .702.2
Emergency escape. . . . . . . . . . . . . . . . .702.4
General . . . . . . . . . . . . . . . . . . . . . . . . .702.1
Lighting . . . . . . . . . . . . . . . . . . . . . . . . .402.2
Locked doors . . . . . . . . . . . . . . . . . . . .702.3
Obstructions prohibited. . . . . . . . . . . . .702.1
Stairs, porches and
railings . . . . . . . . . 304.10, 305.4, 305.5, 306.1
ELECTRIC, ELECTRICAL
Condemnation . . . . . . . . . . . . . . . . . . . .108.1

Facilities required . . . . . . . . . . . . . . . . . .604.1
General. . . . . . . . . . . . . . . . . . . . . . . . . .601.1
Hazards . . . . . . . . . . . . . . . . . . . . . . . . .604.3
Installation. . . . . . . . . . . . . . . . . . . . . . .605.1
Luminaires . . . . . . . . . . . . . . . . . . . . . . .605.3
Receptacles. . . . . . . . . . . . . . . .604.3, 605.2
Responsibility . . . . . . . . . . . . . . . . . . . .601.2
Service . . . . . . . . . . . . . . . . . . . . . . . . .604.2
ELEVATOR
Condemnation . . . . . . . . . . . . . . . . . . . .108.1
General . . . . . . . . . . . . . . . . . . . . . . . . .606.1
Maintenance . . . . . . . . . . . . . . . .606.1, 606.2
EMERGENCY
Emergency measures . . . . . . . . . . . . . . .109
Emergency orders . . . . . . . . . . . . . . . . .109.1
Escape . . . . . . . . . . . . . . . . . . . . . . . . .702.4
ENFORCEMENT
Duties and powers. . . . . . . . . . . . . . . . . .104
Scope . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
EQUIPMENT
Alternative . . . . . . . . . . . . . . . . . . . . . . .105.2
Combustion air . . . . . . . . . . . . . . . . . . .603.5
Condemnation . . . . . . . . . . .108.1.2, 108.3
Electrical installation. . . . . . . . . . . . . . .605.1
Emergency order . . . . . . . . . . . . . . . . . .109.1
Energy conservation devices . . . . . . . . .603.6
Fire safety requirements, responsibility . . . .701.2
Flue . . . . . . . . . . . . . . . . . . . . . . . . . . .603.2
Installation. . . . . . . . . . . . . . . . . . . . . . .603.1
Interior structure . . . . . . . . . . . . . . . . . .305.1
Placarding . . . . . . . . . . . . . . . . .108.3, 108.4
Prohibited occupancy . . . . . . . . . . . . . .108.5
Responsibility . . . . . . . . . . . . . . . . . . . .601.2
Safety controls . . . . . . . . . . . . . . . . . . .603.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Scope, mechanical and electrical. . . . . . . .601.1
Unsafe . . . . . . . . . . . . . . . . . . . . . . . . . .108
Used . . . . . . . . . . . . . . . . . . . . . . . . . . .105.4
EXHAUST
Clothes dryer . . . . . . . . . . . . . . . . . . . .403.5
Exhaust ducts . . . . . . . . . . . . . . . . . . . .304.9
Process ventilation . . . . . . . . . . . . . . . .403.4
EXISTING
Remedies . . . . . . . . . . . . . . . . . . . . . . .102.4
Scope . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Structural members . . . . . . . . . . . . . . . .304.4
Structures . . . . . . . . . . . . . . . . . . . . . . .101.3
EXTERIOR
Decorative features. . . . . . . . . . . . . . . .304.8
Egress. . . . . . . . . . . . . . . . . . . . . . . . . .702.1
Exterior structure . . . . . . . . . . . . . . . . . .304
Exterior walls . . . . . . . . . . . . . . . . . . . .304.6
Painting . . . . . . . . . . . . . . . . . .304.2, 304.6
Rodent harborage . . . . . . . . . . .302.5, 304.5
Sanitation . . . . . . . . . . . . . . . . . . . . . . .304.1
Scope . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
Stair. . . . . . . . . . . . . . . . . . . . . . . . . . .304.10
Street numbers . . . . . . . . . . . . . . . . . . .304.3

INDEX

Weather tight. . . . . . . . . . . . . . . . . . . . . 304.13

**EXTERMINATE**
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
Insect and rodent control. . . . . 302.5, 304.5, 304.14
Responsibility of owner . . . . . . . . . . . 301.2, 306.2
Responsibility of tenant-occupant . . . 306.3, 306.5

## F

**FAN**
Exhaust vents . . . . . . . . . . . . . . . . . . . . .302.6

**FEES, EXPENSES, COST**
Closing vacant structures . . . . . . . . . . . . . 108.2
Demolition. . . . . . . . . . . . . . 110.1, 110.3, 110.4
Extermination . . . . . . . 308.2, 308.3, 308.4, 308.5
General. . . . . . . . . . . . . . . . . . . . . . . . . .103.5
Relief from personal liability . . . . . . . . . . . 103.4
Responsibility, fire safety . . . . . . . . . . . . . 701.2

**FENCE**
Accessory. . . . . . . . . . . . . . . . . . . . . . . .302.7
Maintenance . . . . . . . . . . . . . . . . . . . . . .304.2

**FIRE**
Fire-resistance ratings . . . . . . . . . . . . . . . 703.1
General, fire-protection systems . . . . . . . . . . 704
Responsibility, fire safety . . . . . . . . . . . . . 701.2
Scope . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Scope, fire safety . . . . . . . . . . . . . . . . . . 701.1
Smoke alarms. . . . . . . . . . . . . . . . . . . . .704.2

**FLAMMABLE LIQUID**
Containers . . . . . . . . . . . . . . . . . . . . . .108.1.2

**FLOOR, FLOORING**
Area for bedrooms and living rooms . . . . .404.4.1
Fire-resistance ratings . . . . . . . . . . . . . . . 703.1
Interior surfaces. . . . . . . . . . . . . . 305.1, 305.3
Space requirements . . . . . . . . . . 404.4.1, 404.6

**FOOD PREPARATION**
Cooking equipment . . . . . . . . . . . 403.3, 602.2
Sanitary condition . . . . . . . . . . . . . 305.1, 404.7
Ventilation . . . . . . . . . . . . . . . . . . . . . . .403.4

**FOUNDATION**
Condemnation . . . . . . . . . . . . . . . . . . .108.1.1
Foundation walls. . . . . . . . . . . . . . . . . . .304.5

**FRAME**
Window and door frames . . . . . . . . . . . . 304.13

## G

**GAS**
Energy conservation devices . . . . . . . . . . . 603.6
Exhaust vents . . . . . . . . . . . . . . . . . . . . .302.6
Process ventilation . . . . . . . . . . . . . . . . . .403.4

**GLAZING**
Materials . . . . . . . . . . . . . . . . . . . . . . .304.13.1

**GRADE**
Drainage . . . . . . . . . . . . . . . . . . . . .302.2, 507

**GUARD**
Basement windows. . . . . . . . . . . . . . . . .304.17
Definition . . . . . . . . . . . . . . . . . . . . . . . .202

Anchorage and maintenance . . . . . . . . . . .304.12

## H

**HABITABLE**
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
Light . . . . . . . . . . . . . . . . . . . . . . . . . . . .402
Minimum ceiling height . . . . . . . . . . . . . . .404.3
Minimum room width. . . . . . . . . . . . . . . . .404.2
Required plumbing facilities. . . . . . . . . . . . .502
Residential heating facilities . . . . . . 602.2, 602.3
Space requirements . . . . . . . . . . . . . . .404.4.1
Ventilation . . . . . . . . . . . . . . . . . . . . . . . .403

**HANDRAIL**
Handrails . . . . . . . . . . . . .304.12, 305.5, 306.1

**HARDWARE**
Door hardware. . . . . . . . . . . . . .304.15, 702.3
Openable windows . . . . . . . . . . . . . . .304.13.2

**HAZARDOUS (See DANGEROUS, HAZARDOUS)**

**HEAT, HEATING**
Cooking equipment . . . . . . . . . . . 403.3, 602.2
Energy conservation devices . . . . . . . . . . . 603.6
Fireplaces . . . . . . . . . . . . . . . . . . . . . . .603.1
Heating . . . . . . . . . . . . . . . . . . . . . . . . .603.1
Mechanical equipment . . . . . . . . . . . . . . .603.1
Required capabilities . . . . . . . . . . . . . . . . . .602
Residential heating . . . . . . . . . . . . 602.2, 602.3
Scope . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
Supply. . . . . . . . . . . . . . . . . . . . . . . . . .602.3
Water heating facilities . . . . . . . . . . . . . . .505.4
Water system. . . . . . . . . . . . . . . . . . . . . . .505

**HOUSEKEEPING UNIT**
Definition . . . . . . . . . . . . . . . . . . . . . . . .202

**HEIGHT**
Minimum ceiling height . . . . . . . . . . . . . . .404.3

**HOT (See HEAT, HEATING)**

**HOTELS, ROOMING HOUSES AND DORMITORY UNITS, MOTELS**
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
Locked doors . . . . . . . . . . . . . . . . . . . . .702.3
Required facilities . . . . . . . . . . . . . . . . . . .502
Toilet rooms . . . . . . . . . . . . . . . . . . . . . . .503

