# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| ALONZO SMILEY, for himself and on behalf of all others similarly situated, | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) No.  08 C 3017 |
| v. | ) |
| | ) Wayne R. Andersen |
| CALUMET CITY, ILLINOIS, | ) District Judge |
| | ) |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case arises from plaintiff Alonzo Smiley's action against defendant Calumet City, Illinois for injunctive, declaratory, and other relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 to redress the alleged deprivation, under color of law, of Smiley's constitutional rights guaranteed by the United States Constitution and under Illinois law.  Smiley alleges that certain provisions of Chapter 14 of the Municipal Code of Calumet City, Illinois, codified in Ordinance No. 08-06, are facially unconstitutional and constitute an unconditional and unreasonable restraint on the right to freely transfer his property.  Before the court now are plaintiff's Motion for Class Certification, plaintiff's Motion for Preliminary Injunction, Mainstreet Organization of Realtors' Motion for Leave to Intervene and defendant's Motion to Dismiss Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the following reasons, plaintiff's Motion for Class Certification [35] is granted, and his Motion for Preliminary Injunction [21] is denied.  Defendant Calumet City's Motion to Dismiss [25] is granted, and Mainstreet Organization of Realtors' Motion for Leave to Intervene [48] is denied.

## BACKGROUND

### I.      The Parties

Smiley owns residential property at 508 Jeffrey, Calumet City, Illinois. When Smiley

purchased the property, it contained three units.  After purchasing the property, Smiley

deconverted the property to contain two units and has rented it as two units.  Smiley now desires

to sell his property with three units, which is the same condition as when he purchased the

property.  The property is subject to Calumet City's Point of Sale Inspection Ordinance ("POS

Ordinance").  Calumet City, located in Cook County, Illinois, is a unit of local government

incorporated under the laws of Illinois.

### II.     The Class Action Claims

Smiley has filed the lawsuit as a class action pursuant to Federal Rule of Civil Procedure

23 on behalf of all owners of residential property in Calumet City.  Smiley alleges that the class

is sufficiently numerous to make bringing all affected parties before the court impractical.  He

further alleges that there are three questions of law and fact common to the class, which

outweigh any questions that only affect individual class members.  These questions are:

> a. Whether the Point of Sale Inspection Ordinance is unconstitutional because it
> unreasonably and unconstitutionally restrains property owners' right to sell their property
> without due process of law;
>
> b. Whether the Point of Sale Inspection Ordinance is unconstitutional because it fails to
> provide procedural due process; and
>
> c. Whether Calumet City's policy of refusing to issue re-build letters and/or confirmation
> that property is legal nonconforming unconstitutionally interferes with the right to freely
> sell property including by prohibiting owners of legal nonconforming property from
> selling such property without deconverting.

First Amended Verified Class Action Complaint, ¶29. Finally, Smiley alleges that he meets all the requirements for class certification under Federal Rule 23.

## III.     The POS Ordinance

In this action, Smiley makes a facial challenge to the constitutionality of the POS Ordinance. Under the POS Ordinance, a Point of Sale Inspection ("POS Inspection") is required. A POS Inspection is defined as "an inspection of real property by the Department conducted in connection with a taxable transfer of real estate to determine whether the condition of said property conforms to the specific regulations identified in this Section." Municipal Code of Calumet City, § 14-1(a)(2). The scope of the POS Inspection is not strictly defined in the Ordinance, although broad parameters are specified. The purpose of the inspection is to determine "whether such property is in compliance with the following specific requirements, which the corporate authorities of the City find are related to the public health, safety and welfare: (1) Compliance with Property Maintenance Code [incorporating the 2006 International Property Maintenance Code] (2) Inspection to Determine Possible Illegal Conversions." Municipal Code, § 14-1(c). The code defines "illegally converted" structures as "property converted to another additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance." Municipal Code, § 14-1(c). A "legal nonconforming" use of property is defined as "[a]ny lawfully established use of a building or land, on the effective date of the ordinance or of the amendments thereto, that does not conform to the use of regulations for the district in which it is located." Zoning Code, § 5.1.

If code violations are identified, the seller receives written notice of such violations

within three days of the POS Inspection.  Municipal Code § 14-1(g).  Once the repairs are completed, the City must re-inspect the building within three days.  Municipal Code, § 14-1(h).  If an inspection reveals that a property has been illegally converted, a notice of deconversion will be issued.  The notice details the required measures to bring the illegally converted property into compliance with the applicable zoning regulations.  Municipal Code, § 14-1(g).

Once a property passes inspection, a "Certificate of Compliance" is issued.  The homeowner then takes the Certificate of Compliance to get a transfer stamp from the City.  The transfer stamp is required to record the sale of property within Calumet City.   Except for property that falls within certain narrow exceptions, the POS Ordinance prohibits the city clerk from issuing transfer stamps unless the seller presents a Certificate of Compliance.  Municipal Code 82-327(b).  Additionally, the issuance of transfer stamps is prohibited unless the seller provides the city clerk with proof of a current paid water bill.  *Id*.

**IV.      The First Amended Complaint**

In Count I, Smiley seeks a declaration that the POS Ordinance, contained in Section 14-1 of Article I of Chapter 14 of the Municipal Code of Calumet City, unreasonably and unconstitutionally restrains the rights of residential property owners in Calumet City to transfer their property.  In essence, the POS Ordinance prevents owners from selling their property until a city inspector has determined that the property passes an inspection and is in compliance with municipal building codes.