## I

**IDENTIFICATION**
Code official . . . . . . . . . . . . . . . . . . . . . .104.5

**INFESTATION**
Condemnation . . . . . . . . . . . . . . . . . . .108.1.3
Definition . . . . . . . . . . . . . . . . . . . . . . . .202
Insect and rodent . . . . . . . . 302.5, 304.14, 308.1

**INSECTS**
Extermination . . . . . . . . . . . . . . . . . . . . . .308
Infestation . . . . . . . . . . . . . . . . . . . . . . .308.1
Insect screens. . . . . . . . . . . . . . . . . . . .304.14

**INSPECTIONS**
General . . . . . . . . . . . . . . . . . . . . . . . . .104.3
Right of entry . . . . . . . . . . . . . . . . . . . . .104.4

**INSPECTOR**
    Identification . . . . . . . . . . . . . . . . . . . . . . .104.5
    Inspections . . . . . . . . . . . . . . . . . . . . . . . .104.3
    Records . . . . . . . . . . . . . . . . . . . . . . . . . .104.7
**INTENT**
    Code . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.3
    Rule-making authority. . . . . . . . . . . . . . . . .104.2
**INTERIOR**
    Interior structure . . . . . . . . . . . . . . . . . . . . . .305
    Interior surfaces . . . . . . . . . . . . . . . . . . . . .305.3
    Means of egress . . . . . . . . . . . . . . . . . . . . . .702
    Sanitation . . . . . . . . . . . . . . . . . . . . . . . . .305.1

**J**

**JURISDICTION**
    Title . . . . . . . . . . . . . . . . . . . . . . . . . . . . .101.1

**K**

**KITCHEN**
    Electrical outlets required . . . . . . . . . . . . . . .605.2
    Minimum width . . . . . . . . . . . . . . . . . . . . . .404.2
    Prohibited use . . . . . . . . . . . . . . . . . . . . .404.4.4
    Room lighting . . . . . . . . . . . . . . . . . . . . . .605.3
    Water heating facilities . . . . . . . . . . . . . . . .505.4

**L**

**LANDING**
    Handrails and guards . . . . . 304.12, 305.4, 305.5,
                                    306.1
    Maintenance . . . . . . . . . . . . . . .304.10, 305.4
**LAUNDRY**
    Room lighting . . . . . . . . . . . . . . . . . . . . . .605.3
    Water heating facilities . . . . . . . . . . . . . . . .505.4
**LAVATORY**
    Hotels . . . . . . . . . . . . . . . . . . . . . . . . . . .502.3
    Required facilities . . . . . . . . . . . . . . . . . . . . .502
    Rooming houses. . . . . . . . . . . . . . . . . . . . .502.2
    Sanitary drainage system . . . . . . . . . . . . . . .506
    Water heating facilities . . . . . . . . . . . . . . . .505.4
    Water system. . . . . . . . . . . . . . . . . . . . . . .505
**LEASE (SELL, RENT)**
    Heat supplied . . . . . . . . . . . . . . . . . . . . . .602.3
    Salvage materials . . . . . . . . . . . . . . . . . . .110.4
    Transfer of ownership . . . . . . . . . . . . . . . . .107.5
**LIEN**
    Closing of vacant structures . . . . . . . . . . . .108.2
    Demolition . . . . . . . . . . . . . . . . . . . . . . . .110.3
    Failure to comply. . . . . . . . . . . . . . . . . . . .110.3
**LIGHT, LIGHTING**
    Common halls and stairways. . . . . . 402.2, 605.3
    Luminaires . . . . . . . . . . . . . . . . . . . . . . . .605.3
    General . . . . . . . . . . . . . . . . . . . . . . . . . . .402
    Habitable rooms . . . . . . . . . . . . . . . . . . . .402.1
    Other spaces . . . . . . . . . . . . . . . . . . . . . .402.3

    Responsibility . . . . . . . . . . . . . . . . . . . . . .401.2
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .101.2
    Toilet rooms . . . . . . . . . . . . . . . . . . . . . . .605.3
**LIVING ROOM**
    Room area . . . . . . . . . . . . . . . . . . . . . . .404.4.1
**LOAD, LOADING**
    Elevators, escalators and dumbwaiters . . . .606.1
    Handrails and guards . . . . . . . . . . .304.12, 305.5
    Live load . . . . . . . . . . . . . . . . . . .304.4, 305.2
    Stairs and porches. . . . . . . . . . . . .304.10, 305.2
    Structural members. . . . . . . . . . . . .304.4, 305.2

**M**

**MAINTENANCE**
    Required . . . . . . . . . . . . . . . . . . . . . . . . .102.2
**MATERIAL**
    Alternative. . . . . . . . . . . . . . . . . . . . . . . . .105.2
    Salvage. . . . . . . . . . . . . . . . . . . . . . . . . .110.4
    Used . . . . . . . . . . . . . . . . . . . . . . . . . . . .105.4
**MEANS OF EGRESS (See EGRESS)**
**MECHANICAL**
    Installation. . . . . . . . . . . . . . . . . . . . . . . . .603.1
    Responsibility . . . . . . . . . . . . . . . . . . . . . .601.2
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .601.1
    Ventilation, general . . . . . . . . . . . . . . . . . . .403
    Ventilation, toilet rooms. . . . . . . . . . . . . . . .403.2
**MINIMUM**
    Ceiling height . . . . . . . . . . . . . . . . . . . . . .404.3
    Room width. . . . . . . . . . . . . . . . . . . . . . . .404.2
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . .301.1
**MODIFICATION**
    Approval . . . . . . . . . . . . . . . . . . . . . . . . .105.1
**MOTEL (See HOTELS)**
**MOTOR VEHICLES**
    Inoperative . . . . . . . . . . . . . . . . . . . . . . . .302.8
    Painting. . . . . . . . . . . . . . . . . . . . . . . . . .302.8

**N**

**NATURAL**
    Lighting . . . . . . . . . . . . . . . . . . . .401.3, 402
    Ventilation . . . . . . . . . . . . . . . . . . .401.3, 403
**NOTICE**
    Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . .111.1
    Form . . . . . . . . . . . . . . . . . . . . . . . . . . . .107.2
    Method of service . . . . . . . . . . . . . . . . . . .107.3
    Orders . . . . . . . . . . . . . . . . . . . . . . . . . . . .107
    Owner, responsible person. . . . . . . . . . . . .107.1
    Penalties. . . . . . . . . . . . . . . . . . . . . . . . .107.4
    Placarding of structure . . . . . . . . . . . . . . . .108.4
    Transfer of ownership . . . . . . . . . . . . . . . . .107.5
    Vacating structure. . . . . . . . . . . . . . . . . . .108.2
**NOXIOUS**
    Process ventilation . . . . . . . . . . . . . . . . . .403.4
    Weeds. . . . . . . . . . . . . . . . . . . . . . . . . . .302.4

INDEX

**NUISANCE**
    Closing of vacant structures . . . . . . . . . . . . 108.2

**O**

**OBSTRUCTION**
    Light . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 402.1
    Right of entry . . . . . . . . . . . . . . . . . . . . . . . . 104.4
**OCCUPANCY (See USE)**
**OPENABLE**
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . 202
    Habitable rooms . . . . . . . . . . . . . . . . . . . . . 403.1
    Locked doors . . . . . . . . . . . . . . . . . . . . . . . 702.3
    Windows . . . . . . . . . . . . . . . . . . . . . . . 304.13.2
**OPERATOR**
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . 202
**ORDER (See NOTICE)**
**ORDINANCE, RULE**
    Applicability . . . . . . . . . . . . . . . . . . . . . . . . . 102
    Application for appeal . . . . . . . . . . . . . . . . . 111.1
**OUTLET**
    Electrical . . . . . . . . . . . . . . . . . . . . . . . . . . . 605.2
**OWNER**
    Closing of vacant structures . . . . . . . . . . . . 108.2
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . . . 202
    Demolition . . . . . . . . . . . . . . . . . . . . . . . . . . 110
    Extermination . . . . . . . . . . . . . . . . . . . . . . . 308.2
    Failure to comply . . . . . . . . . . . . . . . . . . . . . 110.3
    Insect and rodent control . . . . 302.5, 308.2, 308.4
    Notice . . . . . . . . . . . . . . . . . . . . . . 107.1, 108.3
    Placarding of structure . . . . . . . . . . . . . . . . 108.4
    Responsibility . . . . . . . . . . . . . . . . . . . . . . . 301.2
    Responsibility, fire safety . . . . . . . . . . . . . . 701.2
    Responsibility, light, ventilation . . . . . . . . . . 401.2
    Responsibility, mechanical and electrical . . 601.2
    Responsibility, plumbing facilities . . . . . . . . 501.2
    Right of entry . . . . . . . . . . . . . . . . . . . . . . . 104.4
    Rubbish storage . . . . . . . . . . . . . . . . . . . . . 307.2.1
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
    Transfer of ownership . . . . . . . . . . . . . . . . . 107.5

**P**

**PASSAGEWAY**
    Common hall and stairway . . . . . . . . . . . . . 402.2
    Interior surfaces . . . . . . . . . . . . . . . . . . . . . 305.3
    Toilet rooms, direct access . . . . . . . . . . . . . 503.1
**PENALTY**
    Notices and orders . . . . . . . . . . . . . . . . . . . 107.4
    Placarding of structure . . . . . . . . . . . . . . . . 108.4
    Prohibited occupancy . . . . . . . . . . . . . . . . . 108.5
    Removal of placard . . . . . . . . . . . . . . . . . . 108.4.1
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . . 101.2
    Violations . . . . . . . . . . . . . . . . . . . . . . . . . . 106.4
**PEST (VERMIN)**
    Condemnation . . . . . . . . . . . . . . . . . . . . . . 108.1
    Extermination . . . . . . . . . . . . . . . . . . . . . . . 308.1
    Insect and rat control . . . . . . 302.5, 304.14, 308.1