Smiley alleges that the scope of the POS Ordinance is unconstitutionally vague because of its incorporation of the 2006 International Property Maintenance Code that requires property to be in "good repair," but fails to define what constitutes "good repair."  Second, Smiley alleges

that the length of time to obtain the Certificate of Compliance, with the time lags between the inspections, repairs, and re-inspections, is unreasonably long and thereby impedes sales of residential property for an unreasonably long period of time.  Third, Smiley asserts that the POS Ordinance provides no meaningful way for a seller to contest an inspector's decision, thereby depriving the seller of due process.  Finally, Smiley asserts that the POS Ordinance does not provide sufficient due process protection to prevent a seller from having to erroneously pay a water bill in order to obtain the required transfer stamps to record a transfer of  his or her property.

In Count II, Smiley seeks a declaration that the POS Ordinance fails to afford homeowners wishing to transfer their property adequate procedural due process.  Smiley asserts that the due process clause requires a hearing be provided before the seller is deprived of his or her right to record a transfer of property.  Further, he argues that, because city inspectors have "unfettered discretion to order repairs unrelated to conditions that affect health or safety or the public good" the POS Ordinance is impermissibly vague.  First Amended Verified Class Action Complaint, ¶43.  With regard to legal nonconforming property, Smiley alleges that the POS ordinance provides insufficient notice for property owners to determine whether property is legal or illegal.

In Count III, Smiley seeks a declaration that in connection with the sale of legal nonconforming property, Calumet City's refusal to issue "re-build" letters and/or to confirm that property is legal nonconforming property constitutes an unreasonable and unconstitutional restraint on the right to freely transfer property.  The Calumet City Zoning Code provides that, if legal nonconforming property is damaged by less than 50 percent, it may be rebuilt or repaired to

5

its original condition and the original use continued, even if current zoning regulations would not permit that use. Zoning Code, § 5.5. However, if the legal nonconforming property is damaged by more than 50%, the property can be rebuilt and only used for a conforming use. *Id.* Smiley asserts that potential buyers of legal nonconforming property are generally not able to secure financing unless Calumet City issues a letter stating that, should the nonconforming property be damaged by 50% or less, it can be rebuilt or repaired to its prior state and maintain its status as legal nonconforming property. First Amended Verified Class Action Complaint, ¶ 49. Smiley alleges that Calumet City refuses to issue these letters and that the City's refusal effectively prohibits property owners from selling their legal nonconforming property, unless they deconvert their property. Smiley requests that this court enjoin Calumet City from refusing to issue rebuild letters, thereby requiring this court to impose on Calumet City the affirmative duty to issue such letters.

## V.      The Related Litigation

### A.      *Mainstreet Org. of Realtors v. Calumet City*

This case presents the same issues raised in litigation brought by proposed intervenors the Mainstreet Organization of Realtors ("the Association") entitled *Realtor Association of West/South Suburb Chicagoland v. Calumet City*, No. 06 C 2271 (N.D. Ill.)(Shadur, J.) (the "Prior Litigation"). In the Prior Litigation, a local realtor association (the "Association") filed suit seeking an injunction against Calumet City's enforcement of the POS Ordinance. The Association challenged the constitutionality of Calumet City's then-enacted POS Ordinance. On August 8, 2006, Judge Shadur entered a preliminary injunction which enjoined the City from enforcing the Ordinance and from ordering deconversion of legal nonconforming property.

Calumet City appealed.

On October 17, 2007, the Seventh Circuit held that the Association did not have standing to sue Calumet City, vacated the preliminary injunction and dismissed the lawsuit. Specifically, the Seventh Circuit vacated the injunction on the ground that the Association lacked "prudential" standing to challenge the POS Ordinance. *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007). In its opinion, the Seventh Circuit stated that a challenge to the POS Ordinance should be brought in a lawsuit by all homeowners in Calumet City joined in a class action. *Id.* at 747.

**B.      *Hussein Mann and Debra Houston-Mann v. Calumet City***

This case also presents similar issues presented in a case pending before Judge Coar, *Hussein Mann and Debra Houston-Mann v. Calumet City*, No. 08 C 555 (N.D.Ill.). The allegations in the *Mann* case are virtually identical to those in this case. Specifically, plaintiffs in *Mann* also seek declarations that the POS Ordinance is facially unconstitutional and that the City's refusal to issue re-build letters and/or confirm that the property is legally nonconforming in connection with the sale of legal nonconforming property constitutes an unreasonable and unconstitutional restraint on the right to transfer property freely. In addition, plaintiffs in *Mann* seek an award of damages to compensate them for damages suffered as a result of Calumet City's failure to comply with an order entered by Judge Shadur in *Realtor Association of West/South Suburb Chicagoland v. Calumet City*, No. 06 C 2271, in which Judge Shadur ordered the City to compensate plaintiffs for the damages they suffered as a result of the City's interference with the sale of their property.

Judge Coar recently granted Calumet City's Motion to Dismiss First Amended

Complaint pursuant to Federal Rule 12(b)(6) and denied plaintiffs' Motion for Partial Summary Judgment. *Mann v. Calumet City*, 2009 U.S. Dist. LEXIS 12192 (N.D. Ill. Feb. 17, 2009). Judge Coar concluded that Calumet City's POS Ordinance is facially constitutional. He recognized that the POS Inspection "is a one-time inspection made before an intended transfer of property, for the stated limited purposed of checking for compliance with municipal codes and for illegal conversions." *Id*. at *30. He further stated that the POS Ordinance provided multiple layers of procedural due process protection, both before and after the inspection and identification of violations and repairs, to property owners who dispute the inspection scheme and evaluations. *Id*. at *34. Finally, Judge Coar concluded that Calumet City is not required, and has no affirmative duty, to issue rebuild or conformation letters for legal nonconforming properties. *Id*. at *48-49.