**PLACARD, POST**
    Closing . . . . . . . . . . . . . . . . . . . . . . . . . . . 108.2
    Condemnation . . . . . . . . . . . . . . . . . . . . . . 108.1
    Demolition . . . . . . . . . . . . . . . . . . . . . . . . . 110
    Emergency notice . . . . . . . . . . . . . . . . . . . 109.1
    Notice to owner . . . . . . . . . . . . . 107.1, 108.3
    Placarding of structure . . . . . . . . . . . . . . . . 108.4
    Prohibited use . . . . . . . . . . . . . . . . . . . . . . 108.5
    Removal . . . . . . . . . . . . . . . . . . . . . . . . . 108.4.1
**PLUMBING**
    Access . . . . . . . . . . . . . . . . . . . . . . . . . . . 504.2
    Clean and sanitary . . . . . . . . . . . . . . . . . . 504.1
    Connections . . . . . . . . . . . . . . . . . . . . . . . 505.1
    Contamination . . . . . . . . . . . . . . . . . . . . . . 505.2
    Employee's facilities . . . . . . . . . . . . . . . . . 503.3
    Fixtures . . . . . . . . . . . . . . . . . . . . . . . . . . 504.1
    Required facilities . . . . . . . . . . . . . . . . . . . 502
    Responsibility . . . . . . . . . . . . . . . . . . . . . . 501.2
    Sanitary drainage system . . . . . . . . . . . . . 506
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . 501.1
    Storm drainage . . . . . . . . . . . . . . . . . . . . 507
    Supply . . . . . . . . . . . . . . . . . . . . . . . . . . . 505.3
    Water heating facilities . . . . . . . . . . . . . . . 505.4
**PORCH**
    Handrails . . . . . . . . . . . . . . . . . . . . . . . . . 306.1
    Structurally sound . . . . . . . . . . . . . . . . . . 304.10
**PORTABLE (TEMPORARY)**
    Cooking equipment . . . . . . . . . . . . . . . . . . 603.1
**PRESSURE**
    Water supply . . . . . . . . . . . . . . . . . . . . . . 505.3
**PRIVATE, PRIVACY**
    Bathtub or shower . . . . . . . . . . . . . . . . . . 503.1
    Occupancy limitations . . . . . . . . . . . . . . . . 404.1
    Required plumbing facilities . . . . . . . . . . . . 502
    Sewage system . . . . . . . . . . . . . . . . . . . . 506.1
    Water closet and lavatory . . . . . . . . . . . . . 503.1
    Water system . . . . . . . . . . . . . . . . . . . . . 505.1
**PROPERTY, PREMISES**
    Cleanliness . . . . . . . . . . . . . . . . . . 304.1, 307.1
    Condemnation . . . . . . . . . . . . . . . . . . . . . 108
    Definition . . . . . . . . . . . . . . . . . . . . . . . . . 202
    Demolition . . . . . . . . . . . . . . . . . . . . . . . . 110
    Emergency measures . . . . . . . . . . . . . . . . 109
    Exterior areas . . . . . . . . . . . . . . . . . . . . . 302
    Extermination, multiple occupancy . . 302.5, 308.4
    Extermination, single occupancy . . 302.5, 308.3
    Failure to comply . . . . . . . . . . . . . . . . . . . 110.3
    Grading and drainage . . . . . . . . . . . . . . . . 302.2
    Responsibility . . . . . . . . . . . . . . . . . . . . . 301.2
    Scope . . . . . . . . . . . . . . . . . . . . . . . . . . . 301.1
    Storm drainage . . . . . . . . . . . . . . . . . . . . 507
    Vacant structures and land . . . . . . . . . . . . 301.3
**PROTECTION**
    Basement windows . . . . . . . . . . . . . . . . . 304.17
    Fire-protection systems . . . . . . . . . . . . . . 704
    Signs, marquees and awnings . . . . . . . . . . 304.9
**PUBLIC**
    Cleanliness . . . . . . . . . . . . . . . . 304.1, 305.1
    Egress . . . . . . . . . . . . . . . . . . . . . . . . . . 702.1

2006 INTERNATIONAL PROPERTY MAINTENANCE CODE®

INDEX

Hallway ............................502.3
Sewage system ...................506.1
Toilet rooms .......................503
Vacant structures and land...........301.3
Water system......................505
PUBLIC WAY
    Definition ..........................202

R

RAIN
    Basement hatchways ..............304.16
    Exterior walls ....................304.6
    Grading and drainage...............303.2
    Roofs..............................304.7
    Window and door frames ..........304.13
RECORD
    Official records ...................104.7
REHABILITATION
    Intent.............................101.3
REPAIR
    Application of other codes ...........102.3
    Chimneys .........................304.11
    Demolition..........................110.1
    Exterior surfaces......................304.1
    Maintenance .......................102.2
    Public areas ........................302.3
    Signs, marquees and awnings ..........304.9
    Stairs and porches .................304.10
    Weather tight......................304.13
    Workmanship ......................102.5
REPORTS
    Test reports ......................105.3.2
RESIDENTIAL
    Extermination.........................308
    Residential heating..................602.2
    Scope ..............................101.2
RESPONSIBILITY
    Extermination.........................308
    Fire safety........................701.2
    Garbage disposal ...................307.3
    General ...........................301.2
    Mechanical and electrical............601.2
    Persons............................301.1
    Placarding of structure .............108.4
    Plumbing facilities..................501.2
    Rubbish storage....................307.2.1
    Scope...........................101.2, 301.1
REVOKE, REMOVE
    Demolition ...........................110
    Existing remedies ..................102.4
    Process ventilation .................403.4
    Removal of placard .................108.4.1
    Rubbish removal ..................307.2.1
RIGHT OF ENTRY
    Duties and powers of code official ........104.4
    Inspections ........................104.3

RODENTS
    Basement hatchways ..............304.16
    Condemnation .....................108
    Exterior surfaces....................304.6
    Extermination ..................302.5, 308
    Guards for basement windows .........304.17
    Harborage..........................302.5
    Insect and rodent control ...........308.1
ROOF
    Exterior structure ..................304.1
    Roofs.............................304.7
    Storm drainage ....................507
ROOM
    Bedroom and living room ............404.4
    Cooking facilities....................403.3
    Direct access ......................503.2
    Habitable..........................402.1
    Heating facilities....................602
    Light..............................402
    Minimum ceiling heights .............404.3
    Minimum width ....................404.2
    Overcrowding .....................404.5
    Prohibited use .....................404.4.4
    Temperature ......................602.5
    Toilet..............................503
    Ventilation ........................403
ROOMING HOUSES (See DORMITORY)
RUBBISH
    Accumulation .....................307.1
    Definition .........................202
    Disposal ..........................307.2
    Garbage facilities..................307.3.1
    Rubbish storage...................307.2.1
    Storage ..........................307.2.1

S

SAFETY, SAFE
    Chimney ..........................304.11
    Condemnation .....................108.1
    Electrical installation................605.1
    Emergency measures ...............109
    Fire safety requirements .............701
    Fireplaces ........................603.1
    Intent.............................101.3
    Safety controls ....................603.4
    Scope ............................101.2
    Unsafe structures and equipment .........108
SANITARY
    Bathroom and kitchen floors..........305.3
    Cleanliness ...................304.1, 305.1
    Disposal of garbage ................307.3
    Disposal of rubbish .................307.2
    Exterior property areas...............302.1
    Exterior structure ..................304.1
    Food preparation ..................404.7
    Furnished by occupant...............302.1
    Interior surfaces ...................305.3