Judge Coar also granted the City's Motion to Dismiss Intervenors as Party-Plaintiffs. Relying on the Seventh Circuit's opinion in *Mainstreet Org. of Realtors v. Calumet City*, 505 F.3d 742 (7th Cir. 2007), Judge Coar concluded that Mainstreet Organization of Realtors did not allege any new theory of injury that would justify a re-examination of the Seventh Circuit's decision to dismiss the Association's first challenge to the POS Ordinance. *Mann*, 2009 U.S. Dist. LEXIS 12192, at *56-58.

## ANALYSIS

### I.    Smiley's Motion for Class Certification

Smiley requests that this court certify a class comprising all owners of residential property in Calumet City under Federal Rule of Civil Procedure 23. He further requests that this court appoint him as class representative and that his attorneys Patrick Nash and Philip Stahl of

the law firm Grippo & Elden LLC be appointed as counsel for the class. Calumet City requests that this court deny Smiley's request for class certification or, in the alternative, stay the decision pending adjudication of Calumet City's motion to dismiss. As a threshold matter this court must determine whether to stay certification of the class, as Calumet City urges.

Calumet City misconstrues Seventh Circuit precedent when it states that the practice of the Seventh Circuit is to defer a motion for class certification pending adjudication of a motion to dismiss. Indeed, Calumet City cites two cases in support of this proposition from which it is clear the Seventh Circuit affirmed the discretion of district courts to consider a motion for class certification in advance of other dispositive motions. *Cowen v. Bank United of Texas,* 70 F. 3d 937, 941-942 (7th Cir. 1995); *Chavez v. Illinois State Police*, 251 F.3d 612, 629-630 (7th Cir. 2001). Recently, the Seventh Circuit stated that when a motion for class certification is filed prior to a judge's decision on a motion to dismiss, the judge may decide "the motion for class certification, applying the criteria in Federal Rule 23, before deciding the case on the merits." *Weismueller v. Kosobucki*, 513 F.3d 784, 787 (7th Cir. 2008). Accordingly, this court finds that it is appropriate in this case to consider Smiley's motion for class certification prior to rendering a decision on Calumet City's motion to dismiss.

### A.    Proposed Class Definition

Smiley proposes the following class of individuals be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure: all owners of residential property in Calumet City, Illinois.

### B.    Rule 23(a) Prerequisites

Federal Rule 23 sets forth a two step test to determine whether class certification is warranted. A court must first consider whether the proposed class meets prerequisite conditions

of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). The contested issue in this case is whether Smiley meets the typicality requirement under Federal Rule 23(a)(3). Calumet City does not challenge the proposed class on the grounds of numerosity, commonality or adequacy of representation.

<blockquote>1.    <u>Numerosity</u></blockquote>

The numerosity requirement is met because although Federal Rule 23(a)(1) does not set forth a numerical requirement, courts have found that in general 40 or more members is sufficient to establish numerosity. *See Pruitt v. City of Chicago,* 472 F.3d 925, 926-27 (7th Cir. 2006). In this case, recent U.S. Census Bureau data from 2000 indicated that Calumet City had a population of 39,071 with 15,947 housing units and at least 15,257 residential properties. Plaintiff's Memorandum Supporting Amended Motion for Class Certification, p. 8. This data shows that there are a sufficient number of property owners in Calumet City to meet the numerosity requirement.

<blockquote>2.    <u>Commonality</u></blockquote>

The commonality requirement is met in this case because Smiley alleges three factual and legal issues in common. Because Smiley makes a facial challenge to the validity of the POS Ordinance and the POS Ordinance applies equally to all residential property owners in Calumet City seeking to transfer their residential property, the statute itself serves as the required "common nucleus of operative fact." *Keele v. Wexler*, 149 F. 3d 589, 594 (7th Cir. 1998) (citing

*Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) ("A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2).").

        3.    <u>Typicality</u>

Calumet City contests the typicality of the claims under Rule 23(a)(3). Calumet City first argues that class certification is improper because most residential property owners in Calumet City have no intention of selling their homes and thus have no standing to challenge the POS Ordinance. Calumet City's Opposition to Plaintiff's Amended Motion for Class Certification, p.3. Calumet City also asserts that the proposed class is fatally flawed because it depends on the individual property owners' state of mind. Calumet City's Opposition to Plaintiff's Amended Motion for Class Certification, p.4. Calumet City argues that, because not all residential property owners intend to sell their property, the impact of the POS Ordinance is not uniform across the homeowners and consequently not uniform across the proposed class.

Generally, "'[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citations omitted). Smiley's claim is typical of the claims of the class because his individual claim arises from the enforcement of the POS Ordinance, which impacts all residential property owners in Calumet City if they wish to record the transfer of their property. Furthermore, courts have previously found it appropriate to certify a class comprising property owners subject to the future impact of a municipal ordinance. *See McKenzie v. City of Chicago*, 175 F.R.D. 280, 289-290 (N.D. Ill. 1997).

In *McKenzie*, the court certified a class including homeowners whose property "may in

the future be scheduled to be so demolished." 175 F.R.D. at 290. That case is no different from the current situation because residential property owners in Calumet City may in the future be affected by the POS Ordinance. Finally, this court finds it persuasive that the Seventh Circuit, when addressing a previous case with almost identical factual circumstances involving the proposed interveners, Mainstreet Organization of Realtors, suggested that the case could be re-filed as a class action comprising all of the homeowners in Calumet City. *Mainstreet Org. of Realtors*, 505 F.3d at 746-47 ("Even if the harm to the individual homeowner who encounters delay and expense in selling his house because of the ordinance is too slight to motivate him to bear the expensive of bringing a lawsuit, all the homeowners in Calumet City can be joined in a class action, since all will have suffered a possible diminution in the value of their property as a result of the ordinance.")