INDEX

Plumbing fixtures . . . . . . . . . . . . . . . . .504.1
Required plumbing facilities. . . . . . . . . . . . . .502
Scope . . . . . . . . . . . . . . . . . . . . . . . .101.2
SASH
Window. . . . . . . . . . . . . . . . . . . . . . .304.13
SCREENS
Insect screens. . . . . . . . . . . . . . . . . . .304.14
SECURITY
Basement hatchways. . . . . . . . . . . . . .304.18.3
Building. . . . . . . . . . . . . . . . . . . . . . .304.18
Doors. . . . . . . . . . . . . . . . . . . . . . .304.18.1
Vacant structures and land. . . . . . . . . . . .301.3
Windows . . . . . . . . . . . . . . . . . . . .304.18.2
SELF-CLOSING SCREEN DOORS
Insect screens. . . . . . . . . . . . . . . . . . .304.14
SEPARATION
Fire-resistance ratings . . . . . . . . . . . . . . . .703
Privacy . . . . . . . . . . . . . . . . . . . . . . .404.1
Separation of units . . . . . . . . . . . . . . . . .404.1
Water closet and lavatory. . . . . . . . . . . . .502.1
SERVICE
Electrical . . . . . . . . . . . . . . . . . . . . . .604.2
Method . . . . . . . . . . . . . . . . . . . . . . .107.3
Notices and orders . . . . . . . . . . . .107.1, 108.3
Service on occupant. . . . . . . . . . . . . . . .108.3
SEWER
General . . . . . . . . . . . . . . . . . . . . . . .506.1
Maintenance . . . . . . . . . . . . . . . . . . . .506.2
SHOWER
Bathtub or shower. . . . . . . . . . . . . . . . .502.1
Rooming houses. . . . . . . . . . . . . . . . . .502.2
Water heating facilities . . . . . . . . . . . . . .505.4
Water system . . . . . . . . . . . . . . . . . . . .505
SIGN
Signs, marquees and awnings . . . . . . . . . .304.9
SINGLE-FAMILY DWELLING
Extermination. . . . . . . . . . . . . . . . . . . . .308
SINK
Kitchen sink . . . . . . . . . . . . . . . . . . . .502.1
Sewage system . . . . . . . . . . . . . . . . . . .506
Water supply . . . . . . . . . . . . . . . . . . .505.3
SIZE
Habitable room, light . . . . . . . . . . . . . . . .402
Habitable room, ventilation . . . . . . . . . . . .403
Room area . . . . . . . . . . . . . . . . . . . .404.4.1
SMOKE
Alarms. . . . . . . . . . . . . . . . . . . . . . . .704.2
Interconnection. . . . . . . . . . . . . . . . . . .704.4
Power source . . . . . . . . . . . . . . . . . . .704.3
SPACE
General, light . . . . . . . . . . . . . . . . . . . .402
General, ventilation . . . . . . . . . . . . . . . . .403
Occupancy limitations . . . . . . . . . . . . . . .404
Privacy . . . . . . . . . . . . . . . . . . . . . . .404.1
Scope . . . . . . . . . . . . . . . . . . . . . . .401.1
STACK
Chimneys . . . . . . . . . . . . . . . . . . . .304.11

STAIRS
Common halls and stairways, light . . . . . . . .402.2
Exit facilities . . . . . . . . . . . . . . . . . . . .305.4
Handrails . . . . . . . . . . . . . . .304.12, 305.5
Luminaires . . . . . . . . . . . . . . . . . . . .605.3
Public areas . . . . . . . . . . . . . . . . . . . .302.3
Stairs and porches . . . . . . . . . . . . . . .304.10
STANDARD
Referenced . . . . . . . . . . . . . . . . . . . . .102.7
STORAGE
Food preparation . . . . . . . . . . . . . . . . .404.7
Garbage storage facilities. . . . . . . . . . . . .307.3
Rubbish storage facilities. . . . . . . . . . . .307.2.1
Sanitation . . . . . . . . . . . . . . . . . . . . .307.1
STRUCTURE
Accessory structures . . . . . . . . . . . . . . .302.7
Closing of vacant structures . . . . . . . . . . .108.2
Definition . . . . . . . . . . . . . . . . . . . . . . .202
Emergency measures . . . . . . . . . . . . . . . .109
General, exterior . . . . . . . . . . . . . . . . . .304.1
General, condemnation . . . . . . . . . . . . . . .110
General, interior structure. . . . . . . . . . . . .305.1
Placarding of structure . . . . . . . . . . . . . .108.4
Scope . . . . . . . . . . . . . . . . . . . . . . .301.1
Structural members . . . . . . . . . . .304.4, 305.2
Vacant structures and land . . . . . . . . . . . .301.3
SUPPLY
Combustion air . . . . . . . . . . . . . . . . . .603.5
Connections . . . . . . . . . . . . . . . . . . . .505.1
Water heating facilities . . . . . . . . . . . . . .505.4
Water supply . . . . . . . . . . . . . . . . . . .505.3
Water system . . . . . . . . . . . . . . . . . . . .505
SURFACE
Exterior surfaces . . . . . . . . . . . .304.2, 304.6
Interior surfaces . . . . . . . . . . . . . . . . . .305.3
SWIMMING
Swimming pools . . . . . . . . . . . . . .303.1, 303.2
Safety covers . . . . . . . . . . . . . . . . . . .303.2

T

TEMPERATURE
Nonresidential structures . . . . . . . . . . . . .602.4
Residential buildings . . . . . . . . . . . . . . .602.2
Water heating facilities . . . . . . . . . . . . . .505.4
TENANT
Scope . . . . . . . . . . . . . . . . . . . . . . .101.2
TEST, TESTING
Agency . . . . . . . . . . . . . . . . . . . . . .105.3.2
Methods. . . . . . . . . . . . . . . . . . . . . .105.3.1
Reports . . . . . . . . . . . . . . . . . . . . . .105.3.3
Required . . . . . . . . . . . . . . . . . . . . . .105.3
TOXIC
Process ventilation . . . . . . . . . . . . . . . .403.4
TRASH
Rubbish and garbage . . . . . . . . . . . . . . . .307

2006 INTERNATIONAL PROPERTY MAINTENANCE CODE®

## U

**UNOBSTRUCTED**
Access to public way . . . . . . . . . . . . . . . . 702.1
General, egress . . . . . . . . . . . . . . . . . . . 702.1

**UNSAFE**
Equipment . . . . . . . . . . . . . . . . . . . . . 108.1.2
Existing remedies . . . . . . . . . . . . . . . . . 102.4
General, condemnation . . . . . . . . . . . . 108, 110
General, demolition . . . . . . . . . . . . . . . . . 110
Notices and orders . . . . . . . . . . . . . 107, 108.3
Structure . . . . . . . . . . . . . . . . . . . . . . 108.1.1

**USE**
Application of other codes . . . . . . . . . . . . 102.3
General, demolition . . . . . . . . . . . . . . . . . 110

## V

**VACANT**
Closing of vacant structures . . . . . . . . . . 108.2
Emergency measure . . . . . . . . . . . . . . . . 109
Method of service . . . . . . . . . . . . 107.3, 108.3
Notice to owner or to person
responsible . . . . . . . . . . . . . . 107, 108.3
Placarding of structure . . . . . . . . . . . . . . 108.4
Vacant structures and land . . . . . . . . . . . . 301.3

**VAPOR**
Exhaust vents . . . . . . . . . . . . . . . . . . . . 302.6
Process ventilation . . . . . . . . . . . . . . . . . 403.4

**VEHICLES**
Inoperative . . . . . . . . . . . . . . . . . . . . . 302.8
Painting . . . . . . . . . . . . . . . . . . . . . . . . 302.8

**VENT**
Connections . . . . . . . . . . . . . . . . . . . . . 504.3
Exhaust vents . . . . . . . . . . . . . . . . . . . . 302.6
Flue . . . . . . . . . . . . . . . . . . . . . . . . . . 603.2

**VENTILATION**
Clothes dryer exhaust . . . . . . . . . . . . . . . 403.5
Combustion air . . . . . . . . . . . . . . . . . . . 603.5
Definition . . . . . . . . . . . . . . . . . . . . . . . 202
General, ventilation . . . . . . . . . . . . . . . . . 403
Habitable rooms . . . . . . . . . . . . . . . . . . 403.1
Process ventilation . . . . . . . . . . . . . . . . . 403.4
Recirculation . . . . . . . . . . . . . . 403.2, 403.4
Toilet rooms . . . . . . . . . . . . . . . . . . . . . 403.2

**VERMIN**
Condemnation . . . . . . . . . . . . . . . . . . . 108
Insect and rat control . . . . . . . . . . . 302.5, 308

**VIOLATION**
Condemnation . . . . . . . . . . . . . . . . . . . 108
General . . . . . . . . . . . . . . . . . . . . . . . . 106
Notice . . . . . . . . . . . . . . . . . . . 107, 108.3
Penalty . . . . . . . . . . . . . . . . . . . . . . . 106.4
Placarding of structure . . . . . . . . . . . . . . 108.4
Prosecution . . . . . . . . . . . . . . . . . . . . . 106.3
Strict liability offense . . . . . . . . . . . 106.3, 202
Transfer of ownership . . . . . . . . . . . . . . 107.5

## W

**WALK**
Sidewalks . . . . . . . . . . . . . . . . . . . . . . 302.3

**WALL**
Accessory structures . . . . . . . . . . . . . . . 302.7
Exterior surfaces . . . . . . . . . . . . . 304.2, 304.6
Exterior walls . . . . . . . . . . . . . . . . . . . . 304.6
Foundation walls . . . . . . . . . . . . . . . . . . 304.5
General, fire-resistance rating . . . . . . . . . . 703.1
Interior surfaces . . . . . . . . . . . . . . . . . . 305.3
Outlets required . . . . . . . . . . . . . . . . . . 605.2
Temperature measurement . . . . . . . . . . . 602.5

**WASTE**
Disposal of garbage . . . . . . . . . . . . . . . . 307.3
Disposal of rubbish . . . . . . . . . . . . . . . . 307.2
Dwelling units . . . . . . . . . . . . . . . . . . . 502.1
Garbage storage facilities . . . . . . . . . . . . 307.3.1

**WATER**
Basement hatchways . . . . . . . . . . . . . . . 304.16
Connections . . . . . . . . . . . . . . . . . . . . . 506.1
Contamination . . . . . . . . . . . . . . . . . . . 505.2
General, sewage . . . . . . . . . . . . . . . . . . 506
General, storm drainage . . . . . . . . . . . . . 507
General, water system . . . . . . . . . . . . . . . 505
Heating . . . . . . . . . . . . . . . . . . . . . . . 505.4
Hotels . . . . . . . . . . . . . . . . . . . . . . . . 502.3
Kitchen sink . . . . . . . . . . . . . . . . . . . . 502.1
Required facilities . . . . . . . . . . . . . . . . . 502
Rooming houses . . . . . . . . . . . . . . . . . . 502.2
Supply . . . . . . . . . . . . . . . . . . . . . . . . 505.3
System . . . . . . . . . . . . . . . . . . . . . . . . 505
Toilet rooms . . . . . . . . . . . . . . . . . . . . . 503
Water heating facilities . . . . . . . . . . . . . . 505.4