4.     Adequacy of Representation

The adequacy of representation prong of the test is satisfied in this case because as Smiley correctly states "[t]he adequacy threshold is a low one: 'as long as the court is assured that the named parties are qualified and capable of fully pursuing the common goals of the class without collusion or conflicts of interest' the requirement is met." *Wallace v. Chicago Hous. Auth.*, 224 F.R.D. 420, 429 (N.D. Ill. 2004) (quoting *Ridings v. Canadian Imperial Bank of Commerce Trust Co. (Bahamas) Ltd.*, 94 F.R.D. 147, 154 (N.D. Il. 1982)). Nothing in the record leads this court to doubt the ability of proposed counsel to pursue the interests of the class vigorously. Furthermore, the record contains no suggestion that the interests of the named plaintiff, Smiley, are not aligned with the interests of the class as a whole.

### C. Rule 23(b) Requirements

Having found that all of the prerequisites of Federal Rule 23(a) are satisfied, the court now must determine whether Smiley can meet the requirements of Rule 23(b)(2). In order to do so, Smiley must demonstrate that Calumet City "has acted or refused to act on grounds that apply generally to the class" so that final injunctive or declaratory relief will be appropriate for the class as a whole. FED. R. CIV. P. 23(b)(2). The court finds that the interests of each of the class members are cohesive and a decision on whether Ordinance No. 08-06 of the Municipal Code of Calumet City is facially unconstitutional will affect all persons that are similarly situated. Moreover, the adjudication of these issues does not depend on the individual facts of each case. Consequently, the court finds that the injunctive relief sought by Smiley fits the purpose for which Rule 23(b)(2) was drafted. Therefore, the court holds that Federal Rule 23(b)(2) has been satisfied.

Smiley has met all four of the prerequisites under Federal Rule 23(a) for class certification. In addition, he has demonstrated that class certification is appropriate under Rule 23(b)(2). With respect to notice, notice is optional for class actions that are certified pursuant to Federal Rule 23(b)(2). Because the requested relief in this case will have the same effect on all class members as an individual suit would, the court does not contemplate that specific, individualized notice is required. Consequently, Smiley's Motion for Class Certification comprising all residential property owners in Calumet City, Illinois is granted. Smiley is appointed as class representative, and his attorneys Patrick Nash and Philip Stahl of the law firm Grippo & Elden LLC are appointed as counsel for the certified class.

II.     **Smiley's Motion for Preliminary Injunction**

On behalf of himself and members of the certified class, Smiley seeks a preliminary injunction enjoining the enforcement of Calumet City's POS Ordinance.  To secure a preliminary injunction, Smiley must show:  "1) a reasonable likelihood of success on the merits; 2) the inadequacy of a remedy at law; 3) the existence of irreparable harm without the injunction; 4) that the threat of harm to the plaintiff outweighs any harm to the defendant if the injunction were issued; 5) that the public interest would not be disserved if the injunction were granted."  *Jak Prod., Inc. v. Wiza*, 986 F. 2d 1080, 1084 (7th Cir. 1993).  If the moving party cannot establish any of the first three criteria listed above, then the preliminary injunction must be denied.  *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992).

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.  *Goodman v. Illinois Dept. of Fin. and Prof'l Regulation*, 430 F. 3d 432, 437 (7th Cir. 2005) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citations omitted)). The Supreme Court has stated that facial challenges to the constitutionality of an ordinance are generally disfavored because

> [c]laims of facial invalidity often rest on speculation. As a consequence, they raise the risk of 'premature interpretation of statutes on the basis of factually barebones records.' Facial challenges also run contrary to the fundamental principle of judicial restraint that courts should neither 'anticipate a question of constitutional law in advance of the necessity of deciding it .' Finally, facial challenges threaten to short circuit the democratic process .

*Washington State Grange v. Washington State Republican Party*, 128 S.Ct. 1184, 1191 (2008) (internal citations omitted).  Consequently, Smiley faces a very high burden to show that a

preliminary injunction is appropriate.

Smiley's motion for preliminary injunction is denied. The motion fails because Smiley cannot show a reasonable likelihood of success on the merits in light of the high burden of proof imposed by the Supreme Court for facial challenges to the constitutionality of an ordinance. As the Seventh Circuit recently noted, "'point of sale' ordinances are common. They aim to prevent the surreptitious conversion of single family dwellings and to retard the physical deterioration of the housing stock." *Mainstreet Org. of Realtors*, 505 F.3d. at 744. Moreover, such ordinances are reviewed only to determine whether the ordinance is completely arbitrary because a municipal ordinance "need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Williamson v. Lee Optical*, 348 U.S. 483, 487-88 (1955).

Smiley asserts that he has demonstrated a sufficient likelihood of success on the merits to justify consideration of the other facts and, in his view, the ultimate imposition of a preliminary injunction. Smiley points to Judge Shadur's rulings that similarly situated plaintiffs have demonstrated a "substantial likelihood of success" on the claim that the POS Ordinance is unconstitutional because it interferes with the right to transfer property. Plaintiff's Reply Memorandum of Law Supporting the Motion for Preliminary Injunction, p.4. However, Judge Shadur's rulings do not address the same POS Ordinance at issue in the current case. Calumet City amended the Ordinance after Judge Shadur ruled. Rather Judge Shadur's rulings concern a prior version of the POS Ordinance, and as such his rulings are at most only persuasive authority in this case.