**WEATHER, CLIMATE**
Heating facilities . . . . . . . . . . . . . . . . . . 602
Rule-making authority . . . . . . . . . . . . . . 104.2

**WEATHERSTRIP**
Window and door frames . . . . . . . . . . . . 304.13

**WEEDS**
Noxious weeds . . . . . . . . . . . . . . . . . . . 302.4

**WIDTH**
Minimum room width . . . . . . . . . . . . . . . 404.2

**WIND**
Weather tight . . . . . . . . . . . . . . . . . . . . 304.13
Window and door frames . . . . . . . . . . . . 304.13

**WINDOW**
Emergency escape . . . . . . . . . . . . . . . . . 702.4
Glazing . . . . . . . . . . . . . . . . . . . . . . . 304.13.1
Guards for basement windows . . . . . . . . . 304.17
Habitable rooms . . . . . . . . . . . . . . . . . . 402.1
Insect screens . . . . . . . . . . . . . . . . . . . 304.14
Interior surface . . . . . . . . . . . . . . . . . . . 305.3
Light . . . . . . . . . . . . . . . . . . . . . . . . . 402
Openable windows . . . . . . . . . . . . . . . . 304.13.2
Toilet rooms . . . . . . . . . . . . . . . . . . . . 403.2
Ventilation . . . . . . . . . . . . . . . . . . . . . . 403
Weather tight . . . . . . . . . . . . . . . . . . . . 304.13
Window and door frames . . . . . . . . . . . . 304.13

INDEX

WORKER
    Employee facilities . . . . . . . . . . . . . . . 503.3, 602.4
WORKMANSHIP
    General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102.5

2006 INTERNATIONAL PROPERTY MAINTENANCE CODE®

# Exhibit C

## APPENDIX B ZONING*

---

**\*Editor's note:** Appendix B sets out the zoning ordinance, enacted on Jan. 13, 1983, by Ord. No. 83-1, as the same was originally enacted by the city. Amendments will be cited in a history note following the affected section. The editor has incorporated a uniform printing style for purposes of maintaining Code format; however, no substantive changes have been made.

**Cross references:** Buildings and building regulations, ch. 14; community development, ch. 18; environment, ch. 26; floods, ch. 34; transitional living residences, § 42-1; sexually oriented entertainment businesses, § 54-1941 et seq.; mobile home parks, ch. 58; planning, ch. 66; signs, ch. 70; streets, sidewalks and other public places, ch. 78; telecommunications, ch. 86; ordinances related to zoning, app. C.

---

Sec. I. Title.
Sec. II. Intent and purpose.
Sec. III. Rules and definitions.
Sec. IV. General provisions.
Sec. V. Nonconforming buildings and uses.
Sec. VI. Zoning districts and zoning district map.
Sec. VII. Residence districts.
Sec. VIII. Commercial business district.
Sec. IX. Industrial districts.
Sec. X. Off-street parking and loading.
Sec. XI. Reserved.
Sec. XII. Administration.
Sec. XIII. Amendments.
Sec. XIV. Violations; penalty.
Sec. XV. Enactment.

*An Ordinance to Classify, Regulate and Restrict the Location of Trades and Industries and the Location of Buildings Designed for the Specified Industrial, Commercial, Residential and Other Uses and to Regulate and Limit the Height and Bulk of Buildings Hereafter Erected; to Regulate and Determine the Area of Yards, Courts and Other Open Spaces Within and Surrounding Such Buildings and to Establish the Boundaries of Districts for the Said Purposes and Prescribing Penalties for the Violation of its Provisions, and for Creating a Board of Appeals.*

*Now, Therefore, Be and It Is Hereby Ordained by the City Council of Calumet City, Illinois:*

### Sec. I. Title.

This ordinance shall be known, referred to and recited as "The Zoning Ordinance of the City of Calumet City."

(Code 1980, App. B, § I)

### Sec. II. Intent and purpose.

The prime tool of planning is land use control, most commonly referred to as zoning. The purposes of zoning are many, but foremost among these purposes are:

To promote and protect the public health, safety, morals, comfort and general welfare of the people;

To divide the City of Calumet City into zones or districts restricting and regulating therein the location, erection, construction, reconstruction, alteration and use of buildings, structures, and land for residence, business manufacturing and other specified uses;

To provide adequate light, air, privacy and conveniences of access to property;

To protect the character and the stability of the residential, business, and manufacturing areas within the City of Calumet City and to promote the orderly and beneficial development of such areas;

*Lot width:* The minimum horizontal distance between the side lot lines of a lot measured at the narrowest width within the buildable area.

*Lots of record:* A single lot which is part of a subdivision, the plat of which has been recorded in the office of the recorder of deeds of Cook County, Illinois; or a single parcel of land, the deed of which has been recorded in the office of the recorder of deeds of Cook County, Illinois.

*Manufacturing establishment:* An establishment, the principal use of which is manufacturing, fabricating, processing, assembly, repairing, storing, cleaning, servicing, or testing of materials, goods, or products.

*Marquee or canopy:* A roof-like structure of a permanent nature which projects from the wall of a building.

*Micron:* A unit of length, equal to one-thousandth part of one millimeter (.001 millimeter).

. *Mobile home:* A trailer designed and constructed for dwelling purposes.

*Moderate burning:* Implies a rate of combustion described by material which supports combustion and is consumed slowly as it burns.

*Motor freight terminal:* A building or area in which freight brought by motor truck or railroad is assembled or stored for routing in intra-state or interstate shipment by motor truck.

*Nameplate:* A sign indicating the name and address of a building, or the name of an occupant thereof, and the practice of a permitted occupation therein.

*No-access strip:* A strip of land along the rear lot line, adjoining a thoroughfare right-of-way, of a through lot, and which is designated on a recorded subdivision plat or property deed as land over which motor vehicular travel shall not be permitted.

*Nonconforming building or structure:* Any building or structure lawfully established which: (a) does not comply with all the regulations of this ordinance or of any amendment hereto governing bulk of the district in which such building or structure is located; or (b) is designed or intended for a nonconforming use.

. *Nonconforming use:* Any building or structure and the use thereof or the use of land that does not conform with the regulations of this ordinance or any amendment hereto governing use in the district in which it is located but conformed with all of the codes, ordinances, and other legal requirements applicable at the time such building, or structure was erected, enlarged, or altered, and the use thereof or the use of land was established.

*Noxious matter or material:* A material which is capable of causing injury to living organisms by chemical reaction or is capable of causing detrimental effect on the physical or economic well-being of individuals.

*Nursery, child-care, or nursery school:* A building containing facilities for the part-time care of five (5) or more children of pre-elementary school are and may include in addition the dwelling unit of the family residing therein.

*Nursing home:* A building containing facilities for the care and home of aged, chronically ill, infirm, or incurable persons, or a place of rest for those persons suffering bodily disorders, in which three (3) or more persons not members of the family residing on the premises are received, and provided with food, shelter, and care, but not including hospitals, clinics, or similar institutions devoted primarily to the diagnosis and treatment of disease or injury, maternity cases, or mental illness.

*Octave band:* A method of dividing the range of sound frequencies into octaves in order to classify sound according to pitch.

*Odor:* The minimum concentration of odorous matter in the air that can be detected as an odor.

*Off-street parking area or lot:* Land which is improved and used or structure which is designed and used exclusively for the storage of passenger motor vehicles, either for accessory off-street parking spaces or commercial off-street parking spaces when permitted herein by district regulations.

*Open sales lot:* Land used or occupied for the purpose of buying, selling, or renting merchandise stored or displayed out-of-doors prior to sale. Such merchandise includes automobiles, trucks, motor scooters, motorcycles, boats, or similar commodities.

. *Parking space:* An area, enclosed in a building or unenclosed, reserved for the parking of one (1) motor vehicle and which is accessible to and from a street or alley.

*Particular matter:* Finely divided solid or liquid matter, other than water, which is released into the

manufacturer in letters not to exceed two (2) inches in height;

(b)   Shall be compatible with the appearance of the neighborhood;

(c)   Shall be limited to one (1) per lot or per building, whichever is less;

(d)   Shall not exceed twelve (12) feet in diameter;

(e)   If roof-mounted, shall be to a maximum height of thirty (30) feet. Additional requirements shall apply to roof-mounted satellite receiving antennas;

(f)   Shall not be visible between ground level and ten (10) feet above ground level from any street adjoining the lot;

(g)   Ground-mounted; not to be located between a building and a front lot line. The full impact of satellite receiving antennas shall be reduced by screening. If the subject parcel adjoins a residential district, all antennas shall be placed a minimum of ten (10) feet from any lot line and effectively screened by a fence, wall, or dense screening hedge to a maximum height of six (6) feet. Said fence, wall or hedge shall be located on or near the lot line bounding the residential district and shall otherwise comply with the applicable zoning requirements governing its location, shall be located in a rear yard a minimum of ten (10) feet from any lot line;

(h)   Permit fee and inspection required;

(i)   Drawings submitted to building commissioner for approval before installation;

(j)   Letter of consent from owner of property.