15

In this case, it is clear that the POS Ordinance is a municipal ordinance, and consequently, it is only subject to review to determine whether the ordinance lacks any relation to the harm to be remedied. *Williamson,* 348 U.S. at 487-88. The POS Ordinance, which requires inspections (1) to ensure compliance with property maintenance codes and (2) to identify and correct illegal conversions of property (Municipal Code, §14-1(c)) comports with legitimate city interests. Calumet City is entitled to maintain the physical condition of its housing stock and prevent suburban decline. These measures may have the additional effect of maintaining housing values.

Additionally, Calumet City has a legitimate interest in identifying illegal conversions and ordering the deconversion of those properties. Illegal conversions have the potential to increase the number of residents beyond the number of residents the Zoning Code anticipated, resulting in increased and unanticipated burdens on local infrastructure and services. Moreover, the use of a system of inspections and a transfer tax, such as those codified in § 14-1 of the Municipal Code, represents a reasonable means of obtaining compliance with legitimate municipal interests. Since the POS Ordinance is reasonable on its face, Smiley does not have a sufficient likelihood of success on the merits to warrant the imposition of an injunction. Therefore, Plaintiff's Motion for Preliminary Injunction is denied.

**III.    Calumet City's Motion to Dismiss**

**A.    Standard of Review for Motion to Dismiss**

Calumet City moves to dismiss Smiley's complaint for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1). However, in its briefs Calumet City makes no arguments to support its contention that this court lacks subject-matter

jurisdiction.  Nonetheless, this court has considered the appropriateness of subject-matter jurisdiction in this case and finds that there are sufficient facts alleged in Smiley's complaint to support a finding of subject-matter jurisdiction under 28 U.S.C. § 1331.  Smiley's complaint is filed pursuant to 42 U.S.C. § 1983 to redress the deprivation of Smiley's constitutional rights and the constitutional rights of others who are similarly situated.  These claims, because they arise under the United States Constitution, undeniably present federal questions, and thus this court has original jurisdiction pursuant to 28 U.S.C. § 1331.

Second, Calumet City moves to dismiss Smiley's complaint under Federal Rule 12(b)(6).  On a motion to dismiss for failure to state a claim upon which relief can be granted, the district court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff.  FED. R. CIV. P. 12(b)(6); *County of McHenry v. Ins. Co. of the West,* 438 F.3d 813, 817 (7th Cir. 2006).  The Seventh Circuit, relying on *Bell Atl. Corp. v. Twombly*, 127 S.Ct.1955, 1965 (2007), outlined a two-step test that a complaint must pass. *Tamayo v. Blagojevich*, 526 F. 3d 1074, 1084 (7th Cir. 2008).  In the first step "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*.  Under the second step the complaint's "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court." *Id.* (internal citations omitted).  However, a court should not find that a complaint fails to state "a claim merely because it does not set forth a complete and convincing picture of the alleged wrongdoing." *American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986).

However, notwithstanding the minimal pleading standard articulated above, facial

challenges to legislatively-enacted ordinances are the most difficult challenges to make because the burden of proof on the challenger is so high. The challenger of the ordinance must prove no set of facts under which the ordinance, in this case the POS Ordinance, would be valid. *United States v. Salerno,* 481 U.S. 739, 745 (1987); *Home Builders Ass'n v. United States Army Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003). Consequently, if there is even one set of factual circumstances under which the POS Ordinance is valid, then this court must find that there is no facial constitutional violation and that Smiley has failed to state a claim under Federal Rule 12(b)(6).

**B.     Count I:  Unreasonable Restraint on Right to Transfer Property**

Count I alleges that the POS Ordinance unreasonably and unconstitutionally restrains the right of property owners to transfer their property in violation of 42 U.S.C. § 1983 and the United States Constitution. It is a facial challenge to the constitutionality of the POS Ordinance. Smiley raises two separate arguments: first, a Fourteenth Amendment substantive due process challenge, and second, a Fourth Amendment challenge to the scope of the POS Ordinance.

1.      Fourteenth Amendment Substantive Due Process Challenge

Smiley contends that the provisions of the POS Ordinance violate his Fourteenth Amendment substantive due process rights. Smiley asserts that the POS Ordinance states that no property can be sold unless Calumet City says it may be sold. According to Smiley this is a violation because the due process clause provides that a state shall not "deprive any person of     property, without due process of law." U.S. Const., amend. XIV, § 1.

In making his argument, Smiley erroneously relies on a case addressing the requirements of procedural due process, rather than substantive due process. *U.S. v. James Daniel Good Real*

*Property*, 510 U.S. 43, 54 (1993). However, the Fourteenth Amendment's substantive due process protections extend only to fundamental liberty interests. *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009); *Washington v. Glucksburg*, 521 U.S. 702, 720 (1997). Furthermore, the Supreme Court has cautioned against expanding "the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scare and open-ended." *Glucksburg,* 521 U.S. at 720. This court can find no Supreme Court or Seventh Circuit case extending substantive due process protection to the right to record the transfer of one's property. Consequently, this court finds that Smiley's right to record the transfer of his real estate interest is not a fundamental liberty interest, and as such the Fourteenth Amendment's substantive due process analysis does not apply. *See generally Glucksburg,* 521 U.S. at 720-21.

Since the POS Ordinance does not implicate a fundamental right, Smiley's substantive due process claim is only subject to rational basis review. *Wroblewski v. Washburn*, 965 F.2d 452, 457-58 (7th Cir. 1992). Rational basis review is highly deferential, requiring only that the statutory imposition not be completely arbitrary and lacking any rational connection to a legitimate government interest. *Glucksburg*, 521 U.S. at 722; *Turner v. Glickman*, 207 F. 3d 419, 426 (7th Cir. 2000). Smiley faces a heavy burden to show that the POS Ordinance is "arbitrary and unreasonable, bearing no substantial relationship to public health, safety or welfare." *General Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1000-01 (7th Cir. 2008).