### 4.18 Application.

Any person desiring to erect a satellite receiving antenna shall apply in writing to the city clerk's office upon a form furnished by said office. A permit fee of twenty-five dollars ($25.00) shall be paid.

(Code 1980, App. B, § IV; Ord. No. 84-15, § 1, 4-26-1984; Ord. No. 85-32, § 1, 9-26-1985; Ord. No. 89-5, § 1, 1-26-1989; Ord. No. 96-30, § 1(Exh. A), 5-23-1996; Ord. No. 99-33, § 1, 6-10-1999)

### Sec. V. Nonconforming buildings and uses.

#### 5.1 Continuance of use.

Any lawfully established use of a building or land, on the effective date of the ordinance or of amendments thereto, that does not conform to the use of regulations for the district in which it is located, shall be deemed to be a legal nonconforming use and may be continued, except as otherwise provided herein.

Any legal, nonconforming building or structure may be continued in use provided there is no physical change other than necessary maintenance and repair, as otherwise permitted herein.

Any building for which a permit has been lawfully granted prior to the effective date of the ordinance, or of amendments thereto, may be completed in accordance with the approved plans; provided construction is started within ninety (90) days and diligently prosecuted to completion. Such building shall thereafter be deemed a lawfully established building.

#### 5.2 Discontinuance of use.

Whenever any part of a building, structure or land occupied by a nonconforming use is changed to or replaced by a use conforming to the provisions of the ordinance, such premises shall not thereafter be used or occupied by a nonconforming use, even though the building may have been originally designed and constructed for the prior nonconforming use.

Whenever a nonconforming use of a building or structure or part thereof has been discontinued for a period of twelve (12) consecutive months, or whenever there is evident a clear intent on the part of the owner to abandon a nonconforming use, such use shall not after being discontinued or abandoned, be reestablished, and the use of the premises thereafter shall be in conformity with the regulations of the district.

Where no enclosed building is involved, discontinuance of a nonconforming use for a period of twelve (12) months shall constitute abandonment and shall not thereafter be used in a nonconforming manner.

A nonconforming use not authorized by the provisions of the zoning ordinance in effect at the time the amendatory ordinance becomes effective, shall be discontinued and not reestablished except when the provisions of the amendatory ordinance find the use to be conforming to the district in which it is then located.

### 5.3 Change of nonconforming use.

The nonconforming use of any building, structure or portion thereof, which is designed or intended for a use not permitted in the district in which it is located, may be changed to another nonconforming use thereof but only if such other use is permitted by a special use permit as authorized in the administration section.

A nonconforming structure that was erected, converted or structurally altered in violation of the provisions of the ordinance which this ordinance amends shall not be validated by the adoption of this ordinance, and such violations or any violations of this ordinance may be ordered removed or corrected by the proper officials at any time.

### 5.4 Repairs and alterations.

Normal maintenance of a building or other structure containing a nonconforming use is permitted, including necessary nonstructural repairs and incidental alterations which do not extend or intensify the nonconforming use.

No structural alteration shall be made in a building or other structure containing a nonconforming use, except in the following situations:

(a) When the alteration is required by law.

(b) When the alteration will actually result in eliminating the nonconforming use.

(c) When a building in a residential district containing residential nonconforming uses may be altered in any way to improve livability, provided no structural alteration shall be made which would increase the number of dwelling units or the bulk of the building.

### 5.5 Damage and destruction.

If a building or other structure containing a nonconforming use is damaged or destroyed by any means to the extent of fifty (50) percent or more of its replacement value at that time, the building or other structure can be rebuilt or used thereafter only for a conforming use and in compliance with the provisions of the district in which it is located. In the event the damage or destruction is less than fifty (50) percent of its replacement value, based upon prevailing c. ts, the building may then be restored to its original condition and the occupancy or use of such building may be continued which existed at the time of such partial destruction.

In either event, restoration or repair of the building or other structure must be started within a period of six (6) months from the date of damage or destruction, and diligently prosecuted to completion.

### 5.6 Additions and enlargements.

A nonconforming building may be enlarged or extended only if the entire building is hereafter devoted to a conforming use, and is made to conform to all the regulations of the district in which it is located.

No building partially occupied by a nonconforming use shall be altered in such a way as to permit the enlargement or expansion of the space occupied by such nonconforming use.

No nonconforming building may be enlarged or extended in such a way as to occupy any required useable open space, or any land beyond the boundaries of the zoning lot as it existing on the effective date of the ordinance, or to displace any conforming use in the same building or on the same parcel.

A building or structure which in nonconforming with respect to yards, floor area ratio, or any other element of bulk regulated herein shall not be altered or expanded in any manner which would increase the degree or extent of its nonconformity with respect to the bulk regulations for the district in which it is located.

### 5.7 Exempted buildings, structures and uses.

APPENDIX B ZONING*                                                    Page 20 of 74

Wherever a lawfully existing building or other structure otherwise conforms to the use regulations herein but is nonconforming only in the particular manner hereinafter specified, the building and use thereof shall be exempt from the requirements of sections 5.4 and 5.5.

In any residential district where a dwelling is nonconforming only as to the number of dwelling units it contains, provided no such building shall be altered in any way so as to increase the number of dwelling units therein.

In any residential district, where a use permitted in the B-1 district occupies ground floor space within a multiple-family dwelling located on a corner lot.

In any business or manufacturing district, where the use is less distant from a residential district than that specified in the regulations for the district in which it is located.

In any district, where an established building, structure or use is nonconforming with respect to the standards prescribed herein for any of the following:

     (a) Floor area ratio;

     (b) Yards, front, side, rear, or transitional;

     (c) Off-street parking or loading;

     (d) Building height;

     (e) Gross floor area.

*5.8 Conversion to special use.*

Any nonconforming use may be made a special use by the granting of a special permit, as authorized in the administrative section.

(Code 1980, App. B, § V; Ord. No. 94-23, § 1, 5-26-1994)


**Sec. VI. Zoning districts and zoning district map.**

*6.1 Classes of districts.*

In order to classify, regulate and restrict the location of trades, industries and the location of buildings designed for specified uses, to regulate and limit the height and bulk of buildings hereafter erected or structurally altered, to regulate and limit the intensity of the use of the lot areas, and to regulate and determine the areas of yards, courts and other open spaces within and surrounding such buildings, the City of Calumet City, Illinois, is hereby divided into ten (10) classes of districts:

    R-1 One-family residence district

    R-2 Two-family and three-family residence district

    R-3 Multiple-family residence district

    B Commercial business district

    B-2 Service business commercial district

    B-3 Community commercial business district

    M-1 Light industrial district

    M-2 Heavy industrial district

    OR Office research district

      Public land use

and the location and boundaries of which are shown on the map and notations thereon titled "The Zoning Map of Calumet City," which said map is on file in the office of the building commission of Calumet City, and together with all notations, references, and other information shown thereon, are a part of this ordinance and have the same force and

# Exhibit D

## ARTICLE IX. CODE ENFORCEMENT*

*Cross references: Fire code prevention, § 30-161 et seq.

State law references: Administrative adjudication of ordinances, 65 ILCS 5/1-2.1-1 et seq.

### Sec. 2-941. Purpose.

The stated purpose of this article is to provide for the fair and efficient enforcement of the Municipal Code of Calumet City, Illinois, other than those ordinances pertaining to vehicular standing, parking or vehicle compliance regulation (hereafter the "City Code"), as may be allowed by law and directed by ordinance, through an administrative adjudication of violations; and, establishing a schedule of fines and penalties, and authority and procedures for collection of unpaid fines and penalties.

(Code 1980, § 2-501; Ord. No. 99-63, § VI, 11-10-1999)

### Sec. 2-942. Creation.

There is hereby established a department of the city government to be known as the ordinance enforcement department and to have the power to enforce any municipal ordinance as from time to time authorized by the city council, except for (i) any offense enforced pursuant to Article VII.5 of Chapter 17 of this Code; (ii) any offense under the Illinois Vehicle Code (625 ILCS 5/1-100 et seq.); or a similar offense that is a traffic regulation governing the movement of vehicles; and, (iii) except for any reportable offense under 625 ILCS 5/6-204. The establishment of the ordinance enforcement department does not preclude the mayor and city council from using any other method or court with jurisdiction to enforce ordinances of the city.

(Code 1980, § 2-503; Ord. No. 99-63, 11-10-1999)

### Sec. 2-943. Administrative composition.

(a) The ordinance enforcement department shall be composed of a hearing officer, an ordinance enforcement administrator, system coordinator/computer operator and hearing room security personnel, with the power and authority as hereinafter set forth.