Here each of the provisions of the POS Ordinance withstands rational basis review. The POS Ordinance, employing a system of inspections and transfer tax, is neither an irrational nor arbitrary way to maintain the quality of the housing stock in Calumet City. Additionally, the

POS Ordinance requires inspections or a series of inspections, only if problems are found in the initial inspection, to take place over a relatively limited time frame.  Again because of its limited time frame the POS Ordinance is not an unreasonable means through which Calumet City may pursue the goal of maintaining its housing stock.  Moreover, the purpose of the POS Ordinance, as stated earlier, withstands rational basis review because Calumet City has a legitimate interest in maintaining the physical condition of its housing stock and preventing municipal decline.  Consequently, this court holds that the POS Ordinance is facially constitutional with respect to the Fourteenth Amendment substantive due process claim.

2. <u>Fourth Amendment Challenge to the Scope of the POS Ordinance</u>

Smiley challenges the POS Ordinance on the basis that its scope, which provides no limitations on the scope of permissible searches, violates the Fourth Amendment.  The Fourth Amendment states that "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

Smiley relies on *Camara v. Municipal Court of City of San Francisco,* 387 U.S. 523, 532 (1967), and *Black v. Village of Park Forest*, 20 F. Supp. 2d 1218, 1230 (N.D. Ill. 1998), to argue that municipal ordinances that lack limitations on the scope of administrative searches violate the Fourth Amendment.  In *Black v. Village of Park Forest*, the court invalidated a Park Forest ordinance that permitted the city to inspect single family homes. 20 F.Supp. 2d at 1225-26.  However, the facts of the current case are factually distinguishable from the facts in *Black v. Village of Park Forest.*  The Park Forest ordinance did not limit the frequency of the inspections,

20

the scope of the inspections, or specify what purpose the inspections were intended to serve. In contrast to the Park Forest ordinance, this court finds that there are sufficient limitations on the scope of the searches authorized under the POS Ordinance. First, the POS Ordinance only applies in limited circumstances. The POS Ordinance is only initiated when "an owner of real property in the city proposes to engage in the transfer of real property in the city." Municipal Code, § 14-1(b). Second, the scope of the POS Ordinance is clearly limited to two specific purposes: (1) to determine compliance with property maintenance codes and (2) inspections to find potential illegal conversions of real property. Municipal Code, § 14-1(c). Third, Section 14-1(e) delineates the applicable warrant procedures in the event that an owner chooses to decline an inspection. "The application for the warrant     shall include a statement that the inspection will be limited to a determination whether there are violations of the Code provisions identified in this Section, and whether there have been any illegal conversions." Municipal Code, § 14-1(e). Consequently, in light of the limitations on the scope of the search allowed under the POS Ordinance, this court finds that the POS Ordinance is facially constitutional with respect to Smiley's Fourth Amendment claim.

Since this court finds that the POS Ordinance is facially constitutional with respect to both the Fourteenth Amendment and Fourth Amendment claims, Calumet City's motion to dismiss Count I is granted.

### C.     Count II:  Procedural Due Process

In Count II, another facial challenge to the POS Ordinance, Smiley alleges that the POS Ordinance deprives him and similarly situated plaintiffs in the certified class of their property without due process of law in violation of the Fourteenth Amendment. There are two separate

claims under this count: (1) lack of pre-deprivation due process and (2) vagueness.

1.    Lack of Pre-Deprivation Due Process

First, Smiley alleges that the POS Ordinance fails to provide procedural due process before it takes a property right because the POS Ordinance provides property owners with no opportunity for a hearing prior to the deprivation of the right to sell property. First Amended Verified Class Action Complaint, ¶ 42.  Smiley further states that "[i]n effect, City has enjoined the transfer of residential property – without a complaint, evidence, a hearing or any procedural or substantive rules – until it decides to consent."  Plaintiff's Response in Opposition to Motion to Dismiss Complain, p.8.

To state a procedural due process claim, a plaintiff must allege (1) deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation. *Michalowicz v. Village of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008). The parties do not dispute that a property owner's right to transfer his or her property is a protected property interest under the Fourteenth Amendment and is deprived by the City's inspection scheme. The parties' dispute concerns what process the property owners are entitled to with respect to that deprivation. Not all deprivations of the right to sell one's property constitute due process violations.  Only deprivations when there has been *inadequate* pre-deprivation due process constitute a violation of the procedural due process protections. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).  The court in *Matthews* articulates a balancing test under which

> the specific dictates of due process generally requires consideration of three
> distinct factors: first, the private interest that will be affected by the official
> action; second, the risk of an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* "The presumption is that an individual is entitled to notice and an opportunity for a hearing prior to the state's permanent deprivation of his property interest." *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996). However, a pre-deprivation hearing is not required in all circumstances. *Id.* at 306. The adequacy of pre-deprivation procedures is to be judged based on the extent of post-deprivation procedures. *Michalowicz*, 528 F.3d at 534; *Swank v. Smart*, 898 F.2d 1247, 1256 (7th Cir. 1990) ("Only if there is no provision for a post-termination hearing must the pre-termination hearing provide all the procedural safeguards to which due process entitles a [person].")