(1) The hearing officer is authorized and directed to:

a. The hearing officer, prior to appointment, must be an attorney licensed to practice law for at least three (3) years in the State of Illinois. The hearing officer shall preside over all adjudicatory hearings and shall have the following powers and duties:

1. To administer oaths;

2. To hear testimony and accept evidence that is relevant to the existence of the City Code violation;

3. To issue subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives;

4. To preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing;

5. To issue and sign a written finding, decision and order stating whether a City Code violation exists;

6.  To impose penalties, sanctions or such other relief consistent with applicable City Code provisions and assessing costs upon finding a party liable for the charged violation, except however, that in no event shall the hearing officer have authority to impose a penalty of incarceration; and,

7.  To review final determination of liability for an ordinance violation in accordance with the administrative review procedures hereinafter set forth.

b.  Prior to conducting administrative adjudication proceedings under this article, the hearing officer shall have successfully completed a formal training program which includes the following:

1.  Instruction on the rules of procedure of the administrative hearings over which the hearing officer shall preside;

2.  Orientation to each subject area of the code violations that he/she will adjudicate;

3.  Observation of administrative hearings; and

4.  Participation in hypothetical cases, including ruling on evidence and issuing final orders.

(2)  The ordinance enforcement administrator is authorized and directed to:

a.  Operate and manage the ordinance enforcement department.

b.  Adopt, distribute and process all notices as may be required under this article or as may be reasonably required to carry out the purpose of this article.

c.  Collect moneys paid as fines and/or penalties assessed after a final determination of liability.

d.  Certify copies of final determinations of an ordinance violation adjudicated pursuant to this article, and any factual reports verifying the final determination of any violation liability which was issued in accordance with this article.

e.  Promulgate rules and regulations reasonably required to operate and maintain the administrative adjudication system hereby created.

f.  Collect unpaid fines and penalties through private collection agencies and direct the pursuit of all post-judgment remedies available by law.

(3)  The system coordinator/computer operator is hereby authorized and directed to operate and maintain the computer programs for the administrative adjudication system of the ordinance enforcement department hereby created, on a day-to-day basis, including but not limited to:

a.  Input of violation notice information.

b.  Establishing hearing dates and notice dates.

c.  Record fine and penalty assessment and payments.

d.  Issue payment receipts.

e.  Issue succeeding notice of hearing dates and/or final determination of liability.

f.  Keep accurate records of appearances and nonappearances at administrative hearings, pleas entered, judgments entered, sanctions imposed, if any, fines and penalties assessed and paid.

(4)  All hearing room security personnel shall be qualified off-duty, full-time, part-time or auxiliary police officers who are hereby authorized and directed to:

a.  Maintain hearing room decorum.

b.  Have and execute authority as is granted to courtroom deputies of the circuit court.

c.  Perform such other duties or acts as may reasonably be required and as directed by the hearing officer or ordinance enforcement administrator.

(b)  The mayor is hereby authorized to appoint persons to hold the positions above set forth. Other than the hearing officer, one person may hold and fulfill the requirements of one (1) or more of the above stated

TICLE IX. CODE ENFORCEMENT*                                                Page 3 of 6

positions and compensation for each of the above stated positions shall be as approved by the city council.

(Code 1980, § 2-504; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-944. Procedures.

The system of administrative adjudication of any ordinance violation authorized to be adjudicated hereunder, shall afford a party due process of law and the hearings shall be conducted in accordance with the following procedures:

(1) Violation notices of any City Code shall be issued by the persons authorized under this Code and shall contain information and shall be certified and constitute prima facie evidence of the violation cited as hereinafter set forth.

(2) All full-time, part-time and auxiliary police officers as well as other specifically authorized individuals of any department of the city shall have the authority to issue violation notices.

(3) Any individual authorized hereby to issue violation notices and who detects any ordinance violation authorized to be adjudicated under this article, is authorized to issue notice of violation thereof and shall make service thereof as is hereinafter set forth.

(4) The violation notice of the City Code shall contain, but shall not be limited to, the following information:

a. The name of the party violating the ordinance, if known.

b. The date, time and place of the violation (date of issuance).

c. The particular ordinance violated.

d. The fine and any penalty which may be assessed for the ordinance violation.

e. The signature and identification number of the person issuing the notice.

f. The date and location of the adjudicating hearing of ordinance violations, and the penalties for failure to appear at the hearing.

g. That payment of the indicated fine and any late payment shall operate as a final disposition of the violation.

(Code 1980, § 2-505; Ord. No. 99-63, 11-10-1999; Ord. No. 01-56, 11-19-2001)

## Sec. 2-945. Service.

(a) Service of any violation notice shall be made by the person issuing such notice by:

(1) Handing the notice to the person responsible for the ordinance violation;

(2) Handing the notice to the responsible person or leaving the notice with any person twelve (12) years of age or older at the residence of the responsible person;

(3) Mailing the notice by first class mail, postage prepaid, to the person responsible for the ordinance violation; or,

(4) Posting the notice upon the property where the violation is found when the person is the owner or manager of the property.

(b) The correctness of facts contained in any violation notice shall be verified by the person issuing said notice by:

(1) Signing his name to the notice at the time of issuance; or

(2) In the case of a notice produced by a computer device, by signing a single certificate, to be kept by the ordinance enforcement administrator, attesting to the correctness of all notices produced by the device while under his control.

(c)  The original or a facsimile of the violation notice shall be retained by the ordinance enforcement administrator and kept as a record in the ordinary course of business.

(d)  Any violation notice issued, signed and served in accordance herewith, or a copy of the notice, shall be *prima facie* correct and shall be *prima facie* evidence of the correctness of the facts shown on the notice.

(Code 1980, § 2-506; Ord. No. 99-63, 11-10-1999)

### Sec. 2-946. Administrative hearings.

An administrative hearing to adjudicate any alleged City Code ordinance violation on its merits shall be granted to the person named in the ordinance violation notice. All administrative hearings shall be recorded and shall culminate in a determination of liability or nonliability, made by the hearing officer, who shall consider facts and/or testimony without the application of the formal or technical rules of evidence. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonable prudent persons in the conduct of their affairs. The hearing officer shall, upon a determination of liability, assess fines, penalties and costs in accordance with section 2-952 hereof. Persons appearing to contest the alleged violation on its merits may be represented by counsel at their own expense. The burden of proof shall be on the alleged offender to refute the *prima facie* case set forth in the verified notice of violation.

(Code 1980, § 2-507; Ord. No. 99-63, 11-10-1999)

### Sec. 2-947. Notices.

(a)  Upon failure of the person receiving a notice of a violation of the City Code to appear at the time and date designated for a hearing, the ordinance enforcement administrator shall send, or cause to be sent, notices as provided in subsection (b) of this section, by first class mail, postage prepaid, to the person who received the notice of an ordinance violation. Service of notices sent in accordance herewith shall be complete as of the date of deposit in the United States mail.

(b)  The notices sent pursuant to subsection (a) of this section shall be in the following sequence and contain, but not be limited to, the following information:

(1)  Date and location of violation cited in the violation notice.

(2)  Particular ordinance violated.

(3)  Fine and any penalty that may be assessed for late payment.

(4)  A section titled "Notice of Hearing" which shall clearly set forth that the person receiving a notice of the City Code ordinance violation may appear at an administrative hearing to contest the validity of the violation notice on the date and at the time and place as specified in the notice of hearing.

(5)  Date, time and place of the administrative hearing at which the alleged violation may be contested on its merits.

(6)  Statement that failure to either pay fine and any applicable penalty or failure to appear at the hearing on its merits on the date and at the time and place specified will result in a final determination of liability for the "cited" violation in the amount of the fine and penalty indicated.

(7)  Statement that upon the occurrence of a final determination of liability for the failure, and the exhaustion of, or the failure to exhaust, available administrative or judicial procedures for review, any unpaid fine or penalty will constitute a debt due and owing the city.

(c)  A notice of final determination of liability shall be sent following the conclusion of administrative hearing, as is hereinafter set forth, and shall contain, but not be limited to, the following information and warnings:

(1)  A statement that the unpaid fine and any penalty assessed is a debt due and owing the city;

(2)  A statement of any sanction ordered or costs imposed which costs are debts due and owing the city; and

(3)  A warning that failure to pay the fine and any penalty due and owing the city within the time

specified may result in proceeding with collection procedures in the same manner as a judgment entered by any court of competent jurisdiction.

(Code 1980, § 2-508; Ord. No. 99-63, 11-10-1999)

### Sec. 2-948. Final determination of liability.

A final determination of liability shall occur following the failure to pay the fine or penalty after the hearing officer's determination of liability and the exhaustion of, or the failure to exhaust, any administrative review procedures hereinafter set forth. Where a person fails to appear at the administrative hearing to contest the alleged violation on the date and at the time and place specified in a prior served or mailed notice pursuant to section 2-947(b) hereof, the hearing officer's determination of liability shall become final either upon a denial of a timely petition to set aside that determination or upon the expiration of the period for filing a petition without a filing having been made.

(Code 1980, § 2-509; Ord. No. 99-63, 11-10-1999)

### Sec. 2-949. Petition to set aside determination.

A petition to set aside a final determination of liability may be filed with the ordinance enforcement ministrator within twenty-one (21) days of the date of the final determination of liability and payment of twenty-five dollars ($25.00).

(Code 1980, § 2-510; Ord. No. 99-63, 11-10-1999)

### Sec. 2-950. Judicial review.

Any final decision by a hearing officer that a City Code violation does or does not exist shall constitute a final determination for purposes of judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.).

(Code 1980, § 2-511; Ord. No. 99-63, 11-10-1999)

### Sec. 2-951. Enforcement of judgment.

(a)  Any fine, other sanction, or costs imposed, or part of any fine, other sanction, or costs imposed, remaining unpaid after the exhaustion of or the failure to exhaust judicial review procedures under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) are a debt due and owing the municipality and may be collected in accordance with applicable law.

(b)  After expiration of the period in which judicial review under the Illinois Administrative Review Law (735 ILCS 5/3-101 et seq.) may be sought for a final determination of a code violation, unless stayed by a court of competent jurisdiction, the findings, decision, and order of the hearing officer may be enforced in the same manner as a judgment entered by a court of competent jurisdiction.