The facts of this case show that the POS Ordinance contains several procedural due process protections both before and after the alleged deprivation of the right to record the sale of one's property. In the first instance, the owner of the property must consent to the search before it takes place. If the owner does not consent, Calumet City must obtain a warrant to search the property. Municipal Code, § 14-1(e). Moreover, the warrant procedures themselves contain limitations as to the timing of the application for the warrant, the scope of the ultimate search to be performed, and the factors upon which the court may base its decision to grant or deny the warrant application. *Id.* If Calumet City fails to obtain a warrant, the City is required to issue transfer stamps for the property despite the fact that no inspection has taken place. Municipal Code, § 14-1(f). Second, if a search is performed and violations found, the owner of the property is afforded an opportunity to contest those violations by filing a request for administrative review with the city. Municipal Code, § 14-1(g). Third, the POS Ordinance does

not require that the repairs be completed prior to closing on the sale of the property provided certain specified conditions are met.  Municipal Code, § 14-1(j).  In light of the extensive provision of procedural due process by the POS Ordinance, this court finds that the POS Ordinance is constitutional.

2.    Vagueness

Smiley argues that the POS Ordinance is unconstitutional because it is too vague to provide notice to property owners in two respects: (1) the POS Ordinance does not sufficiently explain to property owners how the City will determine whether property is an illegal conversion (First Amended Verified Class Action Complaint, ¶ 44); and (2) the POS Ordinance requires that property be in "good repair" but does not adequately notify homeowners of what conditions constitute "good repair" (First Amended Verified Class Action Complaint, ¶ 43).

With regard to the first issue, this court finds that the POS Ordinance provides an adequate and sufficiently precise explanation of how Calumet City determines whether property is an illegal conversion to withstand Smiley's challenge.  The Municipal Code defines "illegally converted" structures as "property     converted to another additional use beyond that for which the property was originally permitted, and which [i] is in violation of the property's zoning limitations and [ii] is not a legal nonconforming use under Section V of the City Zoning Ordinance."  Municipal Code, § 14-1(c).  Additionally, a "legal nonconforming" use of property is defined as "[a]ny lawfully established use of a building or land, on the effective date of the ordinance or of the amendments thereto, that does not conform to the use of regulations for the district in which it is located." Zoning Code, § 5.1.

Next, Smiley contends that the term "good repair" is insufficiently precise to provide

property owners with notice of what kind of property conditions Calumet City will consider

violations of the POS ordinance. Smiley mistakenly relies on *Penny Saver Publ'ns Inc. v.

Village of Hazel Crest*, 905 F.2d 150 (7th Cir. 1990), as an example of a case in which an

ordinance was invalidated for vagueness. *Penny Saver* concerned the application of an

ordinance to restrict speech. *Id*. The court noted that "[t]he general test of vagueness applies

with particular force in review of laws dealing with speech. 'Stricter standards of permissible

statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech.'"

*Id.* at 155 (internal citations omitted).

The present case does not address restrictions on speech, but rather the ability of property

owners to alienate property. As the Seventh Circuit explained, "[t]he void for vagueness

doctrine rests on the basic principle of due process that a law is unconstitutional "if its

prohibitions are not clearly defined." *Karlin v. Foust*, 188 F. 3d 446, 458 (7th Cir. 1999)

(quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972) (case concerning anti-

picketing and anti-noise ordinances requiring "that laws give the person of ordinary intelligence

a reasonable opportunity to know what is prohibited, so that he may act accordingly."). More

specifically, in the context of state ordinances, "[d]ue process requires that a State provide

meaningful standards to guide the application of its laws." *Pacific Mut. Life Ins. Co. v. Haslip*,

499 U.S. 1, 44 (1991).

The facts demonstrate that Calumet City has provided "meaningful standards" in the POS

Ordinance to guide its application. The POS Ordinance provides for inspections to determine

whether properties are in compliance with the property maintenance code. Specifically, the POS

Ordinance provides that "[a]ll structures shall be in compliance with Article X, Sections 14-691

and 14-692 of this Chapter 14 "Property Maintenance Code." Municipal Code, § 14-1(c).

Sections 14-691 and 14-692 substantially adopt the "2006 International Property Maintenance

Code." Although the term "good repair" is not defined in the 2006 International Property

Maintenance Code, the Code provides extensive detail regarding maintenance standards on

issues including, but not limited to: external property areas, including swimming pools, spas, and

hot tubs; exterior structure; interior structure; light and ventilation systems; plumbing facilities,

including fixtures, the water system, and sanitary drainage; mechanical and electrical

requirements, including heating, electrical, and elevators; and fire safety requirements.

In light of the length and overall detail in the 2006 International Property Maintenance

Code, this court finds that the POS Ordinance has provided a "person of ordinary intelligence a

reasonable opportunity to know what is prohibited." *Grayned,* 408 U.S. at 108-09.

Consequently, this court holds that the POS Ordinance is constitutional and not void by reason of

vagueness and Calumet City's motion to dismiss Count II is granted.

### D.   Count III:  Re-Build Letters

In Count III, Smiley alleges that Calumet City's refusal to issue re-build letters and/or

confirm that property is legal nonconforming property violates his constitutionally protected

right to sell legal nonconforming property in its legal nonconforming state.  Smiley posits that

the rebuild or confirmation letters are a necessary prerequisite to the sale of property because

lenders will not approve potential buyers of legal nonconforming property for loans without

these letters.  Plaintiff's Response in Opposition to Motion to Dismiss Complaint, p. 12.  It

appears, although it is not entirely clear, that Smiley believes Calumet City refuses to issue re-

build or confirmation letters because the City wants to force the deconversion of legal

nonconforming property to conforming property, prior to its sale.  First Amended Verified Class

Action Complaint, ¶ 49.  Moreover, although Smiley denies claiming that Calumet City has an

affirmative constitutional duty to issue re-build letters or that he seeks this court to "usurp the

legislative function" (Plaintiff's Response in Opposition to Motion to Dismiss Complaint, p. 12),

that is the effect of Smiley's claim.

This court believes that, although phrased in the negative, Smiley's demand for re-build

or confirmation letters would impose an affirmative duty on Calumet City to issue such letters.