(c)  In any case in which a hearing officer finds that a defendant has failed to comply with a judgment ordering a defendant to correct a code violation or imposing any fine or other sanction as a result of a code violation, any expenses incurred by the city to enforce the judgment including, but not limited to, attorney's fees, court costs, and costs related to property demolition or foreclosure after they are fixed by the hearing officer, shall be a debt due and owing the municipality and may be collected in accordance with applicable law.

(d)  A lien shall be imposed on the real estate or personal estate, or both, of the defendant in the amount of any debt due and owing the city under this section. The lien may be recorded and enforced in the same manner as a judgment lien pursuant to a judgment of a court of competent jurisdiction. No lien may be enforced under this section until it has been recorded in the manner provided by Article XII of the Code of Civil Procedure (735 ILCS 5/1-101 et seq.) or by the Uniform Commercial Code (810 ILCS 5/1-101et seq.).

(e)  A hearing officer may set aside any judgment entered by default and set a new hearing date upon a petition filed within twenty-one (21) days after the issuance of the order of default if the hearing officer determines that the petitioner's failure to appear at the hearing was for good cause or at any time if the

ARTICLE IX. CODE ENFORCEMENT*

petitioner establishes that the municipality did not provide proper service of process.

(Code 1980, § 2-512; Ord. No. 99-63, 11-10-1999)


**Sec. 2-952. Schedule of fines/penalties.**

For an ordinance violation of the City Code, fines and penalties shall be as established from time to time by the mayor and city council.

(Code 1980, § 2-513; Ord. No. 99-63, 11-10-1999)


**//Calumet City, Illinois/MUNICIPAL CODE CALUMET CITY, ILLINOIS Codified through Ord. No. 07-72, enacted June 14, 2007. (Supplement No. 7)/Chapter 2 ADMINISTRATION*/ARTICLE IX. CODE ENFORCEMENT***

# Exhibit E

## DIVISION 2. RENTAL DWELLING INSPECTIONS*

*Editor's note: Ord. No. 06-49, adopted June 22, 2006, amended division 2 in its entirety to read as herein set out. Former division 2, which consisted of §§ 14-711—14-718, pertained to similar subject matter and derived from the 1980 Code; Ord. No. 87-6, adopted Mar. 26, 1987; Ord. No. 87-16, adopted July 23, 1987; Ord. No. 88-2, adopted Feb. 25, 1988; Ord. No. 89-8, adopted Feb. 9, 1989; Ord. No. 89-40, adopted Nov. 9, 1989; Ord. No. 90-1, adopted Jan. 11, 1990; Ord. No. 94-16, adopted May 12, 1994; and Ord. No. 04-42, adopted June 29, 2004.

### Sec. 14-711. Certificate of occupancy requirement.

(a)  No owner, agent or person (hereinafter referred to as "responsible party") in charge of a one-family, two-family or multiple-family dwelling (hereinafter referred to as "rental dwelling"), as those terms are defined in the property maintenance code, shall allow any person to occupy the same as a tenant or lessee or for valuable consideration unless said dwelling or structure shall have been inspected and determined to be in compliance with all of the provisions of the property maintenance code as well as all health and building ordinances as evidenced by a certificate of occupancy issued by the department of inspectional services ("department"). Thereafter, all rental properties shall be inspected annually and an updated certificate of occupancy issued.

(b)  No certificate of occupancy shall be issued unless the applicant[,] owner or operator agrees in his application to an inspection pursuant to this section. Notwithstanding any other provisions of this Code, when the city conducts inspections of a tenant's rental dwelling, the city must obtain the consent of such tenant to conduct the inspection. If a tenant refuses consent, the city may attempt to obtain a warrant pursuant to subsection (d) below.

(c)  Prior to the time that the department is scheduled to conduct the inspection, the department shall deliver to the owner and occupants of the structure written notice that includes the following:

  (1)  Date and time of the inspection;

  (2)  A statement that the owner or tenant has the right to withhold his consent to the inspection and require the city to attempt to obtain a warrant to conduct the inspection;

(d)  If the owner or occupant does not consent to the attempted inspection, the director of inspectional services ("director") or his designee shall seek in the circuit court of Cook County a warrant in accordance with the appropriate laws of the State of Illinois to allow an inspection. The application for the warrant shall specify the basis upon which the warrant is being sought and shall include a statement that the inspection will be limited to a determination whether there are violations of the city building and zoning ordinances or any applicable housing, fire or property maintenance codes or regulations. The court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:

  (1)  Eyewitness account of violation;

  (2)  Citizen complaints;

  (3)  Tenant complaints;

  (4)  Plain view violations;

  (5)  Violations apparent from city records;

  (6)  Property deterioration;

  (7)  Age of property;

  (8)  Nature of alleged violation;

  (9)  Similar properties in the area;

DIVISION 2. RENTAL DWELLING INSPECTIONS*                                     Page 2 of 3

    (10) Documented violations on similar properties in the area;

    (11) Passage of time since last inspection;

    (12) Previous violations on the property.

(e) If the annual inspection establishes that the rental dwelling complies with all the provisions of the property maintenance code as well as all other health, zoning, and building ordinances of the city, then the department of inspectional services shall issue a certificate of occupancy for said dwelling or structure. The certificate shall indicate the date of the inspection; that such dwelling or structure complies with the requirements of the property maintenance code as well as other health and building ordinances that apply to the dwelling. One (1) copy of the certificate shall be delivered to or mailed to the owner of the dwelling unit. A record of all certificates shall be kept on file by the department, and copies shall be furnished upon request to any person having a proprietary interest or tenancy interest in the dwelling affected. The director shall submit once a month to the mayor and the city council a list of addresses of those dwellings which have been inspected the previous month with an indication whether or not said dwellings have been issued certificate of occupancy permits. Every certificate of occupancy shall be issued for a period of one (1) year after its date of issuance, unless sooner revoked.

(f) Inspection fee schedule.

    (1) Fifty dollars ($50.00) yearly.

    (2) Ten dollars ($10.00) per additional unit.

    (3) All inspection fees as herein provided shall be paid prior to the issuance of a certificate of occupancy.

    (4) Each fee set for the above covers the cost of one (1) follow-up inspection to verify compliance. In the event that additional inspections are required because full compliance did not exist at the time of the reinspection, then an additional reinspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

    (5) If an owner, agent or tenant has failed to appear for two previously scheduled inspections, an additional inspection fee of fifty dollars ($50.00) plus ten dollars ($10.00) per unit shall be assessed.

(Ord. No. 06-49, § 1, 6-22-2006)

Sec. 14-712. Notice of violation.

(a) Whenever the building official determines that any rental dwelling or the premises surrounding fails to meet the requirements set forth in this chapter or in applicable rules and regulations issued pursuant thereto, the building official in accordance with the property maintenance code and the other city health, and building codes shall issue a notice setting forth the alleged failures and advising the responsible party that such failures must be corrected. This notice shall:

    (1) Be in writing.

    (2) Set forth the alleged violations of this chapter or of applicable rules and regulations issued pursuant thereto.

    (3) Describe the rental dwelling where the violations are alleged to exist or to have been committed. Such written notice shall specify an appropriate or acceptable method of correction.

    (4) Specify a specific date for the correction of any violation alleged.

    (5) Be served upon the responsible party of the rental dwelling by the building official, or mailed to the responsible party. If one (1) or more persons to whom such notice is addressed cannot be found after diligent effort to do so, service may be made upon such persons by posting the notice in or about the rental dwelling described in the notice.

(b) At the end of the period of time allowed for the correction of any violation alleged, which was stated in the inspection notice, the building official shall reinspect the rental property described in the notice.

(c) If, upon reinspection, the violations are determined by the building official not to have been corrected, the

building official, in turn, shall issue an O.V. (ordinance violation) ticket to initiate legal proceedings to be handled in Calumet City's housing court for the immediate correction of the alleged violations or shall order the rental property vacated within thirty (30) days, or both.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-713. Responsibility of tenants.

No tenant shall damage or cause to be damaged any unit or building leased nor shall any damage be caused to the general premises of any building used by the tenants. Each tenant and the families of each tenant shall maintain his rental unit free of any litter, and tenants shall not litter any of the premises or the buildings provided for use by the tenants. The tenants must maintain their responsibilities as outlined in the property maintenance code, subject to O.V. citations.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-714. Penalties.

Any responsible party of a rental dwelling who has received an order or notice of an alleged violation of this article shall be subject to a penalty of not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) for each day the alleged violation continues after expiration of the specified reasonable consideration period; provided that no such penalty shall be applicable while reconsideration, hearing or appeal to a court of competent jurisdiction is pending in the matter.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-715. Validity and severability.

If any section, subsection, paragraph, sentence, clause, or phrase of this Code shall be declared invalid for any reason whatsoever, this decision shall not affect the remaining portions of this Code, which shall continue in full force and effect, and to this end, the provisions of this Code are hereby declared to be severable.

(Ord. No. 06-49, § 1, 6-22-2006)

## Sec. 14-716. Savings clause.

This Code shall not affect violations of any other ordinance, code or regulation of the jurisdiction existing prior to the effective date hereof, and any such violation shall be governed and shall continue to be punishable to the full extent of the law under the provisions of those ordinances, codes or regulations in effect at the time the violation was committed.

(Ord. No. 06-49, § 1, 6-22-2006)

Secs. 14-717--14-750. Reserved.