Furthermore, the remedy sought by Smiley is a letter explaining to prospective lenders the rules

applicable to legal nonconforming uses, when these rules are already adequately detailed in

Section 14-1 of the Municipal Code of Calumet City and Sections 5.1 and 5.5 of the Zoning

Code.  Hence, the letter would only serve as an assurance that Calumet City will, in fact, follow

its own laws.

This court agrees with the Seventh Circuit that the Constitution "is a charter of negative

liberties; it tells the state to let people alone; it does not require     the state to provide services,

even so elementary a service as maintaining law and order."  *Bowers v. DeVito*, 686 F.2d 616,

618 (7th Cir. 1982).  Nothing in the Constitution entitles individuals to ask for services such as

the services demanded by Smiley in the present case.  Furthermore, nothing in the text of

Calumet City's Municipal Code or Zoning Code imposes an affirmative duty on the City to issue

such letters.  Consequently, Smiley has failed to state a constitutional claim under either the

United States Constitution or Illinois law.  Thus, Calumet City's motion to dismiss Count III is

granted.  In summary, because Smiley has failed to state a claim in Counts I, II and III, Calumet

City's Motion to Dismiss the Complaint is granted.

**IV.     Mainstreet Organization of Realtors' Motion for Leave to Intervene**

Mainstreet Organization of Realtors requests leave to intervene in this proceeding pursuant to Federal Rules of Civil Procedure 24(a)(2) and/or 24(b)(1)(B).  The Association contends that its involvement in this proceeding is necessary because (1) the Association members derive their livelihoods from commissions earned by selling real estate on behalf of property owners in Calumet City and (2) to ensure that this case avoids potential mootness problems, which have been faced by similar cases in the past.

Under Federal Rule 24(a)(2), a party for intervention of right must establish four elements: (1) the application is timely; (2) the applicant claims an interest in the property or transaction that is the subject of the action; (3) the applicant is situated such that disposing of the action may impair or impede the applicant's ability to protect its interest; and (4) the applicant is not adequately represented by a current party in the action.  *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1380 (7th Cir. 1995).  Should the Association fail to satisfy any of the Rule's requirements that "is sufficient to warrant denial of a motion to intervene as a matter of right."  *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs.*, 736 F.2d 384, 386 (7th Cir. 1984).

There is no dispute in this case that the Association's application to intervene is timely.  Additionally, Calumet City, which objects to the intervention, does not contest either the second or third prong of the test under Federal Rule 24(a)(2).  The question in this case is whether the intervention is barred because the interests of the Association are already adequately represented by the certified class and its named representative, Alonzo Smiley.  The Association argues that it should be allowed to intervene as a matter of right because "the Plaintiff may not be able to

adequately represent Association's interest if he loses his property and is unable to continue

participating in this lawsuit."  Mainstreet Organization of Realtors' Reply in Support of Motion

for Leave to Intervene, p. 2.  However, because this court has certified a class of all property

owners in Calumet City, the Association's concern is no longer well founded.  Even if Smiley

loses his property through foreclosure, which this court certainly hopes does not happen, the

certified class will continue to adequately represent the Association's interests.  Consequently,

the Association fails the inadequate representation prong of Federal Rule 24(a)(2), and

intervention as a matter of right must be denied.

The court has discretion to allow permissive intervention on a timely motion if the

applicant "has a claim or defense that shares with the main action a common question of law of

fact."  FED. R. CIV. P. 24(b)(1)(B).  In exercising its discretion, Federal Rule 24(b)(3) directs the

court to consider "whether the intervention will unduly delay or prejudice the adjudication of the

original parties' rights."  This court invited the parties to submit briefs on the motion to

intervene because it wanted to weigh all the evidence before making a final determination on

whether to exercise the court's discretion and allow the Association to intervene in the current

proceeding.  However, in light of the broad discretion conferred on the court to determine

whether to allow permissive intervention, this court finds the holding of the Seventh Circuit

regarding the standing of Mainstreet Organization of Realtors instructive.  *Mainstreet Org. of

Realtors*, 505 F.3d at 744.

The Seventh Circuit held that, although the Association had Article III standing, they

lacked prudential standing.  *Id.*  The court remarked that although the consequences of harmful

acts often radiates far beyond the original victim, that harm is not always suitable for redress by

the courts. *Id.* at 745. Notably, the Seventh Circuit stated:

> If all these incidental victims could sue, the courts would be overwhelmed.
> Moreover, the victims with the largest stakes – namely the homeowners impeded
> in selling their homes – who are also the potential plaintiffs with the first-hand
> information about the operation of the ordinance, are likely to be trampled in the
> rush to the courthouse.

*Id.* at 746. In addition, the court commented on the problem of remoteness presented by

allowing the Association to bring the suit against Calumet City, stating that "the brokers' injury

in this case is too remote to sustain standing ." *Id.* at 747. For these reasons, this court holds

that Mainstreet Organization of Realtors' Motion for Leave to Intervene is denied.

## CONCLUSION

For all of the reasons stated in the court's Memorandum Opinion and Order, plaintiff

Alonzo Smiley's Motion for Class Certification [35] is granted. This court appoints Alonzo

Smiley as class representative and Smiley's attorneys Patrick Nash and Philip Stahl of the law

firm Grippo & Elden LLC as counsel to the certified class. Plaintiff Alonzo Smiley's Motion for

Preliminary Injunction [21] is denied. Defendant Calumet City's Motion to Dismiss [25] is

granted, and Mainstreet Organization of Realtor's Motion for Leave to Intervene [48] is denied.

The parties shall bear their own fees and costs in this matter.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: _May 15, 2009_____